KENNETH C. FELDMAN, SB# 130699
  E-Mail: Ken.Feldman@lewisbrisbois.com
DAVID D. SAMANI, SB# 280179
  E-Mail: David.Samani@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant NIRANJAN
FRED THIAGARAJAH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>             Plaintiff,<br><br>     vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>             Defendants. | Case No. 8:22-cv-00868-JVS-ADS<br><br>**DEFENDANT NIRANJAN FRED THIAGARAJAH'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CIV. PROC. CODE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    October 3, 2022<br>Time:    1:30 p.m.<br>Crtrm.:  10C<br><br>Judge:  Hon. James V. Selna<br><br>[*Filed concurrently with Request for Judicial Notice; Proposed Order*]<br><br>Action Filed:    April 25, 2022<br>Trial Date:      None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 3, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 10C of the above-entitled courthouse, located at 411 West Fourth Street, Santa Ana, CA, 92701, Defendant NIRANJAN FRED THIAGARAJAH ("Mr. Thiagarajah") will, and hereby does, move to strike Plaintiff TREVOR BAUER's ("Plaintiff") Second Cause of Action for

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

Defamation—the sole claim in the Complaint against Mr. Thiagarajah—pursuant to Cal. Civ. Proc. Code § 425.16, using the standards governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the grounds that the gravamen of Plaintiff's claim against Mr. Thiagarajah involves protected activity and Plaintiff cannot meet his burden of demonstrating a probability of prevailing.

Counsel for the Mr. Thiagarajah met and conferred with Plaintiff's counsel of record on July 11 and 12, 2022 pursuant to Local Rule 7-3.

This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities, the First Amended Complaint, the concurrently-filed Request for Judicial Notice, the pleadings and papers on file with the Court in this matter, all matters upon which this Court must or may take judicial notice, and upon all argument that this Court may allow at the time of hearing the Motion.

DATED:  July 19, 2022          LEWIS BRISBOIS BISGAARD & SMITH LLP

By:      /s/ David D. Samani
         DAVID D. SAMANI
         Attorneys for Defendant NIRANJAN
         FRED THIAGARAJAH



4865-0661-6097.1

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ......................................................................... 2

    A. Overview Of Plaintiff's Allegations ........................................................ 2

    B. The Court In The Underlying Proceeding Finds Plaintiff Inflicted Terrible Injuries On Ms. Hill But Declines To Issue A Restraining Order Citing The Absence Of Future Contact ................... 3

    C. The *Washington Post* Quotes Mr. Thiagarajah, Whose Quoted Statements Echo The Court's Finding That The Injuries Were Terrible, And Acknowledge The Dispute About Consent In The Underlying Proceeding ........................................................................... 4

    D. Plaintiff's Claim Against Mr. Thiagarajah ............................................. 5

III. THE ANTI-SLAPP STATUTE EXISTS TO ELIMINATE MERITLESS LAWSUITS TARGETING PROTECTED ACTIVITY AT AN EARLY STAGE ............................................................................... 6

    A. The Anti-SLAPP Statute Generally ........................................................ 6

    B. An Anti-SLAPP Motion May Be Brought In Federal Court ................. 8

IV. PLAINTIFF'S CLAIM AGAINST MR. THIAGARAJAH ARISES FROM PROTECTED ACTIVITY ........................................................... 8

    A. The Defamation Claim Against Mr. Thiagarajah Targets Statements Made About a Public Issue ................................................... 8

    B. Mr. Thiagarajah's Statements Were Made In Connection With An Official Proceeding ........................................................................... 11

V. PLAINTIFF CANNOT MEET HIS BURDEN ON PRONG TWO OF THE ANTI-SLAPP STATUTE ............................................................... 12

    A. Plaintiff cannot establish necessary elements of defamation ............... 13

        1. The allegedly defamatory statements are nonactionable opinions ........................................................................................ 13

        2. Plaintiff cannot establish "falsity" because the gist and sting of Mr. Thiagarajah's statements are true ........................... 17

            (a) Mr. Thiagarajah accurately described the underlying court's conclusion ........................................................... 18

            (b) Mr. Thiagarajah's statement about the difference between testifying under oath and offering denials via YouTube is true .......................................................... 19

i

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

B. The Fair Reporting Privilege Bars Plaintiff's Claim ............................ 19

    1. Mr. Thiagarajah's statements are communications to a public journal about a judicial proceeding and law enforcement investigation .............................................. 20

    2. Mr. Thiagarajah's statements were a fair and true report of the Underlying Proceeding ......................................... 20

VI. CONCLUSION ....................................................................... 24



# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................. 13

*Graham-Sult v. Clainos*,
    738 F.3d 1131 (9th Cir. 2013) ............................................... 8

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ........................................... 8, 13

*Old Dominion Branch No. 496 v. Austin*,
    418 U.S. 264 (1974) ............................................................ 14

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ............................................... 15

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ............................................... 13

*Standing Comm. on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ............................................... 16

*Underwager v. Channel 9 Austl.*,
    69 F.3d 361 (9th Cir. 1995) ........................................... 15, 16

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................... 8

## CALIFORNIA CASES

*Argentieri v. Zuckerberg*,
    8 Cal. App. 5th 768 (Cal. Ct. App. 2017) ......................... 20, 21

*Baker v. Los Angeles Herald Examiner*,
    42 Cal.3d 254 (Cal. 1986) ................................................... 15

*Balzaga v. Fox News Network, LLC*,
    173 Cal.App.4th 1325 (Cal. Ct. App. 2009) ......................... 20

*Braun v. Chronicle Publishing Co.*,
    52 Cal. App. 4th 1036 (Cal. Ct. App. 1997) ......................... 12

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Briggs v. Eden Council for Hope & Opportunity*,
   19 Cal. 4th 1106 (Cal. 1999) ............................................................. 12

*Cabral v. Martins*,
   177 Cal. App. 4th 471 (Cal. Ct. App. 2009)...................................... 11

*Carver v. Bonds*,
   135 Cal.App.4th 328 (Cal. Ct. App. 2005)....................................... 20

*Chaker v. Mateo*,
   209 Cal.App.4th 1138 (Cal. Ct. App. 2012)..................................... 17

*Church of Scientology of California v. Wollersheim*,
   42 Cal. App. 4th 628 (Cal. Ct. App. 1996)......................................... 9

*Comstock v. Aber*,
   212 Cal.App.4th 931 (Cal. Ct. App. 2012)....................................... 12

*Damon v. Ocean Hills Journalism Club*,
   85 Cal. App. 4th 468 (Cal. Ct. App. 2003)......................................... 9

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
   47 Cal. App. 4th 777 (Cal. Ct. App. 1996) ........................................ 8

*Ferlauto v. Hamsher*,
   74 Cal. App. 4th 1394 (Cal. Ct. App. 1999)............................... 15, 16

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (Cal. Ct. App. 2019) .............................................. 9, 10

*Franklin v. Dynamic Details, Inc.*,
   116 Cal.App.4th 375 (Cal. Ct. App. 2004)............................. 13, 14, 15

*GetFugu, Inc. v. Patton Boggs LLP*,
   220 Cal. App. 4th 141 (Cal. Ct.. App. 2013)..................................... 16

*Gilbert v. Sykes*,
   147 Cal.App.4th 13 (Cal. Ct. App. 2007)......................................... 17

*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*,
   247 Cal.App.4th 87 (Cal. Ct. App. 2016)................... 19, 20, 21, 22, 24

*John Doe 2 v. Superior Court*,
   1 Cal.App.5th 1300 (Cal. Ct. App. 2016).......................................... 13

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*,
    37 Cal. App. 4th 855 (Cal. Ct. App. 1995) ........................................................ 9

*McGarry v. University of San Diego*,
    154 Cal. App. 4th 97 (Cal. Ct. App. 2007) ................................................. 10, 17

*Melaleuca, Inc. v. Clark*,
    66 Cal.App.4th 1344 (Cal. Ct. App. 1998) ...................................................... 14

*Navellier v. Sletten*,
    29 Cal.4th 82 (Cal. 2002) ..................................................................................... 8

*Neville v. Chudacoff*,
    160 Cal. App. 4th 1255 (Cal. Ct. App. 2008) ................................................. 11

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (Cal. Ct. App. 2008) ................................................... 9

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld*,
    18 Cal. App. 5th 95 (Cal. Ct. App. 2017) .......................................................... 1

*Rand Resources, LLC v. Carson*,
    6 Cal. 5th 610 (Cal. 2019) ................................................................................... 9

*Ringler Associates Inc. v. Maryland Casualty Co.*,
    80 Cal.App.4th 1165 (Cal. Ct. App. 2000) ...................................................... 17

*Rohde v. Wolfe*,
    154 Cal. App. 4th 28 (Cal. 2007) ........................................................................ 7

*Seelig v. Infinity Broadcasting Corp.*,
    97 Cal. App. 4th 798 (Cal. Ct. App. 2002) ........................................................ 9

*Sipple v. Foundation for Nat. Progress*,
    71 Cal. App. 4th 226 (Cal. Ct. App. 1999) ..................................................... 19

*Sonoma Media Investments, LLC v. Superior Court*,
    34 Cal. App. 5th 24 (Cal. Ct. App. 2019) .......................................................... 9

*State Farm General Ins. Co. v. Majorino*,
    99 Cal. 4th 974 (Cal. 2002) ................................................................................. 6

*Stewart v. Rolling Stone, LLC*,
    181 Cal. App. 4th 664 (Cal. Ct. App. 2010) ................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1                                                    v

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

*Summit Bank v. Rogers*,
    206 Cal.App.4th 669 (Cal. Ct. App. 2012)...............................................13, 14, 15

*Symmonds v. Mahoney*,
    31 Cal. App. 5th 1096 (Cal. Ct. App. 2019).........................................................10

*Terry v. Davis Community Church* (2005)
    131 Cal.App.4th 1534 (Cal. Ct. App. 2005).........................................................17

*Thayer v. Kabateck Brown Kellner LLP*,
    207 Cal. App. 4th 141 (Cal. Ct. App. 2012)....................................................8, 12

## OTHER STATE CASES

*Swate v. Schiffers*,
    975 S.W.2d 70 (Tex. App. 1998) ..........................................................................18

## CALIFORNIA STATUTES

Cal. Civ. Code
    § 47 ...........................................................................................................2, 19, 21

Cal. Civ. Proc. Code
    § 425.16 ..............................................................................................1, 7, 8, 9, 11, 12

## FEDERAL RULES

Fed. R. Civ. P. 8 ..........................................................................................................12

Fed. R. Civ. P. 12............................................................................................................12, 13

Fed. R. Evid. 603 ...........................................................................................................19

## OTHER AUTHORITIES

*Brutal*, Merriam-Webster.com ....................................................................................18

*Brutalized*, Merriam-Webster.com...............................................................................18


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff TREVOR BAUER ("Plaintiff"), the star baseball player renowned for his pitching on the field and his bullying off, brings this lawsuit to punish Defendant NIRANJAN FRED THIAGARAJAH ("Mr. Thiagarajah") for engaging in protected First Amendment activity.  Plaintiff's claim against Mr. Thiagarajah is so meritless, however, that he must resort to selectively (and deceptively) quoting Mr. Thiagarajah to attempt to construct his claim.

Plaintiff's lawsuit against Mr. Thiagarajah is a SLAPP and it must be stricken.[1] Plaintiff's sole claim for defamation targets brief comments Mr. Thiagarajah, who served as counsel for Co-Defendant Lindsey Hill ("Ms. Hill") in connection with her claims that Plaintiff sexually assaulted her, made to the *Washington Post*.   The statements concern the district attorney's decision not to formally charge Plaintiff, and what transpired at an underlying judicial proceeding.  The statements (1) relate to a matter of public interest and (2) were made in connection with a matter that was the subject of a judicial proceeding and had been under review by law enforcement. Consequently, Plaintiff's claims all fall within the ambit of Cal. Civ. Proc. Code § 425.16 (the "anti-SLAPP" statute).

Plaintiff is therefore obligated to demonstrate a probability of prevailing on his claim for relief.  He cannot meet this burden.  First, Plaintiff cannot state a viable claim for defamation.   The at-issue statements are nonactionable statements of opinion by an advocate for an adversary of Plaintiff in litigation.   Further, even viewing the statements as factual, the "gist and sting" of Mr. Thiagarajah's statements as reported by the *Washington Post*, rather than as deceptively quoted to the Court,

---

[1]    SLAPP is an acronym for "strategic lawsuit against public participation." (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld*, 18 Cal. App. 5th 95, 102 fn. 2 (Cal. Ct. App. 2017).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

are true.  <u>Second</u>, Plaintiff's claim is barred under California's fair reporting privilege codified at Cal. Civ. Code § 47(d).  Mr. Thiagarajah fairly summarized official proceedings, including an underlying court hearing.

Accordingly, Mr. Thiagarajah respectfully urges the Court to grant this special motion to strike and to dismiss him from this action with prejudice.

## II.   <u>STATEMENT OF FACTS</u>

### A.   <u>Overview Of Plaintiff's Allegations</u>

The vast majority of Plaintiff's Complaint focuses on allegations of defamation and tortious interference against Co-Defendant Lindsey Hill ("Ms. Hill") arising from her assertions that Plaintiff sexually assaulted her.  (See Complaint, ¶¶ 1-9, 12-14.)  Ms. Hill's allegations arose from two separate sexual encounters involving rough sex.  (Complaint, ¶ 3.)  Plaintiff alleges that Ms. Hill purposefully engineered these two encounters and misled Plaintiff about her consent to certain activities in order to subsequently claim Plaintiff "had taken things too far" in order to obtain a financial settlement.  (Complaint, ¶¶ 3-4, 74, 89-91.)

Plaintiff acknowledges that Ms. Hill's claims, as well as a petition for a Domestic Violence Restraining Order (the "Underlying Proceeding") she filed, attracted considerable media attention.  (Complaint, ¶¶ 1, 7-8, 86, 99, 105.)  This, no doubt, is because Plaintiff was a successful, renowned baseball player.  When many of the at-issue events occurred in 2021, Plaintiff was the reigning Cy Young award winner and the highest paid ballplayer that season.  (Complaint, ¶ 26.)

The court in the Underlying Proceeding declined to issue a restraining order (for reasons discussed *infra*).  (See Complaint, ¶¶ 124-125.)  Further, the District Attorney declined to file formal charges against Plaintiff, stating: "[a]fter a thorough review of all the available evidence, including the civil restraining order proceedings, witness statements and the physical evidence, the People are unable to prove the relevant charges <u>beyond a reasonable doubt</u> . . . ."  (RJN, Exh. 7 (emphasis added).)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1

2

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

**B.** **The Court In The Underlying Proceeding Finds Plaintiff Inflicted Terrible Injuries On Ms. Hill But Declines To Issue A Restraining Order Citing The Absence Of Future Contact**

The Underlying Proceeding ended with the court first concluding, as a preliminary matter, that Plaintiff and Ms. Hill's arrangement sufficed to meet the statutory definition of a "dating relationship," a predicate to a domestic violence restraining order.  (See RJN, Exh. 2 at 5:23 - 6:8.)  The court then reviewed the evidence presented, and concluded that the physical evidence at trial established that Plaintiff had inflicted terrible injuries on Ms. Hill in the midst of a sexual encounter:

> Let me be clear.  The injuries as shown in the photographs are terrible.  Under most circumstances, merely seeing photographs such as those would serve as a per se condemnation of the perpetrator of such injuries.

(RJN, Exh. 2 at 8:15 - 18.)

Nevertheless, as noted above, the court in the Underlying Proceeding declined to issue a restraining order.  (RJN, Exh. 2 at 6 - 11.)  The trial court did so based on two stated reasons:  (1) it believed that Ms. Hill had objectively voiced consent to specific acts of rough sex, and the injuries she suffered could be viewed as a natural consequence of the acts to which she consented and (2) there appeared to be no reasonable possibility that Plaintiff and Ms. Hill would ever cross paths again.  (*Id.*)

As relevant here, Plaintiff did not testify at the Underlying Proceeding.  After Plaintiff advised he intended to assert the Fifth Amendment in response to any questioning, the underlying court concluded it would be an idle act to even have him take the stand.  (RJN, Exh. 2 at 3:23 – 4:18.)

/ / /

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

C.   **The *Washington Post* Quotes Mr. Thiagarajah, Whose Quoted Statements Echo The Court's Finding That The Injuries Were Terrible, And Acknowledge The Dispute About Consent In The Underlying Proceeding**

As noted at the outset, Plaintiff's selective quotation of Mr. Thiagarajah deliberately omits a critically important clarification.  First, a review of the article demonstrates that Mr. Thiagarajah's quotation is framed in response to a video Plaintiff released wherein Plaintiff, despite asserting the Fifth Amendment during the Underlying Proceeding, made specific denials of Ms. Hill's claims:

> In a video statement he posted to YouTube . . . titled 'The Truth,' Bauer said the criminal investigation was 'extremely thorough' and derided the media for having 'tried to convict me in the court of public opinion without having or choosing to report anywhere close to all of the facts.'
>
> In the video, Bauer acknowledged having rough sex with his accuser but denied other allegations that she made against him, including that he punched her in the face or vagina, scratched her or sodomized her without her consent.

(RJN, Exh. 1 at p. 1.)

Mr. Thiagarajah's tempered comments discuss the District Attorney's decision not to pursue formal charges, and include far more perspective than Plaintiff's Complaint represents.  The Washington Post reported:

> Fred Thiagarajah, one of the woman's [Ms. Hill's] attorneys, acknowledged that prosecutors had a 'daunting task' because Bauer's accuser had already been denied a restraining order against the pitcher in a civil hearing. But Thiagarajah said the decision to not charge Bauer was 'not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  a declaration of innocence; it's a declaration of "I don't

2  have enough evidence to prove this beyond a reasonable

3  doubt." And there's no doubt that Mr. Bauer just brutalized

4  [the woman].'

5  (RJN, Exh. 1 at p. 2.)

6  Critically, the *Washington Post* also quoted Mr. Thiagarajah as he

7  acknowledged the tricky issue with consent at the core of the dispute between Plaintiff

8  and Ms. Hill:

9  In response to Bauer's specific denials of punching,

10  scratching or sodomizing the woman, Thiagarajah noted

11  that during the restraining order hearing last summer, the

12  pitcher declined to take the stand, exercising his right

13  against self-incrimination.

14  'It's easy to deny these things occurred when you're not

15  going to have a chance to be cross-examined about it,'

16  Thiagarajah said. 'The evidence is overwhelming that these

17  things occurred . . . .  That was established to 100 percent

18  certainty.  **The issue was whether or not she consented to**

19  **the abuse.**'"

20  (RJN, Exh. 1 at p. 2 (emphasis added).)

21  The bolded and underscored sentence above is the language which,

22  unaccountably, Plaintiff has omitted from his Complaint.

23

24  **D.    Plaintiff's Claim Against Mr. Thiagarajah**

25  Although Plaintiff's claims against Ms. Hill span much of Plaintiff's

26  Complaint, the allegations against Mr. Thiagarajah are far narrower, and relate only

27  to cherry-picked portions of quotes the *Washington Post* ascribed to Mr. Thiagarajah.

28  (Complaint, ¶ 158.)  In particular, Plaintiff asserts that Mr. Thiagarajah made two

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1                    5

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

false statements of fact to the *Washington Post*:

> (1)   There was 'no doubt that [Plaintiff] just brutalized'
> Ms. Hill; and
>
> (2)   '[i]t's easy to deny these things occurred when you're
> not going to have to be cross-examined about it . . .   The
> evidence is overwhelming that these things occurred.  . . .
> That was established to 100 percent certainty.'

(*Id.*)[2]

Based on these selected portions of the *Washington Post*'s quotes of Mr. Thiagarajah, Plaintiff alleges a claim for defamation against him.  (Complaint, ¶¶ 158-163.)

## III.   THE ANTI-SLAPP STATUTE EXISTS TO ELIMINATE MERITLESS LAWSUITS TARGETING PROTECTED ACTIVITY AT AN EARLY STAGE

### A.   The Anti-SLAPP Statute Generally

In 1992, the California Legislature enacted the anti-SLAPP statute to combat increasing use of lawsuits designed to chill "a party's constitutional right of petition." *State Farm General Ins. Co. v. Majorino*, 99 Cal. 4th 974, 975 (Cal. 2002). Commonly, "SLAPP suits are brought to obtain economic advantage over the defendant, not to vindicate a legally cognizable right of the Plaintiff."  *Id.* at 1126 (citing *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 815-816 (Cal. Ct. App. 1994)).

---

[2]   Plaintiff also notes that Mr. Thiagarajah told the *Washington Post* that the "District Attorney's decision not to charge [Plaintiff] was 'not a declaration of innocence' but rather a 'declaration of 'I don't have enough evidence to prove this beyond a reasonable doubt.'"  (Complaint, ¶ 147.)  This statement—which is indisputably accurate—is not cited as a defamatory statement by Plaintiff. (Complaint, ¶¶ 158-163.)



The elements for a special motion to strike under section 425.16 are set out as follows:

> (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
>
> (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
>
> (3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of the determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be effected by that determination in any later stage of the case or in any subsequent proceeding.

Cal. Civ. Proc. Code § 425.16.

Moreover, the Legislature amended Cal. Civ. Proc. Code § 425.16 in January 1997 to prevent conflicting interpretations of the statute issued by the appellate courts. The Legislature stated that henceforth the statute "shall be **construed broadly**." Cal. Civ. Proc. Code § 425.16(a) (emphasis added); *see also Rohde v. Wolfe*, 154 Cal. App. 4th 28, 35 (Cal. 2007) ("[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

In determining whether to grant an anti-SLAPP motion, the Court engages in a two-step process.  First, the Court decides whether the moving party has made a threshold showing that the challenged cause of action is one arising from protected activity, i.e., whether the activity fits one of the four categories enumerated at § 425.16, subdivision (e).  *Navellier v. Sletten*, 29 Cal.4th 82, 88 (Cal. 2002).  Once the moving party establishes that the challenged cause of action arises from protected activity, the burden shifts to plaintiff to show a probability that he will succeed on his claim.  *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 159-160 (Cal. Ct. App. 2012); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777 (Cal. Ct. App. 1996); Cal. Civ. Proc. Code § 425.16(a).

### B.   An Anti-SLAPP Motion May Be Brought In Federal Court

The anti-SLAPP statute applies to state law claims in federal court.  *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021); *Graham-Sult v. Clainos*, 738 F.3d 1131, 1141-42 (9th Cir. 2013); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) ("Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court.").  Plaintiff's only claim against Mr. Thiagarajah is for defamation, which is a state law claim.

## IV.   PLAINTIFF'S CLAIM AGAINST MR. THIAGARAJAH ARISES FROM PROTECTED ACTIVITY

### A.   The Defamation Claim Against Mr. Thiagarajah Targets Statements Made About a Public Issue

The anti-SLAPP statute applies to any claim targeting "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code §

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

425.16(e)(3), (4).  A newspaper has been widely recognized as a "public forum" for purposes of Cal. Civ. Proc. Code § 425.16(e)(3).  *See Sonoma Media Investments, LLC v. Superior Court*, 34 Cal. App. 5th 24, 33-34 (Cal. Ct. App. 2019); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1038-1039 (Cal. Ct. App. 2008); *contra Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal. App. 4th 855, 863 n. 5 (Cal. Ct. App. 1995).

"[T]he definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (Cal. Ct. App. 2003).  Consequently, a matter which is "newsworthy" typically qualifies as an issue of public interest.  (See *Church of Scientology of California v. Wollersheim*, 42 Cal. App. 4th 628, 651 (Cal. Ct. App. 1996) (overruled in part on another ground in *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 n. 5 (Cal. 2002)); *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 807-808 (Cal. Ct. App. 2002).)

The relevant test for determining whether a statement involves a public issue or matter of public interest involves two questions:  (1) "what 'public issue or … issue of public interest' the speech in question implicates—a question [courts] answer by looking to the content of the speech" and (2) "what functional relationship exists between the speech and the public conversation about some matter of public interest." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149-150 (Cal. Ct. App. 2019).

On the second issue, a court need only find some degree of closeness between the statements and the at-issue public interest—i.e., that any connection is not fleeting or tangential—because "[a]t a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance." *Rand Resources, LLC v. Carson*, 6 Cal. 5th 610, 625 (Cal. 2019).  As the California Supreme Court instructed:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

> [O]ur inquiry does not turn on a normative evaluation of the substance of the speech. We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest.

*FilmOn.com Inc.*, 7 Cal. 5th at 151.

Here, Mr. Thiagarajah's statements relate to a matter of public interest. As the Complaint acknowledges, Ms. Hill's claims against Plaintiff attracted considerable attention because they place squarely at issue the serious issue of sexual assault, sexual power dynamics, and a woman's right to consent. (Complaint, ¶¶ 1, 7-8, 86, 99, 105.) Moreover, Plaintiff himself, is a celebrity, and matters concerning a celebrity are often deemed matters of public interest. *See FilmOn.com Inc.*, 7 Cal. 5th at 145 (stating that speech about a "person or entity in the public eye" constitutes a matter of public interest). Indeed, "there is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities." *Stewart v. Rolling Stone, LLC*, 181 Cal. App. 4th 664, 677-678 (Cal. Ct. App. 2010); accord *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 109-110 (Cal. Ct. App. 2007) (statements regarding firing of coach of college baseball team were a matter of public interest because the coach "occupied a high-profile position in San Diego's athletic community" and his discharge in the midst of a winning season "was an issue of import to a substantial segment of the public").

As noted above, speech about Plaintiff and his activities is a matter of public interest, as Plaintiff is a "person in the public eye." *FilmOn.com Inc.*, 7 Cal.5th at 145; *Symmonds v. Mahoney*, 31 Cal. App. 5th 1096, 1110-1111 (Cal. Ct. App. 2019) (holding musician's selection of a drummer a matter of public interest because of the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

fame of the musician).  Likewise, as the Complaint readily concedes, Plaintiff and his treatment of Ms. Hill generated substantial media attention.[3]  (Complaint, ¶¶ 1, 7-8, 86, 99, 105.)  This, of course, is self-evident from the fact that the *Washington Post* itself reported on the matter.  (RJN, Exh. 1.)  Mr. Thiagarajah's quoted comments in the *Washington Post* relate specifically to statements made in connection with this matter of public interest.

## B.   Mr. Thiagarajah's Statements Were Made In Connection With An Official Proceeding

In addition to statements relating to a matter of public interest, the anti-SLAPP statute also applies to "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  Cal. Civ. Proc. Code § 425.16(e)(2).

"Under the plain language of section 425.16, subdivision (e)(1) and (2), . . . all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." *Cabral v. Martins*, 177 Cal. App. 4th 471, 480 (Cal. Ct. App. 2009).  When a claim falls under subdivision (e)(2), the statute "does not require any showing that the litigated matter concerns a matter of public interest." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1261 (Cal. Ct. App. 2008).

Under subdivision (e)(2), "[a]n attorney has standing to bring a special motion to strike a cause of action arising from petitioning activity undertaken on behalf of the attorney's client."  *Neville*, 160 Cal. App. 4th at 1262, fn. 6 (holding first prong met

---

[3]   Indeed, Plaintiff was a newsworthy figure who attracted substantial media attention well before the issue of his treatment of Ms. Hill arose.  (*See, e.g.*, RJN, Exhs. 4-6.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1

11

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

1  by letter sent in anticipation of litigation); *see also Briggs v. Eden Council for Hope*
2  *& Opportunity*, 19 Cal. 4th 1106, 1115 (Cal. 1999) (holding that protected activities
3  include acts "preparatory to or in anticipation of the bringing of an action or other
4  official proceeding"); *Thayer*, 207 Cal. App. 4th at 154 (discussing expansive view
5  courts have adopted when construing protected statements made in connection with
6  litigation).

7       Furthermore, communications made in connection with an investigation by law
8  enforcement fall under prong one of the anti-SLAPP statute. *Comstock v. Aber*, 212
9  Cal.App.4th 931, 941-942 (Cal. Ct. App. 2012) (statements made to police constituted
10  protected activity).

11       Likewise, statements made regarding the conclusion of an issue under
12  consideration or review are protected under Cal. Civ. Proc. Code § 425.16(e)(2).
13  *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036, 1043 (Cal. Ct. App. 1997).
14  In *Braun*, the court concluded that a series of articles reporting on a state investigatory
15  audit—including an article "summarizing the findings" of the audit—constituted
16  statements "in connection" with an issue under consideration by an "official
17  proceeding authorized by law . . . ." *Id.* at 1041 n. 3, 1043-1048.

18       Here, Mr. Thiagarajah's statements were made in connection with the
19  Underlying Proceeding and the District Attorney's investigation of Plaintiff.  (See
20  RJN, Exh. 1 at p. 2.)  The comments discuss the status and meaning of the District
21  Attorney's decision not to prosecute, and discuss what transpired in the Underlying
22  Proceeding.  The statements were "made in connection" with an issue that had been
23  under consideration or review by the District Attorney and the Superior Court.

24

25  **V.    PLAINTIFF CANNOT MEET HIS BURDEN ON PRONG TWO OF THE**
26  **ANTI-SLAPP STATUTE**

27       In the Ninth Circuit, "[i]f a defendant makes an anti-SLAPP motion to strike
28  founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   and 12 standards . . . ." *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,

2   890 F.3d 828, 833 (9th Cir. 2018).  Consequently, where the arguments are purely

3   legal,  the analysis is performed under Fed. R. Civ. Proc. 12(b)(6).  *Id.* at 833-835.

4   I.e., the Court's inquiry is whether the Complaint, combined with matters subject to

5   judicial notice, "pleads factual content that allows the court to draw the reasonable

6   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

7   556 U.S. 662, 678 (2009).

8       Here, Mr. Thiagarajah's anti-SLAPP motion is based only on legal issues and

9   matters subject to judicial notice, meaning it is subject to the standards governing a

10  motion to dismiss.  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155-1156 (9th

11  Cir. 2021).

12

13      **A.    Plaintiff cannot establish necessary elements of defamation**

14      The elements of a defamation claim are (1) a publication that is (2) false, (3)

15  defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special

16  damage.  *John Doe 2 v. Superior Court*, 1 Cal.App.5th 1300, 1312 (Cal. Ct. App.

17  2016).

18

19          **1.    The allegedly defamatory statements are nonactionable**

20              **opinions**

21      Statements of fact are actionable as defamation, while opinions generally are

22  not.  *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 384–385 (Cal. Ct. App.

23  2004).  However, opinions may be actionable if they imply an assertion of objective

24  fact.  *Id.* at 385. Consequently, "the dispositive question is whether a reasonable fact

25  finder could conclude the published statement declares or implies a provably false

26  assertion of fact." *Id.*

27      Whether challenged statements convey a factual imputation is ordinarily a

28  question of law for the court. *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 696 (Cal.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Ct. App. 2012).  "Only once the court has determined that a statement is reasonably

2  susceptible to such a defamatory interpretation does it become a question for the trier

3  of fact whether or not it was so understood."  *Id.*

4       Under California law, courts apply a totality of the circumstances test to make

5  this determination.  *Franklin*, 116 Cal.App.4th at 385.  Under this rubric, courts look

6  both to (1) the substance of the defamatory to statement (to determine whether the

7  words would be understood in a defamatory sense) and (2) the context in which the

8  statement was made.  "Since [a] word is not a crystal, transparent and unchanged,

9  [but] is the skin of a living thought and may vary greatly in color and content

10  according to the circumstances and the time in which it is used[,] the facts surrounding

11  the publication must also be carefully considered."  *Melaleuca, Inc. v. Clark*, 66

12  Cal.App.4th 1344, 1354 (Cal. Ct. App. 1998).

13       Critically, in considering the context, a court examines

14            the nature and full content of the communication and . . .

15            understanding of the audience to whom the publication was

16            directed. [Citation.]  [T]he publication in question must be

17            considered in its entirety; [i]t may not be divided into

18            segments and each portion treated as a separate unit.

19            [Citation.]  It must be read as a whole in order to understand

20            its import and the effect which it was calculated to have on

21            the reader [citations], and construed in the light of the whole

22            scope and apparent object of the writer, considering not

23            only the actual language used, but the sense and meaning

24            which may have been fairly presumed to have been

25            conveyed to those who read it.

26  *Id.* at 1354 (internal quotation marks omitted); *see also Old Dominion Branch No.

27  496 v. Austin*, 418 U.S. 264, 285-286 (1974) (concluding that readers would interpret

28  use of the term "traitor" in article as opinion about reprehensibility of conduct rather

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1                                14

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

1  than an assertion that plaintiffs had actually committed treason).)

2    Examining the context of the statements at issue necessarily involves

3  consideration of (1) the audience, (2) the circumstances under which the statements

4  were made, and (3) the speaker's qualifications. *See Baker v. Los Angeles Herald*

5  *Examiner*, 42 Cal.3d 254, 261 (Cal. 1986) (contemplating how an average reader

6  would understand the statements); *Summit Bank*, 206 Cal.App.4th at 699 (comments

7  on internet forum generally not expected to be treated as statements of fact); *Franklin*,

8  116 Cal.App.4th at 389 (speaker's qualifications relevant to determining comments

9  did not constitute statement of fact).)

10    Moreover, "[a]lthough defamation is primarily governed by state law, the First

11  Amendment safeguards for freedom of speech and press limit state law." *Underwager*

12  *v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995). "The scope of constitutional

13  protection extends to statements of opinion on matters of public concern that do not

14  contain or imply a provable factual assertion." *Id.*

15    The Ninth Circuit has adopted a three-part test to ascertain whether a statement

16  of opinion contains or implies a provable factual assertion:

17        (1) whether the general tenor of the entire work negates the

18        impression that the defendant was asserting an objective

19        fact, (2) whether the defendant used figurative or hyperbolic

20        language that negates that impression, and (3) whether the

21        statement in question is susceptible of being proved true or

22        false.

23  *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

24    As pertinent here, "[p]art of the totality of the circumstances used in evaluating

25  the language in question is whether the statements were made by participants in an

26  **adversarial setting**." *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (Cal. Ct.

27  App. 1999) (emphasis added). "[W]here potentially defamatory statements are

28  published in a . . . setting in which the audience may anticipate efforts by the parties

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole,

2   language which generally might be considered as statements of fact may well assume

3   the character of statements of opinion." *Id.* at 1401-1402.  Not surprisingly, it is well-

4   recognized that individuals on opposite sides of litigation are prone to develop and

5   espouse "highly partisan" opinions about their (or their client's) adversaries.  *Id.* at

6   1402-1405.

7     Thus, "[d]eprecatory statements regarding the merits of litigation are 'nothing

8   more than "the predictable opinion" of one side to the lawsuit' and cannot be the basis

9   for a defamation claim."  *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141,

10  156 (Cal. Ct.. App. 2013) (quoting *Ferlauto*, 74 Cal. App. 4th at 1403).

11    Here, Plaintiff's claim for defamation fails as a matter of law because the at-

12  issue statements cannot be deemed actionable statements of fact.  The *Washington*

13  *Post* identifies Mr. Thiagarajah as counsel for Mr. Hill.  Consequently, from the outset

14  Mr. Thiagarajah's comments are presented as the words of an advocate.  Further, the

15  statements concern Mr. Thiagarajah's views about the evidentiary presentation at the

16  Underlying Proceeding—an emotionally-charged litigation where his client was

17  adverse to Plaintiff—and his objection to Plaintiff's decision to voice denials to Mr.

18  Thiagarajah's client via YouTube rather than under oath.

19    The use of loose, figurative, and hyperbolic language—like the term

20  "brutalized"—likewise cuts against a determination of actionable defamatory

21  statements.  *See Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th

22  Cir. 1995) (holding that the use of a "string of colorful adjectives" created a context

23  of "lusty and imaginative expression" that rendered the assertion that a judge was

24  "dishonest" a statement of "rhetorical hyperbole, incapable of being proven true or

25  false.").  Indeed, words like "brutalize" are to be expected when dealing with sensitive

26  issues like sexual violence.  *See Underwager*, 69 F.3d at 367 ("Because how one

27  proves child abuse is a highly controversial subject, the audience to a discussion of

28  defense tactics in child abuse cases would expect emphatic language on both sides.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Put simply, Mr. Thiagarajah's views about what was proven, including whether
2   Plaintiff brutalized her, at a hotly contested evidentiary hearing where the judge
3   ultimately found photograph evidence depicted terrible injuries are plainly matters of
4   opinion.   Moreover, they are statements regarding the merits of litigation, and in
5   context are plainly recognizable as the opinions of an advocate in the adversary
6   process.  Like all such statements, they are non-actionable.

7

8           **2.      Plaintiff cannot establish "falsity" because the gist and sting**
9                 **of Mr. Thiagarajah's statements are true**

10   Here, even assuming the at-issue statements could be viewed as sufficiently
11   factual to give rise to a claim for defamation, Plaintiff cannot establish falsity.

12   A viable defamation claim requires the existence of a provable falsehood.
13   *McGarry v. University of San Diego*, 154 Cal.App.4th 97, 112 (Cal. Ct. App. 2007).
14   Thus, it is axiomatic that a plaintiff cannot establish a claim for defamation where the
15   allegedly offensive statements are true.  *See Terry v. Davis Community Church* (2005)
16   131 Cal.App.4th 1534, 1553 (Cal. Ct. App. 2005); *Chaker v. Mateo*,  209 Cal.App.4th
17   1138, 1150 (Cal. Ct. App. 2012); *Gilbert v. Sykes*, 147 Cal.App.4th 13, 28 (Cal. Ct.
18   App. 2007).

19   Further along those lines, it "is well settled that a defendant is not required in
20   an action for libel to justify every word of the alleged defamatory matter; it is
21   sufficient if the substance, *the gist, the sting of the libelous charge be justified, and if*
22   *the gist of the charge be established by the evidence the defendant has made his case*."
23   *Gilbert*, 147 Cal.App.4th at 28 (emphasis added).  "[A] slight inaccuracy in the details
24   will not prevent a judgment for the defendant, if the inaccuracy does not change the
25   complexion of the affair so as to affect the reader of the article differently."  *Id.*; *see*
26   *also Ringler Associates Inc. v. Maryland Casualty Co.*, 80 Cal.App.4th 1165, 1182
27   (Cal. Ct. App. 2000) ("[T]he determinative question is whether the 'gist or sting' of
28   the statement is true or false, benign or defamatory, in substance.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    As noted above, the court in the Underlying Proceeding expressly found that

2  the evidence showed that Plaintiff had inflicted terrible injuries on Ms. Hill.  The

3  underlying court nevertheless declined to issue a restraining order, citing (1) concerns

4  as to Plaintiff's consent to rough sex and (2) the unlikelihood that Plaintiff and Ms.

5  Hill would ever cross paths again in the future.  (RJN, Exh. 2 at 6 - 11.)

6    Consequently, the gist and sting of Mr. Thiagarajah's quotes in the *Washington*

7  *Post* are true.

8

9           (a)    Mr. Thiagarajah accurately described the underlying

10                  court's conclusion

11    To the extent they can be considered verifiable statements of fact, Mr.

12  Thiagarajah's statements that Ms. Hill had established that Plaintiff "brutalized" Ms.

13  Hill but the underlying court had concerns about consent are true.  As a preliminary

14  matter, the word "[b]rutalized" means "to treat brutally," and the word brutal is

15  defined as "suitable to one who lacks intelligence, sensitivity, or compassion."

16  *Brutalized*, MERRIAM-WEBSTER.COM (2022) (available at https://www.merriam-

17  webster.com/dictionary/brutalize);   *Brutal*,   MERRIAM-WEBSTER.COM   (2022)

18  (available at https://www.merriam-webster.com/dictionary/brutally).

19    As noted above, the underlying court concluded that Ms. Hill had established

20  that Plaintiff delivered "terrible" injuries to Ms. Hill.  (RJN, Exh. 2 at 8:15 - 18.)  The

21  infliction of terrible injuries is a *per se* example of treating someone with a lack of

22  sensitivity or compassion.  Moreover, the underlying court's ultimate reason for

23  denying Ms. Hill relief—concerns about the matter of consent and the unlikelihood

24  of future conduct—do not negate the court's concurrent finding of terrible injuries.

25  *See, e.g.*, *Swate v. Schiffers*, 975 S.W.2d 70, 75 (Tex. App. 1998) (holding that

26  statement that plaintiff "assaulted" an investigator was substantially true despite not

27  guilty finding in criminal prosecution because the gist of the point—the plaintiff's

28  lack of decorum—was true).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    (b) <u>Mr. Thiagarajah's statement about the difference between</u>

2      <u>testifying under oath and offering denials via YouTube is</u>

3      <u>true</u>

4   Similarly, Mr. Thiagarajah's statement regarding the difference between

5 denying allegations via YouTube and testifying about them under oath is on its face

6 true.  Plaintiff was not under penalty of perjury when he made his denial, and it is

7 axiomatic that such statements are not deemed admissible evidence.  *See* Fed. R. Evid.

8 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully.

9 It must be in a form designed to impress that duty on the witness's conscience.").

10

11  **B.**  **<u>The Fair Reporting Privilege Bars Plaintiff's Claim</u>**

12   Cal. Civ. Code § 47 makes privileged "a fair and true report in, or a

13 *communication to*, a public journal, of (A) a judicial, (B) legislative, or (C) other

14 public official proceeding, or (D) of anything said in the course thereof, or (E) of a

15 verified charge or complaint made by any person to a public official, upon which

16 complaint a warrant has been issued."  Cal. Civ. Code, § 47 (d)(1) (italics added).

17 "Civil Code section 47, subdivision (d) confers an absolute privilege on any fair and

18 true report in, or a communication to, a public journal of a judicial proceeding, or

19 anything said in the course thereof."  *Sipple v. Foundation for Nat. Progress*, 71 Cal.

20 App. 4th 226, 240 (Cal. Ct. App. 1999).

21   "Courts have construed Civil Code section 47, subdivision (d) broadly . . . ."

22 *Id.*  After all, the California Legislature's intent in its most recent amendment to this

23 subdivision was to "preserve the scarce resources of California's courts [and] to avoid

24 using courts for satellite litigation . . . ."  *J-M Manufacturing Co., Inc. v. Phillips &*

25 *Cohen LLP*, 247 Cal. App. 4th 87, 101 (Cal. Ct. App. 2016).

26 / / /

27 / / /

28 / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1

19

1    **1.     Mr. Thiagarajah's statements are communications to a**
2    **public journal about a judicial proceeding and law**
3    **enforcement investigation**

4    The term "public official proceeding" means a governmental proceeding.
5    *Carver v. Bonds*, 135 Cal.App.4th 328, 350-351 (Cal. Ct. App. 2005).   Thus, the
6    provision even includes law enforcement investigations.   *Balzaga v. Fox News*
7    *Network, LLC*, 173 Cal.App.4th 1325, 1337 (Cal. Ct. App. 2009).

8    Here, Mr. Thiagarajah's statements were made to the *Washington Post*, a public
9    journal, and concerned communications regarding a judicial proceeding and law
10   enforcement investigation.   *See Carver*, 135 Cal.App.4th at 350 (holding that *San*
11   *Francisco Chronicle* was a "public journal"); *Argentieri v. Zuckerberg*, 8 Cal. App.
12   5th 768, 789 (Cal. Ct. App. 2017) (applying privilege to press release regarding
13   malicious prosecution lawsuit); *Balzaga*, 173 Cal.App.4th at 1337 ("Thus, an article
14   or broadcast about statements made in the context of a police investigation is
15   privileged and cannot support a defamation claim.").

16

17   **2.     Mr. Thiagarajah's statements were a fair and true report of**
18   **the Underlying Proceeding**

19   A report is "fair and true" so long as the substance of the communication
20   captures the gist or sting of the statements made in the official proceedings.   *See J-M*
21   *Manufacturing Co., Inc.*, 247 Cal.App.4th at 101-105; *Carver*, 135 Cal.App.4th at
22   351.

23   "[I]n determining the applicability of the fair and true reporting privilege, '[t]he
24   report is not to be judged by the standard of accuracy that would be adopted if it were
25   the report of a professional law reporter or a trained lawyer.'"   *Argentieri*, 8 Cal. App.
26   5th at 787-788 (Cal. Ct. App. 2017) (quoting *Burrill v. Nair*, 217 Cal. App. 4th 357,

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    398 (Cal. Ct. App. 2013)).[4]

2        Rather, "[t]he defendant is entitled to a certain degree of 'flexibility/literary

3    license' in this regard, such that the privilege will apply even if there is a slight

4    inaccuracy in details—one that does not lead the reader to be affected differently by

5    the report than he or she would be by the actual truth." *Argentieri*, 8 Cal. App. 5th at

6    787-788 (Cal. Ct. App. 2017).

7        Moreover, the full context of the statements must be considered.   In *J-M*

8    *Manufacturing Co., Inc.*, the plaintiff sued the defendant law firm over a press release

9    the law firm issued following a jury verdict in an underlying False Claims Act lawsuit

10   regarding PVC pipes the plaintiff manufactured.   247 Cal. App. 4th at 92-93.   At the

11   underlying trial, the defendant law firm repeatedly asserted the matter was not a

12   "products liability" case, meaning it did not need to demonstrate any product defects

13   in the plaintiff's pipes but rather only needed to demonstrate false statements that the

14   plaintiff misrepresented that its pipes met certain industry standards.  *Id.*  After the

15   jury returned a verdict finding the plaintiff presented false claims, the defendant law

16   firm issued a press release which included multiple statements attacking the quality

17   of the plaintiff's pipe, referring to it as "faulty," "substandard," "weak," and

18   "shoddy," and referenced the plaintiff's potential liability for billions of dollars.  *Id.*

19   at 93-94.

20       The plaintiff filed a lawsuit for defamation and trade libel, which drew an

21   unsuccessful anti-SLAPP motion at the trial court stage.   The California Court of

22   Appeal *reversed* the denial of the anti-SLAPP motion, concluding that Cal. Civ. Proc.

23   Code § 47(d) rendered the press release privileged.  *Id.* at 101-104.  In doing so, the

24

---

25   [4]    In *Argentieri*, the court examined the comments with this relaxed framework

26   regardless of the fact that the communication at issue was an e-mail sent by an

27   attorney to members of the media.  8 Cal. App. 5th at 787-789.  Here, of course, Mr.
     Thiagarajah did not directly prepare the *Washington Post* article in which he was

28   quoted.  (RJN, Exh. 1.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

court concluded, as a matter of law, that reading the press release in context revealed that it adequately conveyed the substance of the underlying jury verdict:

> [T]he average reader of the entire three-plus-page press release would reasonably understand the release described the substantial evidence presented at trial detailing J-M's decade-long policy of emphasizing production quotas over quality control, essentially unchallenged by J-M, as well as the specific findings of the jury that J-M knowingly misrepresented its PVC pipe had been manufactured and tested in a manner that assured it had the strength and durability required by applicable industry standards. J-M's attempt to read the press release as inaccurately implying the jury had found specific items of pipe it had provided for underground water systems were defective and had actually failed *is predicated on a strained construction of the language used, relies on 'snippets taken out of context'* and effectively imports into the press release's description of the trial and jury verdict quotations conveying posttrial comments of several government officials.

*Id.* at 101 (italics added).

The court specifically rejected the plaintiff's attempt to highlight specific phrases in isolation, instructing that the statements needed to be considered in their totality. *Id.* at 102. The court likewise found that describing the plaintiff's noncompliant and misrepresented pipe as "'faulty' or 'substandard'" fell "well within the acceptable margin of flexibility/literary license." *Id.* Moreover, the court rejected the plaintiff's attempt to reframe comments about the shoddiness of the plaintiff's product as relating specifically to the jury's findings rather than as a description of the evidentiary showing made at the underlying trial:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

[C]ontrary to J-M's argument, neither use of the term 'shoddy' purported to describe the jury's findings, as opposed to evidence, outlined in the press release, regarding J-M's production methods that pressured its managers to satisfy output requirements without regard to quality standards: 'Many witnesses testified that JM Eagle plant managers were under intense pressure to meet production quotas that were impossible to fulfill without cutting corners. Those who failed to meet quotas had their pay docked, and some lost their jobs. If they met the quotas, they could double their monthly salaries.

The quotas created strong incentives to ship bad pipe. The jury heard many witnesses testify that plant managers routinely removed 'reject' tags from pipe that quality control personnel had identified as failing to meet quality standards. That pipe was then shipped to unknowing customers.'  Although J-M points out that the evidence at trial was contested, it does not contend these statements are inaccurate summaries of the extensive testimony presented by Phillips & Cohen in support of the plaintiffs' case. Labeling these manufacturing practices and the resulting product "shoddy" is a fair characterization of the trial evidence.  No reasonable reader would understand it to be part of the jury's verdict, which was clearly described as limited to false representations regarding uniform compliance with industry strength and durability standards.

*Id.* at 102-104.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Here, as in *J-M Manufacturing Co., Inc.*, Mr. Thiagarajah's statements are "fair and true" because they accurately describe the substance of the result of the Underlying Proceeding.  As the court in the Underlying Proceeding found, the evidence established that Plaintiff inflicted terrible injuries on Ms. Hill.  (RJN at Exh. 2 at 8:15 - 16.)  But, the underlying court expressed concerns about whether Ms. Hill had, by consenting to certain rough sex activities, impliedly consented to the injuries that could be viewed as a natural consequence of those activities.  (*Id.*)

This is precisely what Mr. Thiagarajah conveyed in his statements as reported by the *Washington Post*.  The use of the word "brutalized," to the extent it could be possibly viewed as factual, is simply a permissible use of literary license consistent with the underlying court's finding that the "injuries as shown in the photographs are terrible."  (RJN, Exh. Exh. 2 at 8:15 - 16.)  Mr. Thiagarajah also fairly recounted, as the *Washington Post* quoted, that the "issue" in the state court "was whether or not she [Ms. Hill] consented to the abuse."  (RJN, Exh. 1 at p. 2.)  That sentence reinforces that Mr. Thiagarajah's statements to the *Washington Post* were a fair and accurate summary of the Underlying Proceeding.  (*Id.*)  Plaintiff omits that important language from the Complaint, which helped set the context for the *Washington Post*'s quotes from Mr. Thiagarajah.

## VI.    CONCLUSION

Plaintiff's claim targets Mr. Thiagarajah's exercise of protected activity.  Further, Plaintiff's claim lacks merit, as a matter of law.  He cannot establish key elements of a defamation claim, and the fair reporting privilege firmly bars Plaintiff's sole claim for relief against Mr. Thiagarajah.

/ / /

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4865-0661-6097.1

24

Case No. 8:22-cv-00868-JVS-ADS
SPECIAL MOTION TO STRIKE

1    For the reasons set forth above, Mr. Thiagarajah respectfully urges the Court to

2  grant his anti-SLAPP Motion, strike the second claim in the Complaint with prejudice

3  and deem Mr. Thiagarajah the prevailing party.

4

5  DATED:  July 19, 2022                    LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8                                  By:      /s/ David D. Samani
                                           ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
9                                          KENNETH C. FELDMAN
                                           DAVID D. SAMANI
10                                         Attorneys for Defendant NIRANJAN
                                           FRED THIAGARAJAH
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



4865-0661-6097.1                           25