# EXHIBIT 2

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   FOR THE COUNTY OF LOS ANGELES

 3       HON. DIANNA GOULD-SALTMAN, JUDGE      DEPARTMENT 35

 4


 5
         LINDSEY HILL,                        )
 6                                            )
                      PETITIONER,             )
 7            VS.                             )      NO. 21STRO03198
                                              )
 8                                            )
         TREVOR BAUER,                        )
 9                                            )
                      RESPONDENT.             )
10       _____)

11               REPORTER'S TRANSCRIPT OF PROCEEDINGS
                          AUGUST 19, 2021
12
         APPEARANCES:
13       FOR THE PETITIONER:   MEYER, OLSON, LOWY & MEYERS, LLP
                               BY:  LISA HELFEND MEYER, ESQ.
14                                  DOREEN MARIE OLSON, ESQ.
                                    MARC H. GARELICK, ESQ.
15                             10100 SANTA MONICA BOULEVARD
                               SUITE 1425
16                             LOS ANGELES, CA 90067

17                             RIGHT CHOICE LAW
                               BY:  FRED THIAGARAJAH, ESQ.
18                             5015 BIRCH STREET
                               SUITE 107
19                             NEWPORT BEACH, CA 92660

20       FOR THE RESPONDENT:   KINSELLA WEITZMAN ISER KUMP HOLLEY
                               BY:  SHAWN HOLLEY, ESQ.
21                                  KATE MANGELS, ESQ.
                               808 WILSHIRE BOULEVARD
22                             3RD FLOOR
                               SANTA MONICA, CA 90401
23
                               ZUCKERMAN SPAEDER
24                             BY:  JON R. FETTEROLF, ESQ.
                                    (PRO HAC VICE)
25                             1800 M STREET NW
                               SUITE 1000
26                             WASHINGTON, DC 20036

27
                               JACQUELINE M. CAIRE, CSR #9599, RPR
28                             OFFICIAL REPORTER
```

| | | |
|---|---|---|
| 1 | CASE NUMBER: | 21STRO03198 |
| 2 | CASE NAME: | LINDSEY HILL VS. |
| 3 | | TREVOR BAUER |
| 4 | LOS ANGELES, CALIFORNIA | THURSDAY, AUGUST 19, 2021 |
| 5 | DEPARTMENT 35 | HON. DIANNA GOULD-SALTMAN, JUDGE |
| 6 | APPEARANCES: | (AS HERETOFORE NOTED.) |
| 7 | REPORTER: | JACQUELINE CAIRE, CSR NO. 9599, RPR |
| 8 | TIME: | 8:42 A.M. |

10    THE COURT: GOOD MORNING, LADIES AND GENTLEMEN. ==ALL
11 RIGHT. LET'S BEGIN WITH THE ISSUE OF MR. BAUER TESTIFYING.
12 I REVIEWED THE CASES THAT WERE CITED BY THE RESPONDENT.== AND
13 IT IS THE COURT'S TENTATIVE TO INQUIRE OF MS. MEYER WHAT
14 QUESTIONS SHE WOULD ASK MR. BAUER WHICH ARE BOTH RELEVANT TO
15 THE ISSUES BEFORE THIS COURT AND NOT LIKELY TO LEAD TO ANY
16 ANSWER THAT MIGHT INCRIMINATE HIM.
17    MS. MEYER: OKAY. YOUR HONOR, FIRST LET ME START BY
18 SAYING THAT I THINK THAT THE TWO CRITICAL ISSUES THAT THE
19 COURT HAS TO DECIDE IS WHETHER OR NOT THERE IS OR WAS A
20 DATING RELATIONSHIP UNDER THE FAMILY CODE. AND, NUMBER TWO,
21 WHETHER OR NOT THE SEX OR THE SEXUAL ASSAULT WAS CONSENSUAL
22 OR NOT. I THINK THOSE ARE THE TWO GENERAL AREAS THAT I
23 INTEND TO ASK HIM ABOUT.
24        SO WITHIN -- DO YOU WANT ME TO TELL YOU
25 SPECIFICALLY WHAT THOSE QUESTIONS ARE?
26    THE COURT: THOSE TWO AREAS ARE ISSUES WHICH ARE
27 RELEVANT. I CANNOT IMAGINE A QUESTION YOU COULD ASK HIM
28 WHICH -- TO WHICH HE WOULD NOT BE ADVISED TO TAKE THE

1  FIFTH.
2       MS. MEYER:  SO, FOR EXAMPLE, IF I ASKED HIM WHETHER OR
3  NOT HE USES INSTAGRAM TO MEET WOMEN SO HE COULD DATE THEM, I
4  DON'T SEE HOW THAT'S INCRIMINATING.  IF HE SAID IT IN AN
5  ARTICLE TO SPORTS ILLUSTRATED THAT HE HAS THESE THREE RULES
6  OF DATING AND HE PROVIDES THEM TO ANY WOMAN WHO HE IS
7  BEGINNING TO DATE, I THINK THAT'S RELEVANT.
8          ALSO, I THINK THAT'S A WAIVER IF HE HAS SAID IT IN
9  THE PAST TO SOMEBODY.
10      THE COURT:  I'M NOT SEEING THAT.
11      MS. MEYER:  WHAT AREN'T YOU SEEING?
12      THE COURT:  I'M NOT SEEING THAT THERE'S A WAIVER.  I'M
13 NOT SEEING THAT THOSE QUESTIONS WOULD BE ONES WHICH COULD NOT
14 INCRIMINATE HIM.
15      MS. MEYER:  WELL, I THINK IT'S HOW YOU VIEW IT.  I MEAN,
16 THERE'S SOME ATTORNEYS THAT TAKE THE POSITION THAT ANYTHING
17 OTHER THAN, AS MS. HOLLEY SAID YESTERDAY, WHAT IS YOUR NAME
18 AND WHAT IS YOUR OCCUPATION, ANYTHING BEYOND THAT CAN
19 INCRIMINATE YOU.  AND IN SOME INSTANCES, THOSE TWO QUESTIONS
20 COULD INCRIMINATE YOU.  SO IF THE COURT IS GOING TO ADOPT THE
21 BROAD VIEW OF ASSERTING THE FIFTH, THEN I GUESS ANYTHING IN
22 THE WORLD THAT I ASK HIM CAN BE USED TO INCRIMINATE HIM.
23      THE COURT:  ANYTHING THAT WOULD BE RELEVANT TO THIS CASE
24 WOULD BE RELEVANT TO A CRIMINAL INVESTIGATION OF THE SAME
25 FACTS AS THIS CASE.
26      MS. MEYER:  UNDER THE COURT'S INTERPRETATION -- BROAD
27 INTERPRETATION, YOU ARE CORRECT.
28      THE COURT:  SO I AM -- WELL, I GUESS I WOULD NEED TO ASK

1   MR. BAUER.
2           MR. BAUER, IF YOUR ATTORNEY ADVISES YOU TO TAKE THE
3   FIFTH, NOT ANSWERING QUESTIONS OTHER THAN YOUR NAME AND YOUR
4   OCCUPATION, IS IT YOUR INTENTION TO FOLLOW THAT ADVICE?
5       THE RESPONDENT:  YES, YOUR HONOR.
6       THE COURT:  THEN I DON'T THINK IT IS PRODUCTIVE TO HAVE
7   HIM EXAMINED UNDER 776 WHERE I SEE THERE TO BE A COMPLETE
8   CONFLUENCE OF THE RELEVANT ISSUES IN THIS CASE AND ANY
9   POTENTIAL INCRIMINATION IN A CRIMINAL CASE, WHICH THE COURT
10  IS INFORMED IS PRESENTLY UNDER INVESTIGATION.
11      MS. MEYER:  I UNDERSTAND THE COURT'S RULING.  HOWEVER,
12  FROM THE CASE LAW, IT APPEARS THAT IN A CIVIL CASE, AGAIN,
13  YOU HAVE TO DO IT QUESTION BY QUESTION.
14      THE COURT:  YOU DON'T HAVE TO DO IT QUESTION BY
15  QUESTION.  IT IS CERTAINLY -- IT IS CERTAINLY ACCEPTABLE TO
16  DO THAT.  BUT IT'S ALSO NOT REQUIRED TO DO THAT IF IT WOULD
17  BE AN EXERCISE IN FUTILITY, WHICH THE COURT IS CONVINCED IT
18  WOULD BE UNDER THESE CIRCUMSTANCES.
19      MS. MEYER:  AS LONG AS THE COURT MAKES THAT FINDING,
20  THEN WE WOULD SUBMIT.
21      THE COURT:  ALL RIGHT.  DOES THE PETITIONER HAVE ANY
22  ADDITIONAL WITNESSES?
23      MS. MEYER:  NO.
24      THE COURT:  ALL RIGHT.  DOES THE RESPONDENT HAVE ANY
25  ADDITIONAL WITNESSES?
26      MR. FETTEROLF:  NO, YOUR HONOR.
27      THE COURT:  ALL RIGHT.  PETITIONER RESTS --
28      MS. MEYER:  PETITIONER --

1  THE STATUTE OR BY THE LEGISLATURE BY THE WORD "FREQUENT."
2  AND WHETHER TWO OCCASIONS OF IN-PERSON CONTACT IS FREQUENT.
3  I FOUND THE SAME CASES THAT COUNSEL RAISED.
4          PEOPLE VS. RUCKER, WHICH ADDRESSES THE STATUTORY
5  DEFINITION AND USES THE LANGUAGE THAT THE LEGISLATURE COULD
6  REASONABLY CONCLUDE DATING RELATIONSHIPS, EVEN WHEN NEW, HAVE
7  UNIQUE EMOTIONAL AND PRIVACY ASPECTS THAT DO NOT EXIST IN
8  OTHER SOCIAL OR BUSINESS RELATIONSHIPS AND THOSE ASPECTS MAY
9  LEAD TO DOMESTIC VIOLENCE EARLY IN A RELATIONSHIP.  AND IN
10 THAT CASE, THE INTERPERSONAL RELATIONSHIP OF THE PARTIES WAS,
11 BY THE FACTS, FAR MORE EXTENSIVE THAN THE RELATIONSHIP
12 BETWEEN THE PARTIES HERE.
13         IN PHILLIPS VS. CAMPBELL, IT WAS IN THE
14 COMMUNICATIONS WITH THE RESPONDENT AFTER SHE HAD REBUFFED HIS
15 ADVANCES THAT APPELLANT MADE CLEAR THAT IT WAS HE WHO
16 CONSIDERED THEIR RELATIONSHIP TO HAVE BEEN MORE THAN A MERE
17 FRIENDSHIP.  IN THAT CASE, THOUGH, THE COURT -- THIS
18 COURT FINDS IT TO BE A STRAINED ANALYSIS AT BEST -- THE COURT
19 FOUND THAT IT WAS THE DEFENDANT WHO IMAGINED THAT A
20 RELATIONSHIP EXISTED WHEN IT DID NOT.  AND THAT THAT WAS
21 SUFFICIENT FOR THE COURT TO DEFINE IT AS A DATING
22 RELATIONSHIP.
23         IN THIS CASE, THE DATING RELATIONSHIP WAS AT MOST
24 TENUOUS.  AT MOST, THE FACTS INDICATE THAT THERE WERE TWO
25 IN-PERSON MEETINGS BETWEEN THE PARTIES HERE AND SOME DIRECT
26 MESSAGES AND TEXTS BETWEEN APRIL 18TH OF THIS YEAR AND MAY
27 30TH OF THIS YEAR.  ONLY A VERY LIBERAL INTERPRETATION OF THE
28 STATUTE, WHICH SEEMS TO BE WHAT THE LEGISLATURE INTENDED,

1  ALLOWS THE COURT TO INCLUDE AMONG "INTIMATE ASSOCIATIONS" THE
2  DIRECT MESSAGES AND TEXTS BETWEEN THE PARTIES, WHICH COULD BE
3  CHARACTERIZED AS HAVING THE EXPECTATION OF AFFECTION OR SEX,
4  AT LEAST AS TO THAT PERIOD BETWEEN APRIL 18 AND MAY 15.
5        SO THE COURT FINDS THAT, WHILE A CLOSE CALL, THIS
6  DOES FALL WITHIN THE AMBIT OF THE LEGISLATIVE INTENT THAT
7  THIS BE INCLUDED -- THE TYPE OF RELATIONSHIP BETWEEN THESE
8  PARTIES BE INCLUDED UNDER THE D.V.P.A.
9        I THEN GO TO THE TESTIMONY AND THE EVIDENCE THAT
10 THE COURT RECEIVED.  PETITIONER MADE CLEAR IN HER TESTIMONY
11 THAT WHAT SHE THOUGHT PRIVATELY AND WHAT SHE COMMUNICATED TO
12 RESPONDENT WERE OFTEN NOT THE SAME THING, SPECIFICALLY WHEN
13 IT CAME TO ROUGH SEXUAL ACTS.  PETITIONER TESTIFIED THAT WHEN
14 SHE SET BOUNDARIES, RESPONDENT RESPECTED THEM.
15       PETITIONER TESTIFIED THAT RESPONDENT ASKED
16 PETITIONER TO SET BOUNDARIES.  ON THEIR SECOND IN-PERSON
17 ENCOUNTER, PETITIONER SET ONE THING AS OFF LIMITS AND ASSUMED
18 THAT ANOTHER WAS OFF LIMITS AFTER THE PARTIES' FIRST
19 ENCOUNTER, WHICH SHE TOLD NURSE VALENCIA DID NOT OCCUR DURING
20 THE SECOND ENCOUNTER.
21       THE EVIDENCE, INCLUDING PETITIONER'S TESTIMONY,
22 SHOW THAT RESPONDENT INVITED PETITIONER TO TALK TO HIM WHEN
23 SHE SEEMED UPSET AND THAT SHE HAD MULTIPLE OPPORTUNITIES TO
24 SET BOUNDARIES.  PETITIONER TESTIFIED THAT RESPONDENT DIDN'T
25 CROSS THE BOUNDARIES WHICH PETITIONER EXPRESSED TO HIM.
26 RESPONDENT COULDN'T KNOW THE BOUNDARIES WHICH PETITIONER
27 DIDN'T EXPRESS TO HIM.
28       PETITIONER TESTIFIED THAT BOTH SEXUAL ENCOUNTERS

1   BEGAN CONSENSUALLY BUT THAT, AT LEAST AS TO THE SECOND
2   ENCOUNTER, IT VENTURED INTO AREAS TO WHICH SHE DID NOT
3   CONSENT.
4           THE PRIMARY QUESTION FOR THIS COURT IS, TO WHAT DID
5   PETITIONER CONSENT?  AND HOW DID SHE MANIFEST THAT CONSENT TO
6   RESPONDENT?
7           IN WRITTEN EXCHANGE PETITIONER SAID THAT "SHE
8   WANTED ALL THE PAIN."  THOSE WERE HER WORDS.  SHOULD
9   RESPONDENT HAVE BELIEVED HER?
10          IN WRITTEN COMMUNICATION PETITIONER SAID SHE WANTED
11  TO BE CHOKED OUT.  RESPONDENT SOUGHT CLARIFICATION AS TO
12  WHETHER SHE MEANT "OUT," AS IN UNCONSCIOUS, AND PETITIONER
13  REPLIED IN THE AFFIRMATIVE.  SHOULD RESPONDENT HAVE BELIEVED
14  HER?
15          WE CONSIDER THAT, IN THE CONTEXT OF A SEXUAL
16  ENCOUNTER, WHEN A WOMAN SAYS "NO," SHE SHOULD BE BELIEVED.
17  SO WHAT ABOUT WHEN SHE SAYS "YES"?
18          PETITIONER TESTIFIED THAT SHE DID NOT CONSENT TO
19  BEING PUNCHED TO THE POINT OF HAVING BLACK EYES AND HAVING TO
20  BE HOSPITALIZED.  HAVING BLACK EYES AND BEING HOSPITALIZED
21  WERE THE POTENTIAL CONSEQUENCES OF THE ACTIVITIES, INCLUDING
22  SOME OF WHICH PETITIONER ACKNOWLEDGED THAT SHE DID CONSENT
23  TO, SUCH AS BEING CHOKED.
24          THE ONLY EVIDENCE OF ANYTHING WHICH HAPPENED WHILE
25  PETITIONER WAS UNCONSCIOUS WAS HAVING BEEN HIT ON THE BUTT IN
26  THE PARTIES' FIRST ENCOUNTER.  OTHER ACTS OCCURRED WHILE
27  PETITIONER WAS CONSCIOUS.  SHE TESTIFIED THAT SHE WASN'T ABLE
28  TO SPEAK PART OF THAT TIME BUT RESPONDENT COULDN'T KNOW THAT.

1  ON AT LEAST ONE OCCASION, WHEN RESPONDENT WAS DOING SOMETHING
2  PETITIONER DIDN'T WANT AND SHE COULDN'T SPEAK, SHE MOTIONED
3  TO HIM AND HE DID STOP.  ON ANOTHER, SHE USED THE FIRST PART
4  OF THEIR AGREED SAFE WORD AND HE DID STOP.
5         RESPONDENT DID NOT PURSUE PETITIONER.  HE DID NOT
6  THREATEN PETITIONER TO COERCE HER INTO SEXUAL ACTIVITY.  AND
7  HE DIDN'T THREATEN HER AFTER THEY HAD ENGAGED IN SEXUAL
8  ACTIVITY.
9         PETITIONER COMPLAINS IN HER TESTIMONY THAT ONE OF
10 HER PROBLEMS HAS BEEN HER DESIRE TO SEEK ATTENTION.
11 COMMUNICATIONS TO HER FRIENDS, WHICH ARE ENTERED INTO
12 EVIDENCE, INDICATE SHE WAS EXCITED FOR THE ATTENTION TO HER
13 AND, EVENTUALLY, THE DAMAGE THAT ATTENTION WOULD HAVE ON
14 RESPONDENT.
15        ==LET ME BE CLEAR.  THE INJURIES AS SHOWN IN THE==
16 ==PHOTOGRAPHS ARE TERRIBLE.  UNDER MOST CIRCUMSTANCES, MERELY==
17 ==SEEING PHOTOGRAPHS SUCH AS THOSE WOULD SERVE AS A PER SE==
18 ==CONDEMNATION OF THE PERPETRATOR OF SUCH INJURIES.  BUT==
19 ==PETITIONER HAD AND HAS THE RIGHT TO ENGAGE IN ANY KIND OF SEX==
20 ==AS A CONSENTING ADULT THAT SHE WANTS TO WITH ANOTHER==
21 ==CONSENTING ADULT.==
22        SHE WAS NOT AMBIGUOUS ABOUT WANTING ROUGH SEX IN
23 THE PARTIES' FIRST ENCOUNTER AND WANTING ROUGHER SEX IN THE
24 SECOND ENCOUNTER.  PETITIONER WAS ASKED BY RESPONDENT TO
25 DECIDE WHATEVER SHE WANTED TO LET RESPONDENT KNOW WAS OFF
26 LIMITS, AND SHE DID.
27        IF SHE HAD SET LIMITS AND HE HAD EXCEEDED THEM,
28 THIS CASE WOULD BE VERY CLEAR.  BUT SHE SET LIMITS WITHOUT

1  FULLY CONSIDERING ALL THE CONSEQUENCES AND RESPONDENT DID NOT
2  EXCEED THE LIMITS THAT PETITIONER SET.
3          GOING BACK TO FAMILY CODE SECTION 6220 AND 6340,
4  THE FUNDAMENTAL PURPOSE OF THE DOMESTIC VIOLENCE PREVENTION
5  ACT, THE COURT FINDS THAT PETITIONER'S INITIAL DECLARATION,
6  WHICH WAS THE BASIS UPON WHICH SHE OBTAINED A TEMPORARY
7  RESTRAINING ORDER, WAS MATERIALLY MISLEADING.  SHE CLAIMED
8  THAT RESPONDENT WAS CALLING AND TEXTING NON-STOP FOR TWO
9  WEEKS.  WHEN THE REALITY WAS THAT RESPONDENT RARELY CALLED
10 AND TEXTED ONLY WHEN SHE HAD TOLD HIM SHE WAS IN THE HOSPITAL
11 TO MAKE SURE THAT SHE WAS STILL OKAY.  EACH OF THOSE TEXTS OR
12 VOICEMAILS WAS OF A SIMILAR SORT, "ARE YOU OKAY?"
13         PETITIONER WAS CLEAR THAT SHE WAS EXTREMELY
14 STRESSED AND HAD EXTREME ANXIETY WHEN RESPONDENT SENT
15 MESSAGES.  SHE ALSO TESTIFIED THAT SHE WAS EXTREMELY STRESSED
16 AND ANXIOUS WHEN HE DIDN'T SEND MESSAGES.  THAT ISN'T
17 RATIONAL.
18         RESPONDENT DID NOT PURSUE PETITIONER.  SHE PURSUED
19 HIM.  PETITIONER'S TESTIMONY MADE CLEAR THAT SHE WAS UPSET
20 THAT RESPONDENT DIDN'T CALL HER WHEN SHE EXPECTED HIM TO AND
21 THAT DURING AND AFTER THEIR FIRST IN-PERSON ENCOUNTER,
22 PETITIONER WANTED MORE OF A RELATIONSHIP WITH RESPONDENT THAN
23 THE FACTS, AS SHE PRESENTED THEM, COULD REALISTICALLY BE
24 EXPECTED.
25         HER FEAR THAT RESPONDENT MIGHT DO SOMETHING IF HE
26 KNEW SHE WENT TO THE HOSPITAL HAD NO FACTUAL BASIS.  HER FEAR
27 THAT RESPONDENT MIGHT DO SOMETHING IF HE KNEW SHE HAD FILED A
28 REQUEST FOR RESTRAINING ORDER DOES NOT APPEAR TO HAVE HAD ANY

1 FACTUAL BASIS. ALTHOUGH THE NEVAREZ CASE DOES NOT REQUIRE A
2 JUDGE TO CONSIDER WHETHER THERE IS A PROBABILITY OF FUTURE
3 HARM, FAMILY CODE 6340 DOES REQUIRE THAT IT BE PART OF THE
4 COURT'S CONSIDERATION.
5     IN THIS CASE, THE COURT FINDS THERE IS NO
6 SUPPORTABLE EVIDENCE THAT RESPONDENT IS LIKELY TO CAUSE
7 PETITIONER ANY HARM OR EVEN HAVE CONTACT WITH THE PETITIONER.
8 FOR ALL THE REASONS STATED, THE COURT DENIES PETITIONER'S
9 REQUEST FOR A LONG TERM DOMESTIC VIOLENCE RESTRAINING ORDER.
10 AND THE COURT HEREBY DISSOLVES THE TEMPORARY RESTRAINING
11 ORDER.
12     MS. HOLLEY: THANK YOU, YOUR HONOR.
13     MR. FETTEROLF: THANK YOU, YOUR HONOR.
14     MS. MEYER: THANK YOU, YOUR HONOR.
15     (THE PROCEEDINGS WERE CONCLUDED.)

```
              SUPERIOR COURT OF THE STATE OF CALIFORNIA

                    FOR THE COUNTY OF LOS ANGELES

      HON. DIANNA GOULD-SALTMAN, JUDGE          DEPARTMENT 35


  LINDSEY HILL,                            )
                                           )
                                           )
                          PETITIONER,      ) NO. 21STRO03198
                                           )
              VS.                          )
                                           ) REPORTER'S
                                           ) CERTIFICATE
  TREVOR BAUER,                            )
                                           )
                                           )
                          RESPONDENT.      )
  _____)


          I, JACQUELINE M. CAIRE, CSR #9599, OFFICIAL

  REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

  FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

  FOREGOING PAGES, 521 THROUGH 587, INCLUSIVE, COMPRISE A FULL,

  TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

  MATTER OF THE ABOVE-ENTITLED CAUSE ON AUGUST 19, 2021.

          DATED THIS 23RD DAY OF AUGUST, 2021.



                          _____
                          JACQUELINE M. CAIRE, CSR #9599, RPR
                          OFFICIAL REPORTER
```