KINSELA WEITZMAN ISER KUMP HOLLEY LLP
Shawn Holley (Cal. Bar No. 136811)
Suann C. MacIsaac (Cal. Bar No. 205659)
808 Wilshire Boulevard., 3rd Floor
Santa Monica, CA 90401
Tel: (310) 566-9800
Fax: (310) 566-9873
sholley@kwikhlaw.com
smacisaac@kwikhlaw.com

ZUCKERMAN SPAEDER LLP
Blair G. Brown (admitted *pro hac vice*)
Jon R. Fetterolf (admitted *pro hac vice*)
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 882-8106
bbrown@zuckerman.com
jfetterolf@zuckerman.com

Nell Z. Peyser (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Ave., 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
npeyser@zuckerman.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>        Plaintiff,<br><br>v.<br><br>LINDSEY C. HILL and NIRANJAN FRED THIAGARAJAH,<br><br>        Defendants. | Case No. 8:22-cv-00868-JVS-ADS<br>Assigned for all purposes to the Hon. James V. Selna<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT NIRANJAN FRED THIAGARAJAH'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT**<br><br>Hearing Date: October 3, 2022<br>Hearing Time: 1:30 p.m.<br>Department: 10C<br><br>Action Filed: April 25, 2022 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   ISSUE TO BE DECIDED ................................................... 2

III.  STATEMENT OF FACTS ................................................. 2

      A.   Ms. Hill Aggressively Pursues A Relationship With Mr. Bauer .......... 3

      B.   A California State Court Denies Ms. Hill's Petition Against Mr. Bauer, Finding That Her Allegations Of Sexual Assault Were False And Her Petition Was "Materially Misleading" ........................ 4

      C.   The District Attorney Declines To Bring Criminal Charges Against Mr. Bauer ................................................. 6

      D.   Mr. Thiagarajah Falsely Accuses Mr. Bauer Of Criminal Conduct In Statements To *The Washington Post* ................ 6

      E.   Mr. Bauer Files The Complaint Against Mr. Thiagarajah For Defamation And Mr. Thiagarajah Moves To Strike .......... 7

IV.   THE ANTI-SLAPP STATUTE ........................................... 8

V.    MR. THIAGARAJAH'S MOTION MUST BE DENIED BECAUSE MR. BAUER'S DEFAMATION CLAIM EASILY MEETS THE REQUIREMENT THAT IT HAVE "MINIMAL MERIT" ........ 10

      A.   Mr. Bauer's claim establishes the necessary elements of defamation ........................................................... 10

           1.   The defamatory statements state or imply assertions of fact and are not opinions ................................. 11

           2.   The defamatory statements are false and not substantially true ................................................ 15

      B.   Mr. Thiagarajah's Statements Are The Opposite Of A Fair And True Report Of The DVRO Proceeding ................. 18

VI.   CONCLUSION ................................................................. 21

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Albertini v. Schaefer*,
5
  159 Cal. Rptr. 98 (Ct. App. 1979) ..........................................................................10

*Argentieri v. Zuckerberg*,
6
  214 Cal. Rptr. 3d 358 (Ct. App. 2017) ...........................................................19, 21

7

*Barnes-Hind, Inc. v. Superior Ct.*,
8
  226 Cal. Rptr. 354 (Ct. App. 1986) ......................................................................10

*Batzel v. Smith*,
9
  333 F.3d 1018 (9th Cir. 2003) ..................................................................................8

10

*Briganti v. Chow*,
11
  254 Cal. Rptr. 3d 909 (Ct. App. 2019) ................................................................10

12

*Carbone v. Cable News Network, Inc.*,
  910 F.3d 1345 (11th Cir. 2018) ................................................................................8

13

*City of Cotati v. Cashman*,
14
  29 Cal. 4th 69 (2002) ..................................................................................................8

15

*Condit v. Nat'l Enquirer, Inc.*,
16
  248 F. Supp. 2d 945 (E.D. Cal. 2002) ....................................................................17

*Corinna Warm & Studio Warm LLC v. Innermost Ltd.*,
17
  2022 WL 1585753 (C.D. Cal. Apr. 6, 2022) ...........................................................8

18

*Crane v. Arizona Republic*,
19
  972 F.2d 1511 (9th Cir. 1992) .......................................................................18, 21

20

*Ferlauto v. Hamsher*,
  88 Cal. Rptr. 2d 843 (Ct. App. 1999) ....................................................................13

21

*Gallagher v. Philipps*,
22
  563 F. Supp. 3d 1048 (S.D. Cal. 2021).......................................................15, 19, 21

23

*GetFugu, Inc. v. Patton Boggs LLP*,
  162 Cal. Rptr. 3d 831 (Ct. App. 2013) ................................................................13

24

*Gilbert v. Sykes*,
25
  53 Cal. Rptr. 3d 752 (Ct. App. 2007) ....................................................................20

26

*Glasser v. Berzner*,
27
  2021 WL 4352809 (C.D. Cal. June 23, 2021)......................................................15

28

ii

*Grewal v. Jammu*,
   119 Cal. Rptr. 3d 835 (Ct. App. 2011) ................................................. 9

*Henley v. Jacobs*,
   2019 WL 8333524 (N.D. Cal. Aug. 2, 2019) ..................................... 14

*Herring Networks, Inc. v. Maddow*,
   445 F. Supp. 3d 1042 (S.D. Cal. 2020) ............................................... 12

*Hughes v. Hughes*,
   19 Cal. Rptr. 3d 247 (Ct. App. 2004) ........................................... 15, 17

*Issa v. Applegate*,
   242 Cal. Rptr. 3d 809 (Ct. App. 2019) ............................................... 15

*Jezzini v. Adolf*,
   2019 WL 4668008 (Cal. Ct. App. Sept. 25, 2019) ............................. 19

*J-M Mfg. Co. v. Phillips & Cohen LLP*,
   201 Cal. Rptr. 3d 782 (Ct. App. 2016) ............................................... 20

*Judd v. Weinstein*,
   2018 WL 7448914 (C.D. Cal. Sept. 19, 2018) ................................... 12

*Kaelin v. Globe Commc'ns Corp.*,
   162 F.3d 1036 (9th Cir. 1998) ............................................................ 17

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................ 14

*Makaeff v. Trump Univ., LLC*,
   736 F.3d 1180 (9th Cir. 2013) .............................................................. 8

*Manzari v. Associated Newspapers Ltd.*,
   830 F.3d 881 (9th Cir. 2016) ............................................................ 2, 9

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) ........................................................................... 15

*Med. Marijuana, Inc. v. ProjectCBD.com*,
   260 Cal. Rptr. 3d 237 (Ct. App. 2020) ................................................. 8

*Milkovich v. Lorain J. Co.*,
   497 U.S. 1 (1990) ............................................................................... 17

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ......................................................................... 8

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   61 Cal. Rptr. 3d 29 (Ct. App. 2007) ..................................................... 9

iii

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ......................................................................9

*Standing Comm. on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ....................................................................14

*Summit Bank v. Rogers*,
    142 Cal. Rptr. 3d 40 (Ct. App. 2012) ......................................................12

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
    831 F.3d 1179 (9th Cir. 2016) ...................................................................8

*United States v. Romm*,
    455 F.3d 990 (9th Cir. 2006) ...................................................................18

*Unsworth v. Musk*,
    2019 WL 4543110 (C.D. Cal. May 10, 2019).........................................12

*Weinberg v. Feisel*,
    2 Cal. Rptr. 3d 385 (Ct. App. 2003) ........................................................10

*ZL Techs., Inc. v. Does 1-7*,
    220 Cal. Rptr. 3d 569 (Ct. App. 2017) ....................................................11

**Statutes**

Cal. Civ. Code § 47.....................................................................................18

Cal. Civ. Code § 425.16................................................................................7

**Other Authorities**

53 C.J.S. Libel and Slander § 215 ..............................................................10

## I.     INTRODUCTION

This is a simple case of defamation per se. Plaintiff Trevor Bauer is a Major League baseball player for the Los Angeles Dodgers who was falsely accused of sexual assault by Defendant Lindsey Hill. A California Superior Court judge found that accusation to be false when denying Ms. Hill's request for a Domestic Violence Restraining Order. Following four days of testimony, the state court judge concluded that Mr. Bauer did not abuse or assault Ms. Hill nor did he engage in nonconsensual sex with her. To the contrary, the court found that *Ms. Hill* was the one who requested rough sex in their first encounter, and rougher sex in their second encounter. The court further found that Mr. Bauer did not exceed any limits set by Ms. Hill. Evidence uncovered at the hearing also revealed that Ms. Hill was motivated by desires to negatively influence Mr. Bauer's baseball performance, destroy his career, garner public attention, and extort him for a financial settlement. In sum, the state court judge characterized Ms. Hill's petition for the restraining order as "materially misleading."

Defendant Niranjan Fred Thiagarajah was one of Ms. Hill's attorneys in the Domestic Violence Restraining Order proceeding. Although the court in that proceeding found that Mr. Thiagarajah's client had consented to and requested rough and rougher sex with Mr. Bauer, and had fabricated her allegations to gain attention and to harm Mr. Bauer, Mr. Thiagarajah decided to spread false and misleading information to the media about the court's findings. In an interview to a reputable news outlet shortly after the Domestic Violence Restraining Order proceeding concluded, Mr. Thiagarajah lied to the reporter that there was "no doubt that Mr. Bauer just brutalized" Ms. Hill and that "the evidence is overwhelming that these things occurred. . . . That was established to 100 percent certainty." By these comments, Mr. Thiagarajah reasserted accusations of criminal conduct against a man who was falsely accused and exonerated of that conduct. Mr. Thiagarajah took an already traumatic experience in Mr. Bauer's life—being falsely accused of

sexual assault—and added insult to injury by knowingly misrepresenting the state court judge's findings to be that Mr. Bauer did commit a "brutal" assault. A false accusation of a crime is textbook defamation per se. It is *that* simple.

Mr. Thiagarajah brings the instant motion to strike Mr. Bauer's claim under California's anti-SLAPP statute, arguing that his statements are nonactionable opinions, are substantially true, and are protected by the fair and true report privilege. Not so. Mr. Bauer easily rebuts each of these arguments, especially at this stage, when he need only show that his claim has "minimal merit." First, simply labelling the statements as "opinion" is insufficient. There is no doubt that Mr. Thiagarajah's statements contain the underlying factual predicate that Mr. Bauer assaulted Ms. Hill and that the evidence before the state court judge showed this to a 100 percent certainty. The average reader could—and indeed *any* reader *would*— understand Mr. Thiagarajah's comments to mean that the court found that Mr. Bauer sexually assaulted Ms. Hill and brutally inflicted serious injuries upon her. Second, Mr. Thiagarajah's statements are easily capable of being proven false. The judge in the Domestic Violence Restraining Order proceeding already held that they were. Third, the fair and true report privilege does not protect an individual who reports the exact opposite of what the court found in the underlying proceeding.

The Court should deny Mr. Thiagarajah's motion in its entirety.

## II.    ISSUE TO BE DECIDED

Whether there is a minimal probability that Mr. Bauer will prevail on the merits of his defamation per se claim against Mr. Thiagarajah, a showing that has been described as not high and only requiring a "minimum level of legal sufficiency and triability." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016).

## III.    STATEMENT OF FACTS

Mr. Bauer alleges that Ms. Hill fabricated allegations of sexual assault against him, pursued bogus criminal and civil actions against him, made false and

malicious statements about him, and generated a media blitz based on her lies. Compl. ¶ 1. Mr. Bauer further alleges that Ms. Hill's lawyer, Mr. Thiagarajah, aided Ms. Hill in her campaign to destroy Mr. Bauer's reputation and baseball career by spreading defamatory statements of fact about Mr. Bauer to *The Washington Post*. *Id*. Mr. Thiagarajah's statements were particularly egregious because they were made after a court—following a hearing Mr. Thiagarajah participated in—squarely rejected Ms. Hill's allegations as false.

## A. Ms. Hill Aggressively Pursues A Relationship With Mr. Bauer.

On April 18, 2021, Ms. Hill initiated contact with Mr. Bauer through Instagram, and the two began conversing. *Id*. ¶¶ 32–33. Their conversations quickly became sexual in nature, and on April 21, 2021, Ms. Hill drove 2.5 hours to meet Mr. Bauer in person. *Id*. ¶¶ 33–38. The two discussed engaging in rough sex, including choking, slapping, and hair pulling. *Id*. ¶ 43. They then engaged in rough sex consisting of the acts they had previously discussed. *Id*. The next morning, Ms. Hill left and they did not immediately make plans to meet again. *Id*. ¶ 48. In the following days, Ms. Hill initiated contact with Mr. Bauer several times, and they exchanged messages where Ms. Hill told Mr. Bauer that she had never been more turned on in her life than when they had engaged in choking during sex and that she wanted it "harder" the next time. *Id*. ¶¶ 52, 55, 58. After making several attempts to solicit another invitation from Mr. Bauer, Ms. Hill finally drove 2.5 hours again to Mr. Bauer's home on May 15, 2021. *Id*. ¶ 59. The two discussed rough sex, as well as established boundaries and a safe word. *Id*. ¶ 63. They then engaged in rough sex, which again involved choking, hair pulling, and slapping. *Id*. ¶ 64. At times, Ms. Hill requested rougher behavior from Mr. Bauer. *Id*. ¶ 65. Mr. Bauer complied and checked in on her continually to make sure she was okay. *Id*. At one point, Ms. Hill used the safe word and Mr. Bauer immediately ceased intercourse with Ms. Hill. *Id*. ¶ 66. The next morning, Ms. Hill left without any visible marks or bruising, other than a slightly swollen lip. *Id*. ¶ 73.

Unbeknownst to Mr. Bauer, Ms. Hill had been texting her friends and her AA sponsor ever since her first encounter with Mr. Bauer bragging about her relationship with him, alluding to his financial wealth and her ability to harm his baseball performance. *Id*. ¶¶ 53, 54, 56. After the second encounter, she continued plotting with her friends for the purpose of exploiting Mr. Bauer, stating in one instance the possibility of a "major cash" settlement. *Id*. ¶¶ 91, 93–95. Mr. Bauer never offered to settle with Ms. Hill or to make any financial payment. *Id*. ¶ 95.

### B. A California State Court Denies Ms. Hill's Petition Against Mr. Bauer, Finding That Her Allegations Of Sexual Assault Were False And Her Petition Was "Materially Misleading."

Ms. Hill's plan to destroy Mr. Bauer culminated on June 29, 2021 when she filed the false petition for a Domestic Violence Restraining Order against Mr. Bauer (the "DVRO Petition"). *Id*. ¶ 96.

On August 16, 2021, a hearing on Ms. Hill's DVRO Petition began in Los Angeles Superior Court before Judge Gould-Saltman (the "DVRO Proceeding"). *Id*. ¶ 106. The hearing, which occurred over four days, established that Mr. Bauer had not assaulted or abused Ms. Hill in any way. *Id.* To the contrary, the DVRO Proceeding demonstrated that Ms. Hill materially misrepresented her relationship with Mr. Bauer in her DVRO Petition. *Id*. For example, evidence in the DVRO Proceeding showed that Ms. Hill: omitted that she had pursued him and expressed desire and consent for rough sex; exaggerated the nature of her injuries by doctoring photographs of the alleged injuries; and was motivated by her desires for a financial settlement and to destroy Mr. Bauer's reputation and career. *Id.*

As it relates to Mr. Thiagarajah's defamatory statements to *The Washington Post*, a few specific admissions and findings warrant emphasis here. Ms. Hill testified under oath that she requested rough sex and was the first one to bring up the topic of rough sex. *Id.* ¶ 107. She further testified that she specifically discussed choking during sex and described why she enjoyed it so much. *Id.* ¶ 114. The

hearing revealed that the photographs of Ms. Hill's injuries that she submitted to the court with her petition—which depicted significant scratching and bruising on her face—were modified to create and exaggerate the appearance of injuries. *Id.* ¶ 116. Ms. Hill testified that she provided native images to her attorneys, who were responsible for submitting the photographs to the court, effectively blaming them for the filtered photos that misrepresented her injuries. *Id*. ¶ 117. In other photographs presented in evidence, a nurse that treated Ms. Hill testified that the abrasions on her face were indistinguishable from acne or other skin disturbances. *Id.* ¶ 118.

At the conclusion of the four-day DVRO Proceeding, the court found that there was no "reasonable proof of a past act or acts of abuse" by Mr. Bauer against Ms. Hill. *Id.* ¶¶ 124–25. This meant that the court found there was no act of abuse, no domestic violence, no sexual assault, or other nonconsensual sexual activity by Mr. Bauer. *Id.* ¶ 125. In so finding, the court stated Ms. Hill "had and has the right to engage in any kind of sex as a consenting adult that she wants to with another consenting adult," and that "[s]he was not ambiguous about wanting rough sex in the parties' first encounter and wanting rougher sex in the second encounter." *Id.* ¶ 126 (citing Tr. 585:18-24). Instead, the court found that "[Ms. Hill] testified that when she set boundaries, [Mr. Bauer] respected them." *Id.* (citing Tr. 583:13–16).

The court cited Ms. Hill's many text message communications to Mr. Bauer discussing rough sex, including that Ms. Hill said she "wanted all the pain" and that she wished to be choked out, stating: "We consider that, in the context of a sexual encounter, when a woman says 'no,' she should be believed. So what about when she says 'Yes'?" *Id.* ¶ 127 (citing Tr. 584:77–17). The court also stated that Ms. Hill's purported injuries "were the potential consequences of the activities" to which Ms. Hill consented. *Id.* (citing Tr. 584:18–23).

In addition to finding that Mr. Bauer did not abuse or assault Ms. Hill, the Court determined that the DVRO Petition, which was the basis on which she

obtained her temporary restraining order, was "materially misleading." *Id.* ¶ 128 (citing Tr. 586:6–7). Furthermore, the court expressly debunked the allegations that Mr. Bauer sodomized Ms. Hill during their first sexual encounter or that he punched her in the face and scratched her while unconscious during their second sexual encounter. *Id.* ¶ 129 (citing Tr. 584:24–2). In sum, all allegations of serious or terrible injury were found by the court to be unsubstantiated.

The court also identified some of Ms. Hill's motivations in filing the DVRO Petition, finding: "Communications to her friends, which are entered into evidence, indicate that she was excited for the attention to her, and, eventually, the damage that attention would have on [Mr. Bauer]." *Id.* ¶ 131 (citing Tr. 585:11–14).

### C. The District Attorney Declines To Bring Criminal Charges Against Mr. Bauer.

Separate from the DVRO Proceeding, Ms. Hill had reported her allegations of sexual abuse to the police in Los Angeles. Ultimately, on February 8, 2022, the Los Angeles District Attorney officially declined to bring charges against Mr. Bauer. *Id.* ¶ 144. District Attorney George Gascon explained that "[a]fter a thorough review of the available evidence, including the civil restraining order proceedings, witness statements and the physical evidence, the People are unable to prove the relevant charges beyond a reasonable doubt." *Id.* ¶ 145. Mr. Gascon also explained that the standard of proof in the civil restraining order proceeding was "very low" and even under that low standard, the allegations could not be proven. *Id.*

### D. Mr. Thiagarajah Falsely Accuses Mr. Bauer Of Criminal Conduct In Statements To *The Washington Post*.

Notwithstanding that Ms. Hill's claims had been rejected by both the Superior Court Judge who reviewed her DVRO Petition and the District Attorney's office, Ms. Hill's attorney, Mr. Thiagarajah, continued to spread Ms. Hill's false and misleading narrative to the media. *Id.* ¶ 146. In an interview with *The*

*Washington Post*, Mr. Thiagarajah lied and stated that there was "no doubt that Mr. Bauer just brutalized" Ms. Hill. *Id.* ¶ 147. Mr. Thiagarajah also disparaged Mr. Bauer's decision to rely on his constitutionally protected right to invoke the Fifth Amendment at the DVRO Proceeding, stating: "It's easy to deny these things occurred when you're not going to have a chance to be cross-examined about it." *Id.* ¶ 148. This statement was in reference to a video Mr. Bauer published to YouTube wherein he further denied Ms. Hill's allegations. Mr. Thiagarajah further stated to *The Washington Post* that "the evidence is overwhelming that these things occurred. . . . That was established to 100 percent certainty." *Id.* Each of these statements states or implies a false assertion of fact.

Moreover, Mr. Thiagarajah knew them to be false at the time he uttered them to a major news outlet. *Id.* ¶ 149. Mr. Thiagarajah knew that his client had submitted a "materially misleading" DVRO Petition to the California Superior Court. *Id*. He knew that his client had concealed (and deleted) material information which revealed Ms. Hill's true motivations in filing the DVRO Petition—to gain publicity and money and to harm Mr. Bauer. *Id*. He knew that the evidence against Mr. Bauer was not "overwhelming" and that it had not been "established to 100 percent certainty." *Id*. Of course, he knew this because he knew that the court had discredited Ms. Hill and found that Mr. Bauer had not committed any act of assault or abuse against her. *Id*.

### E. Mr. Bauer Files The Complaint Against Mr. Thiagarajah For Defamation And Mr. Thiagarajah Moves To Strike.

On April 25, 2022, Mr. Bauer filed a lawsuit against Ms. Hill and Mr. Thiagarajah. ECF No. 1. As to Mr. Thiagarajah, Mr. Bauer brought one claim for defamation per se based on Mr. Thiagarajah's defamatory statements to *The Washington Post*. On July 19, 2022, Mr. Thiagarajah filed the instant motion to strike pursuant to Cal. Civ. Code § 425.16 (the "anti-SLAPP" statute). ECF No. 32.

## IV.   THE ANTI-SLAPP STATUTE

As explained by several judges on the Ninth Circuit and other federal courts, "an anti-SLAPP motion has no proper place in federal court" at all. *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1186 (9th Cir. 2016) (Gould, J., concurring) (expressing regret for joining the Ninth Circuit's opinion in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003)). *See also Carbone v. Cable News Network, Inc*., 910 F.3d 1345, 1356 (11th Cir. 2018) (discussing entrenched circuit split on issue); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc) (explaining why Ninth Circuit was wrong to conclude that anti-SLAPP statute applied at all in federal court); *Corinna Warm & Studio Warm LLC v. Innermost Ltd.*, 2022 WL 1585753, at *4 (C.D. Cal. Apr. 6, 2022) (noting that "the applicability of the anti-SLAPP statute in federal court has been questioned" and citing case stating that "[f]ederal courts have no business applying exotic state procedural rules"). To preserve this point in view of the division of opinion within the Ninth Circuit and a split in the Circuits, Mr. Thiagarajah cannot invoke the California anti-SLAPP statute because it conflicts with the Federal Rules.[1]

The anti-SLAPP statute is designed to permit a defendant to move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." *Med. Marijuana, Inc. v. ProjectCBD.com*, 260 Cal. Rptr. 3d 237, 247 (Ct. App. 2020). The statute "requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 76 (2002). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity." *Oasis W.*

---

[1] As the Ninth Circuit's mistakes can only be rectified by an en banc panel of that Court, or by the Supreme Court, Mr. Bauer raises this issue for preservation.

*Realty, LLC v. Goldman*, 51 Cal. 4th 811, 819 (2011). Second, "[i]f the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* at 819–20. Where, as here, an anti-SLAPP motion brought in federal court is founded purely on legal arguments, the court must analyze the probability of prevailing under a 12(b)(6) standard. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–35 (9th Cir. 2018). Mr. Bauer's "burden of establishing a probability of prevailing is not high." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 38 (Ct. App. 2007). "<u>Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP.</u>" *Id*. (emphasis added). *See also Grewal v. Jammu*, 119 Cal. Rptr. 3d 835, 845 (Ct. App. 2011) ("plaintiff need show only a 'minimum level of legal sufficiency and triability'"); *Manzari*, 830 F.3d at 887 ("[T]he second step of the anti-SLAPP inquiry is often called the minimal merit prong."). "A plaintiff is not required 'to *prove* the specified claim to the trial court'; rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim." *Manzari*, 830 F.3d at 887.

Mr. Thiagarajah's motion should be denied because it fails to satisfy the second step of the anti-SLAPP analysis. Namely, Mr. Thiagarajah fails to establish that Mr. Bauer's claim lacks "even minimal merit." Mr. Bauer's defamation per se claim has considerable merit and a high probability of success. Were the Court to hold otherwise, its decision would grant lawyers the unfettered right to knowingly propound false accusations of criminal conduct against an opposing party who was already found not guilty in an underlying legal proceeding under the pretext of "free speech." This would allow for the damage of reputations and careers with impunity. The anti-SLAPP standard and common sense urge the Court to deny the instant motion.

## V.  MR. THIAGARAJAH'S MOTION MUST BE DENIED BECAUSE MR. BAUER'S DEFAMATION CLAIM EASILY MEETS THE REQUIREMENT THAT IT HAVE "MINIMAL MERIT."

### A. Mr. Bauer's claim establishes the necessary elements of defamation.

Mr. Bauer's claim for defamation per se in Count II alleges that Mr. Thiagarajah made knowingly false statements to *The Washington Post* accusing Mr. Bauer of the serious crime of sexual assault even though the California Superior Court found those same accusations to be false. Compl. ¶¶ 158–63. The elements of a defamation claim are: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a tendency to injure or causes special damage." *Briganti v. Chow*, 254 Cal. Rptr. 3d 909, 913 (Ct. App. 2019). As for defamation per se, "[p]erhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Ct.*, 226 Cal. Rptr. 354, 358 (Ct. App. 1986); *Weinberg v. Feisel*, 2 Cal. Rptr. 3d 385, 388 (Ct. App. 2003) ("false accusations of crime are libel per se"). With claims for defamation per se, a plaintiff need not allege special damages as they are presumed. *See Albertini v. Schaefer*, 159 Cal. Rptr. 98, 102 (Ct. App. 1979); 53 C.J.S. Libel and Slander § 215 ("If the words are actionable per se, it is not necessary to allege special damages to state a claim."). Here, the Complaint's allegations against Mr. Thiagarajah directly track the elements of defamation per se: after Ms. Hill's claims of sexual assault against Mr. Bauer were found to be false by the court in the DVRO Proceeding, Mr. Thiagarajah made statements to *The Washington Post* that grossly mischaracterized the proceeding and falsely charged Mr. Bauer with the violent sexual assault of Ms. Hill despite that he had already been exonerated.  Compl. ¶¶ 146–49.

Faced with this textbook defamation per se claim, Mr. Thiagarajah cobbles together a patchwork of meritless arguments to try to get the case dismissed on a technicality and avoid litigating the merits. First, he attempts to characterize his

10

statements as nonactionable opinions. However, in so doing, he distorts the applicable standard and ignores the plain meaning of his words. Second, he argues his statements to *The Washington Post* are not provably false. This argument is belied, of course, by the fact that a court already found that the sexual assault allegations he reasserted against Mr. Bauer are false.  Third, he hides behind the fair and true report privilege even though he stated the exact opposite of what the court in the DVRO Proceeding held. Especially under the low standard that Mr. Bauer only need show that his claim has "minimal merit," these arguments easily fail.

### 1. The defamatory statements state or imply assertions of fact and are not opinions.

Mr. Thiagarajah argues that his statements to *The Washington Post* are nonactionable opinions. While this argument is easily dispelled by simply looking at the plain language of Mr. Thiagarajah's statements,[2] the fact-opinion dichotomy under California law also clearly supports Mr. Bauer's position.

"The sine qua non of recovery for defamation . . . is the existence of falsehood." *ZL Techs., Inc. v. Does 1-7*, 220 Cal. Rptr. 3d 569, 589 (Ct. App. 2017). Because a statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for defamation liability. *Id*. However, this does not mean that statements of opinion enjoy blanket protection. *Id*. In determining whether an allegedly defamatory statement is fact or opinion, the "key" question is "whether a reasonable fact finder *could* conclude the published statement declares or implies a provably false assertion of fact." *Id.* (emphasis added). In making this determination, the Court looks to the totality of the

---

[2] The statement "there's no doubt that Mr. Bauer just brutalized [Ms. Hill]" communicates the fact that Mr. Bauer brutalized Ms. Hill. It either occurred or it did not. Similarly, the statement that "[t]he evidence is overwhelming that these things occurred. . . . That was established to 100 percent certainty" communicates the fact that the evidence conclusively established Mr. Bauer brutalized Ms. Hill. Either the evidence established that or it did not. An elementary understanding of the English language is all that is needed to discern that these are facts, not opinions.

circumstances, putting itself in the place of an average listener and determining "the natural and probable effect of the statement." *Judd v. Weinstein*, 2018 WL 7448914, at *7 (C.D. Cal. Sept. 19, 2018) (holding that statements that the plaintiff was "a nightmare to work with and they should avoid her at all costs" and that defendant "had bad experiences" with plaintiff in the past were statements of fact because they implied the factual predicate that defendant had worked with plaintiff in the past and plaintiff did bad things that caused defendant to consider her a nightmare to work with). Both the language of the statement and the context are relevant. *Id.*

The Ninth Circuit employs a three-part test to resolve if a statement implies an objective fact: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement in question is susceptible of being proved true or false." *Unsworth v. Musk*, 2019 WL 4543110, at *3 (C.D. Cal. May 10, 2019).  All three of these factors weigh in favor of finding the defamatory statements imply the fact that Mr. Bauer committed a violent sexual assault against Ms. Hill.

First, the general tenor of *The Washington Post* article does nothing to negate the impression Mr. Thiagarajah was asserting an objective fact. To the contrary, the average reader of *The Washington Post*, one of the most highly respected newspapers in the country, expects that the reporting is factual in nature. *See, e.g.*, *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1049 (S.D. Cal. 2020) ("[A] viewer who watches news channels tunes in for facts and the goings-on of the world."). The article was not in the opinion section of the newspaper. *Cf. Summit Bank v. Rogers*, 142 Cal. Rptr. 3d 40, 60 (Ct. App. 2012) (a reader would expect to see opinion in a forum such as a Craigslist page tellingly titled "Rants and Raves"). Moreover, Mr. Thiagarajah, as a participant in the DVRO Proceeding, was quoted in the article for his comments on the court's findings in that proceeding. He was

not, for example, expressing his disagreement with the court's findings; he was creating the false impression that the court held for his client when it did not. Read in this context, his statements that "there's no doubt that Mr. Bauer just brutalized [Ms. Hill]" and "[t]he evidence is overwhelming that these things occurred. . . . That was established to 100 percent certainty" create the false impression that the court found Mr. Bauer committed extreme sexual violence on Ms. Hill or, at a minimum, that there was substantial evidence to establish those charges. Nothing could be further from the truth.

Mr. Thiagarajah cites misplaced authority for the proposition that the "general tenor" is one of a "highly partisan" adversary, but this argument is specious. Again, Mr. Thiagarajah was not making a simple assertion about the merits of Ms. Hill's allegations nor expressing his disagreement with a certain resolution. *C.f. GetFugu, Inc. v. Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 842 (Ct. App. 2013) (finding the following statement was mere opinion: "The RICO suit was not frivolous. The 500K lawsuit is frivolous, however, so buyer be wary."); *Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 850 (Ct. App. 1999) (finding numerous descriptions of a lawsuit and motion as "stupid," "laughed at," "a joke," "spurious," and "frivolous" were "common characterizations" amounting to mere opinion). Unlike the defendants in *GetFugu* and *Ferlauto*, Mr. Thiagarajah was flagrantly misrepresenting the findings from the DVRO Proceeding. This is very different than saying he disagreed with the court's ruling and wished for a different outcome. Instead, he falsely stated the court found with "100 percent certainty" that Mr. Bauer sexually assaulted his client. Mr. Thiagarajah's role as a lawyer in the DVRO Proceeding does not give him *carte blanche* to lie about the outcome of any case. *See GetFugu*, 162 Cal. Rptr. 3d at 842 ("That does not mean that statements of opinion enjoy blanket protection."). Indeed, in context, Mr. Thiagarajah's statements appeared in a news article in one of the most respected newspapers in

the country detailing the developments in Mr. Bauer's legal case. As such, his statements are likely to be read as representing facts about that case.

Second, the language Mr. Thiagarajah used was not "loose, figurative, and hyperbolic" in context. *See Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005). There was "nothing relating to the context in which [Defendant's] statement was made that tends to negate the literal meaning of the words he used." *Id.* at 1076. The term "brutalized" was not in a "string of colorful adjectives" that could imply it was merely a statement of opinion. *See Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995). Rather, accusing someone of brutalizing someone else is quite literally an accusation of a violent assault. On top of that, by stating that "[t]he evidence [was] overwhelming that these things occurred. . . . That was established to 100 percent certainty," Mr. Thiagarajah bluntly signaled to the reader that the DVRO Proceeding confirmed that there was no doubt the brutalization occurred. This clear and precise language accusing Mr. Bauer of inflicting heinous injuries on Ms. Hill is the opposite of rhetorical or exaggerated comments that can be protected as nonactionable opinion. In any event, even if a reader could interpret Mr. Thiagarajah's statements to imply something other than objective fact, Mr. Bauer's interpretation is a reasonable one and, thus, is sufficient to meet his burden to show that his claim has at least "minimal merit" at this stage. *See Henley v. Jacobs*, 2019 WL 8333524, at *6 (N.D. Cal. Aug. 2, 2019) (finding that because challenged statements, "standing alone, may not be defamatory does not preclude the possibility that a reasonable trier of fact 'could conclude the published statement declares or implies a provably false assertion of fact.'").

Finally, Defendant's statements are susceptible to being proven true. Whether Ms. Hill was "brutalized," whether the evidence supported her allegations, and whether her claims were "established to 100 percent certainty," are all questions for which an answer can be found. Indeed, a court of law did make explicit findings about those facts. Compl. ¶¶ 106–31. Namely, that she consented

to rough sex, her evidence was "materially misleading," and that her claims could not be established (to any degree of certainty). "If it can be proved false, then a statement is not protected as opinion." *Glasser v. Berzner*, 2021 WL 4352809, at *3 (C.D. Cal. June 23, 2021) ("However, accepting the truth of the complaint that Glasser never walked around the restaurant in view of Berzner, then the statement 'the owner [...] was strutting like a pompous jerk' can be proved false."). Accordingly, the challenged statements are not nonactionable opinion.

### 2. The defamatory statements are false and not substantially true.

Mr. Thiagarajah next argues that the defamatory statements cannot state a claim because they are substantially true. Again, this is incorrect.

A defendant can defeat a defamation claim "by proving that the allegedly libelous publication . . . is substantially true." *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1085 (S.D. Cal. 2021). Mr. Thiagarajah cannot prove that here. In determining substantial truth, the inquiry is whether the challenged statement "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (citing *Issa v. Applegate*, 242 Cal. Rptr. 3d 809, 825 (Ct. App. 2019)); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991). Furthermore, "whether a statement is true or substantially true is normally considered to be a factual one" and thus not ripe for resolution on a motion to dismiss. *Hughes v. Hughes*, 19 Cal. Rptr. 3d 247, 252 (Ct. App. 2004).

The pleaded truth is that Mr. Bauer did not sexually assault Ms. Hill (Compl. ¶¶ 23–84) and the DVRO Proceeding established that there was no evidence to substantiate her allegations (Compl. ¶¶ 106–31). Mr. Thiagarajah's statements produce an entirely different effect on any reader of *The Washington Post* article. The gist of his statements is that Mr. Bauer sexually assaulted Ms. Hill and that the DVRO Proceeding conclusively established as much.

15

Mr. Thiagarajah posits that his statement that Mr. Bauer "brutalized" Ms. Hill is true because the court in the DVRO Proceeding found that Mr. Bauer had inflicted terrible injuries on Ms. Hill. Mot. 18. However, the court made no such finding. Mr. Thiagarajah's cherry-picked quote ignores key context. In the middle of delivering lengthy findings, the court in the DVRO Proceeding stated that:

> "[t]he injuries as shown in the photographs are terrible. Under most circumstances, merely seeing photographs such as those would serve as a per se condemnation of the perpetrator of such injuries. But Petitioner had and has the right to engage in any kind of sex as a consenting adult that she wants to with another consenting adult. She was not ambiguous about wanting rough sex in the parties' first encounter and wanting rougher sex in the second encounter."

Declaration of Blair G. Brown in Support of Plaintiff's Request for Judicial Notice ("Brown Decl."), Ex. A at 585:15–24. First off, nowhere did the court expressly find that Mr. Bauer brutalized or violently inflicted injuries on Ms. Hill. To the contrary, the court found that Ms. Hill expressly consented to everything that occurred between her and Mr. Bauer, and that she was the one who requested the "rougher" sex. *Id.* It is more than plausible that the word "brutalize" implies a lack of consent, which is not what happened here according to the court. Even under Mr. Thiagarajah's own understanding of the term "brutalize," which he defines as treating someone with a lack of sensitivity or compassion, that is still a falsehood because it is not insensitive nor uncompassionate for Mr. Bauer to engage in consensual rough sex specifically requested by Ms. Hill. Mot. 18 (citing dictionary definition of "brutal"). Second, Mr. Thiagarajah's argument ignores that Ms. Hill was found to have fabricated the photographs that showed these purportedly terrible injuries. Compl. ¶¶ 116–19. With this context, one can appreciate the court's careful choice of wording that it is commenting on "[t]he injuries *as shown in the photographs*" (emphasis added), rather than commenting on the injuries for their truth. This is a meaningful distinction. At bottom, regardless of what the court

meant with the "terrible" injuries comment, Mr. Thiagarajah's statement that Ms. Hill was "brutalized" wholly ignores the gist of the express findings of the court that Ms. Hill consented to rough sex and Mr. Bauer did nothing to her that was not requested by her. Brown Decl., Ex. A at 583:9–587:11. In any event, any ambiguity about what the court held in the DVRO Proceeding is a question of fact and should be resolved by a jury. *See, e.g.*, *Hughes*, 19 Cal. Rptr. 3d at 251–52.

Next, Mr. Thiagarajah defends his statement maligning Mr. Bauer for not taking the stand in the DVRO Proceeding by arguing his statement is on its face true. Mot. 19. This, however, confuses the point. In the article, Mr. Thiagarajah stated that "It's easy to deny these things occurred when you're not going to have a chance to be cross-examined about it." Here, one could reasonably take his statements to imply that if Mr. Bauer had taken the stand in the DVRO Proceeding and been subject to cross-examination, he would have incriminated himself because he was guilty of sexual assault. *See Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) ("Even assuming that [an innocent] reading is reasonably possible, . . . [s]o long as the publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists."); *Condit v. Nat'l Enquirer, Inc.*, 248 F. Supp. 2d 945, 965 (E.D. Cal. 2002) ("Even assuming, arguendo, there are non-defamatory readings . . ., all that the law requires is that the headline is reasonably susceptible to one defamatory meaning."). Moreover, simply couching a factual statement in a quippy remark does not allow Mr. Thiagarajah to escape liability. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 2 (1990) ("Simply couching a statement—"Jones is a liar"—in terms of opinion—"In my opinion Jones is a liar"—does not dispel the factual implications contained in the statement."). As the evidence in the DVRO Proceeding from Ms. Hill herself led the court to conclude that no assault occurred, that she consented to everything that occurred, and that when she set limits Mr. Bauer adhered to them, Compl. ¶¶ 106–

17

31, it is simply false to imply that Mr. Bauer's testimony would have changed the outcome whatsoever.

Finally, it is notable that Mr. Thiagarajah does not even attempt to argue that his statement that "[t]he evidence is overwhelming that these things occurred. . . . That was established to 100 percent certainty" is substantially true. *See* Mot. 17–19. Because he cannot. In the face of the court's holding absolving Mr. Bauer of any wrongdoing, it is obvious that the evidence could not have found that Mr. Bauer brutalized Ms. Hill at all, and especially not with "100 percent certainty." *See* Compl. ¶¶ 106–31. In any event, by not arguing substantial truth as to the "100 percent certainty" statement, Mr. Thiagarajah has waived this argument. *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("arguments not raised by a party in its opening brief are deemed waived").

## B. Mr. Thiagarajah's Statements Are The Opposite Of A Fair And True Report Of The DVRO Proceeding.

Mr. Thiagarajah invokes the fair and true report privilege, codified at Cal. Civ. Code § 47, which protects fair and true reports of official proceedings, even though his statements to *The Washington Post* were *the exact opposite* of a fair and true report of the DVRO Proceeding. Mot. 20–24. The Ninth Circuit has explained that a statement is a fair and true report if it reflects "the substance, the gist, the sting of the libelous charge." *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992). Mr. Thiagarajah's statements about the DVRO Proceeding do not fall within the privilege because they do not capture the "substance" or "gist" of the DVRO Proceeding whatsoever. Here, the court in the DVRO Proceeding definitively concluded that Mr. Bauer *did not* brutalize Ms. Hill because all of the conduct was consensual and was requested by Ms. Hill. *See* Compl. ¶¶ 106–31. But in *The Washington Post* article, Mr. Thiagarajah not only falsely claimed that he did brutalize her, but even worse, he claimed that the evidence showed that the brutalization occurred to a 100 percent certainty. Brown Decl., Ex. A. Any average

reader would understand from Mr. Thiagarajah's language that Mr. Bauer assaulted Ms. Hill—a very serious criminal accusation—when, in truth, the DVRO Proceeding itself confirms that this did not occur. Implying that Mr. Bauer committed this crime, while the DVRO Proceeding held the exact opposite, is certainly not privileged conduct.

Other California courts have declined to apply the privilege, particularly at the pleading stage, in comparable situations. *See, e.g.*, *Gallagher*, 563 F. Supp. 3d at 1088 (declining to apply the privilege because firing "a firearm . . . at noncombatants" could have a different effect on the average reader than "spraying civilian neighborhoods in Iraq with rockets and heavy machine gun fire"); *Jezzini v. Adolf*, 2019 WL 4668008, at *6 (Cal. Ct. App. Sept. 25, 2019) (declining to apply the privilege where an article falsely stated that the plaintiff was arrested and charged with 10 counts of financial felonies when, in fact, the plaintiff had paid $500,000 through a civil forfeiture consent judgment). The *Jezzini* court reasoned: "We simply cannot conclude, as a matter of law, that the forfeiture of $500,000 has the same effect on the reader as a prosecution for ten counts of felony money structuring and money laundering." *Jezzini*, 2019 WL 4668008, at *6. As in *Jezzini*, this Court simply cannot conclude now as a matter of law that Mr. Thiagarajah's statements have the same effect on a reader as a fair and true report would have had, particularly because Mr. Thiagarajah's statements implied that the court in the DVRO Proceeding reached the opposite conclusion than it actually did.

Mr. Thiagarajah also notes that a "slight inaccuracy in details" will not destroy the privilege because it would not cause a different effect on the reader. Mot. 21 (citing *Argentieri v. Zuckerberg*, 214 Cal. Rptr. 3d 358, 375 (Ct. App. 2017)). But Mr. Thiagarajah makes no effort to explain how his statements could reasonably be considered a "slight inaccuracy." Whatever Mr. Thiagarajah could possibly believe is a "slight inaccuracy," is actually a false accusation of a serious crime—an accusation that is debunked by the very proceeding that he purports to

19

describe. *Cf. Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 765 (Ct. App. 2007) (slight discrepancy in timeframe is a "slight inaccuracy"). Again, Mr. Thiagarajah stated that Mr. Bauer "just brutalized" Ms. Hill and that "[t]he evidence is overwhelming that these things occurred" and "[t]hat was established to 100 percent certainty." Compl. ¶ 158. To contend that those statements captured the gist of the DVRO Proceeding—a proceeding in which Mr. Bauer was found not to have assaulted Ms. Hill in any way—is outrageous.

Mr. Thiagarajah also heavily relies on *J-M Mfg. Co. v. Phillips & Cohen LLP*, 201 Cal. Rptr. 3d 782 (Ct. App. 2016) to argue that Mr. Bauer fails to consider the full context of Mr. Thiagarajah's statements, as he must under California law. Mot. 21–24. But that case is inapposite. In that case, the law firm representing the plaintiffs in an underlying action against J-M Manufacturing Co. issued a celebratory press release after a jury held that J-M Manufacturing Co. had misrepresented that its pipes had been manufactured and tested for strength and durability in accordance with industry standards. *J-M Mfg. Co.*, 201 Cal. Rptr. 3d at 785. In J-M Manufacturing Co.'s subsequent lawsuit against the plaintiffs' law firm alleging that the press release was defamatory, the court found that the 3.5 page press release reasonably described the evidence presented in the underlying proceeding and the jury's findings even though there was some "puffery" in the language. *Id*. at 794–97. That could not be further from the facts as alleged here. When Mr. Thiagarajah's statements are looked at in the full context of *The Washington Post* article, it is abundantly clear that he falsely claimed an outcome of the DVRO Proceeding that did not actually occur. Stating that someone brutalized another person and that the evidence showed this to a 100 percent certainty, when the court found that no assault occurred, is a far cry from any strongly worded language in the press release in *J-M Mfg. Co.* This was no puffery on Mr. Thiagarajah's part.

1    It is also not lost on Mr. Bauer that while Mr. Thiagarajah accuses Mr. Bauer

2  of taking his statements to *The Washington Post* out-of-context, it is actually Mr.

3  Thiagarajah that takes one sentence of the DVRO Proceeding out-of-context

4  throughout his Motion. Mr. Thiagarajah latches onto the judge's statement that "the

5  injuries as shown in the photographs were terrible" to suggest that the court agreed

6  with him about whether Mr. Bauer brutalized Ms. Hill. Mot. 24 (citing Defendant's

7  Request for Judicial Notice, Ex. 2 at 8:15–16). But, as discussed above, the court's

8  full colloquy made abundantly clear that *Ms. Hill* requested the "rougher sex in the

9  second encounter," that Mr. Bauer followed all of the limits Ms. Hill set, and that

10  nothing nonconsensual occurred. In this context, the judge's statement that the

11  photographs were terrible does not lend itself to the conclusion that any

12  brutalization occurred. *See supra* p. 16.

13    But fundamentally, Mr. Thiagarajah's invocation of the fair and true report

14  privilege fails because whether his statements captured the "gist" of the DVRO

15  Proceeding cannot be resolved at this stage and is a question for the jury. While the

16  privilege will be denied if the deviation is of a "substantial character" that

17  "produces a different effect on the reader," *Crane*, 972 F.2d at 1519, the effect on

18  the average reader "is a question of fact for the jury." *Gallagher*, 563 F. Supp. 3d at

19  1083; *Argentieri*, 214 Cal. Rptr. 3d at 375 (same). As it is plausible that a jury

20  could find that Mr. Thiagarajah's false accusations had a different effect on the

21  average reader than a faithful report of the DVRO Proceeding would have had, Mr.

22  Bauer's defamation claim against Mr. Thiagarajah cannot be dismissed on this

23  basis.

24    **VI.   CONCLUSION**

25    For the foregoing reasons, the Court should deny Mr. Thiagarajah's motion

26  in its entirety.

27

28

21

1

2   Dated:        August 23, 2022          _/s/ Blair G. Brown_____
                                           Blair G. Brown (admitted *pro hac vice*)
3                                          Jon R. Fetterolf (admitted *pro hac vice*)
                                           ZUCKERMAN SPAEDER LLP
4                                          1800 M Street, N.W., Suite 1000
                                           Washington, D.C. 20036
5                                          Tel: (202) 778-1800
                                           Fax: (202) 882-8106
6                                          bbrown@zuckerman.com
                                           jfetterolf@zuckerman.com

7                                          Nell Peyser (admitted *pro hac vice*)
                                           ZUCKERMAN SPAEDER LLP
8                                          485 Madison Avenue, 10th Floor
                                           New York, NY 10022
9                                          (212) 704-9600
                                           npeyser@zuckerman.com

10                                         Shawn Holley (Cal. Bar No. 136811)
11                                         Suann C. MacIsaac (Cal. Bar No. 205659)
                                           KINSELA WEITZMAN ISER KUMP
12                                         HOLLEY LLP
                                           808 Wilshire Boulevard., 3rd Floor
13                                         Santa Monica, CA 90401
                                           Tel: (310) 566-9800
14                                         Fax: (310) 566-9873
                                           sholley@kwikhlaw.com
15                                         smacisaac@kwikhlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28