KENNETH C. FELDMAN, SB# 130699
  E-Mail: Ken.Feldman@lewisbrisbois.com
DAVID D. SAMANI, SB# 280179
  E-Mail: David.Samani@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant NIRANJAN FRED THIAGARAJAH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>             Plaintiff,<br><br>      vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>             Defendants. | Case No. 8:22-cv-00868-JVS-ADS<br><br>**DEFENDANT NIRANJAN FRED THIAGARAJAH'S REPLY TO OPPOSITION TO SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CIV. PROC. CODE § 425.16**<br><br>Date:    October 3, 2022<br>Time:   1:30 p.m.<br>Crtrm.: 10C<br><br>Judge:  Hon. James V. Selna<br><br>Action Filed:   April 25, 2022<br>Trial Date:     February 13, 2024 |

4877-2136-4273.1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. PLAINTIFF DOES NOT DISPUTE THAT HIS DEFAMATION CLAIM FALLS UNDER PRONG ONE OF THE ANTI-SLAPP STATUTE ....................................................................................................... 3

III. PLAINTIFF HAS NOT DEMONSTRATED ANY PROBABILITY OF PREVAILING BECAUSE HIS CLAIM FAILS AS A MATTER OF LAW ................................................................................................................... 3

    A. Plaintiff's Claim Fails As A Matter Of Law Because The Full Context Of The Statements Demonstrates They Are Non-Actionable Opinions ................................................................................ 3

    B. Plaintiff Has Failed To Demonstrate Falsity .......................................... 7

    C. Plaintiff's Attempt To Escape The Fair And True Report Privilege Fails Because Plaintiff Again Focuses On Statements That Never Occurred ............................................................................. 10

IV. CONCLUSION ............................................................................................... 13

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*CoreCivic, Inc. v. Candide Grp., LLC*,
 ___ F.4th ___, No. 20-17285, 2022 U.S. App. LEXIS 24417 (9th Cir. Aug. 30, 2022) ............................................................................................... 3

*Dean v. Kaiser Found. Health Plan, Inc.*,
 562 F. Supp. 3d 928 (C.D. Cal. 2022) ................................................................ 9

*Herring Networks, Inc. v. Maddow*,
 445 F. Supp. 3d 1042 (S.D. Cal. 2020) ............................................................... 4

*Herring Networks, Inc. v. Maddow*,
 8 F.4th 1148 (9th Cir. 2021) ............................................................................... 4

*Information Control Corp. v. Genesis One Computer Corp.*,
 611 F.2d 781 (9th Cir. 1980) .............................................................................. 5

*Partington v. Bugliosi*,
 56 F.3d 1147 (9th Cir. 1995) ...................................................................... 4, 6, 7

*Underwager v. Channel 9 Austl.*,
 69 F.3d 361 (9th Cir. 1995) ................................................................................ 5

## CALIFORNIA CASES

*Braun v. Chronicle Publishing Co.*,
 52 Cal. App. 4th 1036 (Cal. Ct. App. 1997) ................................................ 11, 12

*Brown v. Kelly Broadcasting Co.*,
 48 Cal. 3d 711 (Cal. 1989) ............................................................................... 12

*Colt v. Freedom Commc'ns, Inc.*,
 109 Cal. App. 4th 1551 (Cal. Ct. App. 2003) .................................................. 12

*Ferlauto v. Hamsher*,
 74 Cal. App. 4th 1394 (Cal. Ct. App. 1999) ............................................ 4, 5, 10

*GetFugu, Inc. v. Patton Boggs LLP*,
 220 Cal. App. 4th 141 (Cal. Ct.. App. 2013) ..................................................... 5

*Gilbert v. Sykes*,
   147 Cal.App.4th 13 ................................................................................................ 7

*Guillemin v. Stein*,
   104 Cal. App. 4th 156 (Cal. Ct. App. 2002) ........................................................ 5

*Healthsmart Pacific, Inc. v. Kabateck*,
   7 Cal. App. 5th 416 (Cal. Ct. App. 2016) .......................................................... 12

*Issa v. Applegate*,
   31 Cal. App. 5th 689 (Cal. Ct. App. 2019) .......................................................... 7

*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*,
   247 Cal. App. 4th 87 (Cal. Ct. App. 2016) ........................................................ 10

*Jarrow Formulas, Inc. v. LaMarche*,
   31 Cal. 4th 728 (Cal. 2003) .................................................................................. 5

*Jennings v. Telegram-Tribune Co.*,
   164 Cal. App. 3d 119 (Cal. Ct. App. 1985) ....................................................... 12

*Kilgore v. Younger*,
   30 Cal. 3d 770 (Cal. 1982) ........................................................................... 10, 11

*Navellier v. Sletten*,
   29 Cal.4th 82 (Cal. 2002) ..................................................................................... 3

*Nizam-Aldine v. City of Oakland*,
   47 Cal. App. 4th 364 (Cal. Ct. App. 1996) .......................................................... 8

*Ringler Associates Inc. v. Maryland Casualty Co.*,
   80 Cal.App.4th 1165 (Cal. Ct. App. 2000) .......................................................... 7

*Rollenhagen v. City of Orange*,
   116 Cal. App. 3d 414 (Cal. Ct. App. 1981) ....................................................... 12

*Thayer v. Kabateck Brown Kellner LLP*,
   207 Cal. App. 4th 141 (Cal. Ct. App. 2012) ........................................................ 3

## CALIFORNIA STATUTES

Cal. Civ. Code
   § 47 .......................................................................................................10, 11, 12

## **OTHER AUTHORITIES**

Bohn, Mike, *UFC on ESPN 25 video: Bruno Silva brutalizes Wellington Turman for ground-and-pound knockout* (June 19, 2021) ................ 8

*Brutal*, MERRIAM-WEBSTER.COM (2022) ....................................................................... 6

*Brutalized*, MERRIAM-WEBSTER.COM (2022) ............................................................... 6

Coppinger, Mike, *Deontay Wilder, Robert Helenius working on finalizing deal for PBC PPS fight in October, sources say* (Aug. 10, 2022) ....................................................................................................................... 8

## I. INTRODUCTION

Plaintiff TREVOR BAUER's ("Plaintiff") Opposition downplays two critical quotes underlying this case. The first quote comes from the state court which made clear at the Domestic Violence Restraining Order hearing that the injuries inflicted on Lindsey Hill were terrible: "Let me be clear. The injuries as shown in the photographs are terrible. Under most circumstances, merely seeing photographs such as those would serve as a per se condemnation of the perpetrator of such injuries." (RJN, Exh. 2 at 8:15 - 18.) Mr. Thiagarajah agreed with the state court's view of the injuries.

The second critical quote is the one that Plaintiff continues to hide from the Court. The quote that Plaintiff omitted from the Complaint and he fails to mention or address in his Opposition is an important part of what Mr. Thiagarajah told *The Washington Post*. After agreeing with the state court that Ms. Hill's injuries were terrible (instead of using the adjective "terrible," Mr. Thiagarajah uses a variation of the word "brutal"), Mr. Thiagarajah notes that the issue before the state court came down to consent, stating: "The issue was whether or not she [Ms. Hill] consented to the abuse." (RJN, Exh. 1 at p. 2.) That is an inextricable part of Mr. Thiagarajah's full quote in *The Washington Post*, and Plaintiff's efforts to avoid that quote reveal precisely how damaging it is to Plaintiff's claim.

The quote sets the context for Mr. Thiagarajah's recounting of the DVRO ruling and his advocacy for Ms. Hill. It confirms Mr. Thiagarajah's view that the brutalization of Ms. Hill was recognized by the state court, but a protective order was not warranted in light of questions about consent. It is entirely consistent with the state court's finding that the injuries were clearly terrible, but not warranting a restraining order because of concerns about consent and the unlikelihood of a reoccurrence. And it confirms that Mr. Thiagarajah gave a fair and true report of the state court's findings to *The Washington Post*. All of which protects Mr. Thiagarajah's speech many times over, leaving Plaintiff with no viable claim against Mr. Thiagarajah.

Plaintiff does not dispute that Ninth Circuit authority confirms that California's anti-SLAPP statute may be applied to his claim. The burden then shifted to Plaintiff to demonstrate a probability of success on his claim against Mr. Thiagarajah. Plaintiff did not satisfy that burden.

Plaintiff fails to heed the fact that Mr. Thiagarajah's statements came: (1) after the state court's ruling that the injuries inflicted on Ms. Hill were terrible, but there was an issue of consent that fell against Ms. Hill, (2) in response to the District Attorney's office stating that it did not believe it could establish a crime beyond a reasonable doubt, (3) from an *advocate* for Ms. Hill defending his client's presentation at the Underlying Proceeding, and (4) in response to a denial Plaintiff posted on the website after exercising the Fifth Amendment at the Underlying Proceeding. When viewing the comments through the proper prism, reasonable minds cannot differ: the statements are and would always be understood as opinions from an advocate on the emotionally-charged issue of sexual violence.

Assuming *arguendo* that Plaintiff has met his burden in demonstrating a provably false factual assertion, Plaintiff's case collapses on establishing falsity. The crux of Plaintiff's Opposition is, again, that Mr. Thiagarajah's use of the term "brutalize" is fundamentally inconsistent with the allegedly consensual savage beating Plaintiff inflicted on Ms. Hill. This, too, is an unsupportable position. The term "brutalize" is commonly used to describe consensual beatings. Indeed, as shown *infra*, sportswriters covering combat sports often use the term. Moreover, Plaintiff's position again simply ignores Mr. Thiagarajah's clarifying statement expressly mentioning the underlying judge's concerns about consent.

For the same reason, Plaintiff's attempt to escape the fair and true report privilege fails as a matter of law. Plaintiff's argument is again premised on a misconstruction of what Mr. Thiagarajah actually said. The Court should not be misled by Plaintiff's attempt to introduce a "straw comment"—that the issue of nonconsensual sexual assault had been fully proven—when that is visibly not what

Mr. Thiagarajah was reported as stating.

Accordingly, Mr. Thiagarajah respectfully urges the Court to grant this special motion to strike and to dismiss him from this action with prejudice.

## II. PLAINTIFF DOES NOT DISPUTE THAT HIS DEFAMATION CLAIM FALLS UNDER PRONG ONE OF THE ANTI-SLAPP STATUTE

As a preliminary matter, Plaintiff does not dispute that Mr. Thiagarajah has met his burden on prong one of the anti-SLAPP statute—i.e., that Plaintiff's claims arise from Mr. Thiagarajah's exercise of protected activity. *See Navellier v. Sletten*, 29 Cal.4th 82, 88 (Cal. 2002). Thus, as Plaintiff recognizes, the burden shifts to Plaintiff to establish a probability of prevailing on his cause of action for defamation. *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 159-160 (Cal. Ct. App. 2012).[1]

## III. PLAINTIFF HAS NOT DEMONSTRATED ANY PROBABILITY OF PREVAILING BECAUSE HIS CLAIM FAILS AS A MATTER OF LAW

### A. Plaintiff's Claim Fails As A Matter Of Law Because The Full Context Of The Statements Demonstrates They Are Non-Actionable Opinions

The parties do not dispute the relevant test here, which is:

> (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic

---

[1] Plaintiff contests the general applicability of an anti-SLAPP motion in federal court on the grounds that he is preserving the issue for appeal. But it remains settled in the Ninth Circuit that the motion may be filed as to state law claims. The Ninth Circuit reaffirmed this last week in *CoreCivic, Inc. v. Candide Grp., LLC*, ___ F.4th ___, No. 20-17285, 2022 U.S. App. LEXIS 24417 at *10-17 (9th Cir. Aug. 30, 2022).



| | |
|---|---|
| 1 | language that negates that impression, and (3) whether the |
| 2 | statement in question is susceptible of being proved true or |
| 3 | false. |

*Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995); see Opp. at 17:10-17.

Plaintiff, however, misapplies the relevant test. Plaintiff focuses on the vehicle for the publication—*The Washington Post*—citing *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1049 (S.D. Cal. 2020) for the proposition that a "viewer who watches news channels tunes in for facts and the goings-on of the world." But Plaintiff neglects to mention the very next clause in the quoted sentence, in which the *Herring Networks* district court noted that "this point must be juxtaposed with the fact that [the defendant] made the allegedly defamatory statement on her own talk show news segment where she is invited and encouraged to share her opinions with her viewers." 445 F. Supp. 3d at 1049; *see also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1158-1159 (9th Cir. 2021) (finding that a reasonable viewer would have understood the defendant to be espousing opinions, notwithstanding her reporting on a "news" program). Indeed, the Ninth Circuit in *Herring Networks, Inc.* ultimately concluded that the defendant's statements were opinion despite her expressing her opinion with the phrase "really literally" on her news program. 8 F.4th at 1159-1160.

Mr. Thiagarajah did not author *The Washington Post* story in question. He is not the "reporter" whom the audience would expect to provide the "facts and the goings-on of the world." Rather, the article plainly identifies him as *Ms. Hill's* lawyer, and cites his statements in *response* to *Ms. Hill's* alleged assaulter and adversary's deprecation of Ms. Hill's claims and the District Attorney's office's statement that it did not believe it could establish a crime beyond a reasonable doubt. As explained in the moving papers, it is axiomatic that a reader understands *advocates* to be prone to espousing highly-charged opinions in the context of litigation. *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (Cal. Ct. App. 1999).

1      Moreover, although Plaintiff contends that Mr. Thiagarajah's statements do not include fiery rhetoric or hyperbole, Plaintiff's contention is purely conclusory. In fact, Mr. Thiagarajah's use of the phrases "easy to deny," "overwhelming," and "100 percent certainty" are all precisely the sort of verbiage a zealous advocate would use to describe his client's evidentiary showing in a proceeding and to respond to the client's adversary's contrary statements. *See Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) ("Where the language of the statement . . . is of a kind typically generated in a spirited legal dispute in which the judgment, loyalties and subjective motives of the parties are reciprocally attacked and defended in the media and other public forums, the statement is less likely to be understood as a statement of fact rather than as a statement of opinion.").

      As also noted in the moving papers, and essentially untouched in the Opposition, the subject matter in question here involves issues regarding sexual violence, where a reader would expect highly-charged assertions and would view them as opinion. *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 367 (9th Cir. 1995) ("Because how one proves child abuse is a highly controversial subject, the audience to a discussion of defense tactics in child abuse cases would expect emphatic language on both sides.").

      In short, these statements are "[d]eprecatory statements regarding the merits of litigation" and thus "'nothing more than "the predictable opinion" of one side to the lawsuit' [which] cannot be the basis for a defamation claim." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 156 (Cal. Ct.. App. 2013)

      Plaintiff's attempt to distinguish *GetFugu, Inc.* and *Ferlauto* falls flat. At-issue statements in both cases involved the contention that an adversary's claims were "frivolous." (*GetFugu*, 220 Cal. App. 4th at 156; *Ferlauto*, 74 Cal. App. 4th at 1401. A "frivolous" case is one totally and wholly lacking in merit—one that no reasonable lawyer would consider worthy of pursuing. *See Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 743 n. 13 (Cal. 2003); *Guillemin v. Stein*, 104 Cal. App. 4th 156, 168

(Cal. Ct. App. 2002). Mr. Thiagarajah's statements, that his client's case *had* merit, is essentially the direct converse of such a statement, and should be entitled to precisely the same protection.

As to the third element, there is no better proof that Mr. Thiagarajah's statement was not provably true or false than the fact that Plaintiff ascribes a wholly different meaning to the word "brutalize" than its true definition. Plaintiff contends the statement is "false" because it conveyed that Plaintiff had committed a sexual assault. But this, of course, requires the Court to disregard the actual definition of the word—a surefire sign that the term defies definition and therefore is not provably false. *See*, *e.g.*, *Brutalized*, MERRIAM-WEBSTER.COM (2022) (available at https://www.merriam-webster.com/dictionary/brutalize) (defining word as "to treat brutally"); *Brutal*, MERRIAM-WEBSTER.COM (2022) (available at https://www.merriam-webster.com/dictionary/brutally) (defining the word brutal as "suitable to one who lacks intelligence, sensitivity, or compassion").

As the Ninth Circuit held in *Partington*:

> When, as here, an author writing about a controversial occurrence fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts, his statements should generally be protected by the First Amendment. Otherwise, there would be no room for expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest to the public. Instead, authors of every sort would be forced to provide only dry, colorless descriptions of facts, bereft of analysis or insight. There would be little difference between the editorial page and the front page, between commentary and reporting, and the robust debate

among people with different viewpoints that is a vital part of our democracy would surely be hampered.

*Partington*, 56 F.3d at 1154.

This same reasoning applies with full force to Mr. Thiagarajah, a firsthand witness, offering his opinions on the Underlying Proceeding and the District Attorney's office decision not to charge Plaintiff with a crime when queried by a reporter.

Finally, Plaintiff makes no attempt to assert that Mr. Thiagarajah's reported statement that it is "easy to deny" allegations via a YouTube video post, as opposed to on the witness stand under oath, is factual in nature. Plainly, Plaintiff is silent because Mr. Thiagarajah's statement—expressed as an advocate for Ms. Hill—is undeniably his opinion.

### B. Plaintiff Has Failed To Demonstrate Falsity

Once again, Plaintiff does not dispute the basic framework. As noted in the moving papers, it "is well settled that a defendant is not required in an action for libel to justify every word of the alleged defamatory matter; it is sufficient if the substance, *the gist, the sting of the libelous charge be justified, and if the gist of the charge be established by the evidence the defendant has made his case.*" *Gilbert v. Sykes*, 147 Cal.App.4th 13, 28 (emphasis added). "[A] slight inaccuracy in the details will not prevent a judgment for the defendant, if the inaccuracy does not change the complexion of the affair so as to affect the reader of the article differently." *Id.*; *see also Ringler Associates Inc. v. Maryland Casualty Co.*, 80 Cal.App.4th 1165, 1182 (Cal. Ct. App. 2000) ("[T]he determinative question is whether the 'gist or sting' of the statement is true or false, benign or defamatory, in substance.").

Moreover, because Plaintiff is indisputably a public figure and it is undisputed that Plaintiff's claims involve statements about a matter of public interest, Plaintiff bears the burden of establishing falsity. *See Issa v. Applegate*, 31 Cal. App. 5th 689,

703 (Cal. Ct. App. 2019) (discussing a public figure plaintiff's burden in establishing a defamation claim); *Nizam-Aldine v. City of Oakland*, 47 Cal. App. 4th 364, 376 (Cal. Ct. App. 1996) (noting that when "the allegedly defamatory statements pertain to a matter of public interest," even a private-figure plaintiff bears the burden of showing falsity).

The *sine qua non* of Plaintiff's argument that he can prove "falsity" is that the word "brutalize" implies a lack of consent. Facially, of course, this argument is meritless because it **again ignores that Mr. Thiagarajah expressly identified the question of consent** in his comments. **Someone can be brutalized even with consent.**

Even if the term "brutalize" were verifiable in nature in light of all the circumstances here, it is still Plaintiff's burden to demonstrate that he did not brutalize Ms. Hill. He certainly does not deny that he was rough with her. The word "brutalize" is commonly used to describe terrible beatings where there is no doubt about consent, such as in the world of combat sport. *See, e.g.*, Coppinger, Mike, *Deontay Wilder, Robert Helenius working on finalizing deal for PBC PPS fight in October, sources say*, ESPN.COM (Aug. 10, 2022) ("[Deontay Wilder] was given little chance following the second meeting with [Tyson] Fury, when 'The Gypsy King' **brutalized** him en route to a seventh-round TKO, but Wilder was able to floor Fury twice in Round 4."), (available at https://www.espn.com/boxing/story/_/id/34378970/deontay-wilder-robert-helenius-working-finalizing-deal-pbc-ppv-fight-october-sources-say); Bohn, Mike, *UFC on ESPN 25 video: Bruno Silva **brutalizes** Wellington Turman for ground-and-pound knockout*, YAHOO.COM (June 19, 2021), (available at https://sports.yahoo.com/ufc-espn-25-video-bruno-235917782.html?src=rss).

Moreover, Plaintiff's Opposition remains primarily premised on the unsupported contention that the word "brutalize" somehow equates to a nonconsensual criminal sexual assault. But that defies the state trial court's conclusion in the Underlying Proceeding. The trial court's finding speaks for itself.

The judge unequivocally found that Plaintiff clearly inflicted terrible injuries on Plaintiff. (RJN, Exh. 2 at 8:15-18.) The underlying court's decision not to grant a restraining order was based on questions of consent and the threat of future harm, not on some doubt as to whether Plaintiff visited the "terrible" injuries on Ms. Hill.

Put simply, Plaintiff's attempt to stretch the definition of the word "brutalize" to equate to "sexual assault without consent" is simply contrary to law. As noted, the relevant inquiry is whether Plaintiff can establish that the "gist and sting" of Mr. Thiagarajah's statements were not substantially true. As a matter of law, they were.

Plaintiff also disingenuously broadens the underlying court's statements to assert the court concluded that Ms. Hill's allegations were "fabricated." The transcript demonstrates that Plaintiff is again taking liberties with judicially-noticeable facts. The underlying court's actual comments were far more limited, stating only that Ms. Hill's first declaration—the predicate for Ms. Hill's initial temporary restraining order—was misleading. (See RJN, Exh. 3 at 68:3-12.)

The same is true for Mr. Thiagarajah's statements regarding Plaintiff's decision to take to YouTube to call Ms. Hill a liar, rather than to give testimony under oath. Plaintiff argues in his Opposition that this statement can be read to assert "guilt" on the part of Plaintiff. In doing so, Plaintiff is again ignoring the relevant test when it comes to falsity. Plaintiff had the burden of demonstrating that the gist and sting of this statement is not true. Yet Mr. Thiagarajah's statement is unequivocally true – Plaintiff went on YouTube and he did not take the stand to face cross-examination.

As the Court knows, merely presenting conclusory argument is not sufficient to enable Plaintiff to meet his burden under the 12(b)(6) standard. *See Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 933 (C.D. Cal. 2022) (applying 12(b)(6) standard on anti-SLAPP motion, noting that court is "not bound to accept as true a legal conclusion couched as a factual allegation").

/ / /

/ / /

### C. Plaintiff's Attempt To Escape The Fair And True Report Privilege Fails Because Plaintiff Again Focuses On Statements That Never Occurred

Once again, Plaintiff does not dispute the basic framework at issue here. Plaintiff does not dispute that the statements in question involve a communication to public journal regarding a public official proceeding, triggering the application of Cal. Civ. Code § 47. Nor does Plaintiff dispute that a report is "fair and true" so long as the substance of the communication captures the gist or sting of the statements made in the official proceedings. *See J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 101-105 (Cal. Ct. App. 2016).[2]

In attempting to evade the application of the fair and true report privilege, Plaintiff reverts to the same deficient arguments dealt with above. *I.e.*, Plaintiff argues that the statements are not accurate based on his straw-man argument that Mr. Thiagarajah accused Plaintiff of a nonconsensual sexual assault of Ms. Hill. But as explained above, Plaintiff's conclusory assertions are not sufficient to establish a claim as a matter of law. The statements fail upon an examination of Mr. Thiagarajah's actual comments in conjunction with the trial court's conclusion regarding Plaintiff's infliction of terrible injuries on Ms. Hill.

When it comes to allegations of wrongdoing, courts look to the gist of the charge as reported, not the particulars as interpreted by the plaintiff. For example, in *Kilgore v. Younger*, 30 Cal. 3d 770 (Cal. 1982), the Attorney General of California released a report containing the names of a number of persons suspected of involvement in organized crime. *Id.* at 774. Kilgore, who was listed as a bookmaker by the Attorney General, brought suit against several newspapers who simply reported

---

[2] The same "gist and sting" test from the substantial truth doctrine applies to the "fair and true" report analysis under Civ. Code § 47. *Ferlauto*, 74 Cal. App.4th at 1404.

the inclusion of his name without identifying the "specific organized criminal activity" he was suspected of. *Id.* at 775. He argued the articles were defamatory because, in failing to state he was suspected only of bookmaking, they implied he was engaged in all the criminal activity described in the report, including, for example, racketeering, narcotics, pornography, murder, and so on. *Id.* at 776. The court rejected Kilgore's contention, holding that the media captured the "gist" and "sting" of the Attorney General's report:

> Kilgore's attempt to read the reports' delineation of organized criminal activity as pertaining in all respects to himself is unwarranted. In our view, the average reader of either paper would reasonably interpret the articles to imply only that Kilgore was connected in some fashion with organized crime. As we see it, this is exactly the import of Attorney General Younger's release. In other words, we simply do not believe that the average reader would take the articles to intimate that Kilgore was involved in every – or even necessarily more than one – type of organized criminal activity.

*Id.* at 777 (holding that newspaper articles about Kilgore were protected as "fair and true" reports pursuant to Civil Code § 47).

Other courts have come to similar conclusions. In *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036 (Cal. Ct. App. 1997), the plaintiff objected that a civil warrant requested by the State Auditor had been mischaracterized as having been "opened" by the district attorney, which was the only official who could launch a criminal investigation. *Id.* at 1050 n.6. Calling this argument a "quibble," the *Braun* court rejected the contention that these legal differences would have been significant to the "average reader." *Id.* The "gist" and "sting" was that public officials, including representatives of the district attorney's office who "were present during the search,"

were investigating alleged criminal wrongdoing by the plaintiff. *Id.*

Similarly, in *Jennings v. Telegram-Tribune Co.*, 164 Cal. App. 3d 119, 127 (Cal. Ct. App. 1985), the Court found a report stating that plaintiff was "convicted" of tax fraud accurately conveyed the gist of judicial proceedings in which the plaintiff actually pleaded no contest to failing to file tax returns: "'Tax fraud' and 'tax evasion' are harsh terms; but we cannot say the average reader would have viewed the offenses differently, given the amount of gross income involved and the length of time it had gone unreported, had less colorful descriptions been chosen."

Here, as discussed above, the gist and sting of Mr. Thiagarajah's comments accurately convey the underlying trial court's conclusion that Ms. Hill's evidence established that Plaintiff inflicted terrible injuries on Ms. Hill but that the court had questions regarding issues of consent. "'Fair and true' in [Civ. Code § 47(d)'s] context does not refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged statements with respect to what occurred in the judicial proceedings." *Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal. App. 5th 416, 434 (Cal. Ct. App. 2016). A report is considered "fair and true" even if it does not resolve what actually happened, or fails to present the plaintiff's version of the facts. *Rollenhagen v. City of Orange*, 116 Cal. App. 3d 414, 427 (Cal. Ct. App. 1981) (overruled on other grounds in *Brown v. Kelly Broadcasting Co.*, 48 Cal. 3d 711, 738-739 (Cal. 1989). Likewise, a report is "fair and true" even if it contains "some errors." *Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1558-1560 (Cal. Ct. App. 2003).

Mr. Thiagarajah's statements were a fair and true report. They are therefore absolutely privileged, barring Plaintiff's claim for defamation.

/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

Plaintiff's sole claim for defamation against Mr. Thiagarajah is a SLAPP. Plaintiff has sued Mr. Thiagarajah for protected activity, and cannot establish any probability of prevailing on his claim for defamation. For the reasons set forth above and in the moving papers, Mr. Thiagarajah respectfully urges the Court to grant his anti-SLAPP Motion, strike the second claim in the Complaint with prejudice and deem Mr. Thiagarajah the prevailing party.

DATED: September 6, 2022　　　　LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ David D. Samani
　　DAVID D. SAMANI
　　Attorneys for Defendant NIRANJAN FRED THIAGARAJAH