Bryan J. Freedman, Esq. (SBN: 151990)
bfreedman@ftllp.com
Jesse A. Kaplan, Esq. (SBN: 255059)
jkaplan@ftllp.com
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Defendant and Counterclaimant Lindsey C. Hill

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>Plaintiff,<br>vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>Defendant. | Case No. 8:22-cv-00868 JVS (ADSx)<br><br>[Assigned to Judge: Hon. James V. Selna]<br><br>**LINDSEY HILL'S OPPOSITION TO COUNTER-DEFENDANT TREVOR BAUER'S MOTION TO DISMISS HILL'S COUNTERCLAIMS** |
| LINDSEY C. HILL,<br><br>Counterclaimant,<br><br>vs.<br><br>TREVOR BAUER,<br><br>Counter-defendant. | Hearing Date: November 21, 2022<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10C<br>Action Filed: April 25, 2022 |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. WHETHER BAUER BATTERED OR SEXUALLY BATTERED HILL WAS NOT ACTUALLY OR NECESSARILY DECIDED BY THE STATE COURT .......... 3

A. The State Court did not Expressly Find that Bauer did Not "Abuse" Hill. .......... 5

B. The State Court did not Expressly Find that Hill Consented to Battery Resulting in Serious Bodily Harm. .......... 7

C. The State Court did Not Expressly Find What Did or Did Not Happen While Hill was Unconscious or Partially Unconscious. .......... 9

D. The Family Court did Not "Necessarily" Decide that Bauer did Not Previously Harm Hill. .......... 10

III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Baldwin*,
249 F.3d 912 (9th Cir. 2001) .......................................................... 3, 4

*Boblitt v. Boblitt*,
190 Cal. *App*. 4th 603 (2010) .......................................................... 4

*Boro v. Superior Ct*.,
163 Cal. App. 3d 1224 (1985) .......................................................... 10

*Clark v. Bear Stearns & Co*.,
966 F.2d 1318 (9th *Cir*. 1992) .......................................................... 4, 5

*Davis & Cox v. Summa Corp*.,
751 F.2d 1507 (9th Cir.1985) .......................................................... 4

*Gonzales v. Oliva*,
No. C074405, *2016* WL 828624 (Cal. Ct. App. Mar. 3, 2016) .......................... 11

*In re Harmon*,
250 F.3d 1240 (9th Cir. 2001) .......................................................... 3, 4

*Islam v. U.S. Dep't of Homeland Sec.*,
136 F. Supp. 3d 1088 (N.D. Cal. 2015) .......................................................... 3

*L.G. v. M.B.*,
25 Cal. App. 5th 211 (2018) .......................................................... 4

*In re Marriage of Fregoso & Hernandez*,
5 Cal. App. 5th 698 (2016) .......................................................... 11

*Meza v. Cate*,
No. 1:11-CV-01483-AWI, 2012 WL 1292566 (E.D. Cal. Apr. 16, 2012) ........... 8

*Nevarez v. Tonna*,
227 Cal. App. 4th 774 (2014) .......................................................... 12

*Nicole G. v. Braithwaite*,
49 Cal. App. 5th 990 (2020) .......................................................... 11

*Noble v. Draper*,
160 Cal. App. 4th 1 (2008) ........ 3

*People v. Drayton*,
42 Cal. App. 5th 612 (2019) ........ 8

*People v. Miranda*,
62 Cal. App. 5th 162 (2021) ........ 10

*People v. Ogunmola*,
193 Cal. App. 3d 274 (1987) ........ 10

*People v. Samuels*,
250 Cal. App. 2d 501 (1967) ........ 8, 9

*Salisbury v. Hickman*,
974 F. Supp. 2d 1282 (E.D. Cal. 2013) ........ 12

*Schmidt v. Cnty. of Nevada*,
808 F. Supp. 2d 1243 (E.D. Cal. 2011) ........ 3

*Van Oss v. Van Oss*,
No. A106123, 2005 WL 240847 (Cal. Ct. App. Jan. 21, 2005) ........ 12

*In re Williams' Est.*,
36 Cal. 2d 289 (1950) ........ 3

*Woodbury v. Brown-Dempsey*,
108 Cal. App. 4th 421 (2003) ........ 11

**Statutes**

Cal. Family Code § 6203 ........ 5

Cal. Family Code § 6220 ........ 11

Cal. Family Code § 6300 ........ 11

Cal. Family Code § 6301(c) ........ 11

Cal. Family Code § 6340(a)(1) ........ 11, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Counter-Defendant Trevor Bauer ("Bauer") violently battered and sexually battered counterclaimant Lindsey Hill ("Hill') on two separate occasions. During the first battery on April 22, 2021, Bauer used Hill's hair to choke Hill to a point of unconsciousness. (Counterclaim, ¶¶ 14-17). When Hill was regaining consciousness, she awoke to discover Bauer anally penetrating her which resulted in severe pain and bleeding. (Counterclaim, ¶¶ 18-19, 21-22).

During the second battery on May 16, 2021, Bauer again used Hill's hair to twice choke Hill to a point of unconsciousness. (Counterclaim, ¶¶ 24-30). When Hill was regaining consciousness the first time, she awoke to Bauer forcefully and repeatedly punching her in the face with a closed fist. (Counterclaim, ¶ 28). When Hill was regaining consciousness the second time, she awoke to Bauer spreading her knees to expose her vagina. (Counterclaim, ¶ 31). Bauer then began to forcefully and repeatedly punch Hill's vagina and groin area with a closed fist. (*Id.*). At some point while Hill was unconscious, Bauer also forcefully hit Hill in her buttocks. (Counterclaim, ¶ 33). Hill was hospitalized as a result of the serious bodily injuries that she suffered from Bauer during the May 16 incident. (Counterclaim, ¶ 34; Brown Decl., Ex. A [Petition, ¶ 22, Ex. 6]).

Following Hill's release from the hospital, Hill cooperated with the the Pasadena Police Department's ("PPD") investigation of Bauer. During a recorded telephone call between Hill and Bauer conducted by the PPD, Bauer made a number of tacit admissions concerning his encounter with Hill.[1] (Counterclaim, ¶¶ 35-40). During the call, Hill discussed being punched, which resulted in black eyes, being

[1] Hill was not able to obtain a copy of the recorded call from the PPD until earlier this year and well after the prior Domestic Violence Restraining Order family law proceeding had concluded.

punched in the top of her vagina, and that they had not talked about those things before Bauer had engaged in such conduct. (Counterclaim, ¶ 36). Bauer did not dispute that he had punched Hill and that doing so resulted in black eyes, and did not dispute that he punched Hill in the top of her vagina. (Counterclaim, ¶ 36). Further, Bauer stated that he "understand[s] that" and "understand[s]" how Hill feels that way. (*Id*.). When Hill discussed being punched hard and being bruised, and how Bauer thought that was "okay", Bauer stated, among other things, that he should have "clarified that," talked to Hill "more about it" and gotten on the "same page with [Hill] about that." (Counterclaim, ¶ 37).

Despite the significant harm that Bauer inflicted on Hill, Bauer now claims that Hill is precluded from asserting any tort claims against him based on a purported collateral estoppel defense. Bauer claims that Hill is collaterally estopped based on the the denial of Hill's Petition for a Domestic Violence Restraining Order ("DVRO") in a prior family law proceeding in Los Angeles Superior Court. Bauer is wrong. The state court's denial of Hill's Petition for a DVRO does not have collateral estoppel effect as the state court neither actually nor necessarily decided whether Bauer battered or sexually battered Hill in the manner alleged in the Counterclaim in this lawsuit.

First, the state court did <u>not</u> expressly find that Bauer did not abuse, batter or sexually assault or batter Hill. There was no express finding that Hill's Petition was being denied on the basis that Bauer did not previously abuse Hill. Likewise, the state court did not make any findings as to whether Bauer engaged in the specific acts of abuse that form the basis for Hill's battery and sexual battery tort claims against Bauer in the present lawsuit.

Second, although the state court's ruling did include some discussion on the issue of a limited consent, it simply never made any findings that Hill consented to the great bodily injuries that form the basis Hill's battery and sexual battery tort claims against Bauer in the present lawsuit. Any vague, general and/or unspecified consent

to rough sex by Hill did not mean that Hill consented to anything and everything that could potentially happen to her, including the specific acts alleged in the Counterclaims that resulted in great bodily injury.

Finally, the state court did not necessarily determine that Bauer did not previously batter or sexually assault Hill in denying Hill's Petition for a DVRO. The state court had broad discretion to deny such relief on other grounds, even if Bauer did previously abuse Hill. That is precisely what happened. The state court both expressly considered and expressly denied Hill's Petition for a DVRO on the basis that there was not a probability of **future** harm or abuse, not because Bauer did not previously harm Hill.

Accordingly, Hill is not collaterally estopped from asserting the tort claims alleged against Bauer in her Counterclaims. Bauer's Motion to Dismiss therefore should be denied.

## II. WHETHER BAUER BATTERED OR SEXUALLY BATTERED HILL WAS NOT ACTUALLY OR NECESSARILY DECIDED BY THE STATE COURT

The state court neither actually nor necessarily decided whether Bauer battered or sexually battered Hill. In order for collateral estoppel to apply, the issue of whether Bauer previously battered Hill as alleged in Hill's Counterclaims must have been both actually litigated and necessarily decided by the state court in the DVRO proceeding. *See Noble v. Draper*, 160 Cal. App. 4th 1, 11 (2008); *Schmidt v. Cnty. of Nevada*, 808 F. Supp. 2d 1243, 1250 (E.D. Cal. 2011). To satisfy the requirement that an issue was actually decided, generally there must be an "**express finding**" on the allegation for which preclusion is sought. *In re Harmon*, 250 F.3d 1240, 1247 (9th Cir. 2001); *In re Baldwin*, 249 F.3d 912, 918–19 (9th Cir. 2001); *Islam v. U.S. Dep't of Homeland Sec.*, 136 F. Supp. 3d 1088, 1092 (N.D. Cal. 2015); *In re Williams' Est.*, 36 Cal. 2d 289, 297–98 (1950).

/ / /

In line with the requirement that the prior court must make an express finding, vague or unspecified rulings are insufficient for purposes of collateral estoppel. *See L.G. v. M.B.*, 25 Cal. App. 5th 211, 230–32 (2018); *Boblitt v. Boblitt*, 190 Cal. App. 4th 603, 607 (2010)(holding that plaintiff was not collaterally estopped from asserting tort claims as a result of prior state court decision that some unspecified allegations of domestic violence were not credible). The record must contain sufficient information to discern which of the challenged allegations the prior court found did or did not have merit. *See L.G.*, 25 Cal. App. 5th at 230–32 ("The record in this case does not contain sufficient information to discern which, if any, of Appellant's challenged allegations the court found had merit when the temporary restraining orders were issued.").

The express finding requirement can only be avoided if the court in the prior action "necessarily" decided the issue. *Harmon*, 250 F.3d at 1248 ("However, the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue: As a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated."); *Baldwin*, 249 F.3d 912, 918–19. "If the record does not permit a conclusion that an issue was necessarily decided, the prior decision cannot be given preclusive effect." *L.G.*, 25 Cal. App. 5th at 231 (citing *Thompson v. Ioane*, 11 Cal. App. 5th 1180, 1197-98 (2017)(record from a prior action that resulted in the dismissal of a quiet title claim against a party did not show that the party successfully established his own right to title).

Bauer has the burden of showing with "clarity and certainty" what was determined by the prior court. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992). If there is doubt, collateral estoppel will not be applied. *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir.1985)(superseded in part by statute, 28 U.S.C. § 1961). "If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue." *Davis & Cox*,

751 F.2d at 1518-19 (citing *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, (1970)); *see also Clark*, 966 F.2d at 1321.

Therefore, Bauer must demonstrate that the state court either expressly found that he did not commit the battery or sexual battery as alleged in Hill's Counterclaims in this lawsuit, or that the state court necessarily reached that conclusion in denying Hill's petition for a DVRO. Bauer has not satisfied that burden as the state court did not actually or necessarily make any such finding.

**A. <u>The State Court did not Expressly Find that Bauer did Not "Abuse" Hill</u>.**

In the Motion, Bauer falsely contends that the state court concluded that Bauer did not batter or sexually assault Hill. (Motion pp. 1 and 13). Bauer is wrong. The state court did <u>not</u> expressly find that Bauer did not abuse, batter or sexually assault or batter Hill. (Brown Decl., Ex. B [Transcript, pp. 580-587]). Likewise, there was no express finding that Hill's Petition was being denied on the basis that Bauer did not previously abuse Hill. (*Id*.). In fact, there was no mention of that in the state court's ruling. Conspicuously absent from the state court's ruling was any discussion on whether Bauer in fact abused Hill. Likewise, the state court did not even mention California Family Law Code §§ 6300(a)[2] or 6203, the sections in the Domestic Violence Protection Act ("DVPA"), that address and define past acts of abuse.[3]

Of equal importance, the state court did not make any findings as to whether Bauer engaged in the specific acts of abuse that form the basis for Hill's battery and

---

[2] Family Law Code §§ 6300(a) provides courts with discretion to grant relief based on "reasonable proof of a past act or acts of abuse."

[3] Family Law Code § 6203 defines "abuse" under the DVPA as follows: "(a) Intentionally or recklessly to cause or attempt to cause bodily injury[;] [¶] (b) Sexual assault[;] [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another[; or] [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to Section 6320."

sexual battery tort claims against Bauer in the present lawsuit. (Brown Decl., Ex. B [Transcript, pp. 580-587]). In particular, the Counterclaim alleges that during the April 22, 2021 incident, Bauer choked Hill unconscious in a dangerous and excessive manner, and forcefully and violently had anal sex with Hill while she was unconscious to the point she was bleeding from her anus.[4] (Counterclaim, ¶¶ 16-22, 42 and 51). The state court did not make any findings that Bauer did not engage in such conduct.

The Counterclaim further alleges that during the May 16, 2021 incident, Bauer twice choked Hill unconscious in a dangerous and excessive manner, that Bauer forcefully and repeatedly punched Hill in the face with a closed fist, that Bauer forcefully and repeatedly punched Hill in the vagina and groin area, and that Bauer forcefully punched Hill in the buttocks. (Counterclaim, ¶¶ 26-34, 45, 55). Hill was hospitalized as a result of the injuries she suffered from Bauer during the May 26 incident. (Counterclaim, ¶ 34; Brown Decl., Ex. A [Petition, ¶ 22, Ex. 6]). Once again, the state court did not make any findings that Bauer did not engage in such conduct.[5] The state court was silent as to whether Bauer did or did not engage in such conduct during either the April 22 or May 16 incidents.

In the Motion, Bauer falsely contends that the state court found that Hill's testimony was not credible and that it found that there was no evidence that Bauer had anal sex with her during the first encounter. (Motion, p. 4). This characterization of the state court's findings is objectively false. The state court simply did not find that Hill consented to violent anal sex during the first encounter or that Hill's testimony

---

[4] Bauer falsely contends that the state court found that Hill's testimony was not credible and that it found that there was no evidence that Bauer had anal sex with her during the first encounter. (Motion, p. 4). This is objectively false. The state court simply did not find that Hill consented to anal sex during the first encounter or that Hill's testimony was not credible. (Brown Decl., Ex. B [Transcript, pp. 584-585]).

[5] At most, the state court commented that there was some evidence that Hill was hit on the buttocks. (Brown Decl., Ex. B [Transcript, pp. 584:24-26]).

was not credible. (Brown Decl., Ex. B [Transcript, pp. 584-585]).

**B. The State Court did not Expressly Find that Hill Consented to Battery Resulting in Serious Bodily Harm.**

In his Motion, Bauer falsely contends that the state court found that Hill consented to "everything that occurred between her and Mr. Bauer." (Motion, pp. 13-14). Not so. While the state court's ruling did include some discussion on the issue of a limited consent, it simply never made any findings that Hill consented to the great bodily injuries that form the basis Hill's battery and sexual battery tort claims against Bauer in the present lawsuit. (Brown Decl., Ex. B [Transcript, pp. 584-585]).

At most, the state court's commentary may rise to a limited finding that Hill consented to some form of "rough sex" and being choked. (Brown Decl., Ex. B [Transcript, pp. 585:15-586:2]). The state court, however, did not find that Hill consented to anything and everything that Bauer may have done to her, in particular Bauer's conduct that resulted in great bodily injuries. Critically, the state court did not specifically find that Hill consented to being repeatedly punched in the face with a closed fist, being repeatedly punched in the vagina and groin area, being forcefully punched in the buttocks or violent anal sex.[6] With perhaps the exception of some choking, the state court did not even find whether any of that conduct even occurred, let alone that it was consensual.[7]

---

[6] Bauer falsely contends that Hill testified to consenting to anal sex. (Motion, p. 15). Hill, however, never testified or took the position that she consented to anal sex. In fact, Hill's counsel explicitly stated that the anal sex was not consensual. (Brown Decl., Ex. B [Transcript, pp. 575:10-26]("And the fact she told him not to do it again **doesn't justify doing it in the first place without her consent**.")(Emphasis added).

[7] While the state court seemed to acknowledge that Bauer choked Hill, the court did not determine the extent of such choking. (Brown Decl., Ex. B [Transcript, pp. 585:22-24]). The court also acknowledged that there was some evidence that Hill was hit in the Butt during the first incident. (*Id.* [Transcript, pp. 584:24-26]).

At the very least, the state court's discussion on consent was far too vague, inconclusive and unspecified to be entitled to collateral estoppel effect. (Brown Decl., Ex. B [Transcript, pp. 580-587]).

In the Motion, Bauer relies on the state court's commentary about the "potential consequences of the activities" and that Hill and Bauer set limits, interpreting that to mean that the state court found that Hill consented to anything and everything that could have happened except that which was expressly identified by Hill as "off limits". (Motion, p. 9). Bauer's interpretation is wrong.

Potential consequences and consent are not synonymous. That is, some vague, general and/or unspecified consent to rough sex does not mean that Hill consented to anything and everything that could potentially happen to her, including the specific acts alleged in the Counterclaims that resulted in great bodily injury. For example, did Hill consent to being choked to death or being put into a coma? Of course not.

Likewise, that Hill did not identify everything that was off limits, does not mean that she consented to anything and everything. Did Hill consent to being severely beaten just because that was not mentioned as being off limits? Again, of course not. Just like Hill did not consent to being choked to death, Hill did not consent to the great bodily harm that occurred.

That the state court did not find that Hill consented to the great bodily injuries that she suffered is consistent with well settled California law that Hill cannot consent to such injuries as a matter of law.[8] *See People v. Samuels*, 250 Cal. App. 2d 501, 512–514 (1967) ("It is a matter of common knowledge that a normal person in full possession of his mental faculties does not freely consent to the use, upon himself, of force likely to produce great bodily injury."); *Meza v. Cate*, No. 1:11-CV-01483-AWI, 2012 WL 1292566, at *7 (E.D. Cal. Apr. 16, 2012). Consent is only a defense

---

[8] "Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." *People v. Drayton*, 42 Cal. App. 5th 612 (2019).

to battery if the contact is of an "ordinary physical contact" and does not threaten bodily harm. *Samuels*, 250 Cal. App. 2d at 513.

This doctrine is particularly applicable here where Hill's consent was limited and certainly was not specific to the acts that form the basis for liability in this lawsuit. Any generalized consent to "rough sex" or articulation of what was "off limits" does not and cannot mean that Hill was consenting to what amounted great bodily injuries. In other words, Hill's silence on what was off limits cannot mean she was consenting to everything else she did not include, especially those acts that would result in great bodily injury.

The context of the state court's discussion also supports the conclusion that it did not find that Hill consented to the great bodily injuries caused by Bauer. The state court's discussion on consent was made in the context of whether there was a probability of future harm, the only express basis for denying Hill's petition. First, the state court did not believe that it was probable that Bauer would contact Hill. Second, the court implied that even if they did happen to meet again, it was not probable that there would be another sexual encounter where Bauer harmed Hill.

The inference from the state court's ruling was that in the unlikely event that Bauer and Hill even decided to meet again and agreed to engage in "rough" sexual activity in the future, Hill would know to set more explicit boundaries as to what was off limits. Stated differently, the state court simply did not believe that it was probable that this would ever happen or be an issue again. Accordingly, the state court did not find that Hill consented to everything that Bauer did to her.

### C. The State Court did Not Expressly Find What Did or Did Not Happen While Hill was Unconscious or Partially Unconscious.

That the state court did not determine that Hill consented to Bauer's battery is further underscored by the fact that the court did not determine what did or did not happen while Hill was unconscious, partially conscious or coming out of consciousness. As a matter of law, a victim cannot consent to a battery while

unconscious, even if the victim provides some advance consent. *See People v. Miranda*, 62 Cal. App. 5th 162, 175 (2021)("Because the law does not recognize an unconscious person's advance consent to a rape, making the sexual act a crime, it is a battery to intentionally commit that act even if there was advance consent. … Where sex with an unconscious person is a rape and thus unlawful regardless of consent, it is not reasonable to believe that it is lawful, so the touching is a battery, just as it is a rape.").

Generally speaking, unconsciousness negates consent because it prevents the victim from withdrawing from the activity. *See Miranda*, 62 Cal. App. 5th at 175. Moreover, a victim need not be "totally and physically unconscious" to negate consent. *See People v. Ogunmola*, 193 Cal. App. 3d 274, 279 (1987); *Boro v. Superior Ct*., 163 Cal. App. 3d 1224, 1228 (1985).

Here, the state court's limited commentary about what happened while Hill was unconscious is also <u>not</u> a finding that nothing occurred while Hill was either unconscious, partially unconscious or coming out of consciousness. (Brown Decl., Ex. B [Transcript, pp. 584:24-27]). In sum, the state court did not expressly find what did or did not occur while Hill was unconscious or partially unconscious or find that while unconscious, Hill did consent to any or all of the acts in question.

**D. <u>The Family Court did Not "Necessarily" Decide that Bauer did Not Previously Harm Hill</u>.**

Bauer contends that in denying Hill's request for a DVRO, the state court necessarily determined that Bauer did not previously batter or sexually assault Hill. (Motion, p. 17). Bauer is wrong. The state court had broad discretion to deny a DVRO even if there is a finding that Bauer previously harmed Hill. While a court need not find a probability of future harm to grant a DVRO, a court has discretion to deny a DVRO on that basis alone. Indeed, that is precisely what the state court did in denying Hill's request for a DVRO.

While a court cannot grant a DVRO without a showing of past harm, based on

the express statutory language in the DVPA, a court has broad discretion in determining whether to grant or deny a DVRO. *See In re Marriage of Fregoso & Hernandez*, 5 Cal. App. 5th 698, 702 (2016) ("Generally, a trial court has broad discretion in determining whether to grant a petition for a restraining order under this statutory scheme."); *Nicole G. v. Braithwaite*, 49 Cal. App. 5th 990, 999 (2020)("The court's issuance of a protective order under the DVPA is a discretionary matter.").

In the context of domestic violence restraining orders, this broad discretion is expressly provided by California Family Code §§ 6300 ("Section 6300") and 6320 ("Section 6320"), both of which states that courts "**may**" issue restraining orders when the statutory criteria are met. The statutory use of the word "may" connotes a discretionary rather than mandatory act. *See Woodbury v. Brown-Dempsey*, 108 Cal. App. 4th 421, 433 (2003). Moreover, California Family Code § 6301(c), provides a court with authority to consider "the totality of the circumstances" in its exercise of discretion to grant or deny a domestic violence restraining order. Accordingly, a court may deny a DVRO even when there is a showing of past "harm". *Gonzales v. Oliva*, No. C074405, 2016 WL 828624, at *7 (Cal. Ct. App. Mar. 3, 2016)("However, the fact the trial court would have been authorized under section 6300 to issue a protective order based on this conduct does not mean the trial court abused its discretion by declining to issue the order.").

Notably, pursuant to California Family Code § 6340(a)(1) ("Section 6340"), a court is mandated to at least consider whether failure to grant a DVRO "may jeopardize" the petitioner's safety going forward. Consequently, while a showing of probable future harm is not required to support the issuance of a DVRO, a court has discretion to deny a DVRO when considering whether failure to grant a DVRO may jeopardize a petitioners safety going forward. *See Gonzales*, 2016 WL 828624, at *7. Indeed, the express purpose of the DVPA, which is forward looking, is to "prevent" acts of abuse. *See* California Family Code § 6220. A court therefore has discretion

to consider the probability of future harm as a basis for denying a DVRO.[9]

Bauer relies on *Salisbury v. Hickman*, 974 F. Supp. 2d 1282 (E.D. Cal. 2013), and *Van Oss v. Van Oss*, No. A106123, 2005 WL 240847, at *4 (Cal. Ct. App. Jan. 21, 2005), for the proposition that the state court necessarily determined that there was no past harm, even if there were no specific factual findings. (Motion, pp. 16-17). Both *Salisbury* and *Van Oss*, involved cases where restraining orders were **granted**, not cases where they were **denied**. Consequently, in granting restraining orders, the prior courts in *Salisbury* and *Van Oss* must have decided that there was some harmful conduct that formed the basis for granting a restraining order. Conversely, a court need not find that the petitioner was not harmed to deny a petition for a DVRO.

Here, the state court did not necessarily determine that Bauer did not harm Hill in denying Hill's Petition for a DVRO, and had broad discretion to deny such relief on other grounds. The state court both expressly considered and expressly denied Hill's Petition for a DVRO on the basis that there was not a probability of future harm or abuse. (Brown Decl., Ex. B [Transcript, pp. 580:28-581:13, 586:3-587:11).[10]

---

[9] While a showing of a probability of future harm is not a **requirement** of a DVRO (*Nevarez v. Tonna*, 227 Cal. App. 4th 774, 783 (2014)), a court certainly may exercise its discretion to deny a DVRO on that basis.

[10] Bauer repeats the state court's comment that Hill's Petition was "materially misleading." (Motion, pp. 1, 4 and 5). Bauer takes this comment out of context. The state court's comment had nothing to do with Hill's allegations of harm. Rather, this comment was limited to the allegations concerning the nature of Bauer's communications to Hill after the second encounter.

If fact, this was the only express "finding" that formed a basis for denying Hill's petition.[11] The state court bookended its ruling with an analysis of Section 6340, and the court's consideration as to whether there is a probability of future harm. (*Id*.). Relying on Section 6340, the state court ultimately found as follows: "**In this case, the Court finds there is no supportable evidence that respondent is likely to cause petitioner any harm or even have contact with the petitioner**." (*Id*., at p. 587:5-7)(Emphasis added). Accordingly, the state court did not necessarily find that Bauer did not previously commit the extensive bodily harm to Hill alleged in the Counterclaim here.

## III. CONCLUSION

For the foregoing reasons, Hill respectfully requests that the Court deny Bauer's Motion in its entirety.

DATED: October 13, 2022 FREEDMAN + TAITELMAN, LLP

By: /s/ Bryan J. Freedman
Bryan J. Freedman, Esq.
Jesse A. Kaplan, Esq.
Attorneys for Defendant and Counterclaimant, Lindsey C. Hill

[11] As discussed, the state court's discussion about consent was made in the context of whether there was a probability of future harm, and the court did not conclude that Hill consented to great bodily harm.