1

1

2

3

4                 UNITED STATES DISTRICT COURT

5               CENTRAL DISTRICT OF CALIFORNIA

6                     SOUTHERN DIVISION

7                          - - -

8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

10         TREVOR BAUER,              )
                           Plaintiff, )
11            vs.                      )
                                       ) SACV-22-00868-JVS
12         LINDSEY C. HILL, et al.,    )
                           Defendants.)
13         --------------------------)

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               Santa Ana, California

17                November 11, 2022

18

19                    SHARON A. SEFFENS, RPR
                      United States Courthouse
20                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
21                    (612) 804-8655

22

23

24

25

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NELL Z. PEYSER
     ZUCKERMAN SPAEDER, LLP
 4   485 Madison Avenue, 10th Floor
     New York, NY  10022
 5   (212) 704-9600

 6   SUANN MACISAAC
     KINSELA WEITZMAN ISER KUMP HOLLEY, LLP
 7   808 Wilshire Boulevard, 3rd Floor
     Santa Monica, CA  90401
 8   (310) 566-9800

 9   For Defendant NIRANJAN FRED THIAGARAJAH:

10   DAVID D. SAMANI
     LEWIS BRISBOIS
11   633 West 5th Street, suite 4000
     Los Angeles, CA  90071
12   (213) 580-6300

13   For Defendant LINDSEY C. HILL:

14   BRETT A. SMITH
     WESIERSKI & ZUREK, LLP
15   29 Orchard Road
     Lake Forest, CA  92630
16   (949) 975-1000

17

18

19

20

21

22

23

24

25
```

1    SANTA ANA, CALIFORNIA; MONDAY, NOVEMBER 7, 2022; 1:32 P.M.

01:32   2              THE CLERK:  Calling Item No. 2, SACV 22-00868-JVS,

01:32   3    Trevor Bauer versus Lindsey C. Hill, et al.

01:32   4              Appearances please, Counsel.

01:32   5              MS. PEYSER:  Good afternoon, Your Honor.  This is

01:32   6    Nell Peyser and Suann MacIsaac on behalf of plaintiff Trevor

01:32   7    Bauer.

01:32   8              THE COURT:  Good afternoon.

01:32   9              MR. SAMANI:  Good afternoon, Your Honor.  David

01:32  10    Samani for defendant Niranjan Fred Thiagarajah.

01:32  11              THE COURT:  Good afternoon.

01:32  12              MR. SMITH:  Good afternoon, Your Honor.  This is

01:32  13    Brett Smith representing defendant Lindsey C. Hill.

01:32  14              THE COURT:  Very good.

01:32  15              I think I'd like to hear from the plaintiff first,

01:33  16    please.

01:33  17              MS. PEYSER:  Sure, Your Honor.  I'd like to begin

01:33  18    with --

01:33  19              THE COURT:  Why don't you go to the lectern,

01:33  20    please.

01:33  21              MS. PEYSER:  Your Honor, I'd like to begin with

01:33  22    the second step of the anti-SLAPP analysis where the

01:33  23    question is whether Mr. Bauer's claim would survive under

01:33  24    the familiar 12(b)(6) standard.  The parties agree that this

01:33  25    is the standard, and Your Honor recognized that as well in

01:33    1    your tentative ruling.  So for a defamation claim, this

01:33    2    means that Mr. Bauer must have pled that Mr. Thiagarajah's

01:33    3    statement was false, defamatory, unprivileged, and has a

01:33    4    tendency to injure.  As Your Honor noted in the tentative

01:33    5    ruling, the parties only disagree about whether

01:33    6    Mr. Thiagarajah's statements were statements of fact, and if

01:33    7    so, whether they were false.

01:33    8        Now, Mr. Bauer has plausibly alleged a defamation

01:34    9    claim against Mr. Thiagarajah under this 12(b)(6) standard

01:34   10    because his statement, "There was no doubt that Mr. Bauer

01:34   11    just brutalized Ms. Hill," is a statement of fact

01:34   12    susceptible to being proven true or false, and Mr. Bauer

01:34   13    alleges in the complaint that he did not brutalize Ms. Hill,

01:34   14    that the statement is false.

01:34   15        I'd like to take a closer look at the article

01:34   16    where Mr. Thiagarajah made the statement.  The article was

01:34   17    published on February 8, 2022, shortly after the district

01:34   18    attorney declined to prosecute Mr. Bauer.  The title of the

01:34   19    article itself makes clear that the article is about the

01:34   20    D.A.'s declination to prosecute.  The article goes on to

01:34   21    discuss a video that Mr. Bauer posted on YouTube where he

01:34   22    denies the allegations, and it discusses the D.A.'s decision

01:34   23    not to prosecute.

01:34   24        In the context of that discussion, Mr. Thiagarajah

01:35   25    is quoted as saying:  "There is no doubt that Mr. Bauer just

01:35  1   brutalized the woman."  At this point in the article,

01:35  2   nothing substantive related to the DVRO proceeding has been

01:35  3   discussed.  So up to this point, it's clear that

01:35  4   Mr. Thiagarajah is referring to whether Mr. Bauer brutalized

01:35  5   Ms. Hill, what occurred in the real world, not what the

01:35  6   judge found in the DVRO proceeding.

01:35  7           Now, Mr. Thiagarajah's opening motion makes this

01:35  8   clear --

01:35  9           THE COURT:  Am I required to cabin that statement

01:35 10   in that fashion?

01:35 11           MS. PEYSER:  Well, Your Honor, in the tentative

01:35 12   ruling and in much of the briefing, the discussion was

01:35 13   focused on whether the statement, "There's no doubt that

01:35 14   Mr. Bauer just brutalized Ms. Hill," was a fair

01:35 15   characterization of what the judge found in the DVRO

01:35 16   proceeding.  But we'd like to focus on an issue that was not

01:35 17   reached in the tentative ruling as to whether it was a fair

01:35 18   characterization about what Mr. Bauer alleged occurred in

01:36 19   the real world.

01:36 20           Mr. Thiagarajah's opening motion at page 4, as

01:36 21   well as his reply brief also at page 4, states that the

01:36 22   statement was framed in response to a video Mr. Bauer

01:36 23   released on YouTube where he denied Ms. Hill's claims, as

01:36 24   well as in response to the D.A.'s decision not to prosecute.

01:36 25           So if we look at the question that was not reached

01:36  1    in the tentative ruling, if as the statement was purporting

01:36  2    to characterize what occurred in the real world, the

01:36  3    statement was saying no matter what the D.A. decided, no

01:36  4    matter what Mr. Bauer said on YouTube -- "There is no doubt

01:36  5    that Mr. Bauer just brutalized the woman" -- then the

01:36  6    inquiry under a 12(b)(6) standard is whether Mr. Bauer has

01:36  7    plausibly alleged that the statement is false, that in the

01:36  8    real world he did not brutalize Ms. Hill.

01:37  9              As Your Honor noted in the tentative ruling, this

01:37  10   is a statement of fact, not a statement of opinion, because

01:37  11   it's susceptible to being proven true or false, so I won't

01:37  12   spend a lot of time on that in light of the Court's

01:37  13   indulgence in granting us this hearing.

01:37  14              I'd like to --

01:37  15              THE COURT:  Was there not sufficient evidence in

01:37  16   the record to allow the attorney to say she was attacked,

01:37  17   whatever word, neutral word, you want to use?  Isn't there

01:37  18   sufficient evidence in the record that he's gone that far

01:37  19   and he physically assaulted her?

01:37  20              MS. PEYSER:  The question is whether Mr. Bauer has

01:37  21   plausibly alleged under a 12(b)(6) standard that he did not

01:37  22   assault her or brutalize her.  It's not a question, Your

01:37  23   Honor, of whether there was sufficient evidence in the

01:37  24   record in the DVRO proceeding.  Under the 12(b)(6) analysis,

01:37  25   it's a question of whether, as Mr. Bauer alleged in the

01:37    **1**    Complaint, he did not brutalize Ms. Hill, which would make

01:38    **2**    at this stage Your Honor unable to conclude as a matter of

01:38    **3**    law that the characterization of brutalizing Ms. Hill

01:38    **4**    captured the gist of what occurred.

01:38    **5**            THE COURT:  Well, the gist of what, though?  The

01:38    **6**    gist of an assault?

01:38    **7**            MS. PEYSER:  In Mr. Thiagarajah's motion, he

01:38    **8**    defines "to brutalize" as to treat someone with a lack of

01:38    **9**    sensitivity or compassion.

01:38    **10**            Now, as Mr. Bauer alleges in his Complaint, he

01:38    **11**    alleges Ms. Hill falsified allegations of sexual misconduct

01:38    **12**    against him.  He alleges that in the first sexual encounter

01:38    **13**    between the two Ms. Hill requested rough sex, sought

01:38    **14**    Mr. Bauer out, asked for the rough sex that included

01:38    **15**    choking, slapping, hair pulling.  Mr. Bauer alleges that he

01:39    **16**    sought clarity as to what she meant by "rough," and she

01:39    **17**    expressed that she enjoyed these rough sexual behaviors for

01:39    **18**    her pleasure.  Mr. Bauer further alleges in that first

01:39    **19**    encounter he continually checked in on her throughout the

01:39    **20**    encounter to make sure she was okay, which she said she was,

01:39    **21**    according to the allegations in the Complaint.

01:39    **22**            After the first encounter, Mr. Bauer alleges that

01:39    **23**    Ms. Hill sought him out again and texted him messages such

01:39    **24**    as "Give me all the pain" or "slaps in the face?  Yes, yes,

01:39    **25**    and yes."  He alleges that Ms. Hill repeatedly tried to see

| | |
|---|---|
| 01:39 | 1 |
| 01:39 | 2 |
| 01:39 | 3 |

01:39  1    him for a rougher sexual experience, lied that she was in

01:39  2    the vicinity of his residence, and drove two-and-a-half

01:39  3    hours to see him again.  And when she did see him again the

01:39  4    second time, the two discussed boundaries, what was off

01:39  5    limits, the use of a safe word.  Throughout the second

01:39  6    sexual encounter, Ms. Hill, at times requested it rougher,

01:40  7    and Mr. Bauer continued to ask whether she was okay as he

01:40  8    did what she requested.

01:40  9         As alleged in the Complaint, which is the inquiry

01:40  10   right now, it can hardly be said that to do everything Ms.

01:40  11   Hill wanted, to continually check in to see if she was okay,

01:40  12   is consistent with a lack of sensitivity or compassion.  The

01:40  13   Complaint itself in fact alleges that he was trying to do

01:40  14   what she wanted for her sexual pleasure.  The experience of

01:40  15   choking that she requested was for her sexual pleasure, not

01:40  16   his.

01:40  17        As alleged in the Complaint, Mr. Bauer did not

01:40  18   brutalize Ms. Hill, or at minimum, Your Honor cannot decide

01:40  19   as a matter of law that those allegations -- that to say

01:40  20   Mr. Bauer brutalized Ms. Hill fairly captures the gist of

01:40  21   those allegations.  That is a question for the jury.

01:41  22        I'd also like to comment briefly on the injury

01:41  23   piece of this discussion.  Mr. Bauer alleges when Ms. Hill

01:41  24   left his residence after the second encounter, there were no

01:41  25   visible injuries on her other than a slightly swollen lip.

01:41   1    He alleges in the Complaint that Ms. Hill and her lawyers

01:41   2    doctored photographs to make her surface level bruising

01:41   3    appear more severe than it was.  He also alleges that Ms.

01:41   4    Hill and her lawyers buried exculpatory photographs and

01:41   5    video evidence that Ms. Hill surreptitiously took just hours

01:41   6    after the second encounter showing that she had sustained no

01:41   7    injuries.

01:41   8          To that end, early discovery has borne out some of

01:41   9    these allegations.  The Pasadena Police Department recently

01:41   10   produced a video that Ms. Hill took after the second

01:41   11   encounter showing her in bed with Mr. Bauer with no visible

01:42   12   injuries to her.

01:42   13         THE COURT:  But I really can't consider that.

01:42   14   That wasn't provided as part of the briefing.  My

01:42   15   understanding is that was provided last Thursday or Friday,

01:42   16   so I'm not going to consider that as part of this motion.

01:42   17         MS. PEYSER:  Your Honor, the point is that --

01:42   18         THE COURT:  The point is I'm not going to consider

01:42   19   the content of that as far as this motion.

01:42   20         MS. PEYSER:  Sure.  Mr. Bauer alleges in the

01:42   21   Complaint that Ms. Hill's attorneys buried exculpatory

01:42   22   information.  So as alleged in the Complaint, it is

01:42   23   plausible that Mr. Thiagarajah knew that there was

01:42   24   information out there showing that Ms. Hill did not sustain

01:42   25   injuries and made this statement that "There is no doubt

| | |
|---|---|
| 01:42 | 1 |
| 01:42 | 2 |
| 01:42 | 3 |
| 01:42 | 4 |
| 01:42 | 5 |
| 01:43 | 6 |
| 01:43 | 7 |
| 01:43 | 8 |
| 01:43 | 9 |
| 01:43 | 10 |

01:42  1    that Mr. Bauer just brutalized Ms. Hill," even though it is

01:42  2    plausible that he knew that that was not true and that the

01:42  3    injuries that Ms. Hill represented, that she alleged to have

01:42  4    had, were not in fact what she had at the time.

01:42  5           Under the liberal amendment rules in Federal Rule

01:43  6    15, if Your Honor does decide that the Complaint could be

01:43  7    amended to make more specific allegations about that in

01:43  8    light of this video, we would be happy to amend to include

01:43  9    more specific allegations in light of the recent discovery

01:43  10   of this video.

01:43  11          Thank you for your time, Your Honor.  At bottom,

01:43  12   the Court must go back to the familiar 12(b)(6) standard,

01:43  13   and as Mr. Bauer plausibly alleged that he did not brutalize

01:43  14   Ms. Hill, at this stage in the case, the Complaint against

01:43  15   Mr. Thiagarajah cannot be dismissed.  Thank you.

01:43  16          THE COURT:  Thank you.

01:43  17          Mr. Samani.

01:43  18          MR. SAMANI:  Thank you and good afternoon, Your

01:43  19   Honor.

01:43  20          I'd like to begin by addressing a comment the

01:44  21   Court had made earlier as to whether it had to cabin its

01:44  22   analysis of Mr. Thiagarajah's statements.  And the answer is

01:44  23   it does not on the 12(b)(6) standard under settled

01:44  24   California and even recent federal authority.  One of the

01:44  25   cases that was cited in the reply brief, which would be

01:44  1   Kilgore versus Younger, a 1982 case, 30 Cal.3d 770, and the
01:44  2   pin cite is 777, talks about the applicable test being
01:44  3   whether -- and this is a determination the Court can make as
01:44  4   a matter of law if it determines reasonable minds can
01:44  5   differ -- what the natural or probable effect of the
01:44  6   language of a statement is on the mind of an average reader.
01:44  7       Recently -- this was a case that was cited in our
01:44  8   reply, although not specifically for this proposition,
01:44  9   CoreCivic, Inc., versus Candide Group, 46 F.4th 1136 at
01:45  10  1144.  It's a Ninth Circuit case.  In that case applying the
01:45  11  12(b)(6) standard on an anti-SLAPP motion, the Ninth Circuit
01:45  12  concluded that the plaintiff had not met its burden of
01:45  13  showing falsity.  And in doing so, it rejected the
01:45  14  interpretation that plaintiff was arguing the Court needed
01:45  15  to apply to the statement that had been made by the
01:45  16  defendant, essentially stating that the charge that was
01:45  17  being rebutted is not actually what the statement was the
01:45  18  defendant had made.
01:45  19      The claim of falsity referred to essentially a
01:45  20  strawman statement.  And that's really what we have here
01:45  21  today, Your Honor.  What remains the primary argument of
01:45  22  Mr. Bauer is that the term "brutalize" somehow conveys
01:45  23  non-consent, but the entire context of the statements
01:45  24  demonstrate that Mr. Thiagarajah is in fact recognizing
01:46  25  there was a dispute about consent.

| | |
|---|---|
| 01:46 | 1 |
| 01:46 | 2 |
| 01:46 | 3 |
| 01:46 | 4 |

01:46   1          THE COURT:  But what do I do with the more basic
01:46   2    fact that it's alleged that he did not assault her however
01:46   3    you want to characterize assault?  Isn't that a stumbling
01:46   4    block for her?
01:46   5          MR. SAMANI:  Well, it's alleged that -- I mean,
01:46   6    Mr. Bauer alleges, I suppose, that there was no sexual
01:46   7    assault --
01:46   8          THE COURT:  Right.
01:46   9          MR. SAMANI:  -- that all of the things were
01:46  10    consented to.
01:46  11          THE COURT:  What do I do with that statement on a
01:46  12    12(b)(6)?
01:46  13          MR. SAMANI:  So there's two things, Your Honor.  I
01:46  14    mean, first is the context from the article.  And I dispute
01:46  15    the contention that there is no reference to the hearing
01:46  16    right before Mr. Thiagarajah's statement that the article
01:46  17    portrays his statement as coming in response to the district
01:46  18    attorney's --
01:46  19          THE COURT:  Right.
01:46  20          MR. SAMANI:  -- declination to prosecute after the
01:46  21    civil hearing.  Mr. Thiagarajah talks about what occurred at
01:46  22    the hearing.  The article even says:  "Thiagarajah noted
01:46  23    that during the restraining order hearing last summer," and
01:47  24    it talks about, you know, what happened at that hearing.
01:47  25    And the comments that are at issue come in response to

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:47   1   Bauer's specific denials of punching, scratching, or

01:47   2   sodomizing the woman.

01:47   3        THE COURT:  Right.  But if we take the allegation

01:47   4   in the Complaint, that he did not assault her, doesn't that

01:47   5   create an issue of fact whether he (a) assaulted her and (b)

01:47   6   whether the assault was brutal or not?  If I'm applying

01:47   7   12(b)(6), do I not have to accept as true the allegations

01:47   8   and whatever reasonably flows from that?

01:47   9        MR. SAMANI:  I think there are two reasons why

01:47   10  that's not the case.  The first would be in applying

01:47   11  12(b)(6), the Court still looks to the words themselves,

01:47   12  what was stated and whether the communication is --

01:47   13       THE COURT:  No, no, no.  But before you get there,

01:47   14  he clearly says -- Thiagarajah clearly says that the woman

01:47   15  was assaulted.  That's disputed on the face of the

01:48   16  pleadings.  How do I get to the next step as to whether the

01:48   17  assault was brutal if there's a dispute as to whether there

01:48   18  was an assault at all?..

01:48   19       MR. SAMANI:  Well, the Court gets to the next step

01:48   20  by judicial notice.  It's undisputed both sides have

01:48   21  requested that the Court take judicial notice of the

01:48   22  underlying trial Court's statements and findings where she

01:48   23  made the comment that based on the evidence she had seen,

01:48   24  Mr. Bauer had inflicted -- and she used the word

01:48   25  "terrible" -- terrible injuries on Ms. Hill.

01:48  1           THE COURT:  But when I take judicial notice, I
01:48  2  take judicial notice of a fact, but the fact that I take
01:48  3  judicial notice doesn't create that fact as binding, does
01:48  4  it?
01:48  5           MR. SAMANI:  Well, under the fair and true
01:48  6  reporting privilege, which is one of the arguments on which
01:48  7  we moved, where the evidence of the underlying proceeding is
01:48  8  uncontroverted as is here, where both sides requested
01:48  9  judicial notice, and where the report is uncontroverted as
01:48  10 is here, where the article in question has been subject to
01:49  11 judicial notice, the Court actually can decide as a matter
01:49  12 of law whether the privilege applies in that situation.
01:49  13          And I have the authority for that, too, Your
01:49  14 Honor.  That would be Health Smart Pacific, Inc., versus
01:49  15 Kabateck.  This was cited in our reply brief (2016)
01:49  16 7 Cal.App.5th 416, and the pin cite is 431.  The quote is:
01:49  17 "When, however, 'there is no dispute as to what occurred in
01:49  18 the judicial proceeding reported upon or as to what was
01:49  19 contained in the report,' the question is one of law."
01:49  20          And that's what we have here, Your Honor.  It's
01:49  21 undisputed what the judge said, what happened in the
01:49  22 underlying hearing.  It's undisputed what Mr. Thiagarajah
01:49  23 said when he was giving his report on what happened in the
01:49  24 underlying hearing.  The Court can look at that and
01:49  25 determine as a matter of law whether or not it's a fair and

01:49  1    true report.

01:50  2            Also, under Kilgore versus Younger and the other

01:50  3    cases we've cited, you know, the Court can look at it and

01:50  4    see, okay, you know, what is the natural and probable effect

01:50  5    of this language, which the Court has done correctly in its

01:50  6    tentative ruling.  The full context of Mr. Thiagarajah's

01:50  7    comments render meritless the claim of defamation here.

01:50  8    Mr. Thiagarajah talks about the evidence.  And, of course, I

01:50  9    know the Court has gone against us on the opinion issue.

01:50  10           I do think that the fact that opposing counsel and

01:50  11   I are still quarreling over exactly what "brutalized" means,

01:50  12   be that as it may, as the Court has found, you know, the

01:50  13   underlying Court's findings were that terrible injuries were

01:50  14   inflicted on Ms. Hill.  The word "terrible" versus "brutal"

01:50  15   is essentially a synonym.

01:50  16           Mr. Thiagarajah provided a true and fair report,

01:50  17   understanding of course that as the authorities provide, he

01:51  18   is not held to literalism.  A person giving a report is

01:51  19   entitled to some literary license.  We don't expect and the

01:51  20   First Amendment provides that you can't be held liable for

01:51  21   perhaps using a word that is more colorful than another

01:51  22   alternative.

01:51  23           So on these facts and on this record, the Court

01:51  24   can and should stick with its tentative ruling.

01:51  25           The only other point I wanted to address, Your

01:51    1   Honor, is as to the notion of leave to amend.  Where leave

01:51    2   to amend would be futile, as is here where you have a fair

01:51    3   and true report where there's an undisputed record of what

01:51    4   the article was and what occurred in the underlying

01:51    5   proceedings, the Court need not grant leave to amend.  That

01:51    6   was recently, I think, revisited by the Ninth Circuit in the

01:51    7   Herring Networks versus Maddow  case, which was cited

01:51    8   extensively in the briefs.

01:51    9           And for that, Your Honor, I would ask that the

01:52   10   Court stick with the tentative unless the Court has further

01:52   11   questions.

01:52   12           THE COURT:  No.  Thank you.

01:52   13           Ms. Peyser.

01:52   14           MS. PEYSER:  Your Honor, I will --

01:52   15           THE COURT:  Do you agree that it was appropriate

01:52   16   for the Court to take judicial notice of the underlying

01:52   17   proceeding?

01:52   18           MS. PEYSER:  Yes, Your Honor, I do.

01:52   19           THE COURT:  What's the consequence of that?

01:52   20           MS. PEYSER:  Your Honor, I think opposing counsel

01:52   21   and I are talking past each other.

01:52   22           THE COURT:  No, no.  I'm asking what is the

01:52   23   consequence of accepting judicial notice of the fact that

01:52   24   she was terribly beaten?

01:52   25           MS. PEYSER:  As to the statement "There's no doubt

01:52  1    that Mr. Bauer just brutalized the woman" in the Washington

01:52  2    Post article, we have to go back to the article itself,

01:52  3    because that statement is not in regard to characterizing

01:52  4    what occurred in the underlying proceeding.  Later in the

01:52  5    Washington Post article, Mr. Thiagarajah does make comments

01:52  6    about what occurred in that proceeding.  But this statement

01:52  7    that we're focused on today has nothing to do with what

01:53  8    occurred in that proceeding.

01:53  9         Here Mr. Thiagarajah is saying --

01:53  10        THE COURT:  Again, let me stop you.  If I take

01:53  11   judicial notice of the finding of the state court judge and

01:53  12   I take judicial notice that it was a terrible episode, what

01:53  13   do I do with that?  Is that finding preclusive or not?

01:53  14        MS. PEYSER:  That finding is -- first, the finding

01:53  15   in the underlying proceeding was that there was no active

01:53  16   abuse, that Ms. Hill consented to everything that occurred,

01:53  17   and that there were terrible injuries that were a natural

01:53  18   consequence of what she consented to.  The "terrible

01:53  19   injuries" language is a comment on a photograph that we

01:53  20   allege was doctored by Ms. Hill and her lawyers, and the

01:53  21   "terrible injuries" comment was in the context of the

01:53  22   natural consequences of Ms. Hill requesting rough sex in the

01:54  23   first encounter and rougher sex in the second encounter for

01:54  24   her sexual pleasure.

01:54  25        The Court also says when a woman asks for a

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:54    1    certain behavior, when a woman consents and says yes, we
01:54    2    have to take her word for it.  The "terrible injuries"
01:54    3    comment was not a finding that a brutal assault occurred.
01:54    4    To the contrary, the Court was very clear that this was a
01:54    5    consensual rough sex encounter, and the natural consequence
01:54    6    was some bruising.  That in itself does not equate to
01:54    7    brutalization which from our perspective, that the average
01:54    8    reader would understand to be a non-consensual violent
01:54    9    assault.  The Court found the opposite of that.
01:54   10            THE COURT:  So you are saying whether "brutalize"
01:54   11    is the appropriate descriptor or not the consent just wipes
01:54   12    that out?
01:54   13            MS. PEYSER:  Your Honor, yes, we do think that to
01:55   14    say Mr. Bauer brutalized Ms. Hill conveys the opposite of a
01:55   15    consensual rough sexual encounter.
01:55   16            But I want to go back to my first point, which is
01:55   17    I respectfully urge that we go back to the article, which
01:55   18    says that Mr. Bauer posted a video on YouTube.  The D.A.
01:55   19    declined to prosecute.  Mr. Thiagarajah says regardless of
01:55   20    all of that, "There is no doubt that Mr. Bauer just
01:55   21    brutalized the woman."
01:55   22            At this point, what occurred in the DVRO
01:55   23    proceeding hasn't even been mentioned in the article.  The
01:55   24    average reader would read this statement and understand
01:55   25    Mr. Thiagarajah to be referring to what occurred between

01:55   1   Mr. Bauer and Ms. Hill in the real world.  And under the
01:55   2   12(b)(6) standard, Mr. Bauer has alleged --
01:55   3           THE COURT:  But can't I look at the totality of
01:56   4   the statement?  Do I have to isolate that one word,
01:56   5   "brutalized," as opposed to considering other material that
01:56   6   is in the statement, mainly statements about the state
01:56   7   proceeding?
01:56   8           MS. PEYSER:  Your Honor --
01:56   9           THE COURT:  Again, do I have to isolate on
01:56  10   "brutalized," or can I look at the context as provided by
01:56  11   the report of the underlying case?
01:56  12           MS. PEYSER:  Your Honor, you can and should look
01:56  13   at the entire Washington Post article and what
01:56  14   Mr. Thiagarajah was commenting on.  And I think you'll find
01:56  15   in undertaking that exercise, it's clear from the article
01:56  16   itself that Mr. Thiagarajah is not commenting on the judge's
01:56  17   findings in the DVRO proceeding when he makes the
01:56  18   brutalization comment.
01:56  19           You'll see later in the article Mr. Thiagarajah
01:56  20   does say there was this restraining order proceeding.  Here
01:56  21   is my characterization of what happened.  But that hasn't
01:56  22   come yet.  The reader doesn't know about that when he or she
01:56  23   reads --
01:56  24           THE COURT:  Suppose he put that in the first
01:57  25   paragraph and put the "brutalized" comment in the last

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:57   1   paragraph.  Would that make a difference?

01:57   2            MS. PEYSER:  Your Honor, it's so context-specific.

01:57   3   If the article had been written differently --

01:57   4            THE COURT:  No, no, same language.  You just move

01:57   5   the bottom paragraph discussing the proceeding and he

01:57   6   describes the underlying proceeding first, and then he puts

01:57   7   the "brutalized" statement at the end.  Would that make a

01:57   8   difference?

01:57   9            MS. PEYSER:  Your Honor, it would not because --

01:57  10            THE COURT:  Would that make a difference?

01:57  11            MS. PEYSER:  Your Honor, I do not believe it

01:57  12   would, because we have Mr. Thiagarajah here saying no matter

01:57  13   what occurred in the real world, no matter what Mr. Bauer

01:57  14   said on YouTube, no matter what the D.A. decided to do, no

01:57  15   matter what the judge found in the DVRO proceeding, "There

01:57  16   is no doubt that Mr. Bauer just brutalized the woman."

01:57  17   That's the statement..

01:57  18            Thank you, Your Honor.

01:57  19            THE COURT:  Okay.  Thank you.

01:57  20            I want to take one more look.  The matter will

01:57  21   stand submitted.  Thank you.

01:57  22            MR. SAMANI:  Thank you, Your Honor.

01:57  23                      *    *    *

01:57  24

01:57  25

CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  November 11, 2022



                    /s/   Sharon A. Seffens  11/11/22
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER