UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-cv-00868 JVS (ADSx)                                Date  November 23, 2022

Title  Trevor Bauer v. Lindsey Hill, et. al.

Present: The Honorable  **James V. Selna, U.S. District Court Judge**

| Elsa Vargas for Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:**  **[IN CHAMBERS] Order Regarding Motion to Dismiss Counterclaims [52]**

   Plaintiff/Counter-defendant Trevor Bauer ("Bauer") moves to dismiss all counterclaims brought by Defendant/Counter-claimant Lindsey Hill ("Hill") due to issue preclusion.  (Mot., Dkt. No. 52.)  Hill opposed the motion (Opp'n., Dkt. No. 57), and Bauer responded (Reply, Dkt. No. 58).  The Court heard oral argument on November 21, 2022.

   For the following reasons, the Court **DENIES** Bauer's motion.

**I. BACKGROUND**

*A.  Factual Background*

   The following contentions are taken from Hill's Counterclaim and the parties' briefings on this motion.  (Counterclaim, Dkt. No. 36.)  Trevor Bauer is a Major League Baseball player, although he is currently not playing for any team.  (Id. ¶ 1.)  Lindsey Hill is a resident of San Diego and a baseball fan.  (Id.)  Hill and Bauer began talking over social media in early 2021 and met in person on two separate occasions.  (Id. ¶ 13.)  The first meeting occurred on April 21, 2021 when Hill met Bauer at his home in Pasadena, California.  (Id. ¶ 14.)  After talking for several hours, the two began having vaginal sex.  (Id. ¶ 15.)  At some point, Bauer flipped Hill onto her stomach, wrapped her hair around her neck, and used it to choke Hill until she was unconscious.  (Id. ¶ 16.)  When she regained consciousness, Hill was lightheaded, disoriented, and had trouble speaking.  (Id. ¶ 17.)  She realized that Bauer was having forceful and violent anal sex with her, causing Hill severe pain.  (Id. ¶¶ 18-19.)  Hill asked Bauer to stop and he complied.  (Id. ¶ 20.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-cv-00868 JVS (ADSx)    Date  November 23, 2022

Title  Trevor Bauer v. Lindsey Hill, et. al.

Hill and Bauer remained in contact following their first interaction and subsequently made plans to meet a second time, again at Bauer's house. (Id. ¶ 23.) Hill arrived at Bauer's home shortly after midnight on May 16, 2021 and the two began having vaginal sex. (Id. ¶¶ 24-25.) Bauer flipped Hill on her stomach and used her hair to choke her into unconsciousness. (Id. ¶ 26.) When she regained consciousness, Hill was severely disoriented and could not talk or move her body. (Id. ¶ 27.) Bauer punched Hill in the face multiple times, flipped her back onto her stomach, and again used her hair to choke her unconscious. (Id. ¶ 28-29.) At some point while Hill was unconscious, Bauer punched her in the buttocks. (Id. ¶ 33.) As Hill came back into consciousness, Bauer began punching Hill's vagina and groin area. (Id. ¶ 31.) Hill used a "safe word" the two had previously agreed upon, and Bauer stopped. (Id. ¶ 32.) Hill went to the hospital to receive treatment for the injuries she suffered as a result of this interaction. (Id. ¶ 34.)

After leaving the hospital, Hill reported the incident to the Pasadena Police Department. (Id. ¶ 35.) The police had Hill call Bauer to discuss the May 16 incident, told her what to say, and recorded the call. (Id.) During the call, Hill discussed her injuries and how Hill and Bauer did not talk about such conduct before it occurred. (Id. ¶ 36.) Bauer did not dispute engaging in these activities, but said that he should have gotten clarification from Hill and been on the same page with her about what she was comfortable with. (Id. ¶¶ 36-37.)

  B. *Procedural Background*

On June 29, 2021, Hill filed a petition for a Domestic Violence Restraining Order ("DVRO") in Los Angeles Superior Court which included a lengthy declaration alleging many of the same facts outlined in her Counterclaim. (Brown Decl., Ex. A.) The court granted Hill a temporary restraining order against Bauer, but declined to grant a permanent DVRO on August 19, 2021. (Mtn. at 3.) In making this decision, Judge Dianna Gould-Saltman presided over a four-day hearing mostly consisting of testimony from Hill. (Id.) Bauer chose not to testify due the potential of facing criminal charges which were later dropped.

At the end of the hearing, Judge Gould-Saltman made her findings on the record. She began by framing her discussion in light of the purpose of DVROs and what California Family Code Section 6340 required her to find in order to grant a long-term

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

DVRO. (DVRO Transcript, Brown Decl., Ex. B 580:28-581:13.) The judge then discussed whether there was a "dating relationship" for purposes of the Domestic Violence Prevention Act, ultimately deciding that there was. (Id. 581:15-583:8.) Next, Judge Gould-Saltman recited the evidence and testimony presented on what boundaries Hill and Bauer discussed, whether and to what extent they were crossed, and whether Hill's expectations were reasonable. (Id. 583:9-585:4.) Specifically, Judge Gould-Saltman stated that the "primary question for this court is, to what did [Hill] consent? And how did she manifest that consent to [Bauer]?" (Id. 584:4-6.) The judge noted that Hill said to Bauer over text that "she wanted all the pain," and that she "wanted to be choked out." But Hill testified in the proceedings that she did not consent to being punched to the point of having black eyes and having to be hospitalized," although, according to Judge Gould-Saltman, those were the "potential consequences" of the activities she discussed with Bauer. (Id. 584:7-23.) Judge Gould-Saltman briefly discussed the allegations that Bauer engaged in nonconsensual activities while Hill was unconscious, noting that "the only evidence of anything which happened while [Hill] was unconscious was having been hit on the butt in the parties' first encounter." (Id. 584:24-26.) Further, while Hill testified she wasn't able to speak during part of the time she was conscious, the judge stated that Bauer could not have known that. (Id. 584:26-28.) Finally, Judge Gould-Saltman stated that Hill "set limits" with Bauer "without fully considering all the consequences" and Bauer "did not exceed the limits" Hill set. (Id. 585:27-586:2.)

Judge Gould-Saltman ended her findings by going back to Family Code Sections 6220 and 6340, and "the fundamental purpose of the Domestic Violence Prevention Act ("DVPA"):" to protect victims from harm. (Id. 586:3-5.) The court found that Hill's "initial declaration, which was the basis upon which she obtained a temporary restraining order, was materially misleading" because it overstated the extent to which Bauer contacted Hill following their May 12 interaction. (Id. 586:5-12.) Accordingly, Hill's claims that she was "extremely stressed" and "had extreme anxiety" that Bauer was going to harm her again in the future weren't "rational" and "had no factual basis." (Id. 586:13-26.) Judge Gould-Saltman ended her findings by noting that although the case law did not require her to "consider whether there is a probability of future harm, Family Code 6340 does require that it be part of the court's consideration." The court denied the request for a long term DVRO, finding that "there is no supportable evidence that [Bauer] is likely to cause [Hill] any harm or even have contact with [Hill]." (Id. 587:5-11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

On April 25, 2022, Bauer filed the present case in federal court, alleging defamation and tortious interference with contract and prospective economic advantage. (Complaint, Dkt. No. 1 ¶¶ 150-157; 164-174.) Hill answered the complaint on July 19, 2022 (Answer, Dkt. No. 34) and filed a counterclaim on August 29, 2022, alleging battery and sexual assault (Counterclaim, Dkt. No. 36).[1] Bauer now moves to dismiss Hill's counterclaims against him.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. Discussion

Bauer argues that Hill is precluded from bringing her claims of battery and sexual assault due to collateral estoppel based on the state court findings in the DVRO

---

[1] Bauer alleges in a footnote that Hill's Counterclaim is "procedurally deficient" as it was not filed concurrently with her Answer. (Mtn. 7, n.1.) However, Bauer does not move to dismiss on these grounds, and the Court will therefore not address this issue.

Case 8:22-cv-00868-JVS-ADS   Document 69   Filed 11/23/22   Page 5 of 13   Page ID #:2038

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-cv-00868 JVS (ADSx)                                 Date   November 23, 2022

Title   Trevor Bauer v. Lindsey Hill, et. al.

proceeding. (Mtn. 7.) Specifically, Bauer argues that the issues of whether what occurred between Hill and Bauer constituted battery or sexual assault was previously and fully litigated because the state court necessarily had to make such a finding. (Id. 9.)

      A.    *Collateral Estoppel Standard*

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." Hernandez v. City of Pomona, 46 Cal. 4th 501, 510 (2009). In diversity cases, the Ninth Circuit applies the issue preclusion rules of the forum state. Jacobs v. CBS Broad., Inc., 291 F.3d 1173, 1177 (9th Cir. 2002) California requires a showing of several threshold requirements before applying the doctrine. "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." Id. (quoting Lucido v. Sup. Ct., 51 Cal. 3d 335, 341 (1990)). The party seeking application of collateral estoppel bears the burden of showing, with clarity and certainty, what was determined by the prior judgment. Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1321 (9th Cir. 1992). If there is any doubt as to its appropriateness, collateral estoppel should not be applied. Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980). See also People v. Conley, 116 Cal. App. 4th 566, 571 (2004) ("a court may decline to apply collateral estoppel if injustice would result").

In her opposition, Hill does not contest that the first, second, fourth, and fifth elements of collateral estoppel are met, and the Court agrees. Hill, the party against whom preclusion is being sought, was necessarily a party to the DVRO proceeding. See Hernandez, 46 Cal. 4th at 511. Additionally, the parties vigorously litigated whether Bauer's conduct constituted "abuse" for purposes of the Domestic Violence Prevention Act. Id. Further, the DVRO proceeding ended in a final judgment on the merits as to the question of whether a long-term DVRO should issue. Id. Finally, the same factual allegations are at stake in Hill's counterclaims as in the DVRO proceeding. Lucido v. Sup. Ct., 51 Cal. 3d 335, 342 (1990). Accordingly, the parties only dispute whether the state court necessarily decided that Bauer battered or sexually assaulted Hill in its decision not to extend the temporary restraining order into a long-term restraining order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
|---|---|---|---|
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

### B. *"Necessarily Decided"*

An issue may not be relitigated "if the determination of the issue was critical and necessary to the judgement reached in the prior litigation."[2] Bear, 966 F.2d at 1320. If there is "any doubt" as to whether the issue was necessarily decided, "collateral estoppel will not be applied, especially if the previous decision could have been rationally grounded on an issue other than that which the defendant seeks to foreclose from consideration." Little v. U.S., 794 F.2d 484, 487 (9th Cir. 1986).

Bauer argues that the state court's "decision made clear" that Judge Gould-Saltman determined Bauer did not commit an act of abuse, which definitionally includes battery and sexual assault.[3] (Mtn. 17.) Bauer lists many of Judge Gould-Saltman's recitations of the evidence, with particular focus on the judge's musings regarding what Hill did or did not consent to. (Id. 17-19.) However, the Court's reading of Judge Gould-Saltman's findings and reasoning does not lead to a "clear" decision as to an absence of abuse or the scope of consent. Rather, the state court's decision not to grant a long-term restraining order was due to insufficient evidence that the parties will have contact in the future, and therefore, a lack of opportunity for abuse to occur. (DVRO Tr. 487:5-11.)

At oral argument, counsel for Bauer asserted that as a matter of law, Judge Gould-Saltman necessarily had to find that there was no past act of abuse, pointing the Court to Rodriguez v. Menjivar, 243 Cal. App. 4th 816 (2015). In that case, the trial court denied a long-term DVRO because the petitioner had failed to make a showing of future harm.

---

[2] In her opposition, Hill argues that the correct standard requires the prior court to have made an "express finding" on the allegation for which preclusion is sought. (Opp'n. 3.) However, the cases to which Hill cites for this rule are inapposite. The courts in those cases decided whether collateral estoppel can be applied where the previous litigation ended in a default judgment and one party by definition did not fully litigate the case. See, e.g., In re Harmon, 250 F.3d 1240, 1247 (9th Cir. 2001); In re Baldwin, 240 F.3d 912, 918-19 (9th Cir. 2001). That is not the case here. Both parties were present and represented by counsel throughout the DVRO proceedings, engaged in discovery, and submitted multiple briefs in the state court proceedings.

[3] It is uncontested for purposes of this motion that the statutory definition of "abuse" includes the type of conduct Hill alleges Bauer engaged in. See Cal. Fam. Code § 6203(a) (including in the definition of abuse "to intentionally or recklessly cause or attempt to cause bodily injury" and "sexual assault").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

Id. at 822.  When one of the party's attorneys asked whether the judge was "making a determination that there was domestic violence in the past and that that is not sufficient to order a restraining order going forward," the judge answered "that's right."  Id.  The trial judge therefore interpreted the DVPA to *require* a finding of future harm in order to issue a long-term DVRO, and that it did not have the discretion to grant a DVRO based solely on a showing of past violence.  Id.  The appellate court, however, clarified that "[n]o showing of the probability of future abuse is required to issue a DVPA restraining order."  Id.  Accordingly, the trial court erred in holding that a showing of past abuse is not sufficient on its own to warrant issuance of a long-term DVRO.  Id.; see also Cal. Fam. Code § 6345 (DVRO orders may be renewed "without a showing of further abuse since the issuance of the original order").

    Rodriguez clarifies that future harm is not an additional requirement in order to issue a DVRO, but courts may, in their discretion, choose to deny a long-term DVRO if the court finds that such an order is not necessary to protect the petitioner's safety.  See also Navarez v. Tonna, 227 Cal. App. 4th 774, 783 (noting that courts may issue a DVRO without requiring a showing of future harm).  Judge Gould-Saltman expressly recognizes this distinction.  She noted that, while a showing of future harm is not a necessary condition to issuing a long-term DVRO, Section 6340 does require courts to consider "whether the failure to issue a DVRO may "jeopardize the safety of the petitioner." (DVRO Tr. 581:6-14; 587:1-4.)  She then spent a significant amount of time discussing the issue of consent as Bauer would have interpreted it – how did Hill express consent, and how did Bauer react.  Because consent is not an element of any section under which the court was considering issuing a restraining order, it follows that the purpose of her discussion was to inform the conclusion that no future harm would occur.  Although the court acknowledged that Bauer engaged in sexual acts while Hill was unconscious, to which she could not legally consent, the court reasoned that when Hill expressed boundaries, Bauer respected them.  Accordingly, there was no "rational" or "factual basis" to fear future harm from Bauer that would justify issuing a long-term DVRO.  (Id. 586:3-587:11.)

    Unlike in Rodriguez, where the trial court believed it could not issue a DVRO without a showing of future harm, here, the state court understood it was not required to find future harm in order to grant a DVRO but denied it on those grounds nonetheless.  The court was entitled to make such a determination, as the DVPA grants courts significant discretion in deciding whether to grant or deny a DVRO.  See, e.g., Cal. Fam.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
|---|---|---|---|
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

Code § 6300 ("An order may be issued"); § 6345 ("In the discretion of the court," orders "may be renewed"); § 6340 ("The court may issue any of the orders described in Article 1"); see also Nakamura v. Parker, 156 Cal. App. 4th 327, 334 (2007) (noting the DVPA's grant of discretion to courts is "designed to be exercised liberally"). Judge Gould-Saltman was therefore permitted, but not required, to deny Hill's request for a DVRO because there was no "factual basis" for Hill to fear future harm or contact from Bauer. See Dauterive v. Wang, 2020 WL 3591420, at *3 (Cal. Ct. App. July 2, 2020) (noting that a showing of future harm is not a necessary condition to granting a DVRO).

Within this backdrop, it is apparent that the state court exercised its discretionary authority to consider future harm in its analysis, and used this as the basis of its denial of Hill's DVRO petition. Although it is not necessary for parties to ask the court to clarify the basis of its findings, courts have found such requests helpful in determining whether an issue was "necessarily decided." When analyzing whether the issue of perpetration of violence was previously decided, the court in Van Oss v. Van Oss gave great weight to one party's "request for a statement of decision" that "specifically asked the court to determine" whether the other party had established an act of violence. 2005 WL 240847, at *3 (Cal. Ct. App. Jan. 1, 2005). It was therefore obvious from the record that "the trial court necessarily considered the evidence and decided" that the defendant "had committed a form of violence." Id. Similarly, in Rodriguez, the lower court denied a long-term DVRO despite explicitly finding that "there was significant violence." 243 Cal. App. 4th at 822. In response to an attorney's question for clarification, the court confirmed it determined "that there was domestic violence in the past" but that was "not sufficient to order a restraining order going forward." Id.

Here, the Court does not have such clarity from the state court. Judge Gould-Saltman made no findings as to whether Bauer battered or sexually assaulted Hill. Additionally, the record does not reflect that either party requested the court specifically make such a determination, as the parties did in Van Oss. Nor does the record reflect a party's request for clarification as to whether the court made a finding of past harm as in Rodriguez. Rather, Judge Gould-Saltman noted that Hill's injuries were "terrible," and "under most circumstances, merely seeing photographs such as those would serve as a per se condemnation of the perpetrator of such injuries." (DVRO Tr. 585:15-18.) However, the judge added that Hill "had and has the right to engage in any kind of sex as a consenting adult that she wants to with another consenting adult." (Id. 585:18-21.) Notwithstanding the "terrible" injuries that may have been inflicted consensually, Judge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-cv-00868 JVS (ADSx)                    Date  November 23, 2022

Title    Trevor Bauer v. Lindsey Hill, et. al.

Gould-Saltman ultimately found that "there is no supportable evidence that respondent is likely to cause petitioner any harm or even have contact with the petitioner." (DVRO Tr. 587:5-11.) Based on Judge Gould-Saltman's conclusions on the record, it is far from "clear" that she found Bauer did not batter or sexually assault Hill. (Mtn. 17.)

Bauer also argues that Hill should be collaterally estopped from bringing her counterclaims because the state court "considered the evidence and found that the two encounters were entirely consensual." (Mtn. 12.) However, this statement is not supported by the record. California law treats consent as an affirmative defense in tort claims, including the tort of sexual assault. See Cal. Civ. Code § 3515. Accordingly, the issue becomes whether (1) Judge Gould-Saltman found that Hill consented to all the sexual and physical acts and (2) if so, whether that finding was necessary to the decision to deny the DVRO. As to the first issue, the Court concludes that the state court found consent as to some, but not all, of Bauer's conduct. Judge Gould-Saltman held that Hill consented to rough sex, including choking, noting that Hill "said that 'she wanted all the pain' . . . and wanted to be choked out," even to the point of unconsciousness. (See DVRO Tr. 584:4-14.) Notwithstanding Hill's consent to some form of rough sex, Bauer engaged in acts while Hill was unconscious, when she was physically and legally unable to give consent. "Because the law does not recognize an unconscious person's advance consent to rape, making the sexual act a crime, it is a battery to intentionally commit that act even if there was advance consent." People v. Miranda, 62 Cal. App. 5th 162, 175 (2021) Therefore, Hill could not consent, at least to these sexual acts, even if Hill did "want all the pain." (DVRO Tr. 584:4-14.)

Moreover, Judge Gould-Saltman noted that the scope of Hill's consent was unclear. Hill testified that "both sexual encounters began consensually but that, at least to the second encounter, it ventured into areas to which she did not consent." (Id. 583:28-584:3.) Hill further testified "that she did not consent to being punched to the point of having black eyes and having to be hospitalized," leading the judge to opine that these are the "potential consequences of the activities, including some of which [Hill] acknowledged that she did consent to." (Id. 583:18-20.) However, the court did not find that Hill consented to all these consequences, only some, and did not delineate between the two with any specificity. Additionally, as noted above, Judge Gould-Saltman did not find that Hill consented to Bauer continuing to engage in sex acts with her while she was unconscious. Furthermore, the purpose of the state court's discussion on consent was to explain why a long-term DVRO was not necessary. The judge focused on the portions of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
|---|---|---|---|
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

Hill's testimony regarding what she told Bauer, how she communicated her boundaries with Bauer, and what he did in response. (Id. 583:28-584:4.) Immediately following this recitation of the evidence, Judge Gould-Saltman again returned to the "fundamental purpose" of the DVPA, which is to protect victims moving forward. (Id. 586:3-5.) Because Bauer responded to Hill's requests to stop when she could make them, Hill was not in danger of Bauer "pursu[ing]" her or "coerc[ing] her into [unwanted] sexual activity" in the future. (Id. 585:5-8.) Thus it cannot be said that the state court's decision rested on a finding of consent.

The way in which Judge Gould-Saltman framed her findings further supports the notion that her denial of a DVRO was based on a failure to show a likelihood of future harm, rather than a finding that Bauer did not commit acts of abuse. Judge Gould-Saltman book-ended her findings with a discussion of the purpose of certain family code sections. She started by reciting the language of California Family Code Section 6220, which states in relevant part that "the purpose of this division is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons seeking a resolution of the causes of the violence." (Id. 581:1-6.) The court also read California Family Code Section 6340, which states that "when determining whether to make any orders under this subdivision, the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner." (Id. 581:6-10.) Accordingly, the decision to deny a long-term DVRO was based on Hill's failure to present sufficient evidence of a reasonable basis to fear future harm from Bauer. In any case, it is far from clear that Judge Gould-Saltman "necessarily decided" that Bauer did not commit any torts against Hill. See Little, 794 F.2d at 487 (reasoning that if there is "any doubt" as to whether the issue was necessarily decided, "collateral estoppel will not be applied, especially if the previous decision could have been rationally grounded on an issue other than that which the defendant seeks to foreclose from consideration").

Bauer also argues that, even in the absence of specific factual findings as to abuse or consent, the state court necessarily decided he did not batter or sexually assault Hill because "a California court must decide whether there is 'reasonable proof of a past act or acts of abuse'" when issuing a DVRO under Section 6300. (Mot. 17. (quoting California Family Code § 6300(a)).) In support of this argument, Bauer relies on Salisbury v. Hickman. 974 F. Supp. 2d 1282, 1289 (E.D. Cal. 2013). In that case, the district court found that, in granting a three-year restraining order based on California Code of Civil

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-cv-00868 JVS (ADSx)                                  Date  November 23, 2022

Title       Trevor Bauer v. Lindsey Hill, et. al.

Procedure Section 527.6(i), the state court "must have found clear and convincing evidence" of each underlying statutory element.  Id.  Here, Bauer asserts that a DVRO granted under Family Code Section 3200 requires "reasonable proof of a past act or acts of abuse."  Because the state court denied Hill's request for a long-term DVRO, it necessarily follows that the court did not find proof of a past act of abuse.[4]  Bauer is incorrect.

As an initial matter, the state court in Salisbury *granted* a restraining order, which required the court to find each element of the statute was met.  Conversely, here, the state court *denied* the request for a restraining order, meaning that the court need only have found that one element was not met. Moreover, although Bauer is correct that a DVRO granted under Family Code Section 6300 requires reasonable proof of a past act or acts of abuse, Section 6300 is only one of several sections in the Family Code under which a court may grant a restraining order.  The record before this Court does not support a finding that Judge Gould-Saltman relied on that section in considering whether to grant a DVRO.  Indeed, nowhere in Judge Gould-Saltman's findings does she reference Section 6300 of the Family Code.

As noted above, the state court began and ended its discussion with the purpose of Family Code Section 6220: to prevent acts of domestic violence.[5]  (DVRO Tr. 581:1-5.) The court then turned to Section 6340, which permits courts to issue "any of the orders described in Article 1 (commencing with Section 6320) after notice and a hearing."  Cal. Fam. Code § 6340(a)(1).  Article 1 includes three sections under which Judge Gould-Saltman could have issued a restraining order on the facts of the case: Section 6320,

---

[4] It is uncontested for purposes of this motion that the statutory definition of "abuse" includes the type of conduct Hill alleges Bauer engaged in.  See Cal. Fam. Code § 6203(a) (including in the definition of abuse "to intentionally or recklessly cause or attempt to cause bodily injury" and "sexual assault").  It is similarly uncontested that "reasonable proof" requires a preponderance of the evidence standard, the same standard applicable to Hill's claims now before this Court.  See Gdowski v. Gdowski, 175 Cal. App. 4th 128, 137 (2009) ("issuance of a protective order under the DVPA" requires "a preponderance of the evidence").

[5] At oral argument, counsel for Bauer erroneously stated that Judge Gould-Saltman only turned to Section 6340 after finding no past acts of abuse.  Not only does the Court disagree with this characterization of the state court's findings as to acts of abuse, the Court notes that Judge Gould-Saltman began her recitation of findings with a discussion of Section 6340.  (See DVRO Tr. 581:6-13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

Section 6321, or Section 6322. Section 6320 is titled "Ex parte order enjoining contact, credibly or falsely impersonating, or destroying personal property; protection for companion animals." Cal. Fam. Code § 6320. Section 6320 provides courts with broad authority to issue ex parte orders enjoining many types of conduct, including battery and sexual assault, but does not provide specific elements courts must consider before granting a DVRO. Id. § 6320(a). Section 6321 is titled "Ex parte order excluding party from dwelling." Id. § 6321. An order under this section requires a showing of (1) right to possess the dwelling; (2) the party to be excluded "has assaulted or threatens to assault" the party seeking the injunction; and (3) that "physical or emotional harm would otherwise result" to the party seeking the injunction. Id. § 6321(b). Finally, Section 6322, titled "Ex parte order enjoining specified behavior," permits courts to issue injunctions "from specified behavior that the court determines is necessary to effectuate orders under Section 6320 or 6321." Id. § 6322.

Other than Section 6340's requirement that the court consider whether the petitioner's safety would be jeopardized should the injunction not issue, Sections 6320 and 6322 provide little guidance as to what courts *must necessarily* consider in choosing to issue or deny an injunction. Section 6321 provides substantially more guidance, requiring a showing of the aforementioned three elements. One of those elements is a showing that the party to be excluded from a home "has assaulted or threatens to assault" the party seeking to exclude. Id. § 6321(b)(2). The party seeking to exclude has an additional burden showing that "physical or emotional harm" would result in the future should an injunction not issue. Id. § 6321(b)(3). A finding that any one of these elements was not met would be sufficient grounds to deny a long-term DVRO.

In Salisbury, the court found collateral estoppel where the state court's decision to grant a restraining order based on California Code of Civil Procedure 527.6 statutorily required the state court to find all three elements. 974 F. Supp. 2d at 1289. Conversely, here, a failing to meet any one of Section 6321's elements is grounds to deny an injunction. Accordingly, evidence of Bauer's alleged battery and sexual assault against Hill was certainly relevant to the state court's decision, but the state court did not end its analysis there. See Abatti v. Imperial Irrigation Dist., 52 Cal. App. 5th 236, 306-307 (2020) (holding that issue preclusion does not apply where a finding from an earlier action is relevant to "but does not resolve the inquiry" in the later action); In re Marriage of Burbaker & Strum, 73 Cal. App. 5th 525, 539 (2021) ("while evidence of additional acts of domestic violence or a violation of the original restraining order was relevant to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868 JVS (ADSx) | Date | November 23, 2022 |
| Title | Trevor Bauer v. Lindsey Hill, et. al. | | |

whether Burbaker had a reasonable fear of future abuse . . . such evidence was not required to renew the restraining order"). Accordingly, Judge Gould-Saltman did not "necessarily decide" that Bauer did not batter or sexually assault Hill as a statutory requirement.

Finally, as discussed above, while a finding of future harm is not necessary in order to grant a DVRO, courts must consider whether harm to the petitioner would result should a DVRO not issue. See Cal. Fam. Code § 6340; Rodriguez, 243 Cal. App. 4th 816 at 822. Judge Gould-Saltman therefore had the discretion to deny Hill's DVRO petition based on a finding that Hill's "safety" would not be "jeopardized." Cal. Fam. Code § 6340. Accordingly, the Court finds that the state court proceedings did not necessarily decide that Bauer did not batter or sexually assault Hill. Therefore, issue preclusion does not apply.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Bauer's motion to dismiss Hill's counterclaims against him.

**IT IS SO ORDERED.**