1

2

3

4               UNITED STATES DISTRICT COURT

5               CENTRAL DISTRICT OF CALIFORNIA

6                     SOUTHERN DIVISION

7                          - - -

8       THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

10      TREVOR BAUER,                  )
                          Plaintiff, )
11           vs.                       )
                                       ) SACV-22-00868-JVS
12      LINDSEY C. HILL, et al.,       )
                          Defendants.)
13      --------------------------)

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               Santa Ana, California

17               November 21, 2022

18

19                    SHARON A. SEFFENS, RPR
                      United States Courthouse
20                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
21                    (612) 804-8655

22

23

24

25

1  APPEARANCES OF COUNSEL:

2  For the Plaintiff:

3  **BLAIR G. BROWN**
   **ZUCKERMAN SPAEDER, LLP**
4  **1800 M Street, N.W., Suite 1000**
   **Washington, D.C.  20036**
5  **(202) 778-1800**

6  NELL Z. PEYSER
   **ZUCKERMAN SPAEDER, LLP**
7  **485 Madison Avenue, 10th Floor**
   **New York, NY  10022**
8  **(212) 704-9600**

9  SUANN MACISAAC
   **KINSELA WEITZMAN ISER KUMP HOLLEY, LLP**
10 **808 Wilshire Boulevard, 3rd Floor**
   **Santa Monica, CA  90401**
11 **(310) 566-9800**

12 For Defendant LINDSEY C. HILL:

13 **BRETT A. SMITH**
   **WESIERSKI & ZUREK, LLP**
14 **29 Orchard Road**
   **Lake Forest, CA  92630**
15 **(949) 975-1000**

16 **JESSE A. KAPLAN**
   **FREEDMAN TAITELMAN, LLP**
17 **1801 Century Park West, 5th Floor**
   **Los Angeles, CA  90067**
18 **(310) 201-0005**

19

20

21

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | |
|---|---|
| 1 | SANTA ANA, CALIFORNIA; MONDAY, NOVEMBER 21, 2022; 3:14 P.M. |
| 03:14  2 | THE CLERK:  Calling Item No. 7, SACV-22-00868-JVS, |
| 03:14  3 | Trevor Bauer versus Lindsey C. Hill, et al. |
| 03:14  4 | Counsel, please state your appearances for the |
| 03:14  5 | record. |
| 03:14  6 | MR. BROWN:  Good afternoon, Your Honor.  Blair |
| 03:14  7 | Brown on behalf of Trevor Bauer.  With me are my colleagues |
| 03:14  8 | Nell Peyser and Kate Mangels. |
| 03:14  9 | THE COURT:  Good afternoon. |
| 03:14  10 | MR. KAPLAN:  Good afternoon, Your Honor.  This is |
| 03:14  11 | Jesse Kaplan for the defendant and counterclaimant Lindsey |
| 03:14  12 | Hill. |
| 03:14  13 | THE COURT:  It's the plaintiff's motion.  Sir, you |
| 03:14  14 | have about 15 minutes. |
| 03:14  15 | MR. BROWN:  Thank you, Your Honor. |
| 03:14  16 | Your Honor, I am going to attempt to convince you |
| 03:15  17 | that the tentative is wrong, and the reason is -- |
| 03:15  18 | THE COURT:  Does that come as a surprise? |
| 03:15  19 | MR. BROWN:  It should not be a surprise, no.  And |
| 03:15  20 | the reason it is wrong is fairly straightforward.  In the |
| 03:15  21 | DVRO proceeding, Judge Gould-Saltman, as a matter of law, |
| 03:15  22 | had to decide whether the alleged acts of abuse occurred. |
| 03:15  23 | The law is clear most notably from the Rodriguez case, which |
| 03:15  24 | we cited in our papers but was not cited in the tentative, |
| 03:15  25 | the Court must grant a Domestic Violence Restraining Order, |

| | | |
|---|---|---|
| 03:15 | 1 | a DVRO, if there is a spousal or dating relationship, and it |
| 03:15 | 2 | finds that an act of abuse had occurred.  If it finds the |
| 03:15 | 3 | relationship and an act of past abuse has occurred, the |
| 03:16 | 4 | restraining order must be granted.  It does not matter |
| 03:16 | 5 | whether there is a likelihood of the abuse recurring.  The |
| 03:16 | 6 | Court must issue the DVRO if those two requirements are met. |
| 03:16 | 7 | The abuser may have relocated.  He may promise |
| 03:16 | 8 | that he's never going to do it again or she's never going to |
| 03:16 | 9 | do it again.  And that has been the case in some of the |
| 03:16 | 10 | appellate decisions where the argument was made on appeal |
| 03:16 | 11 | that there was no proof that this would ever happen again. |
| 03:16 | 12 | The abuser has left, et cetera.  The Court must still issue |
| 03:16 | 13 | the restraining order if a past act of abuse occurred. |
| 03:16 | 14 | If the judge must grant a restraining order if an |
| 03:16 | 15 | act of abuse occurred, in order to deny a DVRO petition, the |
| 03:16 | 16 | Court must find as a matter of law, as Judge Gould-Saltman |
| 03:17 | 17 | did, that there was no act of abuse in order to deny the |
| 03:17 | 18 | petition, no battery or sexual assault, which were the |
| 03:17 | 19 | claims that were made in this case and, more specifically, |
| 03:17 | 20 | had to decide that Ms. Hill had consented to the acts at |
| 03:17 | 21 | issue.  If Ms. Hill had not consented, there would have been |
| 03:17 | 22 | an act of abuse, and the Court would have had to grant the |
| 03:17 | 23 | petition. |
| 03:17 | 24 | The Court necessarily decided that there was not |
| 03:17 | 25 | an act of abuse, that there was consent by denying the |

03:17  1    petition.  The trial record shows that everyone in the

03:17  2    courtroom understood that, that is, that --

03:17  3            THE COURT:  Well, I'm not in the courtroom.  All I

03:17  4    have is the printed record.

03:17  5            MR. BROWN:  Exactly, Your Honor, and that's why

03:17  6    I'm going to point to the printed record in the case.  The

03:18  7    lawyers for Ms. Hill and the judge focused on the two issues

03:18  8    that were determined in the proceeding:  Was there a dating

03:18  9    relationship, and was there consent to the alleged acts?

03:18  10   There were days of testimony focusing on those issues.  We

03:18  11   submitted the transcript as an exhibit.  There were briefs.

03:18  12   There were arguments addressing those issues.  And the Court

03:18  13   believed there were statements throughout the proceedings by

03:18  14   Ms. Hill's own counsel and the Court that there not be any

03:18  15   proof of a risk of future abuse in order to obtain the DVRO.

03:18  16           Ms. Hill's counsel, Lisa Meyer said:  "Your Honor,

03:18  17   first let me start by saying that I think the two critical

03:18  18   issues that the Court has to decide is whether or not there

03:18  19   is or was a dating relationship under the Family Code and,

03:18  20   number two, whether or not the sex or the sexual assault was

03:18  21   consensual or not."  That was what was presented to the

03:18  22   Court.  In closing, Ms. Hill's counsel, Ms. Meyer, said:

03:18  23   "As the Court is aware, there is no need to show future

03:19  24   abuse, and that's the Nevarez v. Tonna case."  She provided

03:19  25   the cite to the Court.

03:19  1          Judge Gould-Saltman also acknowledged at the end
03:19  2     of the findings that there was no need to establish
03:19  3     probability of future abuse in order to get a DVRO, also
03:19  4     citing the Nevarez case.  Well, Judge Gould-Saltman and Ms.
03:19  5     Meyer were well versed in the law of DVROs.  The judge had
03:19  6     been a Family Court judge for a decade, had practiced before
03:19  7     that in family law for 20 years.  In her closing argument --
03:19  8     in the beginning of the closing argument, Ms. Hill's counsel
03:19  9     stated:  "I've been practicing family law and doing DVROs
03:19  10    for 40 years."  And --
03:19  11            THE COURT:  Does that change the law?
03:19  12            MR. BROWN:  It does not change the law.  It is
03:19  13    background, Your Honor.  And it's not determinative, but I
03:19  14    think that it does provide some color to the proceedings
03:19  15    below, that the trial judge, that Ms. Hill's counsel,
03:19  16    experienced counsel, knew what they were doing.  And I urge
03:20  17    the Court and your law clerks to read three cases that I
03:20  18    think will change your mind.
03:20  19            One is the one cited below, Nevarez v. Tonna,
03:20  20    which we cited in our briefs.  The defendant contended the
03:20  21    trial court could not issue a restraining order without
03:20  22    finding a probability that he would commit future abuse.
03:20  23    And he said that he'd gotten the message that the
03:20  24    relationship is over.  He promised not to ever contact the
03:20  25    plaintiff again.  And the appellate court in Nevarez held

03:20  1   the trial court was not required to find a probability that

03:20  2   the defendant would not commit future abuse before issuing a

03:20  3   restraining order under Section 6300.

03:20  4              In Rodriguez v. Menjivar, again, what I mentioned

03:20  5   earlier that we cited, in that case, the Court reversed the

03:20  6   denial of a Domestic Violence Restraining Order.  The trial

03:21  7   court had found past acts of abuse, but then denied the

03:21  8   petition for a restraining order because the defendant had

03:21  9   indicated -- or there was evidence that the defendant was

03:21  10  leaving the area so that there was not going to be any

03:21  11  future acts of abuse.

03:21  12             And the counsel for the petitioner in that case

03:21  13  below asked the Court quite directly you're making a

03:21  14  determination that there was domestic violence in the past,

03:21  15  and that's not sufficient to order a restraining order going

03:21  16  forward?  And the trial court said, yeah, that's right.  The

03:21  17  appellate court squarely held that that was an error of law.

03:21  18             "A DVRO may be issued" -- and I quote.  This is

03:21  19  the Rodriguez appellate decision -- "without a showing of

03:21  20  any further abuse beyond that on which the original Order

03:21  21  was based."  And that is unequivocal.  In Rodriguez, the

03:21  22  issue was extending an order, and that's why it referred to

03:22  23  the abuse that was the basis for the order.

03:22  24             The Court said that while the trial court believed

03:22  25  that there had been significant physical violence, it found

03:22   1   that showing of past abuse insufficient as a matter of law.

03:22   2   Because the law is otherwise, the order denying the issuance

03:22   3   of a Domestic Violence Prevention Act protective order must

03:22   4   be reversed, and the matter remanded to the trial court to

03:22   5   issue a restraining order.

03:22   6        The third case is a case called Dauterive v. Wang.

03:22   7   We did not cite it.  It is a recent case.  It is an

03:22   8   application of Rodriguez that stands for the same principle.

03:22   9   And I quote -- well, let me give you the cite since we

03:22   10  didn't include it.  It is an unpublished Second Division

03:22   11  appellate decision.  It's a West Law cite, 2020, WL3591420,

03:22   12  and this is at page 3 that I am going to reference:  "By

03:22   13  enacting 6300, the legislature has determined that in the

03:23   14  case of domestic violence, all that is required for issuance

03:23   15  of a restraining order is evidence of past abuse."

03:23   16       The legislature chose that statutory scheme to

03:23   17  maximize the protection for alleged victims.  All they need

03:23   18  to show is a past act of abuse, and they are not put to the

03:23   19  showing of having to make a more difficult predictive

03:23   20  showing of whether or not future abuse would occur.

03:23   21       And this is where I believe some confusion is

03:23   22  injected, but the law in the appellate cases that I

03:23   23  mentioned is clear.  The legislature also chose to add even

03:23   24  further protection in Section 6340.  That section provides

03:23   25  that the Court shall consider whether failure to make any of

03:24   1   these orders may jeopardize the safety of the petitioner.

03:24   2           So even if a past act of abuse is not shown by the

03:24   3   petitioner, the Court can still issue an order to protect

03:24   4   the petitioner.  The Court must issue the order if the

03:24   5   petitioner shows an act of abuse.  But even if the Court

03:24   6   decides that the petitioner hasn't established by a

03:24   7   preponderance of the evidence that past abuse occurred, it

03:24   8   can issue the order under 6340 to protect the petitioner if

03:24   9   there's risk to her safety or his safety.

03:24   10           And that's the reason and the only reason -- that

03:24   11   6340 provision is the only reason that at the very end of

03:24   12   Judge Gould-Saltman's findings after she found no active

03:24   13   abuse, as well as a dating relationship -- that's the reason

03:25   14   at the end that she found that there was no probability of

03:25   15   future harm.

03:25   16           She was doing what Section 6340 required.  She was

03:25   17   dotting all of her I's and crossing all of her T's.  But

03:25   18   that does not detract from the fact that the issues that

03:25   19   were decided and the core issues in that case and the basis

03:25   20   for the denial of the petition was that there were no past

03:25   21   acts of abuse shown.  And if there were no past acts of

03:25   22   abuse shown, then Ms. Hill cannot relitigate what was

03:25   23   clearly found against her in that Domestic Violence

03:25   24   Restraining Order proceeding.

03:25   25           So the Court's tentative order focuses on that

03:25  1  very last section of Judge Gould-Saltman's findings that

03:26  2  insufficient evidence -- that the Court in its tentative

03:26  3  stated that the request for a DVRO was denied based on

03:26  4  insufficient evidence that the parties would have contact in

03:26  5  the future and therefore a lack of opportunity for abuse to

03:26  6  occur.

03:26  7         Again, the reason and the only reason that Judge

03:26  8  Gould-Saltman made that finding was because of the

03:26  9  requirements of 6340 after she had already decided that she

03:26  10  was going to deny the petition because the petitioner had

03:26  11  failed to show an act of abuse.

03:26  12         THE COURT:  You're saying that comment relates

03:26  13  only to 6340, which has a lower standard?

03:26  14         MR. BROWN:  Yes, I am saying that that comment is

03:26  15  what the Court was required to address by 6340 if it has

03:26  16  determined that past acts of abuse had not been established.

03:26  17  So the Court already decided and found that no past acts of

03:27  18  abuse had occurred, and as a fail-safe mechanism required by

03:27  19  the statute, the judge also said, well, even though I'm

03:27  20  refusing to issue the order, I'm not going to -- I've looked

03:27  21  at 6340, and I'm still not going to issue any further DVRO.

03:27  22         THE COURT:  What you're saying is a finding under

03:27  23  6340 is irrelevant to a finding under 6320?

03:27  24         MR. BROWN:  I am saying that the finding of -- I

03:27  25  am saying that it is an additional protection -- it's an

03:27   1   additional issue that the Court has to address, and it's

03:27   2   designed to provide additional protection for the

03:27   3   petitioner.

03:27   4           THE COURT:  You need to wrap up, please.

03:27   5           MR. BROWN:  The other point I'd like to make is

03:27   6   that -- the principal point I'd like to make is that there

03:27   7   is no question that the Court found that Ms. Hill had

03:28   8   consented to the conduct at issue.  The Court said if

03:28   9   Ms. Hill had set limits and Mr. Bauer had exceeded them,

03:28  10   this case would be very clear.  Here, the Court quite

03:28  11   literally tells us that the outcome would have been

03:28  12   different if it would have found a past act of abuse.

03:28  13          And it is also saying that Ms. Hill consented to

03:28  14   the conduct at issue because if Mr. Bauer had exceeded those

03:28  15   limits, it would have been nonconsensual.  Instead, in her

03:28  16   ruling, she ruled that he acted within those limits.  And

03:28  17   the fact that there were adverse consequences is not

03:28  18   determinative to the physical injury.

03:28  19          THE COURT:  Right.

03:28  20          MR. BROWN:  That does not mean that he did not act

03:28  21   within those limits.

03:28  22          And the other point, there is some discussion in

03:29  23   the tentative about what happened when Ms. Hill was

03:29  24   allegedly unconscious.  The Court addressed that

03:29  25   specifically in her ruling, and she said the only evidence

| | | |
|---|---|---|
| 03:29 | 1 | of what occurred while Ms. Hill was unconscious was that she |
| 03:29 | 2 | was slapped in the buttocks, period.  And that was not one |
| 03:29 | 3 | of the claimed acts of abuse that was alleged.  And Ms. Hill |
| 03:29 | 4 | claimed and claims now in her counterclaim that that there |
| 03:29 | 5 | was anal rape during unconsciousness.  That was rejected. |
| 03:29 | 6 | But, again, the Court did not even have to go to |
| 03:29 | 7 | that level of specificity in ruling for collateral estoppel |
| 03:29 | 8 | to apply in this case.  It is what was necessarily decided. |
| 03:29 | 9 | And there are many cases, some of which we have cited, in |
| 03:29 | 10 | which there was very perfunctory findings, and the Court in |
| 03:29 | 11 | order to find collateral estoppel looks to what was |
| 03:30 | 12 | necessarily decided as a legal matter.  And as a legal |
| 03:30 | 13 | matter in this instance, what was necessarily decided was |
| 03:30 | 14 | that there was a dating relationship and no past acts of |
| 03:30 | 15 | abuse. |
| 03:30 | 16 | THE COURT:  Thank you. |
| 03:30 | 17 | MR. BROWN:  Thank you. |
| 03:30 | 18 | THE COURT:  Mr. Kaplan. |
| 03:30 | 19 | MR. KAPLAN:  Thank you, Your Honor. |
| 03:30 | 20 | THE COURT:  What's the evidence of nonconsensual |
| 03:30 | 21 | abuse? |
| 03:30 | 22 | MR. KAPLAN:  I'm sorry, Your Honor.  Can you |
| 03:30 | 23 | repeat that? |
| 03:30 | 24 | THE COURT:  What's the evidence of nonconsensual |
| 03:30 | 25 | abuse? |

| | | |
|---|---|---|
| 03:30 | 1 | MR. KAPLAN:  The evidence of nonconsensual abuse? |
| 03:30 | 2 | THE COURT:  Yeah. |
| 03:30 | 3 | MR. KAPLAN:  I guess I'm not quite sure I'm |
| 03:30 | 4 | understand the question. |
| 03:30 | 5 | THE COURT:  Well, as I understand the argument |
| 03:30 | 6 | from the plaintiff, everything that took place was |
| 03:30 | 7 | consensual.  If it was consensual, there's no basis for a |
| 03:30 | 8 | DVRO. |
| 03:30 | 9 | MR. KAPLAN:  Well -- |
| 03:30 | 10 | THE COURT:  Is that premise wrong? |
| 03:30 | 11 | MR. KAPLAN:  The premise is wrong, Your Honor. |
| 03:30 | 12 | THE COURT:  Well, tell me about that. |
| 03:30 | 13 | MR. KAPLAN:  So -- |
| 03:30 | 14 | THE COURT:  I'm not talking about 6340.  I'm |
| 03:31 | 15 | talking about 6320. |
| 03:31 | 16 | MR. KAPLAN:  Okay.  Well, the evidence is clear |
| 03:31 | 17 | that Ms. Hill consented to having some rough sex and maybe |
| 03:31 | 18 | some choking, but the extent of what happened she did not |
| 03:31 | 19 | consent to.  She did not consent to that, and she didn't |
| 03:31 | 20 | consent to anything that happened while she was unconscious |
| 03:31 | 21 | either.  And the mere fact that she said, you know, I'll |
| 03:31 | 22 | engage in rough sex or here's what I could think of as |
| 03:31 | 23 | things that are off limits, that doesn't mean that anything |
| 03:31 | 24 | and everything that is potentially conceivable, any |
| 03:31 | 25 | potential consequence, equates to consent. |

03:31   1          THE COURT:  What do I make of the judge's comment

03:31   2   that she didn't set boundaries?  If she had set boundaries,

03:31   3   different case?

03:31   4          MR. KAPLAN:  That doesn't equate to consent.  And

03:32   5   under the standard that the Court correctly -- that Your

03:32   6   Honor correctly applied in the tentative as to collateral

03:32   7   estoppel, that is not clear -- or clarity -- or a clear and

03:32   8   certain finding by Judge Gould-Saltman that there was

03:32   9   consent on everything that happened or may have happened

03:32   10  between Ms. Hill and Mr. Bauer.

03:32   11         THE COURT:  I should take that just as an

03:32   12  observation?

03:32   13         MR. KAPLAN:  That's what it is, but certainly it's

03:32   14  not a finding of consent as to everything that happened or

03:32   15  any specific acts that happened.  The only potential

03:32   16  findings of consent that occurred in that hearing by Judge

03:32   17  Gould-Saltman were that there was some rough sex and that

03:32   18  there was some consent to at least some extent of choking.

03:32   19         If we go back to the standard and the burden of

03:32   20  proof for collateral estoppel, burden of proof, Mr. Bauer

03:32   21  clearly had that.  And the standard as you've articulated in

03:32   22  the tentative ruling is that there must have been a clear

03:33   23  and certain -- or clarity and certainty of what was

03:33   24  determined by the prior Court, and there can't be any doubt.

03:33   25  And if there's any uncertainty, if there's any doubt, and if

03:33  1    it's not clear, then there cannot be collateral estoppel.

03:33  2         Additionally -- and this is the focus of Mr.

03:33  3    Brown's argument just a few minutes ago -- if the decision

03:33  4    could have been rationally grounded upon an issue other than

03:33  5    that which the defendant seeks to foreclose, in this case

03:33  6    Mr. Bauer, then collateral estoppel doesn't apply, which

03:33  7    brings us to did Judge Gould-Saltman necessarily decide that

03:33  8    there was no past acts of abuse?  Was that something she

03:33  9    must have decided when denying the relief to Ms. Hill?

03:33  10        The answer to that is no.  Not only did she -- was

03:34  11   it not --

03:34  12        THE COURT:  But Mr. Brown argues if there's abuse

03:34  13   that's not consented to, issuance of the order is mandatory.

03:34  14        MR. KAPLAN:  That's not correct.

03:34  15        THE COURT:  Okay.

03:34  16        MR. KAPLAN:  So I wanted -- that's where I wanted

03:34  17   to go, to take you through the statutory scheme, because

03:34  18   it's really important as to whether or not Judge

03:34  19   Gould-Saltman was required to deny the application.

03:34  20        THE COURT:  Or required to grant conversely.

03:34  21        MR. KAPLAN:  Or grant conversely or whether or

03:34  22   not -- even perhaps more importantly, whether or not Judge

03:34  23   Gould-Saltman could have denied the application for a

03:34  24   restraining order on some other grounds as she apparently

03:34  25   did in her ruling.

03:34  1          THE COURT:  Well, let's focus on the point.  If

03:34  2  there's abuse, is the order mandatory?  You're telling me

03:34  3  no.  Tell me why.

03:34  4          MR. KAPLAN:  So let's start with the statutory

03:34  5  language.

03:34  6          THE COURT:  Okay.

03:34  7          MR. KAPLAN:  This has all been briefed, but I'll

03:34  8  go through it.  So 6300:  "An order may be issued under this

03:35  9  part to restrain any person for the purpose specified in

03:35  10  Section 6200 with an affidavit or testimony and any

03:35  11  additional information provided to the Court pursuant to

03:35  12  Section 6306 shows to the satisfaction of the Court

03:35  13  reasonable proof of a past act or acts of abuse."

03:35  14          So the legislature has chosen to use the word

03:35  15  "may."  I've cited to you several cases in the opposition

03:35  16  that discuss the statutory language construction, that the

03:35  17  legislature didn't say "shall," didn't say "must," or use

03:35  18  similar language.

03:35  19          And there were several cases that interpret 6300,

03:35  20  which I've cited in the opposition, that clearly state that

03:35  21  a Court has discretion, and has broad discretion, to grant

03:35  22  relief if there is a showing here.  Discretionary, it's not

03:36  23  mandatory.  It is discretionary.  This is simply a

03:36  24  foundation to the Court having jurisdiction or authorization

03:36  25  to grant relief.  So that's for starters.  It's purely

03:36   1    discretionary.

03:36   2         Then the question is can the Court -- can the

03:36   3    Family Law Court then -- even if there is a showing under

03:36   4    6300 of past acts of abuse, can the Court then deny relief

03:36   5    on other grounds?  And the answer to that question is, yes,

03:36   6    the Court can.  And that's precisely what Judge

03:36   7    Gould-Saltman did.  Because 6300 is discretionary,

03:36   8    therefore, the Court in deciding whether or not to grant

03:36   9    relief may or may not grant relief.  It's as simple as that.

03:36   10        So if we take this Section 6300 and look at it in

03:36   11   conjunction with 6340, which we've also been talking about

03:37   12   in the briefing as well as today, we actually have some

03:37   13   mandatory language here, which is that "The Court shall

03:37   14   consider whether failure to make any of these orders may

03:37   15   jeopardize the safety of the petitioner," and it goes on and

03:37   16   possibly others that don't apply here.

03:37   17        All right, now that doesn't mean that the

03:37   18   probability of future harm or the safety of the petitioner

03:37   19   going forward is a requirement, that is, that the Court must

03:37   20   find that there must be future harm.  But certainly the

03:37   21   trial court or the family court must at least consider

03:37   22   whether or not there's going to be some potential future

03:37   23   harm.

03:37   24        And when we talk about the word "consider,"

03:37   25   obviously Your Honor knows what that means, but the plain

03:37   1   English definition is that you're going to think about it
03:37   2   when you're making a decision.  So the Court has to think
03:37   3   about it.  The Court has broad discretion to put zero weight
03:38   4   on it or a lot of weight on it.
03:38   5           And in this instance, Judge Gould-Saltman decided
03:38   6   to put a lot of weight on this factor, and decided for a
03:38   7   variety of reasons that she didn't think that there was any
03:38   8   probability of future harm.  And I can read the language
03:38   9   from the Court's ruling on this, but to the extent there was
03:38  10   anything that was clear and certain in her ruling in terms
03:38  11   of why she was denying relief, that was it.  And it's worth
03:38  12   reading.  This is on page -- I'm sorry, Exhibit A.
03:38  13           THE COURT:  I have it clearly in mind.
03:38  14           MR. KAPLAN:  So:  "Although the Nevarez case does
03:38  15   not require a judge to consider whether there is a
03:38  16   probability of future harm, Family Code 6340 does require
03:38  17   that it be part of the Court's consideration.  In this case,
03:38  18   the Court finds there is no supportable evidence that
03:38  19   respondent is likely to cause petitioner any harm or even
03:38  20   have contact with the petitioner."  So this is a clear and
03:39  21   certain basis and grounds for denying relief.
03:39  22           THE COURT:  Under 6340 or generally?
03:39  23           MR. KAPLAN:  Well, generally --
03:39  24           THE COURT:  Generally, under the Court's
03:39  25   discretion under 6300?

03:39  1           MR. KAPLAN:  Yes, so two things.  Generally

03:39  2   speaking because under 6300 the Court has discretion.  And,

03:39  3   two, under 6340, the Court must at least consider this.

03:39  4           THE COURT:  Right.

03:39  5           MR. KAPLAN:  Now, I agree that the Court in

03:39  6   considering that probability of future harm may assign

03:39  7   little to no weight to it.  But the Court also has

03:39  8   discretion under 6340 to assign quite a bit of weight to it,

03:39  9   and in this case, it could be dispositive.

03:39  10          Now, is the Court required to deny relief if the

03:39  11  Court believes under 6340 that there is not a probability of

03:39  12  future harm?  No, it's not a jurisdictional requirement.

03:39  13  But again, this is all very discretionary.  The Court had a

03:39  14  ton of discretion.

03:40  15          I want to go over a few things, some of the cases

03:40  16  that were cited.  There's one case that was cited today, and

03:40  17  Mr. Brown did provide me with a copy of it.  It wasn't in

03:40  18  the brief, but I looked over it during the recess.  It's the

03:40  19  Rodriguez case and then the case that was given to me -- I'm

03:40  20  probably butchering the name -- Dauterive versus Wang.

03:40  21          These cases simply stand for the proposition that

03:40  22  if there's -- that a showing of probability of future harm

03:40  23  is not a statutory requirement for granting relief.  So if

03:40  24  the family law court was to say, petitioner, you have not

03:40  25  shown a probability of future harm.  That's a required

03:40    1    element of me granting relief.  Therefore, your petition is
03:40    2    denied because it's a required element --
03:40    3              THE COURT:  That would be error.
03:40    4              MR. KAPLAN:  -- that would be an abuse of
03:40    5    discretion and an error because the Court committed error by
03:41    6    believing falsely that it's a required showing.  However,
03:41    7    that doesn't vitiate the Court's discretion to say I still
03:41    8    can consider this.  In fact, I must consider it.  And I
03:41    9    think in my discretion, since there's no probability of
03:41   10    future harm, I'm going to deny the relief and deny the
03:41   11    petition for a restraining order even if there has been a
03:41   12    showing of prior abuse.
03:41   13              So all these cases that were cited by Mr. Brown
03:41   14    show that it's simply not a required element, and you can't
03:41   15    deny a petition as a matter of law if there's not a showing
03:41   16    or evidence of a probability of future harm.
03:41   17              Real briefly -- and this was in the papers -- the
03:41   18    Gonzalez case is instructive in terms of why under 6340 the
03:41   19    Court has discretion to deny relief if it finds no
03:42   20    probability of future harm.  I'm going to quote some of the
03:42   21    language here.  So first, the Court states:  "Thus, if
03:42   22    Gonzalez proved 'to the satisfaction of the Court' that
03:42   23    Olivia engaged in this alleged conduct, the trial court
03:42   24    would have been authorized under Section 6300."  And then in
03:42   25    parentheticals, the Court quotes:  "(An order may" -- and

03:42    1    the Court italicized and put emphasis on the word "may --

03:42    2    ("An order may be issued") end quote, end parentheticals "to

03:42    3    issue the requested order," and it says 6300, italics added.

03:42    4    The trial court specifically found Olivia made the

03:42    5    defamatory Facebook account and other, quote, "postings not

03:42    6    specifically alleged in Gonzalez's Restraining Order request

03:42    7    but that were apparently proven at trial."

03:43    8        So in this case, the appellate court is saying,

03:43    9    all right, there was a showing of past abuse.  The Court

03:43   10    then went on to say, quote:  "However, the fact that the

03:43   11    trial court would have been authorized under Section 6300 to

03:43   12    issue a protective order based on this conduct does not mean

03:43   13    the trial court abused its discretion by declining to issue

03:43   14    the order."

03:43   15        So again, the appellate court is saying that --

03:43   16        THE COURT:  Sir, I think I have your position at

03:43   17    this point.

03:43   18        MR. KAPLAN:  Okay.  One last comment I do want to

03:43   19    make on this is Mr. Brown made a comment that 6340 is

03:43   20    designed or is intended to only apply if there's been a

03:43   21    finding that under 6300 that there's no abuse, but then the

03:43   22    Court could grant relief based on a finding of future harm.

03:43   23    That's turning the statutory scheme on its head.

03:43   24        Based on the authority that Mr. Brown has cited,

03:43   25    6300 says that a required element of granting the relief is

03:44    1    this past abuse.  So if the Court does find that there
03:44    2    hasn't been past abuse, that's it.  It's over.  The Court
03:44    3    need not engage in some superfluous exercise and look at the
03:44    4    probability of future harm.  In other words, the Court
03:44    5    cannot then grant relief if there's not been the threshold
03:44    6    showing.  So really that's turning the statute on its head.
03:44    7           THE COURT:  It's not what 6340 says.
03:44    8           MR. KAPLAN:  Correct.  That's correct.
03:44    9           THE COURT:  Right.  Okay.
03:44   10           MR. KAPLAN:  Okay.  All right.  Thank you, unless
03:44   11    Your Honor has any further questions.
03:44   12           THE COURT:  No, thank you.
03:44   13           Mr. Brown.
03:44   14           MR. BROWN:  Yes, thank you.
03:44   15           THE COURT:  Briefly.  Sir, you've told me that if
03:44   16    there was nonconsensual abuse that the issuance of the order
03:44   17    was mandatory.  Where is that supported in the statutory
03:44   18    language?
03:44   19           MR. BROWN:  It's supported in the Rodriguez
03:44   20    decision.
03:44   21           THE COURT:  Where is it supported in the statutory
03:44   22    language?
03:44   23           MR. BROWN:  The statutory language does speak a
03:44   24    great deal about what the Court has discretion to do.  But
03:45   25    the Court of Appeals, the Second District, which governed

03:45  1  the proceedings before Judge Gould-Saltman, specifically

03:45  2  found before this proceeding not once, but twice -- or at

03:45  3  least in the Rodriguez case that if a prior act of abuse has

03:45  4  been shown, the order must issue.  That's what the Court

03:45  5  says.  That's what --

03:45  6      THE COURT:  Sir, you're relying on Rodriguez, but

03:45  7  not direct language of the statute; is that correct?

03:45  8      MR. BROWN:  I am relying on --

03:45  9      THE COURT:  Sir, you're relying on Rodriguez and

03:45 10  not direct language of the statute; is that correct?

03:45 11      MR. BROWN:  I believe that --

03:45 12      THE COURT:  Is that correct?

03:45 13      MR. BROWN:  It is --

03:45 14      THE COURT:  It's either yes or no.  Show me the

03:45 15  language in the statute if it's there.  The statute seems to

03:45 16  say "may."  You're telling me Rodriguez comes to a different

03:45 17  conclusion.  That's fine.  I just want to understand that

03:45 18  you're relying on Rodriguez and not direct language of the

03:45 19  statute.

03:46 20      MR. BROWN:  That's correct, Your Honor.

03:46 21      THE COURT:  Okay.

03:46 22      MR. BROWN:  But there is some statutory language

03:46 23  that I do want to clarify here, and that's in 6340, because

03:46 24  if you do read 6340, it says:  "The Court shall consider

03:46 25  whether failure to make any of these orders may jeopardize

03:46   1   the safety of the petitioner," et cetera.  So what -- again,

03:46   2   as the trial court did in this case, she made her findings

03:46   3   finding no past acts of abuse and spent a great deal of time

03:46   4   reviewing the evidence and making her findings with respect

03:46   5   to that, and then, and only then, turned to this, because as

03:46   6   the statute points out when the Court is not making any of

03:46   7   the orders, then it should still consider that.

03:46   8           I'd also like to address this discussion of the

03:47   9   Gonzalez case.  There, while the decision is not a model of

03:47   10  clarity, if you read it carefully, it says that the Court

03:47   11  found that there were acts that did not rise to the level of

03:47   12  acts of abuse.  It was denying the petition because it was

03:47   13  finding that these Facebook postings which were made which

03:47   14  were the only things that you were found proven by the

03:47   15  petitioner did not rise to acts of abuse.  It then went on

03:47   16  to consider 6340.

03:47   17          Gonzalez does not stand for the proposition that

03:47   18  independently the Court may find acts of abuse and then in

03:47   19  its discretion not issue a restraining order.  That's not

03:47   20  what that case means.  And in Rodriguez, that case means

03:47   21  that if there are acts of abuse you must issue the order.

03:48   22  And that's how the case was tried before Judge Gould-Saltman

03:48   23  by the lawyers and judge who applied the law in these cases

03:48   24  on a daily basis.  Thank you.

03:48   25          THE COURT:  Thank you.  The matter will stand

03:48   1   submitted.

03:48   2           (Whereupon, the proceedings were concluded.)

03:48   3                     *    *    *

03:48   4

03:48   5

03:48   6

03:48   7

03:48   8

03:48   9

03:48  10

03:48  11

03:48  12

03:48  13

03:48  14

03:48  15

03:48  16

03:48  17

03:48  18

03:48  19

03:48  20

03:48  21

03:48  22

03:48  23

03:48  24

03:48  25

**CERTIFICATE**

  I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  November 23, 2022

     /s/   Sharon A. Seffens  11/23/22
     _____
     SHARON A. SEFFENS, U.S. COURT REPORTER