# EXHIBIT 3

Electronically Received 10/06/2021 01:31 PM

**JASSY VICK CAROLAN** LLP
JEAN-PAUL JASSY, Cal. Bar No. 205513
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:    310-870-7048
Facsimile:    310-870-7010

Attorneys for Real Parties In Interest and
Cross-Petitioners VOX MEDIA, LLC and
SEAN O'KANE

**FILED**
Superior Court of California
County of Los Angeles

**10/18/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Deputy
    N. DiGiambattista

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| FORD MOTOR COMPANY, a Corporation; FORD SMART MOBILITY LLC, a Corporation; | **Case No. 20STCP00921** |
| Plaintiffs, | Assigned to Hon. Mary H. Strobel |
| vs. | |
| CITY OF LOS ANGELES; and DOES 1 through 20, inclusive, | ~~[PROPOSED]~~ **ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS** |
| Defendants, | |
| VOX MEDIA, INC., a Corporation d/b/a The Verge; SEAN O'KANE, an individual; and DOES 21 through 40, | |
| Real Parties in Interest | |
| VOX MEDIA, LLC, a Delaware Limited Liability Company; SEAN O'KANE, an individual, | |
| Cross-Petitioners, | |
| vs. | |
| CITY OF LOS ANGELES; and DOES 1 through 20, inclusive, | |
| Cross-Respondents, | |
| FORD MOTOR COMPANY, a Corporation; FORD SMART MOBILITY LLC, a Corporation, | |
| Real Parties in Interest. | |

The merits of Real Parties in Interest and Cross-Petitioners Vox Media, LLC and Sean O'Kane's (together, "Vox Media's") Motion for Attorneys' Fees and Costs came on for hearing on September 30, 2021, in the above-referenced Court, the Honorable Mary H. Strobel, presiding. Jean-Paul Jassy of Jassy Vick Carolan LLP appeared for Vox Media.  James K. Holder and Spencer P. Hugret of Gordon Rees Scully Mansukhani, LLP, appeared for Petitioners and Real Parties in Interest Ford Motor Company and Ford Smart Mobility LLC (collectively, "Ford").  Linda Nguyen appeared for Defendant and Cross-Respondent City of Los Angeles (the "City").

After considering the papers and argument, the Court enters an Order as follows:

- The Court GRANTS Vox Media's Motion for Fees and Costs.  A true and correct copy of the Court's minute order, is attached as **Exhibit A**, and is incorporated by reference as if set forth here in full.

- As reflected in Exhibit A, **the City of Los Angeles, Ford Motor Company and Ford Smart Mobility LLC are jointly and severally responsible for paying $166,696 in fees and $1,612.10 in costs within sixty (60) days.**

IT IS SO ORDERED.

Dated: 10/18/2021   _____

_____
The Honorable Mary H. Strobel
JUDGE OF THE SUPERIOR COURT

Respectfully submitted by:

JASSY VICK CAROLAN LLP

By _____   Dated: October 1, 2021
    Jean-Paul Jassy
Attorneys for Real Parties In Interest and
Cross -Petitioners Vox Media, LLC and Sean
O'Kane

-1-

[PROPOSED] ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 82

| | |
|---|---|
| **20STCP00921** | September 30, 2021 |
| **FORD MOTOR COMPANY,  et al. vs CITY OF LOS ANGELES, et al** | 1:30 PM |

| | |
|---|---|
| Judge: Honorable Mary H. Strobel | CSR: Cindy Cameron/CSR 10315 |
| Judicial Assistant: N DiGiambattista | ERM: None |
| Courtroom Assistant: R Monterroso | Deputy Sheriff: None |

APPEARANCES:

For Petitioner(s): JAMES K. HOLDER (Telephonic) and Spencer Hugret (X)

For Respondent(s): Jean-Paul Jassy (X) (Telephonic); Linda Ngoc Nguyen (X) (Telephonic)

**NATURE OF PROCEEDINGS:** MOTION OF CROSS-COMPLAINANT, VOX MEDIA, INC. FOR ATTORNEYS' FEES

Matter comes on for hearing and is argued.
.
The court adopts its tentative ruling as the order of the court and is set forth in this minute order.

Real Parties in Interest Vox Media, LLC and Sean O'Kane ("Vox") move for an award of attorney's fees in the total amount of $213,007, including a 1.25 multiplier, against Petitioners and Real Parties in Interest Ford Motor Company and Ford Smart Mobility, LLC ("Ford") and Defendant and Cross-Respondent ("City"). Vox also requests costs of $1,612.10.

Judicial Notice

City's RJN Exhibits I, J, S, T – Granted. (Evid. Code § 452(d), § 451(a).)

City's RJN Exhibits K, L – Denied.

Vox's Reply RJN Exhibit 5 – Granted. (Evid. Code § 452(d), § 451(a).)

Ford's Evidentiary Objections

Declaration of John-Paul Jassy

(1) Sustained.
(2) Overruled.
(3) Overruled.
(4) Overruled.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                                    September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                              1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel              CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista          ERM: None
Courtroom Assistant: R Monterroso             Deputy Sheriff: None

(5) Overruled.
(6) Sustained.
(7) Sustained.
(8) Sustained.

Declaration of Alonzo Wickers IV

(1) Overruled.
(2) Overruled.
(3) Overruled.

Vox's Evidentiary Objections

Declaration of Linda N. Nguyen

(1) Overruled.
(2) Sustained.
(3) Overruled.
(4) Overruled.
(5) Sustained.
(6) Overruled.

Declaration of Spencer Hugret

(7) Sustained as to "Instead, Vox filed a cross-petition which appeared to be entirely redundant with the reverse-CPRA action." Overruled as to remainder.
(8) Sustained as to "Instead, Vox proceeded to drive up litigation costs by serving lengthy discovery requests far exceeding the scope of the case and clearly designed to harass." Overruled as to remainder.
(9) Sustained.
(10) Overruled.

Ford's Objection to Supplement Declaration of John-Paul Jassy

(1) Overruled. The submission of evidence about the fees incurred for the reply is proper because such evidence was not available when the motion was filed, and Vox alerted City and Ford that it would submit such evidence in reply. (See Reply Jassy Decl. ¶ 6 and Mot. 1, fn. 1.) The

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 82

| | |
|---|---|
| 20STCP00921 | September 30, 2021 |
| FORD MOTOR COMPANY, et al. vs CITY OF LOS ANGELES, et al | 1:30 PM |

| | |
|---|---|
| Judge: Honorable Mary H. Strobel | CSR: Cindy Cameron/CSR 10315 |
| Judicial Assistant: N DiGiambattista | ERM: None |
| Courtroom Assistant: R Monterroso | Deputy Sheriff: None |

remainder of Jassy's reply declaration is proper rebuttal to evidence and arguments submitted with the opposition briefs. (See Jay v. Mahaffey (2013) 218 Cal.App.4th 1522, 1537-1538 ["the trial court had discretion whether to accept new evidence with the reply papers"].) City and Ford may respond orally to this evidence at the hearing.

Procedural History

On March 4, 2020, Petitioners filed a verified complaint for declaratory and injunctive relief and petition for writ of mandate. The first page stated, "Application for Injunctive Relief to be Filed Forthwith." Petitioners did not subsequently file an application for a preliminary injunction against City's disclosure of the Requested Records.

On April 10, 2020, City filed an answer.

On July 23, 2020, Vox filed an answer.

On July 24, 2020, Vox filed a cross-petition for writ of mandate.

On August 18, 2020, Petitioners filed an answer to the cross-petition.

On August 24, 2020, City filed an answer to the cross-petition.

The parties conducted discovery in this action.

The court received (1) City's opening brief in opposition to the petition, non-opposition to the cross-petition, and supporting evidence; (2) Petitioners' opening brief and supporting evidence; (3) Vox's opening brief and supporting evidence; (4) Vox's evidentiary objections; (5) Vox's reply; and (6) Petitioners' reply. City did not file a reply.

On May 4, 2021, after a hearing, the court granted Vox's cross-petition for writ of mandate and denied Ford's petition for writ of mandate. The court's May 4, 2021, ruling provided a lengthy discussion of the factual background of this case and of the court's reasons for denying Ford's petition and granting Vox's cross-petition. That discussion is not repeated here but is incorporated by reference.

On July 1, 2021, Vox filed the instant motion for fees and costs. The court has received Ford's opposition, City's opposition, and Vox's consolidated reply.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                                September 30, 2021
**FORD MOTOR COMPANY, et al. vs CITY OF LOS**                          1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel          CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista      ERM: None
Courtroom Assistant: R Monterroso         Deputy Sheriff: None

Analysis

An Award of Fees and Costs Against City is Mandatory

In a CPRA action, "the court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section." (Gov. Code § 6259(d).) Under the CPRA, an award of attorney's fees to a prevailing plaintiff is mandatory. (Fontana Police Dept. v. Villegas-Banuelos (1999) 74 Cal.App.4th 1249, 1252.)

Here, Vox prevailed in its cross-petition as it obtained a court order directing City to provide all of the public records sought pursuant to Vox's CPRA Request. City "does not dispute that Vox Media is the prevailing party entitled to reasonable fees." (City Oppo. 4.)

Vox does not contend that it is entitled to fees against Ford pursuant to Government Code section 6259(d). (Reply 1, fn. 2.) Accordingly, the court need not discuss Ford's contentions concerning section 6259(d). (Ford Oppo. 8-9.)

CCP Section 1021.5

Vox contends that it is also entitled to an award of fees against City and Ford pursuant to CCP section 1021.5. (Mot. 7-9.)

An award of attorney fees is appropriate "to a successful party … in any action which has resulted in the enforcement of an important right affecting the public interest." (CCP § 1021.5.) The three factors necessary to support an award of attorney fees to a successful party pursuant to section 1021.5 are: "(1) [the] action has resulted in the enforcement of an important right affecting the public interest,' (2) a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." (In re Conservatorship of Whitley (2010) 50 Cal.4th 1206, 1214.)

The necessity and financial burden requirement "'examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys.'" (Lyons v. Chinese Hosp. Ass'n (2006) 136 Cal.App.4th 1331, 1348.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                                    September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                         1:30 PM
**ANGELES, et al**


Judge: Honorable Mary H. Strobel            CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista        ERM: None
Courtroom Assistant: R Monterroso           Deputy Sheriff: None

Successful Party

For purposes of section 1021.5, "[t]he term `successful party' ...means the party to litigation that achieves its objectives." (Graham v. Daimler Chrysler Corp. (2004) 34 Cal.4th at 553, 571.)

Here, Vox prevailed in its cross-petition as it obtained a court order directing City to provide all of the public records sought pursuant to Vox's CPRA Request. Furthermore, Vox also filed briefing against Ford's petition that sought to enjoin disclosure, which the court denied in full. Vox is the successful party under CCP section 1021.5.

Ford makes no persuasive argument to the contrary.

Enforcement of Important Right Affecting the Public Interest

"The first prong of the section 1021.5 test … requires a determination of 'the 'strength' or 'societal importance' of the right involved. That right may be constitutional or statutory, but it must be 'an important right affecting the public interest'—it 'cannot involve trivial or peripheral public policies.' Where, as here, the right vindicated is conferred by statute, 'courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals.'" (Roybal v. Governing Bd. of Salinas City Elementary School Dist. (2008) 159 Cal.App.4th 1143, 1148.)

Article I, Section 3(b) of the Constitution affirms that "[t]he people have the right of access to information concerning the conduct of the people's business." By prevailing on the petition and cross-petition, Vox enforced important rights affecting the public interest in the CPRA and Article I, section 3 (b). This requirement of section 1021.5 is met.

Significant Public Benefit Conferred on General Public

To obtain an award under Code of Civil Procedure section 1021.5, a party must also show that its action conferred a significant public benefit on the general public or on a large class of persons. A significant benefit may be pecuniary or non-pecuniary and need not be concrete to support a fee award. (Braude v. Automobile Club of Southern California (1986) 178 Cal.App.3d 994, 1013.) "The trial court determines the significance of the benefit, and the group receiving it, 'from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case. The courts are not required to narrowly construe the significant benefit factor. 'The 'extent of the public benefit need not be great to justify an attorney fee[s]

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

| | |
|---|---|
| **20STCP00921** | September 30, 2021 |
| **FORD MOTOR COMPANY,  et al. vs CITY OF LOS ANGELES, et al** | 1:30 PM |

| | |
|---|---|
| Judge: Honorable Mary H. Strobel | CSR: Cindy Cameron/CSR 10315 |
| Judicial Assistant: N DiGiambattista | ERM: None |
| Courtroom Assistant: R Monterroso | Deputy Sheriff: None |

award.'" (Indio Police Command Unit Association v. City of Indio (2014) 230 Cal.App.4th 521, 543.)

Vox contends that "by securing access to public records related to a matter of 'strong' and 'clear' public interest, Order at 16, Vox Media and its counsel conferred an important public benefit independently justifying an award of attorneys' fees against both Ford and the City." (Mot. 9.) Vox cites to the court's ruling on the writ petition, in which the court balanced the public interests for and against public disclosure of unredacted versions of the five withheld agreements. (See Gov. Code § 6255 and Evid. Code § 1060.) In relevant part, the court reasoned as follows:

While Ford fails to show a public interest in non-disclosure of the withheld information, Real Parties show a strong public interest in disclosure. (RP OB 8-9.) Ford has entered into multiple contracts with LAPD, a public entity. Public funds are spent on LAPD's performance of its obligations under these contracts. The public has a clear interest in understanding how LAPD works with Ford and where/how public funds are being spent. Weighing the interests involved, the court concludes that nondisclosure of the withheld information in the five Agreements would "work injustice" and be against the interests of justice. (Minute Order dated 5/4/21 at 16.)

In this ruling, the court was assessing the public interest in disclosure of all five agreements withheld by City, including one agreement that had been entirely withheld. The court's analysis was based on the redacted versions of four of the agreements. However, the court also considered Ford's and City's declarations regarding the business relationship between LAPD and Ford, and the court made reasonable inferences about the nature of the withheld information. For the same reasons stated in the court's May 4 ruling, Vox's cross-petition and opposition to Ford's petition conferred a substantial benefit on the general public by obtaining public disclosure – over Ford's strong objection – of allegedly confidential agreements between LAPD and Ford that evidence "where/how public funds are being spent." The public benefit conferred by the cross-petition applies to both the redacted and unredacted agreements.

In opposition, Ford contends that "[e]ven a casual inspection of the five Ford documents produced as a result of the reverse-CPRA action demonstrate that they are of de minimis public value." (Ford Oppo. 12.) Ford contends that "[t]he five documents at issue merely contain certain terminology reflecting the manner in which Ford enters into certain types of agreements and provides virtually nothing of substance to the public." (Ibid.) These arguments are conclusory and unpersuasive. Ford has not submitted copies of the full, unredacted versions of the five agreements with its opposition. Nor has Ford explained how redacted "terminology" from those

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                                    September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                       1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel            CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista        ERM: None
Courtroom Assistant: R Monterroso           Deputy Sheriff: None

agreements could change the court's finding that there was a "strong" public interest in disclosure.

Ford contends that "in the four months since Vox obtained unredacted copies of the five disputed documents, Mr. O'Kane has produced over 70 articles but has not authored a single article on the five documents at issue in this litigation (or even more broadly upon Ford's relationship with the LAPD)." (Ford Oppo. 12.) This argument is not well taken. City and Ford delayed disclosure of the public records for more than two years from when the Request was made in April 2019. The fact O'Kane may not have yet published a news article based on the records provides no material information about the benefit conferred on the public. "More importantly, the public benefit from disclosure is not the number of articles written using the disclosed records. The public benefit is the scrutiny of the records by the public. Even when a particular disclosure does not reveal newsworthy wrongdoing, the requirement to disclose reinforces the agency's awareness that its actions are open to scrutiny." (City of Los Angeles v. Metropolitan Water Dist. of Southern California (2019) 42 Cal.App.5th 290, 306.) Here, Ford claimed that the five agreements were confidential, and City did not release the documents. Obtaining disclosure of these public records under the CPRA – in the face of Ford's efforts to maintain secrecy and the ambivalence of City – conferred a substantial benefit on the public.

Ford's reliance on Burgess v. Coronado Unified School Dist. (2020) 59 Cal.App.5th 1, 10 is misplaced. That case involved disclosure of "publicly available court filings and materials … at a public hearing" related to a public employee who had been subject of "unsubstantiated molestation allegations." (Id. at 3.) "[The party seeking disclosure] sued the District precisely because both sets of records revealed almost nothing regarding the underlying allegations or the District's actions in response. In other words, there was no substantive benefit." (Id. at 11.) Here, in contrast, Vox obtained disclosure of five confidential agreements that directly relate to the expenditure of public funds in the contractual relationship between LAPD and Ford. The documents were not publicly available and were not de minimis in substance, as admitted by Ford in its declarations opposing disclosure. Furthermore, Ford opposed disclosure of the unredacted agreements and filed litigation to maintain secrecy of the public records. These circumstances are in no way analogous to Burgess.

Vox shows that its cross-petition and opposition to Ford's petition conferred a substantial public benefit on the general public.

Necessity of Private Enforcement

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 82

| | |
|---|---|
| 20STCP00921 | September 30, 2021 |
| FORD MOTOR COMPANY, et al. vs CITY OF LOS ANGELES, et al | 1:30 PM |

| | |
|---|---|
| Judge: Honorable Mary H. Strobel | CSR: Cindy Cameron/CSR 10315 |
| Judicial Assistant: N DiGiambattista | ERM: None |
| Courtroom Assistant: R Monterroso | Deputy Sheriff: None |

Vox asserts that "the City chose to preserve an unlawful status quo by deferring to Ford's wishes for over a year instead of following the CPRA's requirements," even though City's counsel expressed that they "d[id] not see an applicable exemption/reason to withhold public disclosure." (Mot. 3-4, discussing Marken v. Santa Monica-Malibu Unif. Sch. Dist. (2012) 202 Cal.App.4th 1250, 1268 & n.14.)

The court agrees that City's long, unexplained delay in producing public records – despite City's own determination that it had a statutory duty to produce the records – supports a finding of necessity of private enforcement. To facilitate the public's access to this information, the CPRA mandates, in part, that: "[E]ach state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available…." (Gov. Code § 6253(b) [emphasis added].) If an agency determines that it is required by law to release public records, the agency should release the records "accordance with the timetable set forth in section 6253 unless immediately enjoined by the superior court." (Marken, supra, 202 Cal.App.4th at 1268, fn. 14.) Deputy City Attorney Linda Nguyen determined early on that there were no applicable exemptions that would prevent disclosure of the agreements, but nonetheless the City withheld the agreements out of concern that City was bound by non-disclosure agreements with Ford. (Minute Order dated 5/4/21 at 2-3; Nguyen Decl. filed 3/19/21 at ¶¶ 3-6.) City's delay in this case cannot reasonably be considered "prompt" disclosure consistent with section 6253(b). (See Minute Order dated 5/4/21 at 15.) Neither City nor Ford released even redacted versions of four of the five agreements until January 2021, after the cross-petition was filed. (Id. at 3-4.) While City did file an answer to Ford's petition, City's conduct strongly suggested continued deference to the contractual relationship with Ford. City's decision to withhold the public records for more than two years, in deference to Ford, shows that private enforcement was necessary.

Ford argues, unpersuasively, that City's deference to Ford is irrelevant because "Vox also never sought or obtained any interim order compelling early production of the disputed records at any time prior to the Court's May 4, 2021 ruling on Ford's reverse-CPRA action." (Ford Oppo. 15-16, citing Register of Actions.) Vox's decision to preserve its argument and legal expenditures for the writ hearing and not to pursue an interim mandatory injunction, do not prove that City would adequately represent Vox's interests in disclosure or that private enforcement was unnecessary.

In analyzing the necessity of private enforcement, the court should also consider whether Vox's "participation was material to the result, i.e., that it proffered significant factual and legal theories, and produced substantial, material evidence, that were not merely duplicative of or

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                           September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                 1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel              CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista          ERM: None
Courtroom Assistant: R Monterroso            Deputy Sheriff: None

cumulative to what was advanced by the governmental agency." (San Diego Municipal Employees Assn. v. City of San Diego (2016) 244 Cal.App.4th 906, 913.)

The parties conducted discovery in this action. On January 26, 2021, Vox's attorney sent a letter to Ford and City stating that their discovery responses showed they could, at the least, provide redacted versions of the withheld agreements at issue in this writ petition. (Jassy Decl. ¶ 11, Exh. 3.) On January 29, 2021, Ford disclosed to Vox redacted copies of four of the five agreements at issue. (See Minute Order dated May 4, 2021 at 3; see also Hugret Decl. ¶ 5.) Based on this timeline and attorney Jassy's declaration, it is reasonable to infer that Vox's cross-petition, discovery, and legal correspondence motivated Ford to produce redacted versions of the agreements. (See Jassy Decl. ¶ 11.) As noted in the court's ruling on the writ petition, Ford's previous offers that Vox could review redacted agreements confidentially are irrelevant because they would not result in public disclosure of the records. The purpose of the CPRA is to ensure public access to the records, not private access. (See Minute Order dated 5/4/21 at 18, fn. 2; see also Hugret Decl ¶¶ 3-4.) There is no reason to believe Ford would have produced the redacted agreements in January 2021 if Vox had not filed its cross-petition and pursued its discovery.

As argued by Ford, City ultimately filed a short, 6-page opposition brief to Ford's writ briefing. City's evidence and representations about the contents of the withheld agreements were helpful to the court's analysis. (See Ford Oppo. 15 and fn. 10; see Minute Order dated 5/4/21 at 6-16.) However, for several reasons, Vox's opposition was not "merely duplicative" or cumulative to what was advanced by City. City's legal argument consisted of about two pages of analysis. (City Oppo. filed 3/19/21 at 5-6.) City primarily discussed the public interest in disclosure under Government Code section 6255. (Ibid.) In its writ opposition, City did not analyze the declarations by Ford asserting public and/or private interests in non-disclosure. Nor did City analyze in any detail the other elements of Ford's trade secret claim, including whether the agreements contained trade secret information or whether Ford had shown reasonable steps to protect the information from disclosure. (See Minute Order dated 5/4/21 at 8-14.) Vox also raised some arguments that, while not dispositive, supported its position in a reverse-CPRA action that the withheld agreements were not exempt from disclosure.

Finally, Ford's reliance on Marken, supra is misplaced. (See Ford Oppo. 14:11-18.) The quoted language "must be construed in context: the Marken court was referring to an intervener's right to recover fees under the PRA (Gov. Code, § 6259, subd. (d)) in a reverse-PRA action. The PRA does not permit such an award…. Moreover, 'Marken's statement about attorney fees was part of the court's general discussion of the viability of reverse-CPRA actions and so was dicta; no attorney fees were sought in that appeal.'" (Carlsbad Police Officers Association v. City of

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                              September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                          1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel            CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista        ERM: None
Courtroom Assistant: R Monterroso           Deputy Sheriff: None

Carlsbad (2020) 49 Cal.App.5th 135, 147, fn. 9.)

For all these reasons, the court finds a necessity of private enforcement for Vox's cross-petition,
its merits briefing, and all other legal tasks, including discovery and oral argument.

Financial Burden

With respect to financial burden, "[a]n award on the 'private attorney general' theory is
appropriate when the cost of the claimant's legal victory transcends his personal interest, that is,
when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to
his individual stake in the matter.'" (Woodland Hills Residents' Ass'n, Inc. (1979) 23 Cal.3d
917, 941.) A litigant's nonpecuniary interests do not affect its eligibility for section 1021.5 fees.
(In re Conservatorship of Whitley (2010) 50 Cal.4th 1206, 1217.) However, "'the absence of a
monetary award, or of precise amounts attached to financial incentives, does not prevent a court
from determining whether the plaintiff's financial burden in pursuing the lawsuit is out of
proportion to his individual stake in the matter.' [Citation.] No abuse in awarding fees can be
found where the facts show 'that the plaintiff's 'future money advantage ... is speculative'
[citation], or that the plaintiff's' 'pecuniary benefit will be indirect and uncertain.'" (Sweetwater
Union High School Dist. v. Julian Union Elementary School Dist. (2019) 36 Cal.App.5th 970,
992; see also Galante Vineyards v. Monterey Peninsula Water Management Dist. (1997) 60
Cal.App.4th 1109, 1128.) "It is the party seeking private attorney general fees who 'bears the
burden of establishing that its litigation costs transcend its personal interest.'" (Norberg v.
California Coastal Commission (2013) 221 Cal.App.4th 535, 545-56.)

The court concludes that any financial benefit to Vox from the requested records is speculative.
As Ford points out, Vox has yet to cite the records in a published article, but they are available to
the public. (Ford Oppo. 12.) Vox is not a competitor of Ford's, but rather a private media
company. There is no evidence in the record, or any reason to believe, that Vox would be able to
obtain a substantial monetary benefit from publications about the withheld records.

Contrary to Ford's suggestion, the fact Vox is a "for-profit mass media enterprise" does not
preclude an award of fees under CCP section 1021.5. (Ford Oppo. 16.) The Court of Appeal has
approved attorney's fees under section 1021.5 for media companies in reverse CPRA actions.
(See e.g. City of Los Angeles v. Metropolitan Water Dist. of Southern California (2019) 42
Cal.App.5th 290.)

Vox satisfies the financial burden prong of section 1021.5. Because all requirements of section

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

| | |
|---|---|
| **20STCP00921** | September 30, 2021 |
| **FORD MOTOR COMPANY,  et al. vs CITY OF LOS** | 1:30 PM |
| **ANGELES, et al** | |

| | |
|---|---|
| Judge: Honorable Mary H. Strobel | CSR: Cindy Cameron/CSR 10315 |
| Judicial Assistant: N DiGiambattista | ERM: None |
| Courtroom Assistant: R Monterroso | Deputy Sheriff: None |

1021.5 are met, the court will grant fees under that statute against Vox and City.

Reasonable Attorney's Fees

"The determination of what constitutes a reasonable fee generally 'begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate….' [T]he lodestar is the basic fee for comparable legal services in the community…." (Graciano v. Robinson Ford Sales, Inc. (2006) 144 Cal.App.4th 140, 154.)

Reasonable Hourly Rate

Generally, the reasonable hourly rate used for the lodestar calculation is the rate prevailing in the community for similar work. (Center for Biological Diversity v. County of San Bernardino, (2010) 188 Cal.App.4th 603, 616.) In making its calculation, the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases. (569 East County Boulevard LLC v. Backcountry Against the Dump, Inc., (2016) 6 Cal.App.5th 426, 437.)

Vox requests "discounted" hourly rates of $425/hour for attorneys Jean-Paul Jassy and Karlene Goller, and $350/hour for associate Elizabeth Baldridge for a two-month period of case assessment in March and April 2020. Vox requests "non-discounted" hourly rates of $650/hour for Jassy and Goller, and $415/hour for Baldridge for the remainder of the litigation. (Jassy Decl. ¶ 6 and Exh. 2.)

Jassy, who has practiced law since 1999, litigates media and First Amendment cases. He has litigated numerous CPRA cases, including the following that have resulted in published decisions: Pasadena Police Officers Ass'n v. City of Pasadena, 22 Cal. App. 5th 147 (2018); Sander v. State Bar of Cal., 58 Cal. 4th 300 (2013); Copley Press, Inc. v. Superior Court, 39 Cal. 4th 1272 (2006); and Rackauckas v. Superior Court, 104 Cal. App. 4th 169 (2002). (Jassy Decl. ¶¶ 3, 7.) "Based on [his] experience at various firms, [his] review of CPRA fees motions by … colleagues at other firms in Southern California, [his] knowledge of other attorneys practicing in the First Amendment law and public right of access arena, and [his] general knowledge of billing rates in the Southern California area, [Jassy is] informed and believe[s] that Ms. Goller's, Ms. Baldridge's and [his] billing rates on this matter were and are, at all times, at or below the average billing rates for equally-experienced attorneys in the field of First Amendment, media

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

**20STCP00921**                                          September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                    1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel              CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista          ERM: None
Courtroom Assistant: R Monterroso             Deputy Sheriff: None

and public records litigation in our community." (Jassy Decl. ¶ 7; see also Wickers Decl. ¶¶ 3-4 [same].)

Goller graduated law school in 1986 and is the former Los Angeles Times Vice President, Legal and Deputy General Counsel, where she served as the sole First Amendment and content counsel for the Los Angeles Times Media Group for more than 20 years. Goller has experience assisting clients in accessing public records. (Jassy Decl. ¶ 4.)

Baldridge graduated from UC Berkeley law school in 2016 and completed a federal clerkship. She has experience litigating several CPRA cases. (Id. ¶ 5.)

In opposition, City submits a written decision of Department 85 of Los Angeles Superior Court (Judge James Chalfant) from April 2016 finding that $445/hour was a reasonable hourly rate for Jassy to provide CPRA legal services in the Los Angeles area during the years 2014-2015. (City Oppo. 7:15-17; Nguyen Decl. ¶ 13, Exh. I at 11 and Exh. J.) In reply, Vox submits a written decision of Department 86 (Judge Mitchell Beckloff) from February 2019 finding that hourly rates of $575/hour and $395/hour, for Jassy and Baldridge respectively, were reasonable and "consistent with prevailing market rates" for a CPRA action in Los Angeles. (Reply Jassy Decl. Exh. 5 at 3-4.) Judge Beckloff denied a multiplier and described the case as "a fairly standard CPRA action" that "did not involve any unique, complex legal questions related to a CPRA action." (Id. at 6.) Judge Beckloff assessed the reasonableness of hourly rates for legal work performed in 2017 and 2018. (Id. at 7.)

Based entirely on the April 2016 order of Judge Chalfant, City contends that Vox's request for a $650/hourly rate for Jassy "represents a 46 percent increase from his 2014- 2015 Court approved billing rate." (City Oppo. 7.) City contends that "[i]t is unreasonable that a Los Angeles area attorney's billing rate would increase by 46 percent when the mean annual wages for attorneys in the same area increased by only 7.8 percent for the same six year period, i.e., 2014-2021." (Ibid., citing RJN Exh. K, L.) The court denies City's request for judicial notice of Exhibits K and L. City does not submit sufficient foundation for the court to consider Exhibits K and L as reliable evidence of the increase in mean annual wages for Los Angeles attorneys. Moreover, even if considered, these exhibits do not provide meaningful information about the reasonable increases in hourly rates for an attorney of similar experience and qualifications as Jassy for the period of 2014 to 2020-2021. City's analysis also omits any reference to Judge Beckloff's fee order from February 2019. While this court is not bound to follow fee determinations of Judge Chalfant or Judge Beckloff, City's argument for a $490 hourly rate in 2020-2021 is undermined because City fails to address a court order awarding substantially more than $490 in February 2019. (City

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

| | |
|---|---|
| **20STCP00921** | September 30, 2021 |
| **FORD MOTOR COMPANY,  et al. vs CITY OF LOS ANGELES, et al** | 1:30 PM |

Judge: Honorable Mary H. Strobel    CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista    ERM: None
Courtroom Assistant: R Monterroso    Deputy Sheriff: None

Oppo. 7.)

Ford contends that Vox's rates – both the initial "discounted" rates and the subsequent "non-discounted" rates – are unreasonable. Ford contends that "absent any evidence establishing the market rate, this Court should reduce the hourly rates for Mr. Jassy's work (including his firm's work) at a blended rate of $250.00 per hour." (Oppo. 18.) Ford provides no foundation or evidence for a blended hourly rate of $250/hour for this action, which appears substantially below the prevailing market rate for Jassy and Baldridge. This argument is also unpersuasive because Vox does provide evidence that Jassy's, Goller's, and Baldridge's rates are reasonable for CPRA actions. (See Jassy Decl. ¶ 7 and Wickers Decl. generally.) Ford believes the Jassy and Wickers declarations are "biased," but it did not submit any declarations of its own concerning the reasonable hourly rates of similarly experienced attorneys in a Los Angeles CPRA action.

In making its calculation on the reasonable rate for attorneys' fees, the court may rely on its own knowledge and familiarity with the legal market (including many CPRA actions and fee requests), as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, affidavits from other attorneys regarding prevailing fees in the community, and rate determinations in other cases.

Based on all of these factors, the court finds that Jassy's and Baldridge's reasonable hourly rates for this action were $650/hour and $415/hour, respectively. 1 Jassy has substantial experience in CPRA actions, including several major published appellate cases. Baldridge has several years of litigation experience, including on CPRA matters. Judge Beckloff found in February 2019 that these same attorneys had reasonable hourly rates of $575/hour and $395/hour, respectively, in "a fairly standard CPRA action" litigated in 2017-2018. The court would describe the instant case, litigated in 2020-2021, as somewhat more complex than the "standard" CPRA action, as it involved the procedural nuances of a reverse-CPRA petition and also litigation of a trade secret privilege under the Uniform Trade Secrets Act. The court disagrees with City's and Ford's arguments that the Jassy and Wickers opinions about the reasonable hourly rates should be disregarded. Both attorneys show personal knowledge about the reasonable hourly rates for attorneys litigating CPRA cases in Los Angeles. (Jassy Decl. ¶¶ 3, 7; Wickers Decl. ¶ 3.) Ford or City could have submitted opposing declarations about the prevailing market rates for CPRA actions, but they declined to do so. The court has also relied on its own knowledge of the prevailing market rates for attorneys in CPRA actions in Los Angeles. The hourly rates requested are reasonable given Jassy's experience in major, published CPRA cases and the reverse-CPRA and trade secret issues involved in this case.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

**20STCP00921**                                                    September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                           1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel                 CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista             ERM: None
Courtroom Assistant: R Monterroso                Deputy Sheriff: None

Although the court questions whether Goller's reasonable hourly rate is the same as Jassy's, the court need not decide that issue because the court declines to award the hours incurred by Goller for the reasons stated below.

Reasonable Number of Hours

"The verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." (Horsford v. Board of Trustees of California State University (2005) 132 Cal.App.4th 359, 396.) If the motion is supported by evidence, the opposing party must respond with specific evidence showing that the fees are unreasonable. (Premier Med. Mgmt. Sys. v. California Ins. Guarantee Ass'n (2008) 163 Cal.App.4th 550, 560-63.) The court has discretion to reduce fees that result from inefficient or duplicative use of time. (Horsford at 395.) Apportionment of fees is not required if fee-bearing and non-fee-bearing claims or legal activities are inextricably intertwined. (See Fed-Mart Corp. v. Pell Enterprises, Inc. (1980) 111 Cal.App.3d 215, 227.)

Here, Vox submits time records of its attorneys for the legal services performed in this action. (Jassy Decl ¶ 8, Exh. 2.) The billing records support that Vox's attorneys recorded $152,543.50 in fees through June 2021. (Id. ¶ 10.) Vox also submits evidence that it incurred 25 additional hours of attorney work to prepare the reply and attend the hearing for this fee motion, for $16,250 in additional lodestar fees. (Reply Jassy Decl. ¶ 6.) This evidence of the attorney fees incurred is entitled to credence by the court "in the absence of a clear indication the records are erroneous." (Horsford, supra, 132 Cal.App.4th at 396.)

As discussed in the court's May 4 ruling, Ford asserted multiple exemptions from disclosure in its petition, including a trade secret privilege and exemptions under Government Code sections 6254(l), 6254.7(d), 6254.15, Penal Code section 499c, and 5 USC § 552 and 18 USC § 1905. (See Minute Order dated 5/4/21 at 8, 17.) Although Ford and City bore the burden of proof on any exemptions, Vox's attorneys could reasonably spend some time in discovery and trial preparation related to all CPRA exemptions pleaded in the petition. As shown by the court's ruling, the trade secret privilege also required a factually detailed analysis, which reasonably required some discovery and thorough preparation of the writ briefs. Vox's attorneys prepared and submitted an opening writ brief, a reply writ brief, and evidentiary objections, all of which materially contributed to the court's ruling on the writ petition and were not duplicative of City's rather terse (and belated) opposition. Vox's attorneys also presented oral argument at the writ hearing, which materially contributed to the court's ruling.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

**20STCP00921**                                                    September 30, 2021
**FORD MOTOR COMPANY, et al. vs CITY OF LOS**                       1:30 PM
**ANGELES, et al**


Judge: Honorable Mary H. Strobel              CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista          ERM: None
Courtroom Assistant: R Monterroso             Deputy Sheriff: None

City contends that "[i]t was grossly unreasonable for Mr. Jassy and Ms. Baldridge to bill 23.7 and 6.4 hours, respectively, including a 5 plus hour 'practice session,' to prepare for the 15 minute hearing on May 4, 2021." (City Oppo. 8.) In reply, Vox has not disputed City's calculation of the time spent by Jassy and Baldridge preparing and attending the May 4 hearing. (Reply 7; see Nguyen Decl. ¶ 22, Exh. M-7.) However, in its brief, City does not fully describe all legal tasks that it challenges. City's Exhibit M-7 includes numerous tasks that were reasonable and necessary, including reading and evaluating Ford's reply, analyzing public records recently produced by the City, and reviewing the court's detailed tentative ruling and evaluating how to respond at the hearing. Vox's attorneys could reasonably spend time on these and other tasks specified in Exhibit M-7. (See Nguyen Decl. ¶ 11 [City produced redacted emails on April 30, 2021].) City does not show that the fees documented Exhibit M-7 were unreasonable, duplicative, or unnecessary.

City contends that Vox's attorneys unreasonably spent 43 hours to draft the fee motion, and that it was duplicative and inefficient for Jassy to spend 13 hours to reviewing Baldridge's work. (City Oppo. 8, citing Nguyen Decl. ¶ 23 and Exh. M-8.) City devotes three sentences to this argument and it provides no discussion of the legal tasks documented in its Exhibit M-8. Contrary to City's assertion, the motion was not "formulaic." Vox's attorneys were required to brief the request for fees under both Government Code section 6259(d) and CCP section 1021.5; to review and redact billing records supporting the fee request; and to prepare supporting declarations. Especially considering the added complexity of the request for fees under section 1021.5, City does not show that the fees documented Exhibit M-8 were unreasonable, duplicative, or unnecessary.

City contends: "Vox Media's attorneys billed excessive hours in this non-complex CPRA writ. For example, the attorneys supposedly required 22.2 hours to draft the Answer to the Petition and its Cross-Petition; 95.8 hours to propound, review, and respond to discovery; 64.9 hours to draft the Opening Brief on the Merits; and 38 hours to draft the Reply Brief on the Merits. (Nguyen Decl., ¶¶ 17-20 and Exs. M-2 through M-5.) A closer examination of the billing entries shows that they are replete with examples of Mr. Jassy reviewing or revising Ms. Baldridge's work. (Id., ¶ 15 and Ex. M.)" (City Oppo. 8-9.)

City does not identify any individual billing entries concerning preparation of the answer or cross-petition; preparation of the writ briefs; or discovery that are unreasonable, duplicative, or inefficient. City has the burden to do so. (Horsford, supra, 132 Cal.App.4th at 396; Premier Med. Mgmt. Sys., 163 Cal.App.4th at 560-63.) Based on the court's independent review of Vox's billing records and City's exhibits M-2 through M-5, the court also finds insufficient reason to

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                                     September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                                    1:30 PM
**ANGELES, et al**


Judge: Honorable Mary H. Strobel            CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista        ERM: None
Courtroom Assistant: R Monterroso           Deputy Sheriff: None

reduce these fees. Vox served 16 sets of written discovery, responded to 8 sets, and engaged in multiple meet and confer efforts, which yielded – for the first time – the four redacted agreements that were subject to disclosure under the CPRA and also important for the court's ruling on the writ petition. (See Jassy Decl. ¶ 11, Exh. 3 and Reply Jassy Decl. ¶ 4.) It was not unreasonable for Vox's attorneys to spend 22.20 hours preparing two verified pleadings (answer and cross-petition). Furthermore, given the number of CPRA exemptions cited by Ford in the petition, and given the number of factual and legal issues involved in the trade secret privilege, the time spent preparing Vox's opening and reply briefs was reasonable. City does not show, with citation, that Jassy spent an unreasonable amount of time reviewing Baldridge's work. Indeed, it was more efficient for Vox to assign as much work as possible to associate Baldridge.

City proposes reductions to Vox's requested fees, but City provides no foundation or explanation for the reduced hours that it proposes. (Nguyen Decl. ¶ 28.) The court is not persuaded by these arguments that it should reduce the lodestar fee.

City contends that "[t]he billing records indicate that the third attorney, Ms. Karlene Goller, billed 3.4 hours participating in conference calls or replicating the work of both Mr. Jassy and Ms. Baldridge. (Nguyen Decl., ¶ 16 and Ex. M-1.)" (City Oppo. 9.) Based on the court's review of the billing records and City's Exhibit M-1, the court agrees that using a third attorney, at the partner rate of $650/hour, was duplicative and inefficient. Vox does not sufficiently explain the need for a second, partner-level attorney on this case. The court reduces Vox's requested fees by the $2,097.50 specified in Exhibit M-1.

City contends that Vox improperly seeks reimbursement for 2.8 hours of "clerical time" spent by associate Baldridge. (City Oppo. 10, citing Exh. M-6.) City's exhibit M-6 shows that Baldridge spent 2.8 hours corresponding with the court about possible hearing dates for a motion; working on a stipulation; coordinating service of papers; and finalizing a reply brief. Although some of this work perhaps could have been assigned to a paralegal, the challenged hours also involve legal tasks, including work on a stipulation and Vox's reply brief. Vox also reasonably assigned these tasks to Baldridge instead of Jassy. City does not show that the requested fees are unreasonable, duplicative, or unnecessary.

Ford's opposition to the reasonable number of hours is more generalized than that of City. Ford contends: "It is inconceivable that Vox's counsel, with all of his years of expertise and accolades would need to incur $150,000 in fees to litigate the merits of a mere five documents…. The only reason for the massive fee request in this case is Vox's decision to duplicate the City of Los Angeles's efforts and engage in overly aggressive tactics that were unnecessary to the outcome

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                                    September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                           1:30 PM
**ANGELES, et al**


Judge: Honorable Mary H. Strobel          CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista      ERM: None
Courtroom Assistant: R Monterroso         Deputy Sheriff: None

of the litigation and only served to increase the value of the potential fee award." (Ford Oppo. 19.) The court is not persuaded by this conclusory argument. As discussed in detail above, Vox's discovery efforts motivated Ford to produce redacted versions of four of the agreements. (See Jassy Decl. ¶ 11, Exh. 3 and Reply Jassy Decl. ¶ 4.) Ford also strenuously litigated its claim of trade secret privilege for redacted information through trial. Vox reasonably engaged in discovery and addressed Ford's evidence and contentions in legal briefs. (See e.g. Vox Reply filed 4/19/21.) Ford does not show, with citation to the billing records, that any specific time entries were unreasonable, inefficient, or duplicative.

In reply, Vox submits evidence that attorney Jassy incurred 25 additional hours of attorney work to prepare the reply and attend the hearing for this fee motion, for $16,250 in additional lodestar fees. (Reply Jassy Decl. ¶ 6.) The opposition briefs argued several issues for which a reply was necessary. These requested hours are reasonable.

Based on the foregoing, Vox's lodestar fee is $166,696 ($152,543.50 + $16,250 -$2,097.50).

Multiplier

A trial court may adjust the lodestar upward or downward using a multiplier. (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1132.) Courts look to the following factors, among others, in determining whether a multiplier is appropriate: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed…." (See Serrano v. Priest (1977) 20 Cal.3d 25, 48.)

Vox requests a multiplier of 1.25 on the grounds that the case presented novel and difficult legal questions; Vox's counsel displayed significant skill in litigating the case; Vox's counsel is a small law firm and this writ petition prevented the firm from taking other work; Vox's counsel took significant contingent risk; and Ford and City obstructed disclosure and "dragged out the process for years." (Mot. 12-14.)

This reverse-CPRA action was somewhat more involved than the standard CPRA action,

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 82

20STCP00921                                                    September 30, 2021
FORD MOTOR COMPANY,  et al. vs CITY OF LOS                      1:30 PM
ANGELES, et al

Judge: Honorable Mary H. Strobel              CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista          ERM: None
Courtroom Assistant: R Monterroso             Deputy Sheriff: None

including because Ford relied on a trade secret privilege which required legal and factual analysis under the Uniform Trade Secrets Act. The City also started the disclosure process by claiming Vox's requests presented "unusual circumstances" that warranted extra attention, and declined to produce any part of the five agreements "out of an abundance of caution" even though the City's counsel "initially concluded" that there was no basis to withhold the documents. (City Opp. at 5:9-15; Nguyen Decl., ¶ 4; Order at 2-3.) However, Ford ultimately did not rely on other CPRA exemptions cited in the petition. Furthermore, the court's analysis of the trade secret privilege centered on two conclusory declarations submitted by Ford and a balancing of interests that is common in CPRA actions. (See Gov. Code § 6255.) Vox's attorneys litigated the case reasonably and their discovery efforts led to disclosure of redacted versions of four of the five withheld agreements prior to the writ hearing. The court would not describe the legal work as extraordinary. The lodestar fee sufficiently compensates Vox's attorneys for this work. The novelty and difficulty of the questions involved, and the skill displayed in presenting them do not weigh for a multiplier.

Vox does not show, with evidence, that litigating this writ petition prevented Vox's attorneys from taking or litigating other cases. (See Jassy Decl. ¶ 10.) Jassy only states that contingency cases "impact[] our capability to take on other, regular fee-paying work." (Ibid.) He does not elaborate or provide an example of how this petition precluded other employment. This factor does not weigh for a multiplier.

Vox submits evidence that its attorneys litigated the case on a contingency arrangement since July 2020. Vox paid for the legal work performed in March and April 2020. Thus, while Ford and City delayed production of the public records for about two years, the delay in contingency payment for Vox's attorneys only commenced in July 2020. (See Jassy Decl. ¶¶ 6, 10.) Because Vox already paid for some of the fees, the contingency risk in this case was reduced. Furthermore, Vox's attorneys claim hourly rates of $650/hour and $415/hour, and they could reasonably expect a mandatory fee award against City under Government Code section 6259(d). Vox's hourly rates sufficiently compensate counsel for any contingency risk and delay in this case.

Vox cites no authority that "Ford's and the City's consistent obstruction to disclosure," standing alone, is a basis to apply a multiplier. (Mot. 13-14.) The lodestar fees sufficiently compensate Vox's attorneys for any delay, as discussed above.

The fee award against City will ultimately fall on taxpayers. That factor weighs against a multiplier.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 82

**20STCP00921**                                           September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                    1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel          CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista      ERM: None
Courtroom Assistant: R Monterroso         Deputy Sheriff: None

---

Based on the foregoing, Vox's request for a multiplier is denied.

Apportionment of Fees; and Joint and Several Liability

City contends that Vox's success against City was limited because "City took the same position
as Vox Media on the primary question in the litigation, whether the Five Agreements were
exempt from public disclosure." (City Oppo. 13.) City contends that this writ action was
predominately limited to the five withheld agreements; "the Emails were a non-issue throughout
most of the litigation"; Vox's discovery was primarily dedicated to Ford's exemption claims; and
Vox did not have to address any arguments made by City in its writ briefs. City contends that
Ford engaged in discovery and asserted CPRA exemptions that increased the cost of litigation.
City contends that "the Court should make Ford liable for 90 percent of the adjusted lodestar and
the City liable for 10 percent." (City Oppo. 13-14.)

City's arguments for apportionment are not persuasive. City admittedly did not produce the
emails requested by Vox until April 30, 2021, shortly before the writ hearing. Even then, City
included redactions that needed to be addressed at the writ hearing. The CPRA Request was
made in April 2019, more than two years prior. (See Minute Order dated 5/4/21 at 2 and 17-18;
Nguyen Decl. ¶ 11.) City is responsible for all fees incurred related to these public records.

City also has no basis to request apportionment of fees related to the five withheld agreements.
As discussed above, City's delay in this case cannot reasonably be considered "prompt"
disclosure consistent with section 6253(b). (See Marken v. Santa Monica-Malibu Unif. Sch. Dist.
(2012) 202 Cal.App.4th 1250, 1268 & n.14.) As the court stated in its ruling on the writ petition,
"City's long delay in disclosure suggests deference to the business relationship with Ford."
(Minute Order dated 5/4/21 at 15.) City's decision to withhold the public records for more than
two years, apparently in deference to Ford, reasonably suggested to Vox when important
litigation decisions were made that private enforcement was necessary. For these same reasons,
City is fully responsible for all fees incurred by Vox related to the five agreements.

Ford points out that it is not liable for fees under Government Code section 6259(d). Ford seems
to contend that it should not be responsible for fees incurred by Vox related to the emails and
other records withheld by City, disclosure of which Ford did not oppose. Ford contends that "[i]t
is Vox's burden to correctly categorize its fees between Ford's reverse-CPRA action and Vox's
cross-petition." (Ford Oppo. 20.) Ford's attorney declares: "The majority of Vox's time entries
are either directly attributable to the cross-petition or are not specific enough to ascertain whether

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

**20STCP00921** September 30, 2021
**FORD MOTOR COMPANY, et al. vs CITY OF LOS** 1:30 PM
**ANGELES, et al**

Judge: Honorable Mary H. Strobel          CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista       ERM: None
Courtroom Assistant: R Monterroso          Deputy Sheriff: None

the time was spent on the reverse-CPRA action or the cross-petition or some combination thereof. Of the more than $150,000 and 310 plus hours claimed by Vox's counsel in this motion, only 91 of those entries, amounting to 90.9 hours of that claimed time is purportedly related solely to litigating issues against Ford in the reverse-CPRA action under the elevated fee." (Hugret Decl. ¶ 9, Exh. A.)

Because Ford did not oppose disclosure of any records except the five agreements, the fee award against Ford could be reduced by fees incurred by Vox that solely related to the other public records that City withheld until April 2021. However, the court is not persuaded by Hugret's contention that only 90.9 hours related to the five agreements. Ford filed the petition seeking to enjoin disclosure of the five agreement and is fully liable for all fees incurred related to that part of this writ action. Based on the court's review of the billing records, and knowledge of the case, it appears that nearly all of Vox's attorney's time in this action was dedicated to those five agreements. All of Vox's major litigation tasks related to the five agreements, including the answer, cross-petition, discovery, writ briefs, the fee motion, and attendance at the hearings. Apportionment of fees is not required if fee-bearing and non-fee-bearing claims or legal activities are inextricably intertwined. (See Fed-Mart Corp. v. Pell Enterprises, Inc. (1980) 111 Cal.App.3d 215, 227.) In their requests for apportionment, City and Ford do not cite discrete tasks related only to the emails and other records, disclosure of which Ford did not oppose.

Costs

The requested costs of $1,612.10 appear reasonable. (Jassy Decl. ¶ 10.) Ford and City make no argument to the contrary. The motion for costs is GRANTED.

Conclusion

The motion is GRANTED against City and Ford, jointly and severally, in the amount of $166,696. The motion for costs is GRANTED in the amount of $1,612.10.
.
Counsel for moving party is to prepare, serve and lodge the proposed order. The costs and attorneys' fees are to paid within sixty days.


FOOTNOTE:

1- For the same reasons, the court finds the "discounted" hourly rates from March and April

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

**20STCP00921**                                           September 30, 2021
**FORD MOTOR COMPANY,  et al. vs CITY OF LOS**                    1:30 PM
**ANGELES, et al**


Judge: Honorable Mary H. Strobel          CSR: Cindy Cameron/CSR 10315
Judicial Assistant: N DiGiambattista      ERM: None
Courtroom Assistant: R Monterroso         Deputy Sheriff: None

2020 to be reasonable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to this action.  My business address is 355 S. Grand Ave., Suite 2450, Los Angeles, CA  90071.  On **October 1, 2021**, I served true copies of the following document described as:

**[PROPOSED] ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS**

on the interested parties in this action as follows:

Spencer P. Hugret
James K. Holder
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Email: shugret@grsm.com; jholder@grsm.com

Linda Ngoc Nguyen, Deputy City Attorney
LOS ANGELES CITY ATTORNEY'S OFFICE
200 North Main Street, Room 800
Los Angeles, CA 90012
Email: linda.n.nguyen@lacity.org

☑    **BY ELECTRONIC MAIL (E-MAIL):**  I caused the said document(s) to be transmitted by e-mail to the person(s) at the email address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☑    **BY FIRST-CLASS MAIL:**  I deposited said document(s) in a sealed envelope(s) with the United States Postal Service at Los Angeles, California, for delivery, with the postage fully prepaid.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party(ies) served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     Executed on October 1, 2021, at Los Angeles, California.

_____
Marlene Rios

PROOF OF SERVICE