Christopher P. Wesierski [Bar No. 086736]
  cwesierski@wzllp.com
Michelle R. Prescott [Bar No. 262638]
  mprescott@wzllp.com
Eileen Spadoni [Bar No. 133259]
  espadoni@wzllp.com
Brett A. Smith [Bar No. 322707]
  bsmith@wzllp.com
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Bryan J. Freedman, Esq. (SBN: 151990)
  bfreedman@ftllp.com
Jesse A. Kaplan, Esq. (SBN: 255059)
  jkaplan@ftllp.com
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Defendant and Counterclaimant
Lindsey C. Hill

Shawn Holley (Cal. Bar No. 136811)
Suann C. MacIsaac (Cal Bar. 205659)
KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 Wilshire Boulevard., 3rd Floor
Santa Monica, CA 90401
Tel: (310) 566-9800
Fax: (310) 566-9873
sholley@kwikhlaw.com
smacisaac@kwikhlaw.com

Blair G. Brown (admitted pro hac vice)
Jon R. Fetterolf (admitted pro hac vice)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 882-8106
bbrown@zuckerman.com
jfetterolf@zuckerman.com

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

Nell Z. Peyser (admitted pro hac vice)
ZUCKERMAN SPAEDER LLP
485 Madison Ave., 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
npeyser@zuckerman.com
Attorneys for Plaintiff and Counter-Defendant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>        Plaintiff,<br><br>    vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>        Defendant.<br>_____<br>LINDSEY C. HILL,<br><br>        Counterclaimant,<br><br>    vs.<br><br>TREVOR BAUER,<br><br>        Counter-defendant. | Case No. 8:22-cv-00868 JVS (ADSx)<br><br>Assigned to: Judge James V. Selna<br>Referred to: Magistrate Judge Autumn D. Spaeth<br><br>**DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS**<br><br>[Notice of Motion for Protective Order and to Quash Subpoenas; Declarations of Jesse A. Kaplan and Lindsey C. Hill in Support of Motion; Declaration of Blair G. Brown in Opposition of Motion]<br><br>Date:            May 24, 2023<br>Time:            10:00 a.m.<br>Magistrate Judge: Autumn D. Spaeth<br>Courtroom:        6B<br><br>Action Filed: April 25, 2022<br>Discovery Deadline: June 26, 2023<br>Pretrial Conference:  January 22, 2024<br>Trial Date: February 13, 2024 |

# **Table of Contents**

HILL'S INTRODUCTORY STATEMENT ........................................................ 1

BAUER'S INTRODUCTORY STATEMENT .................................................... 3

THE REQUESTS IN THE DECKER AND RODGER SUBPOENAS CONCERNING HILL'S SUBSTANCE ABUSE ......................................... 6

HILL'S POSITION: ........................................................................................ 6

    A.    Background Facts. ............................................................................. 6

    B.    Hill has Standing to Challenge the Subpoenas. ................................ 7

    C.    Information from Decker and Rodgers About Hill's Substance Abuse is Unnecessary and Irrelevant. ................................................ 9

        1.    Bauer's "motivation" theory. ................................................... 9

        2.    Hill did not place her sobriety or any history of substance abuse at issue. 10

BAUER'S POSITION: ................................................................................ 11

    A.    Background Facts. ........................................................................... 11

    B.    Standing And Legal Standard. ........................................................ 12

        1.    Hill only has standing to object to third-party subpoenas based on privilege and privacy. ................................................. 12

        2.    A party's privacy concerns are outweighed when that party puts the information at issue in the litigation. ....................... 13

    C.    The Need For Information From Decker and Rodgers About Hill's Substance Abuse Outweighs Hill's Right To Privacy. ......................... 14

        1.    Hill's history of alcoholism goes directly to the emotional distress damages she seeks ............................................. 14

        2.    Hill's history of alcoholism also goes directly to the lost wage damages she seeks related to her contemplated employment at Ohana. ......................... 16

        3.    Hill's history of alcoholism goes to the key issue in this case—consent. . 16

        4.    Hill dispelled any legitimate privacy concerns by publicly disclosing substance abuse information at the DVRO proceeding. ................................. 19

        5.    Hill concedes that her substance abuse history is discoverable, but only if the discovery is directed towards her. ................ 21

THE REQUESTS IN THE PADRES SUBPOENA CONCERNING THE END OF HILL'S EMPLOYMENT WITH THE PADRES ....................................... 21

HILL'S POSITION: ..................................................................................... 22

i

A.    Background Facts. ......................................................................22

    1.   Hill seeks to recover lost wages resulting from Bauer's battery and sexual battery. ...............................................................................22

    2.   Hill's employment for the Padres. ...............................................23

B.    Information Concerning Hill's Departure from the Padres is Private and Irrelevant. ...................................................................................24

    1.   The circumstances surrounding Hill's departure from the Padres cannot be used to prove that she allegedly would be unable to maintain future employment. ..........................................................................25

    2.   Any alleged comparison between the Padres player and Bauer is entirely irrelevant. ...............................................................................26

C.    The Padres Subpoena Should be Modified to Permit Only Limited Information Concerning Hill. ......................................................26

BAUER'S POSITION: ............................................................................27

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

## JOINT STIPULATION REGARDING DEFENDANT AND COUNTERCLAIMANT'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAs

Pursuant to Local Rule 37-2, defendant and counterclaimant Lindsey Hill and plaintiff and counter-defendant Trevor Bauer submit this Joint Stipulation (the "Joint Stipulation") relating to Hill's Motion for a protective order and to quash portions of certain subpoenas.  Following multiple conferences of counsel conducted on March 30, 2023, April 10, 2023, April 11, 2023, and April 13, 2023, the parties were unable to reach agreement with respect to the discovery dispute at issue.

### I.

### HILL'S INTRODUCTORY STATEMENT

Hill has asserted claims against Bauer for battery and sexual battery.[1]  Bauer violently battered and sexually battered Hill on two separate occasions.  During the first battery on April 22, 2021, Bauer used Hill's hair to choke Hill to a point of unconsciousness. (Counterclaim, ¶¶ 14-17).  When Hill was regaining consciousness, she awoke to discover Bauer anally penetrating her which resulted in severe pain and bleeding. (Counterclaim, ¶¶ 18-19, 21-22).

During the second battery on May 16, 2021, Bauer again used Hill's hair to twice choke Hill to a point of unconsciousness. (Counterclaim, ¶¶ 24-30).  When Hill was regaining consciousness the first time, she awoke to Bauer forcefully and repeatedly punching her in the face with a closed fist. (Counterclaim, ¶ 28).  When Hill was regaining consciousness the second time, she awoke to Bauer spreading her knees to expose her vagina. (Counterclaim, ¶ 31).  Bauer then began to forcefully and repeatedly punch Hill's vagina and groin area with a closed fist. (*Id.*).  At some point

---

[1] In his Complaint, Bauer has also asserted claims against Hill for defamation and tortious interference with contract and prospective economic advantage.  Those claims are based exclusively on statements that Hill allegedly made to the police after Bauer battered and sexually battered Hill. (Complaint ¶¶ 151-153, 167).

1   while Hill was unconscious, Bauer also forcefully hit Hill in her buttocks.
2   (Counterclaim, ¶ 33).  Hill was hospitalized as a result of the serious bodily injuries
3   that she suffered from Bauer during the May 16th incident.  (Counterclaim, ¶ 34).

4       Hill seeks to recover non-economic damages for past and future physical pain
5   and suffering, mental suffering, loss of enjoyment of life, inconvenience and emotional
6   distress.    (Kaplan Decl., Ex. 9 [Initial Disclosures], and Ex. 10 [Interrogatory
7   Responses No. 20]).  Hill also seeks to recover lost wages that Hill would have earned
8   had she not been battered and sexually battered by Bauer.  (*Id*.).

9       In blitzkrieg fashion, and in an obvious effort to overwhelm and embarrass Hill,
10  between March 14 and 17, 2023, Bauer issued approximately twenty subpoenas in this
11  lawsuit, almost all of which were grossly overbroad and sought to invade Hill's privacy
12  rights.    Three of those subpoenas are at issue in this Motion to quash and for a
13  protective order.

14      First, Bauer has issued subpoenas to Lisa Decker (the "Decker Subpoena"),
15  Hill's prior Alcoholics Anonymous ("AA") sponsor, and Marylou Rodgers (the
16  "Rodgers Subpoena"), the owner and operator of a sober living home where Hill
17  previously lived in 2020 while she was recovering from alcoholism.  The Decker and
18  Rogers Subpoenas contain identical requests seeking documents and communications
19  concerning Hill's substance abuse, including treatment Hill received for her substance
20  abuse.[2]

21      Hill has a privacy right in confidential information concerning her substance
22  abuse treatment, and Bauer cannot demonstrate any need for such information that
23  outweighs Hill's privacy interests.    Any documents from Decker and Rodgers
24  concerning Hill's substance abuse, including treatment for substance abuse, at least in
25  isolation, are plainly irrelevant.  Hill does not seek to recover damages in this case

26

27  _____
    [2] The Decker and Rodgers subpoenas also seek other documents that are not at issue
28  in this Motion.

related to substance abuse.  Hill does not contend that Bauer's battery and sexual battery led her to substance abuse or interfered with her ability to maintain her sobriety. Moreover, while Hill has been open about the general fact that she is a recovering alcoholic and is in AA, the details of her recovery and treatment remain private.

When considering the sources of information, the relevance of the subpoenaed documents is even more attenuated.  Information about Hill's substance abuse from Hill's AA sponsor and the owner of a sober living home, people who were tasked to help Hill maintain her sobriety, has no relevance to this case.

Second, Bauer has also issued a subpoena to the Padres L.P. (the "Padres"), Hill's former employer in 2018 and 2019, which without limitation, essentially seeks all employment records concerning Hill.  In particular, Bauer seeks private records concerning disciplinary investigations and Hills departure from the Padres based on Hill's personal relationship with a Padres player.  Bauer is not entitled to such discovery, and the Padres Subpoena should be modified and limited.

Again, Hill has a privacy right in such employment records, and Bauer cannot demonstrate any need for such records that outweighs Hill's privacy interests.  These records, in particular records concerning any disciplinary investigation or Hill's departure from the Padres, have no relevance to this lawsuit.

## BAUER'S INTRODUCTORY STATEMENT

Hill falsely accused Bauer of sexual assault. Compl. ¶ 1. Bauer and Hill met twice at Bauer's residence for the purpose of having sex. *Id.* ¶ 2. During their first encounter, Hill disclosed her sexual preference for rough sex, including slapping, hair pulling, and choking. *Id.* ¶ 43. The two then engaged in the rough sex they had discussed. *Id.* Bauer repeatedly asked Hill whether she was okay and whether she wished to continue. *Id.* ¶ 44. Each time, she said yes. *Id.*

After this first encounter, Hill continued to pursue Bauer and brag to her friends about her relationship with him. *Id.* ¶¶ 50-60. Hill also texted Bauer about how much she had enjoyed the rough sex, stating that she had "never been more turned on in

3

[her] life" from the choking. *Id*. ¶ 58. After several attempts to solicit another invitation from Bauer to his home, the two made plans to see each other again. *Id*. ¶ 59. Hill again told Bauer she wanted slapping, "choking out," and "all the pain." *Id*. ¶ 63. The two established a safe word. *Id*. And then they engaged in the rougher sexual experience that Hill had requested. *Id*. ¶ 63. As with before, Bauer continually paused to ask Hill whether she was okay, which she said she was. *Id*. ¶ 64. At several points during the encounter, Hill requested even rougher behavior. *Id*. ¶ 65. At one point, Hill used the safe word and Bauer immediately ceased sexual intercourse. *Id*. ¶ 66.

Hill is a recovering alcoholic. When Hill and Bauer were discussing the boundaries of the rough sex in which they would consensually engage, Hill told Bauer that she started having rough sex once she became sober because it gave her a "high." *Id*. ¶ 62. She explained that she had, in a sense, replaced alcohol and drugs with rough sex. *Id*. Hill also discussed this link between her path to sobriety and rough sex with the two individuals who were helping her stay sober—her former AA sponsor and close friend, Lisa Decker, and the owner of Ohana Sober Living ("Ohana"), Marylou Rodgers. In one communication between Hill and Decker, Decker described both behaviors as being rooted in attention-seeking. Dkt. No. 52-3 (DVRO transcript) at pp. 406-07. Hill had planned on working at Ohana, but when Rodgers learned about Hill's rough sex with Bauer, Rodgers told Hill that it was a relapse of another kind and disqualified her from the position. *Id*. at pp. 428-29. Thus, Decker and Rodgers both communicated with Hill about the roots of her alcoholism, how alcoholism affects her behavior, and the role of rough sex in connection with her alcoholism and sobriety.

After Hill and Bauer's second encounter, Hill made a false police report to the Pasadena Police Department, telling them that Bauer had sexually assaulted her. Compl. ¶ 85. Hill then filed a petition for a Domestic Violence Restraining Order ("DVRO") asserting that Bauer had assaulted her and that she required protection. *Id*. ¶ 96. The Los Angeles state court held a four-day hearing on Hill's petition with Hill

4

testifying extensively (the "DVRO proceeding"). *Id.* ¶ 106. While she was on the stand, Hill testified under oath that the first encounter was entirely consensual. Dkt. No. 52-3 (DVRO transcript) at p. 528. At the conclusion of the DVRO proceeding, the state court judge found that Bauer had not assaulted nor abused Hill and that Hill's petition was "materially misleading." *Id.* at pp. 580-587; Compl. ¶ 106. The state court judge held, among other things, that Hill "was not ambiguous about wanting rough sex in the parties' first encounter and wanting rougher sex in the second encounter," and that Hill "set limits without fully considering all of the consequences and [Bauer] did not exceed the limits [Hill] set." *Id.* at pp. 585-86.

Bauer filed this lawsuit alleging a claim for defamation per se and tortious interference with contracts and business opportunities against Hill based on her false statements. Hill counterclaimed for battery and sexual battery, seeking to recover: (i) economic damages for lost wages that she alleges she would have earned but for her encounters with Bauer; and (ii) non-economic damages for physical pain and suffering, mental pain and suffering, severe emotional distress, loss of enjoyment of life, anxiety, embarrassment, and humiliation.

At issue here are subpoenas served on Decker and Rodgers seeking information and communications with Hill about Hill's substance abuse. Decker and Hill were identified in Hill's initial disclosures as persons with relevant knowledge.[3] Any privacy interests that Hill has in protecting this information is outweighed by Bauer's need for it. Communications between Hill and Decker and Rodgers about Hill's substance abuse are plainly relevant to understanding how and why Hill consented to rough sex with Bauer, given that Hill spoke to these witnesses about how getting sober has affected the decisions she makes regarding rough sex. Moreover, this information

---

[3] Hill complains about the number of subpoenas duces tecum issued by counsel for Bauer, but Hill's initial disclosures identified thirty-four individuals and entities with relevant knowledge. Counsel for Bauer issued subpoenas to fifteen of them, and to four others who were not identified but have relevant information.

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS

is also relevant to Hill seeking severe emotional distress damages, which opens the door for Bauer to discover information about her mental state from both before and after her encounters with Bauer. Finally, Hill publicly disclosed records about her substance abuse, information about her treatment, and hundreds of pages of communications with Decker in the DVRO proceeding, including some about Hill's substance abuse, casting real doubt on her assertion now that she has an interest in keeping this information private.

## II.

## THE REQUESTS IN THE DECKER AND RODGER SUBPOENAS CONCERNING HILL'S SUBSTANCE ABUSE

Each of the Decker and Rodgers Subpoenas contain the following identical Requests:[4]

**Request 1.d. and i.**

1. All Communications with Ms. Hill, concerning:

    d. Ms. Hill's substance abuse,

    i. Substance abuse evaluations or treatment of Ms. Hill.

**Request 8.d. and i.**

8. All Documents, or tangible items in your possession, concerning:

    d. Ms. Hill's substance abuse,

    i. Substance abuse evaluations or treatment of Ms. Hill.

**HILL'S POSITION:**

A.    **Background Facts.**

Hill is a recovering alcoholic. (Hill Decl., ¶ 2). Lisa Decker was Hill's AA sponsor from February 2021 through April 2022. (Hill Decl., ¶ 4). As Hill's AA sponsor, Hill would engage in confidential communications with Decker about her recovery and maintaining her sobriety. (*Id.*).

---

[4] These Requests are identical in both the Decker subpoena and the Rodgers subpoena.

6

1    Between approximately January 2020 and August 2020, Hill resided at a sober
2 living home in San Diego, County that was owned and operated by Rodgers.  (Hill
3 Decl., ¶ 3).  Hill lived at that sober living home as part of her recovery process.  (*Id*.).

4    **B.**    **Hill has Standing to Challenge the Subpoenas.**

5    As an initial matter, during the meet and confer, Bauer claimed that Hill had
6 limited standing to challenge the subpoenas, and that she had no standing to challenge
7 the relevancy of the documents sought by Bauer.  Bauer is wrong.

8    Under Federal Rule of Civil Procedure 26(c), the court may issue a protective
9 order "for good cause ... to protect a party from annoyance, embarrassment, oppression,
10 or undue burden or expense, including ... forbidding inquiry into certain matters, or
11 limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P.
12 26(c)(1)(D).  Hill has standing under Rule 26(c) to seek a protective order regarding
13 these subpoenas on the basis that they seek irrelevant information concerning Hill.  *See*
14 *In re REMEC, Inc. Sec. Litig*., No. CIV 04CV1948 JLS AJB, 2008 WL 2282647, at *1
15 (S.D. Cal. May 30, 2008) ("A party can move for a protective order in regard to a
16 subpoena issued to a non-party if it believes its own interests are jeopardized by
17 discovery sought from a third party and has standing under Rule 26(c) to seek a
18 protective order regarding subpoenas issued to non-parties which seek **irrelevant**
19 information.  [footnote] Several Courts within the Ninth Circuit, including the Southern
20 District of California, have recognized this sound principle of law.  [Footnote] As such,
21 this Court finds that Defendants have standing to seek a protective order under Rule
22 26(c) pursuant to the third party subpoenas issued to Needham, Powerwave and
23 Chelton.") (Emphasis added).

24    Given that the Decker and Rodgers Subpoenas seek information concerning
25 Hill's substance abuse, including treatment for substance abuse, Hill certainly has
26 standing to seek a protective order preventing the disclosure of such information on the
27 basis that such information is not relevant.

28    Hill also has standing to quash the Decker and Rodgers Subpoenas under Rule

7

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

45 as Hill has a privacy interest in information concerning her substance abuse. *See Doe v. City of San Diego*, 2013 WL 2338713, at \*2 (S.D. Cal. May 28, 2013) (concluding a party has standing to quash a third-party subpoena because the party "asserted a privacy interest in the records sought by the ... subpoena"); *Apple Hill Growers v. El Dorado Orchards, Inc.*, No. 217CV02085TLNCKD, 2022 WL 1506205, at \*7 (E.D. Cal. May 12, 2022) (Same).

Discovery may be restricted because of a party's privacy rights in the information sought by the propounding party. *See Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12887396, at \*3 (C.D. Cal. Nov. 14, 2012). Under California law, the right to privacy in California primarily derives from the California Constitution's declaration that individuals have an inalienable right to privacy.[5] *See Davis v. Leal*, 43 F. Supp. 2d 1102, 1110–11 (E.D. Cal. 1999). A litigant's privacy rights are balanced against the need for the information in question. *See Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 657 (1975). Even if the balance weighs in favor of disclosure, the scope of any disclosure should be "narrowly circumscribed" and with "narrow specificity" only to the extent necessary for a fair resolution of the lawsuit. *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316, (1982).

Here, any information concerning Hill's substance abuse in the possession of Hill's AA sponsor or a sober living home where Hill resided is private. Moreover, Bauer cannot demonstrate a need for such information in this litigation. In fact, such information is not relevant.

/ / /

---

[5] Because this is a diversity case, the California law of privilege applies. *See* Fed. R. Evid. 501; *Star Editorial, Inc. v. U.S. Dist. Ct., C.D. Cal.*, 7 F.3d 856, 859 (9th Cir. 1993). "To the extent privacy is a matter of privilege under state law, federal courts will honor the privilege and protect the responding party from discovery." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998) (citation and internal quotation marks omitted).

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

C.      **Information from Decker and Rodgers About Hill's Substance Abuse is Unnecessary and Irrelevant**.

During the meet and confer, Bauer identified two purported reasons why his unlimited inquiry into Hill's substance abuse history is relevant and necessary to this action. First, Bauer contends that Hill's history of substance abuse is relevant because he contends that Hill turned to "rough sex" after she stopped drinking to replace the "high" that she was missing from alcohol or drugs. Bauer contends that Hill's history of substance abuse is therefore relevant to Hill's "motivation" to engage in rough sex. Second, Bauer falsely contends that Hill has somehow placed her sobriety and history with substance abuse at issue in a prior Domestic Violence Restraining Order proceeding that she previously brought in 2021 in Los Angeles Superior Court (the "DVRO Proceeding"). Bauer is wrong on both counts.

### 1.      **Bauer's "motivation" theory**.

First, assuming Hill's motivation for having rough sex is even relevant, it is unclear why Bauer needs to engage in extensive discovery concerning the details of Hill's history with substance abuse. Any such inquiry should be limited to discovery directed to Hill as to if and why she was interested in or willing to engage in some form of rough sex. To the extent that Bauer believes that he needs to prove that Hill is a recovering alcoholic, Bauer does not need to undertake any discovery to prove that point. Again, Hill is open about that fact and has admitted that she is a recovering alcoholic. Why would further discovery on that topic be required?

At most, Bauer can question Hill about if and why she desired to engage in rough sex, whether she was motivated to do so because she was a recovering alcoholic and desired to use rough sex to fill some void in her life. Bauer, however, has not justified the intrusion into Hill's treatment for any substance abuse, her confidential communications with her AA sponsor and information surrounding becoming sober in 2020 while living at the sober living home.

Second, Hill's motivations for having rough sex with Bauer (or anyone else) are

9

not relevant to begin with.  Generally, parties may obtain discovery "that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  During at least the meet and confer, Bauer failed to identify any element of Hill's claims for battery and sexual battery, or his claims, to which Hill's alleged motivations for having rough sex would be relevant.

The elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching.  *So v. Shin*, 212 Cal. App. 4th 652, 668 (2013).  The tort of sexual battery is codified in California Civil Code § 1708.5 and includes circumstances where the defendant "[a]cts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results."  Civil Code § 1708.5 (a)(1).  The term "intimate part" is defined as "the sexual organ, anus, groin, or buttocks of any person, or the breast of a female."  Civil Code § 1708.5 (d)(1).

Hills claims for battery and sexual battery are not based on Bauer engaging in mere rough sex.  Rather, they are based on incredibly violent and brutal acts that resulted in great bodily injury.  That Hill arguably had some desire or motivation to engage in some rough sex does not does not mean that those reasons are relevant to any of the parties' claims or defenses.

## 2.   Hill did not place her sobriety or any history of substance abuse at issue.

Bauer contends that Hill placed her history of substance abuse and/or her sobriety at issue in the 2021 DVRO Proceeding.  Bauer contends that because Hill provided some evidence in the DVRO Proceeding that she is a recovering alcoholic, she has placed those facts at issue.  Bauer is wrong.

First, what Hill allegedly placed at issue in a separate proceeding is immaterial

10

to what is at issue in this lawsuit. Nothing in Hill's Counterclaim or Answer to Bauer's Complaint raises any issues concerning her sobriety or alcoholism. Similarly, Hill's Initial Disclosures and Interrogatory responses confirm that she does <u>not</u> seek to recover damages in this case related to substance abuse. (Kaplan Decl., Ex. 9 [Initial Disclosures], and Ex. 10 [Interrogatory Responses No. 20]).

Second, even if Hill has placed the mere fact that she is a recovering alcoholic at issue, that does not mean that Bauer is entitled to extensive, or even any, discovery on that subject. At most, the mere fact that Hill is a recovering alcoholic would be relevant. The details of that history are not.

## BAUER'S POSITION:

### A. Background Facts.

According to Hill, Lisa Decker was her AA sponsor from February 2021 through April 2022. Hill Decl. ¶ 4. But their relationship went far beyond that. They were also "very close friends." Dkt. No. 52-3 (DVRO Transcript) at p. 403. After Hill's first encounter with Bauer, she wrote to Decker: "Give me 50 million dollars and don't slap my clit and I'd be great." *Id.* at p. 404. Decker would write messages to Hill about Bauer, such as: "The attention feels good. Just keep it in perspective." *Id*. And Hill would write messages to Decker, such as: "Rude fucking awakening for me to cut this shit out once and for all." *Id.* at p. 406. After Hill's second encounter with Bauer, Decker wrote to her: "Hey bitch. Pretty soon it will be like hey rich bitch," in reference to her desire to seek money from Bauer. *Id.* at p. 409. Decker also advised Hill not to post a certain photograph on social media because "you're supposed to be struggling mentally, not posting…I know you want to but it's terrible for your case…you're basically just trying to not kill yourself and stay out of the mental ward"—in essence, instructing Hill to hide the true state of her physical and mental condition so not to impact her pursuit of money from Bauer. *Id.* at pp. 409-10.

Marylou Rodgers owned and operated Ohana, a sober living house. Hill Decl. ¶ 3. She also appeared to be Hill's personal friend. Hill alleges she had planned to

11

commence a job at Ohana. *Id.* ¶ 10. But Rodgers disqualified her from the position after Hill's second encounter with Bauer, stating: "If you could see from my perspective the self harm you endured and realize this was a 'relapse' of another kind. A relapse disqualifies you for the position." Dkt. No. 52-3 (DVRO Transcript) at pp. 428-29 (referring to message produced in discovery in DVRO proceeding). Hill subsequently had a number of conversations with Decker regarding how angry she was that Rodgers considered this a relapse. *Id.* at p. 429.

In the section of Hill's initial disclosures identifying persons with relevant knowledge, she described Decker as her "friend and AA Sponsor" with whom she "[c]ommunicated frequently … in aftermath of sexual contact with Mr. Bauer and throughout DVRO proceeding." Hill identified Rodgers as her "supervisor at Ohana House Sober Living." Bauer served Rule 45 subpoenas on Decker and Rodgers on March 23, 2023 and March 14, 2023, respectively. Neither Decker nor Rodgers have objected to the respective subpoenas.

**B.   Standing And Legal Standard.**

    **1.   Hill only has standing to object to third-party subpoenas based on privilege and privacy.**

Hill has no standing to challenge the subpoenas on relevance grounds. Federal Rule of Civil Procedure 45 provides that the *recipient* of subpoena may object to the subpoena or move to quash or modify it. *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc*., 299 F.R.D. 638, 642 (E.D. Cal. 2014) (citing Fed. R. Civ. P. 45(c)(2), 45(c)(3)). A party may challenge a nonparty subpoena only on the grounds that the requested documents implicate "a personal right or privilege." *Clair v. Schlachter*, 2016 WL 2984107, at *5 (E.D. Cal. May 23, 2016); *see also Jiae Lee v. Dong Yeoun Lee*, 2020 WL 7890868, at *5 (C.D. Cal. Oct. 1, 2020) (same); *California Sportfishing*, 299 F.R.D. at 643 (same); *Wells Fargo & Co. v. ABD Ins.*, 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012) (same).

"A party's objection that a subpoena issued to a non-party seeks irrelevant

12

information . . . is not grounds on which the objecting party has standing to assert, especially where the non-party, itself, has not objected." *Clair,* 2016 WL 2984107, at *5; *see also Burke v. Basil*, 2021 WL 3283839, at *4 (C.D. Cal. May 14, 2021) ("A party . . . lacks standing to object a subpoena served on a third party on grounds of relevance or undue burden."); *Marshall v. Galvanoni*, 2019 WL 2491524, at *2 (E.D. Cal. June 14, 2019). Objections based on relevance "are objections that [the nonparty] is free to raise, but they do not implicate any right or privilege belonging to [the party]." *MD Helicopters, Inc. v. Aerometals, Inc.*, 2019 WL 1227919, at *5 (E.D. Cal. Mar. 15, 2019).

To the extent Hill relies on Federal Rule of Civil Procedure 26(c) to challenge the nonparty subpoenas on relevance grounds, her reliance is misplaced. Rule 26(c) provides that "[a] party or any person *from whom discovery is sought* may move for a protective order." (emphasis added). California district courts have extended Rule 26(c) standing to parties seeking protective orders over nonparty discovery only where the party claims "its own interest is jeopardized." *Clair*, 2016 WL 2984107, at *5. Hill's belief that the subpoenas seek irrelevant information cannot, by itself, confer standing. *See MD Helicopters*, 2019 WL 1227919, at *5; *see also In re REMEC, Inc. Sec. Litig*., 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) (to challenge a nonparty subpoena for relevance, the party must *also* assert a "jeopardized" interest).

### 2.  A party's privacy concerns are outweighed when that party puts the information at issue in the litigation.

Privacy concerns are not absolute; they must be balanced against other important interests. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). A defendant is not required to establish a compelling interest in discovery of a plaintiff's mental health records. *Williams v. Superior Ct.*, 3 Cal. 5th 531, 557 (2017). The burden is on the party asserting a privacy interest to establish its extent and the seriousness of the prospective invasion. *Id.*; *see also Hooks v. Target Corp.*, 2022 WL

13

18142528, at *2 (C.D. Cal. Dec. 29, 2022) ("The party who moves to quash a subpoena has the burden of persuasion.") (alteration in original omitted). A party's right to privacy is outweighed when the party has put the information at issue in the litigation, such as by seeking emotional distress damages. *Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*, 2018 WL 6071089, at *3 (C.D. Cal. Mar. 7, 2018); *Enwere v. Terman Assocs., L.P.*, 2008 WL 5146617, at *4 (N.D. Cal. Dec. 4, 2008) (a party is "entitled to discover what other causes exist for [the other party's] emotional distress, regardless of whether any such other causes occurred before the events at issue in the lawsuit or afterwards").

C.    **The Need For Information From Decker and Rodgers About Hill's Substance Abuse Outweighs Hill's Right To Privacy.**

1.    **Hill's history of alcoholism goes directly to the emotional distress damages she seeks**

Discovery into Hill's substance abuse history is necessary because, by seeking damages based on emotional distress, she has put her mental health, including her substance use, at issue. In her counterclaim, Hill alleges that: "As a direct and/or proximate result of Bauer's battery/sexual battery as alleged hereinabove, Hill has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, all in an amount exceeding the jurisdictional minimum of this Court according to proof at trial." Counterclaim ¶¶ 44, 54. Given Hill's allegation that Bauer caused these severe emotional distress injuries, Bauer is entitled to discover information regarding Hill's mental health from both before and after their encounters to defend himself against that assertion. Hill's right to privacy does not outweigh the need for this information that is central to her counterclaim. *See, e.g.*, *Kilroy*, 2018 WL 6071089, at *3 ("Plaintiff has placed his physical and mental conditions at issue by seeking to recover damages based upon alleged [sic] extreme physical and mental harm and distress, and has affirmatively even sought to recover his medical expenses as damages in the FAC."); *Doe v. City*

*of Chula Vista*, 196 F.R.D. 562, 569 (S.D. Cal. 1999) (plaintiff waived patient-therapy relationship by electing to recover damages for emotional distress and noting that "[d]efendants must be free to test the truth of [plaintiff's] contention that she is emotionally upset *because of* the defendants' conduct"); *Hukman v. Sw. Airlines Co.*, 2019 WL 566451, at *3 (S.D. Cal. Feb. 12, 2019) ("defendants should have access to evidence that the plaintiff's emotional state was caused by something else").

For this precise reason, Hill has *agreed* that her mental health records are discoverable (from April 1, 2019 to the present, at least) and does not object to their production from both herself and third parties. Her attempt to carve out substance abuse information from her mental health information is unreasonable. Substance abuse information *is* mental health information. *See Peck v. Cty. of Orange*, 2020 WL 4218223, at *5 (C.D. Cal. July 10, 2020) ("alcoholism has also been classified as a mental health disorder by the American Psychiatric Association"); *Spangler v. Olchowski*, 654 S.E.2d 507, 511 (2007) ("Mental suffering often results in substance abuse and records relating to substance abuse treatment may be relevant to mental pain."). Indeed, the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) includes alcohol use disorder as a mental disorder. *See* American Psychiatric Association (2013), Substance-related and Addictive Disorders, in *Diagnostic and Statistical Manual of Mental Disorders* (5th ed). Hill may not prevent discovery into this one manifestation of her mental condition; it would be akin to saying that Bauer is entitled to records regarding her depression but not her anxiety.

Multiple courts have held that substance abuse information must be produced, along with other mental health information, in this context. One court found that the defendant was permitted to inquire into substance use history "that pre-dated the incident at issue, and whether such factors unrelated to this litigation might show that Smith's claims of emotional distress are either 'baseless, overblown or insubstantial.'" *Smith v. City of Albuquerque*, 2002 WL 35649946, at *6 (D.N.M. Apr. 16, 2002); *see also Midkiff v. Compton*, 693 S.E.2d 172, 179 (N.C. Ct. App. 2010)

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

("by bringing a claim for emotional distress, which alleges that defendants' actions caused decedent to withdraw from her college studies and caused an overall loss in decedent's enjoyment of life, we find that plaintiff has placed decedent's mental health and history of substance abuse at issue"); *Vahai v. Gertsch*, 455 P.3d 1218, 1238 (Wyo. 2020) ("Ms. Vahai's substance abuse treatment records were relevant to defending against her damage claims for loss of enjoyment of life.").

> **2.** **Hill's history of alcoholism also goes directly to the lost wage damages she seeks related to her contemplated employment at Ohana.**

Discovery into Hill's substance abuse history is also necessary because it directly relates to the lost wages she seeks to recover from her contemplated employment at Ohana. Hill contends that because of the physical and mental trauma that she suffered from her encounters with Bauer, she was too physically injured and emotionally distressed to start that job. Kaplan Decl., Ex. 10, Response to Interrogatory No. 20. Bauer is entitled to defend himself against the allegation that he was the cause of Hill not being able to start the job. In the sole communication that Bauer is aware of between Hill and Rodgers regarding Hill's contemplated employment at Ohana, Rodgers tells Hill that she is disqualified from the position because her rough sex with Bauer was "a relapse of another kind." Dkt. No. 52-3 (DVRO Transcript) at pp. 428-29. Bauer is aware that Hill discussed her disqualification from the position at Ohana with Decker too. *Id.* at p. 429. These communications suggest that the real reason Hill did not begin her employment at Ohana had nothing to do with any injuries she allegedly sustained from Bauer; it was because Rodgers, a mental health professional who was familiar with Hill's substance abuse, disqualified Hill from the position because of her "relapse."

> **3.** **Hill's history of alcoholism goes to the key issue in this case—consent.**

Hill also contends that her motivations for having rough sex with Bauer—motivations that stem from her history of alcoholism—are irrelevant to this case. She

16

is wrong. The *key* questions in this case are whether Hill consented to rough sex and to what did she consent. She recites the elements of her battery and sexual battery claims in a flimsy attempt to show that her motivations are untethered to any elements of these causes of action. But this exercise only reinforces Bauer's point. An indispensable element of both causes of action is *consent*. *See Pallamary v. Elite Show Servs., Inc.*, 2018 WL 3064933, at *13 (S.D. Cal. June 19, 2018) (element of battery is that "plaintiff did not consent to the contact"); *Jacqueline R. v. Household of Faith Fam. Church, Inc.*, 97 Cal. App. 4th 198, 208 (2002) (no sexual battery where "the relationship was consensual"); *see also* Cal. Civ. Code § 3515 (one "who consents to an act is not wronged by it").

Bauer will prove in this case that Hill consented to rough sex. He alleges that on the second night they met, the two discussed having rough sex and he sought to establish clear boundaries. Compl. ¶¶ 61–63. As part of this discussion, Bauer asked Hill why she liked engaging in rough sex. *Id.* ¶ 62. She told him that she started having rough sex once she became sober because it gave her a "high." *Id.* She explained to him that she had, in a sense, replaced alcohol and drugs with rough sex. *Id.* Suffice to say, proving these facts are important to Bauer's ability to show that he obtained consent from Hill. Hill denies that she ever told Bauer that her desire for rough sex was related to her history with alcoholism.[6] Dkt. No. 52-3 (DVRO Transcript) at pp. 429-430. In this "he said-she said" scenario, Hill's communications with Rodgers and Decker about her alcoholism, such as Rodgers' statement that rough sex was a "relapse of another kind," are especially important to corroborating Bauer's account that Hill desired and consented to rough sex because it was her replacement for

---

[6] She does admit, though, that she consented to vaginal sex with Bauer, initially consented to being choked by Bauer, and consented to being slapped by Bauer. *See* RFA Responses Nos. 31–33, Brown Decl., Ex. A. She further admits that she told Bauer she had engaged in rough sex with other partners, had been choked by other partners, and that being choked by partners during sex was "kind of like an escape." *See* RFA Responses Nos. 41–44, Brown Decl., Ex. A.

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

1   alcohol.

2       Hill frames her request for a protective order as if Bauer is seeking clinical

3   information from "attenuated" sources about Hill's substance abuse and recovery

4   when he can simply ask Hill about it. But discovery from Decker and Rodgers about

5   Hill's substance abuse is clearly warranted when the context is considered. Hill

6   communicated with Decker and Rodgers not only about the clinical aspects of her

7   alcoholism, but the nuances about how her alcoholism informed her behavior and

8   specifically how it informed her behavior with Bauer. Indeed, Decker drew

9   comparisons between Hill's alcoholism being rooted in the need for attention and her

10  desire to have sex with Bauer rooted in that same need. Dkt. No. 52-3 (DVRO

11  Transcript) at p. 404. And Rodgers' characterization of Hill's encounters with Bauer

12  as a "relapse of another kind" suggests that Rodgers was aware of Hill's proclivity for

13  rough sex, and that the two had discussed it as part of her recovery from alcoholism.

14  *See id*. at pp. 428-29. Hill's communications with these witnesses about her substance

15  abuse recovery show that her intentions with Bauer at the time were very different

16  than what she now claims.

17      In the DVRO proceeding, Hill's *own counsel* agreed that Hill's substance abuse

18  history is critical to understanding whether and why she agreed to rough sex with

19  Bauer.[7] In opening, Hill's counsel told the state court that Hill "is a recovering

20

21  [7] Hill characterizes the DVRO proceeding as a separate proceeding "immaterial to what is
    at issue in this lawsuit." This is a remarkable shift from her opposition to Bauer's motion to
22  dismiss, where she did not contest that the issues in the two proceedings are *identical* and
23  were actually litigated in the DVRO proceeding. Dkt. No. 57. And this Court has already
    agreed that the issues in the two proceedings are identical too. *See* Dkt. No. 69 ("Hill does
24  not contest that the first, second, fourth, and fifth elements of collateral estoppel are met,
    and the Court agrees."). The record in the DVRO proceeding includes prior testimony by
25  Hill, statements by Hill's counsel, and filings by Hill that are material to Hill's counterclaim
26  in this case and which may be used in this case as party admissions. In discovery in this case,
    Hill has equally requested information from Bauer about the DVRO proceeding. *See* Hill
27  RFPs to Bauer Nos. 14, 45, 53, 54, 55, 56, 57, 58, 59, 60, 61, Brown Decl., Ex. B. The
    DVRO proceeding is highly relevant and material to this case.

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

alcoholic. She was 17 months sober at the time that she first met [Bauer]." *Id*. at. p. 48. She further explained that Hill "has a false sense of bravado and can be very boastful and immature." *Id*. In closing, Hill's counsel began by stating: "By now we know of Lindsey's history. Severe alcohol abuse since her mid-teens. Multiple hospitalizations. Possible self-injurious behavior. Extremely low-self esteem coupled with transparent efforts to appear confident and in control. A people pleaser. And extremely emotionally insecure. Sober, yes. Emotionally stable, no." *Id*. at p. 526.

Hill herself testified throughout the DVRO hearing that, as part of the process of becoming sober, she has worked on letting down "this tough girl front" that she conveys to the world. *Id*. at p. 76. She used this "tough girl front" as an explanation for why she would say things she did not mean about her intentions with Bauer. *Id*. at p. 97. She further testified that she struggles a lot with insecurity and when she first went to Bauer's home, her goal was to impress him and keep his attention. *Id*. She thought he desired rough sex and she wanted to give him what he wanted. *Id*. at p. 114. These are just a few examples of the many ways Hill and her counsel have explained how her substance abuse history informed her actions and communications with Bauer. This history is an important piece of the puzzle in understanding why Hill went to Bauer's home the first time, why she was fixated on going back a second time, what she told him about her history with alcohol and her desire for rough sex, and why she told him that she wanted to partake in certain sexual activities. Ultimately, all of this discovery goes directly to how Hill manifested her consent. Bauer simply cannot be cut off from this discovery, which goes to the heart of his defense.

**4.    Hill dispelled any legitimate privacy concerns by publicly disclosing substance abuse information at the DVRO proceeding.**

Hill's privacy concerns ring hollow for yet another reason: she has already publicly disclosed records regarding her substance abuse. In her DVRO petition, she included medical records that referred to her status as an alcoholic, her history of substance abuse and sobriety, and her prior self-harm attempts. *See* Dkt. No. 52-2 at

19

pp. 56-57, 73, 82. Hill was under no obligation to publicly release those records, let alone do so with no redactions. But she did. In her DVRO testimony, she also testified in detail about her substance abuse history. Dkt. 53-3 (DVRO Transcript) at pp. 74-76, 97, 113-14. Moreover, in the DVRO proceeding, she produced over 200 pages of communications between herself and her AA sponsor Decker and she testified about those communications. *Id.* at pp. 403-415, 428-430. Hill did not object to producing these communications with Decker, did not redact any portions related to her substance abuse, and *did not even designate the communications confidential*. She even produced unredacted messages related to doing "step work" with Decker, which Bauer assumes is a reference to the twelve steps of AA.[8]

At minimum, Hill's willingness to publicly disclose substance abuse information at the DVRO proceeding strongly suggests that Hill's new "privacy" objection is more of a litigation tactic than a legitimate concern. Her previous disclosure of these records, particularly her communications with Decker, constitute waiver. Evidence Code section 912, which governs waiver of privilege is instructive about waiver of privacy for substance abuse information records. It provides for waiver "with respect to a communication protected by ... privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone." *Heda v. Superior Ct.*, 275 Cal. Rptr. 136, 139 (Cal. Ct. App. 1990) (finding no waiver where defendant did not disclose his health records, unlike what Hill did). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses

---

[8] In the DVRO proceeding, Hill produced communications with Decker from April 14, 2021 through July 31, 2021, minus a chunk of messages that Hill admits are missing from May 19 through May 27, 2021 (i.e., the days immediately following her second encounter with Bauer). *See* Hill RFA Response Nos. 7, 8, Brown Decl., Ex. A (admitting that she communicated with Decker between May 19 and May 27, 2021). In this case, Bauer subpoenaed Decker for the full set of communications, including the May 19-27 messages that Hill deleted.

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS

privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Thus, whether Hill has formally waived her privacy rights or revealed the insincerity of newly minted desire to protect this already-public information, her privacy objection falls flat.

**5.      Hill concedes that her substance abuse history is discoverable, but only if the discovery is directed towards her.**

Finally, Hill agrees that Bauer is entitled to ask her about her substance abuse history, but she contends that Bauer is not entitled to discovery on it from any other source. Her position appears to be that Bauer is only entitled to information that she wants to provide, presumably information she views as helpful, but not the full story. Hill cannot cabin discovery in this way. *See Hukman*, 2019 WL 566451, at *4 ("Plaintiff claims she did not have any preexisting mental health problems, Defendant is entitled to discovery to confirm this."). It would be analogous to a party admitting she was at a crime scene but seeking to prevent the opposing party from gaining access to surveillance footage showing where exactly she was and what role she played at the scene. Here, Bauer cannot simply take Hill at her word regarding her substance abuse history and how it impacted her encounters with Bauer. If she testifies about her alcoholism and Bauer does not have any information about it other than her testimony, he is hamstrung. Bauer is entitled to discovery on this—not just the discovery Hill unilaterally wants to provide.

## III.

## THE REQUESTS IN THE PADRES SUBPOENA CONCERNING THE END OF HILL'S EMPLOYMENT WITH THE PADRES

### Request 1

1. All Documents, or tangible items in your possession, concerning:

    a. Ms. Hill;

    b. Ms. Hill's participation as a member of the Pad Squad;

    c. Ms. Hill's employment with the San Diego Padres or the Pad Squad;

21

d. Any medical leave or other leave of absence taken by Ms. Hill;

e. Any disciplinary investigation into, or action taken against, Ms. Hill in the course of her employment with the San Diego Padres or the Pad Squad;

f. Ms. Hill's departure from the San Diego Padres or the Pad Squad.

**Request 2**

2. All Communications with any employee, including Ms. Hill, concerning:

b. Any disciplinary investigation into, or action against, Ms. Hill in the course of her employment with the San Diego Padres or the Pad Squad;

c. Ms. Hill's departure from the San Diego Padres or the Pad Squad.

**HILL'S POSITION:**

A.   **Background Facts.**

1.   **Hill seeks to recover lost wages resulting from Bauer's battery and sexual battery.**

In addition to non-economic damages, Hill seeks to recover certain limited lost wages that she would have earned had Bauer not battered and sexually Battered Hill.

First, Hill seeks to recover lost wages that she would have earned from Lululemon, an apparel retailer, between May 28, 2021 and July 31, 202 (approximately nine weeks) while she was on leave following the battery and sexual battery. (Kaplan Decl., Ex. 9 [Initial Disclosures], and Ex. 10 [Response to Interrogatory No. 20]). Hill worked at Lululemon from approximately August 2018 through December 2022 as an "educator." (Hill Decl., ¶ 7). In that capacity, Hill was essentially a sales associate. (*Id.*). Hill stopped working at Lululemon in December 2022 after she began her career as a paralegal. (Hill Decl., ¶ 9). Again, Hill took a leave of absence at Lululemon following Bauer's May 2021 battery and sexual battery. (Hill Decl., ¶ 8).

Hill also seeks to recover lost wages related to her contemplated employment at the Ohana College Area Sober Living Environment ("Ohana") as a resident life director. Ohana is a residential sober living house for women who are recovering from

substance abuse and alcoholism.  (Hill Decl., ¶ 10).  Hill intended on working at both Lululemon and Ohana.  (*Id*.).  As a resident life director, Hill would have lived in the sober living house and managed the house and its residents.  (*Id*.).

Because of both the physical and mental trauma that Hill suffered from Bauer's battery and sexual battery, Hill was unable to start that job.  (Kaplan Decl., Ex. 10 [Response to Interrogatory No. 20]).  Had Hill not been battered and sexually battered and prevented from working at Ohana, she would have earned those wages from June 2021 through December 2022.  (*Id*.).  Accordingly, Hill seeks nineteen (19) months of wages she would have otherwise earned at Ohana through December 2022.[9]  (*Id*.).

### 2.    Hill's employment for the Padres.

Hill had a part-time job with San Diego Padres (the "Padres"), a Major League Baseball team.  (Hill Decl., ¶ 5).  Specifically, Hill worked with the Padres "Pad Squad" which is a group that provides entertainment at Padres baseball games and some other events.  (*Id*.).  Hill worked for the Padres part time from approximately December 2018 through the summer of 2019, well before she was battered and sexually battered by Bauer in 2021.  (*Id*.).  In 2019, Hill resigned from the Padres because she had a brief personal relationship with one of the Padre's players which was contrary to the Padres' policy concerning fraternization with Padres' players.  (Hill Decl., ¶ 6).

While perhaps obvious, Hill does not contend that Bauer's 2021 battery and sexual battery resulted in her losing her job with the Padres in 2019.  (Kaplan Decl., Ex. 9 [Initial Disclosures], and Ex. 10 [Interrogatory Responses No. 20]).

/ / /

/ / /

/ / /

/ / /

---

[9] Based on Hill's mitigation of damages, she does not seek lost wages that she would have earned from Ohana beyond December 2022.

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS

**B.** **Information Concerning Hill's Departure from the Padres is Private and Irrelevant.**

While Bauer is entitled to some discovery concerning Hill's employment history,[10] Bauer is not entitled to unlimited discovery concerning the details of each of Hill's jobs, in particular the details surrounding the reasons for her departure from a job she held several years before Bauer's 2021 battery and sexual battery. *See Hooks v. Target Corp.*, No. 522CV00052SSSSPX, 2022 WL 18142528, at *3-4 (C.D. Cal. Dec. 29, 2022) (limiting subpoena to plaintiff's employer that sought all records relating to plaintiff without any time limitation, including her personnel file, her job applications, records of any investigations relating to her, records of limitations on her work activities, records of her leaves of absence, and records of her wages).

Additionally, California recognizes a privacy right in employment records. *See Bd. of Trustees v. Super. Ct.*, 119 Cal. App. 3d 516, 526-27 (1981) (disapproved of on other grounds); *Sirota v. Penske Truck Leasing Corp.*, 2006 WL 708910, at *2 (N.D. Cal. Mar. 17, 2006); *Hooks,* 2022 WL 18142528, at *3 (C.D. Cal. Dec. 29, 2022). Again, a party's privacy rights must be balanced against the need for the information sought. *See Hooks,* 2022 WL 18142528, at *3. Often, there must be a compelling and opposing interest justifying the discovery. *See Davis v. Super. Ct.*, 7 Cal. App. 4th 1008, 1014 (1992).

A litigant's employment records such as employer investigations or disciplinary records are typically both private and irrelevant. *See Hooks,* 2022 WL 18142528, at *4. ("But the court agrees with plaintiff that the production as currently requested is likely to produce confidential information unrelated to this litigation.  For example,

---

[10] The employment history of a plaintiff seeking damages in the form of lost wages has limited relevance.  That is, the plaintiff's employment history typically goes to the plaintiff's earning capacity and ability to mitigate damages. *See Baker v. Santa Clara Univ.*, No. 17-CV-02213-EJD(VKD), 2018 WL 3566868, at *2 (N.D. Cal. July 25, 2018).

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS

defendant requested records regarding "any investigations [FUSD] conducted" into plaintiff, without any time or subject matter limitations. [Citation] As plaintiff notes, this request could include sensitive disciplinary records having nothing to do with plaintiff's disability or workplace accommodations.").

Here, Bauer cannot show a need for all of Hill's employment records from the Padres, in particular records concerning her departure from the Padres or any actual or contemplated discipline. Such information is not relevant to the claims or defenses in this case.[11]

1.    **The circumstances surrounding Hill's departure from the Padres cannot be used to prove that she allegedly would be unable to maintain future employment.**

During the meet and confer process, Bauer claimed that the circumstances surrounding Hill's departure from the Padres were relevant to her ability to maintain employment.[12]    Stated differently, Bauer seeks discovery as to what may have happened at the Padres to demonstrate that Hill would not be able to maintain her contemplated job at Ohana.    Bauer is wrong.    He has no legitimate need for such information.

Under Federal Rule of Evidence 404(a) ("Rule 404(a)"), Bauer is not permitted to use evidence concerning Hill's departure from the Padres, including the reasons for such departure, to prove that Hill has a purported propensity for not being able to hold on to jobs, and that she would have acted consistent with that alleged character trait at her contemplated job at Ohana.  *See* Federal Rule of Evidence 404(a); *Baker v. Santa*

---

[11] As discussed above, Hill may seek a protective order on the grounds that the information sought in the Padres subpoena is not relevant.  Additionally, Hill may seek to quash the Padres Subpoena on the ground that it seeks private information.

[12] Bauer also contends that he is entitled to evidence that Hill had difficulty getting jobs.  It is unclear how the circumstances surrounding Hill's departure could possibly be relevant to her ability to gain employment.

*Clara Univ.*, No. 17-CV-02213-EJD(VKD), 2018 WL 3566868, at \*2 (N.D. Cal. July 25, 2018) (granting a plaintiff's motion for a protective order as to a defendant's subpoena for employment records from a past employer to purportedly prove that the plaintiff had a propensity to act in a certain manner).  Rule 404(a)(1) states as follows: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."

Accordingly, Bauer cannot discover Hill's employment records with the Padres in order to prove that Hill is likely to act in conformity with prior conduct with the Padres in terms of her contemplated job at Ohana as a resident life director.

### 2. Any alleged comparison between the Padres player and Bauer is entirely irrelevant.

Bauer also contends that Hill's relationship with the Padres' player is relevant because Hill has allegedly compared Bauer sexually to the Padres' player to which Hill had a relationship with while she worked for the Padres and that Hill disclosed that relationship to Bauer.  (Kaplan Decl., Ex. 6 [April 4 Letter, p. 6]).  Even if true, any comparison between Bauer and the other player, sexual or otherwise, is entirely irrelevant to any of the claims or defenses in this lawsuit.  That Hill allegedly discussed that player with Bauer does not mean that the circumstances surrounding Hill's relationship with that Padres' player is relevant.

### C. The Padres Subpoena Should be Modified to Permit Only Limited Information Concerning Hill.

Hill does not dispute that certain information from the Padres is potentially discoverable.  Specifically, Bauer may seek limited employment records concerning the compensation that Hill earned from the Padres that would arguably be relevant to Hill's earning capacity and ability to mitigate damages. *See Baker*, 2018 WL 3566868, at \*2.  Accordingly, Hill requests that the Padres Subpoena be limited accordingly.

/ / /

/ / /

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS

**BAUER'S POSITION:**

Bauer has determined that he will not seek to pursue the Padres subpoena at this time, while reserving his right to pursue the Padres subpoena later in discovery, should he decide to do so.

On April 27, 2023, Bauer's counsel informed Hill's counsel of his intent not to seek documents from the Padres at present. Bauer's counsel also told Hill's counsel that if he determines to pursue the Padres subpoena later, he will notify Hill's counsel with sufficient time for the Court to resolve this dispute before the Padres produce any documents. Bauer's counsel suggested that the parties agree to remove all references to the Padres subpoena from this stipulation so as not to burden the Court with an unripe dispute that may never ripen.[13] Hill's counsel did not agree. On April 28, 2023, Hill's counsel demanded that Bauer withdraw the portions of the Padres subpoena at issue permanently and with prejudice.

Bauer respectfully requests that the Court defer any rulings on the Padres subpoena indefinitely. If Bauer determines to pursue the subpoena later in discovery, the parties should raise this dispute at that time. However, if the Court is inclined to make any substantive ruling on the Padres subpoena now, Bauer respectfully requests the opportunity to submit a substantive response to Hill's position.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[13] The dispute as to the Padres subpoena is also unripe for the independent reason that the Padres have lodged objections and responses to the subpoena, and the parties have not met and conferred with each other nor with the Padres about the Padres' objections. *See* Non-Party Padres L.P.'s Objections to Subpoena *Duces Tecum*, Brown Decl., Ex. C.

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS

1   DATED: May 1, 2023             FREEDMAN + TAITELMAN, LLP

2

3

4                                  By:    /s/ Jesse Kaplan
                                          Bryan J. Freedman, Esq.
5                                         Jesse A. Kaplan, Esq.
                                          Attorneys for Defendant and
6                                         Counterclaimant Lindsey C. Hill

7

8   DATED: May 1, 2023             ZUCKERMAN SPAEDER LLP

9

10

11                                 By:    /s/ Nell Peyser
                                          Nell Z. Peyser.(admitted *pro hac vice*
12                                        Blair G. Brown (admitted *pro hac vice*)
                                          Jon R. Fetterolf (admitted pro hac vice)
13                                        Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISCOVERY MATTER: JOINT STIPULATION REGARDING HILL'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS