Shawn C. Holley, Esq.
Kate E. Mangels, Esq.
Suann MacIssac, Esq.
KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 Wilshire Blvd, Suite 300
Santa Monica, CA  90401
Phone: 310-566-9822
Fax: 310-566-9850
E-Mail: sholley@kwikhlaw.com; kmangels@kwikalaw.com
smacisaac@kwikhlaw.com

Blair G. Brown, Esq.
Jon R. Fetterolf, Esq.
Nell Peyser, Esq.
ZUCKERMAN SPAEDER LLP
1800 M. Street, N. W. Suite 1000
Washington, D.C 20036
Phone: 202-778-1800
Fax: 202-882-8106
E-Mail: bbrown@zuckerman.com; jfetterolf@zuckerman.com
npeyser@zuckerman.com

Attorneys for Plaintiff/Counter-Defendant Trevor Bauer

Christopher P. Wesierski [Bar No. 086736]
    cwesierski@wzllp.com
Michelle R. Prescott [Bar No. 262638]
    mprescott@wzllp.com
Eileen Spadoni [Bar No. 133259]
    espadoni@wzllp.com
Brett A. Smith [Bar No. 322707]
    bsmith@wzllp.com
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Bryan J. Freedman, Esq. (SBN: 151990)
    bfreedman@ftllp.com
Jesse A. Kaplan, Esq. (SBN: 255059)
    jkaplan@ftllp.com
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Defendant and Counterclaimant
Lindsey C. Hill

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

8773466.1

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6          CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER, | Case No. 8:22-cv-00868 JVS (ADSx) |
| Plaintiff, | Assigned to: Judge James V. Selna<br>Referred to: Magistrate Judge Autumn D. Spaeth |
| vs. | **DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH THIRD PARTY SUBPOENAS** |
| LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH, | |
| Defendant. | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| LINDSEY C. HILL, | [Notice of Motion For Protective Order and To Quash Third Party Subpoenas; and Declarations of Blair G. Brown, Jesse Kaplan and Lindsey Hill filed concurrently] |
| Counterclaimant, | |
| vs. | Date:  June 28, 2023<br>Time:  10:00 a.m.<br>Magistrate Judge: Autumn D. Spaeth<br>Courtroom:         6B |
| TREVOR BAUER, | |
| Counter-defendant. | |
| | Action Filed: April 25, 2022<br>Discovery Deadline: September 1, 2023<br>Pretrial Conference:  January 22, 2024<br>Trial Date: February 13, 2024 |

1

8773466.1

# TABLE OF CONTENTS

I.      BAUER'S INTRODUCTORY STATEMENT ..................................................1

II.     HILL'S INTRODUCTORY STATEMENT ....................................................4

III.    THE SUBPOENAS AT ISSUE ....................................................................6

BAUER'S POSITION ............................................................................................7

   A.    Background of Claims. ...............................................................................7

   B.    Background of Subpoenas at Issue. ...........................................................9

   C.    Legal Standard. ..........................................................................................14

   D.    Hill's Overbroad Subpoenas Invading Private and Confidential Matters Cannot Overcome The Core Privacy Interests of Bauer And Third Parties. ........16

   1.     Hill cannot establish a compelling need for the requested materials ............16

      2.     The significant privacy interests held by the Does and Bauer substantially outweigh Hill's interests. ......................................................19

E.    Hill's Reliance on Rule 415 Is Misplaced. ........................................................21

      1.     Rule 415 may not supplant Bauer's and the Does' robust rights to sexual privacy. ..........................................................................................22

      2.     Even under Rule 415, Hill has made no showing that would permit the vastly intrusive discovery she seeks. ............................................24

HILL'S POSITION ..............................................................................................27

I.      FACTUAL BACKGROUND ..........................................................................27

   A.    Bauer Sexually Assaults Hill. ......................................................................27

   B.    JANE DOE 4 ...............................................................................................28

   C.    JANE DOE 3 ...............................................................................................30

   D.    JANE DOE 2 ...............................................................................................31

   E.    JANE DOE 1 ...............................................................................................33

   F.    JANE DOE 5 ...............................................................................................34

II.     HILL IS ENTITLED TO DISCOVERY FROM AND ABOUT BAUER'S OTHER VICTIMS ................................................................................................34

   A.    Hill is Entitled to Discover Evidence of Bauer's Prior Sexual Assaults Under Rule 415. ..................................................................................................34

i

B.    The Subpoenas Seek Admissible Evidence that Bauer Sexually Assaulted the Victims or Other victims. .................................................................... 35

C.    Bauer Cannot Use Rule 403 to Prevent Hill from Discovering Evidence of Bauer's Prior Sexual Assaults. .............................................................. 38

    1.    The similarity of the acts to the acts charged. ............................................ 40

    2.    The closeness in time of the prior acts to the acts charged ........................ 42

    3.    The frequency of the prior acts and intervening circumstances. ............... 42

    4.    The necessity of the evidence beyond the testimonies already offered at trial. 42

D.    Bauer's and the Third Parties' Privacy Rights Do Not Override Hill's Right to Targeted Discovery Concerning Bauer's Other Sexual Assaults of the Victims. 43

D.    "Me Too" Evidence is Admissible to Prove Bauer's Motive, Intent, or Plan. 50

E.    Bauer's Misconduct is Admissible to Prove Substantial Truth. ................... 52

## JOINT STIPULATION REGARDING PLAINTIFF AND COUNTERDEFENDANT BAUER'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH THIRD PARTY SUBPOENAS

Pursuant to Local Rule 37-2, plaintiff/counter-defendant Trevor Bauer and defendant/counter-claimant Lindsey Hill submit this Joint Stipulation (the "Joint Stipulation") relating to Bauer's Motion For Protective Order and To Quash Third-Party Subpoenas to Jane Does 1, 2, 3, 4, and 5. Following a conference of counsel conducted on May 26, 2023, the parties were unable to reach agreement with respect to the discovery dispute at issue.

## I.   BAUER'S INTRODUCTORY STATEMENT

Bauer moves for a protective order and to quash Hill's overbroad and improper subpoenas to five women—Jane Does 1 through 5.[1] The third-party subpoenas seek, among other things, every communication between the women and Bauer and every photograph and video the women have of themselves with Bauer. They also ask for materials showing Bauer "hitting" or "choking" the women and concerning any purported accusations of "physical violence" or sexual assault made against Bauer by the women. The Court should enter a protective order and quash these oppressive and invasive subpoenas because any interest Hill might have in the materials cannot override the significant privacy interests of the women and Bauer.

The requested discovery is a severe intrusion into the women's and Bauer's fundamental privacy rights. If allowed, the subpoenas force the women—who are not parties to this litigation—to reveal the most sensitive and intimate information about their interactions with Bauer. They would be required to disclose all videos, photos, and messages they had with Bauer, including those showing consensual sexual activities. The discovery encompasses sensitive communications regarding nonsexual

---

[1] Because of the significant privacy interests at issue, Bauer is not revealing the identities of the subpoena recipients in this filing.

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

1  topics too—family, employment, religion, politics, and any other subject that comes

2  up in private conversation. It is no exaggeration to say that Hill's subpoenas intrude

3  into every aspect—no matter how private—of the encounters between the five women

4  and Bauer, some of which occurred a decade ago.

5      Hill, however, cannot use the tools of discovery to engage in such a serious

6  invasion of privacy. Because this case is a diversity action, Federal Rule of Evidence

7  501 instructs that the Court apply California's law on privileges, which includes the

8  constitutional right to privacy. Sexual autonomy is a fundamental privacy right, both

9  under the U.S. and California Constitutions. As a result, Hill must show that her

10  discovery into that protected area is directly relevant to her claims and that she has a

11  compelling need for the discovery.

12      Hill cannot make that showing. Indeed, in correspondence with Bauer's

13  counsel, Hill has argued that she has no obligation to show a compelling need because

14  this case is in federal court, not state court. But that argument ignores that California

15  law supplies the relevant standard, as California federal courts have routinely

16  recognized. It also ignores that the U.S. Constitution recognizes a right to privacy that

17  Hill cannot disregard. And it ignores the protections provided by the Federal Rules of

18  Civil Procedure against overly intrusive and disproportionate discovery.

19      Hill's asserted rationale for her intrusive discovery requests is that they are

20  relevant to showing that Bauer allegedly committed other sexual assaults. But—apart

21  from one of the Jane Does—there is no indication that any of the other Does intends

22  to make public assault accusations or allegations against Bauer. For example, Doe 1

23  has objected to her subpoena on privacy grounds, informing counsel for Hill and

24  Bauer that she has never met Bauer in person. JANE DOE 1                    ,

25  Doe 1 has never had sex—or any other physical interaction—with Bauer. She has no

26  videos or photographs with Bauer, and has not made any accusations of assault against

27  Bauer, obviously so because she has never met him in person. Hill and her counsel

28  apparently made no effort to determine if Doe 1 was a sexual partner of Bauer's before

2

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

attempting a significant privacy intrusion. The only justification Hill has offered is that Doe 1 allegedly received a Snapchat video from Bauer showing him slapping an unidentified woman. JANE DOE 1

There is clearly no compelling need for discovery from Doe 1 in this litigation.

Doe 2 has also objected to the subpoena on privacy grounds and stated that she has "never publicly accused Mr. Bauer of sexual assault or of any nonconsensual sexual contact." Doe 2 has emphasized that "any deposition or document production from me—both of which would be against my will—would only serve to harass, embarrass, and humiliate me."

In addition, many of Hill's requests to the Does have nothing to do with sexual assault accusations. Hill's attempt to discover every communication, video, or photograph between the women and Bauer—including videos and photographs showing consensual sexual activities—is oppressive and harassing. There is no justifiable reason to intrude upon such core private matters.

Indeed, none of Hill's requests can trump the fundamental privacy interests held by the women and Bauer. To the extent the women's and Bauer's encounters are confidential and not publicly disclosed, Hill cannot force third parties to publicly reveal their utmost sensitive and intimate information to support her civil litigation.

Hill's justifications for these privacy intrusions have shifted over the course of this case. After first arguing that materials regarding other women were relevant to her "substantial truth" defense to defamation, Hill now contends that Federal Rule of Evidence 415 supports her intrusive subpoenas. But that Rule is about admissibility, not discoverability, of prior similar sexual assaults in a case involving sexual assaults.

Rule 415 does not vitiate the privacy interests held by Bauer and the Jane Does. Nothing in the Rule permits an unbounded fishing expedition into private and

3

1  sensitive information concerning third parties. The Rule also does not allow Hill to

2  discover every communication, photograph, and video between the women and

3  Bauer. Indeed, where a party has invoked Rule 415 in an attempt to support discovery

4  of the opposing party's sexual history, courts rely on the privacy rights of the opposing

5  party and his third-party sexual partners to reject those significant privacy invasions.

6  These limits are particularly applicable where any purported materials regarding prior

7  alleged sexual assault accusations are private and confidential.

8      The Court should grant the protective order and quash the five third-party

9  subpoenas because they are unjustified privacy intrusions.

10  **II.    HILL'S INTRODUCTORY STATEMENT**

11      Hill's Counterclaims against Bauer concern two separate violent batteries and

12  sexually batteries/assaults committed by Bauer against Hill that occurred in 2021.

13  During both occurrences, Bauer choked Hill to the point of unconsciousness, and

14  battered and sexually assaulted her while she was unconscious and partially

15  unconscious.  This conduct included Bauer's non-consensual anal penetration during

16  the first incident, and; after choking Hill unconscious during the second incident, Bauer

17  repeatedly punching Hill in the face with a closed fist, forcefully and repeatedly

18  punching Hill in her vagina and groin area with a closed fist, and forcefully hitting Hill

19  in her buttocks.  Like most sexual assaults, there were no other eyewitnesses to Bauer's

20  sexual assaults and batteries of Hill.

21      Since 2021, <u>four</u> other victims of Bauer's sexual assaults and batteries have

22  come forward, including JANE DOE 4 , JANE DOE 3, JANE DOE 2    and

23  JANE DOE 5 (the "Victims").  The details of Bauer's sexual assault and battery of

24  JANE DOE 4 , JANE DOE 3 and JANE DOE 2  were all widely publicized.   JANE DOE 4  and

25  JANE DOE 2  voluntarily disclosed the details of their sexual encounters with Bauer to

26  the mainstream media which published articles about Bauer's sexual assaults of those

27  victims.  Further, JANE DOE 4 and JANE DOE 2 have disclosed their identities and the details

28  of their sexual encounters with Bauer to at least Hill and to Major League Baseball

4

1  ("MLB").   In  fact,  JANE DOE 4

2

3      JANE DOE 3, another Bauer victim, filed a public lawsuit that also detailed her

4  sexual encounters with Bauer, including Bauer sexually assaulting and battering her.

5  JANE DOE 5, another Bauer victim, has also disclosed her identity and certain details of her

6  sexual encounter with Bauer to Hill's former counsel.  Additionally, JANE DOE 1

7

8

9

10      Bauer's sexual assaults of these victims are strikingly similar to Bauer's sexual

11  assault of Hill. ████████████████████████████████████

12  ██████████████████████████████████████████████████

13  ██████████████████████████████████████████████████

14  ██████████████████████████████████████████████████

15  ██████████████████████████████████████████████████

16  ██████████████████████████████

17      In this lawsuit, Hill has propounded focused and targeted discovery, including

18  subpoenas to each of the Victims, that seeks to obtain admissible evidence that Bauer

19  sexually assaulted those Victims.  Bauer does not seriously dispute the direct relevance

20  of evidence that he has sexually assaulted these other victims.   Pursuant to Fed. R.

21  Evid. 415 ("Rule 415"), Hill is entitled to present evidence that Bauer sexually

22  assaulted these other victims to prove that he has a propensity to engage in similar

23  sexual misconduct.  Accordingly, Hill is entitled to use focused discovery to obtain

24  admissible evidence that Bauer engaged in certain non-consensual sexual acts with the

25  Victims, often while they were unconscious and often after Bauer had choked them to

26  the point of unconsciousness during sex.  Given the striking similarities of Bauer's

27  multiple sexual assaults and Bauer's sexual assaults of Hill, coupled with the fact that

28  there  were  no  other  eyewitnesses  to  Bauer's  sexual  assaults  of  Hill,  there  is  a

5

heightened need for such specific evidence that Bauer has a propensity to engage in such conduct. Under Fed. R. Evid. 404(b)(2) ("Rule 404(b)(2)"), evidence of Bauer's misconduct, including his batteries of the Victims, is also highly relevant and admissible to prove Bauer's intent and plan to batter Hill.

Again, Bauer does not seriously dispute the direct relevance of Bauer's other sexual assaults. Furthermore, Bauer does not dispute that the Victims have accused Bauer of conduct that qualifies as sexual assault. In fact, Bauer goes out of his way to avoid addressing the substance of each of the Victims' accusations. Instead, Bauer suggests that his California privacy rights and the privacy rights of the third-parties supersede and all but swallow up Hill's right to obtain evidence that would be directly relevant under Rule 415. While Hill is sensitive to the such privacy rights, in particular the privacy rights of third-parties, under the circumstances, Hill is entitled to engage in targeted discovery of Bauer's prior sexual assaults of the Victims.

Hill has demonstrated the direct relevance of obtaining admissible evidence under Rule 415 of specific instances of non-consensual sexual assaults by Bauer that are extremely similar to Bauer's sexual assaults of Hill. Further, Hill is not undertaking broad, indiscriminate or speculative discovery into Bauer's sexual affairs. Hill has propounded targeted discovery to five known individuals, four of whom have accused Bauer of sexual assault and have already disclosed the details of such non-consensual sexual assaults to Hill or Hill's attorneys, and in several instances, to the public at large. Given the direct relevance and heightened need for such discovery, on balance, Hill should be entitled to pursue focused discovery concerning Bauer's sexual assaults of these specified victims.

## III.   THE SUBPOENAS AT ISSUE

Hill has issued identical subpoenas to five women (Jane Does 1, 2, 3, 4, and 5) for depositions and the production of the following materials, without any time restriction: (1) "All communications [the woman] has had with Trevor Bauer, or his representative(s), at any time"; (2) "All documents reflecting communications with

6

Trevor Bauer about him choking or hitting [the woman], or about [the woman] being unconscious"; (3) "All photographs, videos or motion pictures of Trevor Bauer choking or hitting [the woman], or of [the woman] being unconscious or partially unconscious, and/or any injuries [the woman] allegedly sustained as a result of Trevor Bauer"; (4) "All photographs or videos [the woman] has taken, recorded, or caused to be recorded, depicting Trevor Bauer and [the woman] at any time"; (5) "All documents regarding any accusations by [the woman] of physical violence, abuse, sexual battery, sexual abuse, battery, assault, and/or rape made against Trevor Bauer"; and (6) "All documents [the woman] has received from Major League Baseball that address any allegations [the woman] has made against Trevor Bauer." Declaration of Blair Brown, Exs. A-E (subpoenas).

## BAUER'S POSITION

### A. Background of Claims.

Hill falsely accused Bauer of sexual assault. Compl. ¶ 1. Bauer and Hill met twice at Bauer's residence for the purpose of having sex. *Id*. ¶ 2. When they first met in April 2021, Bauer asked Hill about the kind of sex she was interested in, and she told him that she enjoyed rough sex, including being slapped in the buttocks and hair pulling. *Id*. ¶ 43. She also told him that she had experimented with choking in the past and was interested in trying it that night. *Id*. ¶ 43. The two then engaged in the rough sex they had discussed, including light slapping, hair pulling, and choking. *Id*. Bauer repeatedly asked Hill whether she was okay and whether she wished to continue. *Id*. ¶ 44. Each time, she said yes. *Id*.

After this first encounter, Hill bragged to her friends about Bauer, as well as told Bauer how much she had enjoyed the rough sex. *Id*. ¶¶ 50-60. She texted one of her friends: "[C]an't wait to tell you about that he is an amazing human." *Id*. ¶ 50. She also alluded to Bauer's financial wealth and her ability to harm him, texting her AA sponsor, "Give me 50 million dollars and don't slap my clit and id be great," and

7

texting another friend that they would be able to travel to Europe together in style once she had Bauer's money in hand. *Id*. ¶¶ 54, 56. Simultaneously, Hill initiated contact with Bauer on various occasions over the next few weeks. Among other things, she texted Bauer: "The pink socks stay ON while cuddling…Buttttt offffff when its time to choke me out;" and "Never been more turned on in my life. Gimme all the pain. Rawr." *Id*. ¶ 58. When Bauer texted Hill, "I just want my arm around your neck from behind," she responded, "Do it Harder." *Id*. She also asked Bauer to "get a couple slaps in there and then another handprint on my @$$." *Id*. When Bauer asked Hill if she wanted to be slapped in the face, she texted "Yes yes & yes." *Id*. As Hill later testified, she was <u>fixated</u> on seeing Bauer again after their first encounter. Dkt. No. 52-3 at 205 (Tr. 140).

Hill indeed made several attempts to see Bauer again, but he declined. *Id*. ¶ 59. Finally, Bauer agreed to let her come over on May 15, 2021. In light of the even rougher sexual behavior Hill had requested through her text messages with Bauer after their first encounter, Bauer asked what was "off limits." *Id*. ¶ 63. Hill asked Bauer not to stick his fingers in her mouth, as he had done during their first encounter, but she did not state that any other action was off limits. *Id*. The two established a safe word, which by Hill's selection, was "Daddy issues." *Id*. They then engaged in the rougher sexual experience that Hill had requested. *Id*. ¶ 64-65. Throughout this sexual encounter, Hill requested that Bauer slap her "harder" on a few occasions. *Id*. ¶ 65. Bauer complied, but as in the first encounter, he continually paused to ask Hill whether she was okay, which she said she was. *Id*. ¶ 64. At one point, Hill used the safe word and Bauer immediately ceased sexual intercourse. *Id*. ¶ 66. Afterwards, Hill was not visibly distressed or incapacitated in any way. *Id*. In fact, at 1:57 a.m. that night, Hill tweeted: "@BauerOutage Absolute diesel straight down the dick kinda energy." *Id*. ¶ 71. Furthermore, Hill surreptitiously took a video the morning after that encounter while in bed with Bauer showing her smirking and with no injuries to her face other than a slightly swollen lip. Dkt. No. 53. The only visible bruise or marking

8

1   on Hill was the slight swelling on the side of her lip. Compl. ¶ 69.

2       After Hill and Bauer's second encounter, Hill made a false police report to the

3   Pasadena Police Department, telling them that Bauer had sexually assaulted her. *Id*. ¶

4   85. Following her false criminal complaint, Hill also filed a petition for a domestic

5   violence restraining order against Bauer. The Los Angeles state court held a four-day

6   hearing on Hill's petition with Hill testifying extensively (the "DVRO proceeding").

7   *Id*. ¶ 106. Notably, Hill and/or her counsel withheld from Bauer the video Hill took

8   of herself the morning after her second encounter with Bauer.

9       At the conclusion of the DVRO proceeding, the state court judge found that

10  Bauer had not assaulted nor abused Hill and that Hill's petition was "materially

11  misleading." Dkt. No. 52-3 at 659-66 (Tr. 580-87); Compl. ¶ 106. The judge held,

12  among other things, that Hill "was not ambiguous about wanting rough sex in the

13  parties' first encounter and wanting rougher sex in the second encounter," and that

14  Hill "set limits without fully considering all of the consequences and [Bauer] did not

15  exceed the limits [Hill] set." Dkt. No. 52-3 at 664-65 (Tr. 585-86).

16      Following the resolution of the DVRO proceeding, the Los Angeles District

17  Attorney's Office announced that it declined to pursue criminal charges against

18  Bauer. The District Attorney's Office explained that "[a]fter a thorough review of all

19  the available evidence, including the civil restraining order proceedings, witness

20  statements and the physical evidence, the People are unable to prove the relevant

21  charges beyond a reasonable doubt." Dkt. No. 52-4. The District Attorney also noted

22  that the standard of proof in the civil restraining order proceeding was "very low" and

23  even under that low standard, the allegations could not be proven. Compl. ¶ 145.

24      Bauer then filed this lawsuit alleging a claim for defamation per se and a claim

25  for tortious interference with contracts and business opportunities against Hill based

26  on her false statements. Hill counterclaimed for battery and sexual battery.

27      **B. Background of Subpoenas at Issue.**

28      Hill has issued subpoenas to five women seeking a host of information that

9

encompasses intimate and private communications, photographs, and videos between the women and Bauer. The documents include, without limitation, "[a]ll communications [the woman] has had with Trevor Bauer, or his representative(s), at any time" as well as "[a]ll photographs or videos [the woman] has taken, recorded, or caused to be recorded, depicting Trevor Bauer and [the woman] at any time." In addition, Hill seeks to discover "any accusation by [the woman] of physical violence, abuse, sexual battery, sexual abuse, battery, assault, and/or rape made against Trevor Bauer" as well as "[a]ll documents [the woman] has received from Major League Baseball that address any allegations [the woman] has made against Trevor Bauer." Brown Decl. Exs. A-E.

These subpoenas seek to invade every part of the five women's interactions with Bauer. The requests include information about entirely consensual, private, and intimate interactions. Hill asks this Court to allow her to invade the privacy of these third parties, and to discover everything that Bauer and these Jane Does may have communicated about, regardless of its subject matter or relevance to Hill's claims. Because Hill seeks "all communications" over an unbounded time period, a conversation between Bauer and a Jane Doe about their plans for a random Saturday night would be discoverable. A discussion about a Jane Doe's problems at work, or her family strife, would be revealed. Any texts about sensitive matters—including intimate selfies—would also be disclosed to Hill.

Because Hill asks for each and every photograph and video the women took, or caused to be taken, of Bauer, she would be able to peruse personal photographs and videos of entirely consensual activities. And Hill's request for documents, photographs, and videos of Bauer "hitting" or "choking" women is not limited to nonconsensual acts. Hill's request would include materials showing a consensual slap on the butt during sex or consensual choking during sex.[2]

_____

[2] To state the obvious, consensual "rough" sexual behavior, including hitting and

10

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

The justification Hill has offered for her fishing expedition into Bauer's third party encounters has changed during this litigation. In her motion to compel filed on May 18, 2023, which related to Hill's attempts to seek similar materials from Bauer, Hill argued that evidence concerning third parties was relevant to her "substantial truth" defense for defamation. According to Hill, she could escape defamation liability for her false police report about her sexual encounters with Bauer by showing Bauer's alleged assault of other women. Dkt. No. 103 at 17-19. After Bauer explained that such an argument had no support in logic or defamation law (Dkt. No. 103 at 32-36)[3] and sent Hill's counsel a letter objecting to her subpoenas to the Does (Brown Decl., Ex. H), Hill replied to Bauer's counsel on May 19, 2023 with an entirely new argument: that any and all materials about other women would be admissible as propensity and credibility evidence under Federal Rule of Evidence 415—which allows admission at trial of a defendant's commission of certain similar prior sexual assaults in a case involving sexual assault. According to Hill, "Plaintiff's interactions

_____

choking, is not *per se* battery or sexual assault and is protected by the right to privacy. "Rough" sexual behavior is now mainstream among young adults. A survey of undergraduate students by prominent experts in sexual behavior found that 80% of undergraduates with a current sexual or romantic partner engaged in rough sex with them and most who engaged in it liked it. Herbenick, D., Fu, Tc., Valdivia, D.S. *et al.*, What is Rough Sex, Who Does it, and Who Likes it? Findings from a Probability Sample of U.S. Undergraduate Students, *Archives of Sexual Behavior*, Vol. 50 at 1183 –1195 (2021). About 77% of the respondents included choking a partner within the concept of rough sex. *Id.* In a 2021 national survey of sexual behavior, 43 percent of 25-29 year old men and 36 percent of men in their 30's reported having choked their partner during sex; and nearly 66 percent of women ages 18-24 reported having been choked by their partner during sex. Herbenick, D., Fu, Tc., Patterson, C., Sexual Repertoire, Duration of Partnered Sex, Sexual Pleasure, and Orgasm: Findings from a US Nationally Representative Survey of Adults, *Journal of Sex and Marital Therapy*, Vol. 49 at 369-390 (2023).

[3] For example, the Restatement of Torts states that "[a] specific charge of one crime is not justified by proof of the commission of another crime of the same kind." Dkt. No. 103 at 33 (quoting Restatement (Second) of Torts § 581A, cmt. f. (1977)).

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

and sexual history with others who have raised claims similar to those made by Defendant are clearly relevant and discoverable under FRE 415." Brown Decl., Ex. I.

After receiving the subpoena, Doe 1 reached out to Hill's counsel and Bauer's counsel to object to the subpoena. Doe 1 stated that she objected on privacy grounds and because she has "never had contact or communication with Mr. Bauer in person." Brown Decl., Ex. F. There is no doubt that Doe 1 and Bauer have never had sexual relations or any other physical interactions. Accordingly, Doe 1 does not have any photographs or videos of her and Bauer, and has never made accusations of assault against Bauer.

In the meet and confer, Hill's counsel claimed that Doe 1 received a Snapchat video from Bauer of him purportedly slapping an unidentified woman. JANE DOE 1

JANE DOE 1

Doe 2 has also objected to the subpoena. She has stated that the subpoena "infringes on my right to privacy, and more specifically, my right to sexual privacy under the California Constitution." Brown Decl., Ex. G. She further explained that she has "never publicly accused Mr. Bauer of sexual assault or of any nonconsensual sexual contact" and "never testified in any proceeding concerning Mr. Bauer, including the arbitration proceeding between Mr. Bauer and Major League Baseball." *Id.* Doe 2 emphasized that "any deposition or document production from me—both of which would be against my will—would only serve to harass, embarrass, and humiliate me." *Id.* She also "object[ed] to the use of my name in any public filing regarding this subpoena, as to do so would be nothing shorting of harassment and wholly improper." *Id.* Finally she "strongly urge[d] [Hill] to withdraw the subpoena

12

based on [Doe 2's] objections." *Id.* Bauer is not aware of Hill withdrawing the subpoena to Doe 2.

Bauer anticipates that Hill will contend that the subpoenas for Does 4 and 5 are justified based on discovery from the Pasadena Police Department, anonymous allegations made in the media, and confidential information from the MLB arbitration. But Hill has not contended that any of those Does intend to make public allegations against Bauer, or have consented to the invasion of privacy from the subpoenas. And although Hill has referenced one Doe's testimony in the MLB arbitration, Dkt. No. 103 at 6, that proceeding was confidential. In short, those Does have sought to maintain their privacy and confidentiality with respect to their interactions with Bauer. Hill seeks to obliterate that confidentiality in this lawsuit.

## JANE DOE 3

Brown Decl., Ex. J. Doe 3 recently filed a public lawsuit against Bauer. Bauer responded with a counterclaim for fraud, explaining that Doe 3 fabricated a pregnancy to defraud Bauer, and separately reported to law enforcement her attempts to defraud him. As Bauer explained in his counterclaim, Doe 3 and Bauer had one consensual sexual encounter in December 2020, after which Doe 3 "claimed she was pregnant and later demanded $1.6 million to terminate her pregnancy." Brown Decl., Ex. K, ¶ 1. Bauer did not pay Doe 3 the $1.6 million dollars and instead told her that it was her decision whether to terminate the pregnancy. When Doe 3 then decided to terminate the alleged pregnancy, Bauer reimbursed Doe 3 the medical expenses she claimed to have incurred. Following the publicity of Hill's allegations in the summer of 2021, Doe 3's then-attorneys sent Bauer a demand letter, seeking $3.6 million and asserting, for the first time, alleged improprieties against Bauer. In December 2022, Doe 3 filed her pro se complaint against Bauer.  Brown Decl., Ex. K, ¶ 89.

/ / /

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

## C. <u>Legal Standard.</u>

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery" and "forbidding inquiry into certain matters." To establish good cause, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Vampire Fam. Brands, LLC v. Applebees Restaurants, LLC*, 2020 WL 7380143, at *1 (C.D. Cal. Sept. 30, 2020) (Spaeth, J.). The court has "broad latitude to grant protective orders to prevent disclosure of materials for many types of information." *Id.*

Likewise, under Rule 45, "a Court must quash or modify [a subpoena] if the subpoena requires 'disclosure of privileged or other protected matter.'" *LTC Now, LLC v. Relyfy Corp.*, 2021 WL 9747514, at *4 (C.D. Cal. Feb. 9, 2021) (quoting Fed. R. Civ. P. 45(d)(3)(iii))) (Spaeth, J.). Although "the moving party has the burden of persuasion," the "party issuing the subpoena must demonstrate that the discovery sought is relevant." *Morehead v. City of Oxnard*, 2023 WL 3431277, at *2 (C.D. Cal. Jan. 13, 2023) (Spaeth, J.). A court "will first analyze whether the party issuing the subpoena has demonstrated that the discovery sought is relevant before determining if the moving party has met its burden." *Id.* As the Ninth Circuit observed, "there appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

Because Federal Rule of Evidence 501 mandates that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision," federal courts in diversity actions—like this one—"will apply state law

14

to questions of privilege, including the privilege of privacy," *Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 177 (E.D. Cal. 2022) (citing Fed. R. Evid. 501 and applying California's right to privacy to discovery dispute). Consistent with that rule, federal district courts sitting in diversity in California apply California's right to privacy to discovery disputes. *See id.*; *Crews v. V. Domino's Pizza Corp.*, 2009 WL 10672352, at *5 (C.D. Cal. Aug. 20, 2009). Because the privacy privilege can outweigh a litigant's interest in discovery, "not all relevant information is discoverable." *Makor v. BNSF Ry. Co.*, 2015 WL 13358362, at *2 (C.D. Cal. Jan. 5, 2015).

Article I, section 1 of the California Constitution recognizes the right to privacy, which includes sexual relations. *John B. v. Superior Court*, 38 Cal.4th 1177, 1198 (2006). "The constitutional right of sexual privacy, both within and without the marital relationship, is a fundamental liberty arising from both the United States and the California Constitutions." *Boler v. Superior Court*, 201 Cal.App.3d 467, 473 (Ct. App. 1987). Under California law, "[w]here the case involves an obvious invasion of an interest fundamental to personal autonomy, . . . a 'compelling interest' must be present to overcome the vital privacy interest." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 34 (1994).

Importantly, the California Supreme Court has held that in matters involving a fundamental interest like sexual privacy, the party seeking discovery must satisfy a heightened burden. Where the "plaintiff seeks discovery from a defendant concerning sexual matters protected by the constitutional right of privacy, the intrusion upon sexual privacy may only be done on the basis of *practical necessity* and the compelled disclosure [must] be *narrowly drawn* to assure maximum protection of the constitutional interests at stake." *John B.*, 38 Cal. 4th at 1199 (emphasis added). "It is therefore essential to measure the closeness of the fit between the requested discovery and the allegations of the complaint." *Id.* As shown below, Hill has failed to satisfy those requirements.

15

### D. **Hill's Overbroad Subpoenas Invading Private and Confidential Matters Cannot Overcome The Core Privacy Interests of Bauer And Third Parties.**

Hill's subpoenas to the Jane Does seek information that is at the heart of their, and Bauer's, fundamental interests in privacy and sexual relations. Both Bauer and the Does have a reasonable expectation of privacy in their sexual acts and their private communications, videos, and photographs. The third-party Does are not a part of this litigation, and, to Bauer's knowledge, have not consented to the release of their information to the parties in this case. As a result, the documents, photographs, and videos Hill seeks from the women are a serious invasion of both their and Bauer's core privacy interests.

Because of the significant privacy rights at stake, Hill must show a compelling need for the information and that the information is directly relevant to her claims. She cannot rest her claims on speculation, but rather must come forward with a factual basis justifying her privacy intrusions. *See Fults v. Superior Ct.*, 88 Cal. App. 3d 899, 904 (Ct. App. 1979) ("When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information."). She has failed on all fronts.

### 1. **Hill cannot establish a compelling need for the requested materials.**

Hill cannot—and has not attempted to—establish a compelling need for the serious intrusion into the most intimate areas of Bauer's interactions with the third-party Does. Hill's only argument so far is that a compelling need is inapplicable because "[w]e are in federal court, not California state court." Brown Decl., Ex. I. That position ignores the many California federal district court cases applying the California right to privacy in discovery disputes. *See supra* at pp. 14-15; *see also Lopez v. UPS Supply Chain Sols., Inc.*, 2022 WL 17185002, at *4 (C.D. Cal. June 30, 2022) (applying compelling interest test under California right to privacy to reject discovery inquiries into sexual matters); *Makor*, 2015 WL 13358362, at *3 (applying compelling interest test under California right to privacy and holding that "the court

16

is not willing to subject plaintiff's former partner to discovery at this time").

Hill's overbroad discovery requests are oppressive and harassing. Hill wants to use the power of this Court to dive into every aspect of Bauer's interactions with third parties who have no connection to this matter. There is no rationale for why Hill is entitled to each and every communication, photograph, or video between Bauer and his sexual partners. Such a request goes far beyond her only asserted justification—showing an alleged prior sexual assault—and instead reflects an unhinged fishing expedition that harasses both Bauer and the women. Indeed, if permitted, Hill would obtain all types of highly sensitive personal material—from sexual videos the women may have sent to Bauer to private discussions about family, religion, and politics.

The improper purpose underlying the subpoenas is highlighted by the subpoenas to Does 1 and 2. The subpoena to Doe 1—like the other four—asks for Doe 1 to produce all communications she had with Bauer, all photographs and videos of her and Bauer, and all purported instances of Doe 1 accusing Bauer of sexual assault. But Doe 1 has never had any physical interaction with Bauer, let alone sex with him. *See supra* at p. 12. There are no photographs or videos of her and Bauer; no accusations of assault. *See id*. The wholesale lack of investigation by Hill and her counsel before forcing Doe 1 to appear for a deposition and produce documents shows the absence of any rationale supporting the subpoenas. JANE DOE 1

*See id*. Although Bauer and Doe 1 have communicated in the past, those communications are irrelevant even under Hill's theory because Doe 1 has never accused Bauer of sexual assault. *See John B.*, 38 Cal. 4th at 1200 (emphasizing that it is "essential to measure the closeness of the fit between the requested discovery and the allegations of the complaint").

Hill's claim that Doe 1 has a video of Bauer with an unidentified woman cannot support the subpoena. JANE DOE 1

17

# JANE DOE 1

*See id.* Moreover, Hill's argument in support of the subpoena is that "[Bauer]'s interactions and sexual history with others who have raised claims similar to those made by [Hill] are clearly relevant and discoverable." Brown Decl., Ex. I.  There is no suggestion that the unidentified woman has "raised claims similar to those made by" Hill.

Doe 2 has also objected to her subpoena on multiple grounds, including her right to privacy and because she has "never publicly accused Mr. Bauer of sexual assault or of any nonconsensual sexual contact." Brown Decl., Ex. G. Because Doe 2 is entitled to maintain the confidentiality of her private information, any subpoena would—in her words—"only serve to harass, embarrass, and humiliate me." *Id.* Hill should heed Doe 2's request "to withdraw the subpoena based on [Doe 2's] objections." *Id.* If Hill insists on disregarding Doe 2's privacy rights, the Court should quash the subpoena, in particular because Doe 2 has "never publicly accused Mr. Bauer of sexual assault or of any nonconsensual sexual contact." *Id.*

Hill also has no basis to obtain documents that the Does received "from Major League Baseball that address any allegations" supposedly made by each Doe. The allegations in this case do not turn on Major League Baseball's confidential investigation (or lack thereof) of purported assault allegations against Bauer. As described in prior filings, that investigation involved the application and interpretation of the terms of a collective bargaining agreement. *See* Dkt. No. 103 at 30-32. That agreement, and any confidential investigation undertaken thereunder, has no relevance here. *Id.*

Hill's subpoenas also seek information about acts that have nothing to do with sexual assault, even assuming those acts occurred. The requests for materials concerning "choking" or "hitting" are not confined to nonconsensual choking or hitting. For instance, Hill would require the women to produce a video of a consensual slap on the butt by Bauer during sex. But there is no "practical necessity" to obtain

18

materials showing consensual hitting or choking during sex, *John B.*, 38 Cal. 4th at 1200—activities that are increasingly common sexual practices, *see supra*.

### 2. The significant privacy interests held by the Does and Bauer substantially outweigh Hill's interests.

Even if Hill relies on anonymous allegations from media articles or other confidential discovery sources as support for the subpoenas, the significant privacy interests held by Bauer and the third parties substantially outweigh Hill's interests. *See Boler*, 201 Cal. App. 3d at 473 (party seeking discovery into sexual conduct "must establish more than merely ... a rational relationship to some colorable state interest; [o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation on the right of privacy"). "The courts generally have concluded that the public interest in preserving confidential information outweighs in importance the interest of a private litigant in the absence of considerations involving life or liberty." *City & Cnty. of San Francisco v. Superior Ct. in & for City & Cnty. of San Francisco*, 38 Cal. 2d 156, 163 (1951); *Pearce v. Club Med Sales, Inc.*, 172 F.R.D. 407, 410 (N.D. Cal. 1997) (applying same principle to rejecting discovery of sexual conduct).

For example, in a prior filing, Hill asserted that "[a]t least one other victim, [Doe 4], also participated and testified in the MLB Arbitration." That proceeding, however, was confidential. Hill has not claimed that Doe 4 has consented to being publicly identified[4]—even though Hill has already revealed her identity—or that Doe 4 intends to make public accusations against Bauer. *See Rapp v. Fowler*, 2022 WL 1214778, at *4 (S.D.N.Y. Apr. 25, 2022) (precluding plaintiff from obtaining discovery of individuals' testimony regarding sexual assault accusations made in confidential arbitration). The same holds true for any other Doe who does not intend

---

[4] As in the prior briefing, Bauer is not confirming or denying Doe 4's participation in the arbitration given the confidentiality of that proceeding. Dkt. No. 103 at 35 n.9.

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

to make public claims and who has not consented to have her personal, sensitive information revealed in this litigation. Hill cannot disregard the significant privacy interests of third parties in keeping confidential their identities and sensitive sexual information. *See Makor*, 2015 WL 13358362, at *3 (denying discovery of identity of third party sexual partner who "may be able to provide defendant with relevant information" because the third party "has a strong privacy interest in protecting her sexual history, in protecting her identity as someone who may be HIV positive, and in protecting herself from being subjected to questioning regarding these and related sensitive matters").

The decision in *Boler* is instructive. There, the defendant in a sexual harassment suit sought "to set aside an order of the superior court compelling him to answer certain deposition questions concerning his sexual activity with unnamed women not parties to the lawsuit." *Boler*, 201 Cal. App. 3d at 469. Like Hill here, the *Boler* plaintiff contended that the defendant's prior sexual activity would be relevant to propensity and credibility. The court in *Boler* assumed that the defendant's answers would be relevant to those issues, but nonetheless denied the plaintiff's "unjustified and overbroad intrusion into the sexual privacy of Boler and his unnamed sexual partners." *Id.* at 469, 472. The court held that the discovery would "encompass[] sexual conduct with unknown third parties, which conduct may very well have been voluntary." *Id.* at 474. Although the court would "not assume that all the contacts with these unknown women were necessarily consensual," it also would "not assume that all the sexual contacts were coercive." *Id.* It concluded that "this overbroad inquiry would disclose the intimate details of several persons' private lives without justification." *Id.*

Importantly, *Boler* rejected the notion that a confidentiality order could remedy a privacy invasion. *Id.* at 475 ("The fact that the trial court ordered that the information obtained from Boler not be disclosed, and be filed under seal as confidential, does not cure the intrusion into the sexual privacy interests at stake."). A confidentiality order,

20

the court explained, "is only available *after* valid discovery has been ordered" and the privacy intrusion has already occurred. *Id.* (emphasis in original); *see also Pearce*, 172 F.R.D. at 410 ("A protective order does not cure intrusion into matters of sexual privacy.").

Unlike here, the discovery in *Boler* concerned only the defendant's answering of certain deposition questions concerning his sexual history with prior partners. Hill seeks much more in her requests. She asks the Court to force third parties to disclose messages, videos, and photographs of their sexual encounters with Bauer and to produce documents revealing the substance of all of their interactions with Bauer. That oppressive and harassing discovery includes the women's most private and sensitive information concerning Bauer. The requests capture wholly consensual interactions, as well as private messages having nothing to do with sex. There is no justification—and certainly no compelling need—for such a severe intrusion into the privacy of the third parties and Bauer. The disclosure of such private and confidential information would be significantly prejudicial and harmful to the Does and Bauer and should not be permitted.

### E. Hill's Reliance on Rule 415 Is Misplaced.

Federal Rule of Evidence 415 states that "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation." Rule 415 was adopted by Congress in 1994 as an exception to the general prohibition of character evidence. However, such evidence must still be excluded under Rule 403 if its probative value is outweighed by unfair prejudice, confusion of the issues, misleading the jury, or undue delay. *Martinez v. Cui*, 608 F.3d 54, 60 (1st Cir. 2010) ("We agree with the conclusion, universal among the courts of appeals, that nothing in Rule 415 removes evidence admissible under that rule from Rule 403 scrutiny."); *Frank v. Cnty. of Hudson*, 924 F. Supp. 620, 625 (D.N.J. 1996) ("the fact that an item of proffered evidence fits into FRE 415 does not *ipso facto*

make the evidence relevant or probative of an issue in the case"). Among the appellate courts, the Ninth Circuit is one of two circuits that have required district courts to apply Rule 403 most stringently, with "careful attention to both the significant probative value and the strong prejudicial qualities of this evidence." *Martinez v. Cui*, 608 F.3d at 60 (citing *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000)). Even with Rule 403's stringent safeguards, "[e]ver since their initial proposal, Rules 413–15 have been met with hostility by the legal establishment." *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 151 (3d Cir. 2002).

### 1. Rule 415 may not supplant Bauer's and the Does' robust rights to sexual privacy.

Hill contends that she is entitled to blow past Bauer's and the women's right to sexual privacy because Rule 415 somehow renders that right—which is zealously safeguarded under California law, *see supra*—irrelevant. Hill has not explained how a rule governing admissibility, not discovery, could entitle her to such deeply invasive discovery without any consideration of the privacy rights implicated. While Rule 415 may have some bearing on what is relevant, it does not permit a court to disregard Bauer's and the Does' sexual privacy rights. *See Boler*, 201 Cal. App. 3d at 472 ("We may assume relevancy without deciding the issue. Even if the subject matter of the trial court's order is relevant, the order violates accepted principles of sexual privacy."); *Frank*, 924 F. Supp. at 624 (explaining that "evidence proffered under [Rule 415] must still be shown to be relevant, probative and 'legally relevant' under FRE 403," meaning the considerations of privacy versus a compelling need for the information still apply). *See also Rapp v. Fowler*, 2021 WL 5910288, at *2 (S.D.N.Y. Dec. 13, 2021) (finding that "Spacey's interest in the privacy of his most personal and intimate relations" and "[t]he interests of those involved in [prior] incidents or in relations with Spacey who do not wish to be identified, publicly or otherwise, or who do not wish to become embroiled in this controversy" were both legitimate considerations in prohibiting discovery into past accusations against actor Kevin

22

Spacey of sexual misconduct).

Indeed, in *Rapp v. Fowler*, a New York district court held that—despite Rule 415—the plaintiff could not seek discovery concerning defendant Kevin Spacey's sexual history unless the identity of the past sexual partner had been voluntarily disclosed by that past partner or had otherwise become public through a prior lawsuit or published media report.[5] The court was understandably unwilling to drag Spacey's past sexual partners who wished to remain private into the lawsuit, even taking Rule 415 into account.

The *Fowler* court emphasized that "the interests of non-parties weigh[ed] heavily in the balance." 2021 WL 5910288, at *2. Those interests included not only individuals who had consensual relationships with Spacey but also "persons who had interactions with Spacey that were involuntary, or not entirely consensual, who nevertheless place a substantial premium on their anonymity and their privacy, even where testifying might assist [the plaintiff] in pursing this civil lawsuit." *Id.* Although the plaintiff proposed keeping the third parties' identities confidential—something Hill has not even suggested here—the court concluded that such a proposal "would not protect anyone who was mistreated by Spacey, but who nevertheless wishes to remain silent, from becoming an unwilling subject of approaches by [plaintiff]'s counsel and investigators, from being served with subpoenas, from being required to give a deposition, and from being called as a witness at trial." *Id.* at *3. Accordingly, the court held that the third parties and Spacey "have substantial privacy interests in their most intimate personal relationships that outweigh any legitimate interest of the plaintiff in pursuing those matters," including under Rule 415, unless the third parties' claims or allegations were already publicly disclosed. *Id.*

*Fowler* shows that Hill's discovery requests—even ignoring California's robust privacy protections—are improper and not supported by Rule 415. Only one

_____

[5] Here, the privacy protections under the California Constitution are stronger than those applied under New York law, so this analysis applies even more forcefully.

23

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

of the subpoenaed women, Doe 3, has made her identity public in a lawsuit in which Bauer has filed a counterclaim for fraud and also initiated a criminal complaint against Doe 3. The other four women have never publicly disclosed their identities, despite Hill outing one of them, Doe 4, in a prior public filing in this case. Hill has not claimed that the four Does intend to publicize any purported accusations of sexual assault against Bauer, let alone produce all of their private communications, videos, and photographs regarding him to Hill. Instead, two of those four women have already objected on privacy grounds. Like in *Fowler*, this Court should not force third parties to identify themselves and produce sensitive and intimate communications, videos and photographs to cater to Hill's fishing expedition. In particular, individuals may not be open about disclosing their preferences for rough sexual activities. The law does not permit Hill to use Rule 415 as a basis to run roughshod over Bauer and the women's privacy protections and to compel Bauer and his past sexual partners to share the most private details of their sexual history against his and their wills.

### 2. Even under Rule 415, Hill has made no showing that would permit the vastly intrusive discovery she seeks.

Even if the Court ignored the substantial privacy interests of Bauer and the Does—which it should not—Rule 415 does not support the broad discovery Hill seeks. As an initial matter, to state the obvious, the only discovery that could ever possibly be justified under Rule 415 would be discovery about other sexual assaults. *See Glanzer*, 232 F.3d at 1268 ("the evidence being proffered must relate to the commission of another offense of sexual assault"). Rule 415 does nothing to help Hill's position that she is entitled to all communications, photographs, and videos between Bauer and the women, or information about consensual sexual relations. It also does not support discovery into purported allegations of "physical violence" that have no relation to sexual assault.

Even limiting the analysis to the portions of the subpoenas that do ask about purported sexual assault allegations, Rule 415 still has limits that prevent Hill from

24

seeking this discovery. To determine whether evidence of a past sexual assault is admissible under FRE 415,[6] the Ninth Circuit has instructed courts to consider the following non-exhaustive factors: (1) the similarity of the other acts to the acts charged; (2) the closeness in time of the other acts to the acts charged; (3) the frequency of the other acts; (4) the presence or lack of intervening circumstances; and (5) the necessity of the evidence beyond the testimonies already offered at trial. *See United States v. LeMay*, 260 F.3d 1018, 1027–28 (9th Cir. 2001); *Glanzer*, 232 F.3d at 1268 (noting that "[i]n light of the sensitive nature of the evidence proffered, it is important that the district court fully evaluate the factors enumerated above, and others that might arise on a case-by-case basis").

Given the colossal potential for prejudice in permitting testimony about past acts (especially uncharged acts), courts are rightfully very cautious about admitting such evidence. While uncharged conduct can be admissible under Rule 415, courts place stronger limits on its admissibility to ensure that the plaintiff may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 152 (3d Cir. 2002) (citing *Huddleston v. United States,* 485 U.S. 681, 689 (1988)). Moreover, seeking to introduce evidence of uncharged conduct often requires a district court to "conduct a 'trial within a trial' to determine the veracity of the proffered evidence," which courts view as a reason to exclude such evidence. *Id.*[7]

---

[6] The relevant inquiry here is what is *discoverable* in light of Rule 415, but as Rule 415 is a rule of evidence, the case law is almost exclusively in the context of admissibility considerations. As discussed herein, the case law on admissibility demonstrates that Hill has made no showing that the information she seeks could lead to relevant, admissible evidence.

[7] This rings especially true here. If the Court allows discovery from the Does, the parties will expend massive resources seeking to uncover through the discovery process what, if anything, occurred between Bauer and them. This would include

Thus, courts regularly exclude such evidence regarding uncharged conduct when the *LeMay* factors (which are the same in almost every other circuit) are not met, even if it is a close call. In *United States v. Bunty*, the court refused to admit Rule 415 evidence because the prior acts involved different types of child molestation, significant time had passed, and "intervening events may have impacted memories, biases, and motives with respect to M.B.'s testimony." *United States v. Bunty*, 617 F. Supp. 2d 359, 376 (E.D. Pa. 2008). In *Johnson v. Elk Lake School District*, where claims were brought against a high school guidance counselor for alleged sexual abuse of a student, the Third Circuit affirmed the district court's decision to exclude evidence about an uncharged prior incident in which the counselor allegedly touched the crotch of a female school employee while lifting her onto his shoulders because of the uncertainty in the testimony about the prior incident and the dissimilarities between that incident and the present alleged act. 283 F.3d 138, 157 (3d Cir. 2002). And in *Frank v. County of Hudson*, the court issued a protective order disallowing discovery on unsubstantiated claims that the defendant had sexually assaulted his stepdaughter because those claims were too dissimilar from the claims at issue of workplace sexual harassment and the time lag between the events was ten years. 924 F. Supp. at 627.

Here, Hill has made even less of a showing that the discovery she seeks is relevant than the respective parties unsuccessfully made in *Bunty*, *Johnson*, and *Frank*. Even assuming some of the women are accusing Bauer of anything (which some are not), Hill has yet to make a showing as to how those alleged accusations

---

seeking discovery from any witnesses with knowledge of Bauer's prior relationships with the Does, as well as fulsome document and deposition discovery about what occurred. Put simply, discovery in this case would amplify five-fold because Bauer would have no choice but to defend himself against any unproven allegations from any of the Does with a similar amount of resources he is expending to defend against Hill's claims. This enormous discovery undertaking would unduly delay the case, only to result in five lengthy trials-within-trials if the evidence were to be admitted.

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

would possibly satisfy the requirements of Rule 415. *See Frank*, 924 F. Supp. at 625 ("Evidence of prior conduct is admissible pursuant to FRE 415 only where both the prior conduct and the offense charged in the case for which the evidence is offered constituted sexual assault or child molestation.").

At bottom, without the prerequisite showing that any of the women are publicly maintaining claims against Bauer that qualify as sexual assault, none of the discovery Hill seeks can be relevant for any purpose, nor would there be any legitimate need to take discovery from these women. Hill may not go on a fishing expedition into the most private details of Bauer's and his past sexual partners' lives solely based on a hope that she will be able to meet Rule 415's requirements down the road. Given that Hill has not met her burden to show that any of the discovery she seeks is relevant or could lead to relevant, admissible evidence, the subpoenas must be quashed.

## HILL'S POSITION

### I.    FACTUAL BACKGROUND

#### A.    Bauer Sexually Assaults Hill.

Hill's Counterclaims against Bauer concern two separate violent batteries and sexually batteries/assaults committed by Bauer against Hill.  During the first battery on April 22, 2021, Bauer used Hill's hair to choke Hill to a point of unconsciousness. (Counterclaim, ¶¶ 14-17).  When Hill was regaining consciousness, she awoke to discover Bauer anally penetrating her without her consent which resulted in severe pain and bleeding.  (Counterclaim, ¶¶ 18-19, 21-22).

During the second battery on May 16, 2021, Bauer again used Hill's hair to twice choke Hill to the point of unconsciousness.  (Counterclaim, ¶¶ 24-30).  When Hill was regaining consciousness the first time, she awoke to Bauer forcefully and repeatedly punching her in the face with a closed fist.  (Counterclaim, ¶ 28).  Bauer then strangled Hill once again. (Counterclaim, ¶29).  When Hill was regaining consciousness the second time, she awoke to Bauer spreading her knees to expose her vagina.  (Counterclaim, ¶ 31).  Bauer then began to forcefully and repeatedly punch

Hill's vagina and groin area with a closed fist.  (*Id.*).  At some point while Hill was unconscious, Bauer also forcefully hit Hill in her buttocks.  (Counterclaim, ¶ 33).  Hill was hospitalized as a result of the serious bodily injuries that she suffered from Bauer during the May 16 incident.  (Counterclaim, ¶ 34).

**B.    JANE DOE 4 .**

JANE DOE 4  is another victim of Bauer's batteries and sexual assaults.  In 2022, JANE DOE 4  was voluntarily interviewed by the Washington Post and disclosed information about her interactions with Bauer which resulted in a Washington Post article and a Yahoo Sports article that publicly detailed JANE DOE 4 's accusations of sexual assault against Bauer, including Bauer sexually assaulting JANE DOE 4  after he had choked her unconscious.  (Kaplan Decl., Ex. 3-4).

JANE DOE 4  told the Post that during initially consensual sex with Bauer, "things happened outside of my consent."  (Kaplan Decl., Ex. 3).  JANE DOE 4  provided the Post with several graphic examples.  According to the Post, Bauer choked JANE DOE 4  to the point of unconsciousness on multiple occasions while they were having sex.  (*Id.*).  JANE DOE 4  told the Post that "**Bauer began choking her unconscious during sex without them ever speaking of it first**."  (*Id.*) (Emphasis added).  Later on, JANE DOE 4  told Bauer that "she was okay with him choking her 'to a certain point,' which was when she looked as though she was about to pass out."  In 2014, JANE DOE 4  was "convulsing on their hotel room bed" after Bauer choked her unconscious.  (*Id.*).  JANE DOE 4  told the Post that Bauer "continued to choke her to unconsciousness in ensuing sexual encounters." (*Id.*).  JANE DOE 4  told the Post that although she and Bauer agreed that Bauer would stop choking her before she passed out, "**he frequently ignored her warnings** … ." (*Id.*) (Emphasis added).  JANE DOE 4  told the Post that she "**passed out**" "**dozens of times**" after being choked by Bauer during sex.  (*Id.*) (Emphasis added).

JANE DOE 4  also told the Post that "[Bauer] also slapped her without her consent and **anally penetrated her while she was unconscious** … ." (*Id.*) (Emphasis added).  Notably, JANE DOE 4  told the Post that "**at times when she regained consciousness, she**

**found that Bauer was anally penetrating her without consent**.” (*Id*.) (Emphasis added). <sup>JANE DOE 4</sup> also told the Post that there were “multiple times” when Bauer “struck her without her consent.” (*Id*.).   <sup>JANE DOE 4</sup> described pain and discomfort that Bauer caused her.  For example, “<sup>JANE DOE 4</sup> said that after sex, she often had an aching throat from being choked or pain in her collarbone caused by the strength of his arm.” (*Id*.).

The Post article also indicates that <sup>JANE DOE 4</sup> has a video evidencing Bauer’s sexual assault.  (*Id*.).   For example, <sup>JANE DOE 4</sup> told the Post that she has a video “that shows [Bauer] choking her during sex as she struggled to escape.” (*Id*.).   <sup>JANE DOE 4</sup>’s attorney also described a video depicting “‘<sup>JANE DOE 4</sup> clearly struggling to breathe and tapping his arm to let go, and you see her skin color darkening,” (*Id*.).

The Washington Post article confirms that <sup>JANE DOE 4</sup> spoke with MLB attorneys and shared her allegations with them.  (*Id*.).

Since 2021, Hill has been in contact with <sup>JANE DOE 4</sup> and has had numerous conversations with <sup>JANE DOE 4</sup>.  (Hill Decl., ¶¶ 3-9).  During <sup>JANE DOE 4</sup>’s conversations with Hill, <sup>JANE DOE 4</sup> disclosed her name and certain details about her sexual encounters with Bauer, JANE DOE 4                                              . (*Id*.). <sup>JANE DOE 4</sup>

JANE DOE 4

(*Id*.).   JANE DOE 4


(Hill Decl., ¶ 7).   JANE DOE 4

(*Id*.).   <sup>JANE DOE 4</sup> also disclosed to Hill that she was one of the victims that had come forward to the Washington Post, and that one of the Washington Post articles reported on her encounters with Bauer.  (Hill Decl., ¶ 3).

<sup>JANE DOE 4</sup> also told Hill that she cooperated with MLB, and voluntarily testified about her sexual encounters with Bauer at the MLB arbitration.  (*Id*. at ¶ 9).  <sup>JANE DOE 4</sup>

JANE DOE 4

29

1    (*Id*.).

2    **C.    JANE DOE 3.**

3        JANE DOE 3 is another victim of Bauer's batteries and sexual assaults.  In

4    December 2022, <sup>JANE DOE 3</sup> publicly filed a civil lawsuit against Bauer in the Superior

5    Court of Arizona in Maricopa Country (the "Arizona Action") alleging "assault and

6    sexual assault from 2020 to 2021." (Kaplan Decl., Ex. 5).  In February 2023, <sup>JANE DOE 3</sup>

7    filed an Amendment in the Arizona Action providing the court with a signed

8    supplemental statement of facts which she stated, under penalty of law, were true and

9    correct.  (Kaplan Decl., Ex. 6).  In that Amendment, <sup>JANE DOE 3</sup> graphically detailed

10   several incidents of abuse, including rape by Bauer, between November 2020 and

11   March 2021.  <sup>JANE DOE 3</sup>'s accusations can be summarized as follows:

12       During several incidents during that timeframe, Bauer choked <sup>JANE DOE 3</sup> and/or

13   engaged in similar violent conduct to control <sup>JANE DOE 3</sup>.  For example, in one instance,

14   Bauer choked <sup>JANE DOE 3</sup>, in another instance put her in a "vulnerable position where it

15   was extremely difficult to breathe," in another instance put her in a "grappling hold"

16   and "pinning [her] down on the bed," and in another instance "began to smother [her]

17   with his arms only to progress it into a chokehold." (Kaplan Decl., Ex. 6).

18       Critically, <sup>JANE DOE 3</sup> details how Bauer choked her unconscious and violently

19   raped her on December 14, 2020.  After Bauer undressed <sup>JANE DOE 3</sup> "without [her]

20   consent," Bauer "Bauer yanked [her] down to [her] back." (*Id*.).  Bauer began to

21   perform "aggressive oral sex." (*Id*.).  <sup>JANE DOE 3</sup> was "shocked and tried to close [her]

22   legs several times but [Bauer] kept prying them open and swatting [her] hand away, to

23   the point [she] gave up and hoped that it will end soon." (*Id*.).  After <sup>JANE DOE 3</sup> later

24   voiced her lack of consent, Bauer "rip[ped] [her] legs apart and begin spitting in [her]

25   vagina while forcing his nails in [her]!" (*Id*.).

26       After that, "[Bauer] then got in the bed and pulled [her] down." (*Id*.).  "**Bauer**

27   **beg[an] to chock [sic] me out**." (*Id*.) (Emphasis added).  <sup>JANE DOE 3</sup> tried to stop him

28   "by clutching onto his inclosed [sic] fist while around [her] neck while pinning [her]

30

1    down." (*Id.*).  Bauer would later "began forcing himself into [her] again, violently."
2    (*Id.*).  "[Bauer] flipped [her] over, slapped [her] every which way on [her]
3    back/backside that he could make contact with." (*Id.*).  After <sup>JANE DOE 3</sup> began
4    screaming, "[Bauer] pushed [her] head into the pillow to quiet her …" (*Id.*).  **Bauer**
5    **then used [**<sup>JANE DOE 3</sup>**'s] hair to choke [her] unconscious while having sex with her**.
6    Specifically, **"[Bauer] then takes [her] butterfly braids and uses them as a rope to**
7    **choke [her] unconscious with [her] hair**." (*Id.*)(Emphasis added).  After <sup>JANE DOE 3</sup>
8    was "conscious yet delirious, [she] recalls being on her back while hearing  [Bauer]
9    yell unusual sounds/moaning. (*Id.*).  Bauer then finished. (*Id.*).

10           **D.    JANE DOE 2        .**

11           JANE DOE 2       is another victim of Bauer's batteries and sexual assaults.
12   JANE DOE 2 through her representatives, also spoke with the Washington Post and
13   disclosed information about <sup>JANE DOE 2</sup>'s sexual encounters with Bauer in 2017 and
14   2018.  (Kaplan Decl., Ex. 1).  In a Washington Post article, the Post provided details
15   about Bauer's assault of <sup>JANE DOE 2</sup> during sex and intent to sexually assault her while
16   she was unconscious, including corroboration from <sup>JANE DOE 2</sup>'s representatives and
17   attorneys.  (*Id.*).

18           Notably, the Post detailed photographs of <sup>JANE DOE 2</sup> which "show bruises on
19   the woman's face and blood in her eyes, which her attorney said were caused by Bauer
20   **punching and choking her during sex without consent**." (*Id.*) (Emphasis added).
21   The Post further described these photos as follows: "The photos show the corners of
22   the woman's eyes flooded with blood that reached her irises." (*Id.*).   <sup>JANE DOE 2</sup>'s
23   representative and attorney confirmed "[t]hat choking occurred without consent during
24   sex with Bauer." (*Id.*).   The Post referenced other "photos that appeared to show her
25   face with dark bruises on her cheeks and around her left eye." (*Id.*).   <sup>JANE DOE 2</sup>'s
26   representative and attorney further confirmed that **"[t]he injuries were from Bauer**
27   **striking her without her consent during sex in 2018**." (*Id.*) (Emphasis added).
28           The Post also detailed messages that Bauer sent to <sup>JANE DOE 2</sup>.  In one Snapchat

31

message, Bauer expressed his plan and desire to choke her unconscious and sexually assault her while she was unconscious: "Like the only reason I'd ever consider seeing you again **is to choke you unconscious punch you in the face shove my first up your a-- skull f--- you and kick you out naked**. And obviously I would never do something like that to anyone. So cant even enjoy the one thing I sometimes enjoyed with you." (*Id.*) (Emphasis added).  In another message, Bauer told JANE DOE 2 that "I don't feel like spending time in jail for killing someone," and "that's what would happen if I saw you again." (*Id.*).

The Post Article confirms that JANE DOE 2 was cooperating with MLB's investigation of Bauer.  (*Id.*).

Through discovery in this lawsuit, JANE DOE 2

Since 2021, Hill has been in contact with JANE DOE 2 and has had numerous conversations with JANE DOE 2.  (Hill Decl., ¶¶ 10-14).   During JANE DOE 2's conversations with Hill, JANE DOE 2 disclosed her name and certain details about her sexual encounters with Bauer, JANE DOE 2

(*Id.*).   For example, JANE DOE 2

(*Id.*). JANE DOE 2

. (*Id.*).

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

JANE DOE 2 also disclosed to Hill that she was one of the victims who had her representative speak to the Washington Post and that one of the Washington Post articles reported on her encounters with Bauer.  (*Id*.).  JANE DOE 2 also disclosed that, like Hill, she had spoken to MLB about her sexual encounters with Bauer.  (Hill Decl., ¶ 15).

**E.**   JANE DOE 1.

# JANE DOE 1

JANE DOE 1

**F.**    JANE DOE 5.

In approximately 2021, JANE DOE 5 reached out to Hill's former counsel, Doreen Olson, about JANE DOE 5's sexual interaction with Bauer.  (Kaplan Decl., ¶¶ 7-8). They spoke by telephone.  (*Id*.).   During that call, JANE DOE 5 voluntarily disclosed her identity  and  JANE DOE 5

. (*Id*.).  JANE DOE 5

## II.    HILL IS ENTITLED TO DISCOVERY FROM AND ABOUT BAUER'S OTHER VICTIMS

### A.    Hill is Entitled to Discover Evidence of Bauer's Prior Sexual Assaults Under Rule 415.

Evidence that Bauer has "sexual assaulted" other victims by engaging in non-consensual sexual acts with those victims is directly relevant under Rule 415 to prove that Bauer has a propensity to engage in such conduct, and in turn, that he sexual assaulted Hill in a similar manner while Hill was unconscious or partially conscious.

Rule 415 permits Hill to present evidence of Bauer's other sexual assaults to prove Bauer's "propensity" to sexually assault Hill.  *United States v. Redlightning*, 624 F.3d 1090, 1119 (9th Cir. 2010); *United States v. Door*, 663 F. App'x 570, 572 (9th Cir. 2016); *Blind-Doan v. Sanders*, 291 F.3d 1079, 1082 (9th Cir. 2002).  Fed. R. Evid. 413 ("Rule 413") (criminal) and Rule 415 (civil) were passed to supersede and make

34

an exception to Fed. R. Evid. 404(b), which imposed a blanket prohibition on propensity evidence. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1267-68 (9th Cir. 2000); *United States v. Guardia*, 135 F.3d 1326, 1329 (10th Cir.1998).

Rule 415 provides that in "a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation." Fed. R. Evid. 415(a). Rule 415 additionally provides that such "evidence may be considered as provided in" Rule 413, which is the criminal counterpart, and "does not limit the admission or consideration of evidence under any other rule." *Id*. Rule 413 instructs that evidence introduced under Rule 415 "may be considered on any matter to which it is relevant." Fed. Rule of Evid. 413(a). That includes defendant's propensity to commit the sexual assault complained of in the underlying civil action. *See United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001) (noting that "Rules 413 through 415 ... remov[e] the longstanding ban on propensity evidence in criminal" and civil trials). Rule 415 allows a litigant to present evidence of both charged and uncharged conduct. *See McMahon v. Valenzuela*, No. 214CV02085CASAGRX, 2015 WL 7573620, at *3 (C.D. Cal. Nov. 25, 2015)("Accordingly, the fact that plaintiff seeks to admit evidence of allegations (uncharged offenses) does not preclude the admission of such evidence under Rule 415.").

### B. The Subpoenas Seek Admissible Evidence that Bauer Sexually Assaulted the Victims or Other victims.

Bauer correctly contends that Rule 415 only justifies discovery into Bauer's prior "sexual assaults" as that term is defined under Rule 413. That is precisely what Hill seeks to discover through both the subpoenas at issue and other discovery in this lawsuit. Indeed, Bauer does not seem to dispute that JANE DOE 4, JANE DOE 3, JANE DOE 2 and JANE DOE 5 have accused him of multiple "sexual assaults" and that those accusations are relevant under Rule 415.

"Sexual assault," as defined by Rule 413(d), includes Bauer's sexual acts while

35

his victims were unconscious, even if those victims initially provided consent. Accordingly, not only is Hill entitled to discover facts that Bauer engaged in certain non-consensual sexual acts with the Victims, she is also entitled to discover the circumstances that would render those acts non-consensual, including the fact that Bauer would frequently choke his victims during sex until they were unconscious and they could no longer consent.  Hill is also entitled to discover additional evidence of Bauer's plan, intent and desire to commit those crimes, including his messages to victims telling them he wants to engage in sexual conduct with them while they are unconscious.

Rule 413(d)'s definition of "sexual assault" includes a number of sex crimes under both state or federal law.  Fed. R. Evid. 413(d).  In particular, under Rule 413(d)(1), "sexual assault" is defined as "a crime under federal law … involving: (1) any conduct prohibited by 18 U.S.C. chapter 109A." Fed. R. Evid. 413(d)(1).  Under Section 413(d)(1), a defendant's conduct need not satisfy the jurisdictional requirements of chapter 109A to qualify as a sexual assault for purposes of Rule 413. *See United States v. Shaw*, No. 22-CR-00105-BLF-1, 2023 WL 2815360, at *6-8 (N.D. Cal. Apr. 5, 2023).  Rather, Rule 413 only requires that the conduct he prohibited by Chapter 109A.  *See id*. ("The words 'conduct prohibited by' indicate that the Court must look at the *conduct* of the Defendant, regardless of the location of that conduct.").

Additionally, Rule 413's definition of "sexual assault" also includes any state law crime "… involving: (2) contact, without consent, between any part of the defendant's body--or an object--and another person's genitals or anus; (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body; [or] (4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person[.]" Fed. R. Evid. 413(d)(2)-(4).

Here, Bauer does not dispute that the accusations of sexual misconduct made by JANE DOE 4 , JANE DOE 3 , JANE DOE 2 and JANE DOE 5 , if true, constitute serious criminal conduct that is prohibited by both chapter 109A and California law.  In particular, Bauer's non-

36

consensual sexual acts with JANE DOE 4, JANE DOE 3 and JANE DOE 2 while they were underlined unconscious qualify as criminal conduct under both chapter 109A and California law. For example, 18 U.S.C.A. § 2241(b)(1), entitled "Aggravated Sexual Abuse," makes it a crime to knowingly render another person unconscious and thereby engage in a "sexual act" with that other person.   18 U.S.C.A. § 2242(2)(B), entitled "Sexual Abuse," makes it a crime to knowingly engage in a "sexual act" with a person if that other person is "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." 18 U.S.C.A. § 2242(3) also makes it a crime to knowingly engage in a "sexual act" with a person without that other person's consent.   18 U.S.C.A. § 2244, entitled "Abusive Sexual Contact" makes it a crime to knowingly engage in "sexual contact" with another person without that other person's permission.  *See* 18 U.S.C.A. § 2244.

Under California law, even if a victim provides advance consent, unconsciousness negates consent because it prevents the victim from withdrawing from the activity.  *See People v. Miranda*, 62 Cal. App. 5th 162, 175 (2021) ("Because the law does not recognize an unconscious person's advance consent to a rape, making the sexual act a crime, it is a battery to intentionally commit that act even if there was advance consent. … Where sex with an unconscious person is a rape and thus unlawful regardless of consent, it is not reasonable to believe that it is lawful, so the touching is a battery, just as it is a rape.").  Moreover, a victim need not be "totally and physically unconscious" to negate consent.  *See People v. Ogunmola*, 193 Cal. App. 3d 274, 279 (1987); *Boro v. Superior Ct.*, 163 Cal. App. 3d 1224, 1228 (1985).  California Penal Code § 261(a)(4), defines rape to mean sexual intercourse when the victim is "unconscious." California Penal Code § 289(d), entitled "Forcible acts of sexual penetration; punishment," criminalizes sexual penetration if the victim is "unconscious."[8]

---

[8] Each of the above provisions defines the phrase "unconscious of the nature of the

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A
PROTECTIVE ORDER

Accordingly, Hill has demonstrated that the accusations that Bauer sexually assaulted JANE DOE 4, JANE DOE 3 and JANE DOE 2 JANE DOES 2, 3, and 4 are highly relevant under Rule 415.  Moreover, Bauer's JANE DOES 3 and 5

constitute both Abusive Sexual Contact under chapter 109A (*See* 18 U.S.C.A. § 2244) and a sexual battery under California law (*See* Penal Code § 243.4 (e)).[9]

Finally, although JANE DOE 1

### C.   <u>Bauer Cannot Use Rule 403 to Prevent Hill from Discovering Evidence of Bauer's Prior Sexual Assaults.</u>

Bauer also contends that even though Bauer's prior sexual assaults are admissible under 415, they can be excluded under Fed. R. Evid. 403 ("Rule 403") if the probative value of such evidence is outweighed by unfair prejudice.  Similarly, Bauer contends that the Court must consider the five *LeMay* or *Glanzer* factors, which are addressed in the context of Rule 403,[10] to determine whether to admit evidence of

---

act" to mean that the victim is "incapable of resisting" because the victim meets one of four conditions, including that the victim "[w]as unconscious or asleep" or "[w]as not aware, knowing, perceiving, or cognizant that the act occurred." Penal Code §§ 261 (a)(4)(A)-(B) and 289 (d)(1)-(2).

[9] Penal Code § 243.4 prohibits the touching of another person's "intimate part," which includes the buttocks.

[10] The five factors are considered by court when determining whether Rule 415 or 413 evidence should be excluded under Rule 403.  *See Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1268 (9th Cir. 2000); *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001); *United States v. Lane*, No. CR1808295001PCTGMS, 2019 WL 2410809, at *1 (D. Ariz. June 7, 2019)

38

Bauer's other sexual assaults under Rule 415.  Finally, Bauer contends that courts should be more "cautious" when prior acts of sexual assault are uncharged.  That the Court may exclude such evidence under Rule 403 does not preclude Hill from obtaining otherwise relevant evidence.

First, citing *Johnson v. Elk Lake Sch. Dist*., 283 F.3d 138, 152 (3d Cir. 2002), Bauer incorrectly claims that the Court must be more "cautious" about the admission of uncharged acts.  Bauer, however, ignores that *Johnson* held that admission of uncharged conduct does <u>not</u> require that a trial judge make a finding by a preponderance of the evidence that defendant committed the other assault.  *See Johnson,* 283 F.3d at 152-155.  Rather, Rule 415 evidence of prior uncharged sexual assaults are admissible as long as the court concludes that a reasonable jury <u>could</u> make such a finding.  *See Johnson,* 283 F.3d at 152-154 ("As such, a trial court considering evidence offered under Rule 415 must decide under Rule 104(b) whether a reasonable jury **could find** by a preponderance of the evidence that the past act was an 'offense of sexual assault' under Rule 413(d)'s definition and that it was committed by the defendant.") (Emphasis added).  As discussed above, the Victims, except <sup>JANE DOE 1</sup>, have accused Bauer of conduct that qualifies as sexual assaults.  Moreover, <sup>JANE DOE 1</sup>

JANE DOE 1                                        . Bauer fails to present any reason why a reasonable jury **could not** find by a preponderance of the evidence that Bauer sexually assaulted these victims.

Second, Bauer's Rule 403 and *LeMay* argument is premature, and places the proverbial cart before the horse.  Before the Court can possibly rule on the potential prejudicial effect of any evidence of Bauer's other sexual assaults, the Court will need to actually consider such evidence once it has been marshalled by Hill through discovery.  Of course, this should be done through a motion *in limine*, not through a discovery motion before the evidence has even been gathered, and the five *LeMay* factors can be balanced.  None of the cases cited by Bauer in support of his Rule 403 argument considered whether a litigant in a sexual assault case is permitted to <u>pursue</u>

39

1  discovery of a defendant's other similar sexual assaults under Rule 415.[11]

2    Third, even if the Court were to consider the prejudicial effect of Bauer's other

3  sexual assaults on a jury, Bauer has failed to identify any reason why such evidence

4  would be prejudicial and would prevent Hill from pursuing such discovery.  Bauer fails

5  to undertake any analysis of the five *LeMay* factors or supply any reasoning why the

6  evidence that Hill seeks is unlikely to be admissible.  In fact, Bauer conspicuously

7  makes a conscious effort to avoid any discussion about the substance of the accusations

8  and what he has actually been accused of.   In any event, the five *LeMay* factors each

9  weigh strongly in favor of admission of the contemplated evidence of Bauer's other

10 sexual assaults.

11     **1.**  **The similarity of the acts to the acts charged.**

12   Because Bauer's sexual assault of Hill and Bauer's sexual assault of the victims

13 are strikingly similar, this factor strongly favors admission of such contemplated

14 evidence.  Almost all of Bauer's sexual assaults at issue involve Bauer ████████

15 ████████████████████████████████████████████████

16

---

17 [11] At most, *Frank v. Cnty. of Hudson*, 924 F. Supp. 620 (D.N.J. 1996), granted a
18 protective order concerning the <u>further</u> use of a written statement from a defendant's
   stepdaughter detailing alleged sexual abuse by the defendant during her childhood that
19 was already obtained by the plaintiffs' counsel.  Moreover, *Frank* is easily
20 distinguishable as *Frank* found that any evidence of the stepdaughter's abuse years
   earlier simply had little to no relevance and probative value to whether the defendant
21 sexually harassed adults years later.  *See Frank*, 924 F. Supp. at 625-626.  Further,
22 *Frank* found that Rule 415 had little application under the facts of that particular case,
   but would in the typical sexual assault case.  *See Frank*, 924 F. Supp. at 627 ("More
23 importantly, this is not the classic sort of case for which FRE 415 was enacted. The
24 drafters of the legislation justified their sharp departure from the ordinary presumption
   against propensity evidence largely because of the inherent difficulties of proving
25 sexual offenses where the trial devolves into a swearing contest between defendant and
26 alleged victim because there are no other witnesses. FRE 415 was designed in large
   part to help the victims of sexual assault prevail in such swearing contests by allowing
27 them to rebut defendants' arguments of consent or lack of intent with evidence that
28 they have been accused before.")

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

1 ██████████████████████████████████████████████

2 ██████████

3     To summarize, after choking Hill to the point of unconsciousness when Hill

4 could no longer provide consent, Bauer violently sexually assaulted Hill while she was

5 unconscious and partially conscious by engaging in non-consensual anal sex with Hill

6 and by repeatedly punching Hill's vagina and groin area with a closed fist and

7 forcefully hitting Hill in her buttocks.

8     Similarly, Bauer JANE DOE 4

9

10

11

12

13           . Similarly, Bauer also JANE DOE 3

14

15

16       . Similarly, Bauer JANE DOE 2

17

18

19                                             . Bauer

20 also JANE DOE 5

21              .  JANE DOE 1

22

23     JANE DOE 1

24

25

26

27

28 / / /

**2.**  <u>**The closeness in time of the prior acts to the acts charged**</u>.

This factor also weighs in favor of admission of the contemplated evidence. *See United States v. Lane*, No. CR1808295001PCTGMS, 2019 WL 2410809, at *2 (D. Ariz. June 7, 2019) (admitting evidence that had occurred nine years earlier).  Bauer sexually assaulted Hill in April and May 2021.  The JANE DOE 3 assault occurred a few months earlier in December 2020. The JANE DOE 4 assaults occurred in 2013-2014. The JANE DOE 2 assaults occurred in 2017-2018. The JANE DOE 5 assault occurred in 2018.

**3.**  <u>**The frequency of the prior acts and intervening circumstances**</u>.

Multiple prior acts weigh in favor of admissibility.  *See United States v. Thornhil*l, 940 F.3d 1114, 1120 (9th Cir. 2019).  Such frequency supports admission because it "support[s] a pattern of behavior versus an isolated incident or an aberration." Here, there are multiple acts of sexual assault against multiple victims.

Moreover,  that there has been significant intervening misconduct between 2014 and 2021 also supports admission.

**4.**  <u>**The necessity of the evidence beyond the testimonies already offered at trial**</u>.

This factor also favors admission of the contemplated evidence.  The evidence at issue "need not be absolutely necessary to the prosecution's case in order to be introduced; it must simply be helpful or practically necessary." *LeMay*, 260 F.3d at 1029.  The evidence at issue will be helpful or practically necessary for Hill's case to establish Bauer's sexual proclivities and interest in certain specific sexual conduct. *See United States v. Thornhill*, 940 F.3d 1114, 1121 (9th Cir. 2019) (affirming inclusion of prior act evidence as "necessary for the Government's case, because it tends to prove the defendant's sexual interest in the specific conduct ... which in turns makes it more likely that the defendant ... [committed the crimes] charged in the indictment." (citation omitted)).  Such evidence also may be helpful or practically necessary when there are no eyewitnesses, so the evidence of other sexual assaults is needed to corroborate the victim's claim that the sexual encounter was nonconsensual.  *See United States v.*

42

1  *Burdette*, 847 F. App'x 401, 403 (9th Cir. 2021); *United States v. Charles*, 691 F. App'x

2  367, 370 (9th Cir. 2017); *United States v. Thornhill*, 940 F.3d 1114, 1120 (9th Cir.

3  2019).

4       Here, Bauer contests the credibility and veracity of Hill's claims that Bauer

5  sexually assaulted her.  It is therefore practically necessary and helpful for Hill to

6  buttress the credibility and veracity of her claim by demonstrating that Bauer is

7  interested in and has engaged in similar misconduct with other victims.

8       **D.    <u>Bauer's and the Third Parties' Privacy Rights Do Not Override</u>**

9           **<u>Hill's Right to Targeted Discovery Concerning Bauer's Other</u>**

10          **<u>Sexual Assaults of the Victims.</u>**

11      Bauer's privacy rights and the privacy rights of the third-parties do not swallow

12  up and supersede Hill's need to obtain targeted and directly relevant discovery of

13  specific evidence of Bauer's sexual assaults of the Victims.  Such privacy rights are

14  "not absolute." *Boler v. Superior Court*, 201 Cal.App.3d 467, 473 (1987); *Lopez v.*

15  *UPS Supply Chain Sols., Inc.*, No. 521CV01038VAPSPX, 2022 WL 17185002, at *3

16  (C.D. Cal. June 30, 2022); *Makor v. BNSF Ry. Co.*, No. EDCV14671VAPSPX, 2015

17  WL 13358362, at *2 (C.D. Cal. Jan. 5, 2015); *Planned Parenthood Affiliates v. Van de*

18  *Kamp*, 181 Cal.App.3d 245, 279 (1986).  "Me too" evidence is discoverable despite

19  privacy concerns.  *See Zucchella v. Olympusat, Inc.*, No. CV197335DSFPLAX, 2020

20  WL 8483772, at *9-12 (C.D. Cal. Nov. 2, 2020) (permitting discovery into defendant's

21  sexual misconduct with third-parties in sexual harassment lawsuit to demonstrate

22  defendant's motive or intent).

23      Bauer's privacy objection may be overcome if the discovery is not speculative,

24  and Hill has laid an adequate foundation to create a reasonable inference that the

25  discovery will be "productive." *Lopez,* 2022 WL 17185002, at *4[12] ("Instead, it must

26  _____

27  [12] Bauer cites *Lopez* for the proposition that Hill cannot establish a compelling
   interest.  Bauer's reliance on *Lopez* is misplaced.  *Lopez* was a pregnancy

28  discrimination case in which the defendant-employer sought to discover the identities

be shown that it is reasonable to infer that the inquiry will be productive."); *Fults v. Superior Ct.*, 88 Cal. App. 3d 899 (1979).  Otherwise, a sexual assault plaintiff like Hill would almost never be able to obtain Rule 415 evidence in a civil sexual assault case, and Rule 415 would be rendered meaningless based on state privacy law.  By definition, critical Rule 415 evidence in a sexual assault case is going to concern the sexual affairs of both the defendant and a third-party.

Bauer notes that Hill must demonstrate that the discovery sought is "directly relevant." *Boler v. Superior Court*, 201 Cal.App.3d 467, 472 (1987) (requiring a showing of "direct relevance" to prevent searching for marginally pertinent sensitive information); *Goold v. Hilton Worldwide, Inc.*, No. 1:13-CV-00438 JLT, 2014 WL 1383252, at *6 (E.D. Cal. Apr. 8, 2014).  Courts permit disclosure of information otherwise within the zone of privacy if the disclosure is necessary to ascertain the truth in legal proceedings, and if the terms of the compelled disclosure are narrowly drawn. *See, e.g., Jones v Superior Court*, 119 Cal. App. 3d 534, 550 (1981); *Doyle v. State Bar*, 32 Cal. 3d 12, 20 (1982); *Rider v. Superior Court*, 199 Cal. App. 3d 278 (1988).

Throughout the briefing, however, Bauer incorrectly accuses Hill of using the discovery at issue to undertake an "unbounded fishing expedition" into private information.  Bauer further contends that his privacy interests and the privacy interests of third-parties outweigh Hill's interests in obtaining relevant discovery.  Bauer is wrong.

Again, Hill has demonstrated the direct relevance of obtaining admissible evidence under Rule 415 of <u>specific</u> similar instances of non-consensual sexual assaults by Bauer that demonstrate that Bauer has a propensity and desire to violently sexually

---

of plaintiff's sexual partners, based on the argument that plaintiff's claimed emotional distress damages included loss of sexual appetite.  *Lopez* held: "To the extent defendant seeks to impeach plaintiff's credibility by pointing out she became pregnant at a time she claims to have reduced interest in sex, it can do so (if permitted) without knowing her sexual history." *Id*. at *3.  *Lopez* did not involve the admissibility of a defendant's prior sexual assaults in a sexual assault case where evidence is admissible.

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

assault women while they are unconscious.  Absent testimony from Bauer's other victims, Hill will be unable to prove that Bauer engaged in other similar sexual assaults and has a propensity to do so.  The need for such evidence is heightened by the fact that there are no eye witnesses to Bauer's sexual assaults of Hill other than Hill and Bauer.

Further, Hill is not undertaking broad, indiscriminate or speculative discovery into Bauer's sexual affairs.  Hill's discovery targets five known individuals, four of whom have accused Bauer of sexual assault and have already disclosed the details of such non-consensual sexual assaults to Hill or Hill's attorneys, and in several instances, to the public at large.  This is not a scenario where the discovery "may" lead to relevant information.  Hill has laid an adequate foundation that the Victims, except <sup>JANE DOE 1</sup>, were sexually assaulted by Bauer and that those sexual assaults were similar in motive, design and execution to Bauer's sexual assault of Hill.  Moreover, Hill laid that foundation with very specific facts that originated from the Victims.  JANE DOE 1 JANE DOE 1

To the extent any of the subpoenas at issue go beyond that, Hill agrees to limit the subpoenas to sexual encounters that were not completely consensual and the facts surrounding those non-consensual sexual assaults.[13]  Moreover, any third-party privacy concerns can be adequately addressed through the stipulated protective order in this case and/or limited redactions.  *See Constance Hanson-poulsen v. Dep't of Def. of the*

---

[13] To the extent any of the sexual assaults involved some initial consensual sexual conduct, but also involved non-consensual conduct, evidence of such a sexual encounter is directly relevant to contextualizing the portion of the encounter that qualifies as sexual assault.  For example, if Bauer and one of his victims began having consensual sex, but then Bauer continued having sex with that victim while she was unconscious, that incident would be directly relevant under Rule 415.  Conversely, Hill does not seek discovery concerning a sexual encounter that was purely consensual.

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

*USA*, No. 216CV05786DMGAFMX, 2020 WL 2043999, at *2 (C.D. Cal. Mar. 3, 2020) ("Particularly where (as here) confidentiality can be protected via a protective order and limited redactions, the right to discovery of relevant information may outweigh the right to privacy."). To the extent any of the Victims with to remain anonymous, that also can also be accomplished.

In support of Bauer's privacy argument, Bauer relies heavily on *Boler v. Superior Ct.*, 201 Cal. App. 3d 467 (1987).[14] Bauer misstates the holding in *Boler*, in particular the specific nature of the information at issue in that case. In any event, *Boler* is readily distinguishable. In short, *Boler* did not concern the discovery of specifically identified instances of non-consensual sexual assault that had been previously identified by specific victims.

*Boler* involved a workplace sexual harassment lawsuit wherein the defendant was accused of making unwelcomed sexual advanced towards the plaintiff, a female employee. At the defendant's deposition, plaintiff's counsel broadly sought to inquire into defendant's sexual relations with any and all other female employees and others outside of defendant's employ for the ostensible purpose of discovering the identity of all of defendant's sexual partners. Specifically, *Boler* described this unusual and overbroad discovery as seeking "the identities of *all* sexual partners who happen to be, or have been, [defendant's] coworkers, ... essentially ... all the women [defendant] has worked with and slept with." *Id*., at 475; *see also Nez v. B.H.P. World Mins*., No. CIV 98-163 MV/WWD, 1999 WL 35809759, at *3 (D.N.M. Mar. 12, 1999). Unlike, the discovery at issue concerning Bauer's sexual assaults, the discovery in *Boler* did not

---

[14] Without any discussion, Bauer also cites to *Pearce v. Club Med Sales, Inc.*, 172 F.R.D. 407 (N.D. Cal. 1997), which is also distinguishable. *Pearce* rejected defendants' inquiry into plaintiff's sexual activities with her husband in a personal injury case where plaintiff sued for damages based on food poisoning at a Club Med vacation resort. *Pearce* ruled that the defendants had not demonstrated any relevancy of such information as they had not even demonstrated the plausibility that the illness could have been contracted through sex. *See id*., at 411.

46

concern specific instances of non-consensual sexual misconduct by the defendant against specifically named and known individuals that had been previously been identified.

Boler held that the plaintiff's attempt to identify "all" of the defendant's "unknown" sexual partners, without limitation, was "overbroad," and not "narrowly drawn," and therefore not justified. See Boler, 201 Cal. App. 3d at 467. Critical to Boler's analysis was the fact that the overbroad discovery into all of the defendant's unknown sexual partners would include sexual conduct that was voluntary and did not constitute workplace harassment. See id. Boler, however, did not hold that it would not permit discovery into specific instances of non-consensual sexual misconduct by other known victims if such misconduct had been identified. Stated differently, the holding in Boler is limited to broad discovery designed to identify such victims, not narrowly targeted discovery into known occurrences of sexual misconduct towards victims that have already been disclosed.

Here, in contrast, Hill is not broadly seeking discovery about all of Bauer's unknown sexual partners, irrespective of the nature of such sexual activity. Hill is not asking the Court to "assume" that the discovery at issue may concern non-consensual activity. To the contrary, Hill's discovery is limited to certain specifically identified individuals who have accused Bauer, in detailed fashion, of specific instances of non-consensual sexual assault by Bauer that is extremely similar to Bauer's sexual assault of Hill, and demonstrates that Bauer had a propensity and desire to violently sexually assault women while they are unconscious. Moreover, Hill's discovery is designed to specifically target those specific instances of sexual assault, all of which have already been previously disclosed by Bauer's others victims and in many instances, widely publicized.

Bauer also contends that Boler rejected the general notion that a confidentiality order, such a stipulated protective order or sealing order, would not ameliorate the privacy concerns in this case. Boler's holding, however, was not so broad and was

47

limited to the specific discovery at issue which *Boler* determined was simply not justified or "valid" in the first place. *See Boler*, 201 Cal. App. 3d at 476. Again, in contrast, the discovery at issue this case is directly relevant and narrowly tailored, and therefore does not suffer from the same threshold defects as the discovery in *Boler*.

Bauer also cites to *Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2022 WL 5243030, at *1 (S.D.N.Y. Oct. 6, 2022), a Southern District of New York ruling that has never been cited by another court, for the proposition that Bauer's and the Victim's privacy rights trump Hill's rights to discover relevant Rule 415 propensity evidence absent certain conditions being satisfied. First, *Rapp* has no precedential value and is not binding on this Court. *See Cahn v. Oversee.net*, No. CV1103800SVWAGRX, 2011 WL 13220327, at *2 (C.D. Cal. Dec. 20, 2011) ("First, as Defendants note, Fin. Tech Partners is an unpublished out-of-district opinion which has never been cited by another court and has no precedential value."); *Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 429 n.8 (W.D. Pa. 2000) ("It is well-settled that a district court opinion, even when published, has no precedential value … ."). As Hill has demonstrated that the information is directly relevant, and virtually necessary under Rule 415, given that there are no eyewitnesses to Bauer's sexual assaults of Hill, it is unclear why additional factors should be applied.

Second, even if the Court follows the ruling in *Rapp*, Hill still should be entitled to propensity evidence from the Victims. In *Rapp*, the plaintiff, who accused defendant Kevin Spacey of sexual assault, sought to depose defendant Spacey, without limitation, about the details of Spacey's sexual history over the span of many years. *See Rapp*, WL 5243030, at *1. *Rapp* denied Spacey's motion for a protective order except that plaintiff was prevented from inquiring about Spacey's prior sexual or romantic encounters unless: (a) the third-party's identity was disclosed by that person or became public; and (b) in connection with a claim, published report in mainstream media, or public allegation that any such sexual or romantic experience or encounter was not in all respects consensual.

48

Here, these conditions are satisfied for JANE DOE 4, JANE DOE 3 and JANE DOE 2. JANE DOE 4 has clearly accused Bauer of non-consensual sexual assault. Moreover, her accusations of non-consensual sexual conduct were publicized in graphic detail by several mainstream media outlets, including the Washington Post and Yahoo Sports. Indeed, it was JANE DOE 4 and her counsel who voluntarily disclosed her detailed accusations to the Post. Moreover, on multiple occasions, JANE DOE 4 has also disclosed her identity and allegations to both Hill and to MLB. Again, JANE DOE 4 voluntarily testified at the MLB arbitration about her sexual encounters with Bauer and JANE DOE 4

JANE DOE 4

Even if JANE DOE 4's identity was not known (it is), that she has voluntarily publicized her graphically detailed accusations of non-consensual sexual conduct by Bauer should ameliorate any third-party privacy concerns. In addition to the protective order in this case, there is no reason that JANE DOE 4's identity cannot be maintained as confidential in connection with any discovery materials that are produced in this litigation if that is something that she desires.

Next, Bauer concedes that JANE DOE 3 has publicized her identity and detailed accusations of non-consensual sexual assault against Bauer in a publicly filed lawsuit. There is no reason Hill should not be entitled to discovery as to Bauer's sexual assault of JANE DOE 3.

Next, like JANE DOE 4, JANE DOE 2's accusations of non-consensual sexual conduct were publicized in graphic detail by several mainstream media outlets, including the Washington Post. Again, JANE DOE 2's counsel has voluntarily disclosed at least some of her detailed accusations to the Post. Moreover, on multiple occasions, JANE DOE 2 has also disclosed her identity and allegations to Hill and to MLB.

Even though JANE DOE 5's accusations of non-consensual sexual assault have not been widely publicized, she has already voluntarily disclosed both her identity and the details of the sexual assault to Hill's counsel.

/ / /

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

### D.  **"Me Too" Evidence is Admissible to Prove Bauer's Motive, Intent, or Plan**.

In addition to being admissible under Rule 415, Bauer's prior misconduct, including misconduct that does not qualify as a sexual assault, is admissible Rule 404(b)(2) to prove Bauer's intent and plan to batter Hill. Courts routinely allow "me too" evidence of similar acts by a party for purposes of proving a party's intent or plan. This would include evidence that Bauer battered the other Victims, even if such battery did not constitute a sexual assault as required by Rule 415.

Rule 404(b)(2) provides that evidence of a crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Ninth Circuit has specified that "Rule 404(b) is a rule of inclusion." *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985). "Thus, evidence of past wrongful acts is admissible if it is relevant to an issue other than the defendant's character or criminal propensity." *Id*.[15]   To prove that the evidence is offered for one of the purposes permitted under Rule 404(b)(2), a litigant must show that the evidence: (1) is offered to prove a material element of the current offense; (2) if admitted to prove intent, is similar to the offense charged; (3) is based on sufficient evidence; and (4) is not too remote in time. *United States v. Ramirez–Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004). Rule 404(b)(2) is obviously not limited to sexual misconduct.

Under Rule 404(b)(2), evidence of a defendant's prior acts of sexual abuse is admissible to prove a "pattern of sexually abusive behavior." *United States v. Roberts*, 185 F.3d 1125, 1142 (10th Cir. 1999).  Here, that Bauer had a plan to batter or sexually batter Hill can be proven by circumstantial evidence that Bauer has performed acts having "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual

---

[15] This, of course, assumes that Rule 415 does not apply.

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION FOR A PROTECTIVE ORDER

manifestations." *People v. Ewoldt*, 7 Cal. 4th 380, 393 (1994).  Such evidence is relevant to show that Bauer battered and sexually battered Hill in accordance with his plan to do so, in particular his plan to hit forcefully hit women and/or choke them unconscious.  *See Ewoldt*, 7 Cal. 4th at 403 (holding that evidence that defendant committed prior, uncharged lewd acts on victim's older sister was admissible to prove that defendant acted in accordance with his common plan).  Such evidence would include Bauer's messages to his victims whereby he expressed his plan and desire to sexually assault them.

Such evidence of Bauer's prior misconduct is also relevant to prove Bauer's intent.  That Bauer acted with the requisite intent to commit the intentional torts of battery or sexual battery against Hill, and did not act with "innocent intent," can be proven by the fact that Bauer has engaged in prior similar misconduct.  *See People v. Robbins*, 45 Cal. 3d 867, 879–80 (1988) ("[T]he recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act.").

Under California law, both battery and sexual battery are intentional torts which require Hill to prove that Bauer acted with the requisite intent.  Under Cal, Civ. Code § 1708.5 (a), entitled "Sexual battery," Hill must prove that Bauer acted with "the intent to cause a harmful or offensive contact with an intimate part." Likewise, to prove that Bauer committed the tort of battery, Hill must prove that Bauer touched Hill, or caused Hill to be touched, with the intent to harm or offend Hill.  *See So v. Shin*, 212 Cal.App.4th 652, 669 (2013).  Moreover, one of Bauer's defenses is that he believed that he acted innocently and with Hill's consent.

Accordingly, Bauer's prior misconduct is relevant and admissible to prove that he acted with the requisite intent.  In simple terms, Bauer knew that what he was doing was harmful, offensive and not welcomed.  As already discussed, Bauer's conduct

51

towards the Victims is extremely similar to his battery of Hill and was not remote in time.

**E.**     **<u>Bauer's Misconduct is Admissible to Prove Substantial Truth</u>.**

As discussed in Hill's motion to compel that is also being heard on June 28, 2023, evidence of Bauer's other misconduct is also relevant to Hill's substantial truth defense.


ZUCKERMAN SPAEDER LLP

DATED:  June 7, 2023


By:  /s/ Blair G. Brown
     _____
     BLAIR G. BROWN
     JON R. FETTEROLF
     NELL PEYSER
     Attorneys for Plaintiff/counter-defendant
     Trevor Bauer



FREEDMAN + TAITELMAN, LLP

DATED: June 7, 2023



By:   /s/ Jesse Kaplan
     _____
     Bryan J. Freedman, Esq.
     Jesse A. Kaplan, Esq.
     Attorneys for Defendant and
     Counterclaimant Lindsey C. Hill