1    KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
     Shawn Holley (Cal. Bar No. 136811)
2    Suann MacIsaac (Cal. Bar No. 205659)
     808 Wilshire Boulevard., 3rd Floor
3    Santa Monica, CA 90401
     Tel: (310) 566-9800
4    Fax: (310) 566-9873
     sholley@kwikhlaw.com
5    smacisaac@kwikhlaw.com

6    ZUCKERMAN SPAEDER LLP
     Blair G. Brown (admitted *pro hac vice*)
7    Jon R. Fetterolf (admitted *pro hac vice*)
     1800 M Street, N.W., Suite 1000
8    Washington, D.C. 20036
     Tel: (202) 778-1800
9    Fax: (202) 882-8106
     bbrown@zuckerman.com
10   jfetterolf@zuckerman.com

11   ZUCKERMAN SPAEDER LLP
     Nell Z. Peyser (admitted *pro hac vice*)
12   485 Madison Ave., 10th Floor
     New York, NY 10022
13   Tel: (212) 704-9600
     Fax: (212) 704-4256
14   npeyser@zuckerman.com

15   *Attorneys for Plaintiff*

16              UNITED STATES DISTRICT COURT
17             CENTRAL DISTRICT OF CALIFORNIA
                    SOUTHERN DIVISION
18

19   TREVOR BAUER,                        Case No. 8:22-cv-00868-JVS-ADS
                                          Assigned for all purposes to the Hon.
20              Plaintiff,                James V. Selna

21        v.                              NOTICE OF MOTION AND
                                          MOTION BY PLAINTIFF/
22   LINDSEY C. HILL and NIRANJAN         COUNTERCLAIM DEFENDANT
     FRED THIAGARAJAH,                    TREVOR BAUER FOR SANCTIONS
23                                        FOR LINDSEY C. HILL'S WITNESS
                                          TAMPERING
24              Defendants.
                                          Hearing Date: July 24, 2023
25                                        Hearing Time: 1:30 p.m.
                                          Department: 10C
26
                                          Action Filed: April 25, 2022
27

28

                                                    MOT. FOR SANCTIONS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 24, 2023 at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10C of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, CA, 92701, Plaintiff/Counterclaim Defendant Trevor Bauer will and does hereby move this Court for the sanction of dismissal of Defendant/Counterclaim Plaintiff Lindsey Hill's counterclaims for witness tampering.

This Motion is made pursuant to the Court's inherent powers to sanction litigation misconduct, in particular witness tampering. The Motion is made on the grounds that Hill has tampered with at least four witnesses in this matter. She has instructed one of those witnesses to falsely respond to a subpoena while she has attempted to delete evidence of her tampering. She has threatened three other witnesses. That significant misconduct undermines the integrity of the judicial process and deserves dismissal.

On June 2, 2023, counsel for Bauer sent a detailed letter to counsel for Hill describing the witness tampering conduct, the case law supporting sanctions, and that Bauer intended to file a motion for sanctions, including for dismissal of Hill's counterclaims. Declaration of Nell Z. Peyser ¶¶ 2-3; *see also id.* Ex. N. The letter requested a meet and confer conference. As of the filing of this motion, Bauer's counsel received no response to the letter. *See Zois v. XL Specialty Ins. Co.*, 2015 WL 12656939, at *3 (C.D. Cal. Oct. 15, 2015) (Selna, J.) (holding that where defendant's counsel "contacted Plaintiffs' counsel via email regarding their intent to file this motion, but received no response" then "the Court considers Plaintiffs' failure to respond a waiver of Local Rule 7-3 as Plaintiffs' own conduct frustrated the purpose of the rule"); *see also* Local Rule 37-2.4 (excusing failure to meet and confer in discovery context where opposing party has not responded to meet and confer letter within 10 days). This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities, the pleadings and papers on file with the

1    Court in this matter, all matters upon which this Court must or may take judicial

2    notice, and upon all arguments that this Court may allow at the time of the hearing

3    of the Motion.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. FOR SANCTIONS

1  | DATED: June 14, 2023                ZUCKERMAN SPAEDER LLP

2  |                                     By: __/s/ *Blair G. Brown*_____

3  |                                     Blair G. Brown
   |                                     Attorney for Plaintiff Trevor Bauer
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

MOT. FOR SANCTIONS

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................... 1

BACKGROUND ........................................................................................... 3

I.      BAUER'S CLAIMS AND HILL'S COUNTERCLAIMS ............................. 3

II.     HILL'S TAMPERING WITH WITNESSES ............................................ 4

   A.  Instruction To Tortorigi Not To Produce Documents ...................... 4

   B.  Threat to Roe ............................................................................. 5

   C.  Threat to Dawson ....................................................................... 6

   D.  Threat to Doe .............................................................................. 7

   E.  Failure of other witnesses to produce documents .......................... 8

   F.  Hill's Prior Litigation Misconduct ............................................... 9

LEGAL STANDARD ................................................................................. 10

ARGUMENT ............................................................................................. 11

I.      HILL'S REPEATED ACTS OF WITNESS TAMPERING REQUIRE
       DISMISSAL .................................................................................... 11

   A.  Hill Tampered With Multiple Witnesses ...................................... 12

   B.  Dismissal of Hill's Counterclaims Is Required ............................. 15

      1.  Hill's Witness Tampering Interferes With The Rightful Decision Of The
         Case .................................................................................... 16

      2.  Lesser Sanctions Are Inadequate ........................................... 18

  C. In the Alternative, Bauer Requests A Forensic Examination, Issue Sanctions,
  An Adverse Inference, and Monetary Sanctions. .................................. 20

CONCLUSION .......................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Roberts*,
  2021 WL 1530092 (D. Mont. Apr. 19, 2021)......................................10, 12

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
  2015 WL 12732433 (C.D. Cal. Dec. 14, 2015) ....................................16

*Anheuser-Busch, Inc. v. Natural Beverage Distrib.*,
  69 F.3d 337 (9th Cir. 1995)..............................................................18

*Beecham v. City of W. Sacramento*,
  2009 WL 689729 (E.D. Cal. Feb. 4, 2009), *aff'd* 2009 WL 689724 (E.D. Cal.
  Mar. 4, 2009)..................................................................................13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ..........................................................................10

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007)..........................................................16

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996)............................................................1, 11

*Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*,
  2002 WL 1433717 (N.D. Ill. July 2, 2002).........................................14

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001)............................................................10

*Hernandez v. Franco Am. Baking Co.*,
  2021 WL 6064008 (D. Nev. Dec. 21, 2021), *judgment entered*,
  2022 WL 2659022 (D. Nev. June 21, 2022)............................10, 17, 18

*Hussein v. Frederick*,
  436 F. App'x 831 (9th Cir. 2011) ......................................................15

*InjuryLoans.com, LLC v. Buenrostro*,
  2020 WL 9160827 (D. Nev. Sept. 28, 2020) ......................................13

*Johnson v. Goldsmith*,
  542 F. App'x 607 (9th Cir. 2013) ......................................................15

MOT. FOR SANCTIONS

*Juul Labs, Inc. v. Chou*,
2022 WL 2161062 (C.D. Cal. Apr. 19, 2022) .......................................................20

*LeBer v. U S ex rel Fleming*,
170 F. 881 (9th Cir. 1909) ....................................................................................13

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ................................................................................15

*Lofton v. Verizon Wireless (VAW) LLC*,
308 F.R.D. 276 (N.D. Cal. 2015) ..........................................................................12

*Nat. Immunogenics Corp. v. Newport Trial Grp.*,
2016 WL 11520711 (C.D. Cal. Aug. 1, 2016) ......................................................12

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
2017 WL 10563004 (C.D. Cal. June 30, 2017) .....................................................11

*Nilva v. United States*,
352 U.S. 385 (1957) ..............................................................................................12

*Ramirez v. T&H Lemont, Inc.*,
845 F.3d 772 (7th Cir. 2016) ..............................................................11, 15, 16, 18

*Ramsey v. Broy*,
2010 WL 1251199 (S.D. Ill. Mar. 24, 2010) ........................................................18

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991) ................................................................................12

*TeleVideo Sys. Inc. v. Heidenthal*,
826 F.2d 915 (9th Cir.1987) ..................................................................................10

*Torres Harris v. SCA Rest. Corp.*,
2014 WL 996249 (E.D.N.Y. Mar. 14, 2014) ........................................................14

*Torres v. Wells Fargo Bank*,
2019 WL 8012686 (C.D. Cal. Dec. 17, 2019) ...........................10, 15, 16, 17

*United States v. Carona*,
660 F.3d 360 (9th Cir. 2011) ................................................................................12

*United States v. Doss*,
630 F.3d 1181 (9th Cir. 2011) ..............................................................................14

iii

*Young v. Off. of U.S. Senate Sergeant at Arms*,
    217 F.R.D. 61 (D.D.C. 2003) ................................................................. 18

**Statutes**

18 U.S.C. § 1512(b) ......................................................................... 11, 12, 14

**Rules**

Fed. R. Civ. P. 37(b)(2)(A)(i) ............................................................... 20

iv

**INTRODUCTION**

Plaintiff Trevor Bauer moves for the sanction of dismissal of Defendant Lindsey Hill's counterclaims for her flagrant and escalating witness tampering.

"Witness tampering … tends to subvert the entire judicial process and its principle function of ascertainment of the truth." *Erickson v. Newmar Corp.*, 87 F.3d 298, 304 (9th Cir. 1996). Hill has tampered with at least four—and likely more—potential witnesses in this case. She has threatened three of those individuals and directed another to falsely respond to a subpoena, while apparently deleting her record of doing so. These severe violations undermine the integrity of this proceeding and require the most serious sanction—dismissal of Hill's counterclaims.

*First*, Hill instructed witness Frank Tortorigi to withhold responsive documents—including a message in which Hill described her first sexual encounter with Bauer (which she now claims is a sexual assault) as "SO HOT"—and to lie to Bauer's counsel about Tortorigi's possession of responsive documents. Tortorigi initially complied, telling Bauer's counsel he had no documents to produce. But, after follow-up from Bauer's counsel, Tortorigi produced a string of responsive messages with Hill. In those messages, Hill directed Tortorigi that he should "just respond to [the subpoena] saying I have nothing related to this that I have in my possession." She called the subpoena "So stupid moi I cant" and told Tortorigi: "Just know you don't have to do shit for it." And, to leave no doubt, she urged Tortorigi to "call me if u get one and I'll tell you what to do."

Moreover, Hill apparently *deleted her exchange* with Tortorigi. As she told Tortorigi, "also gonna unsend and delete this [message] once u see it," followed by a laughing/crying emoji. In her document production, Hill has not produced any messages with Tortorigi.

*Second*, Hill threatened and intimidated witness Jane Roe, who spoke with Hill after the alleged assault. After Roe spoke with Hill's counsel about Bauer's document and deposition subpoena to her, Hill told Roe in no uncertain terms: "When I'm asked

1

about you, *I will burn you to the fucking ground* and expose you just like you think you are doing to me Everyone in my life and in this case will speak the truth about you … we're on the right side of justice and want you nowhere near it. Evil bitch. I'll have every past resident testify against your character." Roe was so concerned by Hill's conduct that she reached out to Bauer's counsel to report the threat and hired counsel.

*Third*, Hill threatened Derek Dawson, a witness in this case, whose messages and testimony undermine Hill's narrative. At the time of her interactions with Bauer, Hill told Dawson that she had her "hooks in" Bauer and to "trust me I know what I'm doing[,] I can get in his head." Dawson testified in a state court deposition that he took Hill literally and questioned her motives for making accusations against Bauer. But after Hill received discovery from the Pasadena Police Department in this case, Hill threatened Dawson through his partner over Instagram. She warned: "sure would be a shame for me to hand over to you the police footage of [Dawson's] interview I just received where he is defending violent abuse against women." Hill continued: "before it goes public with court and Bauers side uses it publicly in their defense, I highly advise you have Derek tell you the truth about what he did before you see the video." A threat to expose a confidential police interview to embarrass and silence a witness is serious misconduct.

*Fourth*, Hill threatened Jane Doe[1] before subpoenaing her. In discussing another matter with Doe, Hill stated "[n]o clue why you would be such a blunt cunt with something that has nothing to do with you and you have no idea about but to each their own [Doe] glad to see you side with the side of the abuser." Hill then warned: "Don't forget I have all the screenshots of you fucking married men[.] Go to hell." One month after sending that threat, Hill subpoenaed Doe for a deposition

---

[1] Because of Hill's threat to reveal sensitive information about Janes Roe and Doe, Bauer is not including their real names in this filing.

MOT. FOR SANCTIONS

and documents seeking information relating to Doe's alleged sexual interactions with Bauer. Doe, however, has stated that she never met Bauer in person.

These serious, willful acts of misconduct show a flagrant disregard for the judicial process. Bauer can discover only the fraud that witnesses have the courage to report—it is unknown at this time how many other witnesses have been threatened by Hill or what other litigation misconduct has occurred. Because of the sheer volume of witnesses Hill has sought to threaten, intimidate, and corruptly influence, dismissal is the only adequate sanction.

## BACKGROUND

## I.     BAUER'S CLAIMS AND HILL'S COUNTERCLAIMS

Bauer has filed claims against Hill for defamation per se and tortious interference with contract based on Hill's filing of a false police report against Bauer for sexual assault. *See* Dkt. 114-2. Hill has counterclaimed for battery and sexual battery.

Bauer and Hill had two sexual encounters in April and May 2021. Following the second sexual encounter, Hill filed a false police report claiming that Bauer assaulted her during that encounter. In her counterclaims, Hill now claims both the first and second encounters were assaults.

Throughout the April and May 2021 timeframe in which she interacted with Bauer, Hill communicated with several of her friends and colleagues about Bauer. Those witnesses' messages and testimony raise questions about Hill's motives, show that the encounters between Hill and Bauer were consensual, and prove that Hill enjoyed their rough sex. For instance, she told Derek Dawson that she was going to "get in [Bauer's] head." Peyser Decl. Ex. D at TB00000459. The morning after her first sexual encounter with Bauer—which she now claims was an assault—Hill told Frank Tortorigi that "[Bauer] choked me so hard I PASSED OUT DURING SEX … IT WAS SO HOT." *Id.* Ex. A at FT_0000001. She made similar statements to another friend, Justin Vaesau. Hill also frequently spoke with her cousin, Kyle Erickson,

MOT. FOR SANCTIONS

1  about her relationship with Bauer, telling him, among other things, that the second

2  encounter was "consensual." Compl. ¶ 75. And she spoke extensively about Bauer,

3  both before and after filing the false police report, with her AA sponsor Lisa Decker,

4  with whom she now lives in Tennessee. Peyser Decl. ¶ 6.

5      Bauer's understanding is that Hill's then supervisor Roe was with Hill when

6  she went to the hospital following the second sexual encounter, spoke to Hill's lawyer

7  about her situation, and spoke to Hill's father about Hill's story. Hill also spoke to

8  Doe about Bauer. Accordingly, the truthful and untainted testimony of such witnesses

9  is critical. Hill recognized the importance of many of these witnesses as she identified

10  all but Tortorigi in her initial disclosures.

11  **II.   HILL'S TAMPERING WITH WITNESSES**

12  **A. Instruction To Tortorigi Not To Produce Documents**

13      Tortorigi possesses relevant and exculpatory information regarding Hill's

14  interactions with Bauer. Hill communicated with Tortorigi about her encounter with

15  Bauer on April 21 and 22, 2021. While Hill was at Bauer's residence, she referenced

16  Bauer's "$51 million contract" and told Tortorigi the morning after having sex with

17  Bauer that "[Bauer] choked me so hard I PASSED OUT DURING SEX … IT WAS

18  SO HOT." Peyser Decl. Ex. A at FT_0000001. Nevertheless, Hill never identified

19  Tortorigi in her initial disclosures here or her testimony during the DVRO, even when

20  asked to identify the individuals she spoke with about her encounters with Bauer.

21  Dkt. 52-3 (Tr. 444:17-23) (identifying only "Derek [Dawson], Kyle [Erickson], Mely

22  [Ciramely Maya], Lisa [Decker]" and her mother).                `

23      After learning that Bauer would subpoena Tortorigi for a deposition and

24  documents, Hill instructed Tortorigi *not to produce* responsive documents. She said

25  "[B]auer … plans on subpoenaing you for our text messages from when it happened,

26  I'm dying laughing, if you get one just reply to it with 'I have no access to these

27  materials.'" Peyser Decl. Ex. A at FT_0000001.

28

MOT. FOR SANCTIONS

Hill attempted to couch her tampering with two purported justifications. She said "they already have all of our messages idk why they are asking again" and "who would have access to messages from 2 years ago [two laughing/crying face emojis]." *Id.* She then reiterated "[b]ut yeah just respond to it saying I have nothing related to this that I have in my possession. So stupid moi I cant. Just know you don't have to do shit for it." *Id.*

Understanding the consequences if her messages were disclosed in discovery, Hill told Tortorigi "gonna unsend and delete this once u see it [laughing/crying face emoji]." *Id.* And, leaving no doubt as to what she wanted, she directed Tortorigi to "call me if u get one and I'll tell you what to do." *Id.* Hill's threat initially worked, as Tortorigi told Bauer's counsel, on April 10, 2023: "I have not found anything in my records in relation to the subpoena." Peyser Decl. Ex. M at 1. After Bauer's counsel followed up, Tortorigi, through counsel, produced responsive messages with Hill. *Id.* (May 17, 2023 message). Those messages included the texts about Bauer from April 2021, as well as Hill's instruction to Tortorigi to not respond to the subpoena and her attempted cover up. Hill has not produced a single message with Tortorigi, suggesting she has in fact deleted her messages with him. Bauer has received Tortorigi messages from discovery from the Pasadena Police Department.

**B.  Threat to Roe**

Hill also threatened Roe, whom Bauer subpoenaed for a deposition and documents in March 2023. Roe is the supervisor of the sober living house in which Hill previously resided. On April 10, 2023, Hill wrote:

> I just want you to understand-you're fucking evil [Roe]. I despise you, my family despises you and you have zero place in this situation. You make up lies, steal residents adivan and total your car, buy ambien in Mexico, and so much more. When I'm asked about you, I will burn you to the fucking ground and expose you just like you think you

MOT. FOR SANCTIONS

are doing to me. Everyone in my life and in this case will speak the truth about you

Don't call my fucking dad anymore, we're on the right side of justice and want you nowhere near it. Evil bitch. I'll have every past resident testify against your character.

Peyser Decl. Ex. B at Ohana_00000195. On April 11, 2023, Roe informed Bauer's counsel that she received an "over the top, threatening" message from Hill. *Id.* ¶ 5. Roe provided the threat to Hill's counsel, who did not provide it to Bauer's counsel. *Id.* Roe produced the threat in response to Bauer's subpoena.

A few days after the threat, Roe received a message from Hill's friend, Olivia Finestead. Finestead sought to recruit Roe, on behalf of Hill, to speak to a reporter about Hill's interactions with another baseball player accused of assault by Finestead and Hill. Explaining why Finestead, instead of Hill, was contacting Roe, Finestead stated that Hill "can't be tied to Trevor with you" and that "we just have to protect ourselves against Trevor's attorneys and play the game." *Id.* Ex. B at Ohana_00000232.

**C. Threat to Dawson**

Dawson has relevant and exculpatory information about Hill's interactions with Bauer. In messages two days before Hill met Bauer in person, Hill told Dawson, "I already have my hooks in." She emphasized that "I can get in [Bauer's] head" and to "[t]rust me I know what im [sic] doing." Peyser Decl. Ex. D at TB 00000457, 459. She further said she would "find pine tar"—a substance banned by Major League Baseball—at Bauer's house. *Id.* Hill was a lifelong fan of the San Diego Padres, while Bauer played for the Los Angeles Dodgers.

In July 2021, Hill deposed Dawson in the Los Angeles Superior Court Domestic Violence Restraining Order (DVRO) proceeding. Dawson testified that he questioned "the authenticity of the accusations" made by Hill against Bauer and he took literally Hill's claim that she would "get in [Bauer's] head." *Id.* Ex. E (Tr. 53:23-

6

54:10-15). Dawson "question[ed] the intent of the relationship prior to [Hill and Bauer] meeting." *Id.* (Tr. 68:14-15).

Following receipt of discovery from the Pasadena Police in this action, which included his videotaped interview, *id.* (Tr. 31:3-4), Hill used that discovery to publicly threaten Dawson through his partner. In February 2023, Hill replied to the partner's Father's Day post from nine months earlier: "Sure would be a shame for me to hand over to you the police footage of his interview I just received where he is defending violent abuse against women. Telling them not to believe me. Go ahead, ask him the real truth. Pretty pathetic you want to raise children with someone like that. He can't run from the truth of what he did to me and my family anymore." *Id.* Ex. C. Hill then wrote a follow-up post: "before it goes public and Bauers side uses it publicly in their defense, I highly advise you have Derek tell you the truth about what he did before you see the video." *Id.*

Bauer produced this Instagram exchange to Hill's counsel and asked in a Request for Admission that Hill authenticate the exchange. Hill's counsel objected that such information was irrelevant and not proportional to the needs of the case. *Id.* Ex. J (RFA No. 52). The parties met and conferred regarding the objection, and Hill's counsel said they would return with a reply. To this date, there has been no reply. Peyser Decl. ¶ 8. Bauer has also subpoenaed Dawson for documents and a deposition but, concerningly, Dawson has not responded even though the subpoena return date was April 14, 2023. *Id.* ¶ 7.

**D. Threat to Doe**

Hill also threatened Doe, who previously communicated with Bauer and whom Hill subpoenaed for a deposition and documents. On April 15, 2023, Hill told Doe—seemingly in connection with a separate matter—"[n]o clue why you would be such a blunt cunt with something that has nothing to do with you and you have no idea about but to each their own [Doe] glad to see you side with the side of the abuser."

MOT. FOR SANCTIONS

1  Peyser Decl. Ex. F. Hill then threatened the woman: "Don't forget I have all the
2  screenshots of you fucking married men[.] Go to hell[.]" *Id.*

3      One month after sending that threat, Hill subpoenaed Doe—who has stated
4  that she never met Bauer in person—seeking, among other things, documents about
5  Bauer "choking or hitting" Doe and any "accusations by [Doe] of physical violence,
6  abuse, sexual battery, sexual abuse, battery, assault, and/or rape made against Trevor
7  Bauer." Dkt. 114-2. None of these documents exist as Doe has stated that she never
8  met Bauer in person. Doe reported the threat to Bauer's counsel and explained that
9  she felt Hill was trying to get Doe to make false statements. Peyser Decl. ¶ 4.

10  **E. Failure of other witnesses to produce documents**

11      Against this background of threats, intimidation and corrupt influence of
12  witnesses, at least four other witnesses close to Hill have refused to produce
13  documents in response to subpoenas. Hill's cousin, Kyle Erickson, stated "I am not
14  in possession of any documents, information, or objects to present in response to
15  the Document Subpoena at this time." Peyser Decl. Ex. G. Hill's friend, Justin
16  Vaesau stated, "I don't have any documents associated with Lindsey Hill that date
17  back to that time anymore. My phone settings is set to delete messages after a year
18  because of how fast my storage fills. I know that during the time of the investigation,
19  people from the MLB had a[c]quired what I had, as far as texts between me and
20  Lindsey Hill." *Id.* Ex. H at 1. Olivia Finestead first stated, on March 29, 2023, that "I
21  have no documents relating to your subpoena to be produced." *Id.* Ex. I. After Bauer's
22  counsel emailed Finestead that her deposition was postponed, Finestead replied "I
23  have nothing for you. I am not meeting with you wasting my time I have nothing at
24  all for your rapist client." *Id.* Hill's AA sponsor, Lisa Decker has ignored the
25  subpoena, and is in violation of a Court order issued by Magistrate Judge Spaeth
26  requiring her to have produced documents by June 7, 2023. Dkt. 106.

27      Bauer is aware that Erickson, Vaesau, and Decker have responsive messages.
28  Erickson produced some responsive documents in the DVRO proceeding—including

MOT. FOR SANCTIONS

a text message in which Hill stated that her second encounter with Bauer was "consensual." Compl. ¶ 75. Bauer is also aware of some responsive messages with Vaesau. Indeed, Vaesau disclosed to Bauer's counsel that he had previously provided documents to MLB, which appears to contradict his assertion that he no longer has access to those documents. Peyser Decl. Ex. H at 1. As to Finestead, she and Hill communicated about Bauer, as she told Roe, on behalf of Hill, that "we just have to protect ourselves against Trevor's attorneys and play the game." *Supra* at 6.

As Hill explained in her initial disclosures, Decker "[c]ommunicated frequently with Ms. Hill in aftermath of sexual contact with Mr. Bauer and throughout DVRO proceeding." Peyser Decl. Ex. L at 5. Hill has admitted she lacks messages with Decker for over a week after her second encounter with Bauer. The Decker-Hill messages that Bauer does have include discussion of a scheme to "secure the bag" (a reference to money) and that Hill would be a "rich bitch" "hopping in the god damn RANGE ROVER." *Id.* Ex. O at LD63, 78. Bauer's understanding is that Decker and Hill live in either the same apartment or apartment complex. *Id.* ¶ 6. Given Hill's proclivity for either threatening or instructing witnesses in this case, there is a serious and warranted concern that Hill has instructed or threatened the above individuals not to produce documents.

### F. Hill's Prior Litigation Misconduct

The acts in this case continue a disturbing pattern of disregard for the judicial process. In the DVRO proceeding, the court found that Hill's declaration in support of her petition for a restraining order was "materially misleading." Dkt. No. 52-3 at 659-66 (Tr. 580-87). Under oath, Hill admitted to deleting messages between her and Bauer—including deleting messages after she met with the Pasadena Police Department. *Id.* at 507 (Tr. 433:6-8). She acknowledged that she was missing messages with two of her closest friends for critical time periods in the case with no explanation—except to blame the Pasadena Police. *Id.* at 508 (Tr. 434:26–434:4). She testified that no one told her to preserve evidence "until we received [Bauer's

MOT. FOR SANCTIONS

counsel's] letter about preservation"—which was sent on July 2, 2021, after Hill had already filed a petition for restraining order against Bauer on June 28, 2021. *Id.* (Tr. 440:18-22); Compl. ¶ 143. She also failed to produce over 80 photographs that Bauer still has never seen. The DVRO court recognized these issues, and others, as "a spoliation issue." Dkt. No. 52-3 at 50 (Tr. 25). The Superior Court deferred ruling on Bauer's motion for spoliation in that case until the resolution of the proceedings. *Id.* at 95-96 (Tr. 30-31). Because Hill's petition for a restraining order was dismissed because there was no act of abuse or assault, that court did not reach a ruling on the spoliation issues.

Bauer has since learned that Hill failed to produce an exculpatory video she filmed of herself in bed with Bauer the morning after their second sexual encounter. Declaration of Jon R. Fetterolf ¶¶ 2-5. In that video, Bauer is asleep and Hill films herself smiling to the camera—hours after she claims she was the victim of a sexual assault. The failure to produce or acknowledge the existence of that video during the DVRO proceeding was clear misconduct. *Id.* This pattern has continued into this case.

## LEGAL STANDARD

The Court has authority to issues sanctions for serious misconduct concerning witness tampering and litigation misconduct under the Court's inherent powers. *See TeleVideo Sys. Inc. v. Heidenthal,* 826 F.2d 915, 916 (9th Cir. 1987) (per curiam) ("Courts have inherent equitable powers to dismiss actions for ... abusive litigation practices."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (holding that courts have "ability to fashion an appropriate sanction for conduct which abuses the judicial process"). Sanctions "are available if the court specifically finds bad faith or conduct tantamount to bad faith" and they may be imposed "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

Although the Ninth Circuit has not addressed the burden necessary to prove sanctionable conduct and witness tampering, district courts in this Circuit apply preponderance of the evidence. *See Hernandez v. Franco Am. Baking Co.*, 2021 WL 6064008, at *3 (D. Nev. Dec. 21, 2021), *judgment entered*, 2022 WL 2659022 (D. Nev. June 21, 2022) (applying preponderance of the evidence to sanctions for witness tampering ); *Adams v. Roberts*, 2021 WL 1530092, at *2 (D. Mont. Apr. 19, 2021) (same); *Torres v. Wells Fargo Bank*, 2019 WL 8012686 (C.D. Cal. Dec. 17, 2019) (same).

## ARGUMENT

The Court should dismiss Hill's counterclaims for her serious, flagrant, and grave abuses of this proceeding. She has tampered with multiple witnesses through intimidation, threats, and improper influence. She has instructed one witness to lie to Bauer's counsel and ignore a subpoena while trying to cover up her wrongdoing by deleting evidence of her misconduct. These acts undermine the integrity of the proceeding and require dismissal. Although sanctions short of dismissal are not adequate, Bauer in the alternative asks for issue sanctions, an adverse jury instruction, the hiring of an independent third-party to examine Hill's electronic devices and social media, and monetary sanctions.

## I. HILL'S REPEATED ACTS OF WITNESS TAMPERING REQUIRE DISMISSAL

Witness tampering "is among the most grave abuses of the judicial process, and as such it warrants a substantial sanction." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016); *Erickson*, 87 F.3d at 304 ("Witness tampering … tends to subvert the entire judicial process and its principle function of ascertainment of the truth."). Hill's attempts to threaten and influence witnesses in this proceeding constitute witness tampering. The pervasive nature of those threats mandates dismissal.

MOT. FOR SANCTIONS

**A. Hill Tampered With Multiple Witnesses.**

Hill's threats, intimidation, and improper influence of multiple witnesses are textbook witness tampering and constitute bad faith and willful misconduct. Although Bauer need not prove Hill committed a criminal offense for purposes of his sanctions motion, her misconduct is so severe that it would satisfy the witness tampering statute. *See, e.g.*, 18 U.S.C. § 1512(b) (proscribing acts of knowingly using threats, intimidation, and corrupt persuasion against witnesses); *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2017 WL 10563004, at *7 (C.D. Cal. June 30, 2017) (Selna, J.) ("Under 18 U.S.C. § 1512(b)[,](d), witness tampering includes the use of intimidation, threats, harassment, or 'misleading conduct' with the intent, among others outcomes, for a witness to withhold potential testimony."); *Nat. Immunogenics Corp. v. Newport Trial Grp.*, 2016 WL 11520711, at *9 (C.D. Cal. Aug. 1, 2016) (Selna, J.) (explaining that a violation of section 1512(b) includes acts with corrupt intent to "cause that witness to withhold … documentary evidence"). Such acts are a basis for sanctions. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir. 1991) (applying 18 U.S.C. § 1512(b) to sanctions motion); *Roberts*, 2021 WL 1530092, at *2 ("If a court finds that a party's actions amount to the conduct contemplated by § 1512(b), it may impose sanctions pursuant to its inherent authority to manage judicial proceedings.").

Hill has tampered with at least four witnesses in this case. Her unlawful instructions to Tortorigi constitute witness tampering. Tortorigi received a valid subpoena from Bauer requiring him to produce documents. Before Bauer served the subpoena, Hill—knowing that Tortorigi would be subpoenaed—reached out to him to instruct him to lie to Bauer's counsel and withhold responsive documents. *Supra* at 5; *see* 18 U.S.C. § 1512(b) ("Whoever knowingly … corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to … cause or induce any person to … withhold a record, document, or other object, from an official proceeding" is subject to fine and imprisonment);

MOT. FOR SANCTIONS

*United States v. Carona*, 660 F.3d 360, 367 (9th Cir. 2011) ("a defendant who persuades someone else to conceal and fail to produce a document that had been subpoenaed would appear to violate § 1512(b)(2)(A)"); *see also Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 290 (N.D. Cal. 2015) ("courts have sanctioned the party who improperly advised the subject of the subpoena not to comply"). Hill *knew* Tortorigi had responsive documents, yet directed him to falsely tell Bauer's counsel he did not have them—an act of contempt. *See Nilva v. United States*, 352 U.S. 385, 392 (1957) (affirming conviction of criminal contempt for disobeying a subpoena duces tecum because "it is settled that a criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control").

Hill also never moved to quash to the Tortorigi subpoena, further showing that no basis existed for Tortorigi to decline to comply. *See Beecham v. City of W. Sacramento*, 2009 WL 689729, at *5 (E.D. Cal. Feb. 4, 2009), *aff'd* 2009 WL 689724 (E.D. Cal. Mar. 4, 2009) ("Plaintiffs' counsel has not shown an adequate basis for instructing Mr. Crankson to disregard the subpoena."); *see id.* (explaining that "[t]he regular procedure to [challenge] the subpoena was a motion to quash" (citing *LeBer v. U S ex rel Fleming*, 170 F. 881, 890 (9th Cir. 1909))).

Hill's request was improper and in bad faith, which is why she sought to cover up the evidence. She told Tortorigi she was *deleting the exchange* about the subpoena once he had read it. *Supra* at 5. Not only did Hill apparently delete relevant evidence, she also tried to make sure that her misconduct could never be discovered by implicitly suggesting Tortorigi delete the exchange as well.

Hill next threatened Roe. Hill's message is a clear threat on multiple fronts—to "burn" Roe "to the fucking ground," to "expose" purportedly private and embarrassing information about Roe allegedly "steal[ing] residents adivan," and to conspire with others to "testify against [Roe's] character." *Supra* at 5-6. Hill's claim

13

MOT. FOR SANCTIONS

that she and her dad are "on the right side of justice and want you nowhere near it. Evil bitch" can only be understood as Hill telling Roe not to participate in this matter. Roe felt so threatened that she reached out to Bauer's counsel to report Hill's misconduct and hired counsel. Hill's threats are witness tampering and intimidation. *See InjuryLoans.com, LLC v. Buenrostro*, 2020 WL 9160827, at *2 (D. Nev. Sept. 28, 2020) ("It is beyond doubt that witness intimidation satisfies the bad faith element of a motion for sanctions." (citing 18 U.S.C. § 1512(b))); *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 2002 WL 1433717, at *11 (N.D. Ill. July 2, 2002) ("Threatening letters are harassing, and demonstrates the litigant's use of the judicial system in bad faith.").

Hill also threatened Dawson through his partner. Hill warned the partner that she would release Dawson's confidential police interview and told the partner that Dawson should tell her "the truth." *Supra* at 7. Given that Hill already deposed Dawson in a prior proceeding—in which he openly questioned her motives and the veracity of her accusations, *id.*—her threat could have no other purpose than to induce Dawson to either not provide testimony here or provide *different* testimony than what he previously gave against Hill. *See United States v. Doss*, 630 F.3d 1181, 1190 (9th Cir. 2011) (upholding conviction for witness tampering where the defendant told a witness that "if [the witness] testified, it would be bad for [the witness]"); *Torres Harris v. SCA Rest. Corp.*, 2014 WL 996249, at *4 (E.D.N.Y. Mar. 14, 2014) (holding that where party "attempted to intimidate his employees into believing that they would lose their jobs if they testified against him[,] [s]uch an action is inherently motivated by an improper purpose"). Dawson's failure to respond to a subpoena in this action raises a concern that Hill's threats have worked, particularly because he had participated as a nonparty in the prior proceeding.

Finally, Hill threatened Doe. In April 2023, Hill chastised Doe for taking "the side of an abuser"—apparently in reference to a separate matter—and threatened her:

MOT. FOR SANCTIONS

"don't forget, I have all the screenshots of you fucking married men[.] Go to hell." At the time Hill made the threat, Hill knew Doe was a potential witness for Hill here. And one month after that threat, Hill subpoenaed Doe, including for documents that Bauer had choked or hit Doe and that Doe had accused Bauer of assault. Indeed, Doe reported the threat to Bauer's counsel and was concerned that Hill was pressuring her to say things that were not true. *Supra* at 8.

Each of the acts against Tortorigi, Roe, Dawson, and Doe is willful and bad faith witness tampering, confirmed by documentary evidence, and deserving of sanctions. *Injury Loans*, 2020 WL 9160827, at *3 ("In cases of witness intimidation where sanctions have been awarded, there is generally a record of the alleged intimidation beyond the parties' own recollection.") (collecting cases).

**B. Dismissal of Hill's Counterclaims Is Required.**

The only sanction that can remedy this severe misconduct is dismissal of Hill's counterclaims. *See Ramirez*, 845 F.3d at 782 (holding that "dismissing the case with prejudice is an entirely reasonable response to" witness tampering). As Judge Gee observed in dismissing a case for witness tampering, "the Ninth Circuit … has indicated that such conduct can warrant serious sanctions." *Torres*, 2019 WL 8012686, at *3; *Hussein v. Frederick*, 436 F. App'x 831, 832 (9th Cir. 2011) (affirming dismissal sanction where parties "acted willfully and in bad faith … including to circumvent a court order in another case and to harass and intimidate witnesses").

In the context of discovery sanctions, courts should "consider the following factors" before imposing dismissal: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). "[T]he first and second factors

MOT. FOR SANCTIONS

1    ordinarily will support the sanction while the fourth factor ordinarily will not. The

2    third and fifth factors are generally determinative … ." *Johnson v. Goldsmith*, 542 F.

3    App'x 607, 608 (9th Cir. 2013).

4            The five-factor test "provides the district court with a way to think about what

5    to do, not a set of conditions precedent for sanctions or a script that the district court

6    must follow." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d

7    1091, 1096 (9th Cir. 2007). Instead, "[w]hat is most critical for case-dispositive

8    sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the

9    discovery violations 'threaten to interfere with the rightful decision of the case.'" *Id.*

10   at 1097. Accordingly, "[w]here a party so damages the integrity of the discovery

11   process that there can never be assurance of proceeding on the true facts, a case

12   dispositive sanction may be appropriate." *Id.*; *Am. Rena Int'l Corp. v. Sis-Joyce Int'l*

13   *Co.*, 2015 WL 12732433, at *5 (C.D. Cal. Dec. 14, 2015) ("the district court need

14   not make explicit findings regarding each of the five factors, a finding of 'willfulness,

15   fault, or bad faith' is required for dismissal or default judgment to be proper").

### 1. Hill's Witness Tampering Interferes With The Rightful Decision Of The Case.

18           The critical factor in the Ninth Circuit's analysis—whether the misconduct

19   interferes with the rightful decision of the case—is satisfied here. Hill's repeated

20   attempts to threaten, intimidate or improperly influence witnesses—while also trying

21   to cover up her wrongdoing—strike at the heart of the judicial process and show a

22   flagrant disregard for the orderly administration of justice. *Torres*, 2019 WL

23   8012686, at *4 (dismissing case because "witness tampering is improper not just

24   because it could result in decisions based on incorrect information, but also because

25   it perverts the judicial process on a fundamental level"); *Ramirez*, 845 F.3d at 782

26

27

28

MOT. FOR SANCTIONS

("[t]rying to improperly influence a witness is fraud on the court and on the opposing party").

Indeed, courts—including in this Circuit—have dismissed actions where a party tampered with just one witness. *See Ramirez*, 845 F.3d at 782 (dismissal for bribing one witness); *Torres*, 2019 WL 8012686, at *5 (dismissal for threatening one witness). In *Torres*, dismissal was appropriate because the evidence showed "undisputed threatening of a witness with financial and employment harm in retaliation for, and in response to, perceived unfavorable deposition testimony." 2019 WL 8012686, at *5. Judge Gee dismissed the case even where the witness did not change his testimony. She explained that "forgiving efforts to tamper with witness testimony because those efforts failed would be an abdication of the Court's duty to prevent bad faith litigation conduct and to uphold the integrity of the judicial process." *Id.* at *4.

Here, Hill has tampered with at least four witnesses—conduct more pervasive than in prior cases in which courts imposed dismissal. *See supra.* And Hill's threats to Roe are equally, if not more, intimidating than the ones in *Torres*. *See id.* (explaining that "threatening a witness's job and livelihood" is "equally deplorable" to bribing a witness). Hill threatened to "burn" Roe "to the ground," get her residents—for whom Roe is responsible at her place of employment—to testify against her character, and to reveal embarrassing (and potentially false) accusations. That alone would support dismissal. The case for dismissal is only stronger given Hill's directing Tortorigi to lie and withhold responsive documents, while covering up the evidence; threatening to release a confidential video to embarrass and intimidate Dawson; and subpoenaing Doe after threatening her. The widespread bad faith acts by Hill require the most severe sanction.

Furthermore, the time the Court will need to resolve this matter, including potentially holding an evidentiary hearing to uncover the full scope of Hill's

17

MOT. FOR SANCTIONS

obstructive acts, impairs the expeditious resolution of this case and the court's management of its docket. *See Hernandez*, 2021 WL 6498256, at *7 (finding dismissal factors satisfied where witness tampering "has already impeded the court's ability to expeditiously resolve this matter" and "the court's need to manage its docket is hindered when a party engages in conduct such as witness tampering because the court is taken away from other matters requiring its attention when it must address such conduct"). In addition, her acts have prejudiced Bauer. She has deterred at least one witness, Tortorigi, from initially complying with a valid subpoena. Dawson has not responded to the valid subpoena sent to him. And Bauer is prejudiced by Hill's disregard for the integrity of this proceeding as there is no guarantee that other witnesses—such as Erickson, Vaesau, Finestead, and Decker— have escaped Hill's misconduct. *See Hernandez*, 2021 WL 6498256, at *6 ("[T]here is a risk of prejudice to [defendant] in the absence of dismissal because there does not appear to be another sanction that appropriately addresses conduct that goes against the court's mission to administer justice.").

### 2. Lesser Sanctions Are Inadequate.

Importantly, no other sanction will remedy Hill's flagrant misconduct. *See Ramirez*, 845 F.3d at 782 ("In light of that finding [of witness tampering], the court certainly did not abuse its discretion in dismissing the case with prejudice rather than imposing a lesser sanction."). Unlike other misconduct, witness tampering goes to the core of the factfinding process and the integrity of the judicial system. For that reason, dismissal is a just and necessary sanction. *See Ramsey v. Broy*, 2010 WL 1251199, at *4 (S.D. Ill. Mar. 24, 2010) ("When the plaintiff is the one that commits the offense, dismissing the case is sensible as the very individual that seeks the Court's jurisdiction to solve his dispute (i.e., the plaintiff) is the party thwarting the Court's ability to get to the truth.").

MOT. FOR SANCTIONS

18

Hill's repeated misconduct both in this case and her prior proceeding against Bauer confirms that lesser sanctions are inadequate. *See Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 352 (9th Cir. 1995) ("It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."); *Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C. 2003) ("monetary sanctions may be inherently inadequate to remedy the harm to the public interest in preserving the integrity of the courts and in deterring future misconduct"). The extent of Hill's misconduct is unknown as Bauer only has information from witnesses willing to come forward, or when Hill's intimidation is done publicly. It is concerning, however, that Dawson has not produced documents and three other witnesses with whom Hill has communicated in the past (Erickson, Finestead, and Vaesau) have claimed not to have any responsive documents, while a fourth (Decker) is in violation of a court order to produce documents.

It is further concerning that Finestead communicated to Roe that Hill "can't be tied to Trevor with you" and that Finestead and Hill "have to protect ourselves against Trevor's attorneys and play the game." *Supra* at 6. These statements suggest that Hill is not just intimidating and tampering with witnesses on her own, but enlisting Finestead as her proxy so her conduct remains undiscovered.

From the beginning of her state court litigation against Bauer, Hill repeatedly refused to abide by the rules and undermined the integrity of judicial proceedings at every turn. In the DVRO proceeding, the court held that Hill's declaration in support of her petition for a restraining order was "materially misleading." Dkt. 52-3 at 665 (Tr. 586:7). Hill also withheld material, exculpatory evidence in that prior proceeding—including a video she took of herself smiling in Bauer's bed after the second sexual encounter, which she claims was an assault. *See* Fetterolf Decl. ¶¶ 2-5.

MOT. FOR SANCTIONS

Hill has also deleted and failed to preserve evidence—including her messages with Bauer and her closest friends—when litigation was foreseeable. Indeed, Hill testified in the DVRO that she deleted messages with Bauer, even after she made her false police report on May 18, 2021. Dkt. 52-3 at 514 (Tr. 440:9-17) ("Anything with Trevor [I] deleted because I didn't want to be reminded of communications of him."). She testified that she was not told to preserve evidence until receiving a preservation letter from Bauer's counsel—which was after she had filed her petition for restraining order. *Id.* (Tr. 440:18-22). In this case, Hill has conceded that messages with two of her closest friends—including Decker—were missing for a roughly 10-day period following her second sexual encounter with Bauer. Peyser Decl. Ex. J (RFAs Nos. 8, 12). The other friend, Ciramely Maya, has produced messages in which Hill—echoing her later conversation with Tortorigi—said she would call about the subpoena Maya received in the DVRO proceeding.[2] *Id.* Ex. K at CM_0000055.

Given the serious and widespread witness tampering by Hill, dismissal of Hill's counterclaims is the only appropriate sanction.

**C**. **In the Alternative, Bauer Requests A Forensic Examination, Issue Sanctions, An Adverse Inference, and Monetary Sanctions.**

If the Court determines that lesser sanctions are warranted, Bauer requests that the Court issue the following sanctions.

*First*, the Court should order Hill to turn over her electronic devices, including any cell phones, computers, cloud storage accounts and social media accounts, for forensic examination by an independent neutral examiner to review those devices for any further evidence of witness tampering. Hill's instruction to Tortorigi to delete evidence, as well Hill's failure to produce any messages with Tortorigi, shows that Hill has deleted or failed to preserve those messages. In addition, several witnesses

---

[2] Maya asked Hill to call her about the subpoena Maya received in this case. *Id*. at CM_0000159.

MOT. FOR SANCTIONS

who communicated with Hill supposedly no longer have their messages with Hill—suggesting they may have deleted those messages at Hill's direction. Hill has also admitted that she does not have messages with two of her closest friends immediately following her second sexual encounter with Bauer. That misconduct and destruction of evidence shows the need for a forensic examination undertaken at Hill's expense. *See Juul Labs, Inc. v. Chou*, 2022 WL 2161062, at *2 (C.D. Cal. Apr. 19, 2022) ("Many courts within the circuit look to whether the party requesting a forensic examination has made a showing that the responding party intentionally destroyed relevant electronic discovery or committed other improper discovery conduct.").

*Second,* the Court should prohibit Hill from contending that the first encounter was nonconsensual. *See* Fed. R. Civ. P. 37(b)(2)(A)(i). Her texts with Tortorigi show that she described the first encounter as "so hot" and her attempt to prevent Tortorigi from complying with a subpoena justifies this issue sanction.

*Third*, the Court should give an adverse inference instruction to the jury. The substance of the instruction is that the jury can infer that any witness Hill tried to intimidate, threaten, or improperly influence had information that was harmful to Hill and helpful to Bauer. In addition, the jury may infer that any information not produced by a witness with whom Hill had contact is information harmful to Hill and helpful to Bauer.

*Fourth*, the Court should issue monetary sanctions for Bauer's time in preparing this motion and corresponding with the witnesses regarding the willful misconduct from Hill.

## CONCLUSION

The Court should dismiss Hill's counterclaims as a sanction for witness tampering. If necessary, Bauer requests an evidentiary hearing in order to unearth the full scope of Hill's witness tampering.

MOT. FOR SANCTIONS

Dated:        June 14, 2023          _/s/ Blair G. Brown_____
                                      Blair G. Brown (admitted *pro hac vice*)
                                      Jon R. Fetterolf (admitted *pro hac vice*)
                                      ZUCKERMAN SPAEDER LLP
                                      1800 M Street, N.W., Suite 1000
                                      Washington, D.C. 20036
                                      Tel: (202) 778-1800
                                      Fax: (202) 882-8106
                                      bbrown@zuckerman.com
                                      jfetterolf@zuckerman.com

                                      Nell Peyser (admitted *pro hac vice*)
                                      ZUCKERMAN SPAEDER LLP
                                      485 Madison Avenue, 10th Floor
                                      New York, NY 10022
                                      Tel: (212) 704-9600
                                      Fax: (212) 704-4256
                                      npeyser@zuckerman.com

                                      Shawn Holley (Cal. Bar No. 136811)
                                      Suann MacIsaac (Cal Bar No. 205659)
                                      KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
                                      808 Wilshire Boulevard., 3rd Floor
                                      Santa Monica, CA 90401
                                      Tel: (310) 566-9800
                                      Fax: (310) 566-9873
                                      sholley@kwikhlaw.com
                                      smacisaac@kwikhlaw.com

MOT. FOR SANCTIONS

**CERTIFICATE OF COMPLIANCE**

     The undersigned, counsel of record for Plaintiff/Counterclaim Defendant Trevor Bauer, certifies that this brief contains 6,989 words, which complies with the word limit of L.R. 11-6.1.

Date: June 14, 2023                    /s/_ *Blair G. Brown*

                                    Blair G. Brown