Shawn C. Holley, Esq.
Kate E. Mangels, Esq.
Suann MacIssac, Esq.
KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 Wilshire Blvd, Suite 300
Santa Monica, CA  90401
Phone: 310-566-9822
Fax: 310-566-9850
E-Mail: sholley@kwikhlaw.com; kmangels@kwikalaw.com
smacisaac@kwikhlaw.com

Blair G. Brown, Esq.
Jon R. Fetterolf, Esq.
Nell Peyser, Esq.
ZUCKERMAN SPAEDER LLP
1800 M. Street, N. W. Suite 1000
Washington, D.C 20036
Phone: 202-778-1800
Fax: 202-882-8106
E-Mail: bbrown@zuckerman.com; jfetterolf@zuckerman.com
npeyser@zuckerman.com

Attorneys for Plaintiff/Counter-Defendant Trevor Bauer

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>        Plaintiff,<br><br>   vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>        Defendant.<br><br>LINDSEY C. HILL,<br><br>        Counterclaimant,<br><br>   vs.<br><br>TREVOR BAUER, | Case No. 8:22-cv-00868 JVS (ADSx)<br><br>Assigned to: Judge James V. Selna<br>Referred to: Magistrate Judge Autumn D. Spaeth<br><br>**PLAINTIFF/ COUNTERCLAIM DEFENDANT TREVOR BAUER'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF JOINT STIPULATION**<br><br>Date:  June 28, 2023<br>Time:  10:00 a.m.<br>Magistrate Judge: Autumn D. Spaeth<br>Courtroom:        6B<br><br>Action Filed: April 25, 2022<br>Discovery Deadline: September 1, 2023<br>Pretrial Conference:  January 22, 2024 |

SUPPLEMENTAL MEMORANDUM

| | |
|---|---|
| 1 | Counter-defendant. |
| 2 | |

Trial Date: February 13, 2024

SUPPLEMENTAL MEMORANDUM

**INTRODUCTION**

Hill's disregard for the privacy rights of third parties and Bauer is evident from her hearsay-ridden opposition to Bauer's motion. Not once does Hill reference the objections from Does 1 and 2 to Hill's subpoenas. And Hill cites no case in which a court has allowed intrusive third-party discovery into sexual history where those third parties either objected to the sexual privacy invasion (Does 1 and 2) or had never publicly identified themselves and/or stated their desire to participate in the underlying matter (Does 3-5). Tellingly, she does not offer a declaration or direct statement from such individuals that they consent to being forced into the public eye. In short, Hill has failed to show a compelling need outweighing the core privacy interests of third parties.

**ARGUMENT**

**1. Hill Has Not Overcome The Significant Privacy Interests At Stake.**

Hill's opposition does not satisfy her burden to override the significant sexual privacy interests of the third parties and Bauer. Her opposition primarily relies on the purported relevance of the subpoenas, which Bauer disputes *infra*. But even assuming she seeks relevant information, that does not end the inquiry. "[E]ven when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." *Giacopelli v. Jackson Nat'l Life Ins. Co.*, 2014 WL 12591810, at *1 (C.D. Cal. Oct. 21, 2014) (citation omitted). Hill has not shown a compelling need outweighing the significant privacy rights held by the third parties and Bauer.

Indeed, Hill entirely ignores the objections lodged by Does 1 and 2. But those women opposed, on privacy grounds, the intrusion into their sexual history. Doe 2 emphasized that the subpoena "would only serve to harass, embarrass, and humiliate me." Dkt. 114-3, Ex. G. Likewise, Hill gives short shrift to the fact that Does 4 and 5 have never publicly identified themselves.

Those women have significant privacy interests in keeping their sexual history

1

1   confidential. Hill cites no case in which a court overruled a third-party's objection on

2   sexual privacy grounds and required the third party to produce documents and sit for a

3   deposition. She also cites no case in which third parties who made no public assault

4   claims were forced to provide documents or testimony about their sexual history.

5          Hill also fails to distinguish the cases Bauer cited in which California and federal

6   courts denied or limited discovery involving third party sexual privacy rights. Dkt. 114-

7   2 at 23-28. For instance, her attempt to avoid the persuasive force of *Rapp v. Fowler*

8   falls flat. 2021 WL 5910288 (S.D.N.Y. Dec. 13, 2021). Hill first finds it "unclear why"

9   under *Fowler* "additional factors should be applied" to Rule 415. Dkt. 114-2 at 52. But

10  *Fowler* answers that question: because the third-party interests "weigh heavily" in the

11  analysis. 2021 WL 5910288, at *2. And *Fowler* did not even involve California law,

12  in which "[t]he courts generally have concluded that the public interest in preserving

13  confidential information outweighs in importance the interest of a private litigant in

14  the absence of considerations involving life or liberty." *City & Cnty. of San Francisco*

15  *v. Superior Ct. in & for City & Cnty. of San Francisco*, 38 Cal. 2d 156, 163 (1951).

16         Hill also misunderstands *Fowler*'s holding. She contends that, under *Fowler*,

17  several of the Does here have publicly identified themselves through anonymous

18  allegations to a newspaper, a confidential arbitration, and private conversations with

19  Hill before this lawsuit. But *Fowler* shows why that is wrong. That court denied

20  discovery into allegations from an anonymous former co-plaintiff, whose allegations

21  were "publicized widely," because that former party did not want his identity revealed.

22  2021 WL 5910288, at *3. Apart from Doe 3, none of the other Does' identities have

23  been "disclosed by the [Does] or otherwise become public, in either case in connection

24  with a claim, published report in mainstream media, or public allegation that any such

25  sexual or romantic experience or encounter was not in all respects consensual." *Id*.

26         Hill also misunderstands the import of *Boler v. Superior Court*, 201 Cal.App.3d

27  467 (Ct. App. 1987)—which did not involve third party subpoenas, but rather

28  deposition questions to the defendant. The court denied discovery in whole because it

1    was overbroad—even though plaintiff's counsel "knew of the women" who had

2    allegedly been harassed and where the court assumed the discovery was "relevant." *Id.*

3    at 472, 474. In denying discovery, the court observed that there were "less intrusive

4    means" available to plaintiff's counsel, including contacting the women rather than

5    subjecting the defendant to formal discovery. *Id.* at 474. Here, by failing to submit a

6    declaration or direct statement from any of these women, Hill cannot demonstrate that

7    these women support her attempt to drag them into this litigation.

8          In response, Hill cites a slew of inapposite cases. She relies on *Zucchella v.*

9    *Olympusat, Inc.*, which concerned issues of workplace gender discrimination and

10   sexual harassment, with no substantive discussion of the third parties' privacy interests.

11   The court allowed discovery from the defendant of three third parties who publicly

12   filed complaints and one whom the defendant testified about at his deposition. 2020

13   WL 8483772, at *10, 11, 13 (C.D. Cal. Nov. 2, 2020). But the court denied discovery

14   about a third party who objected to the privacy invasion and asserted she had made no

15   complaints against the defendant. *Id.* at *15. The other cases Hill cites are even further

16   afield—involving privacy of medical records (*Jones v Superior Court*, 119 Cal. App.

17   3d 534, 550 (Ct. App. 1981)); an attorney's trust account records (*Doyle v. State Bar*,

18   32 Cal. 3d 12, 20 (1982)); and a defamation defendant's allegedly false police reports

19   about a purported rape by the plaintiff (*Rider v. Superior Ct.*, 199 Cal. App. 3d 278,

20   286 (Ct. App. 1988)). None of the cases address Hill's attempt to force third parties to

21   reveal private sexual histories over their objections, or to require them to publicly

22   become part of a lawsuit.

23        **2.  A Protective Order And Anonymity Will Not Protect The Privacy Interests.**

24         As Bauer explained, a protective order cannot cure an invasion of a third parties'

25   sexual privacy rights. Dkt. 114-2 at 24-25. Hill disagrees, citing only a decision

26   involving a gender discrimination case. *Constance Hanson-poulsen v. Dep't of Def. of*

27   *the USA*, 2020 WL 2043999, at *2 (C.D. Cal. Mar. 3, 2020). Nothing in that decision

28   turned on sexual privacy rights or objections by third parties to the discovery at issue.

1  Moreover, Hill's acts in this case further render futile a protective order for the third-
2  party women. Hill has exhibited an utter disregard for lawful litigation conduct,
3  including instructing one witness in this case to falsely state that he has no responsive
4  documents to a subpoena. *See* Dkt. 119 (motion for sanctions for witness tampering).
5  Hill then subsequently deleted those false instructions to the witness. She intimidated
6  and threatened a second witness, saying that she would "burn [the witness] to the
7  fucking ground" and "expose" the witness. *Id.* at 5-6. She also threatened to release
8  information subject to the protective order to intimidate a third witness. *Id.* at 7. Finally,
9  she previously threatened Doe 1 before issuing the subpoena to her. *Id.* at 7-8. Against
10  the backdrop of this serious misconduct, a protective order will not protect any third
11  party's privacy interest in this case.

12      Hill also asserts, without citation, that "[t]o the extent any of the [alleged]
13  Victims with [sic] to remain anonymous, that also can also be accomplished." Dkt.
14  114-2 at 50. But Hill has already publicly identified Doe 4 in a prior filing—making
15  any promise of future anonymity illusory—and the trial in this case will be public.
16  Additionally, unlike Bauer who referred to these women as Does, Hill deliberately
17  revealed their names, forcing Bauer to seek to file portions of the filing under seal. And
18  anonymity does not change the fact that the Does will be subject to invasive discovery.

19      **3.  Hill Cannot Show Direct Relevance.**

20      Hill's attempt to show direct relevance also fails. She has not offered any
21  declaration or documentary evidence that the Does consent to being a part of this case
22  or that Does 1, 2, 4 and 5 have made public accusations against Bauer. Instead, Hill
23  and her counsel submitted declarations in which they relay hearsay and double hearsay
24  statements from four of the Does for the truth of the matters asserted therein. Dkt. 114-
25  4, 114-5. Those declarations lack any evidentiary value, are directly contradicted by
26  the objections of Does 1 and 2, and illustrate the infirmity of Hill's arguments. It is
27  telling that either Hill or her representatives have had past contact with at least Does 1,
28  2, 4, and 5 but yet none of them support her efforts to include them in this matter by

1    providing her a direct statement or declaration. And for Does 1 and 2, they explicitly

2    objected to Hill's attempts to bring them into the case.

3        The weakness in the hearsay statements is shown by the purported accusations

4    from Doe 5. Doe 5 has never gone to the media, testified in a confidential arbitration,

5    or even spoken to Hill. The "evidence" of her accusations is a statement she made to

6    Hill's former counsel who at some point relayed it to Hill's current counsel. And Doe

7    5's alleged accusations have no relevance here, where Hill asked Bauer for a

8    "handprint on my a$$." Compl ¶ 58. Furthermore, Hill liked a bruise she said Bauer

9    left on her inner thigh after the first encounter, saying "U Gucci – im into it." *Id.* ¶ 52.

10       Hill does belatedly concede that Doe 1 was not "sexually assaulted by Bauer."

11    That concession shows that Hill lacked any basis for nearly all of her requests to Doe

12    1, including for "videos" or "photographs' of Bauer hitting Doe 1. The only possible

13    basis for her subpoena is a video (assuming it ever existed) that Doe 1 does not have

14    and not even the Pasadena Police Department could find.

15       Finally, all the purported accusations are irrelevant because they were in fact

16    consensual encounters taking place in the context of consensual rough sex. As Bauer

17    explained in his motion, consensual rough sex, including choking to the point of

18    alterations in consciousness, is an increasingly prevalent activity. Dkt. 114-2 at 14-15

19    n.10; *see also* Herbenick et al., *Archives of Sexual Behavior,* "It Was Scary, But Then

20    It Was Kind of Exciting": Young Women's Experiences with Choking During Sex

21    (2021) ("many participants described excitement and pleasure in being choked during

22    sex"). Hill herself explains that Doe 4 "was okay with [Bauer] choking her 'to a certain

23    point,' which was when she looked as though she was about to pass out." Dkt. 114-2

24    at 32. The purported support for several of the other alleged accusations also reflects

25    consensual rough sex encounters. Hill is thus wrong that Bauer "does not dispute" the

26    allegations would be sexual assault. Each of the encounters (to the extent they

27    occurred) was consensual rough sex, and discovery of those encounters with third

28    parties is irrelevant.

5

SUPPLEMENTAL MEMORANDUM

1

2 DATED:  June 14, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZUCKERMAN SPAEDER LLP


By: /s/ *Blair G. Brown*
    BLAIR G. BROWN
    JON R. FETTEROLF
    NELL PEYSER
    Attorneys for Plaintiff/counter-defendant
    Trevor Bauer

---

6