Christopher P. Wesierski [Bar No. 086736]
cwesierski@wzllp.com
Michelle R. Prescott [Bar No. 262638]
mprescott@wzllp.com
Eileen Spadoni [Bar No. 133259]
espadoni@wzllp.com
Brett A. Smith [Bar No. 322707]
bsmith@wzllp.com
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Bryan J. Freedman, Esq. (SBN: 151990)
bfreedman@ftllp.com
Jesse A. Kaplan, Esq. (SBN: 255059)
jkaplan@ftllp.com
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Defendant and Counterclaimant
Lindsey C. Hill

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>Plaintiff,<br><br>vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>Defendant.<br><br>LINDSEY C. HILL,<br><br>Counterclaimant,<br><br>vs. | Case No. 8:22-cv-00868 JVS (ADSx)<br><br>[Assigned to Hon. James V. Selna]<br><br>**DECLARATION OF LINDSEY HILL IN OPPOSITION TO BAUER'S MOTION FOR SANCTIONS**<br><br>[Opposition to Motion for Sanctions and Declaration of Jesse Kaplan filed concurrently]<br><br>Hearing Date: July 31, 2023<br>Time: 1:30 p.m.<br>Courtroom: 10C<br><br>Action Filed: April 25, 2022 |

DECLARATION OF LINDSEY HILL

TREVOR BAUER,

    Counterdefendant.

# DECLARATION OF LINDSEY HILL

I, Lindsey C. Hill, declare as follows:

1. I am over the age of 18, and I have personal knowledge of the facts stated herein and, if called to testify, I could and would testify competently to them.

2. In approximately 2021, Doe reached out to me through Instagram. We subsequently spoke by telephone a few times and Doe continued to "message" me over Instagram about personal matters, including Doe's sex life.

3. On or around April 15, 2023, Doe randomly reached out to me by text message about my friend Olivia Finestead and Mike Clevinger, a professional baseball player. Finestead is Clevinger's ex-girlfriend and the mother of Clevinger's son. Finestead had recently accused Clevinger of domestic violence and child abuse and there was a Major League Baseball investigation into those allegations. Prior to April 15, 2023, Doe knew that I was friendly with Finestead.

4. In Doe's April 15th text messages to me, Doe was very critical of Finestead and Finestead's allegations about one of Clevinger's ex-girlfriends, Monica Ceraolo. Finestead, who was in a legal dispute with Clevinger, had alleged, among other things, that Clevinger had abused Ceraolo and serially cheated on Ceraolo with other women. As a result, Clevinger had filed a petition for an injunction for protection against Finestead in a Circuit Court in Pinellas County, Florida. My understanding is that an injunction for protection is similar to a restraining order. Doe's April 15th text messages to me were critical of Finestead for exposing Clevinger's alleged cheating and suggested that the Florida Court would issue a "restraining order" against Finestead.[1]

5. I was offended by Doe's texts to me about Finestead and Clevinger, and

---

[1] I also recall that Doe also said "good luck in court" in one of Doe's April 15th text messages.

1
DECLARATION OF LINDSEY HILL

did not understand why Doe was advocating for Clevinger, the abuser, and injecting herself into a matter that had nothing to do with Doe.

6. I decided to respond to Doe's text messages to me about Finestead and Clevinger. In my response, I intended to voice my disapproval that Doe was taking the side of Clevinger, an abuser, and injecting herself into a matter that did not concern her. In doing so, I said "Don't forget I have all the screenshots of you fucking married men." Again, I said this in order to continue to voice my disapproval towards Doe's comments about Clevinger and his victims, and to voice my belief that Doe's comments were especially unjustified and unwarranted coming from her due to the fact that Doe had previously told me that she had been in adulterous relationships with married men.

7. I did not intend any of my comments to function as a threat to Doe. I did not intend any of my comments, including the comment about Doe's adulterous relationships, to in anyway concern this litigation or Doe's potential testimony in this litigation, and did not intend to cause or persuade Doe to provide any testimony in this lawsuit. Again, my commentary was in response to Doe's negative comments concerning Clevinger and his abusive relationships with his ex-girlfriends, and Doe's apparent belief that a restraining order against Finestead was warranted.

8. Prior to April and May 2021, I had a social relationship with Sophie De Silva. I considered De Silva to be a close and personal friend and mentor, and someone who had always been supportive of me and my recovery from alcoholism. At some point prior to 2021, De Silva and Derek Dawson began dating and entered into a romantic relationship.

9. In the summer of 2021, Dawson provided Bauer's counsel and Radar Online with certain information about me. In July 2021, Dawson's counsel sent Bauer's counsel a letter that attached text messages between me and Dawson. A true and correct copy of that letter is attached hereto as **Exhibit 1**. Attached hereto as **Exhibit 2** is a copy of the Radar Online article that publicized my text messages with

Dawson. At least some of the information that Dawson disclosed to Radar Online and Bauer concerned my prior sexual history, namely my sexual/romantic relationship with a professional baseball player other than Bauer. This included the disclosure of private messages where I described sex with the professional baseball players other than Bauer.

10. I believed that the information disclosed by Dawson about my past sexual relationship was entirely irrelevant to whether I was battered and sexually battered by Bauer, and was designed to be salacious, sensational, and drag me through the mud. I also believed that Dawson was "slut shaming" me by essentially saying that Bauer's battery and sexual battery was justified because I was allegedly promiscuous, sexually provocative and/or had a history of dating professional athletes.

11. I was upset that Dawson, someone who I thought was my friend, would do something like that to me. I was even more upset and disappointed that De Silva, someone who I considered to be a close friend and mentor, would continue to stand by Dawson after what he had done to me. I felt betrayed by De Silva.

12. In early 2023, I reviewed various materials that were produced by the Pasadena Police Department ("PPD") in response to a subpoena in this lawsuit. Specifically, in early February 2023, I viewed portions of a video of the PPD's interview of Dawson. This was the first time I had seen that video. After watching the initial portion of the Dawson interview video, I had to stop watching because the video upset me so much. In this video, Dawson again volunteered similar seemingly irrelevant information about my relationships with professional baseball players other than Bauer and my alcoholism. I believed Dawson to be "slut shaming" me and shaming me for being an alcoholic. I also observed that Dawson told the PPD not to believe me.

13. The Dawson interview video greatly disturbed and upset me and reinvigorated my great unhappiness and disappointment that De Silva, someone who was supposedly my close friend and mentor, would continue to stand by Dawson,

someone who sided with my abuser.

14. I am a recovering alcoholic. In the first few months of 2023, I struggled significantly with my sobriety, and relapsed and began drinking heavily during that period. I drank heavily the day I saw the Dawson interview video. Later that day while I was intoxicated, my emotions towards De Silva heightened. While intoxicated, I impulsively decided to contact De Silva through Instagram in order to inform her what I had just seen in the Dawson interview video and to express my frustration about De Silva's decision to stand by Dawson, someone who supported my abuser.

15. I have read Bauer's motion for sanctions. In the motion, Bauer claims that I threatened to "expose" the Dawson interview video to "embarrass" Dawson. That is not correct. I never intended to do so or express that to De Silva or Dawson. There is no reason why I would want to do so, because the video was embarrassing and unflattering towards me. To the contrary, I believed that Bauer would try to use and publicize the Dawson video in this lawsuit. My messages were not intended to dissuade Dawson from testifying or to change the substance of his testimony. Again, my intent was to express my unhappiness and frustration to my former close friend. At the time, in early February 2023, I had no idea that Bauer was even pursuing Dawson as a witness in the lawsuit.

16. Again, I am a recovering alcoholic. Between approximately January 2020 and August 2020, I resided at a sober living home in San Diego County that was owned and operated by Roe. I lived at that sober living home as part of my recovery process. Later on, I planned on working as a resident life director at another sober living home owned and operated by Roe. I planned on beginning such employment in June 2021.

17. Following the May 2021 battery and sexual battery by Bauer, my relationship with Roe deteriorated significantly. I felt strongly that Roe was overstepping her boundaries and injecting herself into matters that did not concern her, specifically my recovery from being battered and sexually battered by Bauer and how I should deal with that situation. For example, following the May 2021 Bauer incident,

4
DECLARATION OF LINDSEY HILL

Roe contacted me and provided me with unsolicited advice, opinions and recommendations about my situation with Bauer. Roe would also contact my father about me and the Bauer situation, providing my father with unsolicited advice and opinions, including those that concerned my continued sobriety. Without my permission, Roe had also reached out to attorneys about potentially representing me, and disclosed information about me to those attorneys.

18. For many reasons, I did not welcome Roe's unsolicited involvement. I did not want Roe communicating with my parents or potential attorneys about me. Additionally, I perceived that Roe's advice was not well taken given some of Roe's prior conduct.

19. In 2021, I tried to let Roe know that I did not want Roe involved. Roe, however, continued her attempts to intrude into my life and the Bauer situation. This upset me.

20. Again, in early 2023, I reviewed various materials that were produced by the PPD. This included a recorded interview of Roe whereby Roe disclosed information to the PPD about my sexual relationship with a professional baseball player other than Bauer. I felt Roe's disclosure of that information was irrelevant and hurtful. This upset me.

21. In late March 2023, I learned from my father that Roe had tried contacting him again. Moreover, on approximately April 10, 2023, I also learned that Roe had been trying to reach out to my attorneys. While in hindsight, Roe was respecting her boundaries when she reached out to my father and attorneys in the Spring of 2023, Roe's outreach triggered my memories of Roe's prior attempts to involve herself in my recovery from the Bauer incidents, and I perceived that Roe was once again trying to involve herself in my life. I had a visceral and emotional response to Roe's outreach. I was angered.

22. I had been drinking that day, and while I was heavily intoxicated, I impulsively sent the text message at issue to Roe. The sole purpose of my text message

to Roe was to express my raw emotions, namely anger, that I was feeling towards Roe based on my perception that Roe was trying to once again involve herself in my life without invitation to do so. These emotions were amplified by my excessive drinking that day.

23. Both prior to and while I sent Roe the text message at issue, I was not thinking about what testimony or information Roe might provide in this lawsuit. I was not trying to influence Roe to provide certain testimony or information.

24. In retrospect, I believe that my text message to Roe was wrong and hurtful. I regret sending that message to her.

25. Bauer's Motion refers to a communication from Finestead to Roe a few days later. I did not tell Finestead to send that text message to Roe. At the time, I did not want to have anything to do with Roe.

26. Frank Tortorigi was a friend that I had met while I was working at Lululemon, my prior employer. Since the first Bauer battery and sexual battery, I had not spoken to Tortorigi much about anything. Prior to the message to Tortorigi at issue, I had not discussed this lawsuit with Tortorigi.

27. In March 2023, I was not mentally well and had lost my sobriety. This clouded my judgment and led me to believe that I should reach out to Tortorigi.

28. When I learned that Tortorigi would be subpoenaed by Bauer, I thought that Tortorigi might be overwhelmed and panicked by the subpoena, especially since he had such tangential involvement in anything that would be relevant to this lawsuit, in particular my interactions with Bauer. I also was concerned that Tortorigi would be embarrassed that he would have to produce text message communications with me that were likely to be perceived as raunchy, vulgar or sexually explicit.

29. I was also frustrated that Bauer was subpoenaing Tortorigi because I had reviewed the documents produced by the PPD in this lawsuit, and observed that it appeared that the PPD had already produced all of my relevant communications with Tortorigi and several others. In 2021, while the PPD was investigating Bauer, I

provided the PPD with my phone and computer. The PPD made copies of and/or extracted information from those devices, including text messages. I believed that based on the PPD's document production, Bauer already had already received all relevant and responsive communications between me and Tortorigi. I also assumed and believed that it was unlikely that Tortorigi still had responsive documents to the subpoena from the Spring of 2021, and believed that there had been no communications since then that would be relevant to this lawsuit.

30. I did not intend for my communication to Tortorigi to result in any harm to Bauer or expect that it would result in Tortorigi hiding and not producing responsive documents in this case. My intent in sending the Instagram message at issue was to give Tortorigi a heads up that he was going to be subpoenaed, to "soften the blow" of the subpoena to Tortorigi, to cause Tortorigi not to worry or be nervous about it, and to emphasize my belief that Bauer already had our text messages. Because I believed that Bauer already had my text messages with Tortorigi from the PPD's document production, I did not believe that there was anything to hide, and I did not intend to "cover up" documents and cause them to be hidden from Bauer.

31. My message to Tortorigi discusses Tortorigi responding to the contemplated subpoena by saying that he no longer has access to responsive text messages. That was based on my subjective belief that Tortorigi probably did not continue to maintain the text messages. Again, I did not intend for Tortorigi to withhold responsive documents if he was able to access them. Although I should not have been discussing the contemplated subpoena with Tortorigi in the first instance, I acknowledge that I should have at least qualified my statement by making it clear that he should only say that he has no access to the materials if that was in fact true.

32. I acknowledge that I exercised extremely poor judgment by messaging Tortorigi about the subpoena and understand that it was not appropriate for me to so. I regret sending Tortorigi the message at issue and communicating with him about the subpoena.

33. In Bauer's motion for sanctions, he claims that he is concerned that I may have threatened or instructed Justin Vaesau, Kyle Erickson, Olivia Finestead and Lisa Decker not to produce documents. I never threatened these individuals or said anything to them that would suggest that they should not produce documents in response to a subpoena.

34. I am a recovering alcoholic. In the first few months of 2023, I struggled significantly with my sobriety, and relapsed and began drinking heavily during that period. This lapse in my sobriety was caused by the stress of this lawsuit, and the continued and lingering memories of the brutal battery and sexual battery that I suffered from Bauer. My heavy drinking earlier this year both clouded my judgment and heightened my emotions.

35. On or about May 8, 2023, I voluntarily checked myself into a sobriety treatment center for thirty days. The purpose of doing so was to regain control of my sobriety. While in treatment, I was diagnosed with post-traumatic stress disorder resulting from Bauer. I am now sober again following such treatment.

36. I have voluntarily agreed that while this lawsuit is pending, I will not speak to any witnesses in this lawsuit about any subpoena issued by Bauer, including the witnesses' response to or compliance with that subpoena, or the witnesses' potential testimony in response to such a subpoena. I will also cease all further communications (on any subject) with either Tortorigi, Roe, Doe, Dawson or De Silva while this case is pending.

I, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 10th day of July, 2023, at Nashville, Tennessee.



Lindsey C. Hill