KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
Shawn Holley (Cal. Bar No. 136811)
Suann MacIsaac (Cal. Bar No. 205659)
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
Tel: (310) 566-9800
Fax: (310) 566-9850
sholley@khiks.com
smacisaac@khiks.com

ZUCKERMAN SPAEDER LLP
Blair G. Brown (admitted *pro hac vice*)
Jon R. Fetterolf (admitted *pro hac vice*)
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 882-8106
bbrown@zuckerman.com
jfetterolf@zuckerman.com

ZUCKERMAN SPAEDER LLP
Nell Z. Peyser (admitted *pro hac vice*)
485 Madison Ave., 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
npeyser@zuckerman.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

TREVOR BAUER,

Plaintiff,

v.

LINDSEY C. HILL and NIRANJAN FRED THIAGARAJAH,

Defendants.

Case No. 8:22-cv-00868-JVS-ADS
Assigned for all purposes to the Hon. James V. Selna

**REPLY IN SUPPORT OF MOTION BY PLAINTIFF/ COUNTERCLAIM DEFENDANT TREVOR BAUER FOR SANCTIONS FOR LINDSEY C. HILL'S WITNESS TAMPERING**

Hearing Date: July 31, 2023
Hearing Time: 1:30 p.m.
Department: 10C

Action Filed: April 25, 2022

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. Hill's Misleading Declaration Confirms She Engaged in Witness Tampering. .......... 3

A. Hill's Declaration Confirms Her Bad-Faith Misconduct. .......... 3

B. Hill's Post-Hoc Explanations Are Not Credible. .......... 5

C. To The Extent The Court Does Not Disregard Hill's Declaration, An Evidentiary Hearing Is Necessary. .......... 9

II. Dismissal Is The Only Just Sanction. .......... 9

III. No Lesser Sanctions Are Appropriate .......... 11

IV. Alternative Sanctions Are Available .......... 14

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Roberts*,
2021 WL 1530092 (D. Mont. Apr. 19, 2021) .......... 4, 5, 9

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
2015 WL 12732433 (C.D. Cal. Dec. 14, 2015) .......... 11

*Anheuser-Busch, Inc. v. Natural Beverage Distrib.*,
69 F.3d 337 (9th Cir. 1995) .......... 11

*Erickson v. Newmar Corp.*,
87 F.3d 298 (9th Cir. 1996) .......... 13

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) .......... 4

*Hernandez v. Franco American Baking Co.*,
2021 WL 6498256 (D. Nev. Sept. 3, 2021) .......... 9, 10

*Indiezone, Inc. v. Rooke*,
720 Fed. App'x 333 (9th Cir. 2017) .......... 11

*InjuryLoans.com, LLC v. Buenrostro*,
2020 WL 9160827 (D. Nev. Sept. 28, 2020) .......... 4, 9

*Juul Labs, Inc. v. Chou*,
2022 WL 2161062 (C.D. Cal. Apr. 19, 2022) .......... 14

*Lambright v. Ryan*,
698 F.3d 808 (9th Cir. 2012) .......... 9

*Ramirez v. T&H Lemont, Inc.*,
845 F.3d 772 (7th Cir. 2016) .......... 9, 10, 13

*Ramsey v. Broy*,
2010 WL 1251199 (S.D. Ill. Mar. 24, 2010) .......... 10

*Riley v. City of New York*,
2015 WL 541346 (E.D.N.Y. Feb. 10, 2015) .......... 14

*Tilton v. McGraw-Hill Companies, Inc.*,
2007 WL777523 (W.D. Wash. Mar. 9, 2007) ........................................11, 13, 14

*Torres v. Wells Fargo Bank*,
2019 WL 8012686 (C.D. Cal. Dec. 17, 2019) .......................................4, 8, 10, 11

*United States v. Doss*,
630 F.3d 1181 (9th Cir. 2011)........................................................................3, 4, 6

*United States v. Wagner*,
834 F.2d 1474 (9th Cir. 1987)...............................................................................4

*Vogel v. Tulaphorn, Inc.*,
2013 WL 12166212 (C.D. Cal. Nov. 5, 2013).....................................................12

## INTRODUCTION

Hill's opposition confirms that dismissal is necessary for her grave abuses of the judicial process.[1] She does not dispute that she sent each of the tampering messages to the four witnesses. She even concedes that some of those messages were "wrong," "hurtful," and "not appropriate." And she does not dispute that she deleted her tampering message to Tortorigi—a clear acknowledgement of wrongdoing.

Against those facts, the opposition tells a misleading and revisionist story. Relying on her post-hoc, self-serving declaration, Hill's opposition ignores the clear meaning of multiple, written attempts of witness tampering. Hill instead asks the Court to believe a new tale, found nowhere in the evidence.

Under oath, Hill says her threat to Roe—including to "burn" Roe "to the fucking ground" and reveal damaging personal information—was *not* about this case. That claim is demonstrably false. In that same threat, Hill wrote "Everyone in my life and *in this case* will speak the truth about you," that she would gather up individuals to "*testify* against [Roe's] character," that Hill was on the "right side of justice" and Roe should be "*nowhere near it*." The only understanding of that threat is what Hill wrote—that Roe should be "nowhere near" "this case" or face personal and reputational consequences. As Hill conceded, she sent this threat only after (1) reviewing discovery *in this case* and (2) immediately after learning that Roe contacted Hill's attorneys *in this case*. The clear link to this case is why Roe contacted both Hill's counsel and Bauer's counsel after receiving the threat.

Hill also declares that she "did not intend for Tortorigi to withhold responsive documents"—but what she wrote was "just respond to [the subpoena] saying I have nothing related to this that I have in my possession" and "just know you don't have to do shit for it." And of course Hill understood what she was doing—which is why

[1] Hill's disregard for this Court's rules extends to the format of her opposition—which appears to be at least 1,400 words, or more than 20 percent, over the limit in Local Rule 11-6.1. She also omitted the certificate of compliance required by Local Rule 11-6.2.

she *deleted* the message. Indeed, Tortorigi testified he was "shocked" by Hill's message and he understood that Hill "wanted me to say I didn't have anything." And his deposition shows why Hill wanted him to stay away. He testified that Hill exaggerated having any anal sex with Bauer—corroborating Bauer's account.

Hill also declares under oath that she did not "threaten to expose" the video of Dawson's confidential police interview; yet she threatened Dawson's partner: "sure would be a shame for me to hand over to you the police footage of his interview I just received." A clearer threat to expose the video is hard to find. And she feigns ignorance that Dawson would be a witness in this case, when *she* identified him as a witness before her threat.

The facts show dismissal is necessary. Indeed, courts emphasize that dismissal is an appropriate sanction for witness tampering because it is one of the most severe violations of the factfinding process. Hill ignores that law—including on-point case law from this District dismissing a case involving less severe conduct against a single witness. The necessity for dismissal is stronger here because Hill has tampered with at least four witnesses, deleted evidence of tampering, and engaged in prior misconduct in her state court litigation against Bauer.

Because Hill disregards the case law, she spends a large portion of her opposition explaining how she should not be sanctioned because her witness tampering has not yet worked. But the law does not sanction only the successful violators. It is the effort that counts. Hill seeks to make a mockery of the judicial system by contending that her pervasive, but so far ineffective, witness tampering is not prejudicial and can be fixed with a "stern warning." The judicial process as a whole—including Bauer in this case—is prejudiced when a party takes matters into her own hands, decides when a witness should comply with discovery, and threatens others with abandon. If not appropriately sanctioned, future litigants may justify their own witness tampering as worthwhile in light of the potential punishment. The only remedy for such conduct is dismissal.

## ARGUMENT

Hill does not dispute that a preponderance of the evidence standard applies to a motion for sanctions for witness tampering. Accordingly, the questions for the Court are whether it is more likely than not that Hill engaged in witness tampering against Tortorigi, Roe, Dawson and Doe and, if so, the appropriate sanction. Hill's opposition and declaration confirm that dismissal is necessary.

### I. Hill's Misleading Declaration Confirms She Engaged In Witness Tampering.

The basis of Hill's opposition is her own declaration attempting to explain away clear witness tampering. But that declaration concedes or does not dispute critical facts, and its attempts to rewrite her tampering messages only show Hill's lack of respect for this judicial proceeding and the truth. Indeed, this is not the first time Hill has sought to use a declaration to twist the facts—the Los Angeles Superior Court previously found that Hill submitted a "materially misleading" declaration concerning her interactions with Bauer. Dkt. No. 52-3 at 659-66 (Tr. 580-87).

#### A. Hill's Declaration Confirms Her Bad-Faith Misconduct.

In her declaration, Hill concedes that she sent the tampering messages. She agrees that at least some of the messages were "wrong," "hurtful," and "not appropriate." Hill Decl. ¶¶ 24, 32. She does not dispute that she deleted the tampering message to Tortorigi. And she makes no mention of whether she has the Roe threat—which to date she has not produced in discovery—suggesting she deleted that threat also. Those facts satisfy the requirement for bad faith misconduct and witness tampering.

Hill's argument is that she supposedly lacked the "intent" for anyone to change testimony or withhold documents. But that is wrong, as the messages themselves show. Intent under section 1512 is satisfied by "consciousness of wrongdoing." *United States v. Doss*, 630 F.3d 1181, 1190 (9th Cir. 2011). That statute covers acts that are "easy to characterize as inherently wrong or immoral, and not actions which

could be considered otherwise innocent persuasion." *Id.* at 1189. Hill has already conceded that she was "wrong" and her acts were "not appropriate." Her deletion of one, if not two, of the messages confirms that she knew what she was doing was wrong. *See United States v. Wagner*, 834 F.2d 1474, 1484 (9th Cir. 1987) ("[a]n attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt").

For purposes of sanctions, "bad faith" is present for "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Even accepting her revisionist telling, Hill was at a minimum "reckless" while "harass[ing]" witnesses with an "improper purpose."

In a case from this District that Hill strikingly ignores, Judge Gee found bad faith witness tampering and rejected a party's efforts to rewrite the clear meaning of his threatening messages to a witness. *Torres v. Wells Fargo Bank*, 2019 WL 8012686, at *4 (C.D. Cal. Dec. 17, 2019). Like Hill here, Torres argued that he did not threaten the witness's job when he wrote that he would "take out all the people I was protecting when they called me including you. Start making calls and get your resume ready." *Id.* at *2. But Judge Gee held that the "text messages cannot be explained away as anything other than threats of retaliation against a witness due to what Torres perceived to be unfavorable testimony." *Id.* at *4. The same is true here.

Hill's reliance on *Adams v. Roberts* and *InjuryLoans.com, LLC v. Buenrostro* as supporting her position is misplaced. Opp. 3. Both cases involved disputed oral—not written—statements and distinguished *Torres* on that basis. In *InjuryLoans* the issue was not intent, but whether the oral statements had been made at all. 2020 WL 9160827, at *3 (D. Nev. Sept. 28, 2020). There is no dispute here as to what Hill wrote. In *Adams*, the court denied sanctions regarding oral statements at a bar fight because, after an evidentiary hearing, it concluded that what the "fight was actually about remains genuinely in dispute" and the party's claim that he did not know the

witness was in fact a witness was "controverted only by testimony that lacks credibility." 2021 WL 1530092, at *3 (D. Mont. Apr. 19, 2021). As described below, there is no doubt what Hill's written threats were "actually about" and it is her declaration that lacks credibility.

**B. Hill's Post-Hoc Explanations Are Not Credible.**

Hill's declaration is not credible and confirms that she engaged in witness tampering as to each witness.

***Tortorigi***. Hill's message to Tortorigi is witness tampering on its face. *See* Mot. at 12-13. Hill instructed Tortorigi to "just respond to [the subpoena] saying I have nothing related to this that I have in my possession. So stupid moi I cant. Just know you don't have to do shit for it." Dkt. 122-2 at 6 (Ex. A). There is no dispute that Tortorigi possessed responsive documents. Tortorigi testified that he was "shocked" by Hill's instructions, Dkt. 143-5 at 7 (Tr. 67:11-13), and understood that Hill "wanted me to say I didn't have anything," *id.* at 32 (Tr. 92:10-13).

Despite the plain meaning of her message and Tortorigi's understanding, Hill's response—under oath—is that she "did not intend for Tortorigi to withhold responsive documents if he was able to access them." Hill Decl. ¶ 31. That convenient justification cannot be squared with Hill's messages, which said the opposite—that Tortorigi should *not produce* documents, full stop.

Hill's claim in her declaration that "I did not intend to 'cover up' documents," *id.* ¶ 31, is also belied by her attempt to cover up the documentation of her witness tampering. Indeed, Hill does not offer any excuse—or remorse—for deleting her tampering message. Neither her declaration nor opposition even acknowledges that misconduct. That alone is bad faith.

Tortorigi's deposition illustrates the reason for Hill's tampering. Not only does he possess responsive documents in which Hill described her sexual experience with Bauer positively, saying it was "SO HOT," but his testimony also undermines Hill's claims that they even had anal sex. Hill asserts that she was anally raped in the first

encounter. Although she described consensual anal sex to Tortorigi in the hours after her encounter with Bauer, Tortorigi did not believe that Hill had any anal sex with Bauer, finding her to have exaggerated. Fetterolf Decl. Ex. C (Tr. 57:22-25). That testimony directly supports Bauer's account that there was no anal sex.

Hill further fails to acknowledge that Bauer's subpoena seeks documents beyond what the Pasadena Police Department ("PPD") produced as of late May 2021—which were only text messages. It is evident that Tortorigi and Hill also communicated over Instagram, for example. And Tortorigi testified that he spent a week visiting Hill after Hill's second encounter with Bauer. As a result, Bauer's counsel is in current discussions with Tortorigi to ensure he has in fact produced all responsive documents.

***Roe***. Just like Tortorigi, the threat to Roe is evident from the message itself. *See Doss*, 630 F.3d at 1190 (affirming conviction under section 1512 based on "statements to the effect that 'if C.F. testified, it would be bad for C.F.'").[2]

In response, Hill makes the untrue claim that she was "not even communicating with [Roe] about this lawsuit." Opp. 2; *see also* Hill Decl. ¶ 23 ("I was not thinking about what testimony or information Roe might provide in this lawsuit"). No reading of Hill's message supports her. Indeed, Roe was so concerned that she called Bauer's counsel *the next day*. Dkt. 122-2 at 2 ¶ 5. Roe had no misgivings as to what Hill was talking about. No reasonable reader of the message would either.

There can be no serious dispute that Hill's threat was about this case—because Hill wrote those exact words. She threatened that "[e]veryone . . . in *this case* will speak the truth about you." Dkt. 122-2 at 13 (Ex. B) (emphasis added). That "truth" apparently included Roe "steal[ing]" from the residents at the sober living home that

[2] Hill twice asserts that "Bauer does not contend that Hill [threatened Roe] to cause Roe to not testify or to influence her testimony." Opp. 10, 12. Bauer, however, made that exact point. Mot. at 14 (explaining that Hill's threat "can only be understood as Hill telling Roe not to participate in this matter").

Roe runs and illicitly purchasing drugs in Mexico. *Id.* Hill emphasized that Roe has "zero place in this situation" and that "we're on the right side of *justice* and *want you nowhere near it*." *Id.* (emphasis added). Otherwise, Hill would have "every past resident *testify* against your character." *Id.* (emphasis added). Although it should need no explanation, the message is clear—Roe should not be anywhere near this case or else face serious personal and professional repercussions.

Hill's own declaration shows that her threat was about this case. Hill explains that she was "upset" by listening, in 2023, to Roe's statements from 2021 to the PPD when Roe was interviewed about Bauer. Hill Decl. ¶ 20. Then, on the day she learned that Roe was contacting Hill's own attorneys in this case, *id.* ¶ 21, she sent the threat. This case—and Roe's participation in it—is the reason Hill threatened Roe. That is witness tampering.

Finally, as to Finestead's message to Roe, Hill asserts under oath that "I did not tell Finestead to send the message to Roe." Hill Decl. ¶ 25. But again the Finestead message shows the opposite. The message states that "she"—referring to Hill "was the one who gave me your number – she said you can be anonymous, *she can't have text record of it*." Dkt. 122-2 at 14 (Ex. B) (emphasis added). The reason to avoid a record was to "protect ourselves against Trevor's attorneys." *Id.* Those statements show an intent to avoid discovery in this case and further show the measures Hill is willing to take to evade detection of her acts.[3]

***Dawson***. As with Tortorigi and Roe, Hill's defense is not based in fact. She contends that she "never threatened to expose the video and never intended to express doing so to De Silva or Dawson." Opp. 9 (citing Hill Decl. ¶ 15). But Hill wrote the opposite. In no uncertain words, she stated "sure would be a shame for me to hand over to you the police footage of his interview I just received." Dkt. 122-2 at 16 (Ex.

[3] Bauer subpoenaed Finestead for documents, who responded that she has nothing responsive. Mot. at 8. Finestead's text to Roe suggests otherwise.

C). That is a threat to expose the video that Hill's declaration cannot change—and a threat for which she expresses no remorse or regret. *See* Hill Decl. ¶¶ 9-15.

According to Hill, she would not have exposed the video because "the video was embarrassing and unflattering towards me." Hill Decl. ¶ 15. Hill, however, wrote that it would be a "shame" if she gave the video to Dawson's partner—indicating that Hill thought it would be damaging to Dawson. Nor can Hill hide behind the claim that "Bauer would . . . publicize the Dawson video." *Id.* The video is subject to a protective order—meaning it would not have been "publicized" as Hill claimed. It was Hill who threatened to violate that order to harass Dawson.

Hill also declares that she could not have threatened Dawson because she had "no idea that Bauer was even pursuing Dawson as a witness in the lawsuit." *Id.* But Hill both previously deposed Dawson in state court and had already listed him as a witness on her initial disclosures here. There is no doubt that Hill knew that Dawson was a witness—and one who did not support her story.

***Doe***. As to Doe, Hill ignores the fact that a third-party witness—who, as Hill describes, was adversarial to Bauer—was so concerned by Hill's messages that she reached out to Bauer's counsel. Hill's response is that Doe's concerns are inadmissible hearsay. But Doe's impressions are admissible evidence, and have indications of trustworthiness in any event. *See Torres*, 2019 WL 8012686, at *2 n.4. Hill also wonders what evidence she would have asked Doe to fabricate—but Hill's now quashed subpoena makes that clear. Hill asked Doe for evidence of Bauer sexually assaulting Doe—evidence which Hill knew did not exist. In light of the other tampering evidence, it strains credulity that it is mere coincidence that Hill threatened Doe less than a month before issuing that subpoena.

Despite the evidence of tampering against Tortorigi, Roe, Dawson, and Doe, Hill argues that Bauer "rushed" to file this motion (Opp. 2)—apparently preferring to have more time to tamper with witnesses. Although circumstances suggest that time would have revealed further misconduct, Bauer had no choice but to file this

motion when he did. It is shocking when adversarial witnesses are so concerned by a party's conduct that they contact opposing counsel to report the issue. Given that discovery closes in less than two months, there was no time to wait for Hill to further succeed on witness tampering before filing this motion.

In sum, the evidence—including Hill's declaration—shows Hill committed witness tampering against Tortorigi, Roe, Dawson, and Doe.

**C. To The Extent The Court Does Not Disregard Hill's Declaration, An Evidentiary Hearing Is Necessary.**

This Court can find, on the papers alone, that Hill more likely than not committed witness tampering. Even the cases on which Hill relies explain that "[i]n cases of witness intimidation where sanctions have been awarded, there is generally a record of the alleged intimidation beyond the parties' own recollection." *InjuryLoans.com*, 2020 WL 9160827, at *3; *Adams*, 2021 WL 1530092, at *3 (similar). That is record is present here, where multiple threats are in writing. If the Court disagrees, an evidentiary hearing is necessary to assess Hill's credibility on the issue of intent and to further test the statements in her declaration. *See Lambright v. Ryan*, 698 F.3d 808, 826 (9th Cir. 2012) ("the district court has the discretion, but is not required, to hold an evidentiary hearing prior to imposing sanctions on a party").

**II. Dismissal Is The Only Just Sanction.**

Hill's primary argument on the appropriate sanction is that she failed to change anyone's testimony or persuade anyone to withhold documents. Based on her failed attempts, Hill contends that there was no "prejudice." Hill is wrong.

In witness tampering cases, "prejudice" is not a reflection of the violator's success. Courts repeatedly recognize that witness tampering is an egregious violation warranting dismissal—regardless of whether the witness succumbs to the tampering. That is because "*trying* to improperly influence a witness is fraud on the court." *Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 782 (7th Cir. 2016) (emphasis added). Hill simply ignores the cases Bauer cited that found dismissal appropriate, including,

for example, *Hernandez v. Franco American Baking Co*., which expressly found "a risk of prejudice . . . in the absence of dismissal because there does not appear to be another sanction that appropriately addresses conduct that goes against the court's mission to administer justice." 2021 WL 6498256, at *6 (D. Nev. Sept. 3, 2021); *see also, e.g., Ramirez*, 845 F.3d at 782; *Ramsey v. Broy*, 2010 WL 1251199, at *6 (S.D. Ill. Mar. 24, 2010) (dismissal for witness tampering where "[t]here is no witness to bar or exclude since the fabricated testimony never came to fruition").

*Torres*—which Hill also ignores—is again on-point. Judge Gee dismissed the case based on threatening text messages to a single witness. There was no evidence of "prejudice" (at least as Hill understands the word) because the witness was tampered with *after* a deposition. 2019 WL 8012686, at *4. As a result, and like Hill here, the violator in *Torres* argued against dismissal because the tampered witness did not change his testimony. *Id.*

Judge Gee rejected that argument out of hand. She emphasized that "punishing bad faith witness tampering only if it succeeds would miss the point—witness tampering is improper not just because it could result in decisions based on incorrect information, but also because it perverts the judicial process on a fundamental level." *Id.* And *Torres* understood the broader implications of allowing witness tampering to slide through without consequence—"forgiving efforts to tamper with witness testimony because those efforts failed would be an abdication of the Court's duty to prevent bad faith litigation conduct and to uphold the integrity of the judicial process." *Id.*

If anything, Hill's misconduct is worse than in *Torres*. She tampered with four—not one—witnesses, using both threats and improper persuasion. She deleted evidence of one, if not two, of her improper acts. And, unlike *Torres*, Hill has a history of prior misconduct, *see infra*. If dismissal was appropriate in *Torres*, it is more than warranted here. It is telling that Hill does not attempt to distinguish *Torres*.

Even apart from the common-sense conclusion that witness tampering is prejudicial, there is "prejudice" here under Hill's constrained view. Bauer has expended resources uncovering and responding to Hill's tampering—not only to remedy the prior tampering but to prevent any further tampering. Hill's "efforts, in theory, could also affect [the witnesses'] testimony at trial" or a deposition. *Torres*, 2019 WL 8012686, at *5; *see also Tilton v. McGraw-Hill Companies, Inc.*, 2007 WL 777523 (W.D. Wash. Mar. 9, 2007) (imposing harsh sanction because it "would protect defendants from the prejudice they will suffer if plaintiff succeeds in his efforts to intimidate and influence Microsoft witnesses"). In addition, Dawson continues not to respond to the subpoena despite having been cooperative in the state court proceeding (which was before the threat). Bauer's counsel remains in discussions with Tortorigi to produce all responsive documents—for instance, Tortorigi testified that he saw Hill around May and June 2021 but has not produced communications from that visit—which would not be in the PPD discovery.

Moreover, a party is "prejudiced by the significant costs that would be required to litigate against parties who exhibit little, if any, regard for the integrity of the judicial process." *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 2015 WL 12732433, at *30 (C.D. Cal. Dec. 14, 2015). Hill's witness tampering, followed by her misleading declaration, show her lack of respect for the judicial process—which began 2 years ago and shows no signs of abating.

**III. No Lesser Sanctions Are Appropriate.**

As shown above and in Bauer's motion, dismissal is the only appropriate sanction. Hill's opposition and declaration only support that conclusion, in particular by showing that her deceptive misconduct will continue. *See Anheuser-Busch, Inc. v. Natural Beverage Distrib.,* 69 F.3d 337, 352 (9th Cir. 1995) (court may reject lesser sanctions "where the court anticipates continued deceptive misconduct").

*First*, Hill's declaration here is deceptive on its face. *See Indiezone, Inc. v. Rooke*, 720 Fed. App'x 333, 337 (9th Cir. 2017) (upholding sanctions based on "false

and misleading declarations”). It puts forth a story, under oath, contradicted by Hill’s own words in the messages she wrote. Those messages were so concerning that two of the witnesses contacted Bauer’s counsel about them.

*Second*, Hill makes the remarkable claim that “this is the first time the issue of . . . any other alleged litigation misconduct has arisen.” Opp. 20. That statement is false. Bauer explained in his motion that Hill engaged in serious prior litigation misconduct in the Los Angeles Superior Court action, which involved the exact same acts at issue here. That misconduct included (1) Hill submitting a “materially misleading” declaration as expressly found by the Los Angeles Superior Court, (2) her hiding of material exculpatory evidence, and (3) her deletion of evidence. Mot. at 9-10, 19-20. Hill disputes none of that conduct in her opposition.

In particular, Bauer discovered only after the conclusion of the state court proceeding that Hill hid an exculpatory video of herself smiling in Bauer’s bed the morning after the second sexual encounter. Bauer now knows that Hill’s counsel (also counsel here) possessed the video more than a month before the state court trial, (Fetterolf Decl. Exs. A, B), yet never produced it—in direct contradiction to Hill’s claim in that proceeding that “[t]here is simply nothing in Ms. Hill’s possession and control that is relevant to the within request for Domestic Violence Restraining Order that exists and has not yet been produced.” Dkt. 119-2 ¶ 5. Again, Hill in her opposition here does not dispute that she and her counsel hid this critical video.

That prior misconduct is directly relevant in determining the appropriate sanction. Courts have justified dismissal as a sanction based on misconduct in related matters. *See Vogel v. Tulaphorn, Inc.*, 2013 WL 12166212, at *13 (C.D. Cal. Nov. 5, 2013), *aff’d*, 637 F. App’x 344 (9th Cir. 2016) (dismissing as a sanction based in part on misconduct in related case); *Am. Rena*, 2015 WL 12732433, at *31 (relying on fact that parties “filed the false evidence with three different federal courts”). Hill’s prior litigation misconduct supports dismissal.

Because Hill ignores the facts and the law, her suggested sanction—a "stern warning" (Opp. 20)—treats witness tampering like a missed homework assignment. Such a precedent—that a party can escape with a "warning" after threatening multiple witnesses and instructing one to falsely respond to a subpoena—would undermine the integrity of the courts and the factfinding process. It is not surprising that Hill cites no case where a party has tampered, in writing, with multiple witnesses, deleted evidence of the tampering, but received only a warning. *Cf. Erickson v. Newmar Corp.*, 87 F.3d 298, 303-04 (9th Cir. 1996) (ordering new trial where the district court failed to sanction witness tampering because "[w]itness tampering . . . tends to subvert the entire judicial process and its principle function of ascertainment of the truth"); *Ramirez*, 845 F.3d at 782 ("witness tampering is among the most grave abuses of the judicial process, and as such it warrants a substantial sanction"). And given the undisputed prior litigation misconduct, there are strong reasons to believe Hill would not abide by a warning.

Instead, the case she relies on for lesser sanctions found "dismissal to be a close call." *Tilton*, 2007 WL 777523, at *7. What "[t]ipp[ed] the balance against dismissal [wa]s the fact that the Court" was "reluctant to deny a litigant his day in court"—a day Hill has already had through her Superior Court proceeding (that she lost) and will have again with respect to Bauer's claim.

Hill argues that *Tilton* shows that her battle with alcoholism weighs against sanctions. But Hill was sober during the Superior Court proceeding in which she hid evidence and filed a "materially misleading" declaration. Hill also has not stated that she was drinking the day she sent the tampering message to Tortorigi. Hill Decl. ¶¶ 27-33. And, now sober, she has not expressed remorse for her acts toward Dawson or Doe or her deletion of the Tortorigi message.[4]

[4] Hill argues her conduct is less egregious than in *Tilton*. But the party's threats to a witness were similar to Hill's threat to Roe, that party did not instruct anyone to falsely respond to a subpoena, and did not engage in litigation misconduct in a prior related case as Hill has.

In any event, *Tilton* does not help Hill. The party in *Tilton* provided a psychiatrist's declaration explaining how the party had not received psychiatric treatment for two years because of a lack of health insurance. 2007 WL 777523, at *7. The court acknowledged the medical issues—including that that the party was back on medication—but concluded that they did "not totally excuse his conduct." *Id.* As a result, the *Tilton* court harshly sanctioned the party by precluding him from seeking any past economic damages—not by giving a "stern warning." *Id.*

**IV. Alternative Sanctions Are Available**

Hill argues that no alternative sanctions are warranted. Bauer agrees insofar as dismissal is the only appropriate sanction. But Hill's deletion of the Tortorigi message, apparent deletion of the Roe message, and prior litigation misconduct support the forensic evaluation of her devices to determine the scope of witness tampering and ensure relevant materials were produced. *See Juul Labs, Inc. v. Chou*, 2022 WL 2161062, at *2 (C.D. Cal. Apr. 19, 2022) (forensic exam appropriate based on "showing that the responding party intentionally destroyed relevant electronic discovery"). The Court could issue an issue sanction, or, as in *Tilton*, "preclude plaintiff from seeking damages," 2007 WL 777523, at *8. At least one court has given an adverse jury instruction addressing the witness tampering. *See Riley v. City of New York*, 2015 WL 541346, at *12 (E.D.N.Y. Feb. 10, 2015). Attorneys' fees for bringing this motion, and communicating with the various witnesses, while not sufficient to remedy the misconduct, is also an available sanction, for which Bauer can provide the requisite support if needed.

**CONCLUSION**

The Court should dismiss Hill's counterclaims as a sanction for witness tampering. If necessary, Bauer requests an evidentiary hearing.

Dated: July 17, 2023

*/s/ Blair G. Brown*
Blair G. Brown (admitted *pro hac vice*)
Jon R. Fetterolf (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 882-8106
bbrown@zuckerman.com
jfetterolf@zuckerman.com

Nell Peyser (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
npeyser@zuckerman.com

Shawn Holley (Cal. Bar No. 136811)
Suann MacIsaac (Cal Bar No. 205659)
KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
Tel: (310) 566-9800
Fax: (310) 566-9850
sholley@khiks.com
smacisaac@khiks.com

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff/Counterclaim Defendant Trevor Bauer, certifies that this brief contains 4,890 words, which complies with the word limit of L.R. 11-6.1.

Date: July 17, 2023

/s/ *Blair G. Brown*

Blair G. Brown