<pre>
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                   SOUTHERN DIVISION - SANTA ANA

 3

 4    TREVOR BAUER,              )  Case No. SACV 22-868-JVS (ADSx)
                                 )
 5         Plaintiff,            )  Santa Ana, California
                                 )  Wednesday, June 28, 2023
 6            v.                 )  10:04 A.M. to 10:53 A.M.
                                 )  11:02 A.M. to 11:30 A.M.
 7    LINDSEY C. HILL, et al.,   )  11:53 A.M. to 11:58 A.M.
                                 )
 8         Defendants.           )
      _____)
 9

10

11

12                     TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE AUTUMN D. SPAETH
13                  UNITED STATES MAGISTRATE JUDGE

14

15    Appearances:                See Page 2

16    Deputy Clerk:               Kristee Hopkins

17    Court Reporter:             Recorded; CourtSmart

18    Transcription Service:      JAMS Certified Transcription
                                  16000 Ventura Boulevard #1010
19                                Encino, California  91436
                                  (661) 609-4528
20

21

22

23

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.
</pre>

```
 1   APPEARANCES:

 2

 3   For the Plaintiff:        Zuckerman Spaeder LLP
                               By:  BLAIR G. BROWN
 4                                   IVANO M. VENTRESCA
                               1800 M Street NW, Suite 1000
 5                             Washington, D.C.  20036
                               (202) 778-1800
 6                             bbrown@zuckerman.com
                               iventresca@zuckerman.com
 7
                               Zuckerman Spaeder LLP
 8                             By:  NELL Z. PEYSER
                               485 Madison Avenue, 10th Floor
 9                             New York, New York  10022
                               (212) 704-9600
10                             npeyser@zuckerman.com

11

12   For the Defendant:        Freedman and Taitelman LLP
                               By:  JESSE A. KAPLAN
13                             1801 Century Park West, 5th Floor
                               Los Angeles, California  90067
14                             (310) 201-0005
                               jkaplan@ftllp.com
15
                               Wesierski and Zurek LLP
16                             By:  BRETT A. SMITH
                               29 Orchard Road
17                             Lake Forest, California  92630
                               (949) 975-1000
18                             bsmith@wzllp.com

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | SANTA ANA, CALIFORNIA, WEDNESDAY, JUNE 28, 2023, 10:04 A.M. |
| 2 | (Call to Order of the Court.) |
| 3 | THE COURT:  Good morning, everyone.  Please be |
| 4 | seated. |
| 5 | UNIDENTIFIED SPEAKER:  Good morning, Your Honor. |
| 6 | UNIDENTIFIED SPEAKER:  Good morning, Your Honor. |
| 7 | THE CLERK:  Calling Case SACV 22-868-JVS (ADSx), |
| 8 | *Trevor Bauer v. Lindsey C. Hill, et al.* |
| 9 | And, counsel, please state your appearances for the |
| 10 | record starting with plaintiff. |
| 11 | BLAIR G. BROWN:  Blair Brown on behalf of |
| 12 | Trevor Bauer.  Along with me is my colleague Ivano Ventresca. |
| 13 | THE COURT:  Okay.  Good morning. |
| 14 | UNIDENTIFIED SPEAKER:  Good morning. |
| 15 | JESSE A. KAPLAN:  Good morning, Your Honor. |
| 16 | Jesse Kaplan for Defendant and Counterclaimant Lindsey Hill. |
| 17 | Also with me is Brett Smith. |
| 18 | THE COURT:  All right.  Good morning. |
| 19 | UNIDENTIFIED SPEAKER:  Good morning, Your Honor. |
| 20 | THE COURT:  Okay.  So we have two motions today, |
| 21 | one by Ms. Hill, one by Mr. Bauer.  So why don't we start |
| 22 | with the depositions, the motion to quash. |
| 23 | And, Counsel -- |
| 24 | MR. BROWN:  Yes? |
| 25 | THE COURT:  -- the motion is yours. |

1           MR. BROWN:  That's our motion.  Thank you.

2           Ms. Hill has issued extremely broad document

3    subpoenas and deposition subpoenas to five women seeking

4    intrusive discovery into their communications, images, and

5    interactions with Mr. Bauer, focusing especially on sexual

6    behavior and communications, and these subpoenas would

7    capture sexually explicit, private communications and images,

8    including the exchange of intimate and sexually explicit

9    messages, revealing photos or videos of the women sent to

10   Mr. Bauer, photographs and videos of the women and Mr. Bauer

11   engaged in consensual sex acts.

12           Now, at a deposition, they -- the plaintiff --

13   excuse me -- the defendant, Ms. Hill's counsel, presumably

14   intend to question them about those communications and images

15   and their sexual practices with Mr. Bauer.  According to

16   Ms. Hill, at least two of these women had sexual interactions

17   with Mr. Bauer over the course of many months, even years,

18   and Hill wants to delve into those long histories and those

19   requests for documents, presumably the requests that the

20   deposition questions are not limited to allegedly consensual

21   acts.

22           Of these five women, only one has publicly revealed

23   her name, and I would also point out that Ms. Hill has not

24   provided a statement from any of these women waiving their

25   constitutional privacy interests in the sexually explicit

1   information or their relationship with Mr. Bauer even though

2   previously it appears Ms. Hill or her counsel previously

3   communicated with them -- or most of them.  There is no

4   reason on this record to believe that these women have waived

5   or intend to waive their constitutional rights to sexual

6   privacy, certainly not four of them.  This one that is has

7   filed a lawsuit in Arizona.

8           Bauer, on the other hand, has provided two --

9   statements from two of the women, Jane Doe No. 1 and Jane Doe

10  No. 2, invoking their privacy interests, and Jane Doe No. 1

11  -- and I hope Your Honor can keep these straight.  We have --

12          THE COURT:  It is a little confusing, and it

13  actually is clear to use it by the Doe 1, 2, 3, 4, 5 than by

14  the actual names, for sure.  So --

15          MR. BROWN:  Okay.  Well, if the Court has questions

16  about who I'm referring to, I'm happy to clarify and we could

17  print out --

18          THE COURT:  As long as you're referring to them in

19  the same order that the papers were provided to me with, then

20  we are fine.

21          MR. BROWN:  Okay.

22          THE COURT:  Okay?

23          MR. BROWN:  So let's talk about Doe No. 1.  She

24  objects -- she's one of the women who objected to the

25  subpoenas.  She states that she's never had sex or physical

1  contact with Mr. Bauer, in fact she'd never met him face to

2  face.  The only justification offered for the subpoena is

3  that Mr. Bauer had sexually charged communications with her,

4  and he allegedly sent her a video, but we know from other

5  discovery in this case that she does not have that video.

6  And I would also point out, as I did previously, this woman

7  has never -- Doe No. 1 has never publicly revealed her

8  identity.

9       Doe No. 2 also objects to the subpoenas and states

10  that she -- we have a statement from her as well.  She states

11  she has never publicly accused Mr. Bauer of sexual assault or

12  any nonconsensual sexual contact and that any deposition or

13  document production from her would, quote, "only serve to

14  harass, embarrass, and humiliate" her.  Now, she -- Ms. Hill

15  says that this Doe No. 2 participated in the arbitration but,

16  importantly, does not claim that she testified in the

17  arbitration.

18       While I'm on the subject of the arbitration, I'm

19  just going to mention briefly, I have to be very careful

20  because of Mr. Bauer's obligation to maintain the

21  confidentiality of the arbitration.  I can't talk about what

22  occurred there.  I can refer to things that have been

23  publicly disclosed, including by Ms. Hill.  So I'll try to be

24  careful and do that, and I hope Your Honor understands that

25  -- the reasons why I have to do that.

1          Doe No. 4 has also never revealed her identity

2   publicly.

3          Doe No. 5 has never publicly accused Mr. Bauer of

4   sexual assault or otherwise revealed her identity publicly.

5          And that leaves only Doe No. 3, who is the woman

6   who filed a lawsuit against Mr. Bauer after this lawsuit was

7   filed, and Mr. Bauer, in that case, has counterclaimed

8   alleging fraud and other claim and --

9          THE COURT:  Can you tell me: Which of these women

10  besides Doe No. 2, is it asserted, participated in the

11  arbitration?  There's more than one; right?  It's not --

12         MR. BROWN:  Correct.  So Ms. Hill has indicated

13  that Doe No. 4 testified in the arbitration.  And that's the

14  only other --

15         THE COURT:  Okay.  Thank you.

16         MR. BROWN:  Okay.  So Hill principally relies on

17  the proposition that Federal Rule of Evidence 415 allows her

18  to offer evidence of these other sexual assaults, but I think

19  the law is clear that Rule 415 does not override the

20  constitutionally based right to privacy that these women have

21  and that Mr. Bauer has with respect to their relationships

22  and communications and images and videos.  And it also

23  doesn't override this Court's power under Rule 26 to issue a

24  protective order to prevent humiliation, embarrassment, and

25  to keep discovery proportional to this case and not go off

1   into exploration of other relationships unnecessarily.

2          Now, there's no doubt that these -- I don't think

3   there's any doubt that these women and Mr. Bauer have very

4   significant constitutionally based privacy interests in their

5   sexual activities.  We've cited any number of cases to that

6   effect -- the *John B.* case, the *Boler* case -- and that Hill

7   must establish a compelling need to overcome that

8   constitutionally based sexual privacy interest in order to

9   get the discovery she seeks.

10          Now, our position of -- excuse --

11          THE COURT:  Let me ask you a question.  Can I ask

12   you a question?

13          MR. BROWN:  Sure.

14          THE COURT:  Does that right to privacy include a

15   right to privacy over criminal acts?

16          MR. BROWN:  Well, I -- we, of course, deny that

17   there were any criminal acts.

18          THE COURT:  Well, of course, but, you know, the

19   distinction I'm seeing here is a right to privacy over

20   noncriminal acts, and is there a right to privacy over sexual

21   battery, sexual assault, allegations of the same?  So that's

22   why I really think that there might be a difference when it

23   comes to criminal acts, and so I'm curious if you believe

24   that there is a difference or if all of that is protected by

25   the California right to privacy.

1          MR. BROWN:  Well, in the context of civil

2    litigation and civil discovery, if the purported victim of --

3    or accused -- purported victim of a sexual assault wishes to

4    invoke her right to privacy from intrusive discovery and

5    sitting for a deposition and answering questions, publicly

6    testifying, or using her testimony publicly, then the right

7    to privacy does extend to someone -- even someone who might

8    allege that there was a sexual assault in violation of the

9    criminal law.

10          THE COURT:  What about Mr. Bauer's right to

11   privacy?

12          MR. BROWN:  Mr. Bauer has a right to privacy with

13   respect to his activities.  With respect to -- it's obviously

14   a harder question with respect to sexual assault, the right

15   to engage in a sexual -- the right to privacy protecting

16   sexual assault.  I think that it extends -- the right to

17   privacy extends to sexual activities; however, there are

18   circumstances in which in a civil case where, if there is a

19   sexual assault and the purported victim is willing to allow

20   the information and her identity to be excluded, then in all

21   likelihood that certainly would prevail.  Okay.  That's the

22   perspective that we would have on the application of the

23   right to privacy and sexual assault.  Mr. Bauer maintains

24   that right.  We, of course, maintain that what is sexual

25   assault depends on what ultimately is decided by a fact

1   finder, and we contest that there was ever any sexual assault

2   occurring either with respect to Ms. Hill or these other

3   women.

4         THE COURT:  Of course.  Of course.  No, I

5   understand that.

6         MR. BROWN:  And I won't keep saying that.  Okay.

7         Ms. Hill ignores the objections of Does 1 and 2,

8   and she also says very little about the fact that Does 4 and

9   5 had never publicly identified themselves as accusers of

10   sexual assault, and she cites no case in which a court has

11   ordered over a -- third-party objections based on sexual

12   privacy grounds and required the third party to produce

13   documents or submit to a deposition, nor has she cited a case

14   in which third parties who made no public claims were forced

15   to provide documents or testimony about their sexual history.

16   Simply arguing that the information may be relevant is

17   insufficient to establish a compelling need for the

18   discovery.

19         And I will talk about relevance for a moment here.

20   First, this information that she seeks from these women is

21   not directly relevant.  There's no contention that any of

22   these witnesses -- any of these women are witnesses to acts

23   between Mr. Bauer and Ms. Hill, that they have anything to

24   say about that direct interaction, of course.  And in the

25   *Boler* case -- the reason I talk about direct relevance here

1   is in the *Boler* case, which is a California right to privacy

2   case, the court held that there was a stringent standard --

3   direct relevance, not tangential relevance -- that had to be

4   demonstrated to overcome the sexual privacy interests and the

5   third-party sexual activities with the defendant.  In *Boler*,

6   it was a sexual harassment case in which the defendant was

7   subjected to questions at his depositions of all sorts of --

8   about all sorts of relationships with other women.

9           And like Hill here, the *Boler* plaintiff contended

10  that the defendant's prior sexual activity would be relevant

11  to propensity and credibility, and the court in *Boler* assumed

12  that the answers would be relevant to those issues but

13  nonetheless denied the plaintiff's questioning as unjustified

14  and overbroad intrusions into the sexual privacy of Boler and

15  his unnamed sexual partners, that the questions would

16  encompass sexual conduct with third parties whose conduct may

17  very well have been voluntary.  The court did not assume that

18  the contacts with the women were necessarily consensual, but

19  they would not assume that they were coercive.  It assumed

20  that -- it concluded that it was an overbroad inquiry, would

21  disclose intimate details of the women's private lives

22  without justification and the defendant's private life

23  without justification and did not allow the questioning.

24          Now, Ms. Hill relies heavily on Rule 415.  Rule 415

25  does not override the constitutional protection of a woman

1   from divulging information about private sexual matters -- a

2   woman or a man from divulging information about private

3   sexual matters, and that's made most clear by the *Rapp v.*

4   *Fowler* cases that we discuss, and those cases we would draw

5   the Court's attention to -- they involve the actor

6   Kevin Spacey -- his true name, I think, is "Fowler" -- and

7   there are two decisions there.  The one I want to talk about

8   first is that the court denied discovery on sexual privacy

9   grounds into allegations of sexual assault against Spacey by

10  a third party who wanted to remain anonymous.

11          There's -- the critical in those cases is the third

12  party's desire to remain anonymous -- excuse me -- and the

13  court explicitly held that the third-party's sexual privacy

14  interests were not overcome by the prospect of possible

15  future admissibility under Rule 415.  In fact, one of the

16  third parties -- the principal third party at issue had sued

17  Spacey under a pseudonym -- a John Doe pseudonym, but when

18  the court ruled that he could not proceed anonymously, he

19  dismissed the suit and then objected to providing information

20  about his sexual interactions with Spacey in this other

21  lawsuit that the court was addressing in *Rapp v. Fowler*.  And

22  as I indicated earlier, in this case only one of the women

23  has publicly disclosed her identity -- that's Jane Doe No. 3

24  -- and none have stated that they wish to be subjected to a

25  deposition, production of documents in this case.

1    I also note that another opinion in *Rapp v. Fowler*

2    -- the 2022 decision -- which bears on the other motion, the

3    court refused to permit discovery, again, on sexual privacy

4    grounds of a confidential arbitration in which others --

5    other purported victims had testified about sexual assaults

6    by Spacey.

7    And again, I think that -- I don't want to read

8    from cases, but I do think that -- too much -- but I do think

9    that the *Rapp v. Fowler* case is worth taking a close look at

10   because it acknowledges the competing interests that are

11   presented in a discovery context, like the circumstances are

12   facing you in this particular motion here, and the decision

13   -- the opinion by Judge Kaplan, I believe it is, explains in

14   detail how he balances those competing interests, and

15   ultimately his ruling there -- the right of sexual privacy,

16   the concern about sexual privacy is sufficiently important

17   that the identity -- unless someone has revealed their

18   identity as a victim of a prior sexual assault, then that

19   discovery should not be permitted, or I should say more

20   specifically, he said that if the identity had not become

21   public, then the discovery should not be permitted, discovery

22   -- not gone public through a prior lawsuit or a published

23   mainstream -- that was his word -- mainstream media report.

24   Okay.  And I do commend that case to the Court because it

25

1  does address, I think, all of the issues that the Court will

2  need to address.

3           There's one important distinction, though.  I mean,

4  that case was decided under, I believe, New York law, and

5  California's right to privacy, which is applicable in this

6  case as a diversity case, is even stronger than anything that

7  Judge Kaplan was looking at.  In connection with the *Rapp v.*

8  *Fowler* case, he based it principally on the federal right to

9  privacy and also Rule 26's provisions allowing the court to

10 protect from discovery third parties, as well as parties, to

11 prevent embarrassment, humiliation, and things of that

12 nature.

13          And in our view, a protective order is insufficient

14 here because the invasion into the rights of privacy that

15 would occur in a deposition or a document production --

16 especially in a deposition, where a person has to sit in the

17 chair in front of strangers and share intimate

18 communications, photos and -- produce photos and videos, and

19 reveal the tales about her sexual life to strangers, and then

20 worry about whether that evidence will be used in a public

21 proceeding, in a public trial.  I think that's where the

22 right to privacy and the impact on someone's right to privacy

23 is really at its zenith, and a protective order doesn't

24 prevent that from occurring.

25          We also have real concerns about compliance with a

1   protective order in this particular case.  Now, we do mention

2   in our stipulation -- well, before I get to that.  Both the

3   *Boler* and the *Pearce* (phonetic) cases cited in the

4   stipulation at 2021 articulated the concern I just expressed

5   about how a protective order is insufficient when someone has

6   to reveal sexual privacy information.

7           But jumping back to why we are concerned about

8   compliance with a protective order here, we have filed a

9   motion -- we -- to -- in fact, it's a motion to dismiss this

10  case because of witness tampering, and some of that witness

11  tampering -- and that's at Docket 119 -- it's recent, there's

12  not been a response yet, but in one of the multiple instances

13  of witness tampering in this case, Ms. Hill threatened to

14  reveal a video interview of a witness by the Pasadena Police

15  Department which had been designated confidential, and we

16  have real concerns about whether she is going to comply with

17  that based not only on that incident but the other incidents

18  of witness tampering that have occurred in this case.

19          So with that, Your Honor, those are the points we

20  want -- I want to make with respect to the motion to quash

21  and motion for a protective order.

22          THE COURT:  Which -- can you tell me which "Doe" is

23  it that this video has to do with?  That Pasadena had a video

24  and now it's been --

25          MR. BROWN:  It was not a "Doe."  It was a witness

1  who testified in a -- who gave a deposition in the domestic

2  violence restraining order proceeding and was identified as a

3  witness in this case.

4          THE COURT:  Okay.

5          MR. BROWN:  Okay?  So it was not one of the "Does."

6          And then I assume that later we'll address the

7  other motion?

8          THE COURT:  Yes.  Yes.

9          MR. BROWN:  Yes.  Thank you.

10          THE COURT:  All right.  Thank you.

11          MR. KAPLAN:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. KAPLAN:  May I begin?

14          THE COURT:  Absolutely.

15          MR. KAPLAN:  Thank you, Your Honor.

16          So I want to start by saying we were here last week

17  for -- or, at least, on the phone last week for an informal

18  discovery conference, and I think there was some discussion

19  how counsel gets along and there is a cooperative spirit to

20  this case between counsel while on its face one might think

21  that this is a highly contentious case.  This case, though,

22  is, from my perspective at least, and probably for many

23  others who are participating, a very tough case in terms of

24  its subject matter.  There's some facts involved that are

25  very disturbing, and it's tough to litigate and this motion

1   -- or the motions we have today are not an exception.  In

2   fact, they're -- these motions are very difficult, and they

3   deal not only with the respective parties in this case,

4   Ms. Hill and Mr. Bauer, but they deal with five other

5   individuals, and they deal with facts that are sexual,

6   graphic, and disturbing in nature.

7          And I want to be sensitive to the privacy rights,

8   whatever the jurisdiction might be, whether it's California

9   or the various jurisdictions where these other women live, I

10  do, but what we've tried to do, at least -- and I think we've

11  been largely successful -- is trying to specifically target

12  and narrowly tailor subpoenas to five individuals who have

13  specific facts that are relevant -- and not only relevant,

14  directly relevant -- to this case.  And the directly relevant

15  has been extensively briefed in lengthy papers by all the

16  parties under Rule of Evidence 415 and, at a minimum, go to

17  Mr. Bauer's propensity to commit very similar acts of sexual

18  assault.  There's also relevancy and direct relevancy going

19  to Mr. Bauer's intent and whether or not he had a plan to

20  commit similar sexual crimes or sexual assaults.

21         And there's a purpose for Rule 415 that seems to be

22  directly in play in this case, and that's because most sexual

23  assaults occur without any eyewitnesses, and as in this case,

24  you have a "he said versus she said," and that's why this

25  sort of propensity evidence often becomes very necessary and

1    there's a more compelling need in these sexual assault cases,

2    and that's why the legislature, in fact, made this exception

3    under Rule 415.

4            We're dealing with instances where we have striking

5    similarities.  We all have -- and I know we have --

6            THE COURT:  I -- yes.  I'm going to ask you to be

7    careful because we are in open court, and trust me, I've read

8    it; so I know.

9            MR. KAPLAN:  Okay.  That was my assumption.

10           But there are striking similarities, some of which

11   have been publicized by, at least, some of the "Does" -- and

12   I'm going to say something that I believe is in the public

13   record but all deals with situations where Mr. Bauer caused

14   these victims -- or at least some of them, not all, but some

15   of them to become unconscious often by strangulation and

16   engaging in sexual assault while they were unconscious.

17           THE COURT:  Can you tell me: Which of these "Does"

18   reside in California?

19           MR. KAPLAN:  None of them.

20           THE COURT:  Okay.  Are any of these -- did the acts

21   occur in California?

22           MR. KAPLAN:  I don't believe that they did.  I

23   can't say that for certain, but I don't believe that to be

24   the case.

25           THE COURT:  And when I spoke with Mr. Brown, he

1    identified two of the "Does" who participated -- or that you

2    have identified as participating in the arbitration.  Is that

3    accurate?  Is it just two?

4            MR. KAPLAN:  Yeah.  There's -- so there's two, and

5    I think there's -- this is one of the issues where I don't

6    believe there's a dispute on.  So there's Doe 2 -- she had

7    some participation with Major League Baseball.  My

8    understanding, based on what she has disclosed to my client,

9    is that she did not -- or elected ultimately not to testify.

10   Doe 4, however, both participated in terms of speaking to

11   Major League Baseball in the investigation phase; she also

12   testified at the arbitration, and we know, based on what she

13   disclosed to my client, that she also presented two videos

14   evidencing Mr. Bauer's sexual assault upon her and that she

15   -- those were presented during the arbitration, and she

16   testified about those two videos.

17           THE COURT:  All right.  Thank you.

18           MR. KAPLAN:  All right.  So unlike --

19           THE COURT:  Excuse me.  I think we have a visitor.

20           Hello?

21           JUDGE MC CORMICK:  How are you?

22           THE COURT:  I'm doing well.

23           Everybody, Judge McCormick.

24           MR. KAPLAN:  Good morning, Your Honor.

25           THE COURT:  All right.  CVB.  We share here

1    courtrooms here -- magistrate judges do.

2            All right.  Please proceed.

3            MR. KAPLAN:  Unlike cases that have been cited and

4    discussed in the briefing, such as the *Boler* and the *Rapp-*

5    Kevin Spacey case -- in those cases we saw that the

6    plaintiffs had requested essentially: "Give us a list of all

7    your sexual partners from" a given certain period of time.

8    This case we've identified specifically five women, four of

9    which were victims of sexual assault, and we know very

10   specific allegations concerning each of those witnesses, and,

11   again, those all have been briefed.  I'm not going to go into

12   any detail during this hearing unless the Court would like me

13   to.

14           So we've demonstrated direct relevance, we've

15   demonstrated a need for this information, and we've laid an

16   adequate foundation that at least four of the five women have

17   been sexual assaulted, and we provide details about that.

18   And contrary to what Mr. Bauer claims, we don't need to put

19   in a declaration from those women evidencing these -- the

20   sexual assault in order to get the discovery.  I think that

21   would be reversing the process and putting the cart before

22   the horse, but we have placed into the record -- at least, I

23   think, three articles we've placed into the record:  evidence

24   from the Pasadena Police -- I'm sorry -- Pasadena Police

25   Department and their discussions or records about their

 1   discussion with one of the "Does," as well as documents that

 2   were provided by another "Doe," and then there's, also, a

 3   declaration --

 4           THE COURT:  Can you tell me: That police report --

 5   which of the "Does" does it relate to just so I --

 6           MR. KAPLAN:  So there's two of them.

 7           THE COURT:  All right.

 8           MR. KAPLAN:  I'm going to try to be careful here.

 9           So Doe 1 in the police -- well, one of the exhibits

10   -- and I could draw the Court's attention to it if you'd like

11   -- apparently the police department -- or Doe 1 called the

12   police department or -- I'm getting a little confused --

13           THE COURT:  Okay.  I don't need the facts but I

14   just --

15           MR. KAPLAN:  Yeah.

16           THE COURT:  So it's Doe 1 and which other one?

17           MR. KAPLAN:  And then for Doe 2, Doe 2's attorney

18   sent a letter with documentary evidence to the police

19   department.

20           THE COURT:  Okay.  Thank you.

21           MR. KAPLAN:  And I believe the Doe 1 materials were

22   attached to Mr. Brown's declaration, and the Doe 2 materials

23   were attached to my declaration.

24           THE COURT:  Okay.

25           MR. KAPLAN:  So we've laid an adequate foundation

1  that -- laying out very specific and graphic facts about what

2  happened in the sexual assaults and batteries that occurred

3  between Bauer and four of these women, as well as what

4  happened in terms of Doe 1.  Now, Mr. Brown is correct --

5  well, I'll get to Doe 1 in a second.  But we've laid an

6  adequate foundation for all of these, and we also have

7  declaration from my client, as well as myself, in terms of

8  information that was disclosed by three of these "Does," two

9  of them -- a lot of details directly from two of these "Does"

10  to Ms. Hill, and I think it's, perhaps, obvious but they -- I

11  think they --

12          THE COURT:  Specifically, which "Does" gave

13  specific detail to Ms. Hill?

14          MR. KAPLAN:  Yeah.  So, in particular, Doe No. 4.

15  And they both spoke quite a bit because they were both

16  participating in the Major League Baseball arbitration.

17          THE COURT:  Uh-huh.

18          MR. KAPLAN:  And I think they began talking earlier

19  than that when the investigation was ongoing or began.  And

20  also, Doe 2 -- same -- similar situation where they were

21  talking about and disclosing information to each other,

22  including their identities.

23          So I want to touch on each of the five "Does," and

24  there's some unique facts as to some of them or when you

25  compare them.

1          I want to start with Doe No. 4 because I think

2   getting information about -- or additional information about

3   Doe No. 4 really is critical here.  I'm not going to

4   summarize the facts other than to say -- and I may have

5   misheard Mr. Brown so I'm not going to characterize what he

6   said, but it is clear from the information we've received,

7   including the information that was in The Washington Post and

8   Yahoo! Sports article that Doe 4 has accused Mr. Bauer on

9   multiple occasions of sexually assaulting her, and those

10  facts were publicly disclosed by Doe 4.  She voluntarily was

11  interviewed and spoke to, with her counsel, The Washington

12  Post, and obviously that article, as well as the

13  Yahoo! Sports article, are in the record.  So we do have

14  public allegations of sexual assault and battery by Doe 4.

15          Now, we also -- and you just asked about this,

16  Your Honor, but Doe 4 also -- in addition to disclosing these

17  allegations to The Washington Post, she also voluntarily

18  disclosed these allegations to Major League Baseball and,

19  again, testified at the Major League Baseball arbitration.

20  And we also know that in the process of doing so she

21  provided, I believe -- at least she said she provided two

22  videos evidencing the sexual assaults -- or two sexual

23  assaults that were provided to the Major League Baseball

24  and/or during the arbitration, and she testified about those

25  videos at the arbitration.  And I respect that Mr. Brown is

1   being very careful about what he discloses or says about that

2   arbitration, but there's been nothing in the record that

3   disputes that Doe 4 participated in the arbitration:

4   testified, provided these videos.

5           And I don't want to segue too much into the next

6   motion, but there's also not a dispute that with respect to

7   Doe No 4 that there are materials from the arbitration and

8   the Major League Baseball investigation concerning Doe 4, and

9   those would include transcripts of Doe 4's testimony about

10  sexual assault, perhaps briefing, the videos, as I just

11  stated, maybe other documentary evidence, and maybe

12  Mr. Bauer's testimony or transcripts of that testimony from

13  the arbitration.  All of this would be directly relevant, and

14  I'm not sure, on balance, which I understand the Court will

15  have to do -- why, on balance, given that Doe 4 has done all

16  these things -- why that information can't come in -- or be

17  disclosed here in this proceeding.

18          I also want to touch on, very quickly, Doe 3.

19  There doesn't seem to be much of any dispute from Bauer that

20  based on the circumstances of Doe 3 that any privacy

21  interests would be outweighed by the need for getting

22  testimony about her sexual assaults by Mr. Bauer.  And just

23  to summarize very briefly, she has publicly accused in a

24  publicly filed lawsuit Mr. Bauer of sexual assault and rape,

25  and, again, the facts are very strikingly similar to what

1    occurred to Ms. Hill.  She's disclosed her identity, she's

2    disclosed those facts, and there's been no objection to date

3    to her testifying.

4           And I apologize.  Just going back real quickly to

5    Doe No 4, Doe 4 has also disclosed her identity to my client

6    as well, and to date, there's been no objection to

7    participating in this lawsuit -- or to testifying or anything

8    else -- from Doe 4.

9           Now, I want to, again, be sensitive and mindful to

10   privacy rights and, perhaps, desires to remain anonymous by

11   any of these women, and I disagree with Mr. Brown that a

12   protective order and sealing would not adequately address

13   those issues, especially for Does 3 and 4.  We do have a

14   protective order.  There's no reason why any materials

15   concerning Does 3 or 4 cannot be designated as either

16   confidential or even, if appropriate, attorneys' eyes only

17   under the stipulated protective order.  There's been several

18   sealing applications already that I believe, at least,

19   Your Honor has granted, perhaps, at least one, maybe more,

20   and I think Judge Selna just recently granted one as well as

21   to the information that falls under the umbrella of what

22   we're here for today.

23          And to the extent any of these women want to remain

24   anonymous, there's obviously ways to do that where they can

25   provide their testimony, information can be provided, but

1   their names do not need to be disclosed, and I don't think

2   their names for purposes of these proceedings -- meaning this

3   lawsuit -- are necessarily material.  They can be referred to

4   as they are today, as Does 1 through -- whatever.

5           So for Does 3 and Does 4, I think there really is a

6   compelling need, and the privacy interests that they may have

7   are outweighed by the need, especially under the specific

8   factual circumstances of those two victims.

9           I want to quickly just touch on the other three

10  "Does."

11          For Doe No. 5, again, there's been no objection to

12  date by Doe 5.  She did reach out to Ms. Hill's prior counsel

13  voluntarily and disclosed both her identity and her

14  accusations of sexual assault by Mr. Bauer.  So based on

15  that, I think there's not a reason, at least today, to grant

16  a protective order as to Doe 5.

17          Now, for the other two "Does," Mr. Brown is correct

18  -- I believe that's Doe 1 and Doe 2 -- they have made

19  objections to the testimony.  I want to start with Doe 1.

20          Now, Doe 1 has not, at least as far as I know, made

21  accusations of sexual assault.  However, she has put forward

22  evidence -- and this is where I need to be careful about the

23  sealing -- that shows Mr. Bauer's intent and plan to commit

24  sexual assault.  Those details are in the record.  I'm not

25  going to repeat them unless the Court would like me to -- as

 1  well as video or other evidence of sexual assault to another

 2  third party.  So -- and I'm trying to envision the

 3  deposition, but the questions really would not be about her

 4  sexual encounters with Mr. Bauer because I don't think those

 5  really exist.  It really would be: "What did Mr. Bauer tell

 6  you" on these very discrete subjects?  "What did Mr. Bauer

 7  show you?"  That's it.  And I think when you look at the --

 8  her privacy interests and the information we would try to be

 9  obtaining from her -- at least, that we've learned, that we

10  believe she has -- I think her privacy interests are very

11  minimal.  We're not asking about any sexual encounters,

12  really, that she had with Mr. Bauer.

13          Finally, Doe 2 -- she has made objections, but she

14  also has publicly disclosed her allegations to The Washington

15  Post, and participated, to a certain degree, with Major

16  League Baseball, and disclosed her identity to Ms. Hill, and

17  discussed her allegations with Ms. Hill.  So those facts, I

18  think, are -- or those factors, I think, do go into the

19  analysis, obviously, and should go into the balancing.

20          And again, for all these "Does," there's ways to

21  address privacy concerns and any concerns about these women

22  wanting to remain anonymous.

23          So unless the Court has any additional questions

24  about the substance of this motion, I don't have anything

25  further.

```
 1            THE COURT:  With regard to Category No. 1 of the

 2   document requests with the subpoena, is there any time

 3   limitation or -- I mean, it's a pretty broad request -- "all

 4   communications."

 5            MR. KAPLAN:  Yeah.  Well, let me answer the

 6   question, and I think -- well, first of all, all the

 7   categories, I think, mirror each other for each of the

 8   subpoenas of the five women.

 9            THE COURT:  Uh-huh.

10            MR. KAPLAN:  For Doe No. 4, who is one of the

11   "Does" who I identify as one of the more critical "Does," I

12   believe her allegations of sexual assault -- that she's

13   claiming those occurred in 2013 and '14.  So, you know, the

14   time limitations for each of these may vary depending on when

15   the sexual assaults occurred.  The way I look at it, in my

16   mind, is less tied to time and more tied to information

17   concerning nonconsensual sexual conduct or, if we go beyond

18   sexual conduct, for just battery.  So to the extent there's

19   anything that occurred -- or there's documents reflecting

20   those -- that sort of conduct, I don't know that we would tie

21   it to time.  I think we have a good idea, based on

22   information that we've already learned, when those assaults

23   occurred.

24            THE COURT:  All right.  Thank you.  All right.

25   Thank --
```

1          MR. KAPLAN:  Thank you, Your Honor.

2          MR. BROWN:  May I respond briefly?

3          THE COURT:  Yes.

4          MR. BROWN:  Thank you.  Just a few additional

5     points here.

6          You know, I want to be sensitive and careful about

7     the way I say things, but simply calling something a "sexual

8     assault" does not mean it's a sexual assault and this --

9     there was enough in the public record for me to be able to

10    say that the sexual conduct that we are talking about here --

11    much of it, even in the particular allegations here --

12    involve consensual, rough sex.  Okay.  Now, I realize that

13    there are contentions from Ms. Hill, and perhaps from others,

14    that some of that strayed into areas that were nonconsensual,

15    and we'll see, in the case of Ms. Hill, where that leads,

16    although, a judge in the domestic violence restraining order

17    proceeding found that everything -- "everything" that

18    occurred between her and Mr. Bauer was consensual and that

19    Ms. Hill was materially misleading.  So simply coming up here

20    and saying that these were all sexual assaults simply is not

21    the case and especially in the context of rough sex, and

22    people who might not engage in that practice -- and some of

23    those practices --

24          THE COURT:  I'm aware of the --

25          MR. BROWN:  Yes.  Very well.

 1              THE COURT:  I read the stuff pretty closely.  So

 2  I'm aware of --

 3              MR. BROWN:  Okay.  All right.

 4              THE COURT:  -- what you're talking about and --

 5              MR. BROWN:  You're talking -- okay.

 6              THE COURT:  So I understand.

 7              MR. BROWN:  So I think it's understandable why

 8  these women may not want to -- whether it's rough sex or

 9  vanilla sex, want to have their sexual privacy invaded or

10  have information disclosed.

11              THE COURT:  Can I ask a question?

12              MR. BROWN:  Yes.

13              THE COURT:  Besides the two that we have evidence

14  that they've asserted an objection and a privacy, why do --

15  what do we have -- why do we have reason to believe that the

16  other three did?  I mean, we're sort of broadly arguing that

17  that they all want privacy, but we really only know that two

18  have asked for privacy.

19              MR. BROWN:  Well, they -- well, first of all, I

20  think that something more than acquiesce -- or something more

21  than silence is necessary to make a determination whether

22  someone consents to invasion of their sexual privacy.  These

23  -- putting aside Doe 3, who's filed a lawsuit, initially pro

24  se and now with counsel, the other two "Does," who have not

25  filed anything, are pro se.  Okay.  They may very well not be

1  familiar with their rights.

2          THE COURT:  But my question to you is, is there

3  anything in this record that says that those two folks want

4  to keep this information private?  We know that Doe No. 3

5  filed a lawsuit so that's out, but what about these other

6  two?

7          MR. BROWN:  4 and 5.

8          THE COURT:  Is there any evidence that they want to

9  keep this information private in "our" record?

10          MR. BROWN:  There is no affirmative statement from

11  them --

12          THE COURT:  Okay.

13          MR. BROWN:  -- to that effect.  On the other hand,

14  there's not a waiver of their sexual privacy rights so -- and

15  that touches on a point I wanted to mention with respect to

16  these.

17          Mr. Kaplan went through each of the women and

18  talked about the extent to which some of them, or all of

19  them, have talked about their interactions -- some of their

20  interactions, or all of their interactions, with Mr. Bauer.

21  Okay.  And talking about Doe No. 5, for example, who he

22  indicated had reached out to Ms. Hill's former counsel,

23  presumably at the time of the DVRO proceeding -- talking to a

24  lawyer back in 2021 privately -- she was never called to

25  testify at the DVRO proceeding, never revealed her -- her

 1   identity was never revealed publicly -- is quite different

 2   from what is being asked of her now two years later.

 3           And I don't think the fact that she had a private

 4   conversation with Ms. Hill's counsel, for example, means

 5   necessarily that she is more than willing to sit for a

 6   deposition and produce documents about her exchanges with Mr.

 7   Bauer, whether it's about rough sex or any other kind of sex.

 8   I don't think you can reach that conclusion.  Nor

 9   participation in a confidential MLB arbitration proceeding,

10   whether it's by giving testimony in the case of Doe No. 4, or

11   in the case of participating to some extent but not

12   testifying, means that they are willing to proceed now with a

13   deposition, a document production, and public disclosure.

14   Because that arbitration proceeding was confidential, and so

15   it does not mean that they're willing to do that now.

16           THE COURT:  All right.  Anything further?

17           MR. BROWN:  The only other point I wanted to make

18   is that in Mr. Kaplan's discussion of the *Rapp v. Fowler*

19   decision, this was not a fishing expedition.  I think he

20   indicated that that and the *Boler* case both involved sort of

21   a fishing expedition about -- asking more generally about

22   sexual partners.  It was much more focused than that, and as

23   I mentioned in my argument, it even included an individual

24   who had sued Kevin Spacey under a pseudonym and then

25   dismissed his lawsuit.  So it was focused, and the court

 1   nevertheless upheld the assertions of the right to privacy

 2   and issued the protective order.

 3          Thank you.

 4          THE COURT:  All right.  Thank you.

 5          All right.  I'm going to take a short break,

 6   consider the arguments with regard to this motion, and I'll

 7   be right back.

 8          MR. KAPLAN:  Thank you, Your Honor.

 9          MR. BROWN:  Thank you.

10      (Recess from 10:53 a.m. to 11:02 a.m.)

11

12                         AFTER RECESS

13      (Call to Order of the Court.)

14          THE COURT:  All right, everybody.  Please be

15   seated.

16          All right.  This is my ruling:

17          The Court grants Bauer's motion to quash the

18   subpoena as to Doe No. 1 and finds that there's no compelling

19   need for the information sought.

20          The motion is denied with regard to Does 2, 3, and

21   5.  I find that there's compelling need for the information

22   that outweighs any privacy right in this case.

23          Now, specifically with regard, however, to item --

24   the Document Request No. 1, that is going to be limited to

25   nonconsensual conduct.

 1             (Court confers with court staff.)

 2             THE COURT:  All right.  Any questions with regard

 3    to that?

 4             MR. KAPLAN:  No, Your Honor.  Thank you.

 5             THE COURT:  All right.  Now let's move on the other

 6    motion.

 7             And let me be clear with regard to these women.

 8    The fact that discovery is being ordered does not mean that

 9    you cannot seek additional rulings from Judge Selna when it

10    comes to how the testimony is handled at trial or in any

11    other motion.  I expect that you will be proper counselors of

12    the law and making sure that whatever rights they end up

13    asserting, when they assert them, get handled appropriately.

14    That's not going to prevent the discovery in this case.

15             MR. KAPLAN:  Of course, Your Honor.

16             THE COURT:  All right.

17             MR. BROWN:  Your Honor, I do have a question -- or

18    a comment.

19             THE COURT:  I don't need a comment, but I'll take

20    your question.

21             MR. BROWN:  No.  I'm sorry.  No.  Comment -- no.

22    I'm sorry.  That's the wrong word -- because we may need to

23    bring it up in the future at some point, and that is, you

24    know, in order to show that certain contact was consensual,

25    it may be necessary to get into the full range of the

1  relationship, and so, therefore, there may be communications

2  about consensual -- I need to reflect on this, Your Honor,

3  but there may be some communications about consensual conduct

4  that may be relevant to our position that conduct was in fact

5  consensual -- conduct that is alleged to be nonconsensual was

6  in fact consensual.

7          THE COURT:  So you're talking about wanting to

8  expand the scope of the document requests that are included

9  in the subpoena?

10         MR. BROWN:  No.  I'm talking about the limitation

11 that the Court imposed on No. 1 to nonconsensual --

12         THE COURT:  Right.  So --

13         MR. BROWN:  -- to nonconsensual conduct.

14         THE COURT:  So you would like it be more broad --

15         MR. BROWN:  I would -- well --

16         THE COURT:  -- so that they will produce

17 consensual?

18         MR. BROWN:  I would like to reflect on it,

19 Your Honor.  I mean, I -- maybe I -- maybe I'm giving up my

20 only opportunity to raise this issue, but it did occur to me

21 that that may present an issue for us.  Obviously, I accept

22 the Court's ruling on that but --

23         THE COURT:  Uh-huh.

24         MR. BROWN:  -- I may -- in consultation with

25 opposing counsel, may come back to the Court with respect to

 1    potential clarification of that.  You know, it's --

 2              THE COURT:  Well, how about this?  I'm --

 3              MR. BROWN:  Excuse me?

 4              THE COURT:  How about this?  I'm going to guess

 5    that I just limited their deposition subpoena, right.

 6              MR. BROWN:  You did.

 7              THE COURT:  If you agree that it should be broader,

 8    he's probably going to agree to that.  So I don't know that

 9    you'll need to come to me.  If you want her to produce

10    documents -- because I think category No. 1 is "all

11    communications" or "all documents" -- or whatever --

12    regarding the certain conduct, right.  If you want her to

13    produce consensual communications, which is how the request

14    currently sits, I'm sure that he will be fine not limiting

15    the information, and I'm not going to disagree with you if

16    you choose to allow a broader production under the subpoena.

17              MR. BROWN:  I understand.  Thank you.

18              THE COURT:  Does that make sense?

19              MR. BROWN:  Yes.  Absolutely.  Thank you,

20    Your Honor.

21              THE COURT:  All right.  Thank you.

22              All right.  So now we have a motion to compel filed

23    by Ms. Hill against Mr. Bauer.

24              Mr. Kaplan?

25              MR. KAPLAN:  Thank you, Your Honor.

1          So I'm going to try to be brief because, again --

2          THE COURT:  Please.

3          MR. KAPLAN:  -- this has all been extensively

4   briefed and as --

5          THE COURT:  Yes.  And I have read it, and we have

6   digested it, and we have talked about it.  So I'm quite aware

7   of it.  So with that known --

8          MR. KAPLAN:  Any my voice is going as well so --

9          THE COURT:  All right.

10          MR. KAPLAN:  There's two -- well, there's multiple

11   reasons why the information is highly relevant here.  The

12   first -- and I think hopefully this is the most obvious, but

13   at least in part, the Major League Baseball proceeding -- and

14   I'll use that globally to include both the preliminary

15   investigation that led up to the suspension and then the

16   arbitration that challenged that suspension.  At least in

17   part, those proceedings concerned precisely the same facts

18   and occurrences that are at -- directly at issue in this

19   case, which is Mr. Bauer and Ms. Hill's interactions and

20   Mr. Bauer's battery and sexual battery of Ms. Hill.  So

21   certainly those -- any documents from those proceedings

22   concerning that subject matter is obviously directly

23   relevant.

24          And we know for sure that Ms. Hill testified for

25   several days and was cross-examined by Mr. Bauer's counsel at

1  the -- during the arbitration, she was interviewed, and

2  there's all sorts of documents that we've requested or fall

3  within the umbrella of documents that we've requested that I

4  believe are, at least, likely to exist, such as transcripts

5  of testimony by Ms. Hill -- I don't have those.  We know

6  those exist -- transcripts of Mr. Bauer's testimony, if there

7  was briefing, if there was any documentary evidence -- the

8  list goes on.  To the extent there's documents -- and there's

9  no -- been no dispute from Mr. Bauer -- and I understand he's

10  trying to be very careful about what he does or does not

11  disclose, but there's been no dispute that those sort of

12  documents, as one might imagine, would exist in a formal

13  arbitration proceeding.  So to the extent there's documents

14  concerning Ms. Hill and Ms. [sic] Bauer, obviously those are

15  directly relevant.  There's no reason why those shouldn't be

16  produced.

17         Then we have a second category of documents.  It's

18  likely limited to Doe 4, who -- I don't want to reargue the

19  prior motion -- who testified at the arbitration, and Doe 2,

20  who participated but didn't testify, and I think based on the

21  ruling we just received, that information is also highly

22  relevant.

23         Which really leaves us with the issue of, all

24  right, well, there's so-called confidentiality in some sort

25  of collective bargaining agreement document between the

1   players union and Major League Baseball where they've decided

2   these proceedings will be confidential subject to what I

3   would say is a fairly standard carve-out, which is as

4   required by law or a court order.

5            And I think that that policy, in particular the

6   confidentiality provision, foresaw precisely this type of

7   instance where there could be information from what Major

8   League Baseball -- or probably, more likely, the players

9   union -- wanted to maintain as confidential but there would

10  be a need for someone to obtain that information, for

11  example, in a court proceeding, like we have today.  And the

12  Federal Rules of Civil Procedure that govern discovery in

13  this case are precisely what it requires by law: Mr. Bauer to

14  turn over the documents that are directly relevant.  Now,

15  even without that carve-out, the cases that I've cited stand

16  for the proposition that just because they agree to

17  confidentiality doesn't mean that they're immunized from

18  turning over otherwise discoverable information.

19           The only other point I wanted to raise was what I

20  characterize as speculation of what my client agreed to with

21  Major League Baseball, but hopefully the -- any mystery about

22  that is now out of the box because I have provided to the

23  Court in my supplemental briefing a redacted copy of that

24  agreement.

25           I did include the provisions that show the

1   confidentiality provision in that agreement, and what's

2   material about it is, one, the only confidentiality

3   obligations imposed on my client are not to disclose the

4   agreement itself.  There's nothing else in there -- there's

5   certainly nothing in there that -- where she's agreed that

6   anything from the Major League Baseball investigation or

7   subsequent arbitration could not be used in a subsequent

8   civil action.  And the only thing that Major League Baseball

9   agreed to keep confidential was whatever information Ms. Hill

10  disclosed to Major League Baseball, and, again, it was also

11  subject to the exclusions in the policy, which I -- as I just

12  discussed, contemplated that information from that policy or

13  proceedings concerning that policy might need to be disclosed

14  in a -- some -- by law, in particular in a proceeding, and

15  that's why it had the "court order or as required by law"

16  language in it.

17          So I don't think Mr. Bauer can use that policy or

18  any agreement to say -- to shield that information, which is

19  obviously relevant and highly relevant, from discovery.

20          THE COURT:  Thank you.

21          MR. KAPLAN:  Thank you, Your Honor.

22          MR. BROWN:  Your Honor, this arbitration -- this

23  investigation and arbitration are unusual in several

24  respects.  One is that it was done -- the arbitration was

25  done pursuant to not only the collective bargaining agreement

1    but, more specifically, within the collective bargaining

2    agreement the joint policy between the union and Major League

3    Baseball on sexual assault and domestic violence.  And there

4    are a number of interests that are expressed in that policy

5    and -- a number of purposes expressed in that policy, and

6    they include the protection of the rights of accusers, as

7    well as protection of players who may be falsely accused, and

8    to facilitate purported victims of domestic violence to come

9    forward, that confidentiality provision of the arbitration is

10   important.

11          And we know from Doe No. 2, who, again, to use the

12   words from Ms. Hill's declaration, participated but did not

13   testify in the arbitration proceeding, there is -- I think

14   it's a pretty -- it's pretty clear that she relied on that

15   confidentiality in order to participate and that she does not

16   want to have her privacy rights invaded any further and

17   certainly any more publicly than exists here.

18          We do point out, as I'm sure the Court knows, that,

19   at least according to Major League Baseball, Ms. Hill herself

20   agreed to the confidentiality -- to maintain the

21   confidentiality of those proceedings.  They have presented a

22   redacted version of the agreement.  We are not in a position

23   to be able to present the agreement.  We do rely on

24   Major League Baseball's position that that confidentiality

25   agreement binds Ms. Hill.  And so there's -- that is another

1  feature of the confidentiality that distinguishes this case

2  from others in which arbitration or confidential documents

3  may have been permitted in discovery.  That is, both parties

4  to this case, we maintain, agreed to confidentiality.

5  There's also the confidentiality interests, as I indicated,

6  of the other people, as well of Mr. Bauer, who I note had his

7  suspensions significantly reduced as a result of this

8  arbitration.  That's a matter of public record, which one

9  certainly could draw some inferences from, I think, about

10  what was established at that arbitration, potentially.

11          So you have all of those features in place here

12  that provide maximum interests in confidentiality, along with

13  the more general policy interest that is in the federal law

14  to promote arbitration and to allow even confidential

15  arbitration.  No, it is not, and nor do we ever maintain,

16  that an agreement for confidentiality in an arbitration is an

17  absolute bar to civil discovery in a federal case.  That's

18  not our position.  It is that the confidentiality that is

19  issued here is important enough, in addition to the general

20  interest and confidentiality for arbitration and the

21  promotion of arbitration, to protect confidentiality in this

22  case.

23          And again, I point to the *Rapp v. Fowler* case,

24  where the second one -- the 2022 decision -- in which

25  Judge Kaplan did rule that he was not going to permit

1    discovery in -- of an arbitration that occurred between

2    Kevin Spacey and, I guess, the producers of the television

3    show that he was involved with for many years, which included

4    in the arbitration allegations of sexual assault.  Again,

5    Judge Kaplan found that the confidentiality interests of the

6    women involved there -- or the individuals involved there, I

7    should say, was insufficient -- was so sufficient that -- so

8    substantial that it would not overcome the interests in

9    discovering that in any purported arguments for relevancy.

10          So we would ask the Court to deny the motion to

11   compel Mr. Bauer to produce materials from the investigation

12   and the arbitration proceeding.

13          THE COURT:  Okay.  Can we take them a little bit

14   more specifically?  We've talked about them pretty broadly,

15   but let's talk about them -- you guys clumped them together.

16   We have RFP No. 68, 69, and 114, and in all three of those,

17   they seek documents in support of "your -- here, being

18   Mr. Bauer's -- "contention that" -- blah, blah, blah, blah --

19   "as alleged in your complaint."  That language is in 68, that

20   language is in 69 --

21          MR. BROWN:  May I address those, Your Honor,

22   briefly?

23          THE COURT:  Well, my question to you is hasn't he

24   put them at issue by making an allegation --

25          MR. BROWN:  Well --

```
 1              THE COURT:  -- specifically about them in the
 2   complaint, and what would be wrong about requiring him to
 3   produce documents that support his contention?
 4              MR. BROWN:  Well, I actually skipped over a section
 5   of my argument because I thought we had made our point
 6   sufficiently clear in the papers, and I guess we didn't.
 7              But Mr. Bauer -- Mr. Bauer does not contend -- and
 8   we have put this in writing in initial disclosures and
 9   amended discovery responses -- that -- does not contend that
10   Ms. Hill's allegations caused him to go on administrative
11   leave, be suspended, or be disciplined by Major League
12   Baseball.  I can read these discovery requests.  I know what
13   these discovery requests say.  I do know that in the
14   complaint it was suggested that that was the basis for it,
15   but we have made it clear in our amended responses that --
16   excuse me -- we are not seeking -- we are not seeking to
17   establish that Ms. Hill caused all of these injuries.  In
18   fact, the damages that we seek are quite limited and -- or,
19   frankly, primarily, Mr. Bauer wants to clear his name and
20   show that these allegations are false, and so we have
21   significantly scaled down the allegations to the extent that
22   they suggest that Ms. Hill caused all these events to occur.
23              So the problem with these requests at this point is
24   that we don't make these contentions.  These -- 68 and 69.
25   Those are not allegations that we make any more, to the
```

 1  extent they were made before.

 2          THE COURT:  Okay.  Let me hear from Mr. Kaplan on

 3  that --

 4          MR. BROWN:  Okay.

 5          THE COURT:  -- based on that clarification

 6  statement on the record.

 7          MR. KAPLAN:  Well, to be clear, in the initial

 8  disclosures that -- those allegations were not withdrawn.  It

 9  sounds like, maybe, Mr. Brown is withdrawing them right now.

10          There's still an issue, though, as to -- to the

11  extent any of the statements my client made are deemed to be

12  defamatory, there's still -- the jury is still entitled to

13  look at whether or not -- what level of harm they caused even

14  if Mr. Bauer is solely seeking assume or presumed damages.

15  So I still think it's relevant for that reason, but it's

16  relevant for all the other reasons that we discussed.

17          I mean, at the end of the day, I think there's

18  significant overlap with all these document requests in that

19  essentially what we're seeking -- and maybe we could have

20  been more streamlined in what we requested, but we're looking

21  for all the documents from the Major League Baseball

22  investigation and the Major League Baseball arbitration.  I

23  think they're all one and the same.  So even if they're no

24  longer relevant for the issue of causation and damages,

25  they're still relevant for all the other reasons.

 1          THE COURT:  Can I ask a question?  What does your

 2   client now allege is the basis of the defamation?  What harm

 3   did it cause if it's not the suspension and the

 4   administrative leave?

 5          MR. BROWN:  Well, we did provide amended discovery

 6   responses.  The -- there are defamation counts, and there are

 7   tortious interference with contract and business

 8   opportunities counts, and we made it crystal clear, we

 9   thought, that Mr. Bauer is seeking nominal damages.  It's

10   defamation per se, and if there's defamation per se found, he

11   does not have to prove any damage to reputation or business.

12   He is seeking nominal damages, and that has been expressed in

13   writing so it's very clear that that's what we were seeking,

14   and as I said earlier, it's really about showing that these

15   allegations were untrue.

16          So -- and for the tortious interference counts,

17   there were -- there are damages related to the loss of

18   business of the -- his sponsorships and some of the sales

19   from his website, and we confined that to a very discrete

20   period of time and did it very deliberately, again, in our

21   amended disclosures because we want the focus to be on these

22   particular allegations.

23          There was an article that came out in

24   The Washington Post that has been referenced -- no names were

25   mentioned but -- on August 19th.  We stopped our damages

1  claim on August 19th of 2021.  I believe that's the date of

2  the article.  So our position, which we've confirmed in

3  writing, is quite limited and expressly limited to disavow

4  any claim that Ms. Hill caused the administrative leave

5  suspension or suspension or that anything that -- or anything

6  that happened after August 19, 2021.

7          THE COURT:  Okay.  That has been -- that wasn't in

8  an amended response to this discovery yet, though; is that

9  correct?

10          MR. BROWN:  That was in amended initial disclosures

11  --

12          THE COURT:  Okay.

13          MR. BROWN:  -- and in some amended -- I'm looking

14  over at my colleague Ivano to make sure I have this right --

15  and I thought it was in amended discovery -- interrogatory

16  responses, but I cannot say that with certainty.

17          (Counsel confer.)

18          MR. BROWN:  If it's not and we are obligated to do

19  so, I think we've made it clear that that's our position, and

20  so we certainly will do so to the extent it's necessary.  I

21  believe we put these in interrogatory responses -- amended

22  interrogatory responses or -- or interrogatory responses

23  regarding damages, which came later.  Certainly, it was in

24  those so --

25          THE COURT:  Okay.  Thank you.

1            All right.  Let's see.

2            (Pause.)

3            THE COURT:  All right.  Mr. Kaplan, do you have a

4    reply or a response?

5            MR. KAPLAN:  Yes.

6            THE COURT:  I think we went from you to him.  Now

7    it's your turn again.

8            MR. KAPLAN:  Okay.

9            THE COURT:  Yeah.

10            MR. KAPLAN:  Just very briefly to some of the --

11    respond to some of the points that Mr. Brown made.

12            Again, the rights of the accusers were brought up

13    again in that there was some expectation of confidentiality

14    during the Major League Baseball proceedings, and just like

15    we were discussing earlier today, there is -- while this is a

16    public proceeding, there are ways to deal with issues

17    concerning privacy and anonymity while -- that we could

18    employ here.  So I think, just like we were discussing with

19    the depositions, the same would apply to the materials and

20    any testimony given by -- I believe it was Doe No. 4 in the

21    arbitration proceeding, et cetera.  So, again, we have a

22    stipulated protective order, and I don't know that the names

23    of these victims are terribly material to this proceeding.

24    Again, we could refer to them by the "Does" we've given.

25            THE COURT:  Can I ask you a question?  Why do you

1   need the testimony from the arbitration, for example -- and

2   to me that's sort of the most obvious issue -- if you are

3   being able to depose the people here?

4           MR. KAPLAN:  Well, I think what it really gives me

5   is a way of looking at what the -- let me back up.

6           My understanding is that these women provided

7   direct testimony that was elicited by Major League Baseball's

8   attorney and that essentially will provide a roadmap of the

9   information.  So it allows me to essentially preview all the

10  information and know what the testimony is.  So it certainly

11  aids in efficiency.  Also, I believe that the pertinent

12  documents, if you will, in particular some of these videos,

13  were already provided.  So it's really a shortcut, if you

14  will, for me to get all the information that I need for these

15  depositions.

16          Now, there's also a contingency that some of these

17  witnesses will not appear for their deposition.  I don't know

18  if that's going to be true or not.  There may be a need to

19  rely on some of the testimony -- well, it's really the

20  testimony of one witness.  Now, there may be hearsay

21  objections from Bauer's -- from Bauer to that, and that might

22  ultimately be an "in limine motion" type issue, whether or

23  not the Court's going to say that testimony from a

24  arbitration where someone's under penalty of perjury and

25  cross-examined by Mr. Bauer's counsel -- whether or not

 1  there's a hearsay exception to that or not, but that's also a

 2  possibility, that I may not ultimately get to depose these

 3  witnesses -- or the one witness who testified, I should say.

 4          THE COURT:  All right.  Thank you.

 5          MR. KAPLAN:  The other comment that Mr. Brown made

 6  that I just want to quickly address, and I think I addressed

 7  it in my opening, was Ms. Hill did not agree that -- to

 8  confidentiality for all the proceedings, and she certainly

 9  did not agree that anything that was -- anything from the

10  proceedings could not be used in the subsequent civil action,

11  and, again, the language in the domestic violence policy,

12  which I don't think is binding on Hill, but even if it was,

13  has an express carve-out for that.

14          And then, finally, Mr. Brown made a comment about

15  the suspension being reduced significantly -- or something

16  like that.  I'm not sure how much that really matters, but if

17  it does, the suspension, generally speaking, was upheld by

18  the arbitrator.  I think it was in the neighborhood of

19  191 games or so, and it was the largest suspension ever under

20  Major League Baseball's domestic violence policy.  So I think

21  there is some significance to whatever happened in that

22  proceeding.

23          Thank you, Your Honor.

24          THE COURT:  All right.  Thank you.

25          All right.  I'm going to take a break and consider

 1   the argument --

 2           MR. KAPLAN:  Thank you, Your Honor.

 3           THE COURT:  -- and I'll come back with my ruling.

 4       (Recess from 11:30 a.m. to 11:53 a.m.)

 5

 6                        AFTER RECESS

 7       (Call to Order of the Court.)

 8           THE COURT:  All right.  Have a seat.

 9           MR. KAPLAN:  Thank you, Your Honor.

10           THE COURT:  All right.  This is my ruling:

11           With regard to RFP Nos. 68 and 69, I am denying the

12   motion to compel but will require that Mr. Bauer file an --

13   not file -- serve amended responses that specifically state

14   that they are withdrawing those allegations.

15           With regard to RFP No. 114, because the tortious

16   interference with contract allegation still exists in this

17   case -- claim -- I am granting the motion to compel.  I find

18   that the information is relevant to the claims asserted in

19   this case, that the Court is not bound by the MLB's contract

20   requirements of confidentiality with Bauer and Hill, and that

21   Bauer has waived his privacy objections by failing to assert

22   them in his initial response to the RFP.

23           With regard to RFP No. 87, I am granting the motion

24   to compel RFP No. 87.  I find that Hill has met her burden to

25   establish that the requested information is relevant.  The

1  investigations conducted by MLB or law enforcement have all

2  the same underlying facts at issue in this case, and while

3  there may be a privacy right, it does not apply to these

4  specific documents, and the interests our outweighed by

5  Hill's compelling need for the information for the claims and

6  defenses at issue.

7        Now, with regard to RFP No. 92, I'm granting the

8  motion to compel as to RFP No. 92.  I find that Hill has met

9  her burden of establishing that the requested information is

10 relevant and that any rights of privacy are outweighed by

11 Hill's compelling need for the information for the claims and

12 defenses asserted in this case.

13       With regard to RFP No. 93, I am denying the motion

14 to compel.  This request is largely overbroad, and I find

15 that Ms. Hill has not met her burden of establishing that the

16 requested information is proportional in this case.  To a

17 large degree, my ruling with regard to that is the fact that

18 there are the depositions.  My ruling might be different if

19 we find out that the depositions don't occur.  If witnesses

20 don't show up, then maybe I would have -- might have a

21 different ruling.

22       All right?

23       MR. KAPLAN:  Your Honor, may I ask a clarifying

24 question as to No. 93?

25       THE COURT:  Uh-huh.

1          MR. KAPLAN:  Is it -- the ruling with or without

2   prejudice to propounding, I guess, new discovery that's more

3   focused on certain documents from the arbitration, such as --

4   the things that I have in mind are dealing with transcripts,

5   for example, with my client and Mr. Bauer -- stuff like that.

6          THE COURT:  I'm not going to give a hypothetical

7   ruling.  I really don't like to do that if I can avoid it.  I

8   like to really try to make my rulings based on the facts in

9   front of me.  If your discovery cutoff has not passed, you

10  are free to serve any discovery that you think is

11  appropriate, and then we can take up any arguments that may

12  be appropriate, but this request as written, I'm denying the

13  motion to compel.

14          MR. KAPLAN:  Thank you, Your Honor.

15          THE COURT:  Okay?

16          All right.  Now, my law clerks tell me that there

17  may be some ambiguity about my ruling on the motion to quash.

18  To be -- with regard to Doe No. 4.  I think I said one thing;

19  they heard something else.  I wanted to make sure that you

20  guys understood that I was denying the motion to quash as to

21  2, 3, 4, and 5.

22          MR. BROWN:  Yes, I understood that.

23          THE COURT:  Okay.  All right.

24          MR. BROWN:  Although I did not hear you say "4."

25          THE COURT:  Okay.  Yeah.  I think I said,

1  "2 through 5" --

2            MR. BROWN:  Okay.  Yeah.

3            THE COURT:  -- which sounded like "2, 3, 5" to

4  other people and in my own head sounded like "2 through 5" so

5  --

6            MR. BROWN:  But I certainly understood what you

7  were ruling.

8            THE COURT:  Okay.  All right.

9            All right.  Thank you, everybody.

10           MR. BROWN:  Thank you.

11           THE COURT:  Now, I will not be issuing a written

12  ruling.  So, if you need a transcript or something like that,

13  it's up to you to order.  Okay?

14           MR. BROWN:  Thank you, Your Honor.

15           THE COURT:  If you want a written ruling, then I

16  would request that somebody -- that one of the parties

17  propose one, you get the other side to sign off on it, and

18  then you lodge it.  If I have both signatures and if it

19  comports with my memory of the hearing, then, I'll enter it.

20  Okay?  Otherwise, we'll just be going based on your best

21  memory.

22           MR. KAPLAN:  Thank you, Your Honor.

23           THE COURT:  All right.  Thank you, everybody.

24           THE CLERK:  Court is now adjourned.

25        (Proceedings adjourned at 11:58 a.m.)

1

2

3

4                        CERTIFICATE

5        I certify that the foregoing is a correct transcript

6   from the electronic sound recording of the proceedings in the

7   above-entitled matter.

8

9   /s/ Julie Messa_____      July 19, 2023_____
    Julie Messa, CET**D-403        Date
10  Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25