UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings: **[IN CHAMBERS] Order Regarding Motion for Sanctions [119] Redacted**

Before the Court are disturbing allegations of witness tampering and a request for one of the most drastic sanctions available: dismissal of claims. Plaintiff and Counter-Defendant Trevor Bauer ("Bauer") moves for sanctions in the form of dismissal of Defendant and Counter-Claimant Lindsey Hill's ("Hill") counterclaims. (Mot., Dkt. No. 119.) Hill opposed the motion (Opp'n, Dkt. No. 142) and Bauer responded (Reply, Dkt. No. 154). The Court heard oral argument on the matter on July 31, 2023.

For the following reasons, the Court **GRANTS in part** Bauer's motion for sanctions. Hill is hereby **ORDERED** to refrain from any contact with any party or witness in this case without her attorney present in accordance with the directions outlined in this Order. Any communication between Hill and a party or witness in this case must occur in the presence of Hill's counsel. Hill may communicate with her father and Decker without her attorney present, but may not discuss the case with them.

## I. BACKGROUND

The circumstances leading to the present motion are lengthy but largely undisputed; the parties merely dispute the facts' context and implications. Bauer asserts that Hill tampered with four witnesses or potential witnesses in this case: Frank Tortorigi ("Tortorigi"), Jane Roe ("Roe"), Derek Dawson ("Dawson"), and Jane Doe ("Doe").[1] The Court will recite the relevant contentions for each witness.

---

[1] The Court will refer to two witnesses by Janes Roe and Doe rather than their actual names to preserve their privacy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

      A.    *Frank Tortorigi*

Hill met Tortorigi while they were both working at Lululemon, and the two have been friends since. (Hill Decl. ¶ 26, Dkt. No. 144.) After learning that Bauer intended to subpoena Tortorigi, Hill contacted Tortorigi via direct message on Instagram. The Court has reproduced the message's text below:[2]

> So bauer (the guy I am in a legal battle w) plans on subpoenaing you for our text messages from when it happened, I'm dying laughing, if you get one just reply to it with "I have no access to these materials"
> 1.) they already have all of our messages idk why they are asking again
> 2.) who would have access to messages from 2 years ago [two laughing-crying emojis]
> But yeah just respond to it saying I have nothing related to this that I have in my possession
> So stupid moi I cant. Just know you don't have to do shit for it. Also gonna unsend and delete this once u see it [laughing-crying emoji]
> Call me if u get one and I'll tell u what to do

(Peyser Decl., Dkt. No. 119-1, Ex. A.)

Hill attests, and Tortorigi confirmed at his recent deposition, that prior to this communication, Hill had not discussed the present lawsuit with Tortorigi. (Hill Decl. ¶ 26; Tortorigi Depo. Tr., Kaplan Decl., Ex. 5, at 66:6–17.) Tortorigi also stated in his deposition that he was unsure of what was going, but that he and Hill did not speak after Tortorigi received a subpoena for documents from Bauer in this case. (Tortorigi Depo. Tr. 67:4–70:6.)

---

[2] Because the precise language used is important for resolution of this motion, the Court will reproduce the text exactly as written, including misspellings and idioms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-cv-00868-JVS (ADS)                    Date  August 4, 2023

Title     Trevor Bauer v. Lindsey C. Hill et al

After receiving the subpoena, Tortorigi emailed Nell Peyser, counsel for Bauer, that he did not have any responsive documents. (Id. at 72:25–73:3.) Although he emailed Peyser after Hill sent him the above message, Tortorigi stated that Hill's direction did not have any influence on his response to Peyser. (Id. at 74:2–13.) Rather, he did not have any text messages on his phone from the time period he believed the subpoena covered, and went to the Apple Store to get his data recovered. (Id. at 74:13–20.) Tortorigi also set up a call with Peyser because he did not understand what the subpoena requested and needed guidance. (Id. at 75:12–76:7.) After speaking with Peyser on the phone, Tortorigi emailed her the following week stating he still did not have any responsive documents. (Id. at 76:8–12.) Tortorigi had not yet turned over the above Instagram message because, at the time, he did not believe it to be covered by the subpoena. (Id. at 83:3–9.) He interpreted the subpoena to seek only text messages, an impression which he believed was confirmed during his conversation. (Id. at 79:24–80:8.)

Tortorigi ultimately produced responsive message with Hill, including texts from April 2021 which had been recovered by the Apple store as well as Hill's Instagram message to Tortorigi regarding how to handle the subpoena. All messages Tortorigi produced, with the exception of the Instagram message from 2023, were previously produced to the Pasadena Police Department which were then provided to Bauer during the early stages of this case. (Kaplan Decl. ¶ 8, Dkt. No. 143.) Hill has not produced her Instagram messages with Tortorigi to Bauer.

B.     *Jane Roe*

Jane Roe owned and operated a sober living home in San Diego County in which Hill, a recovering alcoholic, resided in between January and August 2020. (Hill Decl. ¶ 16.) Hill planned on working as a resident life director at another sober living home owned and operated by Roe beginning in June 2021. (Id.) Following Bauer's alleged sexual assault on Hill, Hill's relationship with Roe deteriorated due to Roe's unwelcome insertion of herself into the situation. (Id.) According to Hill, Roe provided unsolicited advice to Hill, contacted Hill's father about the situation, and reached out to attorneys about potentially representing Hill and disclosed information about Hill to those attorneys without Hill's knowledge or consent. (Id.) Roe also gave an interview to the Pasadena Police Department in 2021 in which Roe disclosed information about Hill's sexual relationship with a professional baseball player other than Bauer. (Id. ¶ 20.) In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

2021, Hill tried to get Roe to remove herself from the situation and cease her attempts to help; however, Roe purportedly continued to involve herself against Hill's requests, straining Hill's and Roe's relationship. (Id. ¶¶ 18–19.)

In March 2023, Hill's father informed her that Roe had again tried to contact him; on April 10, 2023, Hill learned that Roe had tried to contact Hill's attorneys. (Id. ¶ 21.) In response, Hill sent Roe the following message on April 10, 2023, while intoxicated:

> I just want you to understand- you're fucking evil [Roe]. I despise you, my family despises you and you have zero place in this situation. You make up lies, steal residents advian and total your car, buy ambian in Mexico, and so much more. When I'm asked about you, I will burn you to the fucking ground and expose you just like you think you are doing to me. Everyone in my life and in this case will speak the truth about you
>
> Don't call my fucking dad anymore, we're on the right side of justice and want you nowhere near it. Evil bitch. I'll have every past resident testify against your character.

(Peyser Decl., Ex. B.)

The following day, Roe contacted Bauer's counsel and informed them that she had received an "over the top, threatening" message from Hill. (Id. ¶ 5.) Roe said she provided the message to Hill's counsel and was retaining her own counsel due to the message. (Id.)

A few days later, Roe received a message from Hill's friend, Olivia Finestead ("Finestead"). (Id., Ex. B.) Although half of the message in the record is obstructed, according to Bauer, the message reflects Finestead reaching out to Roe on behalf of Hill to ask Roe to speak with a reporter about Hill's prior relationship with another baseball player. (Id.; Mot. at 6.) According to Bauer, Finestead said in the obstructed portion of the message that Hill "can't be tied to Trevor with you" and that "we have just have to protect ourselves against Trevor's attorneys and play the game." (Id.)

**C.    Derek Dawson**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-cv-00868-JVS (ADS)                    Date   August 4, 2023

Title   Trevor Bauer v. Lindsey C. Hill et al

    Derek Dawson is in a romantic relationship with Hill's former close friend and mentor, Sophie De Silva; Hill also considered Dawson a friend.  (Hill Decl. ¶¶ 8, 11.)  At and around the time of the alleged sexual assault, Hill sent several texts to Dawson about her encounters with Bauer, including that she "already ha[s] [her] hooks in," that she "can get in [Bauer's] head," and that she would "find pine tar" at Bauer's house.  (Peyer Decl., Ex. D.)  In the summer of 2021, after Hill's encounters with Bauer, Dawson gave Bauer and an online tabloid publication information about Hill, including the texts she sent around the time of the alleged sexual assault and personal details about Hill's prior sexual history with another professional baseball player.  (Hill Decl. ¶ 9.)  Hill was upset that Dawson divulged her personal information and was also upset that De Silva continued to side with Dawson.  (Id. ¶ 11.)

    In early 2023, Hill watched a Pasadena Police Department interview with Dawson that had been produced in discovery in this case.  (Id. ¶ 12.)  In the interview, Dawson relayed similar information to the police that he had given to Bauer and the tabloid, namely personal information about Hill's sexual history.  (Id.)  Hill was intoxicated when she watched the video and continued drinking throughout the day until she posted two comments on one of De Silvia's Instagram posts, specifically a Father's Day post from nine months prior.  (Peyser Decl., Ex. C.)  The comments read:

> Sure would be a shame for me to hand over to you the police footage of his interview I just received where he is defending violent abuse against women. Telling them not to believe me. Go ahead, ask him the real truth. Pretty pathetic you want to raise children with somebody like that. He cant run from the truth of what he did to me and my family anymore.
>
> before it goes public with court and Bauers side uses it publicly in their defense, I highly advise you have Derek tell you the truth about what he did before you see the video.

(Id.)

    Bauer produced this Instagram exchange to Hill's counsel and asked in a Request for Admission that Hill authenticate it.  (Id., Ex. J.)  Hill's counsel objected that such information was irrelevant and not proportional to the needs of the case.  (Id.)  Following

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

a meet and confer about the objection, Hill's counsel said they could provide a reply but have not yet done so. (Id. ¶ 8.) On April 14, 2023, Bauer subpoenaed Dawson for documents and a deposition, but Dawson has not responded. (Id. ¶ 7.)

      D.     Jane Doe

Finally, Jane Doe is an acquaintance of Hill's. In 2021, Doe contacted Hill through Instagram and the two sent messages through the app and spoke by phone a few times about personal matters, including about Doe's sex life. (Hill Decl. ¶ 2.) On April 15, 2023, Doe sent a text message to Hill about Mike Clevinger, Finestead's ex-boyfriend and father of her child. (Id. ¶ 3.) Clevinger is a professional baseball player whom Finestead accused of domestic violence and child abuse. (Id.) Doe's text message was critical of Finestead and her allegations that Clevinger had serially cheated on one of his ex-girlfriends. (Id. ¶ 4.) Doe criticized Finestead for accusing Clevinger of this behavior, and Doe suggested that a court would grant Clevinger's request for a restraining order against Finestead. (Id.)

In response to Doe's message, Hill sent the following text:

> Wait what is that [two laughing-crying emojis]
> Oh you're saying that to me?
> Hahahaha
> No clue why you would be such a blunt cunt with something that has nothing to do with you and you have no idea about but to each their own [Doe] glad to see you side with the side of the abuser
> Don't forget I have all the screenshots of you fucking married men
> Go to hell

(Peyser Decl., Ex. F.)

Doe reported the above message to Bauer's counsel, saying she felt that Hill was trying to get Doe to make false statements. (Id. ¶ 4.) One month after sending the above message, Hill subpoenaed Doe, seeking documents about Bauer "choking or hitting" Doe and any "accusations by [Doe] of physical violence, abuse, sexual battery, sexual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

abuse, battery, assault, and/or rape made against Trevor Bauer." (Dkt. No. 114–2.)

    *E.*    *Other Witnesses*

Bauer also alleges Hill may have influenced or threatened at least four other witnesses to not respond to subpoenas. (Mot. at 8.) Hill's cousin, Kyle Erickson, stated, "I am not in possession of any documents, information, or objects to present in response to the Document Subpoena at this time." (Peyser Decl., Ex. G.) Hill's friend, Justin Vaesau stated, "I don't have any documents associated with Lindsey Hill that date back to that time anymore. My phone settings is set to delete messages after a year because of how fast my storage fills. I know that during the time of the investigation, people from the MLB had a[c]quired what I had, as far as texts between me and Lindsey Hill." (Id., Ex. H, at 1.) Finestead first stated, on March 29, 2023, that "I have no documents relating to your subpoena to be produced." (Id., Ex. I.) After Bauer's counsel emailed Finestead that her deposition was postponed, Finestead replied, "I have nothing for you. I am not meeting with you wasting my time I have nothing at all for your rapist client." (Id.) Hill's AA sponsor, Lisa Decker, has ignored the subpoena, and is in violation of a Court order issued by Magistrate Judge Spaeth requiring her to have produced documents by June 7, 2023. Dkt. 106. At this point, any participation on Hill's part is speculation.

## II. Legal Standard

The Court may impose sanctions under its inherent authority for "willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)) (cleaned up). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id. at 994. "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that [a party's] conduct 'constituted or was tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (citation omitted).

## III. Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

      *A.      Witness Tampering*

    Bauer contends that Hill's communications with Tortorigi, Dawson, Doe, and Roe amounted to witness tampering under the standard outlined in 18 U.S.C. § 1512(b). (Mot. at 12.) Section 1512(b) defines witness tampering as one who "knowingly uses intimidation, threats, or corruptly persuades another person, or attempts to do so . . . with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to" withhold testimony or documents, evade legal proceedings, or be absent from an official proceeding. 18 U.S.C. § 1512(b). Although there is no private cause of action for an alleged violation of § 1512, see Rowland v. Prudential Fin., Inc., 362 Fed. App'x 596, 596–97 (9th Cir. 2010), conduct falling within the statute's ambit may nonetheless be sanctionable pursuant to the Court's inherent power. See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 602 (9th Cir. 1991); Equate Media, Inc. v. Suthar, No. 21-314, 2022 WL 2093851, at *2 n.1 (C.D. Cal. Apr. 29, 2022) (noting that witness tampering is sanctionable conduct).

    The Ninth Circuit has not directly addressed which standard should apply to terminating sanctions in civil cases based on witness tampering. District courts are split on the issue, with some applying a preponderance standard, see OmniGen Research v. Yongqiang Wang, 321 F.R.D. 367, 372 (D. Or. 2017), while others apply a clear and convincing standard, see Hynix Semiconductor inc. v. Rambus Inc., 897 F. Supp. 2d 939, 978 (N.D. Cal. 2012). The Court will apply a clear and convincing standard, in accordance with the evidentiary burden required in other civil sanctions contexts, such as civil contempt. See Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth., 564 F.3d 1115, 1123 (9th Cir. 2009) (applying a clear and convincing standard to civil contempt motion); Onion Boy v. Mike's Bulk Dist., No. 11-1118 (JVS), 2021 U.S. Dist. LEXIS 252490, at *4–5 (C.D. Cal. Nov. 3, 2021) (same).

    To meet the clear and convincing standard, the moving party must "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal quotation marks and citation omitted). Sanctions "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the [non-moving party's] conduct." Taggart v. Lorenzen, 139 S. Ct. 1795, 1801–02 (2019) (cleaned up).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

    Bauer argues that Hill's conduct constitutes witness tampering because she knowingly engaged in conduct she knew was wrong, something she herself admits. (Mot. at 13; Reply at 3–4.)  This contention combines two separate requirements in the statute, "knowingly" and "with intent to," both of which must be satisfied.  Bauer asserts that "[i]ntent under [§] 1512 is satisfied by 'consciousness of wrongdoing.'"  (Reply at 3.)  However, the case to which Bauer cites for this proposition, United States v. Doss, 630 F.3d 1181,1188 (9th Cir. 2011), discusses a different requirement for witness tampering: "knowingly."  In addition to the statute's mandate that the conduct be done "knowingly," or with "'conscious[ness] of wrongdoing,'" § 1512 also requires the individual engage in such conduct "with intent to" tamper with witnesses.  See 18 U.S.C. § 1512(b); Doss, 630 F.3d at 1188–89 (quoting Arthur Anderson LLP v. United States, 544 U.S. 696, 705–06 (2005)).  When used in a criminal statute, "intent," of course, requires purpose to bring about the desired result—in this case, purpose of preventing witnesses from testifying or turning over documents.  Put differently, "to say that a person acted 'intentionally' means that he or she acted with a conscious objective to cause a result or to engage in the conduct described." 21 Am. Jur. 2d Crim. Law § 126. With the exception of Roe, the evidence does not reflect that Hill possessed the requisite intent to rise to the level of witness tampering.  See Hernandez v. Franco Am. Baking Co., No. 20-628, 2021 WL 6064008, at *3 (D. Nev. Dec. 21, 2021).

    Beginning with Doe, the parties appear to agree that Hill's messages to Doe pertained to an entirely different matter—a potential restraining order between Finestead (Hill's friend) and Clevinger (Finestead's ex-boyfriend).  (Mot. at 7, 14; Opp'n at 4.)  Accordingly, Hill almost certainly did not intend for her messages to persuade Doe to do, or not do, anything related to the present case.  Even still, Bauer argues that Hill's threats to Doe rose to the level of witness tampering because, "[a]t the time Hill made the threat, Hill knew Doe was a potential witness for Hill." (Mot. at 15.)  Indeed, Hill subpoenaed Doe one month later for documents that Bauer sexually assaulted Doe.  (Id.)  Bauer also asserts that Doe reported Hill's messages to Bauer's counsel, concerned that Hill was pressuring her to say things that were not true.  (Id.)  While these contentions certainly provide support for Bauer's position, they do not provide clear and convincing evidence of witness tampering.  While Hill knew Doe could be a potential witness in this case (see Peyser Decl., Ex. L), the testimony Doe had previously given to the Pasadena Police Department, which presumably would be the same testimony she would give before this Court, was helpful to Hill and hurtful to Bauer.  Specifically, Doe told police ▮▮▮▮▮▮

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-cv-00868-JVS (ADS)                                Date   August 4, 2023

Title   Trevor Bauer v. Lindsey C. Hill et al

███████████████████████████████████████████ Doe further told police that █████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████ This testimony would tend to confirm Hill's account of events, and thus Hill had no reason to convince Doe to not testify or change her testimony. Furthermore, the context Hill provides in her declaration sufficiently tips the scale such that "there is a fair ground of doubt as to the wrongfulness of [Hill's] conduct." Taggart, 139 S. Ct. at 1801–02. Accordingly, the Court concludes that Hill did not tamper with Doe.

Similarly, the Court finds that Bauer has not shown by clear and convincing evidence that Hill intended to prevent Dawson from testifying. First and foremost, Hill's message does not threaten to publicly release the Pasadena Police Department interview footage. Rather, Hill's message states "it would be a shame for me [Hill] to hand over to you [Da Silvia]" the police footage and that Bauer, not Hill, would make the video public by using it as evidence. (Peyser Decl., Ex. C.) Thus, there is no threat to reveal private information publicly. Second, Hill's Instagram comment does not appear to be directed at Dawson's testimony in this case. Rather, it pertained to Hill's disappointment with Da Silvia's continued support of Dawson. Dawson had disclosed personal information about Hill to a tabloid and Bauer's counsel, the former publishing it in an unflattering article about Hill. (Hill Decl. ¶ 9, Exs. 1–2.) Hill's strong feelings on this issue resurfaced when she reviewed footage of Dawson's interview with the Pasadena Police Department in which Dawson relayed the same personal information to the police. (Id. ¶ 12.) Finally, Bauer contends that because Dawson has not yet responded to Bauer's subpoena for documents, Hill's message must have frightened Dawson enough that he is ignoring the subpoena. However, that contention is speculative and not supported by evidence. As noted above, Hill did not intend for her message to cause Dawson to testify in a certain way, or not testify at all. See 18 U.S.C. § 1512(b) (requiring intent to interfere with a witness). Accordingly, the Court finds that Hill did not tamper with Dawson through Da Silvia.

Hill's communications with Roe and Tortorigi are more troubling. Regarding Tortorigi, Hill's message tells Tortorigi how to respond to Bauer's subpoena: by "saying I have nothing related to this that I have in my possession." (Peyser Decl., Ex. A; Tortorigi Depo. at 92:10–13.) Bauer contends this is a clear direction to withhold evidence because Hill knew Bauer had responsive documents and told Tortorigi to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

"falsely tell Bauer's counsel he did not have them." (Mot. at 12–13.) Hill responds that she did not intend for Tortorigi to withhold any documents; her message was intended to communicate her belief that Tortorigi had already turned over all responsive documents in his possession and that he did not have to do anything else to comply with the subpoena. (Hill Decl. ¶¶ 30–32.) Although Hill certainly should not have told Tortorigi how to respond to the subpoena, well-intentioned or otherwise, the evidence before the Court tends to support Hill's explanation. Tortorigi did, in fact, turn over all communications with Hill to the Pasadena Police Department during their initial investigation in 2021. (See Kaplan Decl. ¶ 8.)

Furthermore, Tortorigi testified that he attempted in good faith to comply with the subpoena, and did not withhold any documents at Hill's behest or otherwise. He even went as far as to have Apple technicians recover two-year-old text messages from his phone to which he no longer had access. (Tortorigi Depo Tr. 74:13–20.) Although Tortorigi initially informed Peyser he did not have any responsive documents, he testified that Hill's direction did not have any influence on his response to Peyser. (Id. at 74:2–13.) His belief that her statement bore no relevance to the request for documents tends to confirm her statement was not objectively received as an instruction, but rather a point of clarity. Tortorigi did not have any text messages on his phone from the time period he understood the subpoena to cover, and went to the Apple Store to get his data recovered. (Id. at 74:13–20.) Tortorigi also set up a call with Peyser because he did not understand what the subpoena requested and needed guidance. (Id. at 75:12–76:7.) After speaking with Peyser on the phone, Tortorigi emailed her the following week again stating he still did not have any responsive documents. (Id. at 76:8–12.) Tortorigi had not yet turned over the above Instagram message because, at the time, he did not believe it to be covered by the subpoena. (Id. at 83:3–9.) He interpreted the subpoena to seek only text messages, an impression which he believed his conversation with Peyser to confirm. (Id. at 79:24–80:8.)

The Court finds no reason to doubt the veracity of Tortorigi's or Hill's testimony. As such, his explanation shows that no documents were actually withheld. Furthermore, as noted above, Hill's direction can plausibly be read according to Hill's explanation—that she believed Tortorigi had already handed over all responsive documents and thus had no further obligations. (Hill Decl. ¶¶ 30–32.) Bauer contends that Tortorigi undisputedly possessed responsive documents and "Tortorigi testified that he was 'shocked' by Hill's instructions," which he understood as Hill telling him "to say

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| Title | Trevor Bauer v. Lindsey C. Hill et al |

[he] didn't have anything." (Reply at 5 (quoting Tortorigi Depo. at 67:11–13; 92:10–13).) Therefore, Bauer argues, Hill's message cannot be read as anything other than an explicit instruction to withhold responsive documents. (Id.) While Tortorigi indeed testified that he was shocked by Hill's message, Bauer's contention misstates Tortorigi's meaning by taking it out of context. When initially asked why he was "shocked" when he received Hill's message, Tortorigi explained that he "didn't think that [he] would be sitting here today doing this" because he had not had "any contact as much about it with, you know, her side." (Tortorigi Depo. at 65:7–17.) Tortorigi further explained this statement by saying he did not know what was "going on," he had "never been subpoenaed in [his] life," and he believed he did not have any responsive documents. (Id. at 68:11–13; 76:8–20.) He further stated he was "shocked" when he received the subpoena, describing the experience as "embarrassing" because he was served with it at work. (Id. at 70:8–9.) Therefore, Tortorigi's "shock" at Hill's message is more accurately understood within his overall disbelief that he was again being involved in the case and that he was receiving a subpoena at all. Finally, although Hill stated she would delete the exchange, it appears she did not do so because Tortorigi was still able to access it in order to hand it over to Bauer.[3] Taken together, Bauer has not met his burden to show witness tampering by clear and convincing evidence. Nevertheless, even without the intent to persuade Tortorigi to withhold documents, Hill's communication with a witness regarding how to respond to a subpoena was undoubtedly improper, which she herself admits. (Id. ¶ 31.) The Court will discuss the appropriate sanction proportionate to this conduct below.

Finally, with regard to Roe, Hill's communications certainly cross lines of civility; however, they do not rise to the level of witness tampering. Bauer contends that Hill's text messages in essence threatened to "burn" Roe "to the fucking ground," including by disclosing personal information about Roe's alleged drug abuse and recruiting others to "testify against [Roe's] character. (Peyser Decl., Ex. B.) Bauer argues these messages "can only be understood as Hill telling roe not to participate in this matter." (Mot. at 14.) In response, Hill again asserts she did not intend to threaten Roe or dissuade her from

---

[3] At oral argument, Bauer suggested that Hill may have deleted the message from her own inbox even though Tortorigi still had access to the Instagram message because Hill had not blocked Tortorigi or removed him as a follower. However, it is well-known that when one Instagram user deletes a message in a direct message thread, the message is deleted for all members of the conversation. Thus, because Tortorigi still had access to the message indicates that Hill did not, in fact, delete the message.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

providing testimony. (Hill Decl. ¶¶ 22–23.) According to Hill, her message was an emotional and drunken response to Hill's perception that Roe was attempting to involve herself in Hill's personal life against Hill's wishes. (Id.) Hill attests that, when she sent the message, she only wanted to express her anger at Roe's uninvited involvement and was not thinking about testimony Roe may or may not provide in this lawsuit. (Id.)

Hill's messages were ill-advised and highly inappropriate, particularly in the context of ongoing litigation—litigation with which Roe is at least partially connected. Hill's comment that she will have "every past resident testify against [Roe's] character" and will "burn [Roe] to the fucking ground" can hardly be interpreted as anything other a threat to expose personal information and rally people to testify against Roe's character. Hill's explanations do not present a plausible alternative reading. She attests that her messages were "wrong and hurtful," although she "was not trying to influence Roe to provide certain testimony or information." However, it is difficult to interpret the statement that Hill didn't "want [Roe] anywhere near" this case, and if Roe continued to be involved in it, Hill would muster witnesses against Roe and "expose" sensitive and personal information about Roe as anything other than Hill's desire for Roe to cease any and all participation in the case. (Peyser Decl., Ex. B.) Although no evidence or testimony was lost because of Hill's message, the Court nonetheless concludes that Hill's messages to Roe constitutes sanctionable conduct. See InjuryLoans.com, LLC v. Buenrostro, No. 18-1926, 2020 WL 9160827, at *2 (D. Nev. Sept. 28, 2020) ("It is beyond doubt that witness intimidation satisfies the bad faith element of a motion for sanctions.") (citing 18 U.S.C. § 1512(b))).

  B. *Appropriate Sanctions*

Even absent a finding that Hill intentionally engaged in witness tampering, the Court finds that Hill's communications, if permitted to continue unchecked, could interfere with the full and fair determination of this case. Although Bauer contends that terminating sanctions is the only appropriate remedy for Hill's misconduct, the Court will not exercise its inherent power to dismiss Hill's counterclaims based on the conduct presented.

Terminating sanctions is a "harsh penalty" and "should only be imposed in extreme circumstances." Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992) (citing Hamilton Copper & Steel Corp. v. Primary Steel, Inc., 898 F.2d 1428, 1429 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-cv-00868-JVS (ADS)                                    Date   August 4, 2023

Title   Trevor Bauer v. Lindsey C. Hill et al

1990); Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)). It is appropriate only when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings ... and engaged in conduct utterly inconsistent with the orderly administration of justice." Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (quotation omitted). Due process concerns also mandate a connection between a party's "misconduct and the matters in controversy such that the transgression 'threatens to interfere with the rightful decision of the case.'" Anheuser-Busch, Inc. v. Nat. Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (internal citation and quotation marks omitted).

When contemplating whether to impose terminating sanctions, the Court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). "[T]he first and second factors ordinarily will support the sanction while the fourth factor ordinarily will not. The third and fifth factors are generally determinative." Johnson v. Goldsmith, 542 F. App'x 607, 608 (9th Cir. 2013). "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" Conn. Gen. Life Ins. Co., 482 F.3d at 1097.

Regarding the third factor, the Court finds that Bauer has suffered little, if any, prejudice due to Hill's communications. As discussed above, there is no objective indication that any of Hill's communications actually resulted in evidence or testimony being withheld. Bauer points to some instances of witness either not responding to subpoenas (Dawson and Decker) or responding that they do not have any responsive documents (Erickson, Vaesau, and Finestead). Regarding Dawson, the Court concludes Hill's message to De Silvia, while uncouth and inappropriate, did not rise to the level of sanctionable conduct. Hill's message did not threaten Dawson directly, nor did it threaten to publicly release the Pasadena Police Department interview footage. Dawson's failure to respond to Bauer's subpoena cannot therefore be reasonably attributed to Hill's contact with Dawson's partner. As to Decker, Erickson, Vaesau, and Feinstein, Bauer does not present any evidence that Hill contacted them at all, much less that the contents of such communications constituted threats or intimidation. Accordingly, they cannot serve as the basis of a sanctions motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

    Additionally, there is a multitude of less drastic sanctions available. Because this is the first time the Hill's improper communications with witnesses has been brought before this Court, the Court is unwilling to exercise its inherent authority to issue case-terminating sanctions at this point. Instead, the Court will tailor the remedy to the problem: Hill's improper communications with witnesses. Bauer contends that dismissing Hill's counterclaims is the only sanction that can remedy the situation, directing the Court to Torres v. Wells Fargo Bank, No. 17-9305, 2019 WL 8012686 (C.D. Cal. Dec. 17, 2019). There, the court granted terminating sanctions where the plaintiff threatened to take steps to have a witness fired from his job, apparently in retaliation for the witness's failure to provide favorable testimony or sign a declaration that the witness believed contained factual inaccuracies. Id. at *3–4. While the court in that case no doubt properly exercised its discretion in handing down such severe sanctions, and there are similarities between the statements in both cases, the Court declines to exercise its authority to dismiss Hill's counterclaims. As noted above, this is the first instance the issue as arisen before this Court and the Court will provide Hill an opportunity to correct her conduct.

    Accordingly, the Court hereby **ORDERS** Hill to refrain from communicating in any manner with any witness in this case outside the presence of her attorney. This order applies to all witnesses, including those with whom Hill is friends and those who she does not know personally. Excluded from this prohibition are Hill's father and Hill's roommate, Lisa Decker—Hill may speak to her father and Decker, but is prohibited from speaking with them about this case outside the presence of her counsel. The Court admonishes Hill to take great care with her words in the future. Should this issue arise, the Court will consider more severe sanctions against Hill, including terminating sanctions. The Court will additionally permit Bauer at trial to inquire into Hill's conduct with respect to Dawson, Tortorigi, Doe, and Roe. It evidences potential bias and potential admission of wrongdoing on Hill's part. Provided such examination is limited in time and scope, it is more probative than prejudicial. See Fed. R. Evid. 403.

## IV. CONCLUSION

    For the forgoing reasons, the Court **GRANTS in part** Bauer's motion for sanctions. Hill is hereby **ORDERED** to refrain from any contact with any party or witness in this case without her attorney present in accordance with the directions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-cv-00868-JVS (ADS)　　　　　Date  August 4, 2023

Title  Trevor Bauer v. Lindsey C. Hill et al

outlined in this Order.  Any communication between Hill and a party or witness in this case must occur in the presence of Hill's counsel.  Hill may communicate with her father and Decker without her attorney present, but may not discuss the case with them.

**　　　　　　　　　IT IS SO ORDERED.**