Shawn Holley (Cal. Bar No. 136811)
Suann C. MacIsaac (Cal Bar. 205659)
KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 Wilshire Boulevard., Suite 750
Los Angeles, CA 90025
Tel: (310) 566-9800
Fax: (310) 566-9850
sholley@khiks.com
smacisaac@khiks.com

Blair G. Brown (admitted *pro hac vice*)
Jon R. Fetterolf (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 882-8106
bbrown@zuckerman.com
jfetterolf@zuckerman.com

Nell Z. Peyser (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Ave., 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
npeyser@zuckerman.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

TREVOR BAUER,

        Plaintiff,

    v.

LINDSEY C. HILL and NIRANJAN FRED THIAGARAJAH,

        Defendants.

Case No. 8:22-cv-00868-JVS-ADS
Assigned for all purposes to the Hon. James V. Selna
Referred to: Magistrate Judge Autumn D. Spaeth

**DECLARATION OF BLAIR G. BROWN IN SUPPORT OF BAUER'S MOTION TO COMPEL FRCP RULE 35 MENTAL EXAMINATION OF HILL**

Date:  October 11, 2023
Time:  10:00 a.m.
Magistrate Judge: Autumn D. Spaeth
Courtroom:  6B
Action Filed: April 25, 2022

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1

2      I, BLAIR G. BROWN, declare and state as follows:

3      1.     I am an attorney licensed to practice in the District of Columbia, the

4  States of Maryland and New York, and the Commonwealth of Virginia and have been

5  admitted to practice *pro hac vice* in this action. I am a partner of the law firm

6  Zuckerman Spaeder LLP, and counsel of record for Plaintiff/Counterclaim

7  Defendant Trevor Bauer in the above-captioned action. I have personal knowledge

8  of the matters stated in this declaration, and I could and would testify competently

9  about them if called upon to do so.

10     2.     Attached as **Exhibit A** is a true and correct copy of email

11 correspondence between me and Hill's counsel regarding the parties' meet and confer

12 efforts to date.

13     3.     Attached as **Exhibit B** is a true and correct copy of Hill's Amended

14 Initial Disclosures, dated August 28, 2023. I have redacted the names of the Does in

15 this document in accordance with the Court's prior order sealing their names. *See*

16 Dkt No. 118.

17     4.     Attached as **Exhibit C** is a true and correct copy of Hill's Supplemental

18 Response to Plaintiff/Counterclaim Defendant Trevor Bauer's First Set of

19 Interrogatories, Interrogatory No. 21 and 24, dated August 28, 2023.

20     5.     Attached as **Exhibit D** is a true and correct copy of the Curriculum Vitae

21 of Janine S. Shelby, Ph.D.

22     6.     Attached as **Exhibit E** is a true and correct copy of Hill's Initial

23 Disclosures, dated August 22, 2022. I have redacted the names of the Does in this

24 document in accordance with the Court's prior order sealing their names. *See* Dkt

25 No. 118.

26     7.     Attached as **Exhibit F** is a true and correct copy of Hill's Responses to

27 Plaintiff/Counterclaim Defendant Trevor Bauer's First Set of Interrogatories, dated

28 April 13, 2023.

8.      Attached as **Exhibit G** is a true and correct copy of the transcript from the May 24, 2023 hearing before this Court on Hill's Motion for a Protective Order.

9.      Attached as **Exhibit H** is a true and correct copy of an excerpt of the August 29, 2023 deposition transcript of Hill.

10.     Bauer's counsel, myself included, learned on or around March of 2023 that Hill had lost her sobriety because we were alerted to a video that had been distributed on the Internet and social media of Hill appearing intoxicated at a concert.

Executed this 1st day of September, 2023, in Washington, D.C.

*/s/ Blair G. Brown*

Blair G. Brown

EXHIBIT A

**Peyser, Nell Z**

| | |
|---|---|
| **From:** | Michelle R. Prescott <mprescott@WZLLP.COM> |
| **Sent:** | Wednesday, August 30, 2023 6:30 PM |
| **To:** | Brown, Blair G.; Eileen Spadoni; Jesse Kaplan; Joshua A. Nuzzo |
| **Cc:** | Fetterolf, Jon R.; Peyser, Nell Z; Kate Mangels; Simmerson, Kelsey; Ventresca, Ivano |
| **Subject:** | RE: Bauer v. Hill Meet and Confer |

EXTERNAL

Blair,

Thank you for the further explanation of the issues to be discussed.  I am not available today or tomorrow  to discuss this issue on such short notice.  Pursuant to CA CD LR 37-1: "Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party must confer with counsel for the moving party **within ten days after the moving party serves a letter requesting such conference.** The moving party's letter must identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought" (emphasis added).

In the interest of efficiency, we feel it appropriate to table the discussion regarding any potential motion to pierce the attorney-client privilege until we can discuss both this issue and your potential motion for an independent medical examination in a single meet and confer call.

I do not intend to wait a full ten days to meet and confer, but we cannot make time before next week due to other previously scheduled depositions.  We will need time to review and consider you're the issues raised and have insufficient time to do so before tomorrow morning.

Michelle R. Prescott
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email mprescott@wzllp.com



Follow us on:

Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

**From:** Brown, Blair G. <bbrown@zuckerman.com>
**Sent:** Wednesday, August 30, 2023 2:51 PM
**To:** Eileen Spadoni <ESpadoni@WZLLP.COM>; Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott

<mprescott@WZLLP.COM>; Joshua A. Nuzzo <JNuzzo@wzllp.com>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels <KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano <iventresca@zuckerman.com>
**Subject:** RE: Bauer v. Hill Meet and Confer

**\*\*CAUTION: This email originated from outside of the organization.\*\***

Counsel for Ms. Hill:

     In our brief call this morning in response to my request for a meet and confer regarding the two issues I identified, Mr. Kaplan took the position that our request for a meet and confer was not specific enough. I disagree, but this email provides further details.

     First, regarding a motion for an independent psychiatric exam under Fed. R. Civ. P. 35, there is a substantial basis for doing so because Ms. Hill has placed her mental condition at issue.  Ms. Hill's supplemental response to Mr. Bauer's Interrogatory No. 21, served August 28, 2023,  lists an extensive set of physical and mental conditions and symptoms "which became prominent after the batteries/sexual batteries and increased over time [and] continue through the present." Ms. Hill also apparently claims for the first time in that supplemental response and in her amended initial disclosures served the same day, that her recent relapse into alcohol abuse was caused by Mr. Bauer's actions, despite prior assurances to Mr. Bauer's counsel and a representation to the court that Ms. Hill was making no such claim (Motion Hearing Tr. 14, May 24, 2023).

     Second, with respect to the attorney-client privilege issues, counsel for Mr. Bauer and counsel for both Ms. Hill and Bryan Freedman have conferred several times about written communications between Ms. Hill and Mr. Freedman regarding the May 16, 2021, video of the smiling Ms. Hill, with no apparent injuries to her face, lying in bed with Mr. Bauer shortly after the alleged violent assault. We have taken the position in prior correspondence (attached) and discussions that such communications are subject to discovery under the crime fraud exception because this important exculpatory evidence was concealed from the court in the DVRO proceeding in violation of California Penal Code 135 (criminal concealment of evidence) and in order to perpetrate a fraud. Counsel for Mr. Bauer distilled the issue of  Mr. Freedman's production of those communications by a subpoena dated August 4, 2023, to which Mr. Freedman has objected on grounds that include the attorney-client privilege.  In Ms. Hill's deposition on August 29, 2023, she declined to answer multiple questions about communications with counsel (whether oral or written) about the May 16, 2021 video on the ground of attorney-client privilege. Our position is that the crime fraud exception pierces the privilege, and therefore Ms. Hill should be required to answer the questions posed to her about those communications and Mr. Freedman should be compelled to produce documents regarding those communications.  Evidence of a party's efforts to conceal evidence or

otherwise corrupt the judicial process is relevant and admissible, as the court ruled with respect to Ms. Hill's tampering with witnesses in this case.

I am available any time Thursday August 30, 2023, for a meet and confer. I suggest 10 am PDT / 1 pm EDT.  Please advise regarding your availability and any other proposal regarding a time.

- Blair



**Blair G. Brown**
**Zuckerman Spaeder LLP**
bbrown@zuckerman.com

1800 M STREET NW, SUITE 1000 •  WASHINGTON,  DC 20036-5807
202.778.1829 direct • 202.320.8369 mobile • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful.  If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

**From:** Eileen Spadoni <ESpadoni@WZLLP.COM>
**Sent:** Wednesday, August 30, 2023 1:57 PM
**To:** Brown, Blair G. <bbrown@zuckerman.com>; Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott <mprescott@WZLLP.COM>; Joshua A. Nuzzo <JNuzzo@wzllp.com>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels <KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano <iventresca@zuckerman.com>
**Subject:** RE: Bauer v. Hill Meet and Confer

**EXTERNAL**

Can you folks please include Josh Nuzzo on all future communications? Thank you.

Here is bridge line for your convenience:

866 528-2256
Access code 6461427#

Eileen Spadoni
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email espadoni@wzllp.com



Follow us on: f t in

Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

---

**From:** Brown, Blair G. <bbrown@zuckerman.com>
**Sent:** Wednesday, August 30, 2023 7:39 AM
**To:** Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott <mprescott@WZLLP.COM>; Eileen Spadoni <ESpadoni@WZLLP.COM>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels <KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano <iventresca@zuckerman.com>
**Subject:** Bauer v. Hill Meet and Confer

---

**\*\*CAUTION: This email originated from outside of the organization.\*\***

---

Jesse, Michelle, and Eileen:

Please advise regarding your availability today for a meet and confer regarding (1) a motion for an IME of Lindsey and (2) motion to compel Lindsey's communications with counsel regarding 5/16 video under crime fraud exception (although in my opinion, we have satisfied any meet and confer obligation on that issue already). I propose 11 am PDT but have later availability.

- Blair



**Blair G. Brown**
**Zuckerman Spaeder LLP**
bbrown@zuckerman.com

1800 M STREET NW, SUITE 1000 • WASHINGTON, DC 20036-5807
202.778.1829 direct • 202.320.8369 mobile • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful. If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

EXHIBIT B

Christopher P. Wesierski [Bar No. 086736]
  *cwesierski@wzllp.com*
Michelle R. Prescott [Bar No. 262638]
  *mprescott@wzllp.com*
Eileen Spadoni [Bar No. 133259]
  *espadoni@wzllp.com*
Brett A. Smith [Bar No. 322707]
  *bsmith@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Bryan J. Freedman, Esq. (SBN: 151990)
  *bfreedman@ftllp.com*
Jesse A. Kaplan, Esq. (SBN: 255059)
  *jkaplan@ftllp.com*
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile:  (310) 201-0045

Attorneys for Defendant/Cross-Complainant, LINDSEY C. HILL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>            Plaintiff,<br><br>     vs.<br><br>LINDSEY C HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>            Defendant. | Case No. 8:22-cv-00868 JVS(ADSx)<br><br>**DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES**<br><br>Trial Date:          None Set |

     Pursuant to <u>Federal Rule of Civil Procedure</u> 26 and <u>Local Rule</u> 26-1, Defendant

Lindsey C. Hill ("Hill") hereby issues the following amended Initial Disclosures,

based on information presently available.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

## PRELIMINARY STATEMENT

1.      By identifying persons in this document, Defendant does not admit or deny the relevancy or admissibility of their testimony, or their availability or competency as witnesses.

2.      By identifying documents and tangible things in this document, Defendants do not admit or deny the relevancy or admissibility of any document or thing.

3.      Defendant reserves the right, if appropriate, to make objections to the production of any documents or tangible things or the answering of interrogatories regarding any matters discussed herein and to move for a Protective Order pursuant to Rule 26, F.R.Civ.P., before producing or allowing any discovery of the matters stated herein.

4.      In making these disclosures, Defendant does not waive the attorney-client privilege, the attorney work-product doctrine, or any other available privilege, doctrine, or immunity.

5.      These disclosures are based upon the factual information available as of the date hereof.  Discovery is only just beginning and factual investigation is continuing at this time.  Defendants reserve the right to amend, supplement or otherwise modify these disclosures in accordance with applicable Rules and any Orders entered by this Court.

## I.    WITNESSES LIKELY TO HAVE DISCOVERABLE INFORMATION

Based on the information presently available, and subject to further investigation of the dispute herein, Defendant identifies the following people likely to have discoverable information that Defendant may use to support its defenses:

1.      Trevor Bauer, Plaintiff/Counterdefendant, regarding the circumstances surrounding the allegations contained in the Counterclaims of Defendant/Counterclaimant Lindsey Hill;

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1       2.    Lindsey   C.   Hill,   Defendant/Counterclaimant   regarding   the

2   circumstances   surrounding   the   allegations   contained   in   the   Complaint   and

3   Counterclaims of Defendant/Counterclaimant Lindsey Hill;

4       3.  Stephen Chanley, RN. of Alvarado Hospital Medical Center, 6655 Alvarado

5   Road, San Diego, CA 92120-5208 . Has information regarding Ms. Hill's May 17,

6   2021, Emergency Room visit.

7       4.  Dr. Joshua N. Doros, of Alvarado Hospital Medical Center, 6655 Alvarado

8   Road, San Diego, CA 92120-5208 . Has information regarding Ms. Hill's May 17,

9   2021, Emergency Room visit.

10       5.    Brigitte B. Korkuch, PA of Alvarado Hospital Medical Center, 6655

11   Alvarado Road, San Diego, CA 92120-5208 . Has information regarding Ms. Hill's

12   May 17, 2021, Emergency Room visit.

13       6.    Asal Khosroabadi, LCSW (Social Worker) of Alvarado Hospital

14   Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208 . Has information

15   regarding Ms. Hill's May 18, 2021, Emergency Room visit.

16       7.    Officer Sullivan of the San Diego Police Department, 1401 Broadway,

17   San Diego, CA 92101.   Has information regarding Ms. Hill's May 18, 2021,

18   Emergency Room interview.

19       8.    Detective Giddens of the San Diego Police Department, 1401 Broadway,

20   San Diego, CA 92101.   Has information regarding Ms. Hill's May 18, 2021,

21   Emergency Room interview and escort to a SART certified facility for examination.

22       9.    Officer Morales of the San Diego Police Department, 1401 Broadway,

23   San Diego, CA 92101.   Has information regarding Ms. Hill's May 18, 2021,

24   Emergency Room interview and escort to a SART certified facility for examination.

25       10.    Dr. Harshawn Malhi of Alvarado Hospital Medical Center, 6655

26   Alvarado Road, San Diego, CA 92120-5208, regarding May 17, 2021 CT imaging of

27   Ms. Hill.

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1935132-1 MER-5137       DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES

11.    Kelly Valencia, RN of Palomar Health Forensic Health Services – Poway, 15615 Pomerado Road, Poway, CA 92064. Has information regarding the SART examination of Ms. Hill.

12.    Dr. Varinthrej Pitis of Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130.  Has information regarding Ms. Hill's follow up medical care on June 3, 2021.

13.    Dr. Erica Moses, San Diego Center for Trauma Recovery, 1761 Hotel Circle S, Ste. 315, San Diego, CA 92108. Has information regarding Ms. Hill's therapy following sexual assault.

14.    Investigator Russell Greene, alleged investigator for Shawn Holley of Kinsella Weitzman Iser Kump LLC.

15.    Richard Hill, who can be contacted through Counsel for Ms. Hill, who has information about the medical condition of Ms. Hill following her hospitalization on May 17, 2021. Also, received communications from attorney Dan Gilleon regarding intention to release unfavorable information about Ms. Hill to Mr. Bauer's attorneys.

16.    Lorinda Hill, who can be contacted through Counsel for Ms. Hill, who has information about the medical condition of Ms. Hill following her hospitalization on May 17, 2021.

17.    Derek Dawson, address unknown.  Has information regarding text and direct messages with Ms. Hill.

18.    Detective Kimberly Jones of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101. Has information regarding the investigation of the sexual assault of Ms. Hill by Mr. Bauer.

19.    Detective Derek Blackmon of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101. Has information regarding the investigation of the sexual assault of Ms. Hill by Mr. Bauer. [5/18/21 Body Cam Video]

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1935132-1 MER-5137    DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES

20. Detective Murphy of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101. Has information regarding the investigation of the sexual assault of Ms. Hill by Mr. Bauer. [6/5/21 Body Cam Video]

21. Kyle Erikson, cousin to Ms. Hill, 7150 West 20th Ave. #106, Lakewood, CO 80214. Has information regarding the Ms. Hill's communications with Mr. Bauer and Mr. Bauer's sexual assault of Ms. Hill.

22. Ciramely Maya friend of Ms. Hill, 31074 Camino del Este, Temecula, CA 92591. Has information regarding the Ms. Hill's communications with Mr. Bauer and Mr. Bauer's sexual assault of Ms. Hill.

23. Lafael Justin Veasau friend of Ms. Hill, 9320 Artesia Blvd., Apt. 2, Bellflower, CA 90706.

24.                              , alleged victim of Mr. Bauer.
                              . Provided testimony to Major League Baseball as part of its investigation of Mr. Bauer.

25.                                   , former confidant of Mr. Bauer,
                                   . Professes to have maintained an online "sexting" relationship with Mr. Bauer, in which he allegedly furnished her with one (or more) videos depicting his sexual abuse of an unnamed/unknown female.

26. Lisa Decker, address unknown. Ms. Hill's friend and AA Sponsor. Communicated frequently with Ms. Hill in aftermath of sexual contact with Mr. Bauer and throughout DVRO proceeding.

27. Niranjan Fred Thiagarajah, who may be contacted through counsel for Mr. Thiagarajah, who has non-privileged information about the facts and circumstances alleged in the Complaint..

28. Michael Clevenger, address and phone number unknown. Former teammate and well-known associate of Mr. Bauer.

29. Rachel Luba, address and phone number unknown. Mr. Bauer's Baseball Agent. Known contact with Mr. Bauer's previous Ohio accusers. Has issued public

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

statements challenging the veracity of Ms. Hill's allegations against Mr. Bauer. Familiar with Mr. Bauer's sexual practices.

30.     Tony Prince, address unknown,  attended birthday party with Ms. Hill in Los Angeles, CA residence immediately prior to Ms. Hill's second sexual encounter with Mr. Bauer.

31.     Urgent Care Intake Doctor/Nurse/Medical Professional, of American Family Urgent Care, 8590 Rio San Diego Dr., #111, San Diego, CA 92108. Has information regarding Ms. Hill's medical condition on May 17, 2021. Advised Ms. Hill's referral to Alvarado Hospital Medical Center.

32.     Lynn Greenemay, Store Manager at Lululemon in San Diego regarding Ms. Hill's time off from work.

33.     Melissa Munster, Current Supervisor of Ms. Hill at Lululemon in Sand Diego, regarding Ms. Hill's residual effects of the battery and sexual battery.

34.     Marylou Rodgers Ms. Hill's supervisor at Ohana House Sober Living in San Diego, Ca.

35.                             , alleged victim of Mr. Bauer.

                    . Provided testimony Westlake (OH) Police following an encounter with Mr. Bauer on or about June 2020, and to Major League Baseball as part of its investigation of Mr. Bauer.

36.                             , alleged victim of Mr. Bauer.

                    . Provided testimony to Pasadena Police Department as part of its investigation into Mr. Bauer, and is currently maintaining a lawsuit which names Mr. Bauer as defendant in Maricopa (AZ) Co. Superior Court, Case No. CV2022-016483.

37.                                                         .

Defendant reserves the right to amend and supplement this information as additional facts and evidence become known.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1935132-1 MER-5137                    DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES

II.     **DOCUMENTS DEFENDANTS MAY USE TO SUPPORT DEFENSE**

By identifying documents and tangible things in this document, Defendant do not admit or deny the relevancy or admissibility of any document or thing. Defendant reserves the right, if appropriate, to make objections to the production of any documents or tangible things or the answering of interrogatories regarding any matters discussed herein and to move for a Protective Order pursuant to Rule 26, F.R.C.P., before producing or allowing any discovery of the matters stated herein. In making these disclosures, Defendant does not waive the attorney-client privilege, the attorney work-product doctrine, or any other available privilege, doctrine, or immunity. If Defendant agrees to the production of documents or tangible things, they will be produced through Defendant's counsel of record.

1.     Medical and Billing Records for Ms. Hill from Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208

2.     SART Report from Palomar Health Forensic Health Services – Poway, 15615 Pomerado Road, Poway, CA 92064, including 84 photographs.

3.     Medical and Billing Records for Ms. Hill from Dr. Erica Moses of San Diego Center for Trauma Recovery, 1761 Hotel Circle S. Ste. 315, San Diego, CA 92108.

4.     Medical and Billing Records for Ms. Hill from Dr. Varinthrej Pitis of Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130 for follow up care after in June of 2021.

5.     Extraction Report of Ms. Hill's phone regarding photographs taken of Ms. Hill between May 16, 2021 and May 18, 2021.

6.     8 Photographs of Ms. Hill taken between May 16, 2021 and May 18, 2021 documenting the injuries to Ms. Hill's face.

7.     Any and all photographs of Ms. Hill taken as part of the May 17, 2021 SART Report at Palomar Health Forensic Health Services – Poway.

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1935132-1 MER-5137                    DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES

8.    Audio of Plaintiff and Ms. Hill's telephone conversation during a "Pretext Call" made at the behest of the Pasadena Police Department on or about May 22, 2021.

9.    All documents, photographs, video and meta data produced in the DVRO hearing.

10.    "Body Cam" Video and Audio footage from PPD Officers' interview with Ms. Hill on May 18, 2021.

11.    "Body Cam" Video and Audio footage from PPD Officers' interview with Ms. Hill on June 5, 2021.

## III.    CALCULATION OF DAMAGES

A computation of damages claimed by Ms. Hill:

Ms. Hill seeks to recover non-economic damages caused by her injuries according to proof at trial.

Hill suffered from physical injuries to her head and face, including an acute head injury.  This resulted in pain, suffering and discomfort in Hill's head, face and jaw. The jaw pain lasted over a month. Hill's head injury also resulted in concussion-like symptoms that lasted for several weeks.  The head injury also caused vomiting, difficulty getting out of bed and constant sleeping.  Hill had extreme difficulty opening her mouth and had difficulty eating.  Hill also suffered from swelling and excruciating bruising on her face that lasted over a week.  Hill could not sleep on her left side because of pain and swelling.  Hill also suffered from bruising on her gums and a split open lip which made it difficult to eat and drink.  Hill also suffered from a welt on the left side of the top of her head.

Hill suffered from a physical injury to her vagina/groin area.  This resulted in pain, suffering and discomfort.  This also caused bruising.

Hill suffered from a physical injury to her buttocks.  This resulted in pain, suffering and discomfort.  This also caused bruising.  She had difficulty sitting.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  Hill suffered from a physical injury to her anus from being sodomized.  This

2  resulted in pain, suffering and discomfort.  She was also bleeding from her anus.

3  Hill suffered from injuries as result of being choked to the point of

4  unconsciousness.  This resulted in pain/headache, suffering, discomfort, being

5  lightheaded and dizzy, nausea, confusion and feeling like she could barely move her

6  body.

7  Hill also suffered from severe mental and emotional distress, depression, fear,

8  humiliation/embarrassment and anxiety.  That had a negative effect on her life.  Hill

9  is also a recovering alcoholic. Since the batteries/sexual batteries, Hill has had some

10  struggles with her sobriety and has relapsed.

11  Hill seeks to recover medical expenses she incurred.  This includes the

12  following providers: Alvarado Medical Center; Scripps; and Center for Trauma

13  Recovery.  Hill will produce documents reflecting the specific expenses incurred.

14  Hill seeks to recover for past and future lost wages.  Hill lost wages at her job

15  at Lululemon while she was on medical leave.  Hill will produce documentation

16  and/or other evidence reflecting the dates that she was on leave and her hourly rate.

17  Hill also seeks to recover future lost wages related to her contemplated employment

18  at the Ohana College Area Sober Living Environment as a resident life director.

19  Because of both the physical and metal trauma that she suffered, Hill was unable to

20  start that job.

21  Hill seeks punitive and exemplary damages from Bauer according to proof at

22  trial.

23

24  **IV.  <u>APPLICABLE INSURANCE</u>**

25  Defendant Hill is insured under a policy of insurance with California

26  Automobile Insurance Company with limits of $300,000 per occurrence for personal

27  liability, with a reservation of rights.

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1    Defendant reserves the right to amend and/or supplement this Initial Disclosure

2   if and when additional documents are located and/or discovered during the course of

3   investigation and discovery.

4

5   DATED:  August 28, 2023        WESIERSKI & ZUREK LLP

6

7

8                                             By:  ___/s/Christohper P. Wesierski___

9                                                   CHRISTOPHER P. WESIERSKI
                                                   Attorneys for Defendant, Lindsey C. Hill

10

11  DATED:  August 28, 2023         FREEDMAN + TAITELMAN, LLP

12

13

14

15                                            By:  ___/s/Jesse A. Kaplan___

16                                                  JESSE A. KAPLAN
                                                   Attorneys for Cross-Complainant, Lindsey C.

17                                                  Hill

18

19

20

21

22

23

24

25

26

27

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of .  My business address is 29 Orchard Road, Lake Forest, CA 92630.

On August 28, 2023, I served true copies of the following document(s) described as **DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address canderson@wzllp.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 28, 2023, at Lake Forest, California.

s/ CHELSEA ANDERSON
Chelsea Anderson

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1935132-1 MER-5137

DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES

**SERVICE LIST**
**Bauer v. Hill**
**MER-5137**

1

2

3  Jesse Kaplan, Esq.
   Freedman & Taitelman LLP
4  1901 Ave of the Stars Ste 500
   Los Angeles, CA  90067
5  Phone: 310-201-0005
   Fax: 310-201-0045
6  E-Mail: jkaplan@ftllp.com

7  Shawn C. Holley, Esq.                    Attorney for Plaintiff, Trevor Bauer
   Kate E. Mangels, Esq.
8  Suann MacIssac, Esq.
   Kinsella Weitzman Iser Kump Holley
9  LLP
   11766 Wilshire Blvd., Suite 750
10 Los Angeles, CA  90025
   Phone: 310-566-9822
11 Fax: 310-566-9850
   E-Mail: sholley@kwikhlaw.com ;
12 kmangels@kwikalaw.com;
   smacisaac@kwikhlaw.com
13
   Blair G. Brown, Esq.                     Attorney for Plaintiff, Trevor Bauer
14 Jon R. Fetterolf, Esq.
   Nell Peyser, Esq.
15 Zuckerman Spaeder LLP
   1800 M. Street, N. W. Suite 1000
16 Washington, D.C  20036
   Phone: 202-778-1800
17 Fax: 202-882-8106
   E-Mail: bbrown@zuckerman.com;
18 jfetterolf@zuckerman.com;
   NPeyser@Zuckerman.com;
19 ksimmerson@zuckerman.com

20

21

22

23

24

25

26

27

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1935132-1 MER-5137

DEFENDANT LINDSEY C. HILL'S AMENDED INITIAL DISCLOSURES

# EXHIBIT C

1  Christopher P. Wesierski [Bar No. 086736]
   *cwesierski@wzllp.com*
2  Michelle R. Prescott [Bar No. 262638]
   *mprescott@wzllp.com*
3  Eileen Spadoni [Bar No. 133259]
   *espadoni@wzllp.com*
4  Brett A. Smith [Bar No. 322707]
   *bsmith@wzllp.com*
5  WESIERSKI & ZUREK LLP
   29 Orchard Road
6  Lake Forest, California 92630
   Telephone: (949) 975-1000
7  Facsimile: (949) 756-0517

8  Bryan J. Freedman, Esq. (SBN: 151990)
   *bfreedman@ftllp.com*
9  Jesse A. Kaplan, Esq. (SBN: 255059)
   *jkaplan@ftllp.com*
10 FREEDMAN + TAITELMAN, LLP
   1801 Century Park West, 5th Floor
11 Los Angeles, California 90067
   Telephone: (310) 201-0005
12 Facsimile:  (310) 201-0045

13 Attorneys for Defendant, Lindsey C. Hill

14

15            UNITED STATES DISTRICT COURT

16    CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

17

18 TREVOR BAUER,                    Case No. 8:22-cv-00868 JVS(ADSx)

19          Plaintiff,              **DEFENDANT LINDSEY C HILL'S
                                    SUPPLEMENTAL RESPONSE TO
20     vs.                          PLAINTIFF/COUNTERCLAIM
                                    DEFENDANT TREVOR BAUER'S
21 LINDSEY C HILL AND NIRANJAN      FIRST SET OF INTERROGATORIES,
   FRED THIAGARAJAH,                INTERROGATORY NO. 21 AND 24**
22
          Defendant.
23                                  Trial Date:        None Set

24

25     PROPOUNDING PARTY:   PLAINTIFF, TREVOR BAUER

26     RESPONDING PARTY:    DEFENDANT, LINDSEY C HILL

27     SET NO.:             ONE

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1    Defendant, LINDSEY C HILL, by and through her attorneys of record,

2  Wesierski & Zurek LLP, supplementally responds to plaintiff's first set of

3  interrogatories, interrogatory no. 21 and 24, and copying as follows:

4           PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

5    After a reasonable and diligent search, this responding party will provide

6  copies of all documents in his possession, custody or control which are responsive to

7  each category set forth in this request.  These documents will be produced subject to

8  the objections set forth below.

9    Investigative efforts to locate additional documents are ongoing and will be

10 continuing during the course of this litigation. If documents are discovered which

11 fall within a category of this request and are not subject to an objection set forth

12 herein, these documents will be made available upon proper request.

13    By responding to this request and producing any document, defendant does

14 not concede that any category set forth herein seeks relevant information or seeks

15 information that is reasonably calculated to lead to the discovery of admissible

16 evidence. Defendant expressly reserves the right to any and all objections as to

17 competency, materiality, relevancy, privilege and admissibility of any documents

18 produced and the right to object to further discovery relating to the subject matter of

19 any document produced.

20    Defendant objects generally to these requests to the extent they seek

21 discovery of attorney work product and trial preparation materials or

22 communications protected by the attorney-client privilege.

23    Discovery is still at an early stage and there may be other and further

24 information affecting the Demand for Production of which this responding party

25 despite reasonable investigation and inquiry, is presently unaware.  This responding

26 party is continuing the development of facts and legal issues which are presented in

27 this matter and inquired into by the Demand for Production. This responding party

28 reserves the right to modify or to enlarge these responses with such pertinent

2

1  additional information and documents as may subsequently be discovered.
2  Furthermore, these responses are made by this responding party without prejudice to
3  this responding party's use or reliance at trial on subsequent discovered documents
4  or information or on documents or information omitted from these responses as a
5  result of good faith oversight, error or mistake.

6      No incidental or implied admissions are intended by the responses herein.
7  The fact that this responding party has responded or objected to any request or part
8  thereof shall not be deemed an admission that this responding party accepts or
9  admits the existence of any facts set forth or assumed by such request or that such
10  response or objection constitutes admissible evidence. The fact that this responding
11  party has responded to part or all of any request, is not intended to and shall not be
12  construed as a waiver of any part of any objection to any request.

13      In the event that any document to which an objection is made should be
14  produced inadvertently, such production shall not constitute a waiver of the
15  objection by defendant to the production of the documents produced or similar
16  documents.

17  **INTERROGATORY NO. 21:**

18      State all facts that support your contention that you suffered "severe
19  emotional distress, depression, fear, humiliation/embarrassment and anxiety" (Initial
20  Disclosures at 8) as a result of Mr. Bauer's actions alleged in your Allegations.

21  **RESPONSE TO INTERROGATORY NO. 21:**

22      Objection. Responding Party objects that the request calls for the premature
23  disclosure of expert opinion. Subject to and without waiving any objections stated
24  herein, Hill responds as follows:

25      Hill experienced various symptoms which became prominent after the
26  batteries/sexual batteries and increased over time. These symptoms have continued
27  through the present.  Hill has suffered from anxiety, felt depressed, humiliated,
28  embarrassed, unmotivated, exhausted, tired/fatigued, irritable, alone and isolated,

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S SUPPLEMENTAL RESPONSE TO
INTERROGATORIES

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1 detached and disconnected from the world, worthless, uncertain, emotionally numb

2 and had difficulty concentrating and processing.  Sometimes she would feel like she

3 was floating outside her body. She would also sometimes feel scared or easily

4 startled. She would also often feel on guard for danger.

5      Hill had trouble being around others, and avoided other people or doing

6 things that might draw attention to herself.  Hill participated less in and had less of

7 an interest in activities such as social or physical activities. Hill would sometimes

8 have difficulty with ordinary tasks. Hill also experienced a loss of appetite and lost

9 weight.

10      Hill would frequently wake up in the night because she was having bad

11 dreams/nightmares about the batteries/sexual batteries. She also had difficulty

12 sleeping and suffered from inconsistent sleep because she would be thinking about

13 and having upsetting, unpleasant, unwanted, distressing and/or terrifying memories

14 of the batteries/sexual batteries while resting or trying to sleep. During the day, she

15 would also frequently have upsetting, unpleasant, unwanted, distressing and/or

16 terrifying thoughts and memories of the batteries/sexual batteries. Hill would

17 sometimes relive the batteries/sexual batteries as if they were happening. Such

18 distressful thoughts and memories would often occur when Hill experienced

19 something that reminds her of the batteries/sexual batteries.

20      Hill is also a recovering alcoholic. Since the batteries/sexual batteries, Hill

21 has had some struggles with her sobriety and has relapsed.

22 **INTERROGATORY NO. 24:**

23      State all facts upon which you base your affirmative defense that Mr. Bauer's

24 complaint is barred in whole or in part by the litigation privilege

25 **RESPONSE TO INTERROGATORY NO. 24:**

26      Objection. Responding Party objects that the request calls for the premature

27 disclosure of expert opinion. Without waiving, and subject to these objections,

28 Responding Party states that Bauer's causes of action are based entirely on her

1   statements to the police in connection with its official investigation. Such statements

2   are covered by the litigation privilege. Hill did not knowingly make any false

3   statements to the police.

4   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24:**

5        Objection. Responding Party objects that the request calls for the premature

6   disclosure of expert opinion. Without waiving, and subject to these objections,

7   Responding Party states that Bauer's causes of action are based entirely on her

8   statements to the police in connection with its official investigation. Such statements

9   are covered by the litigation privilege. Hill did not knowingly make any false

10  statements to the police.   Moreover, to the extent any of Bauer's claims are based on

11  any statements or allegations made by Hill in the context of the LASC DVRO

12  Proceeding, such statements would also be covered by the litigation privilege.

13

14  DATED:  August 28, 2023          WESIERSKI & ZUREK LLP

15

16                          By: _____

17                          CHRISTOPHER P. WESIERSKI
                            MICHELLE R. PRESCOTT
18                          Attorneys for Defendant, Lindsey C. Hill

19

20

21

22

23

24

25

26

27

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1935135-1 MER-5137

# VERIFICATION

I have read the foregoing **DEFENDANT LINDSEY C HILL'S SUPPLEMENTAL RESPONSE TO PLAINTIFF/COUNTERCLAIM DEFENDANT TREVOR BAUER'S FIRST SET OF INTERROGATORIES, INTERROGATORY NO. 21 and 24** and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 28, 2023, at los Angeles, California.

LINDSEY HILL
Print Name of Signatory

Signature

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1932851-1 MER-5137

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 29 Orchard Road, Lake Forest, CA 92630.

On August 28, 2023, I served true copies of the following document(s) described as **DEFENDANT LINDSEY HILL'S SUPPLEMENTAL RESPONSE TO PLAINTIFF/COUNTERCLAIM DEFENDANT TREVOR BAUER'S FIRST SET OF INTERROGATORIES, INTERROGATORY NO. 21 AND 24**  on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address canderson@wzllp.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 28, 2023, at Lake Forest, California.

_____
Chelsea Anderson

**SERVICE LIST**
**Bauer v. Hill**
**MER-5137**

Jesse Kaplan, Esq.
Freedman & Taitelman LLP
1901 Ave of the Stars Ste 500
Los Angeles, CA  90067
Phone: 310-201-0005
Fax: 310-201-0045
E-Mail: jkaplan@ftllp.com

Shawn C. Holley, Esq.                    Attorney for Plaintiff, Trevor Bauer
Kate E. Mangels, Esq.
Suann MacIssac, Esq.
Kinsella Weitzman Iser Kump Holley LLP
11766 Wilshire Blvd., Suite 750
Los Angeles, CA  90025
Phone: 310-566-9822
Fax: 310-566-9850
E-Mail: sholley@kwikhlaw.com ;
kmangels@kwikalaw.com;
smacisaac@kwikhlaw.com

Blair G. Brown, Esq.                     Attorney for Plaintiff, Trevor Bauer
Jon R. Fetterolf, Esq.
Nell Peyser, Esq.
Zuckerman Spaeder LLP
1800 M. Street, N. W. Suite 1000
Washington, D.C  20036
Phone: 202-778-1800
Fax: 202-882-8106
E-Mail: bbrown@zuckerman.com;
jfetterolf@zuckerman.com;
NPeyser@Zuckerman.com;
ksimmerson@zuckerman.com

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

# EXHIBIT D

## PARK DIETZ & ASSOCIATES, INC.
### Forensic Experts

**Administrative Offices**

2906 Lafayette
Newport Beach, CA  92663
Tel:  949-723-2211
Fax:  949-723-2212
Email:     expert@parkdietzassociates.com
Website:   www.parkdietzassociates.com

- **Forensic Psychiatry**
- **Forensic Psychology**
- **Forensic Pathology**
- **Forensic Neurology**
- **Forensic Social Work**
- **Child Welfare**
- **Criminology**
- **Security**

CURRICULUM VITAE

# Janine S. Shelby, Ph.D.

JanineShelby@gmail.com
3655 Torrance Blvd, Ste. #300
Torrance, CA 90503
(310) 625-6661

**EDUCATION:**

| | |
|---|---|
| **Post-Doctoral Fellowship** | **Harbor-UCLA Medical Center**<br>Clinical Child Psychology<br>Child & Adolescent Psychiatry Department<br>Torrance, California<br>September 1994 to August 1996 |
| **Internship**<br>(APA Accredited) | **St. John's Hospital**<br>St. John's Child and Family Development Center<br>Santa Monica, California<br>September 1993 to August 1994 |
| **Doctor of Philosophy**<br>(APA Accredited) | **University of Miami**<br>Dept. of Educational and Psychological Studies<br>Counseling Psychology<br>Coral Gables, Florida<br>December 1994 |
| **M.S.** | **University of South Alabama**<br>Community Counseling<br>Mobile, Alabama<br>December 1989 |

**B.A.**                                     **Samford University**
                                             Major:  Psychology
                                             Birmingham, Alabama
                                             December 1987

          International Education:           **Universidad de Filologia y Español**,
                                             Saltillo, México
                                             Winter Quarter, 1986


**PROFESSIONAL LICENSURE:**                  **Licensed Psychologist, CA #15429**
                                             (temporary practice licenses previously and/or currently
                                             held in NJ, SC, and OR)

**LANGUAGES:**                               **Conversational Spanish**
                                             **Basic Spoken Japanese**


**PROFESSIONAL EXPERIENCE:**

**Part-Time Clinical Supervisor**           **CSULB Foundation**
                                             Trauma Recovery Center
                                             Long Beach, CA
                                             July 2019-


**Kobe College Foundation**                 **Kobe College**
**Distinguished Fellow**                     Department of Psychological and Behavioral
                                             Studies
                                             Nishinomiya, Japan
                                             September 2016 - September 2017


**Director of Child Psychology Training**   **Harbor-UCLA Medical Center**
**Director of the Child Trauma Clinic**     Child and Adolescent Psychiatry
(Clinical Psychologist II, County Title)    Torrance, California
                                             Department of Mental Health
                                             Los Angeles, CA
                                             April 2006 - July 2016


**Director of Training and Research**       **Harbor-UCLA Medical Center**
**Lead Forensic Interviewer**               Child Crisis Center, Pediatrics
(Clinical Psychologist II, County Title)    Torrance, California
                                             Department of Health Services
                                             Los Angeles County, California
                                             February 2005 - April 2006


**Clinical Supervisor**                     **St. Francis Medical Center**
                                             Children's Counseling Center
                                             Lynwood, California
                                             May 2003 - February 2005

| | |
|---|---|
| **Program Director** | **Didi Hirsch Mental Health Center**<br>Child and Family Outpatient Clinic<br>Inglewood, California<br>December 2000 - January 2002 |
| **Director of Emergency Services** (2000)<br>**Clinical Director** (1996-1999)<br>**Sexual Assault Counselor** (1995-1996) | **UCLA Santa Monica Medical Center**<br>Rape Treatment Center<br>Santa Monica, California<br>October 1995 - March 2000 |

**ACADEMIC AFFILIATIONS**:

**University of California at Los Angeles**
Geffen School of Medicine
Department of Psychiatry
Los Angeles, CA

| | |
|---|---|
| Volunteer Clinical Instructor | September 2000 through April 2006 |
| Visiting Assistant Professor | April 2006 through July 2006 |
| Assistant Clinical Professor<br>    of the Health Sciences | July 2006 - 2012 |
| Associate Clinical Professor<br>    of the Health Sciences | July 2012 - July 2016 |
| Volunteer Associate Clinical Professor | March 2017 - present |

**California State University, Long Beach**     August 2019-present
Department of Education
Education and Counseling Educational Psychology
   Part-Time Lecturer; Temporary Faculty

**Kobe College**     Sept. 2016 - Sept. 2017
School of Human Sciences
Department of Psychological and Behavioral Sciences
Nishinomiya, Hyogo Japan

   Bryant Drake Guest Professor and Distinguished Fellow

**PROFESSIONAL ACTIVITIES:**

**<u>Committee and Task Force Service</u>**

1. ***Secretary,*** California State Branch of the Association for Play Therapy, October 1993-October 1995

2. ***President-Elect,*** California State Branch of the Association for Play Therapy, October 1995-October 1996

3. ***President,*** California State Branch of the Association for Play Therapy, October 1996-October 1997

4. ***Elections and Nominations Committee Member***, Association for Play Therapy, October 200-October 2002

5. ***State Branch Committee Member,*** Association for Play Therapy, October 2002-October 2003

6. ***Co-Chair****,* Research Task Force, Association for Play Therapy, December 2004-October 2005

7. ***President****,* Foundation Board of Directors, Association for Play Therapy, 2003-2006

8. ***Secretary,*** Foundation Board of Directors, Association for Play Therapy, 2006-2007

9. ***Vice-President,*** Foundation Board of Directors, Association for Play Therapy, 2007- 2008

10. ***Officer, Hospital Disaster Preparedness Committee and Chair, Mental Health Sub-committee***, Harbor-UCLA Medical Center, February 2007-present (multiple disaster drills)

11. ***Chair, South Bay Disaster Resources Center Mental Health Committee***, March 2007-June 2009

12. ***Chair, Research Committee***, Association for Play Therapy, October 2009-April 2012

13. ***Research Committee Member***, Association for Play Therapy, October 2005-October 2012

14. ***Editorial Board Member,*** International Journal for Play Therapy, APA, March 2008-October 2012

15. ***Chair, Training Committee***, Psychology Division, Department of Psychiatry, Harbor-UCLA Medical Center, February 2013-December 2014

16. ***Membership Committee Member***, International Society for Traumatic Stress Studies, January 2017-

17. **Co-Chair**, Data Subcommittee, International Society for Traumatic Stress Studies, November 2020-2021

18. **Chair,** New Conference Attendee Subcommittee, International Society for Traumatic Stress Studies, November 2020-2021

19. ***Co-Chair (with another Co-Chair), Membership Committee***, International Society for Traumatic Stress Studies, November 2018-November 2022

## Membership in Professional Associations and Societies

1. American Academy of Experts in Traumatic Stress, 2000-2001 (Board Certified Expert in Traumatic Stress)
2. American Counseling Association, 1994-2016 (noncontiguous)
3. American Psychological Association Member and Affiliate Member, 1993-2004 (noncontiguous)

4.  American Psychological Association Division 56 Affiliate (2015-present)
5.  Association for Play Therapy, 1992-present
6.  California Psychological Association, 2012-2013
7.  International Society for Traumatic Stress Studies, 2001-present (noncontiguous)
8.  Los Angeles Biomedical Research Institute, 2007-2016 (noncontiguous)
9.  Kobe College Research Institute, 2016-2017

## Community Service

1. Rape Crisis Center Volunteer, Mobile, AL
October 1988 to August 1990

2. American Red Cross (ARC) Post-Hurricane Andrew Volunteer, Dade County Chapter,
Perrine, FL
August 1991 to October 1991

3. UCLA Humanitarian Relief Mission for Kosovar Refugees, team member and Lead Mental
Health Officer, Tirane, Albania
May to June 1999

4. Board of Directors member, American Red Cross-Santa Monica, Santa Monica, CA
June 1998 to June 2000

5. Program for Torture Victims Assessor and Therapist, Los Angeles, CA
August 1999 to August 2002

6. Advisory Board, American Red Cross Santa Monica, Santa Monica, CA
June 2000 to May 2002

7. American Red Cross Disaster Services, Human Resources (DSHR) National Response Team,
Mental Health Specialist
March 1995 to January 2004
 (Including deployment for the 1995 Watsonville, CA and the Lake County, CA floods)

8. American Red Cross (ARC), Disaster Action Team and Other ARC Volunteer Work, Santa
Monica CA Chapter
August 1992- August 2006
(Including service for the Northridge Earthquake, 1994 Malibu Fires, 1996 Malibu California
Flood, Santa Monica Pier Shootings, Hostage Situations, and multiple Santa Monica Police
Department debriefings following critical incidents)

## International and Disaster-Related Consulting Activities

Consultant                      National Center for Child Traumatic Stress
                                University of California at Los Angeles
                                Los Angeles, California
                                July 2004-July 2005

Consultant                      Operation U.S.A.
                                Culver City, CA

May 1998-August 2010

Specific Projects:    *Peru: Earthquake Recovery*
September 2001; November 2001
*Taiwan:  Earthquake Recovery*
August-September 2000
*Nicaragua:  Hurricane Mitch*
March-April 2000
*Sri Lanka: Tsunami Recovery*
January 2005-August 2006

Consultant            Doctors of the World
Saint-Petersburg, Russia: Economic Crisis
October-November 1998

Consultant            Government of Singapore
Singapore, Singapore
April 2003

## HONORS AND AWARDS:

**Volunteer of the Year**
American Red Cross-Santa Monica Chapter
Santa Monica, CA
1996

**International Scholarship**
The Association for Play Therapy
Ede, The Netherlands
Date: June, 1996

**Mayoral Commendation (received as a team)**
Richard Riordan, Los Angeles Mayor
UCLA-International Medical Corps Kosovar Refugee Humanitarian Relief Team
Los Angeles, CA
1998

**St. Francis "Hero" Award**
St. Francis Medical Center
Tsunami Relief Work
February 2005

**Humanitarian Service Award**
Association for Play Therapy
October 2005

**Teacher of the Year Award**
Child and Adolescent Psychiatry Fellowship Program
Harbor-UCLA Medical Center
2015-2016

**ISTSS Sarah Haley Award for Clinical Excellence**
International Society for Traumatic Stress Studies (ISTSS)
November, 2021

## RESEARCH GRANTS RECEIVED:

**1. Involuntarily Sedated Rape Victims.** Research grant funded by the Rape Treatment Center Foundation to study symptoms and posttraumatic reactions of adult women who reported that they had been involuntarily sedated and sexually assaulted.

Principal Investigator: J.S. Shelby
Grant Amount: $20,000
Funding Source: The Rape Foundation, Santa Monica, CA
Site of Study: The Rape Treatment Center, Santa Monica-UCLA Medical Center
Date: January 1999 to July 1999

**2. Practices and Attitudes of Child-Focused Therapists in Japan**
Principal Investigators: J.S. Shelby and H. Sudo
Funding Source: AY2017 Kobe College School of Human Sciences Research Grant
Site of Study: Japan
Date: May, 2017 to May, 2022

## LECTURES AND PRESENTATIONS:

**Presentations Accepted from Peer-Reviewed Proposals**

1. Shelby, J.S. (1993, October).  *Play therapy for crisis intervention:  Lessons from Hurricane Andrew.* Paper presented at the 10th annual meeting of the International Association for Play Therapy, Atlanta, GA.

2. Shelby, J.S., & Tredinnick, M.G. (1994, April).  *Professional counselors as "Instant Experts:" Lessons from Hurricane Andrew.*  Paper presented at the meeting of the American Counselors' Association, Minneapolis, MN.

3. Shelby, J.S. (1994, October).  *Post-Earthquake adjustment among preschoolers following the Northridge Earthquake.* Paper presented at the annual meeting of the Los Angeles County Psychological Association, Los Angeles, CA.

4. Shelby, J.S. (1995, June).  *Children of Disaster:  Guidelines for play therapists.* Paper presented at the 1st annual meeting of the California Association for Play Therapy, Long Beach, CA.

5. Shelby, J.S. (1995, October).  *Treating children following disaster and first aid for their therapists.* Paper presented at the 12th annual meeting of the International Association for Play Therapy, San Francisco, CA.

6. Shelby, J.S. (1996, May). *Play therapy for the children of disaster.* Paper presented at the meeting of the International Play Therapy Association, Ede, The Netherlands.

7. Shelby, J.S. (1996, June). *Preventing emotional disaster after natural disaster.* In S. Hormuth (Chair) Psychology's Role in Disaster Intervention and Research. Symposium conducted at the Scientific Committee for the International Decade for Natural Disaster Reduction of the German Red Cross, Dresden, Germany.

8. Shelby, J.S. (1997, April). *Posttraumatic adjustment in a developmental context.* Paper presented at the 3rd annual meeting of the California Association for Play Therapy, San Diego, CA.

9. Shelby, J.S. (1997, June). *Play therapy with young Bosnian and Croatian refugees and displaced persons*. Paper presented at the annual Northwest Play Therapy Institute, Forest Grove, OR.

10. Shelby, J.S. (1997, October). *Posttraumatic coping among rape survivors.* Paper presented at the annual meeting of the Los Angeles County Psychological Association, Los Angeles, CA.

11. Shelby, J.S. (1997, November). *Posttraumatic responses of involuntarily sedated rape victims.* Poster session presented at the Annual meeting of the International Society for Traumatic Stress Studies, Montreal, Quebec, Canada.

12. Shelby, J.S. (1998*). Secondary stress among sexual assault survivors: Interactions with law enforcement personnel.* Poster session presented at the Annual meeting of the International Society for Traumatic Stress Studies, Washington, D.C.

13. Shelby, J.S. (1999, July). *A developmental approach to posttraumatic play therapy*. Paper presented at the Annual Northwest Play Therapy Institute, Forest Grove, OR.

14. Shelby, J.S. (1999, October). *Developmentally sensitive posttraumatic play therapy*. Preconference workshop presented at the 16th annual meeting of the Association for Play Therapy, Baltimore, MD.

15. Shelby, J.S. (1999, November). *Crisis intervention with children following Hurricane Andrew*. Poster session presented at the annual meeting of the International Society for Traumatic Stress Studies, Miami, FL.

16. Shelby, J.S. (2000, June). *Developmentally sensitive posttraumatic play therapy*. Paper presented at the annual Northwest Play Therapy Institute, Forest Grove, OR.

17. Shelby, J.S. (2000, June). *Play therapy for sexual assault survivors*. Paper presented at the annual Northwest Play Therapy Institute, Forest Grove, OR.

18. Shelby, J.S. (2000, October). *Treating childhood survivors of sexual assault.* Paper presented at the 17th annual meeting of the Association for Play Therapy, New Orleans, LA.

19. Shelby, J.S. (2001, October). *Developmentally sensitive therapy with trauma survivors*. Pre-conference workshop presented at the 18th annual meeting of the Association for Play Therapy, Portland, OR.

20. Shelby, J.S. (2001, October).  *Treating childhood survivors of sexual assault*.  Paper presented at the 18th annual meeting of the Association for Play Therapy, Portland, OR.

21. O'Connor, K., Shelby, J.S., and Van Fleet, R. (2001, October).  *Psychological response to terrorism*.  Panel discussion presented at the 18th annual meeting of the Association for Play Therapy, Portland, OR.

22. Shelby, J.S. (2002, February).  *Developmentally sensitive approaches to treating common childhood disorders*.  Paper presented at the annual meeting of the Michigan Association for Play Therapy, East Lansing, MI.

23. Shelby, J.S. (2003, February).  *Developmentally sensitive approaches to treating childhood mood disorders*.  Paper presented at the annual meeting of the Michigan Association for Play Therapy, East Lansing, MI.

24. Shelby, J.S. (2003, October).  *Developmentally sensitive therapy with trauma survivors*.  Pre-conference workshop presented at the 20th annual meeting of the Association for Play Therapy, Norfolk, VA.

25. Shelby, J.S. (2003, October).  *Treating childhood survivors of sexual assault*.  Paper presented at the 20th annual meeting of the Association for Play Therapy, Norfolk, VA.

26. Shelby, J.S. (2004, October).  *Treating childhood survivors of sexual assault*.  Paper presented at the 21st annual meeting of the Association for Play Therapy, Broomfield, CO.

27. Shelby, J.S. (2004, October).  *100 techniques, 10 years, and 20 nations*.  Pre-conference workshop presented at the 21st annual meeting of the Association for Play Therapy, Broomfield, CO.

28. Shelby, J.S., Bond, D., & Felix, E (2005, October).  *Play therapists go to Sri Lanka*.  Paper presented at the 22nd Annual meeting of the Association for Play Therapy, Nashville, TN.

29. Shelby, J.S. (2005, October).  *Treating childhood survivors of sexual assault*.  Pre-conference workshop presented at the 22nd annual meeting of the Association for Play Therapy, Nashville, TN.

30. Felix, E., Layne, C., Hoagwood, K., Walden, R., Bond, D., and Shelby, J.S. (2005, November). *Psychological First Aid for children:  Lessons learned from Sri Lanka*. Panel discussion presented at the Annual International Society for Traumatic Stress Studies conference, Toronto, Canada.

31. Shelby, J.S. (2007, June). *Crisis intervention with young survivors of trauma*. Paper presented (in absentia) at the 7th International Congress on Psychic Trauma and Traumatic Stress, Buenos Aires, Argentina.

32. Drewes, A., Shelby, J.S., Stewart, A. and Landry, T.L. (2007, August). *Culturally sensitive, developmentally appropriate child treatment*. Panel discussion presented at the Annual American Psychological Association conference, San Francisco, CA.

33. Shelby, J.S. (2007, October).  *Comprehensive sexual assault treatment: From forensic interviewing to psychological treatment*.  Pre-conference workshop presented at the 24th annual meeting of the Association for Play Therapy, Los Angeles, CA.

34. Shelby, J.S., Urquiza, A, Berk, M., and Bond, D. (2007, October). *Innovations in Treatment: Evidence-based treatment in common clinical settings.* Symposium presented at the 24th Annual meeting of the Association for Play Therapy, Los Angeles, CA.

35. Murase, K., Shelby, J.S., & Ohnogi, A. (2008 August). *Support and intervention to children's psychological trauma*. Symposium hosted by the Japan Play Therapy Association, Tokyo, Japan.

36. Shelby, J.S. & Warnick, H.D. (2008, October). *Posttraumatic Parenting: A parent-child dyadic treatment*. Presentation at the 25th annual meeting of the Association for Play Therapy, Dallas, TX.

37. Shelby, J.S. & Maltby, L. (2009, October). *Posttraumatic Play Therapy: A caregiver child dyadic treatment*. Presentation at the 26th annual meeting of the Association for Play Therapy, Atlanta, GA.

38. Shelby, J.S. (2009, October). *Therapy for traumatized children: Trends, directions, and suggestions for growth*. Presentation at the 26th annual meeting of the Association for Play Therapy, Atlanta, GA.

39. Shelby, J.S., Walden, R., & Bond, D. (2010, September). *Responding to natural disaster: Innovations in psychosocial programming*. Symposium presented at the annual Institute for Violence & Abuse Treatment conference, San Diego, CA.

40. Goodyear-Brown, P., Kinney-Noziska, S., Lowenstein, L., Riviere, S.A., & Shelby, J.S. (2010, October). *Play therapy issues: The best and the worst*. Presentation at the 27th annual meeting of the Association for Play Therapy, Louisville, KY.

41. Shelby, J.S. & Combs-Ronto, L. (2012, March). *Technology-facilitated sexual exploitation of adolescents: Treatment implications*. 28th National Symposium on Child Abuse. Huntsville, AL

42. Shelby, J.S. (2012, October). *Play therapy for childhood trauma*. Pre-conference workshop presented at the 29th annual meeting of the Association for Play Therapy, Cleveland, OH.

43. Shelby, J.S. (2012, October). *Too tired to play? How to replenish and renew a play therapist's passion*. Seminar to be presented at the 29th annual meeting of the Association for Play Therapy, Cleveland, OH.

44. Christensen, L., Maltby, L., & Shelby, J. (2013, September). *Adapting Parent-Child Interaction Therapy for intellectual disability.* Break-out session presented at the annual University of California at Davis Parent Child Interaction Therapy Conference, Los Angeles, CA.

45. Shelby, J.S. (2013, October). *Treating childhood sexual assault through CBT-play therapy*. Pre-conference workshop presented at the 30th annual meeting of the Association for Play Therapy, Palm Springs, CA.

46. Shelby, J.S. (2014, September). *Safety-based interventions for trauma*. Symposium presented at the annual Institute for Violence & Abuse Treatment conference, San Diego, CA.

47. Maltby, L., Shelby, J.S., & Litvinov, L. (2014, September). *Making informed treatment decisions: Use of a PCIT/CPP decision tree*. Break out session presented at the annual University of California at Davis Parent Child Interaction Therapy Conference, Los Angeles, CA.

48. Shelby, J.S. (2014, October). *Safety-based interventions for play therapists*. Pre-conference workshop presented at the 31st annual meeting of the Association for Play Therapy, Houston, TX.

49. Shelby, J.S. (2015, October). *Safety-based interventions for play therapists*. Pre-conference workshop presented at the 32nd annual meeting of the Association for Play Therapy, Atlanta, GA.

50. Felix, E., Shelby, J.S., Sturtz-Sreetharan, C., & Zavala, J. (2017, November). *Diversity in the traumatic stress field: A psychologist, anthropologist/linguist, and Buddhist minister raise questions about delivering Western trauma-focused treatments in Asia*. Panel presentation provided at the 33rd annual meeting of the International Society for Traumatic Stress Studies, Chicago, IL.

**Invited Keynote Addresses and Conference Workshops**

1. Shelby, J.S. (1996, August). *After the trauma: Helping children survive Post-Traumatic Stress Disorder*. Workshop presented at National University, Vista, CA.

2. Shelby, J.S. (1997, July). *Posttraumatic play therapy for survivors of abuse, disaster, and community violence*. Workshop presented at the annual Summer Play Therapy Training Institute, Hackensack, NJ.

3. Shelby, J.S. (1997, July). *Posttraumatic play therapy for survivors of sexual violence*. Workshop conducted at the 12th annual Summer Play Therapy Training Institute, Hackensack, NJ.

4. Shelby, J.S. (1998, July). *Posttraumatic play therapy with traumatized children*. Workshop conducted at the annual Summer Play Therapy Training Institute, Hackensack, NJ.

5. Shelby, J.S. (1998, July). *Posttraumatic play therapy with sexually abused children*. Workshop conducted at the annual Summer Play Therapy Training Institute, Hackensack, NJ.

6. Shelby, J.S. (1998, October). *Secondary stress*. Invited paper presented at the Annual meeting of the Los Angeles County Psychological Association, Los Angeles, CA.

7. Shelby, J.S. (1998, December). *Posttraumatic play therapy*. Workshop conducted at the Philadelphia Center for Play Therapy, Philadelphia, PA.

8. Shelby, J.S. (1999, July). *Posttraumatic play therapy with traumatized children*. Workshop conducted at the annual Summer Play Therapy Training Institute, Hackensack, NJ.

9. Shelby, J.S. (1999, July). *Posttraumatic play therapy with sexually abused children*. Workshop conducted at the annual Summer Play Therapy Training Institute, Hackensack, NJ.

10. Shelby, J.S. (2000, April). *Developmental aspects of posttraumatic play therapy*. Invited workshop sponsored by the Illinois Association for Play Therapy, Champaign, IL.

11. Shelby, J.S. (2000, April). *Therapy with sexually traumatized children*. Invited workshop sponsored by the Illinois Association for Play Therapy, Champaign, IL.

12. Shelby, J.S. (2000, June). *Developmentally sensitive posttraumatic play therapy*. Invited workshop presented at the Annual Play by The Sea Conference, Monterey, CA.

13. Shelby, J.S. (2000, June). *Play therapy for sexual assault survivors*. Invited Workshop presented at the Annual Play by the Sea Conference, Monterey, CA.

14. Shelby, J.S. (2002, April). *Developmentally sensitive play therapy*. Workshop sponsored by the California Association for Play Therapy, Los Angeles, CA.

15. Shelby, J.S. (2002, July). *Developmentally sensitive posttraumatic play therapy*. Workshop conducted at the Annual Summer Play Therapy Training Institute, Hackensack, NJ.

16. Shelby, J.S. (2002, July). *Posttraumatic play therapy with sexually abused children*. Workshop conducted at the Annual Summer Play Therapy Training Institute, Hackensack, NJ.

17. Shelby, J.S. (2002, July). *Developmentally sensitive posttraumatic play therapy*. Workshop conducted at the University of North Texas Center for Play Therapy Summer Institute Workshops, Denton, TX.

18. Shelby, J.S. (2002, July). *Posttraumatic play therapy with sexually abused children*. Workshop conducted at the Annual Summer Play Therapy Training Institute, Hackensack, NJ.

19. Shelby, J.S. (2003, February). *Treating childhood survivors of sexual assault*. Invited workshop conducted at the Annual meeting of the Hawaii Association for Play Therapy, Honolulu, HI.

20. Shelby, J.S. (2003, February). *Developmentally sensitive posttraumatic therapy for children*. Invited workshop conducted at the Annual meeting of the Hawaii Association for Play Therapy: Honolulu, HI.

21. Shelby, J.S. (2003, March). *Developmentally sensitive treatment for childhood mood, anxiety, and elimination disorders.* Workshop presented at the 2003 Play Therapy Institute. Culver City, CA.

22. Shelby, J.S. (2004, March). *Practical play therapy techniques for sexually traumatized children*. Workshop presented at the 11th Annual Kentucky Association for Play Therapy conference, Louisville, KY.

23. Shelby, J.S. (2004, April). *Evidence-based treatment for common childhood disorders.* Workshop presented at the Kansas Association for Play Therapy Conference, Wichita, KY.

24. Shelby, J.S. (2004, May). *Developmentally sensitive posttraumatic play therapy*. Training sponsored by Chesapeake Beach Professional Seminars, Baltimore, MD.

25. Shelby, J.S. (2004, July). *Reaching Boys*. Workshop presented at the 1st Annual West Coast
Child & Adolescent Therapy Conference, Los Angeles, CA.

26. Shelby, J.S. (2004, July). *Treating child & adolescent sexual abuse*. Workshop presented at
the 1st Annual West Coast Child & Adolescent Therapy Conference, Los Angeles, CA.

27. Shelby, J.S. (2004, October). *Evidence-based treatment for common childhood disorders*.
Workshop presented at the Idaho Branch of the Association for Play Therapy, Boise, ID.

28. Shelby, J.S. (2004, October). *Developmentally sensitive play therapy*. Workshop presented
at the Idaho Branch of the Association for Play Therapy, Boise, ID.

29. Shelby, J.S. (2005, February). *25 techniques, 10 years, and 20 nations*.  Keynote address
presented at the Arizona Association for Play Therapy, Tempe, Arizona.

30. Shelby, J.S. (2006, February). *Healing the wounds of Hurricane Katrina:  Posttraumatic
therapy with children and adolescents*. Keynote address to the Louisiana Branch of the
Association for Play Therapy, Baton Rouge, LA.

31. Shelby, J.S. (2006, April). *Evidence-based child treatment for common childhood disorders*.
Full-day workshop conducted at the Michigan Branch of the Association for Play Therapy,
Bay City, MI.

32. Shelby, J.S. (2006, April). *Developmentally sensitive posttraumatic play therapy*.  Full-day
workshop conducted at the Michigan Branch of the Association for Play Therapy, Bay City,
MI.

33. Shelby, J.S. (2006, June). *Evidence-based child treatment for common childhood disorders*.
Full-day presentation at the Tennessee Branch of the Association for Play Therapy,
Murphreesboro, TN.

34. Shelby, J.S. (2006, June). *Developmentally sensitive posttraumatic play therapy*.  Keynote
full-day presentation to the Tennessee Branch of the Association for Play Therapy,
Murphreesboro, TN.

35. Shelby, J.S. (2006, July). *Evidence-based child treatment for common childhood disorders*.
Keynote full-day presentation to the Missouri Branch of the Association for Play Therapy,
Springfield, MO.

36. Shelby, J.S. (2007, January). *Evidence-based child treatment for common childhood
disorders*.  Keynote full-day presentation conducted at the Alabama Branch of the
Association for Play Therapy, Birmingham, AL.

37. Shelby, J.S. (2007, May). *Child therapy that fits: Treating common childhood disorders*.
Keynote full-day presentation conducted at the University of South Dakota School of
Psychology and Education, Vermillion, SD.

38. Shelby, J.S. (2007, June). *100 best play therapy techniques*. Keynote two-day presentation
at the Annual conference of the Indiana Association for Play Therapy, Nashville, IN.

39. Shelby, J.S. (2008, April). *Treating adult survivors of sexual victimization*. Two-day
workshop provided for Campbell County Memorial Hospital, Campbell County, Wyoming.

40. Shelby, J.S. (2008, June). *Developmentally sensitive posttraumatic play therapy*. Keynote presentation for the 12th annual conference of the Virginia branch of the Association for Play Therapy, Harrisonburg, VA.

41. Shelby, J.S. (2008, June). *Posttraumatic parenting*. Full-day presentation conducted at the 12th annual conference of the Virginia branch of the Association for Play Therapy, Harrisonburg, VA.

42. Shelby, J.S. (2009, March). *Developmentally sensitive posttraumatic play therapy*. Keynote presentation at the 7th annual conference of the Nevada branch of the Association for Play Therapy, Las Vegas, NV.

43. Shelby, J.S. (2009, April). *Developmentally sensitive posttraumatic play therapy*. Keynote presentation for the 10th Annual conference of the Ney York branch of the Association for Play Therapy, Rochester, NY.

44. Bratton, S., LeBlanc, T., Silverman, W., and Shelby, J.S. (2009, October). The state of play therapy research. In *play therapy research forum*. Panel Discussion conducted at the meeting of the 26th annual Association for Play Therapy conference, Atlanta, GA.

45. Shelby, J.S. (2010, June). *Developmentally sensitive therapy with children: Play therapy in an evidence-based era*. Keynote seminar presented at the 10th annual meeting of the George Fox University Play Therapy Summer Conference, Portland, Oregon.

46. Shelby, J.S. *(2010, June). Posttraumatic Parenting: A parent-child dyadic treatment.* Keynote seminar presented at the 10th annual meeting of the George Fox University Play Therapy Summer Conference, Portland, Oregon.

47. Shelby, J.S. (2010, June). *Play therapy in a new era: Blending EBTs into play therapy practice*. Keynote presentation at the 4th annual meeting of the Multicultural Play Therapy Conference, University of North Carolina, Charlotte, NC.

48. Shelby, J.S. (2010, June). *Posttraumatic Parenting: A parent-child dyadic treatment*. Keynote presentation presented at the 4th annual meeting of the Multicultural Play Therapy Conference, University of North Carolina, Charlotte, NC.

49. Shelby, J.S. (2010, September). *Posttraumatic Parenting: A parent-child dyadic treatment*. Keynote presentation presented at the College of Education, Minnesota State University, Mankato, MN.

50. Bratton, S., Sprang, G. & Shelby, J.S. (2010, October). *Play therapy research*. In play therapy research forum. Symposium conducted at the meeting of the 27th annual Association for Play Therapy conference, Louisville, KY.

51. Lily, J.P. & Shelby, J.S. (2010, October). *Play therapy: Art vs. science*. Debate held as the keynote speech at the 27th annual meeting of the Association for Play Therapy, Louisville, KY.

52. Shelby, J.S. & Berk, M.J. (2011, October). *CBT: The good, the bad, and the ugly*. Full-day workshop presented at 28th annual meeting of the Association for Play Therapy, Sacramento, CA.

53. Shelby, J.S. (2011, November). *Compassion fatigue, vicarious traumatization, and secondary stress*. Keynote speech presented at the 10th annual Skip Hinchman Memorial Symposium sponsored by The Guidance Center. Los Angeles, CA.

54. Shelby, J.S. (2012, March). *Play-based treatment for young survivors and their parents*. Sponsored by Life Skills Organization. Bowling Green, KY.

55. Shelby, J.S. (2012, July). *CBT and play therapy: How play therapists can make use of their skill in an EBT-driven county*. Full-day seminar presented at the Los Angeles Chapter of the Association for Play Therapy. Los Angeles, CA.

56. Shelby, J.S. (2012, September). *Cognitive behavioral play therapy*. Full-day keynote seminar presented at the Colorado Association for Play Therapy Fall Conference. Englewood, CO.

57. Shelby, J.S. (2012, September). *Play Therapists in a strange new world: How to survive and thrive in an era of evidence-based treatments*. Full-day keynote seminar presented at the Colorado Association for Play Therapy Fall Conference. Englewood, CO.

58. Shelby, J.S. (2015, Sept.). *Safety-based interventions for play therapists*. Keynote seminar presented at the Northern California Chapter of the California Branch of the Association for Play Therapy, Sacramento, CA.

59. Shelby, J.S. (2015, October). *Trauma-based interventions for Asian American youth: Blending Western treatments with Eastern values*. Invited presentation at the 21st Annual Asian American Mental Health Conference. Invited address sponsored by the Los Angeles County Department of Mental Health. Alhambra, CA.

60. Barbour, JM, Ramos, T., Shelby, J.S. (2016, January). *Homeless Individuals and Trauma*. Panel presentation at the 24th Annual Empowerment Congress Summit. Sponsored by the Los Angeles County Board of Supervisors and Mark Ridley Thomas. Los Angeles, CA.

61. Shelby, J.S. (2016, January). *Safety-based interventions for play therapists*. Keynote seminar presented at the Orange County Chapter of the California Branch of the Association for Play Therapy, Orange, CA.

62. Shelby, J.S. (2016, March). *Safety-based interventions for play therapists*. Keynote presentation workshop presented at the Wisconsin Branch of the Association for Play Therapy, Milwaukee, WI.

63. Shelby, J.S. (2016, March). *Safety-based interventions for childhood maltreatment*. Keynote presentation at the Guidance Center, Long Beach CA.

64. Shelby, J.S. (2016, May). *Evidence-based treatments in real world settings*. Invited seminar. Sponsored by PE the Los Angeles County Department of Mental Health. Hawaiian Gardens, CA

65. Shelby, J.S. (2016, June). *Trauma-based interventions for Asian American youth: Blending Western treatments with Eastern values*. Invited full-day county-wide seminar sponsored by the Los Angeles County Department of Mental Health. Gardena, CA

66. Shelby, J.S. (2017, June). *Cognitive Behavioral Play Therapy*. Japanese Psychological Association. Kobe, Japan.

67. Shelby, J.S. (2017, September). *Evidence-Based Psychological Interventions*. Annual meeting of the Kobe College Corporation-Japan Education Exchange. Chicago, IL.

68. Shelby, J.S. (2017, October). *Inside the mind of the perpetrator: College campus sexual offenders.* Invited lecture sponsored by the National District Attorneys' Association. New Orleans, LA.

69. Shelby, J.S. & Van Nice, A. (2017, October). *Understanding victims' responses*. Invited lecture sponsored by the National District Attorneys' Association. New Orleans, LA.

70. Shelby, J.S. (2018, August). *Inside the mind: Understanding Paraphilic Disorders*. Invited lecture sponsored by the National District Attorneys' Association. Bellevue, WA.

71. Shelby, J.S. (2018, August). *Neurophysiology of trauma*. Invited lecture sponsored by the National District Attorneys' Association. Bellevue, WA.

72. Shelby, J.S. (2018, October). *Responding to tragedy and mass-scale disaster with play therapy*. Invited presentation at the Annual Association for Play Therapy, Phoenix, AZ.

73. Shelby, J.S. (2018, October). *Play therapists in troubled times: The art of bearing hope in a culture of violence.* Keynote speech at the Annual Association for Play Therapy, Phoenix, AZ.

74. *Shelby, J.S. (2019, October). Trauma-informed care.* Invited keynote presentation at Aspiranet Leadership meeting. Turlock, CA.

75. *Shelby, J.S. (2019, November). Compassion fatigue.* Invited keynote presentation at Aspiranet recruitment fair. Turlock, CA.

76. Shelby, J.S. (2020, February). *Secondary traumatic stress reduction strategies for play therapists*. Invited full-day, keynote presentation at the Annual Hawaii Association for Play Therapy, Honolulu, HI.

77. Shelby, J.S. (2020, February). *Acute intervention following disasters and other tragic events*. Invited full-day, keynote presentation at the Annual Hawaii Association for Play Therapy, Honolulu, HI.

78. Shelby, J.S. (2021, February). *Acute intervention following disasters and other tragic events*. Invited full-day, keynote presentation at the Colorado Association for Play Therapy, Denver, CO.

79. Shelby, J.S. (2022, October). *Early psychological intervention for children following tragic events.* Collective Trauma Summit 2022.

## Grand Rounds Lectures

1. Shelby, J.S. (2006, May). *International disaster relief and mental health*. Department of Psychiatry Grand Rounds. Harbor-UCLA, Torrance, CA.

2. Shelby, J.S. (2006, October). *Developmentally sensitive posttraumatic treatment for children*. Child and Adolescent Psychiatry Grand Rounds, Harbor-UCLA, Torrance, CA.

3. Shelby, J.S. (2007, August). *Childhood Posttraumatic Stress Disorder*. Pediatrics Grand Rounds, Harbor-UCLA Medical Center, Torrance, CA.

4. Shelby, J.S. (2007, September). *Childhood sexual assault forensics and treatment*. Pediatrics Grand Rounds, Harbor-UCLA Medical Center, Torrance, CA.

5. Shelby, J.S. (2008, March). *Innovations in Posttraumatic Stress Disorder treatments for children*. Psychiatry Grand Rounds, UCLA Semel Institute, Los Angeles, CA.

6. Shelby, J.S. (2009, August). *Child psychological assessment*. Child Psychiatry Grand Rounds, Harbor-UCLA Medical Center, Torrance, CA.

7. Shelby, J.S. (2015, January). *Child psychological assessment in clinical practice*. Child and Adolescent Psychiatry Grand Rounds presentation. Harbor-UCLA. Torrance, CA.

8. Shelby, J.S. (2015, April). *Teenagers and sexting: When privates go public*. Psychiatry Grand Rounds, Harbor-UCLA Medical Center, Torrance, CA.

9. Shelby, J.S. (2016, February). *Compassion Fatigue for Helping Professionals*. Nursing Department Grand Rounds, Harbor-UCLA Medical Center, Torrance, CA.

10. Shelby, J.S. (2016, October). *Family-based trauma treatment*. Psychology Division Grand Rounds/Case Conference. Kobe College. Hyogo, Japan.

11. Shelby, J.S. (2016, November). *Psychological Assistance Following Disaster: Western Interventions for Eastern Cultures*? Kobe College Research Rounds. Hyogo, Japan.

### Selected Additional Lectures and Presentations

1. Shelby, J.S. (1996, June). *Crisis intervention with children and their parents*. Paper presented at the Society for Psychological Assistance Public Lecture Series, Zagreb, Croatia.

2. Shelby, J.S. (1996, September). *Responding to traumatized children*. Seminar conducted at the Children's Bureau of Los Angeles, Los Angeles, CA.

3. Shelby, J.S. (1996, November). *Treating young survivors of natural disaster*. Presented at the Pasadena Chapter of the American Red Cross, Pasadena, CA.

4. Shelby, J.S. (1997, April). *Ethical treatment of sexual assault patients*. Presentation conducted at the VA Hospital, West Los Angeles, California.

5. Shelby, J.S. (1999, July). *Healing the wounds of trauma: Posttraumatic therapy with children and the treatment of sexual assault survivors*. Two-day, self-sponsored seminar conducted in Santa Monica, CA.

6. Shelby, J.S. (2000, April). *Responding to sexual assault patients*. Seminar conducted at the Adolescent Medicine Clinic, Children's Hospital, Los Angeles, CA.

7. Shelby, J.S. (2000, May). *Compassion fatigue*. Workshop conducted at the Department of Psychiatry, Kaiser Permanente Hospital, Los Angeles, CA.

8. Shelby, J.S. (2000, June). Compassion fatigue. Workshop conducted at Didi Hirsch Community Mental Health Center for the Children's Mental Health Program, Culver City, CA.

9. Shelby, J.S. (2000, September). *Treating adult survivors of sexual assault*. Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

10. Shelby, J.S. (2000, September). *Healing the wounds of trauma: Posttraumatic therapy for adults*. Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

11. Shelby, J.S. (2001, May). *Developmentally sensitive play therapy*. Seminar sponsored by Didi Hirsch Community Mental Health Center, Culver City, CA.

12. Shelby, J.S. (2001, July). *Healing the wounds of trauma: Treating adult survivors of sexual assau*lt. Self-sponsored seminar, Hollywood, CA.

13. Shelby, J.S. (2001, July). *Healing the wounds of trauma: Developmentally sensitive posttraumatic play therapy*. Self-sponsored seminar, Hollywood, CA.

14. Shelby, J.S. (2001, November). *Compassion fatigue*. Invited address at Los Angeles County Sponsored "Mental Health in Schools: Partners in Promoting School Success" Conference, Pasadena, CA.

15. Shelby, J.S. (2002, January). *Compassion fatigue*. Seminar presented at Hollygrove, Los Angeles, CA.

16. Shelby, J.S. (2002, February). *Developmentally sensitive play therapy*. Seminar sponsored by Didi Hirsch Community Mental Health Center, Culver City, CA.

17. Shelby, J.S. (2002, March). *Developmentally sensitive play therapy*. Seminar presented for El Nido, North Hills, CA.

18. Shelby, J.S. (2002, April). *Compassion fatigue*. Seminar presented for Child and Family Services, Montecito, CA.

19. Shelby, J.S. (2002, June). *Compassion fatigue*. Seminar presented for The Sycamores, Pasadena, CA.

20. Shelby, J.S. (2002, November). *Compassion fatigue*. Seminar presented for the California Professional Society on the Abuse of Children (CAPSAC), Santa Monica, CA.

21. Shelby, J.S. (2003, January). *Healing the wounds of trauma: Posttraumatic therapy*. Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

22. Shelby, J.S. (2003, January). *Posttraumatic play therapy*. Seminar sponsored by Didi Hirsch Community Mental Health Center, Culver City, CA.

23. Shelby, J.S. (2004, August). *Healing the wounds of trauma: Posttraumatic therapy*. Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

24. Shelby, J.S. (2004, October). *Posttraumatic play therapy*. Seminar presented at the University of North Texas Annual play therapy fall conference. Denton, TX.

25. Shelby, J.S. (2004, December). *Play therapy for sexually abused children*. Invited workshop presented for the Kentucky Coalition Against Sexual Assault, Louisville, KY.

26. Shelby, J.S. (2005, January).  *Healing the wounds of trauma:  Posttraumatic therapy*. Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

27. Shelby, J.S. (2005, April). *Developmentally sensitive posttraumatic play therapy*.  Workshop conducted at Baylor University, Waco, TX.

28. Shelby, J.S. (2005, April).  *Healing the wounds of trauma:  Posttraumatic therapy*.  Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

29. Shelby, J.S. (2005, May).  *Healing the wounds of trauma:  Posttraumatic therapy*.  Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

30. Shelby, J.S. (2005, June).  *Healing the wounds of trauma:  Posttraumatic therapy*.  Seminar presented for the Department of Mental Health, Los Angeles County, Los Angeles, CA.

31. Shelby, J.S. (2005, November). *Psychological First Aid*. Quarterly meeting of the Southern California Child Abuse Prevention Coalition, City of Orange, CA.

32. Shelby, J.S. (2007, March).  *Psychological First Aid*.  Presented at South Bay Disaster Resources Center, Torrance, CA.

33. Shelby, J.S. (2007, March).  *Compassion fatigue*.  Seminar presented for the Westside Domestic Violence Network, Santa Monica, CA.

34. Shelby, J.S. (2007, September).  *Psychological First Aid and related interventions*. Presented at Medical Reserve Corps, Redondo Beach, CA.

35. Shelby, J.S. (2007, September).  *Compassion fatigue and vicarious traumatization*.  Seminar presented at the Chadwick Center for Children and Families, San Diego, CA.

36. Shelby, J.S. & Tredinnick, M.G. (2007, September). *Psychological First Aid.* Presented at Didi Hirsch Community Mental Health Center, Culver City, CA.

37. Shelby, J.S. (2007, October). *Childhood PTSD*.  Presented at Pepperdine University, Culver City, CA.

38. Shelby, J.S. (2007, November).  *Compassion fatigue*.  Seminar presented at Public Counsel, Los Angeles, CA.

39. Shelby, J.S. (2008, January). *Evidence-based treatments of childhood trauma-related disorders*. Inservice Training presented at the Long Beach Child and Adolescent Psychiatry Clinic of the Department of Mental Health, Long Beach, CA.

40. Shelby, J.S. (2008, January). *Evidence-based treatments for children*. Inservice Training provided at St. Francis Medical Center Children's Counseling Center, Lynwood, CA.

41. Shelby, J.S., Avina, C., & Warnick, H. (2008, February). *Using CBT to treat childhood anxiety*. Inservice Training provided at St. Francis Medical Center Children's Counseling Center, Lynwood, CA.

42. Shelby, J.S. (2008, February). *Psychological First Aid and brief intervention*. Seminar presented at the South Bay Disaster Resources Center, Torrance CA.

43. Shelby, J.S., Avina, C., & Warnick, H. (2008, March). *Using CBT to treat childhood depression*. Inservice training provided at St. Francis Medical Center Children's Counseling Center, Lynwood, CA.

44. Shelby, J.S. & Wright, M. (2008, April). *Assessment supervision*. Presentation provided at the Psychology Case Conference, Harbor-UCLA Medical Center, Torrance, CA.

45. Shelby, J.S. (2008, May). *Psychological First Aid and crisis intervention*. Seminar presented at Kaiser Permanente of Harbor City Department of Psychiatry, Los Angeles, CA.

46. Shelby, J.S. (2008, June). *Using CBT to treat PTSD and Acute Stress Disorder*. Inservice training provided at St. Francis Medical Center Children's Counseling Center, Lynwood, CA.

47. Shelby, J.S. (2008, July). *Practical Applications of and problems with evidence-based treatments for children*. Inservice training provided at St. Francis Medical Center Children's Counseling Center, Lynwood, CA.

48. Shelby, J.S. (2008, October) *Psychological First Aid*. Seminar Presented at the South Bay Disaster Resources Center Disaster Mental Health Subcommittee Meeting, Torrance CA.

49. Shelby, J.S. (2009, January). *Evidence-based treatments of childhood trauma-Related Disorders*. Inservice training presented at the St. Francis Medical Center Children's Counseling Center. Lynwood, CA.

50. Shelby, J.S. (2009, February). *Diagnosis of childhood trauma-related disorders*. Inservice training presented at the St. Francis Medical Center Children's Counseling Center, Lynwood, CA.

51. Shelby, J.S. (2009, February). *Treating victims of trauma and violence*. Los Angeles County Department of Mental Health-UCLA Clinical Forum, Los Angeles, CA.

52. Shelby, J.S. (2009, March). *Familial and dyadic treatments for childhood trauma-related disorders*. Inservice training presented at the St. Francis Medical Center Children's Counseling Center, Lynwood, CA.

53. Shelby, J.S. (2009, July). *Clinical supervision using CBT*. Childnet Mental Health Services. Long Beach, CA.

54. Shelby, J.S. (2009, July). *Introduction to CBT for children and adolescents*. Inservice training at Childnet Mental Health Services. Long Beach, CA.

55. Shelby, J.S. (2009, August). *CBT for children and adolescents*. Inservice training at Childnet Mental Health Services, Long Beach, CA.

56. Shelby, J.S. (2011, December). *Compassion fatigue, vicarious traumatization, and secondary stress*. Panelist speech presented at the Psychological Services Development Committee meeting, Department of Mental Health, Los Angeles County. Los Angeles, CA.

57. Shelby, J.S. (2012, March). *Blending play therapy with cognitive behavioral therapy*. Inservice training at Didi Hirsch Mental Health Services. Culver City, CA.

*58.* Shelby, J.S. (2021, October). Assessment of Child Trauma Survivors. Invited lecture to Harbor-UCLA Post-doctoral fellows affiliated with the Safe Harbor. Harbor-UCLA, Torrance, CA.

## Selected International Seminars and Trainings

1. Shelby, J.S. (1996, May). *Crisis intervention with children and their parents*. Lecture provided at the University of Zagreb, Croatia.

2. Shelby, J.S. (1996, May). *Crisis intervention with children and their parents*. Lecture provided at the University of Zagreb, Croatia.

3. Shelby, J.S. (1998, October). *Harm-reduction in sexually traumatized prostitutes*. Seminar conducted at Medicens du Monde, Saint-Petersburg, Russia.

4. Shelby, J.S. (1998, November). *Treating traumatized children*. Seminar conducted at Doctors of the World, Saint-Petersburg, Russia.

5. Shelby, J.S. (1999, May). *The neurobiophysiology of trauma and contemporary psychological treatment models*. Lecture sponsored by International Medical Corps, Tirane, Albania.

6. Shelby, J.S. (2000, March). *Compassion fatigue among therapists*. Workshop conducted at the Centro de Antonio Villagrosa, Managua, Nicaragua.

7. Shelby, J.S. (2000, August). *Treating young survivors of trauma*. Invited address to the School of Medicine, Hualien University, Hualien, Taiwan.

8. Shelby, J.S. (2000, August). *Compassion fatigue*. Invited address to the School of Medicine, Hualien University, Hualien, Taiwan.

9. Shelby, J.S. (2000, August). *Treating young survivors of trauma*. Invited address to the Tzu Chi Organization, Nantou County, Taiwan.

10. Shelby, J.S. (2000, August). *Treating young survivors of trauma: What teachers can do to assist young survivors*. Invited address sponsored jointly by Tzu Chi and Operation USA, Nantou County, Taiwan.

11. Shelby, J.S. (2001, August). *Treating young survivors of trauma*. Invited address to Save the Children and SUMBI, Lima, Peru.

12. Shelby, J.S. (2001, November). *Treating young survivors of earthquakes*. Invited address to Save the Children and SUMBI, Lima, Peru.

13. Shelby, J.S. (2005, January). *Crisis and acute intervention with children and their caretakers*. Invited presentation for Sarvodaya Buddhist Relief Organization Preschool Teachers, Colombo, Sri Lanka.

14. Shelby, J.S. (2005, January). *Crisis and acute intervention with children and their caretakers*. Invited presentation at Sarvodaya Headquarters, Colombo, Sri Lanka.

15. Shelby, J.S. (2005, January). *Crisis and acute intervention for relief organizations responding to the Sri Lankan Tsunami*. Seminar sponsored by Operation U.S.A., Colombo, Sri Lanka.

16. Shelby, J.S. (2008, August). *Children's psychological trauma*. Five-day workshop sponsored by the Japan Play Therapy Association, Tokyo, Japan.

17. Shelby, J.S. (June, 2010). *Play therapy in a new era: How play therapists must change to meet the demands of evidence-based practice*. Paper presented at the 10th annual International Play Therapy Study Group, Wroxton, England.

18. Kobayashi, T. & Shelby, J.S. (February, 2017). *Psychological assistance with children following traumatic events: A comparison of Western and Japanese approaches*. Symposium sponsored by the Nishinomiya Children's Counseling Center. Nishinomiya, Japan.

19. Shelby, J.S. and Tominaga, T. (June, 2017). *Posttraumatic psychological interventions*. Japanese Psychological Association, Kobe, Japan.

20. Shelby, J.S. (2017, July). *Disaster mental health*. Presentation to graduate students of the Japan Disaster Reduction and Human Renovation Institution, Kobe, Japan.

21. Shelby, J.S. (2017, July). *Evidence-based treatments for childhood trauma*. Two-day workshop sponsored by the Japan Play Therapy Association, Tokyo, Japan.

22. Shelby, J.S. (2022, March). *Death notification and best practice standards for early intervention with war-exposed youth*. Live on-line training sponsored by Child & Adolescent Mental Health Counseling Branch; Association for Psychological Counseling & Trauma Therapy of Ukraine.

23. Shelby, J.S. (2022, March). *Play based interventions with war-exposed children*. Live online training sponsored by the Child & Adolescent Mental Health Counseling Branch; Association for Psychological Counseling & Trauma Therapy of Ukraine.

**BIBLIOGRAPHY**:

RESEARCH PAPERS - PEER REVIEWED

1. **Shelby, J. S**. & Tredinnick, M. G. (1995).  Crisis intervention with survivors of natural disaster: Lessons from Hurricane Andrew. *Journal of Counseling & Development, 73*, 491-497.

2. Tominaga, Y**.**, Goto, T., **Shelby, J.S**., Oshio, A., Nishi, D. & Takahashi, S. (2019) Secondary trauma and posttraumatic growth among mental health clinicians involved in disaster relief. *Counselling Psychology Quarterly* DOI: 10.1080/09515070.2019.1639493.

3. Sudo, H., **Shelby, J.S.,** Tomoko Kuniyoshi, T., Ishitani, S., Tsuruta, H., & Kobayashi, T. (2022). *Play Therapists in Japan: Training, Methods, Practices, and Perceptions*. Manuscript under review.

RESEARCH PAPERS - NON-PEER REVIEWED

1. **Shelby, J. S**. (1994).  "Dr. Circle Teacher" talks about play therapy with children following natural disaster. *California Association for Play Therapy Newsletter, 2,* 3-5.

2. **Shelby, J. S**. (1994).  Group crisis intervention with children in disaster-relief shelters. *The Child, Youth, and Family Services Quarterly (a Division of the American Psychological Association), 12,* 12-16.

3. **Shelby, J.S**. (1996).  Children used to play here. *California Association for Play Therapy Newsletter, 5,* 3-6.

4. **Shelby, J.S**. (1997).  The effects of play therapy on the play therapist.  *California Association for Play Therapy Newsletter, 6,* 1-2.

5. **Shelby, J.S**., Bond, D., Hall, R., & Hsu, C. (2004, Fall). *A treatment manual to enhance coping among young tsunami survivors.* (Available from Operation USA, 3617 Hayden Av., Culver City, CA, 90232).

6. **Shelby, J.S**. (2007) *Posttraumatic Play Therapy: An evidence-informed treatment manual for children*. Unpublished Manuscript.

7. **Shelby, J.S**. (2007). Play therapy and evidence-based practice for traumatized children. *Play Therapy Magazine, 2 (3),* 23-25.

8. Baggerly, J., Burns, B., Bratton, S., Crenshaw, D., Gil, E., Ray, D., **Shelby, J.,** Sweeney, D. (September, 2008). *Task Force Report: APT responds to the CDC regarding play therapy*. Retrieved from http://www.a4pt.org/download.cfm?ID=27127

9. **Shelby, J.S**. (2009, August). *Developmental Trauma*. Association for Play Therapy Mining Report.  Retrieved from http://www.a4pt.org//ps.index.cfm?ID=1996

10. Baggerly, J., **Shelby, J.S**., Benedict, H., Bratton, S., Gil, E., LeBlanc, M., Ray, D., & Stewart, A. (2009, October). *Association for Play Therapy Research Statement*. Retrieved from http://www.a4pt.org/download.cfm?ID=28318

11. **Shelby, J.S**. (September, 2010). The state of the evidence for play therapy crisis intervention with traumatized children. *Association for Play Therapy Magazine, 5 (3,)* pp.11-14.

12. **Shelby, J.S**. (Fall, 2017). Psychological care following natural disasters: When Western-oriented treatments collide with cultural norms and values. *Kobe College Newsletter.*

13. **Shelby, J.S**. (Fall, 2017). Cognitive Behavioral Therapy (CBT) for Japanese children: A cultural and conceptual-linguistic perspective. *Kobe College Scientific Journal*. Nishinomiya, JP

14. **Shelby, J**. (2019, June). Too tired to play? Play therapists and secondary traumatic stress. *Association for Play Therapy Magazine, 14 (2),* pp. 16-19.

CHAPTERS

1. **Shelby, J. S.** (1997). Rubble, disruption, and tears:  Helping young survivors of natural disaster. In H. Kaduson, D. Cangelosi, and C. Schaefer (Eds.), *The playing cure* (pp. 143-169). Northvale, NJ: Jason Aronson.

2. **Shelby, J.S**. (2000).  Brief play therapy with traumatized children: A developmental perspective.  In H. Kaduson, and C. Schaefer (Eds.), *Short-term play therapy interventions with children* (pp.169-243).  New York, NY: Guilford.

3. **Shelby, J.S**. & Felix, E. (2005).  Posttraumatic Play Therapy:  An integrated model of directive and non-directive approaches.  In L. Reddy, T. Files-Hall, and C. Schaefer (Eds.), *Empirically based play therapy* (pp.79-103).  Washington, DC:  APA Press.

4. Felix, E., Bond, D., & **Shelby, J.S.** (2006). Coping with disaster: Psychosocial interventions for children. In C. Schaefer and H. Kaduson (Eds.), *Contemporary play therapy: Theory, research, and practice* (pp.307-326). New York, NY: Guilford.

5. **Shelby, J.S**. & Berk, M.J. (2008). CBT, play therapy, and pedagogy: An argument for synthesis. In A.A. Drewes (Ed.), *Effectively blending play therapy and cognitive behavioral therapy: A convergent approach* (pp. 17-40). New York, NY: Wiley & Sons.

6. **Shelby, J.S.**, Avina, C., & Warnick, H.  (2010). Posttraumatic Parenting: A Parent-Child Dyadic treatment for young children's posttraumatic adjustment. In C.S. Schaefer (Ed.), *Play therapy for preschool children* (pp.69-87). Washington, D.C.: APA Press.

7. **Shelby, J.S.** (2010). Cognitive behavioral therapy and play therapy for Childhood Trauma and Loss. In N. Webb (Ed.), *Helping bereaved children: A handbook for practitioners* (3rd ed., pp. 263-277). New York, NY: Guilford.

8. Tangemann, K. & **Shelby, J.S.** (2011). Intervention applications for self-injurious behavior following sexual abuse. In P. Goodyear-Brown (Ed.), *Handbook of play therapy for sexual abuse*. New York, NY: Wiley & Sons.

9. **Shelby, J.S.** & Campos, K.B. (2011). Cognitive behavioral play therapy for traumatized children: Evidence, ideology, and practice. In A.A. Drewes, C.S. Schaefer, and S. Bratton (Eds.), *Integrative play therapy*. New York, NY: Wiley & Sons.

10. Berk, M., **Shelby, J.S.**, Avina, C. & Tangemann, K. (2014). Dialectical Behavior Therapy for suicidal and self-harming adolescents with trauma symptoms. In S. Timmer and A. Urquiza (Eds.), *Evidence-based approaches for the treatment of maltreated children* (pp. 215-236). New York, NY: Springer.

11. **Shelby, J.S.** & Maltby, L. (2014). Child Maltreatment: Safety-based clinical strategies for play therapists. In D.A. Crenshaw & A.L. Stewart (Eds.), *Play therapy: A comprehensive guide to theory and practice* (pp. 336-352). New York, NY: Guilford.

12. **Shelby, J.S.**, Aranda, Asbill, L., and Gallagher, J. (2015). Simple interventions for complex trauma: Play-based safety and affect regulation strategies for child survivors. In E. Green & A. Myrick (Eds.), *Play therapy with vulnerable populations: No child forgotten* (pp. 43-64). Lanham, MD: Rowman and Littlefield.

13. **Shelby, J.S.** (2015). Family-based cognitive behavioral therapy. In E. Green, J., Baggerly, and A. Myrick (Eds.), *Integrative family play therapy: A new paradigm* (pp. 3-20). Lanham, MD: Rowman and Littlefield.

14. **Shelby, J**., Ellingsen, R., & Schaefer, CE (2016). Play therapy: 21st century progress. In C. E. Schaefer, K. O'Conner, & L. Braverman (Eds.), *Handbook of play therapy, second edition* (pp. 563-581). New York, NY:  John Wiley & Sons.

15. **Shelby, J.S.** (2018). Cognitive behavioral therapy. In E. Green, J., Baggerly, and A. Myrick (Eds.), *Cognitive Behavioral Therapy with Pre-Adolescents* (pp. 15-33). Lanham, MD: Rowman and Littlefield.

16. **Shelby, J.S.** (2019). Play interventions for young survivors of disaster, terrorism, and other tragic events. In H. G. Kaduson, D. Cangelosi, and C.E. Schaefer (Eds.), *Prescriptive play therapy: Tailoring interventions for specific childhood problems* (pp. 107-126). New York, NY: Guilford.

17. **Shelby, J.S.** (2021). Early play-based interventions for children following disastrous events: From principles to practice. In C. Mellenthin, J. Stone, Grant (Eds.). *Implementing play therapy with groups* (pp. 203-217). Oxfordshire, United Kingdom: Routledge.

18. **Shelby, J.S.** (in progress). Treating young survivors of child sexual abuse. In D.A. Crenshaw & A.L. Stewart (Eds.), *Play therapy: A comprehensive guide to theory and practice, Second Edition*. Guilford.

19. **Shelby, J.S**. (in progress). Secondary traumatic stress among child-focused clinicians. In S. Noziska-Kinney (Ed.), *Play therapy and childhood sexual abuse: A clinical guide to practice.* Routledge.

DIGITAL VIDEO DEVICE

Goodyear-Brown, P., Riviere, S., & **Shelby, J.S.** (Speaker and Actor). (2004) *Evidence-Based Play Therapy Interventions* [DVD]. Mill Valley, CA: Psychotherapy.net

SPECIAL CONTRIBUTION TO A PUBLISHED PROTOCOL

Brymer, M., Jacobs, A., Layne, C.S., Pynoos, R., Ruzek, J., Steinberg, A., Vernberg, E., & Watson, P. (2006). *Psychological first aid: Field operations guide.* Los Angeles, CA: National Child Traumatic Stress Network.

**CERTIFICATIONS AND SPECIALIZED TRAINING:**

**Selected Certifications, Credentials, and Designations**
1. Child Forensic Interviewer Certificate: Child Abuse Training and Technical Assistance Center (CATTA) compliant

2.  American Red Cross Mental Health Services and Disaster Services Human Resources (DSHR)
3.  Registered Play Therapist (RPT) and Registered Play Therapist-Supervisor (RPT-S)
4.  Rape Victim Advocate
5.  American Academy of Forensic Psychology Trainings
6.  Specific Treatment Certifications:
    - Parent Child Interaction Training (PCIT), On-Site Trainer
    - Trauma-Focused Cognitive Behavioral Therapy (TF-CBT), Supervisor
    - Alternatives for Families CBT (AF-CBT)
    - Cognitive Behavioral Therapies (for childhood/adolescent depression and anxiety disorders), Supervisor
    - Eye Movement Desensitization & Reprocessing
    - Brief Strategic Family Therapy (BSFT)
    - Psychological First Aid (PFA) for Hospitals, Trainer
    - Prolonged Exposure

**ACADEMIC COURSES TAUGHT:**

**Full Semester Graduate Classes**

| | |
|---|---|
| Cognitive Behavioral Theory and Therapy (Kobe College) | 2016-2017 |
| Counseling Theories 515 (CSULB) | 2019-2021 |
| Counseling Practicum 609 (CSULB) | 2022 |

**Full Semester Undergraduate Classes**

| | |
|---|---|
| Disaster, Adjustment and Recovery (University of Miami) | 1991-1992 |
| Childhood Development (Kobe College) | 2016-2017 |

**Mini-Courses, Sections in a Series**

| | |
|---|---|
| Childhood Trauma Symptoms | 1996-1999 |
| Community Violence and Trauma Reactions | 1998-2000 |
| Vicarious Traumatization | 2007-2016 |
| Childhood Psychological Assessment | 2007-2017 |
| Cultural Diversity Issues | 2015-2016 |
| Trauma-Informed Care | 2019-2020 |

**Harbor-UCLA/LA Dept. of Mental Health**

| | |
|---|---|
| Childhood Psychological Assessment for Children and Adolescents | 2006-2010 |
| Trauma-Focused Psychological Treatments for Children and Adolescents | 2006-2017 |
| Evidence-Based Psychological Treatments | 2008-2017 |

# EXHIBIT E

1  Christopher P. Wesierski [Bar No. 086736]
     *cwesierski@wzllp.com*
2  Michelle R. Prescott [Bar No. 262638]
     *mprescott@wzllp.com*
3  Eileen Spadoni [Bar No. 133259]
     *espadoni@wzllp.com*
4  Brett A. Smith [Bar No. 322707]
     *bsmith@wzllp.com*
5  WESIERSKI & ZUREK LLP
   29 Orchard Road
6  Lake Forest, California 92630
   Telephone: (949) 975-1000
7  Facsimile: (949) 756-0517

8  Bryan J. Freedman, Esq. (SBN: 151990)
     *bfreedman@ftllp.com*
9  Jesse A. Kaplan, Esq. (SBN: 255059)
     *jkaplan@ftllp.com*
10 FREEDMAN + TAITELMAN, LLP
   1801 Century Park West, 5th Floor
11 Los Angeles, California 90067
   Telephone: (310) 201-0005
12 Facsimile:  (310) 201-0045

13 Attorneys for Defendant/Cross-
   Complainant, LINDSEY C. HILL

14

15

16           UNITED STATES DISTRICT COURT

17     CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

18

19 TREVOR BAUER,                        Case No. 8:22-cv-00868 JVS(ADSx)

20           Plaintiff,                 **DEFENDANT LINDSEY C. HILL'S INITIAL DISCLOSURES**

21     vs.                              Trial Date:        None Set

22 LINDSEY C HILL AND NIRANJAN
   FRED THIAGARAJAH,

23           Defendant.

24

25

26       Pursuant to <u>Federal Rule of Civil Procedure</u> 26 and <u>Local Rule</u> 26-1,

27 Defendant Lindsey C. Hill ("Hill") hereby makes the following Initial Disclosures,

28 based on information presently available.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975 1000

## **PRELIMINARY STATEMENT**

1.     By identifying persons in this document, Defendant does not admit or deny the relevancy or admissibility of their testimony, or their availability or competency as witnesses.

2.     By identifying documents and tangible things in this document, Defendants do not admit or deny the relevancy or admissibility of any document or thing.

3.     Defendant reserves the right, if appropriate, to make objections to the production of any documents or tangible things or the answering of interrogatories regarding any matters discussed herein and to move for a Protective Order pursuant to Rule 26, F.R.Civ.P., before producing or allowing any discovery of the matters stated herein.

4.     In making these disclosures, Defendant does not waive the attorney-client privilege, the attorney work-product doctrine, or any other available privilege, doctrine, or immunity.

5.     These disclosures are based upon the factual information available as of the date hereof.  Discovery is only just beginning and factual investigation is continuing at this time.  Defendants reserve the right to amend, supplement or otherwise modify these disclosures in accordance with applicable Rules and any Orders entered by this Court.

## I.     **WITNESSES LIKELY TO HAVE DISCOVERABLE INFORMATION**

Based on the information presently available, and subject to further investigation of the dispute herein, Defendant identifies the following people likely to have discoverable information that Defendant may use to support its defenses:

1.     Trevor Bauer, Plaintiff/Counterdefendant, regarding the circumstances surrounding the allegations contained in the Counterclaims of Defendant/Counterclaimant Lindsey Hill;

2.     Lindsey C. Hill, Defendant/Counterclaimant regarding the

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  circumstances surrounding the allegations contained in the Complaint and

2  Counterclaims of Defendant/Counterclaimant Lindsey Hill;

3        3.  Stephen Chanley, RN. of Alvarado Hospital Medical Center, 6655

4  Alvarado Road, San Diego, CA 92120-5208 . Has information regarding Ms. Hill's

5  May 17, 2021, Emergency Room visit.

6        4.  Dr. Joshua N. Doros, of Alvarado Hospital Medical Center, 6655

7  Alvarado Road, San Diego, CA 92120-5208 . Has information regarding Ms. Hill's

8  May 17, 2021, Emergency Room visit.

9        5.  Brigitte B. Korkuch, PA of Alvarado Hospital Medical Center,

10  6655 Alvarado Road, San Diego, CA 92120-5208 . Has information regarding Ms.

11  Hill's May 17, 2021, Emergency Room visit.

12        6.  Asal Khosroabadi, LCSW (Social Worker) of Alvarado Hospital

13  Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208 . Has

14  information regarding Ms. Hill's May 18, 2021, Emergency Room visit.

15        7.  Officer Sullivan of the San Diego Police Department, 1401

16  Broadway, San Diego, CA 92101.  Has information regarding Ms. Hill's May 18,

17  2021, Emergency Room interview.

18        8.  Detective Giddens of the San Diego Police Department, 1401

19  Broadway, San Diego, CA 92101.  Has information regarding Ms. Hill's May 18,

20  2021, Emergency Room interview and escort to a SART certified facility for

21  examination.

22        9.  Officer Morales of the San Diego Police Department, 1401

23  Broadway, San Diego, CA 92101.  Has information regarding Ms. Hill's May 18,

24  2021, Emergency Room interview and escort to a SART certified facility for

25  examination.

26        10.  Dr. Harshawn Malhi of Alvarado Hospital Medical Center, 6655

27  Alvarado Road, San Diego, CA 92120-5208, regarding May 17, 2021 CT imaging

28  of Ms. Hill.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

11.     Kelly Valencia, RN of Palomar Health Forensic Health Services – Poway, 15615 Pomerado Road, Poway, CA 92064. Has information regarding the SART examination of Ms. Hill.

12.     Dr. Varinthrej Pitis of Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130.  Has information regarding Ms. Hill's follow up medical care on June 3, 2021.

13.     Dr. Erica Moses, San Diego Center for Trauma Recovery, 1761 Hotel Circle S, Ste. 315, San Diego, CA 92108. Has information regarding Ms. Hill's therapy following sexual assault.

14.     Investigator Russell Greene, alleged investigator for Shawn Holley of Kinsella Weitzman Iser Kump LLC.

15.     Richard Hill, who can be contacted through Counsel for Ms. Hill, who has information about the medical condition of Ms. Hill following her hospitalization on May 17, 2021. Also, received communications from attorney Dan Gilleon regarding intention to release unfavorable information about Ms. Hill to Mr. Bauer's attorneys.

16.     Lorinda Hill, who can be contacted through Counsel for Ms. Hill, who has information about the medical condition of Ms. Hill following her hospitalization on May 17, 2021.

17.     Derek Dawson, address unknown.  Has information regarding text and direct messages with Ms. Hill.

18.     Detective Kimberly Jones of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101. Has information regarding the investigation of the sexual assault of Ms. Hill by Mr. Bauer.

19.     Detective Derek Blackmon of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101. Has information regarding the investigation of the sexual assault of Ms. Hill by Mr. Bauer. [5/18/21 Body Cam Video]

4

20.     Detective Murphy of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101. Has information regarding the investigation of the sexual assault of Ms. Hill by Mr. Bauer. [6/5/21 Body Cam Video]

21.     Kyle Erikson, cousin to Ms. Hill, 7150 West 20th Ave. #106, Lakewood, CO 80214.  Has information regarding the Ms. Hill's communications with Mr. Bauer and Mr. Bauer's sexual assault of Ms. Hill.

22.     Ciramely Maya friend of Ms. Hill, 31074 Camino del Este, Temecula, CA 92591. Has information regarding the Ms. Hill's communications with Mr. Bauer and Mr. Bauer's sexual assault of Ms. Hill.

23.     Lafael Justin Veasau friend of Ms. Hill, 9320 Artesia Blvd., Apt. 2, Bellflower, CA 90706.

24.                           , address and contact information unknown.

25.                       , address and phone number unknown.

26.     Lisa Decker, address unknown. Ms. Hill's friend and AA Sponsor. Communicated frequently with Ms. Hill in aftermath of sexual contact with Mr. Bauer and throughout DVRO proceeding.

27.     Niranjan Fred Thiagarajah, who may be contacted through counsel for Mr. Thiagarajah, who has non-privileged information about the facts and circumstances alleged in the Complaint..

28.     Michael Clevenger, address and phone number unknown. Former teammate and well-known associate of Mr. Bauer.

29.     Rachel Luba, address and phone number unknown. Mr. Bauer's Baseball Agent. Known contact with Mr. Bauer's previous Ohio accusers. Has issued public statements challenging the veracity of Ms. Hill's allegations against Mr. Bauer. Familiar with Mr. Bauer's sexual practices.

30.     Tony Prince, address unknown,  attended birthday party with Ms. Hill in Los Angeles, CA residence immediately prior to Ms. Hill's second sexual encounter with Mr. Bauer.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

31.     Urgent Care Intake Doctor/Nurse/Medical Professional, of American Family Urgent Care, 8590 Rio San Diego Dr., #111, San Diego, CA 92108. Has information regarding Ms. Hill's medical condition on May 17, 2021. Advised Ms. Hill's referral to Alvarado Hospital Medical Center.

32.     Lynn Greenemay, Store Manager at Lululemon in San Diego regarding Ms. Hill's time off from work.

33.     Melissa Munster, Current Supervisor of Ms. Hill at Lululemon in Sand Diego, regarding Ms. Hill's residual effects of the battery and sexual battery.

34.     Marylou Rodgers Ms. Hill's supervisor at Ohana House Sober Living in San Diego, Ca.

Defendant reserves the right to amend and supplement this information as additional facts and evidence become known.

## II.     DOCUMENTS DEFENDANTS MAY USE TO SUPPORT DEFENSE

By identifying documents and tangible things in this document, Defendant do not admit or deny the relevancy or admissibility of any document or thing. Defendant reserves the right, if appropriate, to make objections to the production of any documents or tangible things or the answering of interrogatories regarding any matters discussed herein and to move for a Protective Order pursuant to Rule 26, F.R.C.P., before producing or allowing any discovery of the matters stated herein. In making these disclosures, Defendant does not waive the attorney-client privilege, the attorney work-product doctrine, or any other available privilege, doctrine, or immunity.  If Defendant agrees to the production of documents or tangible things, they will be produced through Defendant's counsel of record.

1.     Medical and Billing Records for Ms. Hill from Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208

2.     SART Report from Palomar Health Forensic Health Services – Poway, 15615 Pomerado Road, Poway, CA 92064, including 84 photographs.

3.     Medical and Billing Records for Ms. Hill from Dr. Erica Moses

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

of San Diego Center for Trauma Recovery, 1761 Hotel Circle S. Ste. 315, San Diego, CA 92108.

4.    Medical and Billing Records for Ms. Hill from Dr. Varinthrej Pitis of Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130 for follow up care after in June of 2021.

5.    Extraction Report of Ms. Hill's phone regarding photographs taken of Ms. Hill between May 16, 2021 and May 18, 2021.

6.    8 Photographs of Ms. Hill taken between May 16, 2021 and May 18, 2021 documenting the injuries to Ms. Hill's face.

8.    Any and all photographs of Ms. Hill taken as part of the May 17, 2021 SART Report at Palomar Health Forensic Health Services – Poway.

9.

10    Audio of Plaintiff and Ms. Hill's telephone conversation during a "Pretext Call" made at the behest of the Pasadena Police Department on or about May 22, 2021.

11.    All documents, photographs, video and meta data produced in the DVRO hearing.

12.    "Body Cam" Video and Audio footage from PPD Officers' interview with Ms. Hill on May 18, 2021.

13.    "Body Cam" Video and Audio footage from PPD Officers' interview with Ms. Hill on June 5, 2021.

## III.    <u>CALCULATION OF DAMAGES</u>

A computation of damages claimed by Ms. Hill:

Ms. Hill seeks to recover non-economic damages caused by her injuries according to proof at trial.

Hill suffered from physical injuries to her head and face, including an acute head injury.  This resulted in pain, suffering and discomfort in Hill's head, face and jaw.  The jaw pain lasted over a month.  Hill's head injury also resulted in

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  concussion-like symptoms that lasted for several weeks.  The head injury also

2  caused vomiting, difficulty getting out of bed and constant sleeping.  Hill had

3  extreme difficulty opening her mouth and had difficulty eating.  Hill also suffered

4  from swelling and excruciating bruising on her face that lasted over a week.  Hill

5  could not sleep on her left side because of pain and swelling.  Hill also suffered

6  from bruising on her gums and a split open lip which made it difficult to eat and

7  drink.  Hill also suffered from a welt on the left side of the top of her head.

8       Hill suffered from a physical injury to her vagina/groin area.  This resulted in

9  pain, suffering and discomfort.  This also caused bruising.

10      Hill suffered from a physical injury to her buttocks.  This resulted in pain,

11  suffering and discomfort.  This also caused bruising.  She had difficulty sitting.

12      Hill suffered from a physical injury to her anus from being sodomized.  This

13  resulted in pain, suffering and discomfort.  She was also bleeding from her anus.

14      Hill suffered from injuries as result of being choked to the point of

15  unconsciousness.  This resulted in pain/headache, suffering, discomfort, being

16  lightheaded and dizzy, nausea, confusion and feeling like she could barely move her

17  body.

18      Hill also suffered from severe mental and emotional distress, depression, fear,

19  humiliation/embarrassment and anxiety.  That had a negative effect on her life.

20      Hill seeks to recover medical expenses she incurred.  This includes the

21  following providers: Alvarado Medical Center; Scripps; and Center for Trauma

22  Recovery.  Hill will produce documents reflecting the specific expenses incurred.

23      Hill seeks to recover for past and future lost wages.  Hill lost wages at her job

24  at Lululemon while she was on medical leave.  Hill will produce documentation

25  and/or other evidence reflecting the dates that she was on leave and her hourly rate.

26  Hill also seeks to recover future lost wages related to her contemplated employment

27  at the Ohana College Area Sober Living Environment as a resident life director.

28  Because of both the physical and metal trauma that she suffered, Hill was unable to

1   start that job.

2        Hill seeks punitive and exemplary damages from Bauer according to proof at

3   trial.

4   **IV.**    <u>**APPLICABLE INSURANCE**</u>

5        Defendant Hill is insured under a policy of insurance with California

6   Automobile Insurance Company with limits of $300,000 per occurrence for personal

7   liability, with a reservation of rights.

8        Defendant reserves the right to amend and/or supplement this Initial

9   Disclosure if and when additional documents are located and/or discovered during

10  the course of investigation and discovery.

11

12  DATED:  August 22, 2022        WESIERSKI & ZUREK LLP

13

14

15                                 By:      /s/Christohper P. Wesierski

16                                 CHRISTOPHER P. WESIERSKI
                                   Attorneys for Defendant, Lindsey C. Hill

17

18  DATED:  August 22, 2022        FREEDMAN + TAITELMAN, LLP

19

20

21

22                                 By:      /s/Jesse A. Kaplan

23                                 JESSE A. KAPLAN
                                   Attorneys for Cross-Complainant, Lindsey C.

24                                 Hill

25

26

27

28

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

9

## <u>PROOF OF SERVICE</u>

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of .  My business address is 29 Orchard Road, Lake Forest, CA 92630.

On August 22, 2022, I served true copies of the following document(s) described as **DEFENDANT LINDSEY C. HILL'S INITIAL DISCLOSURES** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address canderson@wzllp.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 22, 2022, at Lake Forest, California.

/s/ CHELSEA ANDERSON
Chelsea Anderson

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1663879-1 MER-5137

DEFENDANT LINDSEY C. HILL'S INITIAL DISCLOSURES

**SERVICE LIST**
**Bauer v. Hill**
**MER-5137**

| | |
|---|---|
| Shawn C. Holley, Esq.<br>Kate E. Mangels, Esq.<br>Suann MacIssac, Esq.<br>Kinsella Weitzman Iser Kump Holley LLP<br>808 Wilshire Blvd, Suite 300<br>Santa Monica, CA  90401<br>Phone: 310-566-9822<br>Fax: 310-566-9850<br>E-Mail: sholley@kwikhlaw.com ;<br>kmangels@kwikalaw.com;<br>smacisaac@kwikhlaw.com | Attorney for Plaintiff, Trevor Bauer |
| Blair G. Brown, Esq.<br>Jon R. Fetterolf, Esq<br>Zuckerman Spaeder LLP<br>1800 M. Street, N. W. Suite 1000<br>Washingtion, D.C  20036<br>Phone: 202-778-1800<br>Fax: 202-882-8106<br>E-Mail: bbrown@zuckerman.com;<br>jfetterolf@zuckerman.com | Attorney for Plaintiff, Trevor Bauer |
| ZUCKERMAN SPAEDER LLP Nell Z. Peyser (admitted pro hac vice) 485 Madison Ave., 10th Floor New York, NY 10022 Tel: (212) 704-9600 Fax: (212) 704-4256<br>npeyser@zuckerman.com | Attorney for Plaintiff, Trevor Bauer |
| David D. Samani, Esq.<br>Lewis Brisbois<br>633 W. 5th Street, Suite 4000<br>Los Angeles, CA  90071<br>Phone: (213) 580-6300<br>E-Mail:<br>Ken.Feldman@lewisbrisbois.com<br>David.Samani@lewisbrisbois.com | Attorney for Defendant, Niranjan Fred Thiagarajah |

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1663879-1 MER-5137

# EXHIBIT F

Christopher P. Wesierski [Bar No. 086736]
  *cwesierski@wzllp.com*
Michelle R. Prescott [Bar No. 262638]
  *mprescott@wzllp.com*
Eileen Spadoni [Bar No. 133259]
  *espadoni@wzllp.com*
Brett A. Smith [Bar No. 322707]
  *bsmith@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Bryan J. Freedman, Esq. (SBN: 151990)
  *bfreedman@ftllp.com*
Jesse A. Kaplan, Esq. (SBN: 255059)
  *jkaplan@ftllp.com*
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile:  (310) 201-0045

Attorneys for Defendant, Lindsey C. Hill

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>            Plaintiff,<br><br>      vs.<br><br>LINDSEY C HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>            Defendant. | Case No. 8:22-cv-00868 JVS(ADSx)<br><br>**DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF/COUNTERCLAIM DEFENDANT TREVOR BAUER'S FIRST SET OF INTERROGATORIES**<br><br>Trial Date:        None Set |

PROPOUNDING PARTY:  PLAINTIFF, TREVOR BAUER

RESPONDING PARTY:    DEFENDANT, LINDSEY C HILL

SET NO.:                        ONE

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975 1000

1   Defendant, LINDSEY C HILL, by and through its attorneys of record,

2   Wesierski & Zurek LLP, responds to plaintiff's first set of interrogatories and

3   copying as follows:

4   PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

5   After a reasonable and diligent search, this responding party will provide

6   copies of all documents in his possession, custody or control which are responsive to

7   each category set forth in this request.  These documents will be produced subject to

8   the objections set forth below.

9   Investigative efforts to locate additional documents are ongoing and will be

10  continuing during the course of this litigation. If documents are discovered which

11  fall within a category of this request and are not subject to an objection set forth

12  herein, these documents will be made available upon proper request.

13  By responding to this request and producing any document, defendant does

14  not concede that any category set forth herein seeks relevant information or seeks

15  information that is reasonably calculated to lead to the discovery of admissible

16  evidence. Defendant expressly reserves the right to any and all objections as to

17  competency, materiality, relevancy, privilege and admissibility of any documents

18  produced and the right to object to further discovery relating to the subject matter of

19  any document produced.

20  Defendant objects generally to these requests to the extent they seek

21  discovery of attorney work product and trial preparation materials or

22  communications protected by the attorney-client privilege.

23  Discovery is still at an early stage and there may be other and further

24  information affecting the Demand for Production of which this responding party

25  despite reasonable investigation and inquiry, is presently unaware.  This responding

26  party is continuing the development of facts and legal issues which are presented in

27  this matter and inquired into by the Demand for Production. This responding party

28  reserves the right to modify or to enlarge these responses with such pertinent

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

2

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF  INTERROGATORIES

1  additional information and documents as may subsequently be discovered.

2  Furthermore, these responses are made by this responding party without prejudice to

3  this responding party's use or reliance at trial on subsequent discovered documents

4  or information or on documents or information omitted from these responses as a

5  result of good faith oversight, error or mistake.

6  No incidental or implied admissions are intended by the responses herein.

7  The fact that this responding party has responded or objected to any request or part

8  thereof shall not be deemed an admission that this responding party accepts or

9  admits the existence of any facts set forth or assumed by such request or that such

10  response or objection constitutes admissible evidence. The fact that this responding

11  party has responded to part or all of any request, is not intended to and shall not be

12  construed as a waiver of any part of any objection to any request.

13  In the event that any document to which an objection is made should be

14  produced inadvertently, such production shall not constitute a waiver of the

15  objection by defendant to the production of the documents produced or similar

16  documents.

17  **INTERROGATORY NO. 1:**

18  State each of your residential addresses from January 1, 2018 to the present.

19  Include the dates in which you resided at each residence.

20  **RESPONSE TO INTERROGATORY NO. 1:**

21  Objection.  Responding Party objects to this request as overbroad in terms of

22  time. Responding Party also objects to the extent it seeks information which is not

23  relevant to the pending litigation and not proportional to the needs of the case.

24  (FRCP 26(b)(1)). Responding Party objects that the request is vague and ambiguous

25  as to the term "residential addresses" and compound. Responding Party objects that

26  the interrogatory violates the privacy rights of Responding Party.

27  Without waiving, and subject to said objections, Responding Party states:

28  14585 Rutledge Sq., San Diego, CA 92128 (1/1/2018 to 12/25/2022); 1800 Captain

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  Freeman Pkwy, Apt 200, Franklin, TN 37064 (February 1, 2023 to present).

2  **INTERROGATORY NO. 2:**

3  State the name and address of each employer you have had from January 1,

4  2018 to the present.

5  **RESPONSE TO INTERROGATORY NO. 2:**

6  Objection.  Responding Party objects to this request as overbroad in terms of

7  time.  Responding Party also objects to the extent it seeks information which is not

8  relevant to the pending litigation and not proportional to the needs of the case.

9  (FRCP 26(b)(1).)  Responding Party objects that the interrogatory violates the

10  privacy rights of Responding Party.

11  Without waiving, and subject to said objections, Responding Party is willing

12  to limit her response to this interrogatory through December 2022. Based on that

13  limitation, she identifies Lululemon Athletica, Inc. 7007 Friars Rd., Unit 890A, San

14  Diego, CA 92108.

15  **INTERROGATORY NO. 3:**

16  State the dates of employment and job title for each employer you have had

17  from January 1, 2018 to the present.

18  **RESPONSE TO INTERROGATORY NO. 3:**

19  Objection. Responding Party objects to this request as overbroad in terms of

20  time. Responding Party also objects to the extent it seeks information which is not

21  relevant to the pending litigation and not proportional to the needs of the case.

22  (FRCP 26(b)(1).)  Responding Party objects that the interrogatory violates the

23  privacy rights of Responding Party. Without waiving, and subject to said objections,

24  Responding Party is willing to limit her response to this interrogatory through

25  December 2022.  Based on that limitation, she states: educator at Lululemon

26  Athletica, Inc. (2018-2022).

27  **INTERROGATORY NO. 4:**

28  For each employment position you have had from January 1, 2018 to the

4

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF  INTERROGATORIES

1  present, state whether you resigned or were terminated from the position.

2  **RESPONSE TO INTERROGATORY NO. 4:**

3       Objection.  Responding Party objects to this request as overbroad in terms of

4  time.  Responding Party also objects to the extent it seeks information which is not

5  relevant to the pending litigation and not proportional to the needs of the case.

6  (FRCP 26(b)(1).)  Responding Party objects that the interrogatory violates the

7  privacy rights of Responding Party.  Without waiving, and subject to said

8  objections, Responding Party states: Hill resigned from Lululemon.

9  **INTERROGATORY NO. 5:**

10       State the name and address of each school or other academic or vocational

11  institution you have attended, beginning with high school.

12  **RESPONSE TO INTERROGATORY NO. 5:**

13       Objection.  Responding Party objects to this request as overbroad in terms of

14  time.  Responding Party also objects to the extent it seeks information which is not

15  relevant to the pending litigation and not proportional to the needs of the case.

16  (FRCP 26(b)(1).)  Responding Party objects that the interrogatory violates the

17  privacy rights of Responding Party.  Without waiving, and subject to said

18  objections, Responding Party states: Rancho Bernardo H.S. San Diego, CA;

19  University of San Diego; Cal. Baptist University in Riverside, and; Cal. State

20  University San Marcos.

21  **INTERROGATORY NO. 6:**

22       Identify any degree or certification you have received from any school or

23  other academic or vocational institution.

24  **RESPONSE TO INTERROGATORY NO. 6:**

25       Objection.  Responding Party objects to this request as overbroad in terms of

26  time. Responding Party also objects to the extent it seeks information which is not

27  relevant to the pending litigation and not proportional to the needs of the case.

28  (FRCP 26(b)(1)).  Responding Party objects that the interrogatory violates the

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

5

1 privacy rights of Responding Party. Without waiving, and subject to said

2 objections, Responding Party states: H.S. Diploma (2012), B.S. Criminal Justice

3 (2017), Paralegal Certificate (2022).

4 **INTERROGATORY NO. 7:**

5     State whether you have ever been convicted of a felony.

6 **RESPONSE TO INTERROGATORY NO. 7:**

7     Objection. Responding Party objects to this request as overbroad in terms of

8 time. Responding Party also objects to the extent it seeks information which is not

9 relevant to the pending litigation and not proportional to the needs of the case.

10 (FRCP 26(b)(1).) Responding Party objects that the interrogatory violates the

11 privacy rights of Responding Party. Without waiving, and subject to said

12 objections, Responding Party states: No.

13 **INTERROGATORY NO. 8:**

14     State whether you have ever been convicted of a misdemeanor.

15 **RESPONSE TO INTERROGATORY NO. 8:**

16     Objection. Responding Party objects to this request as overbroad in terms of

17 time. Responding Party also objects to the extent it seeks information which is not

18 relevant to the pending litigation and not proportional to the needs of the case.

19 (FRCP 26(b)(1)). Responding Party objects that the interrogatory violates the

20 privacy rights of Responding Party. Responding Party objects that the information is

21 not admissible pursuant to Fed. Rules of Evid. Rule 609. Responding Party objects

22 that the information sought is inadmissible character evidence and not admissible

23 pursuant to Fed. Rules of Evid. Rule 404. Responding Party objects that the request

24 is unreasonable and propounded primarily to harass or burden Responding Party.

25 (FRCP 26(g)).

26 **INTERROGATORY NO. 9:**

27     Identify each electronic device you have used for any purpose, including

28 personal and business purposes, from April 1, 2021 to the present. For each mobile

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

6

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF INTERROGATORIES

1  device, identify the telephone number associated with that device. If you, or anyone

2  on your behalf, purchased any new electronic devices for your use between April 1,

3  2021 and the present, you should state that.

4  **RESPONSE TO INTERROGATORY NO. 9:**

5      Objection. Responding Party objects to this request as overbroad in terms of

6  time. Responding Party also objects to the extent it seeks information which is not

7  relevant to the pending litigation and not proportional to the needs of the case.

8  (FRCP 26(b)(1)). Responding Party objects that the interrogatory violates the

9  privacy rights of Responding Party. Responding Party objects that the interrogatory

10  is compound and contains subparts. Responding Party objects that the interrogatory

11  is overbroad in terms of scope. Without waiving, and subject to said objections

12  Responding Party states: 9.A. Devices used for personal purposes since April 1,

13  2021, two iPhones and one MacBook laptop; for work purposes, Responding Party

14  has used computers of her employer;  9.B. 858-213-6648. Responding Party

15  purchased her cell phones.

16  **INTERROGATORY NO. 10:**

17      Identify all persons with knowledge of facts concerning your cause of action

18  for sexual battery alleged in your Counterclaim.

19  **RESPONSE TO INTERROGATORY NO. 10:**

20      Objection. Responding Party objects to this request as overbroad in terms of

21  time. Responding Party objects that the interrogatory calls for attorney-client

22  privileged information. Without waiving, and subject to said objections Responding

23  Party states: Plaintiff Trevor Bauer, Responding Party Lindsey Hill, Stephen

24  Chanley, RN. of Alvarado Hospital Medical Center, 6655 Alvarado Road, San

25  Diego, CA 92120-5208, Dr. Joshua N. Doros, of Alvarado Hospital Medical Center,

26  6655 Alvarado Road, San Diego, CA 92120-5208, Brigitte B. Korkuch, PA of

27  Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-

28  5208, Asal Khosroabadi, LCSW (Social Worker) of Alvarado Hospital Medical

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

7

Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Officer Sullivan of the San Diego Police Department, 1401 Broadway, San Diego, CA 92101, Detective Giddens of the San Diego Police Department, 1401 Broadway, San Diego, CA 92101, Officer Morales of the San Diego Police Department, 1401 Broadway, San Diego, CA 92101, Dr. Harshawn Malhi of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Kelly Valencia, RN of Palomar Health Forensic Health Services – Poway, 15615 Pomerado Road, Poway, CA 92064, Dr. Varinthrej Pitis of Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130, Dr. Erica Moses, San Diego Center for Trauma Recovery, 1761 Hotel Circle S, Ste. 315, San Diego, CA 92108, Richard Hill 1337 Lower Campus Road, Honolulu, HI 96822, Lorinda Hill 1337 Lower Campus Road, Honolulu, HI 96822, Detective Kimberly Jones of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101, Detective Derek Blackmon of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101, Detective Murphy of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101, Kyle Erikson, cousin to Ms. Hill, 7150 West 20th Ave. #106, Lakewood, CO 80214, Ciramely Maya friend of Ms. Hill, 31074 Camino del Este, Temecula, CA 92591, Lafael Justin Veasau friend of Ms. Hill, 9320 Artesia Blvd., Apt. 2, Bellflower, CA 90706, Lisa Decker 1800 Captain Freeman Pkwy, Apt 200, Franklin, TN 37064, Lynn Greenemay, Store Manager at Lululemon in San Diego, Melissa Munster, at Lululemon in San Diego, Marylou Rodgers at Ohana House Sober Living in San Diego, Ca., Investigator Russell Greene, alleged investigator for Shawn Holley of Kinsella Weitzman Iser Kump, LLC, in addition to as yet unidentified officials at Major League Baseball and/or the Office of its Commissioner.

**INTERROGATORY NO. 11:**

Identify all persons with knowledge of facts concerning your cause of action for battery alleged in your Counterclaim.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

**RESPONSE TO INTERROGATORY NO. 11:**

Objection.  Responding Party objects to this request as overbroad in terms of time.  Responding Party objects that the interrogatory calls for attorney-client privileged information. Without waiving, and subject to said objections Responding Party states: Plaintiff Trevor Bauer, Responding Party Lindsey Hill, Stephen Chanley, RN. of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Dr. Joshua N. Doros, of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Brigitte B. Korkuch, PA of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Asal Khosroabadi, LCSW (Social Worker) of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Officer Sullivan of the San Diego Police Department, 1401 Broadway, San Diego, CA 92101, Detective Giddens of the San Diego Police Department, 1401 Broadway, San Diego, CA 92101, Officer Morales of the San Diego Police Department, 1401 Broadway, San Diego, CA 92101, Dr. Harshawn Malhi of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Kelly Valencia, RN of Palomar Health Forensic Health Services – Poway, 15615 Pomerado Road, Poway, CA 92064, Dr. Varinthrej Pitis of Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130, Dr. Erica Moses, San Diego Center for Trauma Recovery, 1761 Hotel Circle S, Ste. 315, San Diego, CA 92108, Richard Hill 1337 Lower Campus Road, Honolulu, HI 96822, Lorinda Hill 1337 Lower Campus Road, Honolulu, HI 96822, Detective Kimberly Jones of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101, Detective Derek Blackmon of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101, Detective Murphy of the Pasadena Police Department, 207 Garfield Ave., Pasadena, CA 91101, Kyle Erikson, cousin to Ms. Hill, 7150 West 20th Ave. #106, Lakewood, CO 80214, Ciramely Maya friend of Ms. Hill, 31074 Camino del Este, Temecula, CA 92591, Lafael Justin Veasau friend of Ms. Hill, 9320 Artesia Blvd., Apt. 2, Bellflower, CA

I1833787-1 MER-5137

DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR BAUER'S FIRST SET OF  INTERROGATORIES

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1   90706, Lisa Decker 1800 Captain Freeman Pkwy, Apt 20, Franklin, TN 37064,

2   Lynn Greenemay, Store Manager at Lululemon in San Diego, Melissa Munster, at

3   Lululemon in Sand Diego, Marylou Rodgers at Ohana House Sober Living in San

4   Diego, CA., Investigator Russell Greene,alleged investigator for Shawn Holley of

5   Kinsella Weitzman Iser Kump, LLC, in addition to as yet unidentified officials at

6   Major League Baseball and/or the Office of its Commissioner.

7   **INTERROGATORY NO. 12:**

8        Identify all persons who provided medical health care services to you from

9   age eighteen (18) to the present. For each person, provide a brief description of the

10  nature of the medical health care services they provided.

11  **RESPONSE TO INTERROGATORY NO. 12:**

12       Objection. Responding Party objects to this request as overbroad in terms of

13  time. Responding Party also objects to the extent it seeks information which is not

14  relevant to the pending litigation and not proportional to the needs of the case.

15  (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and

16  propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

17  Responding Party objects that this interrogatory violates the physician-patient and/or

18  psychotherapist-patient privilege held by Responding Party. Responding Party

19  objects to the extent the interrogatory violates the privacy rights of Defendant.

20  (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy);

21  *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v.*

22  *Experian Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton*

23  *v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47). Without waiving and

24  subject to said objections, Responding Party states she will identify the health care

25  providers that provided treatment for the injuries she received from Plaintiff as

26  follows: Stephen Chanley, RN. of Alvarado Hospital Medical Center, 6655

27  Alvarado Road, San Diego, CA 92120-5208, Dr. Joshua N. Doros, of Alvarado

28  Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Brigitte

10

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF INTERROGATORIES

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  B. Korkuch, PA of Alvarado Hospital Medical Center, 6655 Alvarado Road, San

2  Diego, CA 92120-5208, Asal Khosroabadi, LCSW (Social Worker) of Alvarado

3  Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Dr.

4  Harshawn Malhi of Alvarado Hospital Medical Center, 6655 Alvarado Road, San

5  Diego, CA 92120-5208, Kelly Valencia, RN of Palomar Health Forensic Health

6  Services – Poway, 15615 Pomerado Road, Poway, CA 92064, Dr. Varinthrej Pitis of

7  Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130, Dr.

8  Erica Moses, San Diego Center for Trauma Recovery, 1761 Hotel Circle S, Ste. 315,

9  San Diego, CA 92108, as yet unknown employees of American Urgent Care, 8590

10  Rio San Diego Dr., #111, San Diego, CA 92108.

11  **INTERROGATORY NO. 13:**

12      Identify all persons who provided mental health care services, including

13  therapy and counseling services, to you from age eighteen (18) to the present. For

14  each person, provide a brief description of the nature of the mental health care

15  services they provided.

16  **RESPONSE TO INTERROGATORY NO. 13:**

17      Objection.  Responding Party objects to this request as overbroad in terms of

18  time. Responding Party also objects to the extent it seeks information which is not

19  relevant to the pending litigation and not proportional to the needs of the case.

20  (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and

21  propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

22  Responding Party objects that this interrogatory violates the physician-patient and/or

23  psychotherapist-patient privilege held by this Responding Party. Responding Party

24  objects to the extent the interrogatory violates the privacy rights of Defendant.

25  (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy);

26  *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v.*

27  *Experian Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton*

28  *v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47). Without waiving and

11

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1   subject to said objections, Responding Party states she will identify the health care

2   providers that provided mental healthcare treatment for the injuries she received

3   from Plaintiff as follows: Dr. Erica Moses, San Diego Center for Trauma Recovery,

4   1761 Hotel Circle S, Ste. 315, San Diego, CA 92108.

5   **INTERROGATORY NO. 14:**

6          Identify all persons who provided addiction or substance use health care

7   services, including treatment or counseling for substance use, to you from age

8   eighteen (18) to the present. For each person, provide a brief description of the

9   nature of the addiction or substance use services they provided.

10  **RESPONSE TO INTERROGATORY NO. 14:**

11         Objection. Responding Party objects to this request as overbroad in terms of

12  time. Responding Party also objects to the extent it seeks information which is not

13  relevant to the pending litigation and not proportional to the needs of the case.

14  (FRCP 26(b)(1)). Responding Party object that the interrogatory contains subparts.

15  Responding Party objects that the request is unreasonable and propounded primarily

16  to harass or burden Responding Party. (FRCP 26(g)). Responding Party objects that

17  the interrogatory violates the privacy rights of Responding Party. Responding Party

18  objects that the information sought is inadmissible character evidence and not

19  admissible pursuant to Fed. Rules of Evid. Rule 404. Responding Party objects that

20  this interrogatory violates the physician-patient and/or psychotherapist-patient

21  privilege held by this Respondent. Responding Party objects to the extent the

22  interrogatory violates the privacy rights of Defendant. (*Stallworth v. Brollini* (ND

23  CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One, Inc. v. Does*

24  1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions,*

25  *Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610

26  F3d 530, 539, 541, fn. 47). Responding Party will not provide a response to the

27  interrogatory.

28

I1833787-1 MER-5137

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

**INTERROGATORY NO. 15:**

Identify all dates that you saw any type of health care provider from age eighteen (18) to the present. For each date, provide a brief description of the purpose of the visit, the diagnoses, and the treatment provided.

**RESPONSE TO INTERROGATORY NO. 15:**

Objection.  Responding Party objects to this request as overbroad in terms of time. Responding Party also objects to the extent it seeks information which is not relevant to the pending litigation and not proportional to the needs of the case. (FRCP 26(b)(1)). Responding Party object that the interrogatory contains subparts. Responding Party objects that the request is unreasonable and propounded primarily to harass or burden Responding Party. (FRCP 26(g)). Responding Party objects that the interrogatory violates the privacy rights of Responding Party. Responding Party objects that the information sought is inadmissible character evidence and not admissible pursuant to Fed. Rules of Evid. Rule 404. Responding Party objects that this interrogatory violates the physician-patient and/or psychotherapist-patient privilege held by this Respondent. Responding Party objects to the extent the interrogatory violates the privacy rights of Defendant. (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions, Inc.* (SD CA 2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47). Without waiving and subject to said objections, Responding Party states she will identify the health care providers that provided treatment for the injuries she received from Plaintiff as follows:  Stephen Chanley, RN. of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Dr. Joshua N. Doros, of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Brigitte B. Korkuch, PA of Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Asal Khosroabadi, LCSW (Social Worker) of Alvarado Hospital Medical Center, 6655

13

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  Alvarado Road, San Diego, CA 92120-5208, Dr. Harshawn Malhi of Alvarado

2  Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208, Kelly

3  Valencia, RN of Palomar Health Forensic Health Services – Poway, 15615

4  Pomerado Road, Poway, CA 92064, Dr. Varinthrej Pitis of Scripps Clinic Carmel

5  Valley, 3811 Valley Centre Drive, San Diego, CA 92130, Dr. Erica Moses, San

6  Diego Center for Trauma Recovery, 1761 Hotel Circle S, Ste. 315, San Diego, CA

7  92108, and as yet unknown employees of American Urgent Care, 8590 Rio San

8  Diego Dr., #111, San Diego, CA 92108.

9        Treatment for injuries sustained as a result of Trevor Bauer's battery/sexual

10  battery.

11       Dates: May 17, 2021-May 18, 2021.

12       Dr. Erica Moses, San Diego Center for Trauma Recovery, 1761 Hotel Circle

13  S, Ste. 315, San Diego, CA 92108

14       Therapy for Trevor Bauer's battery/sexual battery.

15       Dates: June 15, 2021-August 11, 2021.

16  **INTERROGATORY NO. 16:**

17       Identify all dates that you communicated with a therapist, counselor,

18  substance use treatment provider, or other mental health care provider from age

19  eighteen (18) to the present.

20  **RESPONSE TO INTERROGATORY NO. 16:**

21       Objection.  Responding Party objects to this request as overbroad in terms of

22  time.  Responding Party also objects to the extent it seeks information which is not

23  relevant to the pending litigation and not proportional to the needs of the case.

24  (FRCP 26(b)(1).)  Responding Party object that the interrogatory contains subparts.

25  Responding Party objects that the request is unreasonable and propounded primarily

26  to harass or burden Responding Party. (FRCP 26(g)). Responding Party objects that

27  this interrogatory violates the physician-patient and/or psychotherapist-patient

28  privilege held by this Respondent. Responding Party objects that the interrogatory

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF INTERROGATORIES

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1   violates the privacy rights of Responding Party. Responding Party objects that the

2   information sought is inadmissible character evidence and not admissible pursuant

3   to Fed. Rules of Evid. Rule 404. Responding Party objects to the extent the

4   interrogatory violates the privacy rights of Defendant.  (*Stallworth v. Brollini* (ND

5   CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One, Inc. v. Does*

6   1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions,*

7   *Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610

8   F3d 530, 539, 541, fn. 47). Without waiving and subject to said objections,

9   Responding Party states she will identify the health care providers that provided

10   treatment for the injuries she received from Plaintiff as follows:

11   Dr. Erica Moses, San Diego Center for Trauma Recovery, 1761 Hotel Circle

12   S, Ste. 315, San Diego, CA 92108

13   Therapy for battery/sexual battery by Trevor Bauer

14   Dates: June 15, 2021-August 11, 2021.

15   **INTERROGATORY NO. 17:**

16   Provide a list of every medical and/or mental health condition of which you

17   have been diagnosed from age eighteen (18) to the present. For each, provide the

18   date and a brief description of the diagnosis.

19   **RESPONSE TO INTERROGATORY NO. 17:**

20   Objection.  Responding Party objects to this request as overbroad in terms of

21   time.  Responding Party also objects to the extent it seeks information which is not

22   relevant to the pending litigation and not proportional to the needs of the case.

23   (FRCP 26(b)(1).)  Responding Party object that the interrogatory contains subparts.

24   Responding Party objects that the request is unreasonable and propounded primarily

25   to harass or burden Responding Party. (FRCP 26(g).) Responding Party objects that

26   this interrogatory violates the physician-patient and/or psychotherapist-patient

27   privilege held by this Respondent. Responding Party objects that the interrogatory

28   violates the privacy rights of Responding Party. Responding Party objects that the

15

1  information sought is inadmissible character evidence and not admissible pursuant

2  to Fed. Rules of Evid. Rule 404.   Responding Party objects to the extent the

3  interrogatory violates the privacy rights of Defendant.  (*Stallworth v. Brollini* (ND

4  CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One, Inc. v. Does*

5  1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions,*

6  *Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610

7  F3d 530, 539, 541, fn. 47).  Responding Party will not provide a response to this

8  interrogatory.

9  **INTERROGATORY NO. 18:**

10  Provide a list of every admission to a hospital or treatment facility you have

11  had from age eighteen (18) to the present. For each, provide the date and a brief

12  description of what occurred.

13  **RESPONSE TO INTERROGATORY NO. 18:**

14  Objection.  Responding Party objects to this request as overbroad in terms of

15  time.  Responding Party also objects to the extent it seeks information which is not

16  relevant to the pending litigation and not proportional to the needs of the case.

17  (FRCP 26(b)(1).)  Responding Party object that the interrogatory contains subparts.

18  Responding Party objects that the request is unreasonable and propounded primarily

19  to harass or burden Responding Party. (FRCP 26(g).) Responding Party objects that

20  this interrogatory violates the physician-patient and/or psychotherapist-patient

21  privilege held by this Respondent. Responding Party objects that the interrogatory

22  violates the privacy rights of Responding Party.  Responding Party objects that the

23  information sought is inadmissible character evidence and not admissible pursuant

24  to Fed. Rules of Evid. Rule 404.   Responding Party objects to the extent the

25  interrogatory violates the privacy rights of Defendant.  (*Stallworth v. Brollini* (ND

26  CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One, Inc. v. Does*

27  1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions,*

28  *Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

16

F3d 530, 539, 541, fn. 47).   Without waiving and subject to said objections, Responding Party states she will identify the health care facilities that provided treatment for the injuries she received from Plaintiff:  Alvarado Hospital Medical Center, 6655 Alvarado Road, San Diego, CA 92120-5208; Scripps Clinic Carmel Valley, 3811 Valley Centre Drive, San Diego, CA 92130; San Diego Center for Trauma Recovery, 1761 Hotel Circle S, Ste. 315, San Diego, CA 92108; American Family Urgent Care, 8590 Rio San Diego Dr., #111, San Diego, CA 92108.

**INTERROGATORY NO. 19:**

Identify any claim, monetary demand, or filed action made by you or on your behalf arising from alleged physical, mental, or emotional injuries from January 1, 2013 to the present.

**RESPONSE TO INTERROGATORY NO. 19:**

Objection. Responding Party objects to this request as overbroad in terms of time. Responding Party also objects to the extent it seeks information which is not relevant to the pending litigation and not proportional to the needs of the case. (FRCP 26(b)(1)). Without waiving, and subject to said objections, Responding Party states: *Lindsey Hill v. Trevor Bauer*, Superior Court for the State of California, County of Los Angeles, Case no. 21STR003198, DVRO hearing.

**INTERROGATORY NO. 20:**

State the categories of damages that you seek to recover from Mr. Bauer as a result of his conduct alleged in your Allegations, and for each such category the amounts in dollars you seek to recover. Include in your response each category of damages listed in the "Calculation of Damages" section of your Initial Disclosures at pages 7 through 9.

**RESPONSE TO INTERROGATORY NO. 20:**

Objection. Responding Party objects that the request calls for the premature disclosure of expert opinion. Without waiving, and subject to said objections, Responding Party states:

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR BAUER'S FIRST SET OF  INTERROGATORIES

Subject to and without waiving any objections stated herein, Hill responds as follows: Hill seeks to recover non-economic damages for past and future physical pain and suffering, mental suffering, loss of enjoyment of life, inconvenience and emotional distress. Such damages are in an unliquidated amount.

Hill seeks to recover lost wages that she would have earned from Lululemon between May 28, 2021 and July 31, 202 (approximately nine weeks) while she was on leave. At Lululemon, Hill had been working four (4) days a week, six (6) to seven (7) hours a day. Hill was paid $19/hour by Lululemon. Accordingly, she lost approximately $4,100-$4,800 in lost wages during that nine (9) week period that she would have otherwise earned.

Hill also seeks to recover future lost wages related to her contemplated employment at the Ohana College Area Sober Living Environment ("Ohana") as a resident life director. Hill intended on working at both Lululemon and Ohana. Because of both the physical and mental trauma that she suffered, Hill was unable to start that job. Ohana orally agreed to pay Hill $2,000/month. Had Hill not been battered/sexually battered and prevented from working at Ohana, she would have earned those wages from June 2021 through December 2022. Accordingly, Hill lost nineteen (19) months of wages from Ohana, totaling $38,000.

**INTERROGATORY NO. 21:**

State all facts that support your contention that you suffered "severe emotional distress, depression, fear, humiliation/embarrassment and anxiety" (Initial Disclosures at 8) as a result of Mr. Bauer's actions alleged in your Allegations.

**RESPONSE TO INTERROGATORY NO. 21:**

Objection. Responding Party objects that the request calls for the premature disclosure of expert opinion. Subject to and without waiving any objections stated herein, Hill responds as follows:

Hill experienced various symptoms which became prominent after the

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

batteries/sexual batteries and increased over time. These symptoms have continued through the present.  Hill has suffered from anxiety, felt depressed, humiliated, embarrassed, unmotivated, exhausted, tired/fatigued, irritable, alone and isolated, detached and disconnected from the world, worthless, uncertain, emotionally numb and had difficulty concentrating and processing.  Sometimes she would feel like she was floating outside her body. She would also sometimes feel scared or easily startled. She would also often feel on guard for danger.

Hill had trouble being around others, and avoided other people or doing things that might draw attention to herself.  Hill participated less in and had less of an interest in activities such as social or physical activities. Hill would sometimes have difficulty with ordinary tasks. Hill also experienced a loss of appetite and lost weight.

Hill would frequently wake up in the night because she was having bad dreams/nightmares about the batteries/sexual batteries. She also had difficulty sleeping and suffered from inconsistent sleep because she would be thinking about and having upsetting, unpleasant, unwanted, distressing and/or terrifying memories of the batteries/sexual batteries while resting or trying to sleep. During the day, she would also frequently have upsetting, unpleasant, unwanted, distressing and/or terrifying thoughts and memories of the batteries/sexual batteries. Hill would sometimes relive the batteries/sexual batteries as if they were happening. Such distressful thoughts and memories would often occur when Hill experienced something that reminds her of the batteries/sexual batteries.

**INTERROGATORY NO. 22:**

State all facts upon which you base your affirmative defense that Mr. Bauer has failed to mitigate his damages.

**RESPONSE TO INTERROGATORY NO. 22:**

Objection. Responding Party objects that the request calls for the premature disclosure of expert opinion. Responding Party objects that discovery of Bauer's

19

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR BAUER'S FIRST SET OF  INTERROGATORIES

1   alleged damages has not been concluded, and Bauer has withheld documents and

2   information related to those alleged damages. Without waiving, and subject to said

3   objections, Responding Party states: Responding Party has not been able to

4   determine what damages Bauer is alleging in his claims, or what he did to mitigate

5   those damages because he will not provide complete responses to discovery.

6   **INTERROGATORY NO. 23:**

7       State all facts upon which you base your affirmative defense that Mr. Bauer's

8   complaint "was not filed, is not maintained in good faith, and with reasonable

9   cause."

10  **RESPONSE TO INTERROGATORY NO. 23:**

11      Objection. Responding Party objects that the request calls for the premature

12  disclosure of expert opinion. Responding Party objects that discovery of Bauer's

13  alleged damages has not been concluded, and Bauer has withheld documents and

14  information related to those alleged damages. Without waiving, and subject to said

15  objections, Responding Party states: Plaintiff's complaint contains numerous

16  mischaracterizations and includes private and/or confidential content from Ms. Hill's

17  electronic devices.

18  **INTERROGATORY NO. 24:**

19      State all facts upon which you base your affirmative defense that Mr. Bauer's

20  complaint is barred in whole or in part by the litigation privilege

21  **RESPONSE TO INTERROGATORY NO. 24:**

22      Objection. Responding Party objects that the request calls for the premature

23  disclosure of expert opinion. Without waiving, and subject to these objections,

24  Responding Party states that Bauer's causes of action are based entirely on her

25  statements to the police in connection with its official investigation. Such statements

26  are covered by the litigation privilege. Hill did not knowingly make any false

27  statements to the police.

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

**INTERROGATORY NO. 25:**

Identify every physical injury you sustained as a result of your encounters with Mr. Bauer.

**RESPONSE TO INTERROGATORY NO. 25:**

Objection. Responding Party objects that the request calls for the premature disclosure of expert opinion. Without waiving, and subject to these objections, Responding Party states: Hill suffered from physical injuries to her head and face, including an acute head injury. This resulted in pain/headaches, suffering and discomfort in Hill's head, face and jaw. The jaw pain lasted over a month.  Hill's head injury also resulted in concussion-like symptoms that lasted for several weeks. The head injury also caused vomiting, difficulty getting out of bed and constant sleeping. Hill had extreme difficulty opening her mouth and difficulty eating.  Hill also suffered from swelling and excruciating bruising on her face that lasted over a week.  Hill could not sleep on her left side because of pain and swelling.  Hill also suffered from bruising on her gums and a split open lip which made it difficult to eat and drink. Hill also suffered from a welt on the left side of the top of her head.

Hill suffered from a physical injury to her vagina/groin area. This resulted in pain, suffering and discomfort. This also caused bruising.

Hill suffered from a physical injury to her buttocks. This resulted in pain, suffering and discomfort. This also caused bruising. She had difficulty sitting.

Hill suffered from a physical injury to her anus from being sodomized. This resulted in pain, suffering and discomfort. She was also bleeding from her anus.

Hill suffered from injuries as result of being choked to the point of unconsciousness. This resulted in pain/headache, suffering, discomfort, being lightheaded and dizzy, nausea, confusion and feeling like she could barely move her body.

Additionally, pursuant to Federal Rules of Civil Procedure, Rule 33(d), Hill also makes reference to the following medical records or documents which reflect her

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF  INTERROGATORIES

1  physical injuries: (1) photographs of Hill's face, true and correct copies of which are

2  attached hereto as **Exhibit 1**; (2) medical records from Alvarado Hospital Medical

3  Center dated May 17, 2021, true and correct copies of which are attached hereto as

4  **Exhibit 2**; (3) medical records from Alvarado Hospital Medical Center produced

5  pursuant to a subpoena, true and correct copies of which are attached hereto as

6  **Exhibit 3**; (4) Scripps medical records dated June 3, 2021, true and correct copies of

7  which are attached hereto as **Exhibit 4**; SART examination records dated May 18,

8  2021, true and correct copies of which are attached separately as **Exhibit 5**.  Please

9  note that Exhibit 5 is being attached separately as it is being designated as

10  "CONFIDENTIAL" under the Court's stipulated protective order.

11  **INTERROGATORY NO. 26:**

12      For each physical injury you identified in response to the interrogatory above,

13  provide a description of each medical intervention you received to treat such injury.

14  If none, state that.

15  **RESPONSE TO INTERROGATORY NO. 26:**

16      Objection.  Responding Party objects that Propounding Party has served

17  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

18  33(a)(1). Responding Party objects that the request calls for the premature disclosure

19  of expert opinion.

20  **INTERROGATORY NO. 27:**

21      Identify the dates of all medical appointments you cancelled from May 17,

22  2021 to the present.

23  **RESPONSE TO INTERROGATORY NO. 27:**

24      Objection. Responding Party objects that Propounding Party has served

25  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

26  33(a)(1). Responding Party objects to this request as overbroad in terms of time.

27  Responding Party also objects to the extent it seeks information which is not

28  relevant to the pending litigation and not proportional to the needs of the case.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF  INTERROGATORIES

1  (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and

2  propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

3  Responding Party objects that the interrogatory violates the privacy rights of

4  Defendant. (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right

5  of privacy); *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16;

6  *Shaw v. Experian Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See

7  *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47).  Responding

8  Party objects that this interrogatory violates the physician-patient and/or

9  psychotherapist-patient privilege held by this Respondent.

10  **INTERROGATORY NO. 28:**

11      Identify the dates of all mental health appointments you cancelled from May

12  17, 2021 to the present.

13  **RESPONSE TO INTERROGATORY NO. 28:**

14      Objection. Responding Party objects that Propounding Party has served

15  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

16  33(a)(1). Responding Party objects to this request as overbroad in terms of time.

17  Responding Party also objects to the extent it seeks information which is not

18  relevant to the pending litigation and not proportional to the needs of the case.

19  (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and

20  propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

21  Responding Party objects that this interrogatory violates the physician-patient and/or

22  psychotherapist-patient privilege held by this Respondent. Responding Party objects

23  that the interrogatory violates the privacy rights of Responding Party. Responding

24  Party objects to the extent the interrogatory violates the privacy rights of Defendant.

25  (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy);

26  *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v.*

27  *Experian Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton*

28  *v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47).

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

23

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

**INTERROGATORY NO. 29:**

Identify every activity tracking app you have used from 2020 through the present, as well as all of your usernames on each app, including but not limited to Strava, Nike Running, FitBit, Garmin, Runkeeper, Apple Fitness, and Whoop.

**RESPONSE TO INTERROGATORY NO. 29:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit  of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects to this request as overbroad in terms of time. Responding Party objects that this interrogatory violates the physician-patient and/or psychotherapist-patient privilege held by this Respondent. Responding Party objects that the interrogatory violates the privacy rights of Responding Party. Responding Party objects to the extent the interrogatory violates the privacy rights of Defendant. (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47).

**INTERROGATORY NO. 30:**

Identify every fitness class or fitness-related activity you engaged in between May 17, 2021 and July 17, 2021.

**RESPONSE TO INTERROGATORY NO. 30:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects to this request as overbroad in terms of time. Responding Party also objects to the extent it seeks information which is not relevant to the pending litigation and not proportional to the needs of the case. (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and propounded primarily to harass or burden Responding Party. (FRCP 26(g)). Responding Party objects that this interrogatory violates the physician-patient and/or

24

II833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR BAUER'S FIRST SET OF  INTERROGATORIES

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  psychotherapist-patient privilege held by this Respondent. Responding Party objects

2  that the interrogatory violates the privacy rights of Responding Party. Responding

3  Party objects to the extent the interrogatory violates the privacy rights of Defendant.

4  (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy);

5  *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v.*

6  *Experian Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton*

7  *v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47).

8  **INTERROGATORY NO. 31:**

9       Identify every leisure activity you engaged in between May 17, 2021 and July

10  17, 2021, including but not limited to sporting events, travel, vacations, and social

11  gatherings.

12  **RESPONSE TO INTERROGATORY NO. 31:**

13       Objection. Responding Party objects that Propounding Party has served

14  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

15  33(a)(1). Responding Party objects to this request as overbroad in terms of time.

16  Responding Party also objects to the extent it seeks information which is not

17  relevant to the pending litigation and not proportional to the needs of the case.

18  (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and

19  propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

20  Responding Party objects that the interrogatory violates the privacy rights of

21  Responding Party. Responding Party objects to the extent the interrogatory violates

22  the privacy rights of Defendant. (*Stallworth v. Brollini* (ND CA 2012) 288 FRD

23  439, 444 (federal right of privacy); *West Bay One, Inc. v. Does* 1-1,653 (D DC

24  2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions, Inc*. (SD CA

25  2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539,

26  541, fn. 47).

27  **INTERROGATORY NO. 32:**

28       Identify all statements made by Mr. Bauer that you contend constitute

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF  INTERROGATORIES

1  admissions concerning your Allegations.

2  **RESPONSE TO INTERROGATORY NO. 32:**

3       Objection. Responding Party objects that Propounding Party has served

4  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

5  33(a)(1).

6  **INTERROGATORY NO. 33:**

7       Identify each person with whom you or any attorney, agent, or any other

8  person acting on your behalf communicated with concerning Mr. Bauer.

9  **RESPONSE TO INTERROGATORY NO. 33:**

10       Objection. Responding Party objects that Propounding Party has served

11  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

12  33(a)(1).  Responding Party objects that the interrogatory violates the attorney-client

13  privilege and/or attorney work product doctrine and seeks information that is

14  privileged. Responding Party objects that this interrogatory seeks information from

15  third parties, and/or would be unduly burdensome to compile. Responding Party

16  also objects to the extent it seeks information which is not relevant to the pending

17  litigation and not proportional to the needs of the case.  (FRCP 26(b)(1)).  Bauer's

18  claims are based on discrete communications that Hill allegedly made to the police.

19  **INTERROGATORY NO. 34:**

20       Identify all communications between you or any attorney, agent, or other

21  person acting on your behalf and any other person concerning Mr. Bauer.

22  **RESPONSE TO INTERROGATORY NO. 34:**

23       Objection. Responding Party objects that Propounding Party has served

24  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

25  33(a)(1). Responding Party objects that the interrogatory violates the attorney-client

26  privilege and/or attorney work product doctrine and seeks information that is

27  privileged. Responding Party objects that this interrogatory seeks information from

28  third parties, and/or would be unduly burdensome to compile. Responding Party

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

26

I1833787-1 MER-5137
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR BAUER'S FIRST SET OF  INTERROGATORIES

1   also objects to the extent it seeks information which is not relevant to the pending

2   litigation and not proportional to the needs of the case.  (FRCP 26(b)(1)).  Bauer's

3   claims are based on discrete communications that Hill allegedly made to the police.

4   **INTERROGATORY NO. 35:**

5       Identify all documents containing any statements by you or any attorney,

6   agent or other person acting on your behalf concerning Mr. Bauer.

7   **RESPONSE TO INTERROGATORY NO. 35:**

8       Objection. Responding Party objects that Propounding Party has served

9   interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

10  33(a)(1). Responding Party objects that the interrogatory violates the attorney-client

11  privilege and/or attorney work product doctrine and seeks information that is

12  privileged. Responding Party objects that this interrogatory seeks information from

13  third parties, and/or would be unduly burdensome to compile. Responding Party

14  also objects to the extent it seeks information which is not relevant to the pending

15  litigation and not proportional to the needs of the case.  (FRCP 26(b)(1)).  Bauer's

16  claims are based on discrete communications that Hill allegedly made to the police.

17  **INTERROGATORY NO. 36:**

18      Identify every lie or untrue statement you told to any third party regarding

19  your encounters with Mr. Bauer, including but not limited to, your lies regarding

20  "the date and location" of the encounters. See Hill Answer (ECF No. 34) ¶ 78.

21  **RESPONSE TO INTERROGATORY NO. 36:**

22      Objection. Responding Party objects that Propounding Party has served

23  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

24  33(a)(1).. Responding Party objects that the interrogatory is argumentative.

25  Responding Party also objects to the extent it seeks information which is not

26  relevant to the pending litigation and not proportional to the needs of the case.

27  (FRCP 26(b)(1)).  Bauer's claims are based on discrete communications that Hill

28  allegedly made to the police.

**WESIERSKI & ZUREK LLP**
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

27

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF  INTERROGATORIES

**INTERROGATORY NO. 37:**

Identify every lie or untrue statement you told to Mr. Bauer at any time regarding any subject matter.

**RESPONSE TO INTERROGATORY NO. 37:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory is argumentative. Responding Party also objects to the extent it seeks information which is not relevant to the pending litigation and not proportional to the needs of the case. (FRCP 26(b)(1)).

**INTERROGATORY NO. 38:**

Identify every text message supporting your assertion that Mr. Bauer "texted [you] nonstop." See Hill Answer (ECF No. 34) ¶ 120.

**RESPONSE TO INTERROGATORY NO. 38:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory is argumentative.

**INTERROGATORY NO. 39:**

Identify all instances you had sexual intercourse with Mr. Bauer. For each instance, provide a date and approximate time.

**RESPONSE TO INTERROGATORY NO. 39:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory is argumentative.

**INTERROGATORY NO. 40:**

State with particularity all sexual acts to which you consented with Mr. Bauer on April 21-22, 2021.

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF INTERROGATORIES

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

**RESPONSE TO INTERROGATORY NO. 40:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory is argumentative.

**INTERROGATORY NO. 41:**

For each sexual act you listed in response to the interrogatory above, provide a brief description of how you manifested your consent.

**RESPONSE TO INTERROGATORY NO. 41:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory is argumentative.

**INTERROGATORY NO. 42:**

State with particularity all sexual acts to which you did not consent with Mr. Bauer on April 21-22, 2021.

**RESPONSE TO INTERROGATORY NO. 42:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory is argumentative.

**INTERROGATORY NO. 43:**

For each alleged nonconsensual sexual act you listed in response to the interrogatory above, state whether, how, and when you communicated your lack of consent to Mr. Bauer, and if and when he ceased the sexual act in response to your communication.

**RESPONSE TO INTERROGATORY NO. 43:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory is argumentative.

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF INTERROGATORIES

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  **INTERROGATORY NO. 44:**

2  State with particularity all sexual acts to which you consented with Mr. Bauer

3  on May 15-16, 2021.

4  **RESPONSE TO INTERROGATORY NO. 44:**

5  Objection. Responding Party objects that Propounding Party has served

6  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

7  33(a)(1). Responding Party objects that the interrogatory is argumentative.

8  **INTERROGATORY NO. 45:**

9  For each sexual act you listed in response to the interrogatory above, provide

10  a brief description of how you manifested your consent.

11  **RESPONSE TO INTERROGATORY NO. 45:**

12  Objection. Responding Party objects that Propounding Party has served

13  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

14  33(a)(1). Responding Party objects that the interrogatory is argumentative.

15  **INTERROGATORY NO. 46:**

16  State with particularity all sexual acts to which you did not consent with Mr.

17  Bauer on May 15-16, 2021.

18  **RESPONSE TO INTERROGATORY NO. 46:**

19  Objection. Responding Party objects that Propounding Party has served

20  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

21  33(a)(1). Responding Party objects that the interrogatory is argumentative.

22  **INTERROGATORY NO. 47:**

23  For each alleged nonconsensual sexual act you listed in response to the

24  interrogatory above, state whether, how, and when you communicated your lack of

25  consent to Mr. Bauer, and if and when he ceased the sexual act in response to your

26  communication.

27  **RESPONSE TO INTERROGATORY NO. 47:**

28  Objection. Responding Party objects that Propounding Party has served

30

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF INTERROGATORIES

1  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

2  33(a)(1). Responding Party objects that the interrogatory is argumentative.

3  **INTERROGATORY NO. 48:**

4      Identify all communications between you or any attorney, agent or other

5  person acting on your behalf with any representative of the Pasadena Police

6  Department from May 1, 2021 to the present.

7  **RESPONSE TO INTERROGATORY NO. 48:**

8      Objection. Responding Party objects that Propounding Party has served

9  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

10  33(a)(1). Responding Party objects that this interrogatory seeks information from

11  third parties, and/or would be unduly burdensome to compile. Responding Party

12  objects to this request as overbroad in terms of time. Responding Party also objects

13  to the extent it seeks information which is not relevant to the pending litigation and

14  not proportional to the needs of the case.  (FRCP 26(b)(1)). Responding Party

15  objects that the request is vague and ambiguous. Responding Party further objects

16  that the interrogatory is argumentative.

17  **INTERROGATORY NO. 49:**

18      Identify all communications between you or any attorney, agent or other

19  person acting on your behalf with any representative of the San Diego Police

20  Department from May 1, 2021 to the present.

21  **RESPONSE TO INTERROGATORY NO. 49:**

22      Objection. Responding Party objects that Propounding Party has served

23  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

24  33(a)(1). Responding Party objects that this interrogatory seeks information from

25  third parties, and/or would be unduly burdensome to compile. Responding Party

26  objects to this request as overbroad in terms of time. Responding Party also objects

27  to the extent it seeks information which is not relevant to the pending litigation and

28  not proportional to the needs of the case.  (FRCP 26(b)(1)). Responding Party

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

31

Case No. 8:22-cv-00868 JVS(ADSx)

DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR BAUER'S FIRST SET OF  INTERROGATORIES

1  objects that the request is vague and ambiguous. Responding Party objects that the

2  interrogatory is argumentative.

3  **INTERROGATORY NO. 50:**

4     Identify all communications between you or any attorney, agent or other

5  person acting on your behalf and a representative of the media from May 1, 2021 to

6  the present.

7  **RESPONSE TO INTERROGATORY NO. 50:**

8     Objection. Responding Party objects that Propounding Party has served

9  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

10  33(a)(1). Responding Party objects that this interrogatory seeks information from

11  third parties, and/or would be unduly burdensome to compile. Responding Party

12  objects to this request as overbroad in terms of time. Responding Party also objects

13  to the extent it seeks information which is not relevant to the pending litigation and

14  not proportional to the needs of the case.  (FRCP 26(b)(1)).  Bauer's claims are

15  based on discrete communications that Hill allegedly made to the police.

16  Responding Party objects that the request is vague and ambiguous. Responding

17  Party objects that the interrogatory is argumentative.

18  **INTERROGATORY NO. 51:**

19     Identify all social media accounts maintained by you from 2020 to the

20  present, including all anonymous accounts or accounts that have since been deleted.

21  Include in your response all of your usernames on each social media account.

22  **RESPONSE TO INTERROGATORY NO. 51:**

23     Objection. Responding Party objects that Propounding Party has served

24  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

25  33(a)(1). Responding Party objects to this request as overbroad in terms of time.

26  Responding Party also objects to the extent it seeks information which is not

27  relevant to the pending litigation and not proportional to the needs of the case.

28  (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF  INTERROGATORIES

1 propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

2 **INTERROGATORY NO. 52:**

3    Identify the dates you began and ended employment at Ohana House Sober

4 Living.

5 **RESPONSE TO INTERROGATORY NO. 52:**

6    Objection. Responding Party objects that Propounding Party has served

7 interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

8 33(a)(1).

9 **INTERROGATORY NO. 53:**

10    State whether you were terminated or resigned from your employment at

11 Ohana House Sober Living.

12 **RESPONSE TO INTERROGATORY NO. 53:**

13    Objection. Responding Party objects that Propounding Party has served

14 interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

15 33(a)(1).

16 **INTERROGATORY NO. 54:**

17    Describe the circumstances surrounding the end of your employment at

18 Ohana House Sober Living.

19 **RESPONSE TO INTERROGATORY NO. 54:**

20    Objection. Responding Party objects that Propounding Party has served

21 interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

22 33(a)(1).

23 **INTERROGATORY NO. 55:**

24    Identify all medications you have been prescribed from age eighteen (18) to

25 the present.

26 **RESPONSE TO INTERROGATORY NO. 55:**

27    Objection. Responding Party objects that Propounding Party has served

28 interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1833787-1 MER-5137

Case No. 8:22-cv-00868 JVS(ADSx)
DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF TREVOR
BAUER'S FIRST SET OF INTERROGATORIES

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  33(a)(1). Responding Party objects to this request as overbroad in terms of time.

2  Responding Party also objects to the extent it seeks information which is not

3  relevant to the pending litigation and not proportional to the needs of the case.

4  (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and

5  propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

6  Responding Party objects that this interrogatory violates the physician-patient and/or

7  psychotherapist-patient privilege held by this Respondent. Responding Party objects

8  that the interrogatory violates the privacy rights of Responding Party. (*Stallworth v.*

9  *Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One,*

10  *Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian*

11  *Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton v.*

12  *Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47).

13  **INTERROGATORY NO. 56:**

14       Identify all medications, including over the counter medications, you

15  consumed within the 48 hours prior to April 21, 2021.

16  **RESPONSE TO INTERROGATORY NO. 56:**

17       Objection. Responding Party objects that Propounding Party has served

18  interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure

19  33(a)(1). Responding Party objects that the interrogatory violates the privacy rights

20  of Responding Party. (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444

21  (federal right of privacy); *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270

22  FRD 13, 15-16; *Shaw v. Experian Information Solutions, Inc*. (SD CA 2015) 306

23  FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn.

24  47).

25  **INTERROGATORY NO. 57:**

26       Identify all medications, including over the counter medications, you

27  consumed within the 48 hours prior to May 15, 2021.

28

**RESPONSE TO INTERROGATORY NO. 57:**

Objection. Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1). Responding Party objects that the interrogatory violates the privacy rights of Responding Party. (*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444 (federal right of privacy); *West Bay One, Inc. v. Does* 1-1,653 (D DC 2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions, Inc*. (SD CA 2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47).

**SPECIAL INTERROGATORY NO. 58:**

Identify every app, calendar, or other system you use to track your menstrual cycle, and provide the information you have tracked on the app, calendar, or other system, for the calendar year 2021

**RESPONSE TO SPECIAL INTERROGATORY NO. 58:**

Objection.  Responding Party objects that Propounding Party has served interrogatories in excess of the numerical limit of Federal Rules of Civil Procedure 33(a)(1).  Responding Party objects to this request as overbroad in terms of time. Responding Party also objects to the extent it seeks information which is not relevant to the pending litigation and not proportional to the needs of the case. (FRCP 26(b)(1)). Responding Party objects that the request is unreasonable and propounded primarily to harass or burden Responding Party. (FRCP 26(g)).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1833787-1 MER-5137

[Case 8:22-cv-00868-JVS-ADS   Document 193-3   Filed 09/11/23   Page 106 of 153   Page ID #:5900]

1    Responding Party objects that the interrogatory violates the privacy rights of

2  Responding Party. Responding Party objects to the extent the interrogatory violates

3  the privacy rights of Defendant. (*Stallworth v. Brollini* (ND CA 2012) 288 FRD

4  439, 444 (federal right of privacy); *West Bay One, Inc. v. Does* 1-1,653 (D DC

5  2010) 270 FRD 13, 15-16; *Shaw v. Experian Information Solutions, Inc*. (SD CA

6  2015) 306 FRD 293, 301; See *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539,

7  541, fn. 47).

8

9  DATED:  April 13, 2023          WESIERSKI & ZUREK LLP

10

11                    By: _____

12                         CHRISTOPHER P. WESIERSKI
                          MICHELLE R. PRESCOTT
13                         Attorneys for Defendant, Lindsey C. Hill

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I1833787-1 MER-5137

VERIFICATION TO FOLLOW

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of . My business address is 29 Orchard Road, Lake Forest, CA 92630.

On April 13, 2023, I served true copies of the following document(s) described as **DEFENDANT LINDSEY C HILL'S RESPONSES TO PLAINTIFF/COUNTERCLAIM DEFENDANT TREVOR BAUER'S FIRST SET OF INTERROGATORIES** on the interested parties in this action as follows:

Shawn C. Holley, Esq.                        Attorney for Plaintiff, Trevor Bauer
Kate E. Mangels, Esq.
Suann MacIssac, Esq.
Kinsella Weitzman Iser Kump Holley LLP
11766 Wilshire Blvd., Suite 750
Los Angeles, CA  90025
Phone: 310-566-9822
Fax: 310-566-9850
E-Mail: sholley@kwikhlaw.com ;
kmangels@kwikalaw.com;
smacisaac@kwikhlaw.com

Blair G. Brown, Esq.                         Attorney for Plaintiff, Trevor Bauer
Jon R. Fetterolf, Esq.
Nell Peyser, Esq.
Zuckerman Spaeder LLP
1800 M. Street, N. W. Suite 1000
Washington, D.C  20036
Phone: 202-778-1800
Fax: 202-882-8106
E-Mail: bbrown@zuckerman.com;
jfetterolf@zuckerman.com;
NPeyser@Zuckerman.com;
ksimmerson@zuckerman.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address aramos@wzllp.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 13, 2023, at Lake Forest, California.

/s/ Antonio Ramos
Antonio Ramos

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

EXHIBIT G

1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
2                    SOUTHERN DIVISION - SANTA ANA

3

4    TREVOR BAUER,               )  Case No. SACV 22-868-JVS (ADSx)
                                 )
5         Plaintiff,             )  Santa Ana, California
                                 )  Wednesday, May 24, 2023
6            v.                  )  10:16 A.M. to 11:04 A.M.
                                 )  11:21 A.M. to 11:29 A.M.
7    LINDSEY C. HILL, et al.,    )
                                 )
8         Defendants.            )
     _____    )

9

10

11

12                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE AUTUMN D. SPAETH
13                UNITED STATES MAGISTRATE JUDGE

14

15   Appearances:              See Page 2

16   Deputy Clerk:             Kristee Hopkins

17   Court Reporter:           Recorded; CourtSmart

18   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
19                             Encino, California   91436
                               (661) 609-4528
20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

```
 1   APPEARANCES:

 2

 3   For the Plaintiff:          Zuckerman Spaeder LLP
                                 By:  BLAIR G. BROWN
 4                               1800 M Street NW, Suite 1000
                                 Washington, D.C.  20036
 5                               (202) 778-1800
                                 bbrown@zuckerman.com
 6
                                 Zuckerman Spaeder LLP
 7                               By:  NELL Z. PEYSER
                                 485 Madison Avenue, 10th Floor
 8                               New York, New York  10022
                                 (212) 704-9600
 9                               npeyser@zuckerman.com

10

11   For the Defendant:         Freedman and Taitelman LLP
                                 By:   JESSE A. KAPLAN
12                               1801 Century Park West, 5th Floor
                                 Los Angeles, California  90067
13                               (310) 201-0005
                                 jkaplan@ftllp.com
14
                                 Wesierski and Zurek LLP
15                               By:  BRETT A. SMITH
                                 29 Orchard Road
16                               Lake Forest, California  92630
                                 (949) 975-1000
17                               bsmith@wzllp.com

18

19

20

21

22

23

24

25
```

```
 1      SANTA ANA, CALIFORNIA, WEDNESDAY, MAY 24, 2023, 10:16 A.M.

 2              THE COURT:  Please be seated.

 3              JESSE A. KAPLAN:  Thank you.

 4              THE CLERK:  We're on the record this United States

 5      District Court, The Honorable Autumn D. Spaeth, United States

 6      Magistrate Judge presiding.

 7              Calling Case SACV 22-868-JVS (ADSx), Trevor Bauer

 8      v. Lindsey C. Hill, et al.

 9              And, counsel, please state your appearances

10      starting with plaintiff.

11              NELL Z. PEYSER:  Good morning, Your Honor.

12      Nell Peyser for Plaintiff Trevor Bauer.

13              THE COURT:  Okay.  Good morning.

14              BLAIR G. BROWN:  Good morning, Your Honor.

15      Blair Brown also on behalf of Mr. Bauer.

16              THE COURT:  Good morning.

17              MR. KAPLAN:  Good morning, Your Honor.  Jesse

18      Kaplan on behalf of the Defendant Lindsey Hill, and also with

19      me is my colleague Brett Smith.

20              THE COURT:  Good morning, both of you.  All right.

21              All right.  Moving party, it is your podium,

22      lectern -- (indecipherable).  Here we go.  Right here.  You

23      can just stand in front of everyone.  Let me hear from you.

24      The stage is yours.

25              MR. KAPLAN:  Okay.  Thank you, Your Honor.
```

1            Your Honor, there's two issues, and I think that

2    they have been briefed fairly significantly.  So I'm not sure

3    there's much to add other than what's already stated in the

4    papers.

5            To start with what I think is the issue of lesser

6    contention at this point, it's the San Diego Padres subpoena.

7    At this point Mr. Bauer has indicated that he does not intend

8    to pursue it at this time and has not provided any real

9    substantive opposition to the motion.  However, he has not

10   been willing to either withdraw the subpoena to the Padres,

11   in whole or part, in particular to the offending categories

12   in the subpoena, or indicate or agree that he will not pursue

13   it in the future.  So I think that the Padres subpoena is

14   still ripe, and we still believe that we're entitled to

15   relief as to that subpoena, and there hasn't been any

16   substantive reason provided by Mr. Bauer in his portion of

17   the joint stipulation or otherwise as to why that portion of

18   the motion should not be granted.

19           So, Your Honor, I don't know if you have any

20   additional questions for me on that issue.

21           THE COURT:  Not on that issue, no.

22           MR. KAPLAN:  Okay.  Turning to the two other

23   subpoenas, the Decker subpoena and the Rodgers subpoena,

24   which both deal with issues concerning substance abuse and

25   substance abuse treatment.

1          Now, there are certain issues that have been raised

2     in the joint stipulation by both parties, including by

3     Mr. Bauer.  I think I tried to address all of them either in

4     the joint stipulation or in the supplemental memorandum.  In

5     no particular order, there's been an argument -- or there's

6     various arguments made by Mr. Bauer why he needs specific

7     information from these two individuals that's isolated to

8     substance abuse or substance abuse treatment only, so that

9     information in isolation from Ms. Hill's prior AA sponsor and

10    from someone who ran a facility that Ms. Rodgers lived in for

11    some period of time in 2020 while she was recovering.

12         Now, there may be other issues in this case --

13    there's other discovery that has been targeted towards other

14    areas which there may be overlap -- potentially.  I don't

15    know.  I can't say there is or there isn't, but it's

16    potentially possible there could be overlap between those

17    other categories and substance abuse, and I want to make it

18    clear that we're fine and not seeking to prevent the

19    discovery of anything like that.  It's just more very

20    specific in -- with respect to these two subpoenas where you

21    have information in isolation.

22         For example, there's the Ohana lost-wages claim,

23    and Mr. Bauer contends that he would like to take discovery

24    as to the reasons why Ms. Hill's employment -- or

25    contemplated employment, I should say, with the Ohana House

1    in approximately 2021 did not commence.  There's another

2    subpoena that has been issued to that entity, to Ohana, which

3    asks for all sorts of information, including information

4    about her departure or the reasons for her departure or why

5    she didn't start work.  So to the extent there's any

6    information -- or documents, I should say, concerning the

7    reason why Ms. Hill did not commence her employment with

8    Ohana in 2021, they're going to get that information, and if

9    it has to do with substance abuse, they're going to get it.

10           THE COURT:  If you don't -- if you're not objecting

11   to that, why do you object to it here?

12           MR. KAPLAN:  The information is different because

13   the -- and I guess we're really talking about the Rodgers

14   subpoena.  Rodgers, my understanding at least, she's the

15   owner and/or operator of various Ohana house -- I think

16   there's a few of them -- and the information that would be --

17   that is being sought from the Rodgers subpoena is any

18   information about substance abuse or treatment, and that

19   would call for the information -- or documents, I should say,

20   from Ms. Hill's stay at the -- one of the Ohana houses back

21   in 2020, and that information really doesn't have anything to

22   do with the reasons why she did -- didn't commence her

23   employment with another Ohana House in 2021.  She went there

24   for treatment -- or one of the houses in 2020, whatever

25   happened there, it happened, but that doesn't really matter

1    to why she did or didn't start, in 2021, employment.

2           And to the extent there's any reason that Rodgers

3    or Ohana or whoever was making the decisions for the entity

4    decided, "We're not going to go ahead with Lindsey Hill's

5    employment," that information will be provided.

6           All right.  So that's the Ohana lost-wages issues.

7           One other issues was consent, which obviously is a

8    key issue in this case, in particular to Ms. Hill's claims

9    for battery and sexual battery, and to summarize the argument

10   that Mr. Bauer made in his papers was that Ms. Hill was

11   looking for or was interested in having rough sex to fill

12   some alleged void in her life as a result of her being sober,

13   to sort of replace a high she was previously getting from

14   substance abuse, and apparently there was some testimony on

15   this in a prior proceeding and Ms. Hill denies that she made

16   statements to Mr. Bauer that that was why -- or at least one

17   of the reasons why she was interested in having rough sex

18   with him.

19          So Mr. Bauer, in the papers, has claimed that

20   there's an issue as to whether or not Ms. Hill did or did not

21   say those things to Mr. Bauer before they engaged in these

22   activities.  So the question is -- or the issue raised by

23   Mr. Bauer is they want to prove that it's more likely than

24   not that Ms. Hill said those things to him, and they want to

25   show that she had a substance abuse problem in order to

1    support that.

2           Now, Mr. Bauer does not need the documents from

3    Ohana -- I'm sorry -- Ms. Rodgers or Ms. Decker for that.

4    Ms. Hill has stated, and it's not disputed, that she had a

5    substance abuse problem and that she was in recovery and that

6    she was sober for some period of time.  So whatever documents

7    they may get from either Rodgers or from Ms. Decker are not

8    going to help in that matter.

9           To the extent there's any documents that anyone

10   has, whether it's Decker or Rodgers, about Ms. Hill -- on

11   that particular issue that Ms. Hill desires to or is

12   interested in having rough sex as a result of -- any reason,

13   whether it's, you know, substance abuse or otherwise, those

14   documents will also be produced pursuant to subpoenas -- or

15   the same subpoenas at issue here, just other categories in

16   the subpoena that are not at issue and are not being

17   challenged.  So to the extent there's any overlap there

18   between Ms. Hill wanting to have rough sex with anyone and

19   the reasons for that --

20           THE COURT:  Give me an example of where it is also

21   called for in the subpoena that you're now challenging.

22           MR. KAPLAN:  Sure.  Let me just find the subpoenas.

23           All right.  So I'm looking at Exhibit 1.  This is

24   the -- to my declaration.  This is ECF number -- Document No.

25   92-1.  Exhibit 1 is the Decker subpoena.  And, for example:

1  1, All communications with Ms. Hill concerning, a, Mr. Bauer.

2  And I would think No. 8 -- is:  All documents or tangible

3  items in your possession concerning, a, Mr. Bauer.

4       So that should be broad enough to include that.

5  Now, if it's not, we're willing to stipulate here that the --

6  that Ms. Decker and Ms. Rodgers -- if they have anything

7  about -- or have any documents about Ms. Hill's interest in

8  or desire to have rough sex, those can be produced as part of

9  the subpoena.

10       THE COURT:  Okay.

11       MR. KAPLAN:  All right.  And the other area of

12  alleged relevance for this particular information is --

13  concerns Ms. Hill's emotional distress damages.  Now, there's

14  not a lot of authority out there that I've seen or found in

15  my research and certainly cited in the briefs on this, and

16  Ms. Hill is not putting in this lawsuit her substance abuse

17  at issue.  There's been claims that in prior proceedings she

18  has, and that may be true, but those were prior proceedings.

19  That's not here.  Ms. Hill does not claim -- she's not

20  claiming in this lawsuit that what happened with Mr. Bauer --

21  the battery and sexual battery -- resulted in substance abuse

22  or any sort of relapse of that.

23       Now, she is claiming emotional distress.  That's

24  true.  Through the discovery process and the meet-and-confer,

25  we've agreed that Mr. Bauer can get medical records

1   concerning her mental health treatment, and we've agreed on a

2   timeframe for that.  I believe it's approximately two years

3   from April 2021, when the first of the two incidents

4   occurred, back to April 2019, if I'm getting my dates right.

5   So Mr. Bauer is free to take discovery -- and he has and

6   issued subpoenas to Ms. Hill's mental health-care providers,

7   and he'll get those documents.  He may have gotten them

8   already.  Now, if there's anything in there that reflects

9   substance abuse or substance abuse treatment in connection

10  with the mental health -- or any mental health issues that

11  were going on, again, we're not saying no to that.  Those

12  documents will be produced.

13          Now, if we focus here on the Rodgers subpoena and

14  the Decker subpoena, to the extent there's anything there

15  that either of those two individuals have in terms of

16  documents concerning Ms. Hill's mental health treatment and

17  there's any overlap with substance abuse, again, they'll get

18  that.  I don't know that there's going to be much there, but

19  I don't know either.  So again, there's -- if there's any

20  overlap there -- and the two subpoenas also specifically

21  request that information, all communications with or all

22  documents concerning Ms. Hill's mental health or mental

23  health treatment.  So again, Mr. Bauer will get those

24  documents.

25          But beyond that, I'm not sure, in isolation, why --

1   especially if you look at, you know, Rodgers or the AA

2   sponsor, what those communications will do to advance this

3   case at all and advance any defenses that Mr. Bauer may have

4   to damages.

5          So, Your Honor, I don't know if you have any

6   further questions for me on any of this or anything that I

7   didn't discuss.

8          THE COURT:  So one of the arguments that you made

9   in your briefing is that these documents are protected by

10  California's right to privacy, and the cases, I believe, that

11  you cited are all based on doctor-patient or therapist-

12  patient privilege.  Do you have any case law that supports a

13  privilege for communications with an AA sponsor or a halfway

14  house or a sober-living home?

15         MR. KAPLAN:  Well, there's -- to answer your

16  question, again, there's not a lot of authority that -- I

17  think I've seen it all -- dealing with these type of

18  relationships.  There -- as far as I've seen, I didn't see

19  any specific privilege as you might see between a physician

20  and a patient, attorney and a client -- the list goes on.

21  However, there are certainly privacy rights in these sort of

22  things.  So the analysis under California law will be the

23  standard privacy analysis of balancing the person-who-has-

24  the-privacy's rights against the need for the discovery in

25  the lawsuit.

1          THE COURT:  All right.  Can you tell me: What kind

2   of services did the sober-living home provide?  Is it simply

3   somewhere to live, or were there therapy -- you know, talk to

4   me about that.

5          MR. KAPLAN:  So I can't, Your Honor, tell you the

6   details of it, not because I don't want to, but I'm not fully

7   familiar with them.  My understanding is -- and I could be

8   wrong about some of this stuff -- it's a house where, I

9   believe, women who are recovering from substance abuse go to

10  live during that recovery process.  Now, I believe there are

11  some activities that go on at the sober-living house to help

12  the residents, such as Ms. Hill, recover from their issues

13  and maintain their sobriety.  So I think it's a little more

14  than just a place to live.  I don't -- you know, I don't know

15  what degree, though, more that it is, but it certainly is --

16         THE COURT:  But Ms. Rodgers was -- if there were

17  other services, Ms. Rodgers wasn't the one providing them; is

18  that right?

19         MR. KAPLAN:  I don't believe so.  I think that

20  there were other employees there.  I think Ms. Rodgers -- she

21  may have been there at points in time, but I think she

22  oversees multiple homes in the San Diego area.

23         THE COURT:  Okay.

24         MR. KAPLAN:  I do think, however, there are some

25  records from the house around the time that Ms. Hill was

1  living there concerning her recovery process.  So I do think

2  there are some records from -- whether it's Ohana -- the

3  house or Rodgers, and, you know, I think Ms. Rodgers probably

4  has access to those given that she owns and operates the

5  various facilities.

6          THE COURT:  Okay.  Can you tell me more about what

7  precisely Ms. Hill is seeking with regard to her emotional-

8  distress damages?

9          MR. KAPLAN:  Yes.  So let me take a look at my

10  declaration and -- there's an interrogatory response that

11  I've attached here that has fairly good degree of detail of

12  that information.  It's Exhibit 10 to my declaration and more

13  specifically -- let's see if I'm getting the number right.  I

14  think it's the response to Interrogatory 21.  So that's on

15  page 18 and 19 of Exhibit 10 in my declaration.  Again,

16  that's ECF 92-1.

17          And I'm happy to read it to the Court if you'd like

18  but this -- to try to summarize them, there's anxiety;

19  depression; humiliation; embarrassment; feeling unmotivated,

20  tired, irritable, alone, and isolated; having trouble being

21  around others; doing things that would draw attention to

22  herself; participating less in social activities and physical

23  activities; sometimes having difficulty with ordinary tasks;

24  loss of appetite and weight; nightmares, bad dreams of the

25  particular batteries and sexual batteries; trouble sleeping;

1    inconsistent sleep; thinking about and having upsetting and

2    unpleasant distressing memories of the batteries and sexual

3    batteries.  She would sometimes relive the batteries and

4    sexual batteries.  Sometimes she would think of things or see

5    things in her life --

6              THE CLERK:  I've got an error.  Hold on.  Let me --

7              THE COURT:  Our recording system just erred --

8    erred -- whatever.

9         (Brief break in recording.)

10             THE CLERK:  Okay.  Go ahead.

11             MR. KAPLAN:  May I continue?

12             THE COURT:  Please.  Thank you.

13             MR. KAPLAN:  And there would be things in her life

14   where she would think of or be reminded of the batteries and

15   sexual batteries and bring back these horrific thoughts.

16             THE COURT:  Is any portion of her emotional-

17   distress damages that she's seeking related to her substance

18   abuse?

19             MR. KAPLAN:  She's not.  And we've made a

20   deliberate decision to limit that in this case.

21             THE COURT:  Okay.  Okay.

22             MR. KAPLAN:  All right.  Thank you, Your Honor.

23             THE COURT:  Good morning.

24             MS. PEYSER:  Good morning, Your Honor.  My name is

25   Nell Peyser, and I am counsel for Mr. Bauer.

1          I would like to begin where Mr. Kaplan ended.  In

2    Ms. Hill's supplemental filing, she refers -- what she refers

3    to as an "unremarkable proposition" is that when a plaintiff

4    places her emotional-distress damages and mental health

5    conditions at issue, the defendant is entitled to discover

6    whether the plaintiff was truly emotionally distressed from

7    that conduct or whether there were other causes for that

8    emotional distress.  Now, as Mr. Kaplan just went through,

9    Ms. Hill has put her mental health at issue here.  She seeks

10   damages for severe emotional distress, including anxiety,

11   depression, fear, humiliation, loss of enjoyment of life,

12   detachment, feeling disconnected from the world,

13   worthlessness, emotional numbness -- and the list goes on.

14         And this is precisely a primary reason that

15   Mr. Bauer seeks this information.  It goes directly to her

16   mental and emotional state from both before her encounters

17   with Mr. Bauer and after her encounters and whether that

18   emotional state was indeed caused by Mr. Bauer or whether it

19   was caused by something else, such as her alcohol use

20   disorder.  Every single mental health condition or

21   explanation of the type of severe emotional distress that

22   Ms. Hill allegedly suffered from could have also been caused

23   by alcohol use disorder, and Mr. Bauer is clearly allowed to

24   explore whether there were other causes for her emotional and

25   mental state.

1          Now, Ms. Hill says that she's not seeking damages

2    based on alcohol use disorder, but her alcohol use and

3    treatment information bears directly on her emotional state

4    and whether she was severely emotionally distressed before

5    she ever met Mr. Bauer.  Substance use disorder is a mental

6    health disorder in the "DSM-5" and the literature, and the

7    treatment necessarily involves addressing the underlying

8    causes or the other mental health conditions that are

9    triggered or exacerbated by the substance use or what have

10   you.  Substance use treatment services are mental health

11   treatment services, and they're not simply provided in a

12   vacuum.

13          And if Ms. Hill's emotional distress wasn't what

14   caused her substance use, her substance use could have caused

15   her emotional distress.  Either way, the discovery bears

16   directly on Ms. Hill's level of emotional distress that

17   existed prior to her encounters with Bauer and after her

18   encounters with Mr. Bauer, and he's entitled to show that he

19   was not the cause of the damages that she seeks.  She --

20          THE COURT:  Can I ask you a question?  How does

21   that argument work -- or rather, how does it interact with

22   the fact that California law says basically that you find,

23   for lack of a better term, her -- a plaintiff -- you know,

24   you take them as you find them.  So how does that -- you

25   know, sort of our traditional eggshell plaintiff concept,

1    right -- how does that -- how do those two legal concepts

2    work together?

3           MS. PEYSER:  Well, here if Mr. Bauer can establish

4    that Ms. Hill's emotional and mental health condition was of

5    a certain way before they met and had their two sexual

6    encounters and that her mental, emotional health was

7    unchanged following the encounters, then the damages that she

8    seeks are simply nonexistent.  So we may take her as we find

9    her, but we compare her state from beforehand and her state

10   afterwards, and to understand that emotional and mental state

11   from both before and after her encounters with Mr. Bauer, we

12   need to understand her mental health condition at large,

13   which, as Ms. Hill admits -- or concedes, her alcohol use

14   disorder and treatment has played a big role in her life and

15   --

16          THE COURT:  How -- it sounds like, though, that you

17   may be getting those records from other sources.  How does

18   the information from Rodgers and Decker -- if you're getting

19   mental health treatment -- or mental health records from the

20   providers, what does this add for you?

21          MS. PEYSER:  We understand that Ms. Hill spoke with

22   both Ms. Rodgers and Ms. Decker at length about her mental

23   health and in conjunction with her treatment for her alcohol

24   use disorder, and her communications with them, they shed

25   light very different than what any sort of records from a

1    treatment provider will shed.  As we know from some of the

2    communications we have, Ms. Rodgers spoke about Ms. Hill's

3    proclivity for rough sex as a relapse of another kind, and

4    that suggests that, as part of Ms. Hill's discussions with

5    Ms. Rodgers and Ms. Decker, they were navigating and

6    exploring Ms. Hill's interest in rough sex as part of her

7    recovery and using that as a means to, perhaps, achieve the

8    same high that she achieved from her alcohol use disorder.

9           THE COURT:  And that wouldn't -- that information

10   wouldn't already be included in the medical records?

11          MS. PEYSER:  I don't believe so, Your Honor.

12          THE COURT:  Okay.  All right.  Go ahead.

13          MS. PEYSER:  I'd also like to quickly mention that

14   Ms. Hill also seeks damages for future emotional pain and

15   suffering all the way through the present, and she has said

16   in her Interrogatory Response No. 21 that these symptoms have

17   continued through the present.  So Mr. Bauer should also be

18   able to discover information about her substance use disorder

19   from the timeframe we're talking about through the present to

20   understand whether whatever emotional distress Ms. Hill

21   alleges she has suffered since her encounters with Mr. Bauer

22   and continues to suffer are indeed caused by him or whether

23   there's anything else going on that could be another cause

24   for that emotional state.

25          And I'd also like to mention that Ms. Hill has

1   already agreed that Mr. Bauer is entitled to fulsome

2   discovery on her mental health history and records from both

3   before and after her encounters with Mr. Bauer for precisely

4   the reason that she's placed her mental health at issue.  And

5   Ms. Hill agrees that Mr. Bauer can discover all information

6   about her mental health history going back to April 2019 for

7   every single mental health condition except alcohol use

8   disorder.

9           THE COURT:  Can I ask you a question?

10          MS. PEYSER:  Sure

11          THE COURT:  You were just talking about dates and

12  timeframes, and I'm looking at the subpoena, and I'm not

13  seeing -- excuse me -- a time limitation for either of these

14  subpoenas.

15          MS. PEYSER:  Your Honor, I believe the time

16  limitation is from the day the witness met Ms. Hill through

17  the present but I --

18          THE COURT:  And do we know what that timeframe is?

19          MS. PEYSER:  -- double-checking.

20          Yes.  That is Instruction No. 1 to the subpoenas:

21  "The date when you first communicated with Ms. Hill through

22  the present."  We --

23          THE COURT:  Okay.  Do we know what that is for

24  these folks?  Yeah.

25          MS. PEYSER:  We believe that to be around, if not

1   later, than the April 2019 timeframe, but I think Mr. Kaplan

2   would know better than I would.  Ms. Hill does say in her

3   declaration that Ms. Decker was her AA sponsor from

4   February 2021 through April 2022 and that she resided at the

5   sober-living house from January 2020 to August 2020.  So

6   we're -- I -- my understanding is that we're talking about

7   not much earlier than 2019.

8           THE COURT:  They both look like they might have an

9   answer over there.  I'm just curious.

10          Yeah?

11          MR. KAPLAN:  Your Honor, I was going to say the

12  same thing.  So it's certainly possible that these

13  individuals have -- let me back up.

14          It's certainly possible that Ms. Hill has known

15  these individuals, in particular Ms. Decker, earlier, but

16  Ms. Peyser is correct in terms of when those relationships --

17  in terms of when Ms. Hill went to the sober-living home in

18  2020 and when Ms. Decker became Ms. Hill's sponsor.  So those

19  dates are accurate.

20          THE COURT:  Okay.  Thank you.

21          MS. PEYSER:  Beyond Ms. Hill's agreement that

22  Mr. Bauer can discover information about every mental health

23  condition other than alcohol use disorder, she also agrees

24  that if there are alcohol use-disorder records intertwined

25  with her other mental health records, Mr. Bauer can discover

1  those too.  And she further agrees that Mr. Bauer can ask her

2  about her substance use history at a deposition, for example.

3  And she further agrees that Mr. Bauer can discover

4  information about her contemplated employment at Ohana even

5  if that relates to -- or, and the reasons for her not

6  starting that position even if that relates to her alcohol

7  use disorder.

8        At the end of the day, what are the parties really

9  arguing about?  Ms. Hill largely agrees that Mr. Bauer is

10  entitled to mental health records, including substance use

11  records if they are intertwined with those mental health

12  records, and as substance use treatment, it goes to whatever

13  mental health conditions the patient is experiencing at the

14  time to address the underlying concerns, and the treatment is

15  generally holistic.  It seems like a distinction that doesn't

16  really exist in reality.

17        And further, looking at this practically, how can

18  Decker and Rodgers possibly be tasked with making these

19  determinations as they go through the documents that they

20  have and -- to decide what records are solely substance use,

21  what records are intertwined with mental health, what records

22  go to the issues in the case, such as her contemplated

23  employment at Ohana or consent to have rough sex with

24  Mr. Bauer or whatever they were exploring in their -- in the

25  road to sobriety process.  And to ask these witnesses to go

1  through their documents and make these nuanced determinations

2  is really not possible in practice.  So even if the Court

3  were to rule along the lines of Ms. Hill's position, there is

4  really no practical way to effectuate that ruling.

5       THE COURT:  One question I have for you is not this

6  nuanced argument but your argument about the fact that

7  Ms. Hill sort of generally seems to agree; so what are we

8  really fighting about?  That question goes both ways, right.

9  Like, if you can get the documents other ways -- all the

10  other ways that they're agreeing, what's different here that

11  your client needs that it's not getting other places?

12       MS. PEYSER:  Your Honor, Ms. Hill has not produced

13  any communications between her and Ms. Decker or her and

14  Ms. Rodgers, and we do know from the prior proceeding that

15  Ms. Hill does not have, at least, a large handful of

16  communications with Ms. Decker anymore.  And quite frankly,

17  we understand that a significant amount of discoverable

18  information about Ms. Hill's mental state will likely come

19  from her communications with these two witnesses.

20       We do have some of her communications with

21  Ms. Decker from the prior proceeding, and I'll note that

22  Ms. Hill produced those without redacting any substance use

23  information, and she spoke with Ms. Decker about the 12-step

24  program and what step she was on, as well as certain AA

25  mantras that her and Ms. Decker discussed amongst themselves

1   would be particularly helpful for Ms. Hill.  Ms. Hill

2   produced all of that in the prior proceeding without

3   redactions and without even designating it confidential.

4           So, yes, we do have some of these communications,

5   and it's possible that we will get some from Ms. Hill as well

6   in this case, but we don't have a full set, and especially

7   for Ms. Rodgers, the only communication we do have and are

8   aware of is the communication where Ms. Rodgers disqualified

9   Ms. Hill from her position at Ohana.

10          THE COURT:  Okay.  All right.

11          MS. PEYSER:  Now, I've touched on the primary

12   reason -- or a primary reason we seek this information,

13   because of the emotional distress Ms. Hill has placed at

14   issue, but her history of alcoholism also goes to the lost

15   wages she seeks from Ohana.  Ms. Hill alleges she was unable

16   to start that job due to the physical and mental trauma she

17   allegedly suffered from her encounters with Mr. Bauer, and

18   Mr. Bauer's clearly entitled to test whether there were other

19   causes that caused her to not be able to start that job.

20          We know from the one communication we do have with

21   Ms. Rodgers that she was disqualified from the employment

22   because Ms. Rodgers viewed rough sex as a relapse of another

23   kind.  Now, this goes to the lost-wage damages that she

24   seeks, but it also tells us that Ms. Rodgers and Ms. Hill

25   were -- if Ms. Rodgers understood that that was a relapse of

1   another kind, this was more likely than not something that

2   the two had discussed and a component of Ms. Hill's recovery

3   process and path to sobriety and the role that rough sex may

4   have played in that process.  This message from Ms. Decker --

5   or, excuse me -- Ms. Rodgers more likely than not didn't come

6   out of nowhere.  This is very likely something that was part

7   of the process that wouldn't be in any formal substance use

8   or mental health records but something that Ms. Hill and

9   Ms. Rodgers, and likely Ms. Decker, discussed.

10          And if Ms. Rodgers considered it a relapse of

11  another kind, that suggests that there was a lapse before the

12  relapse, perhaps.  It suggests that Ms. Rodgers was familiar

13  with the role that rough sex played in Ms. Hill's recovery

14  process from before she met Bauer.  So it not only goes to

15  the lost wages that she seeks, but it also goes to the next

16  reason that this information is discoverable.

17          It bears directly on whether, why, and how Ms. Hill

18  manifested her consent to have rough sex with Mr. Bauer.

19  Mr. Bauer alleges that Ms. Hill told him that she desired

20  rough sex because, when she started engaging in rough sex,

21  once she became sober, it gave her a high.  And from this

22  conversation, Mr. Bauer understood that Ms. Hill was

23  experienced in rough sex, she desired it because -- and she

24  told him the exact reason that she was at his apartment to

25  engage in this activity.  And Ms. Hill denies that this

1    conversation ever took place.

2          So in the classic "he said, she said" scenario,

3    Decker and Rodgers's potential corroborations of either

4    party's account are especially important.  If they were

5    helping Ms. Hill with her substance use treatment and

6    navigating the role of rough sex in her sobriety process,

7    which Bauer understands the case to be, that's highly

8    probative evidence of whether or not she consented and what

9    she told Mr. Bauer what the scope of Ms. Hill's consent was.

10         And if that were not enough, Ms. Hill has already

11   disclosed a morass of this information in her DVRO petition,

12   in the DVRO proceeding -- which the transcript is public, and

13   it is -- actually has been filed an exhibit in prior motions

14   in this case -- and then she produced over 200 pages of

15   communications with Decker that include the information about

16   -- or some of the information that we seek here.  So that

17   Ms. Hill now says this same information that she already

18   produced with no redactions or confidentiality designations

19   is deeply private to her is simply not convincing.

20         THE COURT:  Now, are you saying that the documents

21   that you are seeking were produced without a protective order

22   in that other proceeding?

23         MS. PEYSER:  Your Honor, I believe there was a

24   protective order in the other proceeding, but these documents

25   were produced without any confidentiality designations,

1    meaning, if there was a protective order in place, which I do

2    believe there was, the documents would not be subject to it.

3              THE COURT:  Okay.

4              MS. PEYSER:  So given the relevance of the

5    information and Ms. Hill's concession that large swaths of it

6    are in fact discoverable and her public disclosure of much of

7    the same information that she now seeks to protect, we

8    believe -- we strongly believe that the balancing test weighs

9    heavily in favor of permitting discovery on this topic.

10             THE COURT:  All right.  Thank you.

11             MS. PEYSER:  I'm happy to answer any questions you

12   have, or I can say a few words about the Padres subpoena.

13             THE COURT:  Please go on with the Padres.  Yeah.

14             MS. PEYSER:  Sure.  At this time Mr. Bauer

15   understands that there are strong privacy rights associated

16   with employment records and employment disciplinary history,

17   and he does not seek to enforce the Padres subpoena at this

18   time.  If information comes to light in discovery that allows

19   him to have a strong basis to seek the information, then he

20   reserves his right to seek that information in the future,

21   and as we've stated in the joint stipulation, if we do seek

22   that information in the future, we will let Ms. Hill's

23   counsel know with more than enough time to tee up this

24   dispute before the Court.

25             So at this point we think it doesn't make sense for

1  the Court to expend judicial resources to decide a dispute

2  that's not ripe and may well never ripen.  So our position is

3  that we defer it to if and when it does become an issue in

4  the case, which it may not.

5          THE COURT:  Can you tell me -- because these are

6  her employment records; right?

7          MS. PEYSER:  Correct.

8          THE COURT:  So how are employment records relevant

9  to this case at all?  I mean, I know you tried to argue it.

10  I'm just not incredibly convinced from the paperwork.  So

11  help me understand better how they're relevant to defamation

12  claims and sexual battery claims.

13          MS. PEYSER:  At this point we are not arguing that

14  they are relevant and we're not seeking the discovery on

15  those employment records but we --

16          THE COURT:  How then -- and I appreciate your

17  honesty on that.  How then -- why is it a problem if I was to

18  grant the motion to quash/protective order?  Because, if

19  there was, let's say, some subset of these documents that you

20  believed later on were necessary, would there be a burden in

21  just re-serving the subpoena so that these -- the requests

22  would be more tailored to whatever is actually needed at the

23  time in the case?

24          MS. PEYSER:  Your Honor, if and when we do seek

25  documents from the San Diego Padres, we will be more than

1   happy to confer with Ms. Hill's counsel to see if we can

2   reach agreement and narrow the subpoena based on whatever

3   basis that is we're seeking those documents at that time,

4   depending on what discovery looks like, but for us to

5   formally withdraw the subpoena now and re-serve it would give

6   the Padres 30 days to respond -- they've already responded to

7   the subpoena -- and given the close of discovery, which is

8   September 1st, we think we have already gone through the

9   process and teed this up, and we can get this dispute to

10  Your Honor and to this Court expeditiously if it does become

11  something that we are interested in pursuing later on, rather

12  than restarting that whole process that we've already spent

13  time and resources on.

14          THE COURT:  Okay.  Thank you.

15          MS. PEYSER:  Thank you, Your Honor.

16          MR. KAPLAN:  Your Honor, may I approach?

17          THE COURT:  Yes.

18          MR. KAPLAN:  Thank you.

19          So, Your Honor, I'll try to be extremely brief

20  unless you have any additional question because I think we've

21  covered most of the stuff both today and in the papers.

22  There's two things -- or three things, I should say, that I

23  want to just briefly touch on.

24          The first is -- I think you asked a question to

25  Ms. Peyser as to -- for -- given that Mr. Bauer is going to

1   be getting everything he says he wants anyway, what's the

2   need for this other stuff that really, in isolation, deals

3   with Ms. Hill's treatment or substance abuse?  And I didn't

4   really hear any compelling reason for that specific

5   information.  I think Mr. Bauer is getting everything he

6   needs and says he wants.  To the extent Ms. Hill had some

7   sort of treatment or speaking to her sponsor, that just

8   doesn't seem relevant here.  It doesn't have anything to do

9   with her mental health or causation.  She's going to get

10   anything that might exist in the medical records or from

11   these other people.

12          There was also an argument that it would not be

13   practical to tell any of these third parties to look for more

14   specific information or it might impose some sort of burden

15   on them.  I'm not sure I understand that argument either as

16   to why it would be so difficult to craft some sort of,

17   either, specific request or instruction as to what they need

18   to look for, and they could look for it.

19          Now, if there is some burden or they come back and

20   say they don't know how to look for that or they're not

21   capable of doing that, then we could always deal with that at

22   that point in time but certainly -- I guess the most easy --

23   the easiest thing for a nonparty would do is "I'm going to

24   give you everything I have about Lindsey Hill, and you guys

25   could figure out what's relevant and what matters to your

1    case," but that's not how discovery works.  We're supposed to

2    be somewhat targeted and precise with our requests, and

3    that's all that I am proposing here, and there's no reason

4    why these third parties can't look for more specific

5    information if it exists.

6            The final point that I'll make briefly -- and this

7    was addressed in the supplemental memorandum concerning the

8    alleged waiver issue that Ms. Decker previously produced --

9    or someone produced, I guess, documents or communications

10   between Ms. Hill and Ms. Decker in the prior DVRO proceeding.

11   To the extent those have been produced, Ms. Peyser's office

12   obviously has those.  They are -- it's our -- the cat's out

13   of the bag on those documents.  So I don't think we're going

14   to -- they're asking Ms. Decker to re-produce those

15   documents.  Those are already out.  They've bene produced.

16   No one's clawing them back.

17           The issue really is if there's other communications

18   that fall into this category that's subject to this motion,

19   whether or not those should be produced, and they shouldn't.

20   To the extent there's been a waiver based on the production

21   of these other communications, that doesn't mean that there's

22   a waiver as to other communications that have not been

23   produced, and there's been no showing of any need for those

24   documents.

25           THE COURT:  All right.  Thank you.

1          MR. KAPLAN:  Thank you, Your Honor.

2          THE COURT:  All right.  Let's take a short break.

3      (Recess from 11:04 a.m. to 11:21 a.m.)

4

5                          AFTER RECESS

6      (Call to Order of the Court.)

7          THE COURT:  All right.  Thank you, everybody.

8          All right.  So here's my ruling:  The Court denies

9  Defendant and Counterclaimant Lindsey Hill's motion to quash

10 or to modify the Decker and the Rodgers subpoenas.  I find

11 that Hill has not met her burden to demonstrate that a

12 privacy right exists to preclude the production of what are

13 otherwise relevant documents.

14         With regard to the Padres subpoena, the Court

15 grants Hill's motion to quash the Padres subpoena.  I find

16 that Hill the -- has established a privacy right and this

17 information -- and the information sought is not relevant.

18         Now, folks, I know this is a motion to quash, not a

19 motion to compel.  Do you need me to issue any deadlines for

20 production, or are you capable and willing and happy to just

21 go on your way and figure it out amongst yourselves?

22         MR. KAPLAN:  Well, Your Honor, I think the

23 production would be directed at the third parties.

24         THE COURT:  Uh-huh.

25         MR. KAPLAN:  So I guess I'll leave that to --

1          THE COURT:  Okay.

2          MR. KAPLAN:  -- Mr. Bauer's --

3          THE COURT:  Yeah.  I mean, they're not here, right.

4   They're not a party to this.  So generally I wouldn't set a

5   deadline but if everyone for some reason wanted me to.

6          MS. PEYSER:  Your Honor, we would appreciate if you

7   could set a deadline so that the third parties will have some

8   guidance as to the timeframe and their obligations given that

9   depositions are quickly approaching and, frankly, the parties

10  have a lot to get done between now and the end of discovery.

11         THE COURT:  And the response deadline is already

12  passed for both subpoenas; is that right?

13         MS. PEYSER:  Correct.

14         MR. KAPLAN:  Yeah.  Though I think there's been

15  writings to an agreement that has been communicated to the

16  parties that -- to hold the documents in abeyance on these

17  particular issues.

18         THE COURT:  Of course.  Of course.

19         MR. KAPLAN:  But you're correct, Your Honor.

20         THE COURT:  Yeah.  So when are depositions

21  starting?

22         MS. PEYSER:  Your Honor, multiple depositions have

23  been noticed in this case, and we would like to start them as

24  soon as possible.  We are still waiting on Ms. Hill's

25  document production, as well as these witnesses.  So we would

1   like that to occur as quickly as possible so that we can

2   commence depositions.  We would suggest, perhaps, two weeks

3   would be --

4          THE COURT:  When is the first noticed deposition

5   scheduled for?

6          MS. PEYSER:  We, Your Honor, noticed a handful of

7   depositions for early May, and we had since notified the

8   deponents that the depositions would be postponed until we

9   had guidance from Your Honor, as well as document

10  productions.  So as of now there are no dates certain.

11         THE COURT:  All right.

12         Mr. Kaplan?

13         MR. KAPLAN:  Well, I thought this might be a good

14  entree into another discovery-related housekeeping issue that

15  we were conferring about during the recess.  It -- if we're

16  discussing, more broadly, discovery.

17         So there's currently a hearing scheduled on a

18  motion to compel against Mr. Bauer for June 14th.

19         THE COURT:  Okay.

20         MR. KAPLAN:  And I don't think I need to summarize

21  the issues there, but I'm happy to if you'd like, Your Honor.

22         THE COURT:  No.  That's okay.

23         MR. KAPLAN:  Okay.  There are some other discovery

24  issues in the case that -- where there's some overlap, and

25  Mr. Bauer, I think, intends to file his own motion as to

1   that.  I'm going to be filing a supplemental brief that's due

2   next Wednesday that will also be raising some, perhaps, new

3   issues and issues that's going to be at issue in Mr. Bauer's

4   motion.

5           So long story short, we were conferring about the

6   possibility of instead of having multiple hearings with

7   overlapping issues, for at least efficiency purposes and

8   probably others, having those hearings -- or the 14th -- the

9   hearing on the 4th [sic] continued to another date and having

10   all these hearings consolidated.  We're going to further

11   confer about that and figure out the logistics, but we wanted

12   to preview that with you to make sure --

13           THE COURT:  Okay.  And you guys are coming out from

14   New York; is that right?

15           MR. BROWN:  New York and D.C.

16           THE COURT:  Oh.  Don't you want multiple trips to

17   Southern California?

18           MR. BROWN:  Not on gloomy days --

19           THE COURT:  In the beautiful summer months?

20           MR. BROWN:  Not on gloomy days like this.

21           THE COURT:  Yeah.  No.  No.  So you don't want to

22   be here in June because that's called "June gloom" and it's

23   just never nice but --

24           MR. BROWN:  Well, the date that we are considering,

25   if the Court's available, and it appears that the Court is,

1    is June 28th.  Is that a date that --

2           THE COURT:  Kristee, are you able to check our

3    calendar?

4           Just so you all know, I don't hold discovery

5    hearings when I'm on criminal duty.  Okay?  And so on my

6    local procedures page, you'll see dates that are blocked out,

7    and that's usually why, because it's a criminal duty week,

8    and it's too hard to handle with civil issues, but let's see.

9           THE CLERK:  (Inaudible.)

10          THE COURT:  Okay.  As of right now, June 28th is

11   open.  All right?  So I don't hold dates.  All right?  So I

12   don't reserve anything, but as of now, it's open, I don't

13   know of any reason why it wouldn't be, and I'm pretty good

14   about getting my dates, you know, if I'm going to be out of

15   town or something on the record.  So I think that's a

16   potential, and I don't have a problem with you guys moving

17   dates.  If you all agree, just do a stipulation.  Okay?

18          MR. BROWN:  We're going to try to nail this down

19   quickly.

20          MR. KAPLAN:  Yeah.  I think we should have an

21   answer to this question --

22          THE COURT:  Okay.  Okay.

23          MR. KAPLAN:  -- probably within the next 24 hours

24   or so.

25          THE COURT:  Okay.  So with regard to the issue of

1    the production of documents in response to the two subpoenas

2    that are not being quashed, I'm going to set a two-week

3    deadline for that subject -- or -- so what is today?  I don't

4    have my calendar out here.

5            MR. KAPLAN:  24th.

6            THE CLERK:  Today (inaudible).

7            THE COURT:  So what is two weeks?  And then go to

8    Friday because they're third parties.

9            MR. BROWN:  June -- it's June 5th or 6th.

10           THE CLERK:  June 7th.

11           THE COURT:  June 7th.  So I'm going to say that the

12   documents should be produced by the third parties by June 7th

13   or a date -- another date mutually agreed to by the parties.

14   Okay?  We all know that these are third parties.  If they

15   already have everything ready, let's just get it produced by

16   the 7th.  If they end up having issues, I expect that you are

17   all good counsel, and communicate with each other.

18           Since there's going to be multiple disputes, I'll

19   let you guys know sort of who I am when it comes to discovery

20   disputes generally.  I come from the bankruptcy world, where

21   everything is incredibly practical, right.  You don't have

22   endless amounts of money and part -- and good lawyers get

23   together and can figure out, to a large degree, whether

24   something should be produced or not.  You may not like it,

25   but, yeah, it's probably relevant.  Maybe it's a little

1   broader than I want, but it's not as broad -- right?  So

2   that's sort of where I come from.  I seem to be very

3   practical that way.  I can tell already that you guys did

4   that with regard to these motions because there were a whole

5   bunch of categories that nobody was fighting over.  Okay?

6   But just know that.  I tend to be very practical.

7           And what I really, really hope to have good lawyers

8   provide -- and I see every evidence here that I have a bunch

9   of good lawyers involved -- is that you guys can, you know,

10  try to reduce the need to come to court as much as possible,

11  right.  If reasonable minds can differ, maybe you should just

12  settle it amongst yourselves and only come to me when you

13  truly -- your client will not let you produce something

14  unless you get a judge order or you just truly have polar

15  opposite opinions on something, but then I want the law that

16  supports you for it, you know, not just a guess or a hope or

17  a "in my opinion."  Okay?  So try to be as practical as you

18  can and just come to me with as few issues as possible.

19          And by that, I mean, also, if you come to an

20  agreement after briefing something on a joint stip and you

21  realize, "Hey, maybe I should produce this" or "Maybe these"

22  -- go ahead and come to an agreement and let me know.  I love

23  it when you show up on hearing day and you say, "We have

24  already resolved this, this, and this issue, and it's just

25  these issues that are left."  Okay?

```
 1              MR. BROWN:  Thank you.

 2              MR. KAPLAN:  Thank you, Your Honor.

 3              THE COURT:  All right.  All right.

 4              MS. PEYSER:  Thank you, Your Honor.

 5              THE COURT:  All right.  Anything further?

 6              MS. PEYSER:  Not from us.

 7              MR. KAPLAN:  Not from us.  Thank you, Your Honor.

 8              THE COURT:  All right.  Have a good day.  Thank

 9    you, everybody.

10              MR. KAPLAN:  Thank you, Your Honor.

11              THE CLERK:  Court is now adjourned.

12         (Proceedings adjourned at 11:29 a.m.)

13    ///

14    ///

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3

4                                CERTIFICATE

5          I certify that the foregoing is a correct transcript

6    from the electronic sound recording of the proceedings in the

7    above-entitled matter.

8

9    /s/ Julie Messa_____          June 11, 2023_____
     Julie Messa, CET**D-403         Date
10   Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT H

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 1

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  SOUTHERN DIVISION

4

5    _____

                                    )
6    TREVOR BAUER,                  )
                                    )
7            Plaintiff,             )
                                    )
8        vs.                        )No. 8:22-cv-00868-JVS-ADS
                                    )
9    LINDSEY C. HILL and NIRANJAN   )
     FRED THIAGARAJAH,              )
10                                  )
             Defendants.            )
11   _____)

12

13      CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

14        VIDEOTAPED DEPOSITION OF LINDSEY C. HILL

15              Los Angeles, California

16            Tuesday, August 29, 2023

17                    Volume I

18

19

20

21

22   Stenographically Reported By:
     Melissa M. Villagran, RPR
23   CSR No. 12543

24

25

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400