Shawn C. Holley, Esq.
Kate E. Mangels, Esq.
Suann MacIssac, Esq.
Kinsella Holley Iser Kump Steinsapir LLP
11766 Wilshire Blvd, Suite 750
Los Angeles, CA  90025
Phone: 310-566-9800
Fax: 310-566-9850
E-Mail: sholley@khiks.com; kmangels@khiks.com; smacisaac@khiks.com

Blair G. Brown, Esq.
Jon R. Fetterolf, Esq.
Nell Peyser, Esq.
Zuckerman Spaeder LLP
1800 M. Street, N. W. Suite 1000
Washington, D.C 20036
Phone: 202-778-1800
Fax: 202-882-8106
E-Mail: bbrown@zuckerman.com; jfetterolf@zuckerman.com
npeyser@zuckerman.com

Attorneys for Plaintiff/Counter-Defendant Trevor Bauer

Christopher P. Wesierski [Bar No. 086736]
   cwesierski@wzllp.com
Michelle R. Prescott [Bar No. 262638]
   mprescott@wzllp.com
Eileen Spadoni [Bar No. 133259]
   espadoni@wzllp.com
Brett A. Smith [Bar No. 322707]
   bsmith@wzllp.com
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Bryan J. Freedman, Esq. (SBN: 151990)
   bfreedman@ftllp.com
Jesse A. Kaplan, Esq. (SBN: 255059)
   jkaplan@ftllp.com
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Defendant and Counterclaimant
Lindsey C. Hill

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION TO COMPEL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER, | Case No. 8:22-cv-00868 JVS (ADSx) |
| Plaintiff, | Assigned to: Judge James V. Selna<br>Referred to: Magistrate Judge Autumn D. Spaeth |
| vs. | **DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION TO COMPEL THIRD-PARTY PRODUCTION AND HILL TO ANSWER QUESTIONS** |
| LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH, | |
| Defendant. | [Notice of Motion to Compel; and Declarations of Blair G. Brown, Jesse Kaplan, Lindsey Hill and Bryan Freedman filed concurrently] |
| LINDSEY C. HILL, | |
| Counterclaimant, | Date:  October 11, 2023<br>Time:  10:00 a.m.<br>Magistrate Judge: Autumn D. Spaeth<br>Courtroom:          6B |
| vs. | |
| TREVOR BAUER, | Action Filed: April 25, 2022<br>Discovery Deadline: September 1, 2023<br>Pretrial Conference:  January 22, 2024<br>Trial Date: February 13, 2024 |
| Counter-defendant. | |

# **TABLE OF CONTENTS**

I.     BAUER'S INTRODUCTORY STATEMENT ...................................................1

II.    HILL'S INTRODUCTORY STATEMENT.....................................................3

III.   REQUEST FOR PRODUCTION AT ISSUE....................................................4

IV.    DEPOSITION QUESTIONS AT ISSUE .........................................................5

BAUER'S POSITION .........................................................................................8

   A.   Factual Background ......................................................................8

   B.   Legal Standard ............................................................................11

   C.   The Crime-Fraud Exception Applies. ..........................................13

   D.   Ms. Hill's Boilerplate Objections Are Unavailing. ....................16

HILL'S POSITION ...........................................................................................16

   A.   Background Facts.........................................................................16

      1.   The Snapchat Video at issue. .............................................16

      2.   Hill sustained visible injuries as a result of being battered by Bauer........17

      3.   Hill voluntarily disclosed the Snapchat Video to the police. ....................18

      4.   The DVRO Proceeding generally. .............................................18

      5.   Hill Transmits the Snapchat Video to Freedman..........................19

      6.   There was little to no formal discovery in the DVRO Proceeding............19

      7.   Freedman has produced the only written communication concerning the Snapchat Video during the pendency of the DVRO Proceeding. .............20

   B.   Bauer's Motions to Compel are Moot. .........................................21

   C.   The Crime-Fraud Exception Does Not Apply to Any Hypothetical Communications About the Video.................................................21

      1.   Hill did not seek the services of her attorneys to enable her to commit a crime or defraud anyone. .........................................23

      2.   There are no communications that furthered any alleged crime or fraud.........................................24

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION TO COMPEL

## JOINT STIPULATION REGARDING PLAINTIFF AND COUNTERDEFENDANT BAUER'S MOTION TO COMPEL

Pursuant to Local Rule 37-2, plaintiff/counter-defendant Trevor Bauer and defendant/counter-claimant Lindsey Hill submit this Joint Stipulation (the "Joint Stipulation") relating to Bauer's Motion to Compel the production of documents in response to the sole document request from Bauer's Subpoena to Bryan Freedman, dated August 4, 2023, and responses to certain questions posed to Ms. Hill at her deposition on August 29, 2023.

After Counsel for Mr. Bauer requested a meet and confer regarding the instant Motion to Compel, counsel briefly spoke by phone several hours later on August 30. During that call, counsel for Ms. Hill told Bauer's counsel that: (a) Bauer's request for a meet and confer did not contain adequate information as required by L.R. 37-1; and (b) Hill's counsel was not available at that time.  Counsel for Mr. Bauer followed-up by email stating his disagreement, providing additional argument on the basis for this Motion, and proposing a range of times for a meet and confer.  *See* Brown Decl., Exs. I & J.[1]  Counsel for Ms. Hill responded that she was unable to meet and confer in advance of the close of discovery, suggesting that her earliest availability was the following week.  Thus, Mr. Bauer brings the instant Motion having endeavored to meet and confer in good faith prior to the discovery deadline.[2]

## I.    BAUER'S INTRODUCTORY STATEMENT

Both Ms. Hill and her attorneys have possessed since July 2021 a case-critical

---

[1] Counsel for the parties had previously met and conferred going as far back as May 2023, regarding a separate subpoena to Mr. Freedman for a different communication concerning the transmission of the video from Ms. Hill and the alleged applicability of the crime fraud exception.  *See* Brown Decl., Ex. C (attached May 2, 2023 letter).

[2] In order to comply with the Court's order requiring discovery motions to be filed within ten days of the close of discovery, it is Bauer's position that counsel for Mr. Bauer is required to serve his stipulation on opposing counsel by September 1, 2023.

Snapchat video that shows Ms. Hill and Mr. Bauer mere hours after what she alleges was a vicious and traumatic encounter on May 16, 2021.  The video shows Ms. Hill shortly after she alleges that she "awoke to Bauer forcefully and repeatedly punching her in the face with a closed fist."  Counterclaim ¶ 3, Dkt. No. 36.  The video flatly contradicts those allegations.  Ms. Hill first records her face, briefly directs the camera onto a sleeping Mr. Bauer, and then returns to recording herself "[s]mirking" – Ms. Hill is "not sure if it was a smile."  Brown Decl., Ex. G at 154:7-10.  Ms. Hill is lying peacefully in bed next to Mr. Bauer, who has a night mask over his eyes.  *See* Dkt. No. 53 (manual filing of video).  Ms. Hill testified that "light scratch marks" are visible, though she has "no idea" how she got those.  Brown Decl., Ex. G at 154:22 – 155:5, 167:21-23.  The existence of any injury is impossible to discern.

Despite the video's obvious relevance to the Domestic Violence Restraining Order ("DVRO") that Ms. Hill pursued against Mr. Bauer, it went unproduced throughout those proceedings.  That did not stop Ms. Hill's counsel from falsely asserting to the court and to Mr. Bauer in that proceeding that Ms. Hill had produced all relevant evidence and that Mr. Bauer had "everything we have."  Brown Decl., Ex. C at 2.  Discovery here has shown that Ms. Hill shared the video with her attorney, Mr. Freedman, on July 5, 2021—more than a month before those representations to Mr. Bauer and the state court.  *See* Brown Decl., Ex. B.  But Ms. Hill saw fit to omit any reference to the video during her DVRO testimony about the events of the morning of May 16, when she testified mere weeks after sharing the video with her counsel.  *See* Brown Decl., Exs. B & H at 174:7 – 176:2, 451:18 to 452:7.  In short, Ms. Hill concealed critical evidence and then lied about it.

Mr. Bauer eventually obtained the video in this proceeding through discovery served on the Pasadena Police Department ("PPD").  He was lucky to.  In April 2022, after consulting with her counsel, Ms. Hill demanded that the PPD "return all [her] files from the criminal investigation directly to me (documents, records, recording of the cold call, etc[.])".  Brown Decl., Ex. D.  Ms. Hill asserted that the files should

"then be destroyed as PPD" supposedly had "no legal authority to disseminate or maintain [her] files." *Id.* This was all despite the obvious and substantial probability of further litigation.

Mr. Bauer hereby moves to compel discovery of Mr. Freedman's communications related to the concealed video, and to compel Ms. Hill to answer a limited set of questions about her communications on the same topic. This evidence goes directly to an unlawful scheme that was intended to conceal highly relevant evidence from Mr. Bauer and the courts through false representations. It therefore falls squarely within California's crime-fraud exception to attorney client privilege. *See* Cal. Evid. Code § 956; *BP Alaska Expl., Inc. v. Superior Ct.*, 199 Cal. App. 3d 1240, 1262 (Ct. App. 1988).

The evidence of concealment by Ms. Hill and her counsel easily makes out the requisite prima facie case; that is a showing of evidence from which a crime or fraud can be inferred. Moreover, Mr. Bauer is offering to limit the requested information to correspondence on or before April 4, 2022—the date Ms. Hill demanded that the PPD destroy the video at issue—which ensures the discovery sought will have a "reasonable relation" to the crime or fraud.

## II.  HILL'S INTRODUCTORY STATEMENT

Bauer seeks the substance of irrelevant and presumptively privileged communications between Hill and her counsel concerning a certain video in the context of a prior proceeding in Los Angeles Superior Court whereby Hill sought a Domestic Violence Restraining Order against Bauer (the "DVRO Proceeding"). Bauer claims that Hill's communications with her counsel, in particular Bryan Freedman, are not protected by the attorney-client privilege based on the crime-fraud exception. Bauer is wrong.

First, Bauer's Motion(s) against Freedman and Hill are moot. Other than the text message where the video was transmitted to Freedman on July 5, 2021, Freedman and Freedman + Taitelman, LLC do not have any written communications with

anyone concerning the video in question that pre-date the commencement of this lawsuit in April 2022. (Freedman Decl., ¶ 4).[3] No such communications have ever existed. (*Id*.). As a result, there are no additional communications to produce. Hill also confirmed at her deposition that she never spoke with any of her attorneys about producing or not producing the video at issue to Bauer in the DVRO Proceeding. (Brown Decl., Ex. G [Hill Transcript, pp. 162-163,167]). If Hill did not discuss the production or non-production of that video, it is not even possible that there could be communications about the video that could be covered by any crime-fraud exception.

Second, even if Bauer's Motions were not rendered moot, Bauer has failed to satisfy his burden that the crime-fraud exception could possibly apply. There is simply no evidence that Hill sought or obtained the services of any of her attorneys for the purpose of committing any alleged crime or fraud. There is also no evidence that any communications between Hill and her counsel furthered any alleged crime or fraud. At most, Bauer speculates that Hill's communications with her counsel, in particular Freedman, were designed to conceal the video in question from Bauer in the DVRO Proceeding. The evidence in the record, however, does not support Bauer's speculation. Accordingly, Bauer's Motion(s) should be denied.

### III.     REQUEST FOR PRODUCTION AT ISSUE

**REQUEST FOR PRODUCTION NO. 1 TO BRYAN FREEDMAN:**

All communications concerning the May 16, 2021 video previously produced by You as BF105. Brown Decl., Ex. E at 6.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Freedman objects to this request as it seeks information that would invade the attorney client-privilege and the attorney-work product doctrine in that it seeks email and text message communications between Hill's present litigation counsel in this

---

[3] Freedman has already produced the text message where Hill transmitted the video to Freedman.

matter, Freedman + Taitelman, others at Freedman + Taitelman, Wesierski & Zurek LLP and/or Hill.  No other third persons are parties to these communications.  Such communications with present litigation counsel in the context of this litigation are presumptively privileged.  Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii), the aforementioned description of the nature of the documents, communications, or tangible things not produced or disclosed enables Bauer to assess the claim of privilege.  Pursuant to Federal Rule of Civil Procedure 26(b)(5)(ii), no additional information is required to assess the claim of privilege.

Freedman further objects to this request on the grounds that it is not relevant to the claims or defenses in this matter, overbroad in terms of scope, time, and is disproportionate to the needs of this case.  Litigation counsels' communications with each other and their client are not relevant to this action.

Freedman objects to each request to the extent that it purports to require him to produce electronically stored information and/or documents in an electronic format or in a format other than the format in which the information and/or documents are kept in the ordinary course of business.  Brown Decl., Ex. F at 6.

## IV.    DEPOSITION QUESTIONS AT ISSUE

### QUESTION 1

What communications about the video did you have with your lawyers before the conclusion of the DVRO proceedings?  Brown Decl., Ex. G at 161:3-5 ("Tr.").

### RESPONSE TO QUESTION 1

Hold on. This is calling for attorney-client privilege, and I'm going to instruct you not to answer.  Tr. 161:6-9.

### QUESTION 2

What communications about the video did you have with your lawyers before the conclusion of the DVRO Proceedings about producing the video or not producing the video to Mr. Bauer's counsel?  Tr. 161:11-14.

### RESPONSE TO QUESTION 2

1  Calls for attorney-client privileged communications.  I'm instructing you not
2  to answer.  Tr. 161:15-17.

3  **QUESTION 3**

4  Did you have communications about the video with Mr. Freedman before the
5  conclusion of the DVRO proceeding?  Tr. 163:10-12.

6  **RESPONSE TO QUESTION 3**

7  I'm going to object that that calls for the attorney-client communication.  In
8  terms of the foundation questions, I think we're okay to – for you asking whether or
9  not those communications happened.  Tr. 163:14-19.

10  **QUESTION 4**

11  What communications about the video did you have with Mr. Freedman before
12  the conclusion of the DVRO proceedings?  Tr. 164:1-4.

13  **RESPONSE TO QUESTION 4**

14  I'm going to object that that's attorney-client privilege and instruct her not to
15  answer.  Tr. 164:5-7.

16  **QUESTION 5**

17  What communications about the video did you have with anyone at Mr.
18  Freedman's law firm about the video before the conclusion of the DVRO
19  proceedings?  Tr. 164:9-12

20  **RESPONSE TO QUESTION 5**

21  I'm going to object that's attorney-client privilege and instruct her not to
22  answer.  Tr. 164:13-15.

23  **QUESTION 6**

24  What communications about the video did you have with Mark Grillick [sic]
25  before the conclusion of the DVRO proceeding?  Tr. 164:17-19.

26  **RESPONSE TO QUESTION 6**

27  I'm going to object that that's attorney-client privilege.  And also lacks
28  foundation, and instruct her not to answer.  Tr. 164:20-22.

**QUESTION 7**

What communications about the video did you have with Doreen Olson before the conclusion of the DVRO proceeding?  Tr. 164:24-165:1

**RESPONSE TO QUESTION 7**

Same objections.  Tr. 165:2.

**QUESTION 8**

What communications about the video did you have with anyone at the Meyer Olson law firm before the conclusion of the DVRO proceeding?  Tr. 165:4-6.

**RESPONSE TO QUESTION 8**

Same objections, and instruct her not to answer.  Tr. 165:7-8.

**QUESTION 9**

What communications did you have with Fred, your Marsy's Law attorney, about the video before the conclusion of the DVRO proceeding?  Tr. 165:10-12.

**RESPONSE TO QUESTION 9**

Same objections, and instruct the witness not to answer.  Tr. 165:13-14.

**QUESTION 10**

And what communications about the video did you have with anyone at Fred's law firm before the conclusion of the DVRO proceeding?  Tr. 165:16-18.

**RESPONSE TO QUESTION 10**

Same objections, and instruct the witness not to answer.  Tr. 165:19-20.

**QUESTION 11**

And so you were aware that Mr. Bauer was trying to get materials that the Pasadena Police Department had as a result of investigating your allegations, correct? Tr. 254:6-9.

**RESPONSE TO QUESTION 11**

I don't know how to answer questions about this one because I was told what to say in this e-mail.

MS. PRESCOTT: Is it communications with your attorneys?

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION TO COMPEL

1    THE DEPONENT: Yes.

2    MS. PRESCOTT: Then I'm instructing you not to answer.  Tr. 254:10-17.

3    **QUESTION 12**

4    Why did you send them an e-mail asking them to destroy the records?  Tr.

5    257:4-5.

6    **RESPONSE TO QUESTION 12**

7    MR. KAPLAN: Objection.  Misstates the document.  Also to the extent it calls

8    for attorney-client privileged information or communications with her attorney, I'd

9    instruct the witness not to answer.

10   You can answer as long as you're not divulging anything you discussed or your

11   attorney told you to do.

12   THE DEPONENT: I'm just going to stick with my previous answers about it.

13   Tr. 257:6-16.

14   **QUESTION 13**

15   And during [the period from the time of the end of the DVRO proceedings

16   ended August of 2021 to the dates you sent this e-mail in April of 2022] did you

17   communicate with any of your lawyers about the May 16, 2021 video?  Tr. 259:12-

18   14.

19   **RESPONSE TO QUESTION 13**

20   We're looking at that.  That calls for attorney-client privileged

21   communications, and I'm going to instruct her not to answer.  Tr. 259:17-19.

22   **BAUER'S POSITION**

23   **A.    Factual Background**

24   The instant Motion relates to Ms. Hill's withholding and attempted spoliation

25   of a critical piece of evidence in the DVRO proceeding, in which Ms. Hill was denied

26   the restraining order she sought against Mr. Bauer.  Brown Decl., Ex. H at 585-87

27   (Aug. 19, 2021) (concluding that Mr. Bauer committed no nonconsensual acts and

28   that Ms. Hill filed a "materially misleading" declaration).  Taken within hours of the

May 16, 2021 encounter between Ms. Hill and Mr. Bauer, this Snapchat video depicts no visibly discernible injuries to Ms. Hill.  Ms. Hill records herself, turns the camera briefly to record Mr. Bauer (who is sleeping next to her with a night mask over his eyes), and then returns the camera to her own face and smirks.  Nothing in the video indicates the vicious assault that Ms. Hill alleges.  *See* Brown Decl., Ex. A.  Nor does the video contain evidence of facial injuries she now contends were caused by Mr. Bauer.  A screenshot of the video is provided below for context:



Despite the significance of the video and its responsiveness to Mr. Bauer's discovery requests, it was not produced by Ms. Hill's counsel in the DVRO proceeding.  Moreover, Ms. Hill's counsel repeatedly represented to the court and to counsel for Mr. Bauer, both in writing and orally, that Ms. Hill had produced all relevant material.  *See* Brown Decl., Ex. C at 2.  The concealment of this video is highly material evidence regarding several issues, including Ms. Hill's credibility and corruption with respect to matters central to this case.

Ms. Hill sent this video to her lawyer, Mr. Freedman, via text message on July 5, 2021, at 8:41 p.m.  *See* Brown Decl., Ex. B.  But despite being responsive and in counsel's possession, the video was not produced.  Ms. Hill's counsel intentionally,

or in reliance on misinformation about the video from Ms. Hill, concealed the existence of this video by repeatedly and falsely representing to the state court and to counsel for Mr. Bauer that Ms. Hill had produced all relevant material.  *See* Brown Decl., Ex. C (quoting discovery materials from the DVRO Proceeding).  Nothing could have been further from the truth.  The video was the most relevant and significant piece of evidence to Mr. Bauer's case, and it was impermissibly concealed.

Moreover, Ms. Hill's August 2021 testimony in the DVRO proceeding conspicuously omitted any reference to the video despite the fact that she had texted the video to counsel more than a month earlier.  *See* Brown Decl., Ex. H at 174:7 – 176:2 (description of the morning of May 16, 2021), 451:18 to 452:7 ("NOTHING WAS INTENTIONALLY LEFT OUT TO MAKE A SITUATION LOOK BETTER OR LEAN ONE WAY" (capitalization in original)).  The video was likewise omitted from counsel's opening statement summarizing the morning of May 16.  *See id.* at 55-56.

Even though it was not produced to Mr. Bauer at the time, Ms. Hill had earlier provided this video to the Pasadena Police Department as it was investigating her claims.  The Los Angeles District Attorney's Office eventually announced that it declined to prosecute Mr. Bauer because the evidence they had—which we now know included this video—was insufficient to prove the relevant charges.  Compl. ¶ 14, Dkt. 1.  Months later, on April 4, 2022, hours after the state court judge who heard the DVRO proceeding quashed Ms. Bauer's attempts to subpoena the materials in the possession of the Pasadena Police Department, Ms. Hill reached out to Detective Kimberly Jones from the Pasadena Police Department and requested that the department "return all of [her] files from the criminal investigation directly to me (documents, records, recording of the cold call, etc) and then be destroyed as PPD has no legal authority to disseminate or maintain [her] files."  Brown Decl., Ex. D.  She also noted that this request was made on "advice from [her] legal counsel."  *Id.*  In essence, Ms. Hill asked to destroy this evidence with the cooperation and advice of

her counsel.  The Pasadena Police Department evidently declined and later produced the video in response to a subpoena in this case.

Ms. Hill's pattern of concealment and spoliation was recently considered by the Court in its order on Mr. Bauer's Motion for Sanctions.  *See* Brown Decl., Ex. K. Therein, the Court acknowledged Ms. Hill's "improper communications with witnesses" and ordered that she "refrain from communicating in any manner with any witness in this case outside the presence of her attorney." *Id.* at 15.  The Court also noted that it would "permit Bauer at trial to inquire into Hill's conduct with respect to" three witnesses Ms. Hill attempted to influence as her conduct "evidence[d] potential bias and potential admission of wrongdoing." *Id.*  This pattern makes this video not just indisputably relevant for what it shows, but also renders the video and testimony related to its concealment central to Ms. Hill's credibility and her capacity for and pattern of deceit.

Throughout discovery in this case, Mr. Bauer has sought the details of the communications between Ms. Hill and her counsel, Mr. Freedman, about the concealment of this video in the DVRO Proceeding.  Counsel for Mr. Bauer distilled the issue of Mr. Freedman's production of those communications by a subpoena dated August 4, 2023.  Mr. Freedman objected on grounds that include the attorney-client privilege.  Additionally, in Ms. Hill's deposition on August 29, 2023, she declined to answer multiple questions about communications with counsel (whether oral or written) about the May 16, 2021 video on the ground of attorney-client privilege.

**B.**   **Legal Standard**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time . . . the serving party may move the court for the district where compliance is required for an order compelling production or inspection").  Under Federal Rules of Civil Procedure 26(b)(2) and/or 45(d)(2), a court may "limit the frequency or extent of discovery" if

it finds that the discovery sought is "outside the scope permitted by Rule 26(b)(1)" or otherwise improper.  However, "[t]he party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied."  *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021).

Discovery must have some relevance to a "claim or defense," Fed. R. Civ. P. 26, but "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 50, 52 (1984); *see also* Fed. R. Evid. 607 ("any party . . . may attack [a] witness's credibility"), 611 (allowing cross examination on *any matter* affecting a witness's credibility).

The dispute here is whether attorney-client communications concerning a critical video that was concealed from Mr. Bauer during the DVRO proceeding—*the existence of which was explicitly and falsely denied to a California state court*—are discoverable under the crime-fraud exception to attorney-client privilege.  "In a federal action based on diversity of citizenship jurisdiction, state law governs privilege claims."  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998).  California's crime-fraud exception provides, "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."  Cal. Evid. Code § 956.

To invoke the crime-fraud exception, the proponent of the exception "must make a prima facie showing that the services of the lawyer 'were sought or obtained' to enable or to aid anyone" in committing or planning "a crime or fraud." *BP Alaska*, 199 Cal. App. 3d at 1262; *accord State Farm Fire & Cas. Co. v. Superior Ct.*, 54 Cal. App. 4th 625, 643 (1997), as modified (May 1, 1997).  This prima facie standard requires more than a "mere assertion" of a crime or fraud, but it is satisfied by a showing that the alleged crime or fraud has "some foundation in fact." *BP Alaska*, 199 Cal. App. 3d at 1262 (explaining further that the standard merely requires a

---

1   showing of "evidence from which reasonable inferences" of a crime or fraud may be

2   drawn).   The exception "applies to attorney communications sought to enable the

3   client to plan to commit a fraud, whether the fraud is successful or not." *Id.*   The

4   discovery sought must "have a reasonable relation" to the crime or fraud. *Id.* at 1268.

5   The crime-fraud exception does not require that the entirety of an attorney's

6   representation be premised on an attempt to carry out a crime or fraud, or that the

7   attorney even be aware that their services are being misused.  *See id.* 1262-63.

8        "[W]eighing the evidence presented on the issue of a crime or fraud" and

9   requiring a demonstration that "the attorney's services were retained and utilized to

10  commit a crime or fraud" is improper if a crime or fraud could be reasonably inferred.

11  *See Jasmine Networks, Inc. v. Marvell Semiconductor, Inc.*, 12 Cal. Rptr. 3d 123, 131

12  (Ct. App.), *as modified on denial of reh'g* (Apr. 29, 2004), *review granted sub nom.*

13  *Jasmine Networks v. Marvell Semiconductor*, 94 P.3d 475 (Cal. 2004), *review*

14  *subsequently withdrawn*, *see Jasmine Networks, Inc. v. Marvell Semiconductor, Inc.*,

15  No. H036684, 2013 WL 3776188, at *6 n.8 (Cal. Ct. App. July 17, 2013).

16        **C.     The Crime-Fraud Exception Applies.**

17        It is a crime in California to willfully conceal any record, digital image, "or

18  other matter or thing [that] is about to be produced in evidence upon a trial, inquiry,

19  or investigation, authorized by law[.]"  Cal. Penal Code § 135.  And it is a fraud for a

20  party or her attorney to intentionally deceive a court.  *See State Farm Fire & Cas.*, 54

21  Cal. App. 4th at 647 (fraud on the Court triggers crime-fraud exception); *Russell v.*

22  *Dopp*, 36 Cal. App. 4th 765 n.11 (1995) (fraud committed on the client and on the

23  Court where plaintiff's lawyer failed to disclose that he was unlicensed to practice

24  law); *see also* Cal. Bus. & Prof. Code § 6068 (attorneys must not "seek to mislead the

25  judge or any judicial officer by an artifice or false statement of fact or law").

26        The record supports the reasonable inference that at a minimum, Ms. Hill and

27  Mr. Freedman willfully concealed evidence and deceived a court.  The video at issue

28  shows a self-recorded Ms. Hill interacting, apparently happily (Ms. Hill testified that

she was "smirking") and without injury (Ms. Hill says that "light scratch marks" exist), through one of her social media accounts mere hours after a supposedly physically abusive encounter with Mr. Bauer.  Brown Decl., Ex. G at 154:7-10, 154:17 – 155:5.  This was critical evidence that Ms. Hill was obligated to produce to Mr. Bauer during the DVRO proceeding.  Though Ms. Hill provided the video to her attorneys over a month prior to the trial in the DVRO proceeding, *see* Brown Decl., Ex. B, it was not produced to Mr. Bauer.  That did not stop Ms. Hill's attorneys from repeatedly asserting that all relevant evidence to the DVRO proceeding had been produced, including by falsely asserting that Mr. Bauer's counsel had "everything we have" and that "[t]here [was] simply nothing in Ms. Hill's possession and control that is relevant to the within request for Domestic Violence Restraining Order that exists and has not yet been produced."  *See* Brown Decl., Ex. C at 2, *see also id.*, Ex. H at 174:7 – 176:2 (omitting video from her description of the morning of May 16, 2021).

There are three possible inferences from these facts.  Each indicates a crime and a fraud.  *First*, despite sending the video to Attorney Freedman in July 2021, Ms. Hill may have misled Mr. Freedman about the relevance of the video, for example by asserting that it was not associated with a relevant encounter or lying about its date.  If so, Ms. Hill "commit[ed] a crime [and] a fraud" by lying to her attorneys to conceal relevant information from Mr. Bauer that was otherwise "about to be produced."  Cal. Evid. Code § 956; Cal. Penal Code § 135.  The relevance of this effort is difficult to overstate.  *See People v. Williams*, 16 Cal. 4th 153, 201, 940 P.2d 710, 743 (1997), as modified (Sept. 24, 1997) ("attempts to suppress evidence are relevant to show consciousness of guilt"); *Longuy v. La Societe Francaise De Bienfaisance Mutuelle*, 52 Cal. App. 370, 376, 198 P. 1011, 1013 (Cal. Ct. App. 1921) ("evidence of a party's falsehood or fraud in the preparation and presentation of his case is receivable against him").  This inference is supported by the reasonable assumption that Ms. Hill's attorneys faithfully adhered to their ethical obligations as officers of the court, *see* Cal. Bus. & Prof. Code § 6068, by Ms. Hill's relatively outsized incentive in

concealing the video, and by the fact that it was Ms. Hill who emailed the PPD requesting the return or destruction of the video at issue.  The reasonableness of this inference alone satisfies Mr. Bauer's burden to show "evidence from which reasonable inferences can be drawn to establish the fact asserted, i.e., the fraud." *BP Alaska*, 199 Cal. App. 3d at 1262; *see also Jasmine Networks*, 12 Cal. Rptr. 3d at 130.

*Second*, is it possible that Ms. Hill and Mr. Freedman collaborated to conceal the video.  Ms. Hill's April 4, 2022 email requesting that PPD return or destroy evidence was purportedly sent based on "advice from [her] legal counsel" and thus suggests collaboration.  Additionally, if the video went unproduced due to a solo failure by Mr. Freedman to review it and ensure production in accordance with Ms. Hill's obligations (and to correct co-counsel's misstatements to the state court), Mr. Freedman likely would not have communicated with anyone about the video between receiving it on July 5, 2021 and Ms. Hill's email to PPD of April 4, 2022.  Yet Attorney Freedman's objections indicate that he possesses responsive communications. *See supra* Section III.  Regardless, Ms. Hill would have "obtained" Mr. Freedman's services in part "to enable or aid" the crime and fraud.  Cal. Evid. Code § 956.

*Third*, as noted above, it is conceivable (though unlikely) that Attorney Freedman acted alone and failed to comply with his ethical obligations.  If so, setting aside an illicit instruction that Hill request the video be destroyed, there would likely be no other communications between Mr. Freedman and anyone else about the video during the time-period at issue.  Thus, it would be strange for Mr. Freedman to indicate by objection that responsive materials exist.  Even if Mr. Freedman acted alone as Ms. Hill's agent, his actions would constitute a fraud undertaken on Ms. Hill's behalf. *See* Cal. Penal Code § 135.

The logical inference is that Ms. Hill alone or, in conjunction with her attorneys, failed to comply with her discovery obligation and lied to the California state court and Mr. Bauer.  The crime-fraud exception is therefore satisfied.

### D.      Ms. Hill's Boilerplate Objections Are Unavailing.

Ms. Hill's other objections are without merit.  The video and the context of its production are unequivocally relevant as discussed above, and their production (and requiring Ms. Hill to answer the limited set of questions identified) will not impose an appreciable burden.  The Request for Production and deposition questions are targeted and precise, and Mr. Bauer has offered to further restrict the scope of Mr. Freedman's review by date (to communications prior to Ms. Hill's request that the PPD destroy this evidence on April 4, 2022).  This ensures that responsive documents will have a "reasonable relation" to the fraudulent concealment.  *BP Alaska*, 199 Cal. App. 3d at 1268.

The documents and testimony sought fall squarely within the crime-fraud exception and the scope of permissible discovery under Federal Rules of Civil Procedure 26 and 45.  The Court should grant Mr. Bauer's Motion.

## HILL'S POSITION

### A.      Background Facts.

#### 1.      The Snapchat Video at issue.

On the morning of May 16, 2021, Hill's cousin, Kyle Erickson, sent Hill a message through Snapchat, a video/picture messaging application.  (Hill Decl., ¶ 2; Brown Decl., Ex. G [Hill Transcript, pp. 154-155]).  Erickson, who knew that Hill had made plans to see Bauer, had messaged Hill to check in and see how her night was with Bauer.  (*Id*.).

Though Bauer had battered and sexually battered Hill a few hours earlier, Hill did not feel comfortable telling Erickson what had happened to her.  (Hill Decl., ¶ 3). At the time, Hill felt ashamed and embarrassed by the battery and sexual battery.  (*Id*). Hill was also exhausted, disoriented, in shock, and had not fully processed the extent of her injuries.  (*Id*.).

Because Hill did not feel comfortable telling Erickson what had happened and was not quite sure how to respond, Hill initially decided to send Erickson a Snapchat

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION TO COMPEL

video message pretending that everything was fine (the "Snapchat Video").[4] (Hill Decl., ¶ 4; Brown Decl., Ex. G [Hill Transcript, pp. 154-155]). Hill, however, decided not to send the Snapchat Video message to Erickson. (Hill Decl., ¶ 5). Instead, she saved the Snapchat video on the Snapchat application. (*Id*.).

### 2. **Hill sustained visible injuries as a result of being battered by Bauer.**

Shortly after leaving Bauer's home on May 16, 2021, Hill examined her face in her car and took timestamped pictures of her face that reflect some of her injuries. (Hill Decl., ¶ 6, Ex. 1).





---

[4] Because the room was dark and she used the Snapchat application to take the Snapchat Video, the quality of the video was poor. (Hill Decl., ¶ 4; Brown Decl., Ex. G [Hill Transcript, pp. 154-155]).



These images, which were taken shortly after Hill took the Snapchat Video, demonstrate that Hill in fact did sustain visible injuries as a result of being battered by Bauer. Moreover, Hill's bruising and swelling worsened over time following the May 16th battery and sexual battery. (Hill Decl., ¶ 7).

### 3. Hill voluntarily disclosed the Snapchat Video to the police.

When Hill was interviewed by the Pasadena Police Department (the "PPD") following the battery and sexual battery, Hill voluntarily disclosed the Snapchat Video to the PPD. (Hill Decl., ¶ 8; Kaplan Decl., Ex. 5 [Hill Transcript, p. 157]). She did not want to hide any evidence. (*Id*.).

### 4. The DVRO Proceeding generally.

On June 29, 2021, Hill filed a Petition against Bauer in Los Angeles Superior Court seeking a Domestic Violence Restraining Order (the "DVRO Proceeding"). Although Meyer, Olson, Lowy & Meyers, LLP ("MOLM") was Hill's lead and primary counsel in the DVRO Proceeding, Bryan Freedman of Freedman +Taitelman,

1  LLP ("F+T") would later associate in as Hill's counsel of record in the DVRO

2  proceeding. (Freedman Decl., ¶ 2). After Freedman associated in, MOLM remained

3  lead and primary counsel in the DVRO Proceeding. (*Id*.).

4             **5.**     **Hill Transmits the Snapchat Video to Freedman**.

5        On July 5, 2021, Hill transmitted the Snapchat Video to Freedman, by text

6  message. Hill, however, did not send the Snapchat Video to MOLM as she assumed

7  that it would be circulated throughout her legal team. (Hill Decl., ¶ 10; Kaplan Decl.,

8  Ex. 5 [Hill Transcript, pp. 158-159]). Further, Hill did not know whether the Snapchat

9  Video needed to be produced to Bauer in the DVRO Proceeding, and assumed that her

10  attorneys would determine what documents, if anything, needed to be produced. (Hill

11  Decl., ¶ 10).

12        Hill also confirmed at her deposition in this lawsuit that she never spoke with

13  any of her attorneys about producing or not producing the Snapchat Video to Bauer in

14  the DVRO Proceeding. (Brown Decl., Ex. G [Hill Transcript, pp. 162-163,167]).

15  Similarly, she did not know whether the Snapchat Video was produced to Bauer in the

16  DVRO Proceeding. (Kaplan Decl., Ex. 5 [Hill Transcript, p. 160]).

17        Freedman, who was not taking an active role in the DVRO proceeding, assumed

18  that MOLM had also received the Snapchat Video and that MOLM would be

19  responsible for the production of any documents to Bauer in the DVRO proceeding, to

20  the extent any production was even required. (Freedman Decl., ¶ 3). Freedman never

21  transmitted the Snapchat Video to MOLM. (*Id*.).

22             **6.**     **There was little to no formal discovery in the DVRO**

23                 **Proceeding**.

24        Based on the records from the DVRO Proceeding, it does not appear that Bauer

25  propounded any formal discovery on Hill in the DVRO Proceeding. (Kaplan Decl., 1-

26  4). Moreover, based on the records in the DVRO Proceeding, it does not appear that

27  Bauer ever requested (informally or formally) documents that would include the

28  Snapchat Video. (*Id*).

Rather, Bauer initially informally sought four discrete and limited categories of documents that did not include the Snapchat Video.  (Kaplan Decl., 1-2).  On or about August 9, 2021, Bauer moved for *ex parte* relief seeking an order compelling four discrete and limited categories of documents that he had informally requested from Hill: (1) complete medical records; (2) communications between Hill and three particular individuals; (3) two videos that Hill had previously sent to Bauer through Instagram; and (4) native and digital images of photographs that Hill had attached to her Petition in the DVRO Proceeding.  (*Id*.).  Based on the record in the DVRO Proceeding, MOLM produced the requested documents.  (Kaplan Decl., Ex. 3 [Bauer's August 13, 2021 Motion to Compel, Ex. B]).

Bauer, however, would claim that Hill's production of these four categories of documents was incomplete.  (Kaplan Decl., Ex. 3 [Bauer's Motion to Compel].  Specifically, on August 13, 2021, Bauer filed a Motion to Compel against Hill in the DVRO Proceeding claiming that Hill had produced some but not all of the four categories of documents.  (*Id*.).  Bauer also claimed that he was entitled to specific photographs that were listed on a cell phone extraction report.  (*Id*.).  Based on the records from the DVRO Proceeding, there is nothing to suggest that Bauer's motion to compel was granted or that any additional documents were ordered to be produced.

### 7. <u>Freedman has produced the only written communication concerning the Snapchat Video during the pendency of the DVRO Proceeding</u>.

Pursuant to an earlier subpoena in this litigation, Freedman previously produced to Bauer the portion of the July 5th text message whereby Hill transmitted the Snapchat Video to Freedman.  (Kaplan Decl., ¶ 3).  The July 5th text message that attached the Snapchat Video did not contain any written content.  (*Id*.).  Other than the July 5th text message which has been produced, neither Freedman nor Freedman + Taitelman have any written communications with anyone concerning the Snapchat Video that pre-dates the commencement of this lawsuit in April 2022.  (Freedman Decl., ¶ 4).  No such

communications have ever existed.  (*Id*.).

**B.  Bauer's Motions to Compel are Moot.**

The Court need not determine whether any of Hill's communications with her counsel about the video hypothetically fall within the crime-fraud exception.  That is because there are no communications, including written communications, that could conceivably fall within that exception.  Consequently, Bauer's motions to compel are moot.

First, the motion to compel against Freedman is moot as Freedman does not have any additional communications to produce in response to the Freedman Subpoena that pre-date this commencement of this lawsuit in April 2022.  Other than the July 5th text message, which has already been produced, neither Freedman nor F+T have any written communications with anyone concerning the Snapchat Video that pre-date the commencement of this lawsuit in April 2022.  (Freedman Decl., ¶ 4).  No such communications have ever existed.  (*Id*.).  As a result, there are no additional communications to produce.

Second, the motion to compel Hill to answer questions at her deposition is also moot.  As discussed, Hill confirmed at her deposition that she never spoke with any of her attorneys about producing or not producing the Snapchat Video to Bauer in the DVRO Proceeding.  (Brown Decl., Ex. G [Hill Transcript, pp. 162-163,167]).  If Hill did not discuss the production or non-production of the Snapchat Video, it is not even possible that there could be communications about the Snapchat Video that could be covered by any crime-fraud exception.

Hill's counsel informed Bauer's of this, and requested that Bauer withdraw the Motion(s). (Kaplan Decl., ¶ 7, Ex. 6).  Bauer was unwilling to withdraw his Motion(s). (*Id*).

**C.  The Crime-Fraud Exception Does Not Apply to Any Hypothetical Communications About the Video.**

Even if Bauer's Motions were not rendered moot, Bauer has failed to satisfy his

1   burden that the crime-fraud exception could possibly apply.[5]

2   California Evidence Code § 956 ("Section 956") provides a very limited

3   exception to the attorney-client privilege "if the services of the lawyer were sought or

4   obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." Cal.

5   Evid. Code § 956.  Section 956 "codifies the common law rule that the privilege

6   protecting confidential attorney-client communications is lost if the client seeks legal

7   assistance to plan or perpetrate a crime or fraud." *BP Alaska Expl., Inc. v. Superior*

8   *Court*, 199 Cal. App. 3d 1240, 1249 (1988).

9   This exception to the protections afforded by the attorney-client privilege is

10   considered a "very limited" one.  *Geilim v. Superior Court*, 234 Cal. App. 3d 166, 174

11   (1991).  Accordingly, "extreme caution must be exercised" when a party seeks to

12   invade the attorney-client relationship by invoking Section 956.  *State Farm Fire &*

13   *Cas. Co. v. Superior Court*, 54 Cal. App. 4th 625, 644-645 (1997).

14   Under Section 956, the burden is on the party seeking disclosure to make a prima

15   facie case that the crime-fraud exception applies.  *See BP*, 199 Cal. App. 3d at 1262.

16   In order to invoke this very limited exception to the attorney-client privilege, Bauer

17   was required to satisfy several factors.  First, Bauer was required to submit prima facie

18   proof that Hill sought or obtained the services of her attorneys "with the intent to enable

19   [her] to commit or to plan to commit a fraud [or a crime]." *BP*, 199 Cal. App. 3d at

20   1246.  Second, Bauer was required to prove that the communication at issue "furthered

21

22   ─────────────────────

23   [5]  Under California law, the attorney-client privilege applies to "a confidential communication between client and lawyer[.]" Cal. Evid. Code § 954. After the party asserting the attorney-client privilege has shown the facts necessary to support the privilege, or where there is no dispute concerning such facts, "the burden shifts to the party opposing the privilege to show either the claimed privilege does not apply, an exception exists, or there has been an express or implied waiver." *Venture Law Grp. v. Super. Ct.*, 118 Cal. App. 4th 96, 102 (2004); *see also* Cal. Evid. Code § 917(a) ("If a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the lawyer-client ... relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential."). Here, Bauer does not dispute that communications between Hill and her counsel during the pendency of the DVRO Proceeding are privileged.

a crime or fraud." *State Farm*, 54 Cal.App.4th at 643.  Only communications with a reasonable relation to the fraud or crime are discoverable under the crime-fraud exception.  *See BP*, 199 Cal. App. 3d at 1269.  A successful application of section 956 "clearly requires an intention on the part of the client to abuse the attorney-client relationship . . ." *People v. Clark*, 50 Cal. 3d at 623; *State Farm,* 54 Cal. App. 4th at 645 (client's intent must be the focus); *Glade v. Superior Court*, 76 Cal. App. 3d 738, 746 (1978) (same).

A prima facie case is "one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence." *Id*.  To satisfy his burden, Bauer must make a showing that the alleged fraud or crime has "some foundation in fact" which can be reasonably inferred from the evidence.  *BP*, 199 Cal.App.3d at 1262.  If fraud is alleged, "the proponent of the exception need[s] ... to prove a false representation of material fact, knowledge of its falsity, intent to deceive and the right to rely [on the representation]." *Id*.

### 1.   Hill did not seek the services of her attorneys to enable her to commit a crime or defraud anyone.

Bauer has failed to satisfy his burden of demonstrating that the crime-fraud exception applies to any of Hill's communications with her attorneys.  Putting aside that there were no communications between Hill and her attorneys regarding the non-production of the video during the DVRO proceedings (a fact that moots Bauer's motion), there is simply no evidence that Hill sought or obtained the services of any of her attorneys for the purpose of committing fraud or a crime. Absent that critical evidence, Bauer's motion should be denied.

Specifically, Bauer has failed to present any evidence that Hill sought the services of any of her attorneys, including Freedman, to conceal or destroy the Snapchat Video, and in turn, prevent the video from being produced in the DVRO proceeding.  The only evidence in the record is that: (a) Hill provided the Snapchat Video to one of her attorneys; (b) that she assumed that the video would be circulated

to her legal team; (c) that she did not know if the Snapchat Video needed to be produced; and (d) that she assumed that her attorneys would determine what documents, if anything, needed to be produced in the DVRO proceeding.  (Hill Decl., ¶ 10; Kaplan Decl., Ex. A [Hill Transcript, pp. 158-159]).

## 2. There are no communications that furthered any alleged crime or fraud.

There is also no evidence that any communications between Hill and her counsel furthered any alleged crime or fraud.  Bauer claims that Hill violated Penal Code § 135 ("Section 135").[6]  Not so.

First, the person charged with violating Section 135 must know that the evidence is "about to be produced in evidence." Penal Code § 135.  Here, absent from the record is any evidence that Hill was even required to produce the Snapchat Video in the DVRO Proceeding.  The evidence confirms that any obligation to produce documents was limited to approximately four discrete categories of documents that did not encompass the Snapchat Video. (Kaplan Decl., Ex. 1-4).  Accordingly, it is impossible that Hill had knowledge that the Snapchat Video was about to be produced.  Even assuming that Hill had some obligation to produce the Snapchat Video, there is no evidence that she was aware of that or that she knew that its production was imminent.

Second, after knowing that the evidence is about to be produced, the person charged with violating Section 135 must willfully destroy or conceal the evidence with the intent to prevent it from being produced.  Again, absent from the record is any evidence that Hill was trying to willfully destroy or conceal the Snapchat Video so that it would not be produced in the DVRO proceeding.  Bauer relies almost exclusively on

---

[6] Penal Code § 135 states as follows: "A person who, knowing that any book, paper, record, instrument in writing, digital image, video recording owned by another, or other matter or thing, is about to be produced in evidence upon a trial, inquiry, or investigation, authorized by law, willfully destroys, erases, or conceals the same, with the intent to prevent it or its content from being produced, is guilty of a misdemeanor."

1   the fact that the video was not produced by Hill's counsel in the DVRO proceeding.

2   The mere fact that the video was not produced in the DVRO proceeding does not

3   support the conclusion that Hill had the intent to willfully conceal the video.  Again,

4   the evidence reflects that Hill assumed that her attorneys would determine what, if

5   anything, needed to be produced in the DVRO proceeding.

6          Moreover, the evidence reflects that Freedman, who was not taking an active

7   role in the DVRO proceeding, assumed that MOLM had also received the Snapchat

8   Video and that MOLM would be responsible for the production of any documents and

9   other materials to Bauer in the DVRO proceeding, if required.  (Freedman Decl., ¶ 3).

10  As a result, Freedman never transmitted the Snapchat Video to MOLM.  (*Id.*).

11         Critically, Bauer has failed to present any evidence that any of the

12  communications that he seeks to compel furthered any alleged fraud or crime.  Again,

13  Hill never even discussed producing or not producing the Snapchat Video with any of

14  her attorneys.  At most, Bauer speculates that Hill "**may** have misled" one of her

15  attorneys about the relevance of the video so that he would not believe that it would

16  need to be produced. (Joint Stipulation, p. 14) (Emphasis added).  Bauer further

17  speculates that it is "**possible** that Ms. Hill and Mr. Freedman collaborated to conceal

18  the video." (Joint Stipulation, p. 15) (Emphasis added).  Despite Bauer's conjecture

19  about what "may" or "possibl[y]" occurred, Bauer has not presented any evidence, let

20  alone prima facie evidence, that it is more likely than not that such communications

21  exist.

22         Instead, Bauer relies on an April 2022 e-mail that Hill sent to the PPD that was

23  on "advice from [her] legal counsel," speculating that such advice "suggests

24  collaboration" between Hill and Freedman to conceal evidence.  In reaching that

25  conclusion, Bauer assumes that Freedman advised Hill to make the request found in

26  the April 2022 e-mail.  Not so.  Hill and Freedman never discussed such a request.

27  (Hill Decl., ¶ 11).  Hill discussed that with her other counsel, not Freedman.  (*Id.*).

28         Bauer also assumes that because Freedman asserted attorney-client privilege

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION TO COMPEL

1  objections in his response to the Freedman Subpoena, Freedman would likely have had

2  communications between the time he received the Snapchat Video on July 5, 2021 and

3  Hill's email to PPD of April 4, 2022.   Bauer ignores that Request 1 of the Freedman

4  Subpoena ("Request 1") broadly seeks "**[a]ll** communications concerning the May 16,

5  2021 video previously produced by You as BF105." (Brown Decl., Ex. E) (Emphasis

6  added).   Because Request 1 is not limited by time, it would include privileged

7  communications during the pendency of this lawsuit.   Bauer, however, does not

8  contend that he is entitled to such communications during the pendency of this lawsuit.

9  In fact, for the first time in the Joint Stipulation, Bauer offered "to limit the requested

10 information to correspondence on or before April 4, 2022.  (Joint Stipulation, p. 3).

11 Finally, although Bauer claims that Hill also defrauded Bauer in the DVRO

12 proceeding, Bauer has failed to present evidence that Hill had any intent to deceive

13 Bauer in the DVRO proceeding and that she knew of any false representation of

14 material fact related to the production of documents.

15 Bauer relies primarily on a statement made in Hill's opposition to Bauer's

16 Motion to Compel in the DVRO Proceeding whereby MOLM stated as follows: "There

17 is simply nothing in Ms. Hill's possession and control that is relevant to the within

18 request for Domestic Violence Restraining Order that exists and has not yet been

19 produced."[7]  Bauer has taken this statement completely out of context.  In fact, Bauer

20 failed to even include a copy of MOLM's opposition to Bauer's Motion to Compel in

21 the DVRO Proceeding within the record.   Notably, the statement by MOLM in Hill's

22 opposition to Bauer's Motion to Compel in the DVRO Proceeding was made in the

23

24 _____

   [7] Bauer also references an alleged "repeated" statement by Hill's counsel in the
25 DVRO proceeding that Mr. Bauer's counsel had "everything we have."   Because
   Bauer has not attached any evidence that Hill's counsel made such a statement and
26 such alleged statements cannot be found in the record of the DVRO Proceeding, Hill
   cannot determine if her counsel made the statement, the context of such statement and
27 what her counsel was referring to.

28

limited context of Bauer's attempts to seek four to five discrete categories of documents. (Kaplan Decl., Ex. 4). MOLM's statement related only to the categories of documents at issue in the Motion to Compel which were discussed in the opposition immediately prior to that statement being made. (*Id.*).

In any event, there is no evidence that Hill discussed the opposition to the Motion to Compel with MOLM, that Hill was aware of this statement, and that she intended MOLM to make that statement so that she could avoid producing the Snapchat Video. Again, as Bauer's Motion to Compel in the DVRO Proceeding did not include any categories of documents that would encompass the Snapchat Video, it does not logically follow that she would try to use the opposition to Bauer's motion to compel as a vehicle to conceal that video. Again, Hill was not even aware of whether the Snapchat Video had been produced to Bauer.

DATED:  September 11, 2023          ZUCKERMAN SPAEDER LLP


By:  /s/ Blair G. Brown
     BLAIR G. BROWN
     JON R. FETTEROLF
     NELL PEYSER
     Attorneys for Plaintiff/Counter-Defendant
     Trevor Bauer


DATED: September 11, 2023          FREEDMAN + TAITELMAN, LLP


By:  /s/ Jesse A. Kaplan
     Bryan J. Freedman, Esq.
     Jesse A. Kaplan, Esq.
     Attorneys for Defendant and
     Counterclaimant Lindsey C. Hill

DISCOVERY MATTER: JOINT STIPULATION REGARDING BAUER'S MOTION TO COMPEL

DATED:  September 11, 2023        WESIERSKI & ZUREK LLP


                                  By:  /s/ Christopher P. Wesierski
                                       CHRISTOPHER P. WESIERSKI
                                       MICHELLE R. PRESCOTT
                                       Attorney for Defendant, Lindsey C. Hill