1 | Shawn C. Holley, Esq.
2 | Kate E. Mangels, Esq.
   | Suann MacIssac, Esq.
3 | Kinsella Holley Iser Kump Steinsapir LLP
   | 11766 Wilshire Boulevard, Suite 750
4 | Los Angeles, CA 90025
   | Phone: 310-566-9800
5 | Fax: 310-566-9850
   | E-Mail: sholley@khiks.com; kmangels@khiks.com
6 | smacisaac@khiks.com

7 | Blair G. Brown, Esq.
   | Jon R. Fetterolf, Esq.
8 | Nell Peyser, Esq.
   | Zuckerman Spaeder LLP
9 | 1800 M. Street, N. W. Suite 1000
   | Washington, D.C 20036
10 | Phone: 202-778-1800
   | Fax: 202-882-8106
11 | E-Mail: bbrown@zuckerman.com; jfetterolf@zuckerman.com
   | npeyser@zuckerman.com

12 | Attorneys for Plaintiff/Counter-Defendant Trevor Bauer

13 | Christopher P. Wesierski [Bar No. 086736]
   | cwesierski@wzllp.com
14 | Michelle R. Prescott [Bar No. 262638]
   | mprescott@wzllp.com
15 | Eileen Spadoni [Bar No. 133259]
   | espadoni@wzllp.com
16 | Brett A. Smith [Bar No. 322707]
   | bsmith@wzllp.com
17 | WESIERSKI & ZUREK LLP
   | 29 Orchard Road
18 | Lake Forest, California 92630
   | Telephone: (949) 975-1000
19 | Facsimile: (949) 756-0517

20 | Bryan J. Freedman, Esq. (SBN: 151990)
   | bfreedman@ftllp.com
21 | Jesse A. Kaplan, Esq. (SBN: 255059)
   | jkaplan@ftllp.com
22 | FREEDMAN + TAITELMAN, LLP
   | 1801 Century Park West, 5th Floor
23 | Los Angeles, California 90067
   | Telephone: (310) 201-0005
24 | Facsimile: (310) 201-0045

25 | Attorneys for Defendant and Counterclaimant
   | Lindsey C. Hill
26 |
27 |
28 |

1

2      UNITED STATES DISTRICT COURT

3   CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

4

| | |
|---|---|
| TREVOR BAUER,<br><br>        Plaintiff,<br><br>vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>        Defendant. | Case No. 8:22-cv-00868 JVS (ADSx)<br><br>Assigned to: Judge James V. Selna<br>Referred to: Magistrate Judge Autumn D. Spaeth<br><br>**DECLARATION OF BLAIR G. BROWN IN SUPPORT OF BAUER'S MOTION TO COMPEL THIRD-PARTY PRODUCTION AND HILL TO ANSWER QUESTIONS**<br><br>Date:  October 11, 2023 |
| LINDSEY C. HILL,<br><br>        Counterclaimant,<br><br>vs.<br><br>TREVOR BAUER,<br><br>        Counter-defendant. | Time:  10:00 a.m.<br>Magistrate Judge: Autumn D. Spaeth<br>Courtroom:         6B<br><br>Action Filed: April 25, 2022<br>Discovery Deadline: September 1, 2023<br>Pretrial Conference:  January 22, 2024<br>Trial Date: February 13, 2024 |

I, BLAIR G. BROWN, declare and state as follows:

1.     I am an attorney licensed to practice in the District of Columbia, the State of Maryland, the State of Virginia, and State of New York and have been admitted to practice *pro hac vice* in this action. I am a partner of the law firm Zuckerman Spaeder LLP, and counsel of record for Plaintiff in the above-captioned action. I have personal knowledge of the matters stated in this declaration, and I could and would testify competently about them if called upon to do so.

2.     Attached to this declaration as **Exhibit A** is a true and correct copy of a screenshot of a video taken by Lindsey Hill on May 16, 2021.

3.     Attached to this declaration as **Exhibit B** is a true and correct copy of a text message between Lindsey Hill and Bryan Freedman, bearing bates numbers BF108 – BF109.

4.     Attached to this declaration as **Exhibit C** is a true and correct copy of a letter from Plaintiff's counsel requesting to meet and confer on Plaintiff's Subpoena Duces Tecum to Bryan Freedman.

5.     Attached to this declaration as **Exhibit D** is a true and correct copy of an email from Lindsey Hill to the Pasadena Police Department, bearing bates number PPD0000415.

6.     Attached to this declaration as **Exhibit E** is a true and correct copy of Plaintiff's Third Subpoena Duces Tecum to Bryan Freedman.

7.     Attached to this declaration as **Exhibit F** is a true and correct copy of Bryan Freedman's Objections to Plaintiff's Third Subpoena Duces Tecum.

8.     Attached to this declaration as **Exhibit G** is a true and correct copy of excerpts from the deposition of Lindsey Hill on August 29, 2023.

9.     Attached to this declaration as **Exhibit H** is a true and correct copy of excerpts from the DVRO Proceeding.

10.     Attached to this declaration as **Exhibit I** is a true and correct copy of an email sent to Lindsey Hill's counsel regarding the parties' meet and confer.

11.     Attached to this declaration as **Exhibit J** is a true and correct copy of an email sent by Lindsey Hill's counsel regarding the parties' meet and confer.

12.     Attached to this declaration as **Exhibit K** is a true and correct copy of the Court's Order Regarding Bauer's Motion for Sanctions, Dkt No. 168.

13.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of September, 2023, in Washington, D.C.


                                        */s/ Blair G. Brown*
                                        Blair G. Brown

EXHIBIT A



# EXHIBIT B

Exhibit BAUER 0017

9:49

< 90

LH

Lindsey >



Jul 5, 2021 at 8:41 PM



iMessage

CONFIDENTIAL

BF 0108



Jul 5, 2021 at 11:39 PM



CONFIDENTIAL

BF 0109

# EXHIBIT C



ZUCKERMAN
SPAEDER

Blair G. Brown
PARTNER
Zuckerman Spaeder LLP
bbrown@zuckerman.com
(202) 778-1829

May 2, 2023

**VIA E-MAIL**

Bryan J Freedman (bfreedman@ftlllp.com)
Jesse A Kaplan (jkaplan@ftlllp.com)
Freedman + Taitelman LLP
1801 Century Park West 5th Floor
Los Angeles, CA 90067

      Re:   *Bauer v. Hill*, Case No. 8:22-cv-00868-JVS-ADS (C.D. Cal.)

           **Plaintiff's Subpoena Duces Tecum to Bryan Freedman**

Dear Counsel:

     I write regarding Non-Party Witness Bryan Freedman's April 12, 2023 Objections to Plaintiff Trevor Bauer's Subpoena Duces Tecum. We request a meet and confer no later than May 8, 2023, to discuss and seek to resolve those objections and the issues raised in this letter.

     Request No. 1 seeks communications between Mr. Freedman and Ms. Hill regarding the May 16, 2021 video filmed by Ms. Hill at Mr. Bauer's residence. You have objected on the grounds of relevance, proportionality, overbreadth, attorney-client privilege, and attorney work product. None of those objections are appropriate.

     The video that is the subject of this Request is an extremely significant item of evidence. Taken within hours of the May 16, 2021 encounter, it depicts no injuries to Ms. Hill other than a small spot on her lip. Ms. Hill smirks in the video and demonstrates no behavior suggesting that she suffered the assault she alleges.

     Communications regarding that video are not protected by attorney-client privilege or the attorney work product doctrine. First, any of those communications that did not include substantive information, such as an email simply sending the video as attachment, are not protected by attorney-client privilege or the work product. The names, dates, and subjects of communication are routinely included on privilege logs.

     Second, all communications and work product regarding the May 16, 2021 video are

BRYAN J FREEDMAN
JESSE A KAPLAN
MAY 2, 2023
PAGE 2

discoverable under the crime fraud exception. Despite the significance of the video and its responsiveness to Mr. Bauer's discovery requests, it was not produced by Ms. Hill's counsel in the DVRO proceedings.  Moreover, Ms. Hill's counsel repeatedly represented to the court and to counsel for Mr. Bauer, both in writing and orally, that Ms. Hill had produced all relevant material. *See, e.g.,* Petitioner's Opposition to Respondent's Motion to Compel and Motion for Sanctions for Spoliation of Evidence (Aug. 16, 2021) at 2 ("There is simply nothing in Ms. Hill's possession and control that is relevant to the within request for Domestic Violence Restraining Order that exists and has not yet been produced."); Transcript of Hearing on Motion to Compel and Motion for Sanctions for Spoliation of Evidence (Aug. 16, 2021) at 22 ("So for counsel to come and say that we've either deleted, failed to produce, modified, it's not accurate. . .. [T]hey have everything we have.")  Nothing could have been farther from the truth.  One of the most significant items of evidence relevant to the DVRO proceeding had been buried. The crime fraud exception, Cal. Evid. Code § 956, allows discovery of privileged communications related to the concealment of evidence from a court, which is a crime, Cal. Pen. Code § 135, as well as a fraud on a court. *See State Farm Fire Casualty Co. v. Superior Court*, 54 Cal. App. 4th 625 (1997).

We also request that a privilege log be produced with respect to these communications.

As for relevance, the concealment of that video is highly material evidence regarding several issues, including Ms. Hill's credibility and corruption with respect to matters central to this case.  The narrow request is neither overbroad nor disproportionate.

Request No. 2 seeks photographs and videos of Ms. Hill and/or Mr. Bauer that Mr. Freedman or others at his law firm received prior to the conclusion of the DVRO proceeding.  You have objected on the grounds of relevance, proportionality, overbreadth, attorney-client privilege, attorney work product, lack of specificity, and duplication of production. None of those objections are appropriate.

The attorney-client privilege and work product objections to this request are based principally on a mischaracterization of the request.  The request does not seek communications. It seeks videos and photographs.  Mr. Freedman and others at his law firm received, for example, the undisclosed May 16, 2021 video of Ms. Hill and Mr. Bauer and photos of Ms. Hill's alleged injuries.  Neither the attorney-client privilege nor attorney work product protection applies to these materials, which are neither communications between attorney and client or attorney work product. Moreover, even if a privilege or protection applied to those materials, which they do not, (1) the privilege has been waived to the extent that the materials have been provided to others, and (2) with respect to the May 16, 2021 video, and any other responsive and relevant materials that were not disclosed at the DVRO proceeding, the crime fraud exception applies for the reasons previously stated.

With respect to specificity, the request seeks photographs and videos that depict (a) Ms.

Hill, (b) Mr. Bauer, or (c) Ms. Hill with Mr. Bauer, received by Mr. Freedman or his firm on or before August 19, 2021, the date the DVRO proceeding concluded.  Photos and videos of Ms. Hill are clearly relevant because they depict Ms. Hill's physical appearance before or after the alleged sexual assaults and therefore show the presence or absence of injuries and/or emotional distress. Photos or videos of Mr. Bauer also are relevant if taken or provided by Ms. Hill.  Any photos or videos encompassed by this request that were concealed in connection with the DVRO discovery also are relevant for the reasons previously stated with respect to Request No. 1.  Also, considering the concealment of the May 16, 2021 video, it is a proper request to direct to Mr. Freedman to determine when other photos or videos were provided to him or his firm.

Request No. 3 seeks communications between Ms. Hill and Mr. Bauer that Mr. Freedman or his law firm received prior to the conclusion of the DVRO proceeding. You assert a variety of objections and state that you have no responsive documents in your possession, custody, or control. We do not agree that the objections are appropriate. We request that Mr. Freedman inform us whether he ever had possession, custody, or control of communications responsive to this request, and, if so, when he relinquished such possession, custody, or control.

Request No. 4 seeks communications between Ms. Hill "and any person (other than counsel or their agents) regarding Mr. Bauer that you or your firm received prior to the conclusion of the DVRO proceeding."  You object on grounds of attorney-client privilege, relevance, overbreadth, and proportionality.

The attorney-client privilege and work product objections to this request are based principally on a mischaracterization of the request. The request expressly omits communications between Ms. Hill and her counsel or counsel's agents. Communications by Ms. Hill with others concerning Mr. Bauer are clearly relevant and the request for them is not overbroad or disproportionate.  The need for Mr. Freedman's production of them is especially important because Ms. Hill claims to have deleted certain communications with others, recipients of communications from Ms. Hill claim to have deleted communications with her, and at least one video was concealed, as discussed above.

Request No.'s 5 and 6 seek communications with public relations firms and the media, including TMZ, concerning Mr. Bauer, the DVRO Proceeding, Ms. Hill's claims, and the transmittal of photos to TMZ. You assert a variety of objections and assert that you have no responsive documents in your possession, custody, or control. We do not agree that the objections are appropriate.

We also note that the following appeared on TMZ's website on August 5, 2021:

The attorney for Bauer's alleged victim, Bryan Freedman, asked TMZ Sports to publish an unredacted photograph showing his client's alleged injuries... saying the damage could NOT possibly be part of a consensual encounter.

"Look at this picture. No one -- absolutely no one -- can consent to this, logically or legally. Trevor Bauer's team continues to try to abuse an assault victim. They need to stop. Now."

The alleged victim and her family requested this photo be released, per Freedman.

We request that Mr. Freedman inform us whether he ever had possession, custody, or control of communications responsive to Request No.'s 5 and 6, and, if so, when he relinquished such possession, custody, or control.

Sincerely,

*/s/ Blair G. Brown*

Blair G. Brown

cc:
Christopher P Wesierski (cwesierski@wzllp.com)
Brett Andrew Smith (bsmith@wzllp.com)
Michelle R. Prescott (mprescott@wzllp.com)
Eileen Spadoni (espadoni@wzllp.com)

# EXHIBIT D

| | |
|---|---|
| **From:** | Lindsey Hill <lindseychristina.hill@gmail.com> |
| **Sent:** | Monday, April 4, 2022 11:14 AM |
| **To:** | Jones, Kimberly |
| **Subject:** | Returned Files |

**CAUTION:** This email was delivered from the Internet. Do not click links or open attachments unless you **know** the content is safe. Report phish using the Phish Alert Button. Learn more....

Hello Detective Jones,

As you may know the Judge squashed Trevor Bauer's subpoena to the PPD today. With advice from my legal counsel, I am putting this request in writing to express that I am requesting that the Pasadena Police Department return all of my files from the criminal investigation directly to me (documents, records, recording of the cold call, etc) and then be destroyed as PPD has no legal authority to disseminate or maintain my files.

I will be calling the department as well today to confirm this will be done, and printing this written request out for my records.

Lastly, I have been in contact with my victims advocate that was assigned to me through the DA's office, and she passed along the information to me that I had the ability to contact your direct supervisor- I was wondering if you could please pass along that contact information to me.

Thank you,

Lindsey Hill

**Exhibit
BAUER 0027**

CONFIDENTIAL

# EXHIBIT E

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
Shawn Holley (Cal. Bar No. 136811)
Suann MacIsaac (Cal. Bar No. 205659)
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
Tel: (310) 566-9800
Fax: (310) 566-9873
sholley@khiks.com
smacisaac@khiks.com

ZUCKERMAN SPAEDER LLP
Blair G. Brown (admitted *pro hac vice*)
Jon R. Fetterolf (admitted *pro hac vice*)
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 882-8106
bbrown@zuckerman.com
jfetterolf@zuckerman.com

ZUCKERMAN SPAEDER LLP
Nell Z. Peyser (admitted *pro hac vice*)
485 Madison Ave., 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
npeyser@zuckerman.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

|  |  |
|---|---|
| TREVOR BAUER,<br><br>            Plaintiff,<br><br>      v.<br><br>LINDSEY C. HILL and NIRANJAN FRED THIAGARAJAH,<br><br>            Defendants. | Case No. 8:22-cv-00868-JVS-ADS<br>Assigned for all purposes to the Hon. James V. Selna<br><br>**NOTICE OF SUBPOENA TO BRYAN FREEDMAN COMMANDING PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45**<br><br>Action Filed: April 25, 2022 |

1

## <u>NOTICE OF ISSUANCE OF SUBPOENA *DUCES TECUM* TO</u>

2

## <u>BRYAN FREEDMAN</u>

3

4        PLEASE TAKE NOTICE that, pursuant to the Federal Rule of Civil Procedure

5   45, Plaintiff Trevor Bauer, by and through his undersigned attorneys, intends to serve

6   a Subpoena, in the form attached hereto, on BRYAN FREEDMAN on August 4, 2023

7   or as soon thereafter as service may be effectuated.

8

9

10   Dated:        August 4, 2023              */s/ Blair G. Brown*

11                                            Blair G. Brown (admitted *pro hac vice*)
                                              Jon R. Fetterolf (admitted *pro hac vice*)
12                                            ZUCKERMAN SPAEDER LLP
                                              1800 M Street, N.W., Suite 1000
13                                            Washington, D.C. 20036
                                              Tel: (202) 778-1800
14                                            Fax: (202) 882-8106
                                              bbrown@zuckerman.com
15                                            jfetterolf@zuckerman.com

16                                            Nell Peyser (admitted *pro hac vice*)
                                              ZUCKERMAN SPAEDER LLP
17                                            485 Madison Avenue, 10th Floor
                                              New York, NY 10022
18                                            Tel: (212) 704-9600
                                              Fax: (212) 704-4256
19                                            npeyser@zuckerman.com

20                                            Shawn Holley (Cal. Bar No. 136811)
                                              Suann MacIsaac (Cal Bar No. 205659)
21                                            KINSELLA HOLLEY ISER KUMP
                                              STEINSAPIR LLP
22                                            11766 Wilshire Boulevard, Suite 750
                                              Los Angeles, CA 90025
23                                            Tel: (310) 566-9800
                                              Fax: (310) 566-9873
24                                            sholley@khiks.com
                                              smacisaac@khiks.com
25

26

27                                            *Counsel for Plaintiff Trevor Bauer*

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 4th day of August, 2023, I served a true and correct copy of the foregoing upon the following counsel via electronic mail:


WESIERSKI & ZUREK LLP
Christopher P. Wesierski (Bar No. 086736)
Michelle R. Prescott (Bar No. 262638)
Eileen Spadoni (Bar No. 133259)
Brett A. Smith (Bar No. 322707)
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517
cwesierski@wzllp.com
mprescott@wzllp.com
espadoni@wzllp.com
bsmith@wzllp.com

FREEDMAN + TAITELMAN, LLP
Bryan J. Freedman, Esq. (Bar No. 151990)
Jesse A. Kaplan, Esq. (Bar No. 255059)
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045
bfreedman@ftllp.com
jkaplan@ftllp.com

*Attorneys for Defendant Lindsey C. Hill*



/s/ *Blair G. Brown*
Blair G. Brown

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| TREVOR BAUER | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.  8:22-cv-00868-JVS-ADS |
| LINDSEY C. HILL and NIRANJAN FRED THIAGARAJAH | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Bryan J. Freedman
Freedman + Taitelman, LLP, 1801 Century Park West, 5th Fl., Los Angeles, CA 90067

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHMENT A

| Place: Kinsella Holley Iser Kump Steinsapir LLP<br>11766 Wilshire Blvd., Suite 750<br>Los Angeles, CA 90025 | Date and Time:<br><br>08/18/2023 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      08/04/2023

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Blair G. Brown |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Trevor Bauer
, who issues or requests this subpoena, are:

Blair G. Brown, Zuckerman Spaeder LLP, 1800 M Street, N.W., Suite 1000, Washington, DC 20036, bbrown@zuckerman.com, (202) 778-1800;
Shawn Holley, Kinsella Holley Iser Kump Steinsapir LLP, 11766 Wilshire Blvd., Suite 750, Los Angeles, CA 90025, sholley@khiks.com, (310) 566-9800

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   8:22-cv-00868-JVS-ADS

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A TO**

**SUBPOENA *DUCES TECUM* TO BRYAN FREEDMAN**

Pursuant to Federal Rule of Procedure 45, Plaintiff Trevor Bauer, by and through his undersigned counsel, serves this subpoena on **BRYAN FREEDMAN**. No later than August 18, 2023, you are directed to produce the documents, tangible items and electronically stored information to the following counsel for Mr. Bauer:

Shawn Holley
Kinsella Holley Iser Kump Steinsapir LLP
11766 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025
Tel: (310) 566-9800
Fax: (310) 566-9850
sholley@khiks.com

To the extent you produce documents electronically, we request that additional copies of each document be emailed to:

Blair G. Brown (bbrown@zuckerman.com)
Jon R. Fetterolf (jfetterolf@zuckerman.com)
Nell Z. Peyser (npeyser@zuckerman.com)

**IF YOU HAVE ANY QUESTIONS REGARDING THIS SUBPOENA OR YOUR OBLIGATIONS, PLEASE CONTACT BLAIR G. BROWN at bbrown@zuckerman.com or (202) 778-1829.**

**DEFINITIONS**

1.      The terms "you" and "your" shall refer to Bryan Freedman, and all of his and FREEDMAN + TAITELMAN, LLP's employees, partners, associates, attorneys, employees, and agents.

2.      The term "Ms. Hill" shall refer to Lindsey C. Hill.

3.      The term "Mr. Bauer" shall refer to Trevor Bauer.

4.      The terms "Document" and "Documents" include but are not limited to: correspondence, letters, memoranda, notes, reports, papers, files, books, records,

contracts, agreements, telegrams, electronic mail, other communications sent or received; printouts, diary entries and calendars; drafts, tables, compilation tabulations, charts, graphs, recommendations, accounts, worksheets, logs, and work papers; minutes, notes, summaries, and other written records or recordings of or relating to any conference, meeting, visit, interview, or telephone conversation; bills, statements, invoices, and other records of any obligation or expenditure; canceled checks, vouchers, receipts, and other records of payment; financial and statistical data, analyses, surveys and schedules; audio recordings and video recordings and cassettes and transcripts thereof; affidavits, transcripts of testimony, statements, interviews, and conversations; printed matter (including published articles, speeches, newspaper clippings, press releases, and photographs); microfilm and microfiche; disks, computer files, electronically stored information, film, tapes, and other sources from which information can be obtained, including materials used in electronic data processing. Every draft or non-identical copy of a document is a separate document as defined herein. A non-identical copy is a document originally identical in all relevant respects to another document, but no longer identical by virtue of any notation, modification, or attachment of any kind. A document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person or public or private entity having actual physical possession thereof.

5.     The phrase "possession, custody, or control" applies to:

     a.  a document in your physical custody;

     b.  a document that you own in whole or in part;

     c.  a document that you have a right by contract, statute, or otherwise to use, inspect, examine, or copy on any terms;

     d.  a document for which you have an understanding (express or implied) that you may use, inspect, examine, or copy on any terms; or

     e.  a document that you have, as a practical matter, the ability to use,

inspect, examine, or copy.

6.     The term "Communication" means the receipt or transmittal of information in the form of facts, ideas, inquiries or otherwise, in writing, orally, electronically (e.g., including but not limited to, electronic mail, text message, communications and postings via any social media platform or website, or any other data transmission) or otherwise.

7.     The terms "any" and "all" shall each be considered to mean "any and all" as necessary to make these requests inclusive, rather than exclusive.

8.     The term "including" shall mean "including but not limited to," or "including without limitation."

9.     The term "concerning" shall mean referring to, relating to, discussing, describing, mentioning, noting, studying, reflecting, evaluating, analyzing, summarizing, evidencing, memorializing or being relevant to in any way.

10.    The use of the singular form of any word includes the plural and vice versa.

11.    The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, as necessary to bring within the scope of these Document Requests all responses that might otherwise be construed to be outside of its scope.

12.    "And" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the request documents which might otherwise be construed to be outside its scope.

13.    The term "person" refers to a natural person, firm, association, joint venture, partnership, corporation, limited liability company, and all other forms of legal relationships, unless the context indicates otherwise, and shall be deemed to mean the plural as well as the singular.

## **INSTRUCTIONS**

1.     In responding to these requests, you must produce all documents

responsive to the request that are within your possession, custody and control, regardless of the physical location of the documents. This includes, but is not limited to, documents in possession of your employees and agents, as well as responsive, non-privileged documents in the possession of your attorneys.

2.     The fact that a particular request for production provides certain examples of responsive documents that you must produce does not change the fact that other kinds of responsive documents exist, which you must also produce in response to that request.

3.     All documents shall be produced in the same order and format as they are kept or maintained in the ordinary course of business.

4.     You must produce documents not otherwise responsive to a request if they are attached to, enclosed with, or electronically forwarded with any document that is responsive.

5.     Each request shall be deemed continuing so as to require supplemental responses if you obtain or discover additional documents after the date of your initial production.

6.     Should you seek to assert any privilege or protection in objecting to the production of any record covered by this request, please (a) identify the nature of the privilege or protection that you are claiming, and (b) identify (i) the record type, e.g., letter or memorandum; (ii) the general subject matter of the record; (iii) the date of the record; and (iv) such information as is sufficient to describe the record, including its author and recipients.

7.     Produce all documents known or available to you, whether such documents are in your possession, or in the possession of, or otherwise obtainable, by you, from any person under your control.

8.     If any of the documents requested were destroyed or are otherwise unavailable, please identify each such document in accordance with the foregoing definitions.

PLAINTIFF TREVOR BAUER'S SUBPOENA TO BRYAN FREEDMAN

9.      Produce electronically stored information with the original metadata.

10.     The production of any physical documents is to be made at the offices of Kinsella Holley Iser Kump Steinsapir LLP (attn: Shawn Holley), 11766 Wilshire Boulevard, Suite 750, Los Angeles, CA 90025, or at such other location mutually agreed by the parties, on or before **August 18, 2023** or at such time as ordered by the Court or mutually agreed upon.

11.     The production of any electronic documents is to be made to the following individuals: Shawn Holley (sholley@khiks.com), Blair Brown (bbrown@zuckerman.com), Jon Fetterolf (jfetterolf@zuckerman.com), and Nell Peyser (npeyser@zuckerman.com), on or before **August 18, 2023**, or at such time as ordered by the Court or mutually agreed upon.

12.     **Any questions about your obligations pursuant to this subpoena should be directed to Blair G. Brown, who can be reached at bbrown@zuckerman.com or (202) 778-1829.**

1

## **<u>DOCUMENTS REQUESTED</u>**

2       1.      All communications concerning the May 16, 2021 video previously

3   produced by You as BF105.

4

5   Dated:        August 4, 2023                    */s/ Blair G. Brown*

6                                                    Blair G. Brown (admitted *pro hac vice*)
                                                     Jon R. Fetterolf (admitted *pro hac vice*)
7                                                    ZUCKERMAN SPAEDER LLP
                                                     1800 M Street, N.W., Suite 1000
8                                                    Washington, D.C. 20036
                                                     Tel: (202) 778-1800
9                                                    Fax: (202) 882-8106
                                                     bbrown@zuckerman.com
10                                                   jfetterolf@zuckerman.com

11                                                   Nell Peyser (admitted *pro hac vice*)
                                                     ZUCKERMAN SPAEDER LLP
12                                                   485 Madison Avenue, 10th Floor
                                                     New York, NY 10022
13                                                   Tel: (212) 704-9600
                                                     Fax: (212) 704-4256
14                                                   npeyser@zuckerman.com

15                                                   Shawn Holley (Cal. Bar No. 136811)
                                                     Suann MacIsaac (Cal Bar No. 205659)
16                                                   KINSELLA HOLLEY ISER KUMP
                                                     STEINSAPIR LLP
17                                                   11766 Wilshire Boulevard, Suite 750
                                                     Los Angeles, CA 90025
18                                                   Tel: (310) 566-9800
                                                     Fax: (310) 566-9873
19                                                   sholley@khiks.com
                                                     smacisaac@khiks.com

20

21

22

23

24

25

26

27

28

EXHIBIT F

Bryan J. Freedman, Esq. (SBN: 151990)
   *bfreedman@ftllp.com*
Jesse A. Kaplan, Esq. (SBN: 255059)
   *jkaplan@ftllp.com*
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile:  (310) 201-0045

Attorneys for Non-Party Witness Bryan J. Freedman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>      Plaintiff,<br><br>      vs.<br><br>LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,<br><br>      Defendant.<br><hr>LINDSEY C. HILL,<br><br>      Counterclaimant,<br><br>      vs.<br><br>TREVOR BAUER,<br><br>      Counterdefendant. | Case No. 8:22-cv-00868 JVS (ADSx)<br><br>[Assigned to Judge: Hon. James V. Selna]<br><br>**NON-PARTY WITNESS BRYAN J. FREEDMAN'S OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** |

1    Non-Party Witness Bryan Freedman ("Freedman") hereby objects to the

2   Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of

3   Premises in a Civil Action (the "Subpoena") served by Plaintiff Trevor Bauer

4   ("Plaintiff"), as follows:

5                          **GENERAL OBJECTIONS**

6    The following general objections apply to each of the document requests by

7   Plaintiff and, unless otherwise stated, shall have the same force and effect as if set

8   forth in full in response to each of the separate numbered Requests.

9    1.    Freedman objects to the requests, including all of the definitions and

10   instructions to the extent that they fail to comply with, or call for the subpoenaed party

11   to do more than is required under, the Federal Rules of Civil Procedure, the Local

12   Rules, and/or any other applicable rule or court order.

13   2.    Freedman objects to each request to the extent that it purports to require

14   the subpoenaed party to respond and/or produce documents beyond his present and/or

15   actual knowledge, information, and reasonable possession or control. Any failure to

16   object shall not constitute waiver of any objection that Freedman may make as part

17   of any future supplemental response.

18   3.    Freedman objects to each request to the extent that it is overly broad,

19   unduly burdensome, and disproportionate to the needs of the case. The requests are

20   further objected to on the grounds that they are vague and ambiguous, overbroad as

21   to time and scope, and do not specifically describe or reasonably particularize the

22   documents requested.

23   4.    Freedman objects to each request to the extent it seeks information or

24   documents that are neither relevant to any claims or defenses in this case, nor are

25   reasonably calculated to lead to discovery of admissible evidence.

26   5.    Freedman objects to each request to the extent that it is vague and

27   ambiguous.

28   6.    Freedman objects to each request to the extent that it is unreasonably

cumulative or duplicative.

7.      Freedman objects to each request to the extent that it seeks information covered by the attorney-client privilege, the work product doctrine, joint defense, and/or any other privilege or immunity from production.

8.      Inadvertent production of any material subject to the attorney-client privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to discovery of such materials, its subject matter or information contained therein or of Freedman's right to object to the use of such material during any later proceeding. Any such inadvertently produced information or documents shall be immediately returned to Freedman.

9.      Freedman objects to each request to the extent that it seeks documents that Freedman has a statutory, contractual, or other duty to maintain as confidential, including, but not limited to, documents related to Defendant Hill's physical condition, employment, and/or her medical treatment records.

10.      Freedman objects to each request to the extent that it seeks information that already is in Plaintiff's possession, custody, or control, was previously provided to or from Plaintiff's counsel, is publicly available, is in the possession of third parties, or is equally available to, or equally within the knowledge and possession of Plaintiff.

11.      Freedman objects to each request to the extent that it seeks information of a confidential, proprietary or sensitive personal nature that infringes on Defendant Hill's privacy rights or the privacy rights of third parties protected under the California Constitution. *John B. v. Superior Ct.,* (Cal. 2006) 38 Cal. 4th 1177, 1200. ("Where a [party] seeks discovery from a [party] concerning sexual matters protected by the constitutional right of privacy, the intrusion upon sexual privacy may only be done on the basis of practical necessity"); *Williams v. Superior Ct.,* (Cal. 2017) 3 Cal. 5th 531, 556. ("A 'compelling interest' is still required to justify an obvious invasion of an interest fundamental to personal autonomy."). The requests are further objected

---

NON-PARTY WITNESS BRYAN J. FREEDMAN'S OBJECTIONS TO SUBPOENA

to on the grounds they seek to invade the privacy rights of Defendant Hill and/or third parties, and upon that basis are unduly harassing.

12.     Freedman objects to each request to the extent that it seeks financial, medical, and/or employment information that goes beyond the scope of information relevant to Defendant Hill's claim for damages.

13.     Freedman objects to each request that contains no limitation on time period as overly broad and irrelevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence.

14.     Freedman objects to this request on the ground that to the extent it seeks documents consisting of requests for electronically stored information, such documents may not be reasonably accessible and creates an undue burden and expense on Freedman.

15.     Freedman objects to each request to the extent it assumes any fact, event, or legal conclusion is true or that any characterization implied therein is accurate.

16.     The failure of Freedman to make a specific objection to a particular individual request is not, and shall not be, regarded as an admission that responsive information or documents are responsive and/or admissible.

17.     Any information or documents produced in response to the requests shall be subject to the Protective Order in this case. Any information or documents stamped "CONFIDENTIAL" shall be treated as such.

18.     The requests are objected to on the grounds a third-party Subpoena is an improper method to obtain the requested documents and will likely be, or have previously been, produced during the discovery process with Defendant Hill.

## OBJECTIONS TO DOCUMENTS REQUESTED

## REQUEST FOR PRODUCTION NO. 1:

All Communications concerning the May 16, 2021 video previously produced by You as BF105.

/ / /

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Freedman objects to this request as it seeks information that would invade the attorney client-privilege and the attorney-work product doctrine in that it seeks e-mail and text message communications between Hill's present litigation counsel in this matter, Freedman + Taitelman, others at Freedman + Taitelman, Wesierski & Zurek LLP and/or Hill. No other third persons are parties to these communications. Such communications with present litigation counsel in the context of this litigation are presumptively privileged. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii), the aforementioned description of the nature of the documents, communications, or tangible things not produced or disclosed enables Bauer to assess the claim of privilege. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(ii), no additional information is required to assess the claim of privilege.

Freedman further objects to this request on the grounds that it is not relevant to the claims or defenses in this matter, overbroad in terms of scope, time, and is disproportionate to the needs of this case. Litigation counsels' communications with each other and their client are not relevant to this action.

Freedman objects to each request to the extent that it purports to require him to produce electronically stored information and/or documents in an electronic format or in a format other than the format in which the information and/or documents are kept in the ordinary course of business.

DATED: August 16, 2023          FREEDMAN + TAITELMAN, LLP


By: _____
        Bryan J. Freedman, Esq.
        Jesse A. Kaplan, Esq.
        Attorneys for Non-Party Witness
        Bryan J. Freedman

---

**PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA** | ss.

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 500, Los Angeles, CA 90067.

On **August 16, 2023,** I served the following document(s): **NON-PARTY WITNESS BRYAN J. FREEDMAN'S OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** on the interested parties in this action as follows:

[**X**]  by transmitting via electronic mail the document(s) listed above to the addresses set forth below on this date from slaurant@ftllp.com.  To the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

| | |
|---|---|
| Shawn Holley, Esq. | Blair G. Brown, Esq. |
| Suann MacIssac, Esq. | Jon R. Fetterolf, Esq. |
| Kate E. Mangels, Esq. | Nell Peyser, Esq. |
| Kinsella Holley Iser Kump Steinsapir LLP | ZUCKERMAN SPAEDER LLP |
| 11766 Wilshire Blvd., STE 750 | 1800 M. Street, N.W., Suite 1000 |
| Los Angeles, CA 90025 | Washington, D.C. 20036 |
| Tel: (310) 566-9800 | Tel: (202) 778-1800 |
| Email: smacisaac@khiks.com | Email:bbrown@zuckerman.com |
| sholley@khiks.com; | jfetterolf@zuckertnan.com; |
| kmangels@khiks.com | npeyser@zuckerman.com |
| Attorneys for Plaintiff/Counter-Defendant Trevor Bauer | Attorneys for Plaintiff/Counter-Defendant |
| | |
| Christopher P. Wesierski, Esq. | Email:cwesierski@wzllp.com |
| Michelle R. Prescott, Esq. | mprescott@wzllp.com; |
| Eileen Spadoni, Esq. | espadoni@wzllp.com |
| Brett A. Smith, Esq. | Attorneys for Defendant and |
| WESIERSKI & ZUREK LLP | CounterclaimantLindsey Hill |
| 29 Orchard Road | |
| Lake Forest, CA 92630 | |
| Tel: (949) 975-1000 | |

1  [X]    FEDERAL   I am employed in the office of an attorney who is a member of

2  this court at whose direction I served the above-described document.

3

       Executed on **August 16, 2023**, at Los Angeles, California.

4

5

6

7  _____

   Shauntece Laurant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 1

1               UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                    SOUTHERN DIVISION

4

5     _____

                                     )
6     TREVOR BAUER,                  )
                                     )
7             Plaintiff,             )
                                     )
8         vs.                        )No. 8:22-cv-00868-JVS-ADS
                                     )
9     LINDSEY C. HILL and NIRANJAN   )
      FRED THIAGARAJAH,              )
10                                   )
                                     )
              Defendants.            )
11    _____)

12

13       CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

14         VIDEOTAPED DEPOSITION OF LINDSEY C. HILL

15              Los Angeles, California

16              Tuesday, August 29, 2023

17                    Volume I

18

19

20

21

22    Stenographically Reported By:

      Melissa M. Villagran, RPR

23    CSR No. 12543

24

25

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 2

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                  SOUTHERN DIVISION

 4

 5    _____
                                    )
 6    TREVOR BAUER,                 )
                                    )
 7             Plaintiff,           )
                                    )
 8        vs.                       )No. 8:22-cv-00868-JVS-ADS
                                    )
 9    LINDSEY C. HILL and NIRANJAN )
      FRED THIAGARAJAH,             )
10                                  )
               Defendants.          )
11    _____)

12

13

14

15

16       CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

17

18        Videotaped deposition of LINDSEY C. HILL,

19    Volume I, taken on behalf of Plaintiff at 11766

20    Wilshire Boulevard, Los Angeles, California,

21    beginning at 9:39 a.m. and ending at 7:30 p.m. on

22    Tuesday, August 29, 2023, before Melissa M.

23    Villagran, RPR, Certified Shorthand Reporter

24    No. 12543.

25
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 154

1          MR. KAPLAN:  Okay.  We are done.

2     BY MR. BROWN:

3        Q   Is that the video that you took of you and

4     Mr. Bauer on the morning of May 16th when you were

5     both in bed?                                        02:24:27

6        A   Yes.

7        Q   And you would agree with me, would you not,

8     that you were smiling at one point in the video?

9        A   Smirking is probably a better word.  I'm not

10    sure if it was a smile.                             02:24:39

11       Q   And why were you smirking?

12       A   So that was because my cousin Kyle had sent

13    me a Snapchat asking how it went, and I was just in

14    that moment trying to pretend like everything was

15    fine, to send a reply back like nothing bad had even 02:24:53

16    happened.

17       Q   You would agree with me that there's no

18    visible bruising on your face in that video,

19    correct?

20       A   I don't agree with you on that.             02:25:10

21       Q   Okay.

22           Where is the bruising that is depicted in

23    that video on your face, where on your face?

24       A   If you zoom in you can see light scratch

25    marks.  I think that this was taken in a room with  02:25:21

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 155

1    no lights on, and also the difference between a

2    regular camera video and on a Snapchat, it would be

3    impossible to tell that there was bruising there.

4    But what is -- where it does show up is in the

5    photos I take 20 minutes later in my car.          02:25:36

6       Q    And where were the scratches that you say you

7    saw in the video, where on your face?

8       A    On my cheeks.  I mean, you can't see them

9    when it's just a front view like this, but there are

10   points where you can zoom in and see that they are    02:25:51

11   there.

12      Q    Have you done that?

13      A    Yes.

14      Q    You sent the video to your cousin Kyle,

15   correct?                                              02:25:56

16          MR. KAPLAN:  Objection.

17          Go ahead.

18          Lacks foundation.  Misstates prior testimony.

19          You can answer.

20          THE DEPONENT:  I don't think I ever went       02:26:18

21   through with sending it to him.  I took it, like I

22   was going to pretend like everything was fine and

23   then instead of sending it I just saved it, just in

24   case I needed, you know, to prove that I was there

25   or something.  I didn't know what was going to        02:26:26

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 161

```
1              MR. BROWN:  Mr. Kaplan, get ready.

2       BY MR. BROWN:

3          Q   What communications about the video did you

4       have with your lawyers before the conclusion of the

5       DVRO proceedings?                              02:34:00

6              MS. PRESCOTT:  Hold on.

7              This is calling for attorney-client

8       privilege, and I'm going to instruct you not to

9       answer.

10      BY MR. BROWN:                                   02:34:12

11         Q   What communications about the video did you

12      have with your lawyers before the conclusion of the

13      DVRO proceedings about producing the video or not

14      producing the video to Mr. Bauer's counsel?

15             MS. PRESCOTT:  Calls for attorney-client   02:34:25

16      privileged communications.  I'm instructing you not

17      to answer.

18             MR. KAPLAN:  Let's voir dire on that.  Let's

19      go off the record so I can voir dire the witness.

20             MR. BROWN:  Jesse, I know you've used that   02:34:36

21      expression before in this context, and I don't

22      understand what you mean by voir diring in this

23      context.  I know a lot about the term voir dire, but

24      what you are talking about exactly?

25             MR. KAPLAN:  To explore the extent of the   02:34:48
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 162

```
 1     privilege and whether or not there's communications.

 2     To explore whether or not there's privileged

 3     communications.

 4          MR. BROWN:  That's fine.  That's fine.  We

 5     can go off.                                          02:34:57

 6          THE VIDEOGRAPHER:  Going off the record at

 7     2:35 p.m.

 8          (Recess.)

 9          THE VIDEOGRAPHER:  Going back on the record

10     at 2:40 p.m.                                         02:40:17

11          MR. KAPLAN:  So, Blair, what I'll allow you

12     to ask and allow the witness to answer, perhaps more

13     importantly, is a more foundational question -- and

14     maybe this is what you were getting at anyway.  It's

15     not entirely clear to me.  But if there were any      02:40:34

16     communications about this video with Ms. Hill's

17     attorneys prior to the conclusion of the DVRO

18     proceeding about producing or not producing the

19     video to Bauer's counsel.

20          MR. BROWN:  Okay.  I will ask that question      02:40:54

21     and see where we go.

22     BY MR. BROWN:

23        Q   Did you have communications with any of your

24     lawyers before the conclusion of the DVRO

25     proceedings about producing the video or not          02:41:14
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 163

1    producing the video to Mr. Bauer's counsel?

2        A    No.  No communications.

3        Q    And when I use the term "lawyers," I am

4    referring to Bryan Freedman -- let me do it

5    differently.                                    02:41:33

6            I'm going to ask you questions specifically

7    about each of the lawyers and law firms involved in

8    the DVRO proceedings -- lawyers or law firms, I

9    should say.

10           Did you have communications about the video   02:41:44

11   with Mr. Freedman before the conclusion of the DVRO

12   proceeding?

13           MR. KAPLAN:  I'm going to object.

14           MS. PRESCOTT:  I'm going to object that that

15   calls for the attorney-client communication.  In    02:42:01

16   terms of the foundational questions, I think we're

17   okay to -- for you asking whether or not she

18   did -- how do we want to do this.  Whether or not

19   those communications happened.

20           MR. KAPLAN:  Well --                          02:42:16

21           MR. BROWN:  Two different -- just to be

22   clear, there's two different types of questions.

23   One is about the video, period.

24           The other is about producing or not producing

25   the video to Mr. Bauer's counsel.  And I want to go   02:42:29

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 164

1    through both of those.  So that question was what

2    communications about the video did you have with

3    Mr. Freedman before the conclusion of the DVRO

4    proceedings?

5          MS. PRESCOTT:  I'm going to object that          02:42:47

6    that's attorney-client privilege and instruct her

7    not to answer.

8    BY MR. BROWN:

9      Q    What communications about the video did you

10   have with anyone at Mr. Freedman's law firm about      02:42:54

11   the video before the conclusion of the DVRO

12   proceedings?

13         MS. PRESCOTT:  I'm going to object that's

14   attorney-client privilege and instruct her not to

15   answer.                                                 02:43:07

16   BY MR. BROWN:

17     Q    What communications about the video did you

18   have with Mark Grillick (phonetic) before the

19   conclusion of the DVRO proceeding?

20         MS. PRESCOTT:  I'm going to object that's        02:43:17

21   attorney-client privilege.  And also lacks

22   foundation, and instruct her not to answer.

23   BY MR. BROWN:

24     Q    What communications about the video did you

25   have with Doreen Olson before the conclusion of the    02:43:25

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 165

1    DVRO proceeding?

2         MS. PRESCOTT:  Same objections.

3    BY MR. BROWN:

4         Q   What communications about the video did you

5    have with anyone at the Meyer Olson law firm before     02:43:36

6    the conclusion of the DVRO proceeding?

7         MS. PRESCOTT:  Same objections, and instruct

8    her not to answer.

9    BY MR. BROWN:

10        Q   What communications did you have with Fred,     02:43:47

11   your Marsy's Law attorney, about the video before

12   the conclusion of the DVRO proceeding?

13        MS. PRESCOTT:  Same objections, and instruct

14   the witness not to answer.

15   BY MR. BROWN:                                            02:44:03

16        Q   And what communications about the video did

17   you have with anyone at Fred's law firm before the

18   conclusion of the DVRO proceeding?

19        MS. PRESCOTT:  Same objections, and instruct

20   the witness not to answer.                               02:44:15

21   BY MR. BROWN:

22        Q   And I'll go back to the question that we were

23   talking about before.

24        Did you have any communication with any of

25   your lawyers before the conclusion of the DVRO           02:44:25

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 166

1       proceeding about producing the video or not

2       producing the video to Mr. Bauer's counsel?

3               MR. KAPLAN:  Asked and answered.

4               Wasn't that the same question that you asked

5       before?  I'm trying --                          02:44:38

6               MR. BROWN:  Well, I was trying to -- I

7       thought that's where we went out on.

8               MR. KAPLAN:  Sorry, Blair, I didn't hear the

9       last thing you just said.

10              MR. BROWN:  I said that was -- that question   02:44:57

11      was the one I posed right before we went out on the

12      recess so you could consult with Ms. Hill.

13              MR. KAPLAN:  Right.  But then we came back

14      and we had a discussion and you asked a question,

15      and Ms. Hill testified that there weren't any       02:45:14

16      question -- I'm sorry -- that there weren't any such

17      communications.

18              MR. BROWN:  I think I changed course at that

19      point.  I started down that road.  Why don't I just

20      go ahead and ask the question again, if I asked it   02:45:28

21      before.  I don't think I did.

22              MS. PRESCOTT:  Okay.

23              MR. BROWN:  Other than right before you took

24      a recess.

25              MS. PRESCOTT:  Hold on.                       02:45:37

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 167

BY MR. BROWN:

2    Q   Excuse me.

Did you have communications with your lawyers before the conclusion of the DVRO proceeding about producing the video or not producing the video to    02:45:45 Mr. Bauer's counsel?

MS. PRESCOTT:  Asked and answered.

MR. KAPLAN:  I'm looking at the realtime and this is precisely the same question that you asked Ms. Hill right before.  But you can restate your    02:45:56 answer for Blair.

BY MR. BROWN:

13   Q   Could you -- can I get an answer to my question, to this question?

15   A   No.  No communication.    02:46:05

16   Q   Turning back to your time with Mr. Bauer that evening.  You said, if I understood you correctly, the video depicted scratches on your face.  Is that what you said?

20   A   Yes, you can faintly see them.    02:46:37

21   Q   And how did -- do you know how those scratches got onto your face?

23   A   I have no idea.

24   Q   Now, after your -- after you left Mr. Bauer's house, you took some pictures of your face, correct?    02:46:57

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 254

1    aware, as you point out in the very first sentence,

2    that the judge has, use your words, squashed Trevor

3    Bauer's subpoena to the Pasadena Police Department,

4    correct?

5        A    Yes.                                        06:13:01

6        Q    And so you were aware that Mr. Bauer was

7    trying to get materials that the Pasadena Police

8    Department had as a result of investigating your

9    allegations, correct?

10       A    I don't know how to answer questions about   06:13:17

11   this one because I was told what to say in this

12   e-mail.

13            MS. PRESCOTT:  Is it communications with your

14   attorneys?

15            THE DEPONENT:  Yes.                          06:13:33

16            MS. PRESCOTT:  Then I'm instructing you not

17   to answer.

18   BY MR. BROWN:

19       Q    Well, the e-mail itself says (as read:)

20            "With advice from my legal counsel,          06:13:42

21            I'm putting this request in writing,"

22            and then it goes on.  It makes a

23            request that the records of the

24            investigation be destroyed, correct?

25            MR. KAPLAN:  Objection; document speaks for  06:13:57

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 255

1    itself.  Asked and answered already.

2    BY MR. BROWN:

3        Q   So at the time this was -- this e-mail was

4    sent, you were aware that Mr. Bauer had been trying

5    to get materials that the Pasadena Police Department   06:14:12

6    had, correct?

7            MS. PRESCOTT:  I'm going to the object to the

8    extent that your awareness is because of

9    attorney-client communications and instruct you not

10   to answer.                                              06:14:24

11   BY MR. BROWN:

12       Q   Well, there was -- you were aware that there

13   had been a hearing, a public hearing on this motion

14   to quash?

15           MS. PRESCOTT:  To the extent you have that     06:14:41

16   information independently of communications with

17   your attorney, you can answer.

18           THE DEPONENT:  There was so many hearings, I

19   don't even recall what this specific one was about

20   now.  I don't -- I don't recall.                       06:14:57

21   BY MR. BROWN:

22       Q   You wrote this e-mail, correct?

23       A   Can you say that again?

24       Q   Did you write this e-mail?

25       A   Yes.                                            06:15:08

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 256

1      Q    One second.

2           Had your attorneys withdrawn from

3      representing you at the time that e-mail was sent?

4      A    I don't recall the timing of that, actually.

5      Q    Why did you want Pasadena Police Department    06:15:36

6      to destroy all the records of your investigation, of

7      the investigation of your allegations against

8      Mr. Bauer?

9           MS. PRESCOTT:  To the extent this is

10     attorney-client privilege, do not divulge any        06:15:54

11     attorney-client communications.

12          MR. KAPLAN:  Also lacks foundation that she

13     wanted that.

14          MR. BROWN:  I don't think this question

15     remotely calls for attorney-client privileged       06:16:09

16     information.

17     BY MR. BROWN:

18     Q    Why did you -- you sent this e-mail -- want

19     Pasadena to destroy the records?

20          MR. KAPLAN:  Same objections.               06:16:20

21          THE DEPONENT:  I don't think I wanted them to

22     be destroyed.  I just wanted them to be in my

23     possession.  I don't recall wanting them to be

24     destroyed.  I'm smart enough to know that that is

25     not realistic.  So.                               06:16:38

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 257

1      BY MR. BROWN:

2          Q   Why did you send an e-mail asking them to

3      destroy the records if -- well, I'll stop there.

4              Why did you send them an e-mail asking them

5      to destroy the records?                            06:16:52

6              MR. KAPLAN:   Objection.   Misstates the

7      document.

8              Also to the extent it calls for

9      attorney-client privileged information or

10     communications with her attorney, I'd instruct the  06:16:59

11     witness not to answer.

12             You can answer as long as you're not

13     divulging anything you discussed or your attorney

14     told you to do.

15             THE DEPONENT:   I'm just going to stick with  06:17:10

16     my previous answers about it.

17     BY MR. BROWN:

18         Q   Ms. Hill, you told us earlier that you

19     were -- well, strike that.

20             You told us earlier that you had given that  06:17:22

21     May 16th video to the Pasadena Police Department,

22     correct?

23         A   Correct.

24         Q   So you were aware at the time you wrote this

25     that the Pasadena Police Department had that video,  06:17:36

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 258

1    correct?

2        A    Correct.

3        Q    And you know that Mr. Bauer through subpoena

4    was trying to get that video, correct?

5            MS. PRESCOTT:  I'm going to object.        06:17:52

6            First of all, calls for speculation about

7    what Bauer wanted.

8            And then I'm also objecting that it's

9    attorney-client privilege about anything that was

10   communicated to you from your attorneys.           06:18:00

11   BY MR. BROWN:

12       Q    Can you answer my question?

13       A    Can you ask it one more time so I make sure I

14   answer it correctly?

15           MR. KAPLAN:  Keep Michelle's instructions in   06:18:22

16   mind when you answer it.

17   BY MR. BROWN:

18       Q    You were aware that Mr. Bauer was trying to

19   get that May 16th video at the time you sent this

20   e-mail, correct?                                   06:18:36

21           MS. PRESCOTT:  Same objections.

22           THE DEPONENT:  I mean, I don't know how to

23   answer that other than I thought he already had

24   that.

25   BY MR. BROWN:                                      06:18:54

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 259

 1        Q    I asked you earlier about communications

 2    concerning the May 16th video, and I asked you about

 3    communications up to the conclusion of the DVRO

 4    proceedings.

 5            Okay.  Since the DVRO proceedings -- or from        06:19:07

 6    the time of the end of the DVRO proceedings ended

 7    August of 2021 to the dates you sent this e-mail in

 8    April of 2022, did you speak with anyone, including

 9    your attorneys for purposes of this question, about

10    the May 16, 2021 video?                                     06:19:26

11        A    No.

12        Q    And during that same period of time, did you

13    communicate with any of your lawyers about the

14    May 16, 2021 video?

15            MS. PRESCOTT:  Wait a minute.                       06:19:41

16            MR. BROWN:  Excuse me?

17            MS. PRESCOTT:  We're looking at that.  That

18    calls for attorney-client privileged communications,

19    and I'm going to instruct her not to answer.

20    BY MR. BROWN:                                               06:20:00

21        Q    At some point after the DVRO proceeding ended

22    in August, the lawyers from Meyer Olson withdrew

23    from representing you; is that correct?

24            MR. KAPLAN:  Objection.  You can answer that

25    question to the extent it doesn't call for                  06:20:12

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Page 299

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, Registered

3     Professional Reporter, Certified Live Note Reporter,

4     do hereby certify:

5          That the foregoing proceedings were taken

6     before me at the time and place herein set forth;

7     that any witnesses in the foregoing proceedings,

8     prior to testifying, were duly sworn; that a record

9     of the proceedings was made by me using machine

10    shorthand which was thereafter transcribed under my

11    direction; that the foregoing transcript is a true

12    record of the testimony given.

13         Further, that if the foregoing pertains to

14    the original transcript of a deposition in a Federal

15    Case, before completion of the proceedings, review

16    of the transcript [  ] was [  ] was not requested.

17         I further certify I am neither financially

18    interested in the action nor a relative or employee

19    of any attorney or party to this action.

20         IN WITNESS WHEREOF, I have this date

21    subscribed my name.

22

23

24                              _____

                                MELISSA M. VILLAGRAN

25                              CSR No. 12543 RPR

# EXHIBIT H

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                  FOR THE COUNTY OF LOS ANGELES

 3       HON. DIANNA GOULD-SALTMAN, JUDGE      DEPARTMENT 35

 4


 5
    LINDSEY HILL,                      )
 6                                     )
                       PETITIONER,     )
 7                                     )
              VS.                      )    NO. 21STRO03198
 8                                     )
                                       )
 9  TREVOR BAUER,                      )
                                       )
10                                     )
                       RESPONDENT.     )
11  _____)
                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
12                      AUGUST 16, 2021

13  APPEARANCES:
    FOR THE PETITIONER:   MEYER, OLSON, LOWY & MEYERS, LLP
14                        BY:  LISA HELFEND MEYER, ESQ.
                               DOREEN MARIE OLSON, ESQ.
15                             MARC H. GARELICK, ESQ.
                          10100 SANTA MONICA BOULEVARD
16                        SUITE 1425
                          LOS ANGELES, CA 90067
17
                          RIGHT CHOICE LAW
18                        BY:  FRED THIAGARAJAH, ESQ.
                          5015 BIRCH STREET
19                        SUITE 107
                          NEWPORT BEACH, CA 92660
20
    FOR THE RESPONDENT:   KINSELLA WEITZMAN ISER KUMP HOLLEY
21                        BY:  SHAWN HOLLEY, ESQ.
                               KATE MANGELS, ESQ.
22                        808 WILSHIRE BOULEVARD
                          3RD FLOOR
23                        SANTA MONICA, CA 90401

24                        ZUCKERMAN SPAEDER LLP
                          BY:  JON R. FETTEROLF, ESQ.
25                             (PRO HAC VICE)
                          1800 M STREET NW
26                        SUITE 1000
                          WASHINGTON, DC 20036
27
                          JACQUELINE M. CAIRE, CSR #9599, RPR
28                        OFFICIAL REPORTER
```

1  WAS EVEN MORE DISORIENTED THAN THE FIRST TIME.  SHE FELT A

2  TERRIBLE PAIN BEHIND BOTH OF HER EARS.  AND SHE COULD TASTE

3  BLOOD IN HER MOUTH.

4       LINDSEY THEN REMEMBERS TREVOR PUTTING HER ON HER

5  BACK AND SPREADING HER LEGS TO EXPOSE HER VAGINA.  AND HE

6  BEGAN PUNCHING HER REPEATEDLY IN HER VAGINA.  LINDSEY FELT

7  EXCRUCIATING PAIN, UNIMAGINABLE PAIN BEYOND THE PAIN THAT SHE

8  HAS EVER FELT IN HER LIFE.  SHE BEGAN CRYING AND SHAKING

9  VIOLENTLY.  TREVOR THEN REPEATED, QUOTE, "YOU'RE SAFE.  I'M

10 HERE.  YOU'RE SAFE."

11      LINDSEY COULDN'T STOP CRYING AND SHAKING.  AND SHE

12 COULDN'T SPEAK.  SO TREVOR MOVED LINDSEY'S BODY AGAIN BY

13 FLIPPING HER ONTO HER STOMACH AND MOVING HER ARMS ABOVE HER.

14 HE THEN BEGAN SCRATCHING HER BACK GENTLY.  HE WHISPERED TO

15 HER, "I WOULD NEVER DO THOSE THINGS TO YOU IF IT WASN'T

16 SEXUALLY."  AS IF THAT WAS AN EXCUSE FOR THIS ABHORRENT

17 BEHAVIOR.  HE KEPT REPEATING TO LINDSEY, "TALK TO ME.  CAN

18 YOU JUST TALK TO ME?"  LINDSEY WAS SCARED HE WOULD HURT HER

19 AGAIN.

20      AND THE ONLY THING THAT SHE COULD SUMMON UP WAS THE

21 SENTENCE, "I THINK MY BODY IS HAVING A TRAUMA RESPONSE."

22 TREVOR FINALLY ASKED LINDSEY WHAT HE SHOULD HAVE ASKED HER

23 THE FIRST TIME, IF SHE HAD EVER BEEN HIT BEFORE.  LINDSEY

24 TOLD HIM SHE HADN'T BEEN.  AND THEN HE TOLD HER RATHER MATTER

25 OF FACTLY HE WAS GOING TO TAKE A SHOWER.

26      LINDSEY STAYED ON THE BED AS TREVOR SHOWERED.  SHE

27 WAS SCARED TO GO INTO THE BATHROOM TO LOOK AT HERSELF IN THE

28 MIRROR BECAUSE SHE KNEW SHE HAD BEEN HURT.  AND SO SHE TOOK A

1    PHOTOGRAPH ON HER PHONE.  THE EVIDENCE WILL SHOW THAT LINDSEY

2    NEVER ALTERED OR HAD ANYONE ALTER THIS PHOTOGRAPH.  AFTER

3    TREVOR GOT OUT OF THE SHOWER, HE HELPED LINDSEY INTO THE

4    SHOWER TO RINSE OFF BECAUSE SHE COULD NOT WALK ON HER OWN.

5           SHE WAS NAUSEOUS AND DIZZY.  TREVOR SAID THINGS TO

6    HER THEREAFTER THAT ARE BONE CHILLING.  HE SAID TO HER,

7    QUOTE, "YOU HAVE A COUPLE OF WELTS.  I NEED TO BE MORE

8    CAREFUL WHEN I HIT YOU.  I ALSO PUNCHED YOUR BUTT WHILE YOU

9    WERE UNCONSCIOUS.  YOU MAY HAVE A BRUISE THERE," END QUOTE.

10   LINDSEY DIDN'T RESPOND AND WENT TO SIT DOWN ON THE BED.  SHE

11   WAS FORCING DOWN SOBS.

12          EVENTUALLY LINDSEY DROVE HOME TO SAN DIEGO.  ON THE

13   WAY HOME, LINDSEY WILL TESTIFY THAT SHE CONTACTED HER COUSIN

14   KYLE.  SHE TOOK PHOTOGRAPHS OF HER INJURIES.  SHE CONTACTED

15   HER BEST FRIEND MELY.  AND, IN FACT, SAW MELY.  AND MELY

16   OBSERVED THE BRUISING BEHIND LINDSEY'S EARS, THE BRUISING ON

17   THE INSIDE OF HER GUMS.  AND LINDSEY LOOKED AT HER VAGINAL

18   BLEEDING.  MELY TRIED TO CONVINCE LINDSEY TO GO TO THE

19   HOSPITAL AND LINDSEY REFUSED.

20          ON MONDAY, MAY 17TH, LINDSEY WAS EVEN IN MORE PAIN.

21   SHE TOOK MORE PHOTOGRAPHS OF HERSELF.  SHE CONTINUED TO THROW

22   UP VIOLENTLY THROUGHOUT THE DAY AND HAD SEVERE HEADACHES.

23   SHE HAD DIFFICULTY KEEPING HER EYES OPEN AND STAYING AWAKE.

24   ALTHOUGH SHE HAD LIED TO MELY AND TO HER A.A. SPONSOR, LISA,

25   ABOUT SEEING TREVOR THE NIGHT BEFORE, SHE FINALLY CAME CLEAN

26   AND DISCLOSED TO THEM WHAT HAD HAPPENED.

27          BETWEEN HER TWO FRIENDS THEY CONVINCED HER TO GO TO

28   THE HOSPITAL.  LINDSEY ARRIVED AT URGENT CARE IN MISSION

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   FOR THE COUNTY OF LOS ANGELES

 3        HON. DIANNA GOULD-SALTMAN, JUDGE      DEPARTMENT 35

 4

 5   LINDSEY HILL,                     )
                                       )
 6                                     )
                        PETITIONER,    )  NO. 21STRO03198
 7                                     )
                   VS.                 )
 8                                     )  REPORTER'S
                                       )  CERTIFICATE
 9   TREVOR BAUER,                     )
                                       )
10                                     )
                        RESPONDENT.    )
11   _____)

12

13           I, JACQUELINE M. CAIRE, CSR #9599, OFFICIAL

14   REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

15   FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

16   FOREGOING PAGES, 1 THROUGH 171, INCLUSIVE, COMPRISE A FULL,

17   TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

18   MATTER OF THE ABOVE-ENTITLED CAUSE ON AUGUST 16, 2021.

19           DATED THIS 16TH DAY OF AUGUST, 2021.

20

21

22   _____
     JACQUELINE M. CAIRE, CSR #9599, RPR
23   OFFICIAL REPORTER

24

25

26

27

28
```

```
1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                    FOR THE COUNTY OF LOS ANGELES

3         HON. DIANNA GOULD-SALTMAN, JUDGE     DEPARTMENT 35

4

5
   LINDSEY HILL,                     )
6                                    )
                     PETITIONER,     )
7                                    )
            VS.                      )    NO. 21STRO03198
8                                    )
                                     )
9  TREVOR BAUER,                     )
                                     )
10                                   )
                     RESPONDENT.     )
11 _____  )
              REPORTER'S TRANSCRIPT OF PROCEEDINGS
12                     AUGUST 17, 2021
                        A.M. SESSION
13
   APPEARANCES:
14 FOR THE PETITIONER:    MEYER, OLSON, LOWY & MEYERS, LLP
                          BY:  LISA HELFEND MEYER, ESQ.
15                             DOREEN MARIE OLSON, ESQ.
                               MARC H. GARELICK, ESQ.
16                        10100 SANTA MONICA BOULEVARD
                          SUITE 1425
17                        LOS ANGELES, CA 90067

18                        RIGHT CHOICE LAW
                          BY:  FRED THIAGARAJAH, ESQ.
19                        5015 BIRCH STREET
                          SUITE 107
20                        NEWPORT BEACH, CA 92660

21 FOR THE RESPONDENT:    KINSELLA WEITZMAN ISER KUMP HOLLEY
                          BY:  SHAWN HOLLEY, ESQ.
22                             KATE MANGELS, ESQ.
                          808 WILSHIRE BOULEVARD
23                        3RD FLOOR
                          SANTA MONICA, CA 90401
24
                          ZUCKERMAN SPAEDER
25                        BY:   JON R. FETTEROLF, ESQ.
                               (PRO HAC VICE)
26                        1800 M STREET NW
                          SUITE 1000
27                        WASHINGTON, DC 20036

28                        JACQUELINE M. CAIRE, CSR #9599, RPR
                          OFFICIAL REPORTER
```

```
1                    LINDSEY HILL,

2    CALLED AS A WITNESS ON HER OWN BEHALF, WAS SWORN AND

3    TESTIFIED AS FOLLOWS:

4

5                    DIRECT EXAMINATION (RESUMED)

6    BY MS. MEYER:

7         Q    LINDSEY, WE LEFT OFF LATE YESTERDAY AFTERNOON WITH

8    YOU DESCRIBING THE INCIDENT THAT OCCURRED ON MAY 15, MAY 16.

9    DO YOU RECALL THE TIME THAT YOU LEFT TREVOR'S HOUSE ON MAY

10   16?

11        A    AROUND 8:30 A.M.

12        Q    THIS WAS A MONDAY; CORRECT?

13        A    A SUNDAY.

14        Q    AT THE TIME YOU LEFT TREVOR'S HOUSE, DID YOU SAY

15   ANYTHING TO ONE ANOTHER?

16        A    HE WOKE UP WHEN I WAS GETTING READY TO LEAVE.  AND

17   HE ASKED ME HOW I WAS FEELING THAT MORNING.  AND I SAID THAT

18   I WAS FINE.  AND HE WAS STILL BASICALLY ASLEEP.  SO THAT'S

19   WHEN I LEFT.

20        Q    WERE YOU ACTUALITY FINE?

21        A    NO.

22        Q    WHY DIDN'T YOU TELL HIM THE TRUTH?

23        A    I WAS FOCUSED ON LEAVING.  GETTING BACK IN MY CAR.

24   TRYING TO FIGURE OUT WHAT TO DO.  MAKING SURE I WAS OKAY TO

25   DRIVE.  I JUST WANTED TO GET OUT OF HIS HOUSE.

26        Q    WHEN YOU LEFT HIS HOUSE AT APPROXIMATELY 8:30 A.M.,

27   WHERE DID YOU GO?

28        A    I WENT TO A NEARBY STARBUCKS, AND I SAT IN THE
```

175

```
 1  PARKING LOT TRYING TO FIGURE OUT WHAT TO DO.  I GOT COFFEE,
 2  BECAUSE I HAD NOT -- BARELY SLEPT THE NIGHT BEFORE.  AND I
 3  NEEDED CAFFEINE TO GO HOME.  I SAT IN MY CAR.  I TOOK PHOTOS
 4  OF MY FACE.  AND I WAS DETERMINING WHETHER I WAS ABLE TO
 5  DRIVE HOME.  AND AFTER SITTING IN THAT PARKING LOT, THAT'S
 6  WHEN I LEFT TO DRIVE HOME FOR SAN DIEGO.
 7      Q    WHEN YOU JUST TESTIFIED THAT YOU WERE TRYING TO
 8  FIND OUT WHAT TO DO, WHAT WERE YOU TRYING TO FIND OUT?
 9      A    IF I WAS EMOTIONALLY AND PHYSICALLY STABLE ENOUGH
10  TO DRIVE ALMOST TWO HOURS HOME.
11      Q    HOW DID YOU FEEL EMOTIONALLY AT THAT TIME?
12      A    I WAS IN SHOCK.  I REALLY HADN'T UNDERSTOOD WHAT
13  HAD HAPPENED TO ME, BECAUSE I WAS MISSING SO MANY PARTS WHEN
14  I WAS UNCONSCIOUS.  SO I WAS COMPLETELY IN SHOCK.  AND I WAS
15  TRYING TO PROCESS AND PUT TOGETHER THE PIECES OF WHAT
16  HAPPENED.  AND I JUST FELT VERY ASHAMED AND PANICKED.
17      Q    WHY DID YOU FEEL PANICKED?
18      A    I JUST DIDN'T KNOW WHAT TO DO OR WHO TO TELL --
19  WHAT TO TELL PEOPLE.  AND I WAS PANICKED ABOUT DRIVING HOME
20  SAFELY.
21      Q    WHY DID YOU TAKE PHOTOGRAPHS OF YOUR FACE AT THAT
22  TIME?
23      A    MY COUSIN KYLE HAD TEXTED ME IN THE MORNING ASKING
24  HOW I WAS DOING.  AND I WAS REALLY IN SHOCK WHEN I LOOKED AT
25  MY FACE AND I SAW THE SCRATCHES ON THE RIGHT SIDE OF MY FACE.
26  I SAW THE TWO BLACK EYES WERE DEVELOPING.  AND THAT MY LIP
27  WAS SWOLLEN.  MY JAW WAS SWOLLEN.  AND I WAS IN SHOCK.  AND
28  SO I TOOK THOSE PICTURES.  I TOOK ONE IN PARTICULAR TO SHOW
```

1   MY COUSIN WHAT HAD HAPPENED, BECAUSE I NEEDED TO TALK TO

2   SOMEBODY ABOUT IT.

3       Q    WHY DID YOU FEEL YOU NEEDED TO TALK TO SOMEBODY

4   ABOUT WHAT HAPPENED BETWEEN YOU AND TREVOR?

5       A    IN THOSE MOMENTS IN SOBRIETY WHEN I FEEL LIKE I'M

6   SLIPPING EMOTIONALLY OR MIGHT DO SOMETHING STUPID, I KNOW

7   THAT I HAVE TO TALK ABOUT IT AS OPPOSED TO SHUTTING IT DOWN

8   AND NOT DISCUSSING IT BECAUSE THAT'S WHERE I FALL ON MY FACE.

9   SO MY COUSIN IS SOMEONE THAT I'VE BEEN CLOSE WITH MY ENTIRE

10  LIFE.  HE ASKED ME HOW IT WAS WITH TREVOR.  AND THAT'S WHY I

11  FELT SAFE TO TALK ABOUT WHAT HAD HAPPENED EVEN THOUGH I TRIED

12  TO DOWNPLAY IT.

13      Q    DID YOU CALL YOUR COUSIN AFTER YOU TOOK THE

14  PHOTOGRAPHS?

15      A    NO, WE JUST TEXTED.

16      Q    OKAY.  DID YOU TEXT BEFORE YOU TOOK THE

17  PHOTOGRAPHS?

18      A    YES.

19      Q    I'M GOING TO SHOW YOU EXHIBIT 8.  CAN YOU IDENTIFY

20  ON EXHIBIT 8, WHICH WERE THE PHOTOGRAPHS THAT YOU TOOK THAT

21  MORNING IN THE PARKING LOT WHILE YOU WERE IN YOUR CAR?  IF

22  YOU CAN JUST HOLD ON A SECOND.  I THINK THE JUDGE IS TRYING

23  TO LOCATE THE EXHIBIT.

24      THE COURT:  I DON'T LOOK AT THE EXHIBITS UNTIL THEY'RE

25  IN EVIDENCE.  SO GO RIGHT AHEAD.

26      MS. MEYER:  OKAY.

27      Q    BY MS. MEYER:  GO AHEAD.

28      A    IN MY CAR WHEN I WAS IN THAT PARKING LOT I TOOK

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                  FOR THE COUNTY OF LOS ANGELES

 3       HON. DIANNA GOULD-SALTMAN, JUDGE       DEPARTMENT 35

 4

 5  LINDSEY HILL,                        )
                                         )
 6                                       )
                           PETITIONER,   ) NO. 21STRO03198
 7                                       )
                    VS.                  )
 8                                       ) REPORTER'S
                                         ) CERTIFICATE
 9  TREVOR BAUER,                        )
                                         )
10                                       )
                           RESPONDENT.   )
11  _____)

12

13            I, JACQUELINE M. CAIRE, CSR #9599, OFFICIAL

14  REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

15  FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

16  FOREGOING PAGES, 172 THROUGH 275, INCLUSIVE, COMPRISE A FULL,

17  TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

18  MATTER OF THE ABOVE-ENTITLED CAUSE ON AUGUST 17, 2021.

19            DATED THIS 17TH DAY OF AUGUST, 2021.

20

21

22            _____
              JACQUELINE M. CAIRE, CSR #9599, RPR
23            OFFICIAL REPORTER

24

25

26

27

28
```

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                    FOR THE COUNTY OF LOS ANGELES

 3        HON. DIANNA GOULD-SALTMAN, JUDGE      DEPARTMENT 35

 4


 5
      LINDSEY HILL,                        )
 6                                         )
                        PETITIONER,        )
 7                                         )
                 VS.                       )    NO. 21STRO03198
 8                                         )
                                           )
 9    TREVOR BAUER,                        )
                                           )
10                                         )
                        RESPONDENT.        )
11    _____)
                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
12                        AUGUST 18, 2021
                           A.M. SESSION
13
      APPEARANCES:
14    FOR THE PETITIONER:    MEYER, OLSON, LOWY & MEYERS, LLP
                             BY:  DOREEN MARIE OLSON, ESQ.
15                                MARC H. GARELICK, ESQ.
                             10100 SANTA MONICA BOULEVARD
16                           SUITE 1425
                             LOS ANGELES, CA 90067
17
                             RIGHT CHOICE LAW
18                           BY:  FRED THIAGARAJAH, ESQ.
                             5015 BIRCH STREET
19                           SUITE 107
                             NEWPORT BEACH, CA 92660
20
      FOR THE RESPONDENT:    KINSELLA WEITZMAN ISER KUMP HOLLEY
21                           BY:  SHAWN HOLLEY, ESQ.
                                  KATE MANGELS, ESQ.
22                           808 WILSHIRE BOULEVARD
                             3RD FLOOR
23                           SANTA MONICA, CA 90401

24                           ZUCKERMAN SPAEDER
                             BY:  JON R. FETTEROLF, ESQ.
25                                (PRO HAC VICE)
                             1800 M STREET NW
26                           SUITE 1000
                             WASHINGTON, DC 20036
27
                             JACQUELINE M. CAIRE, CSR #9599, RPR
28                           OFFICIAL REPORTER
```

451

```
 1        Q    NOW, YESTERDAY YOU TESTIFIED THAT YOU ACCEPTED
 2   MS. HOLLEY'S DEFINITION THAT A LIE OF OMISSION MEANS TO
 3   INTENTIONALLY FAIL TO TELL THE TRUTH IN A SITUATION REGARDING
 4   DISCLOSURE.  HAVE YOU INTENTIONALLY FAILED TO TELL THE TRUTH
 5   REGARDING THE RELATIONSHIP WITH TREVOR?
 6        A    NO, NOT INTENTIONALLY.
 7        Q    HAVE YOU INTENTIONALLY FAILED TO TELL THE TRUTH
 8   REGARDING WHAT OCCURRED ON APRIL 21ST?
 9        A    NO.
10        Q    HAVE YOU INTENTIONALLY FAILED TO TELL THE TRUTH
11   REGARDING WHAT OCCURRED ON MAY 15, 16?
12        A    NO.
13        Q    DID YOU INTENTIONALLY FAIL TO INCLUDE YOUR WITTY
14   BANTER WITH KYLE BEFORE AND AFTER YOUR MEETING WITH TREVOR?
15        A    IN THE D.V.R.O.?
16        Q    CORRECT.
17        A    NO.
18        Q    DID YOU INTENTIONALLY FAIL TO INCLUDE YOUR WITTY
19   BANTER WITH DEREK DAWSON BEFORE AND AFTER YOUR MEETING WITH
20   TREVOR?
21        A    NO.
22        Q    WHY DIDN'T YOU INCLUDE IT?
23        A    I DIDN'T THINK IT WAS RELEVANT TO NEEDING
24   PROTECTION AFTER AN ASSAULT.  AND I WAS TRYING TO PROVIDE THE
25   THINGS THAT PROVED WHY I NEEDED PROTECTION, INCLUDING THE
26   HOSPITAL REPORTS.  X, Y, Z, AFTER.  I WAS JUST TRYING TO,
27   NUMBER ONE, PROVIDE ALL THE EVIDENCE, SCREENSHOTS THAT I HAD
28   FROM TREVOR, EVEN THOUGH THEY WERE LIMITED.  AND I WAS TRYING
```

452

```
 1  TO PROVIDE THE COURT WITH THE PROOF THAT I CONSIDERED, HAVING
 2  NEVER DONE THIS BEFORE OR KNOWING HOW IT WORKS, WHY I NEEDED
 3  PROTECTION.  AND I DID NOT INTENTIONALLY LEAVE OUT ANYTHING
 4  OR THINK BACK TO MESSAGES FROM A LONG TIME AGO THAT I DIDN'T
 5  HAVE.  NOTHING WAS INTENTIONALLY LEFT OUT TO MAKE A SITUATION
 6  LOOK BETTER OR LEAN ONE WAY.  I REALLY DID THE BEST I COULD
 7  TO BE INTENTIONAL WITH WHAT WAS NEEDED TO BE PUT IN.
 8       Q    LET ME ASK YOU ABOUT YOUR SPONSOR, LISA.  WHY DID
 9  YOU NOT TELL THE TRUTH TO LISA, YOUR SPONSOR?
10       A    LISA, THE NIGHT BEFORE --
11       MS. HOLLEY:  OBJECTION.  ASKED AND ANSWERED.
12       THE COURT:  THAT WAS ANSWERED.  COUNSEL ASKED.  SHE
13  EXPLAINED SHE WAS EMBARRASSED BECAUSE LISA WASN'T IN FAVOR OF
14  THE RELATIONSHIP AND TOLD HER NOT TO DO IT.  AND SHE DID IT.
15  AND SHE ALSO DIDN'T TELL HER BECAUSE -- SHE TOLD US THIS
16  TODAY.
17       MS. OLSON:  I WAS UNDER THE UNDERSTANDING I THOUGHT THAT
18  WAS MELY.
19       THE COURT:  WELL, YOU CAN CLARIFY.  I MAY BE
20  MISRECOLLECTING.
21       THE WITNESS:  IT WAS LISA.
22       MS. OLSON:  I'M INCORRECT.
23       THE COURT:  I TRY TO PAY ATTENTION.
24       MS. OLSON:  I'M ABSOLUTELY DOING MY BEST.
25       Q    BY MS. OLSON:  NOW, YOU HAD CLAIMED THAT YOU WERE
26  CONCERNED ABOUT A STATEMENT THAT WAS PUT IN THE MEDIA BY
27  MR. FETTEROLF.  AND YOU DESCRIBED IT AS SLUT SHAMING.  DO YOU
28  RECALL WHAT THAT STATEMENT WAS?
```

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   FOR THE COUNTY OF LOS ANGELES

 3      HON. DIANNA GOULD-SALTMAN, JUDGE        DEPARTMENT 35

 4

 5   LINDSEY HILL,                       )
                                         )
 6                                       )
                       PETITIONER,       )  NO. 21STRO03198
 7                                       )
                  VS.                    )
 8                                       )  REPORTER'S
                                         )  CERTIFICATE
 9   TREVOR BAUER,                       )
                                         )
10                                       )
                       RESPONDENT.       )
11   _____)

12

13           I, JACQUELINE M. CAIRE, CSR #9599, OFFICIAL

14   REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

15   FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

16   FOREGOING PAGES, 367 THROUGH 475, INCLUSIVE, COMPRISE A FULL,

17   TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

18   MATTER OF THE ABOVE-ENTITLED CAUSE ON AUGUST 18, 2021.

19           DATED THIS 18TH DAY OF AUGUST, 2021.

20

21

22   _____
     JACQUELINE M. CAIRE, CSR #9599, RPR
23   OFFICIAL REPORTER

24

25

26

27

28
```

```
 1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                 FOR THE COUNTY OF LOS ANGELES

 3       HON. DIANNA GOULD-SALTMAN, JUDGE      DEPARTMENT 35

 4

 5
       LINDSEY HILL,                      )
 6                                        )
                            PETITIONER,   )
 7            VS.                         )      NO. 21STRO03198
                                          )
 8                                        )
       TREVOR BAUER,                      )
 9                                        )
                            RESPONDENT.   )
10     _____)

11              REPORTER'S TRANSCRIPT OF PROCEEDINGS
                          AUGUST 19, 2021
12
       APPEARANCES:
13     FOR THE PETITIONER:   MEYER, OLSON, LOWY & MEYERS, LLP
                             BY:  LISA HELFEND MEYER, ESQ.
14                                DOREEN MARIE OLSON, ESQ.
                                  MARC H. GARELICK, ESQ.
15                           10100 SANTA MONICA BOULEVARD
                             SUITE 1425
16                           LOS ANGELES, CA 90067

17                           RIGHT CHOICE LAW
                             BY:  FRED THIAGARAJAH, ESQ.
18                           5015 BIRCH STREET
                             SUITE 107
19                           NEWPORT BEACH, CA 92660

20     FOR THE RESPONDENT:   KINSELLA WEITZMAN ISER KUMP HOLLEY
                             BY:  SHAWN HOLLEY, ESQ.
21                                KATE MANGELS, ESQ.
                             808 WILSHIRE BOULEVARD
22                           3RD FLOOR
                             SANTA MONICA, CA 90401
23
                             ZUCKERMAN SPAEDER
24                           BY:  JON R. FETTEROLF, ESQ.
                                  (PRO HAC VICE)
25                           1800 M STREET NW
                             SUITE 1000
26                           WASHINGTON, DC 20036

27
                             JACQUELINE M. CAIRE, CSR #9599, RPR
28                           OFFICIAL REPORTER
```

585

```
 1   ON AT LEAST ONE OCCASION, WHEN RESPONDENT WAS DOING SOMETHING

 2   PETITIONER DIDN'T WANT AND SHE COULDN'T SPEAK, SHE MOTIONED

 3   TO HIM AND HE DID STOP.  ON ANOTHER, SHE USED THE FIRST PART

 4   OF THEIR AGREED SAFE WORD AND HE DID STOP.

 5          RESPONDENT DID NOT PURSUE PETITIONER.  HE DID NOT

 6   THREATEN PETITIONER TO COERCE HER INTO SEXUAL ACTIVITY.  AND

 7   HE DIDN'T THREATEN HER AFTER THEY HAD ENGAGED IN SEXUAL

 8   ACTIVITY.

 9          PETITIONER COMPLAINS IN HER TESTIMONY THAT ONE OF

10   HER PROBLEMS HAS BEEN HER DESIRE TO SEEK ATTENTION.

11   COMMUNICATIONS TO HER FRIENDS, WHICH ARE ENTERED INTO

12   EVIDENCE, INDICATE SHE WAS EXCITED FOR THE ATTENTION TO HER

13   AND, EVENTUALLY, THE DAMAGE THAT ATTENTION WOULD HAVE ON

14   RESPONDENT.

15          LET ME BE CLEAR.  THE INJURIES AS SHOWN IN THE

16   PHOTOGRAPHS ARE TERRIBLE.  UNDER MOST CIRCUMSTANCES, MERELY

17   SEEING PHOTOGRAPHS SUCH AS THOSE WOULD SERVE AS A PER SE

18   CONDEMNATION OF THE PERPETRATOR OF SUCH INJURIES.  BUT

19   PETITIONER HAD AND HAS THE RIGHT TO ENGAGE IN ANY KIND OF SEX

20   AS A CONSENTING ADULT THAT SHE WANTS TO WITH ANOTHER

21   CONSENTING ADULT.

22          SHE WAS NOT AMBIGUOUS ABOUT WANTING ROUGH SEX IN

23   THE PARTIES' FIRST ENCOUNTER AND WANTING ROUGHER SEX IN THE

24   SECOND ENCOUNTER.  PETITIONER WAS ASKED BY RESPONDENT TO

25   DECIDE WHATEVER SHE WANTED TO LET RESPONDENT KNOW WAS OFF

26   LIMITS, AND SHE DID.

27          IF SHE HAD SET LIMITS AND HE HAD EXCEEDED THEM,

28   THIS CASE WOULD BE VERY CLEAR.  BUT SHE SET LIMITS WITHOUT
```

586

1   FULLY CONSIDERING ALL THE CONSEQUENCES AND RESPONDENT DID NOT

2   EXCEED THE LIMITS THAT PETITIONER SET.

3           GOING BACK TO FAMILY CODE SECTION 6220 AND 6340,

4   THE FUNDAMENTAL PURPOSE OF THE DOMESTIC VIOLENCE PREVENTION

5   ACT, THE COURT FINDS THAT PETITIONER'S INITIAL DECLARATION,

6   WHICH WAS THE BASIS UPON WHICH SHE OBTAINED A TEMPORARY

7   RESTRAINING ORDER, WAS MATERIALLY MISLEADING.  SHE CLAIMED

8   THAT RESPONDENT WAS CALLING AND TEXTING NON-STOP FOR TWO

9   WEEKS.  WHEN THE REALITY WAS THAT RESPONDENT RARELY CALLED

10  AND TEXTED ONLY WHEN SHE HAD TOLD HIM SHE WAS IN THE HOSPITAL

11  TO MAKE SURE THAT SHE WAS STILL OKAY.  EACH OF THOSE TEXTS OR

12  VOICEMAILS WAS OF A SIMILAR SORT, "ARE YOU OKAY?"

13          PETITIONER WAS CLEAR THAT SHE WAS EXTREMELY

14  STRESSED AND HAD EXTREME ANXIETY WHEN RESPONDENT SENT

15  MESSAGES.  SHE ALSO TESTIFIED THAT SHE WAS EXTREMELY STRESSED

16  AND ANXIOUS WHEN HE DIDN'T SEND MESSAGES.  THAT ISN'T

17  RATIONAL.

18          RESPONDENT DID NOT PURSUE PETITIONER.  SHE PURSUED

19  HIM.  PETITIONER'S TESTIMONY MADE CLEAR THAT SHE WAS UPSET

20  THAT RESPONDENT DIDN'T CALL HER WHEN SHE EXPECTED HIM TO AND

21  THAT DURING AND AFTER THEIR FIRST IN-PERSON ENCOUNTER,

22  PETITIONER WANTED MORE OF A RELATIONSHIP WITH RESPONDENT THAN

23  THE FACTS, AS SHE PRESENTED THEM, COULD REALISTICALLY BE

24  EXPECTED.

25          HER FEAR THAT RESPONDENT MIGHT DO SOMETHING IF HE

26  KNEW SHE WENT TO THE HOSPITAL HAD NO FACTUAL BASIS.  HER FEAR

27  THAT RESPONDENT MIGHT DO SOMETHING IF HE KNEW SHE HAD FILED A

28  REQUEST FOR RESTRAINING ORDER DOES NOT APPEAR TO HAVE HAD ANY

587

```
1   FACTUAL BASIS.  ALTHOUGH THE NEVAREZ CASE DOES NOT REQUIRE A
2   JUDGE TO CONSIDER WHETHER THERE IS A PROBABILITY OF FUTURE
3   HARM, FAMILY CODE 6340 DOES REQUIRE THAT IT BE PART OF THE
4   COURT'S CONSIDERATION.
5           IN THIS CASE, THE COURT FINDS THERE IS NO
6   SUPPORTABLE EVIDENCE THAT RESPONDENT IS LIKELY TO CAUSE
7   PETITIONER ANY HARM OR EVEN HAVE CONTACT WITH THE PETITIONER.
8   FOR ALL THE REASONS STATED, THE COURT DENIES PETITIONER'S
9   REQUEST FOR A LONG TERM DOMESTIC VIOLENCE RESTRAINING ORDER.
10  AND THE COURT HEREBY DISSOLVES THE TEMPORARY RESTRAINING
11  ORDER.
12      MS. HOLLEY:  THANK YOU, YOUR HONOR.
13      MR. FETTEROLF:  THANK YOU, YOUR HONOR.
14      MS. MEYER:  THANK YOU, YOUR HONOR.
15              (THE PROCEEDINGS WERE CONCLUDED.)
16
17
18
19
20
21
22
23
24
25
26
27
28
```

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                    FOR THE COUNTY OF LOS ANGELES

 3       HON. DIANNA GOULD-SALTMAN, JUDGE        DEPARTMENT 35

 4

 5    LINDSEY HILL,                       )
                                          )
 6                                        )
                          PETITIONER,     ) NO. 21STRO03198
 7                                        )
                  VS.                     )
 8                                        ) REPORTER'S
                                          ) CERTIFICATE
 9    TREVOR BAUER,                       )
                                          )
10                                        )
                          RESPONDENT.     )
11    _____)

12

13           I, JACQUELINE M. CAIRE, CSR #9599, OFFICIAL

14    REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

15    FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

16    FOREGOING PAGES, 521 THROUGH 587, INCLUSIVE, COMPRISE A FULL,

17    TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

18    MATTER OF THE ABOVE-ENTITLED CAUSE ON AUGUST 19, 2021.

19           DATED THIS 23RD DAY OF AUGUST, 2021.

20

21

22    _____
             JACQUELINE M. CAIRE, CSR #9599, RPR
23           OFFICIAL REPORTER

24

25

26

27

28
```

EXHIBIT I

| | |
|---|---|
| **From:** | Brown, Blair G. |
| **Sent:** | Wednesday, August 30, 2023 5:51 PM |
| **To:** | Eileen Spadoni; Jesse Kaplan; Michelle R. Prescott; Joshua A. Nuzzo |
| **Cc:** | Fetterolf, Jon R.; Peyser, Nell Z; Kate Mangels; Simmerson, Kelsey; Ventresca, Ivano |
| **Subject:** | RE: Bauer v. Hill Meet and Confer |
| **Attachments:** | 2023-05-02 Ltr. re Freedman Subpoena.pdf |

Counsel for Ms. Hill:

In our brief call this morning in response to my request for a meet and confer regarding the two issues I identified, Mr. Kaplan took the position that our request for a meet and confer was not specific enough. I disagree, but this email provides further details.

First, regarding a motion for an independent psychiatric exam under Fed. R. Civ. P. 35, there is a substantial basis for doing so because Ms. Hill has placed her mental condition at issue.  Ms. Hill's supplemental response to Mr. Bauer's Interrogatory No. 21, served August 28, 2023,  lists an extensive set of physical and mental conditions and symptoms "which became prominent after the batteries/sexual batteries and increased over time [and] continue through the present." Ms. Hill also apparently claims for the first time in that supplemental response and in her amended initial disclosures served the same day, that her recent relapse into alcohol abuse was caused by Mr. Bauer's actions, despite prior assurances to Mr. Bauer's counsel and a representation to the court that Ms. Hill was making no such claim (Motion Hearing Tr. 14, May 24, 2023).

Second, with respect to the attorney-client privilege issues, counsel for Mr. Bauer and counsel for both Ms. Hill and Bryan Freedman have conferred several times about written communications between Ms. Hill and Mr. Freedman regarding the May 16, 2021, video of the smiling Ms. Hill, with no apparent injuries to her face, lying in bed with Mr. Bauer shortly after the alleged violent assault. We have taken the position in prior correspondence (attached) and discussions that such communications are subject to discovery under the crime fraud exception because this important exculpatory evidence was concealed from the court in the DVRO proceeding in violation of California Penal Code 135 (criminal concealment of evidence) and in order to perpetrate a fraud. Counsel for Mr. Bauer distilled the issue of  Mr. Freedman's production of those communications by a subpoena dated August 4, 2023, to which Mr. Freedman has objected on grounds that include the attorney-client privilege.  In Ms. Hill's deposition on August 29, 2023, she declined to answer multiple questions about communications with counsel (whether oral or written) about the May 16, 2021 video on the ground of attorney-client privilege. Our position is that the crime fraud exception pierces the privilege, and therefore Ms. Hill should be required to answer the questions posed to her about those communications and Mr. Freedman should be compelled to produce documents regarding those communications.  Evidence of a party's efforts to conceal evidence or

1

otherwise corrupt the judicial process is relevant and admissible, as the court ruled with respect to Ms. Hill's tampering with witnesses in this case.

I am available any time Thursday August 30, 2023, for a meet and confer. I suggest 10 am PDT / 1 pm EDT.  Please advise regarding your availability and any other proposal regarding a time.

- Blair



**Blair G. Brown**
**Zuckerman Spaeder LLP**
bbrown@zuckerman.com

1800 M STREET NW, SUITE 1000 • WASHINGTON,  DC 20036-5807
202.778.1829 direct • 202.320.8369 mobile • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful.  If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

**From:** Eileen Spadoni <ESpadoni@WZLLP.COM>
**Sent:** Wednesday, August 30, 2023 1:57 PM
**To:** Brown, Blair G. <bbrown@zuckerman.com>; Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott <mprescott@WZLLP.COM>; Joshua A. Nuzzo <JNuzzo@wzllp.com>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels <KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano <iventresca@zuckerman.com>
**Subject:** RE: Bauer v. Hill Meet and Confer

EXTERNAL

Can you folks please include Josh Nuzzo on all future communications? Thank you.

Here is bridge line for your convenience:

866 528-2256
Access code 6461427#

Eileen Spadoni
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email espadoni@wzllp.com



Follow us on: [social media icons]

Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

**From:** Brown, Blair G. <bbrown@zuckerman.com>
**Sent:** Wednesday, August 30, 2023 7:39 AM
**To:** Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott <mprescott@WZLLP.COM>; Eileen Spadoni <ESpadoni@WZLLP.COM>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels <KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano <iventresca@zuckerman.com>
**Subject:** Bauer v. Hill Meet and Confer

**\*\*CAUTION: This email originated from outside of the organization.\*\***

Jesse, Michelle, and Eileen:

Please advise regarding your availability today for a meet and confer regarding (1) a motion for an IME of Lindsey and (2) motion to compel Lindsey's communications with counsel regarding 5/16 video under crime fraud exception (although in my opinion, we have satisfied any meet and confer obligation on that issue already). I propose 11 am PDT but have later availability.

- Blair



**Blair G. Brown**
**Zuckerman Spaeder LLP**
bbrown@zuckerman.com

1800 M STREET NW, SUITE 1000 • WASHINGTON, DC 20036-5807
202.778.1829 direct • 202.320.8369 mobile • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful. If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.



Blair G. Brown
PARTNER
Zuckerman Spaeder LLP
bbrown@zuckerman.com
(202) 778-1829

May 2, 2023

**VIA E-MAIL**

Bryan J Freedman (bfreedman@ftllp.com)
Jesse A Kaplan (jkaplan@ftllp.com)
Freedman + Taitelman LLP
1801 Century Park West 5th Floor
Los Angeles, CA 90067

      Re:   *Bauer v. Hill*, Case No. 8:22-cv-00868-JVS-ADS (C.D. Cal.)

             **Plaintiff's Subpoena Duces Tecum to Bryan Freedman**

Dear Counsel:

      I write regarding Non-Party Witness Bryan Freedman's April 12, 2023 Objections to Plaintiff Trevor Bauer's Subpoena Duces Tecum. We request a meet and confer no later than May 8, 2023, to discuss and seek to resolve those objections and the issues raised in this letter.

      Request No. 1 seeks communications between Mr. Freedman and Ms. Hill regarding the May 16, 2021 video filmed by Ms. Hill at Mr. Bauer's residence. You have objected on the grounds of relevance, proportionality, overbreadth, attorney-client privilege, and attorney work product. None of those objections are appropriate.

      The video that is the subject of this Request is an extremely significant item of evidence. Taken within hours of the May 16, 2021 encounter, it depicts no injuries to Ms. Hill other than a small spot on her lip. Ms. Hill smirks in the video and demonstrates no behavior suggesting that she suffered the assault she alleges.

      Communications regarding that video are not protected by attorney-client privilege or the attorney work product doctrine. First, any of those communications that did not include substantive information, such as an email simply sending the video as attachment, are not protected by attorney-client privilege or the work product. The names, dates, and subjects of communication are routinely included on privilege logs.

      Second, all communications and work product regarding the May 16, 2021 video are

1800 M STREET NW, STE. 1000, WASHINGTON, DC 20036-5807 | T 202.778.1800 | F 202.822.8106

ZUCKERMAN SPAEDER LLP | WASHINGTON, DC | NEW YORK | TAMPA | BALTIMORE

discoverable under the crime fraud exception. Despite the significance of the video and its responsiveness to Mr. Bauer's discovery requests, it was not produced by Ms. Hill's counsel in the DVRO proceedings.  Moreover, Ms. Hill's counsel repeatedly represented to the court and to counsel for Mr. Bauer, both in writing and orally, that Ms. Hill had produced all relevant material. *See, e.g.,* Petitioner's Opposition to Respondent's Motion to Compel and Motion for Sanctions for Spoliation of Evidence (Aug. 16, 2021) at 2 ("There is simply nothing in Ms. Hill's possession and control that is relevant to the within request for Domestic Violence Restraining Order that exists and has not yet been produced."); Transcript of Hearing on Motion to Compel and Motion for Sanctions for Spoliation of Evidence (Aug. 16, 2021) at 22 ("So for counsel to come and say that we've either deleted, failed to produce, modified, it's not accurate. . .. [T]hey have everything we have.")  Nothing could have been farther from the truth.  One of the most significant items of evidence relevant to the DVRO proceeding had been buried. The crime fraud exception, Cal. Evid. Code § 956, allows discovery of privileged communications related to the concealment of evidence from a court, which is a crime, Cal. Pen. Code § 135, as well as a fraud on a court. *See State Farm Fire Casualty Co. v. Superior Court*, 54 Cal. App. 4th 625 (1997).

We also request that a privilege log be produced with respect to these communications.

As for relevance, the concealment of that video is highly material evidence regarding several issues, including Ms. Hill's credibility and corruption with respect to matters central to this case.  The narrow request is neither overbroad nor disproportionate.

Request No. 2 seeks photographs and videos of Ms. Hill and/or Mr. Bauer that Mr. Freedman or others at his law firm received prior to the conclusion of the DVRO proceeding.  You have objected on the grounds of relevance, proportionality, overbreadth, attorney-client privilege, attorney work product, lack of specificity, and duplication of production. None of those objections are appropriate.

The attorney-client privilege and work product objections to this request are based principally on a mischaracterization of the request.  The request does not seek communications. It seeks videos and photographs.  Mr. Freedman and others at his law firm received, for example, the undisclosed May 16, 2021 video of Ms. Hill and Mr. Bauer and photos of Ms. Hill's alleged injuries.  Neither the attorney-client privilege nor attorney work product protection applies to these materials, which are neither communications between attorney and client or attorney work product. Moreover, even if a privilege or protection applied to those materials, which they do not, (1) the privilege has been waived to the extent that the materials have been provided to others, and (2) with respect to the May 16, 2021 video, and any other responsive and relevant materials that were not disclosed at the DVRO proceeding, the crime fraud exception applies for the reasons previously stated.

With respect to specificity, the request seeks photographs and videos that depict (a) Ms.

Hill, (b) Mr. Bauer, or (c) Ms. Hill with Mr. Bauer, received by Mr. Freedman or his firm on or before August 19, 2021, the date the DVRO proceeding concluded.  Photos and videos of Ms. Hill are clearly relevant because they depict Ms. Hill's physical appearance before or after the alleged sexual assaults and therefore show the presence or absence of injuries and/or emotional distress. Photos or videos of Mr. Bauer also are relevant if taken or provided by Ms. Hill.  Any photos or videos encompassed by this request that were concealed in connection with the DVRO discovery also are relevant for the reasons previously stated with respect to Request No. 1.  Also, considering the concealment of the May 16, 2021 video, it is a proper request to direct to Mr. Freedman to determine when other photos or videos were provided to him or his firm.

Request No. 3 seeks communications between Ms. Hill and Mr. Bauer that Mr. Freedman or his law firm received prior to the conclusion of the DVRO proceeding. You assert a variety of objections and state that you have no responsive documents in your possession, custody, or control. We do not agree that the objections are appropriate. We request that Mr. Freedman inform us whether he ever had possession, custody, or control of communications responsive to this request, and, if so, when he relinquished such possession, custody, or control.

Request No. 4 seeks communications between Ms. Hill "and any person (other than counsel or their agents) regarding Mr. Bauer that you or your firm received prior to the conclusion of the DVRO proceeding."  You object on grounds of attorney-client privilege, relevance, overbreadth, and proportionality.

The attorney-client privilege and work product objections to this request are based principally on a mischaracterization of the request. The request expressly omits communications between Ms. Hill and her counsel or counsel's agents. Communications by Ms. Hill with others concerning Mr. Bauer are clearly relevant and the request for them is not overbroad or disproportionate.  The need for Mr. Freedman's production of them is especially important because Ms. Hill claims to have deleted certain communications with others, recipients of communications from Ms. Hill claim to have deleted communications with her, and at least one video was concealed, as discussed above.

Request No.'s 5 and 6 seek communications with public relations firms and the media, including TMZ, concerning Mr. Bauer, the DVRO Proceeding, Ms. Hill's claims, and the transmittal of photos to TMZ. You assert a variety of objections and assert that you have no responsive documents in your possession, custody, or control. We do not agree that the objections are appropriate.

We also note that the following appeared on TMZ's website on August 5, 2021:

The attorney for Bauer's alleged victim, Bryan Freedman, asked TMZ Sports to publish an unredacted photograph showing his client's alleged injuries... saying the damage could NOT possibly be part of a consensual encounter.

"Look at this picture. No one -- absolutely no one -- can consent to this, logically or legally. Trevor Bauer's team continues to try to abuse an assault victim. They need to stop. Now."

The alleged victim and her family requested this photo be released, per Freedman.

We request that Mr. Freedman inform us whether he ever had possession, custody, or control of communications responsive to Request No.'s 5 and 6, and, if so, when he relinquished such possession, custody, or control.

Sincerely,

*/s/ Blair G. Brown*

Blair G. Brown


cc:
Christopher P Wesierski (cwesierski@wzllp.com)
Brett Andrew Smith (bsmith@wzllp.com)
Michelle R. Prescott (mprescott@wzllp.com)
Eileen Spadoni (espadoni@wzllp.com)

EXHIBIT J

| | |
|---|---|
| **From:** | Michelle R. Prescott <mprescott@WZLLP.COM> |
| **Sent:** | Wednesday, August 30, 2023 6:30 PM |
| **To:** | Brown, Blair G.; Eileen Spadoni; Jesse Kaplan; Joshua A. Nuzzo |
| **Cc:** | Fetterolf, Jon R.; Peyser, Nell Z; Kate Mangels; Simmerson, Kelsey; Ventresca, Ivano |
| **Subject:** | RE: Bauer v. Hill Meet and Confer |

EXTERNAL

Blair,

Thank you for the further explanation of the issues to be discussed.  I am not available today or tomorrow  to discuss this issue on such short notice.  Pursuant to CA CD LR 37-1: "Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party must confer with counsel for the moving party **within ten days after the moving party serves a letter requesting such conference.** The moving party's letter must identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought" (emphasis added).

In the interest of efficiency, we feel it appropriate to table the discussion regarding any potential motion to pierce the attorney-client privilege until we can discuss both this issue and your potential motion for an independent medical examination in a single meet and confer call.

I do not intend to wait a full ten days to meet and confer, but we cannot make time before next week due to other previously scheduled depositions.  We will need time to review and consider you're the issues raised and have insufficient time to do so before tomorrow morning.


Michelle R. Prescott
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email mprescott@wzllp.com



Follow us on: f t in

Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

**From:** Brown, Blair G. <bbrown@zuckerman.com>
**Sent:** Wednesday, August 30, 2023 2:51 PM
**To:** Eileen Spadoni <ESpadoni@WZLLP.COM>; Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott

<mprescott@WZLLP.COM>; Joshua A. Nuzzo <JNuzzo@wzllp.com>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels
<KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano
<iventresca@zuckerman.com>
**Subject:** RE: Bauer v. Hill Meet and Confer

**\*\*CAUTION: This email originated from outside of the organization.\*\***

Counsel for Ms. Hill:

    In our brief call this morning in response to my request for a meet and confer regarding
the two issues I identified, Mr. Kaplan took the position that our request for a meet and confer
was not specific enough. I disagree, but this email provides further details.

    First, regarding a motion for an independent psychiatric exam under Fed. R. Civ. P. 35,
there is a substantial basis for doing so because Ms. Hill has placed her mental condition at
issue.  Ms. Hill's supplemental response to Mr. Bauer's Interrogatory No. 21, served August 28,
2023,  lists an extensive set of physical and mental conditions and symptoms "which became
prominent after the batteries/sexual batteries and increased over time [and] continue through
the present." Ms. Hill also apparently claims for the first time in that supplemental response
and in her amended initial disclosures served the same day, that her recent relapse into
alcohol abuse was caused by Mr. Bauer's actions, despite prior assurances to Mr. Bauer's
counsel and a representation to the court that Ms. Hill was making no such claim (Motion
Hearing Tr. 14, May 24, 2023).

    Second, with respect to the attorney-client privilege issues, counsel for Mr. Bauer and
counsel for both Ms. Hill and Bryan Freedman have conferred several times about written
communications between Ms. Hill and Mr. Freedman regarding the May 16, 2021, video of the
smiling Ms. Hill, with no apparent injuries to her face, lying in bed with Mr. Bauer shortly after
the alleged violent assault. We have taken the position in prior correspondence (attached) and
discussions that such communications are subject to discovery under the crime fraud
exception because this important exculpatory evidence was concealed from the court in the
DVRO proceeding in violation of California Penal Code 135 (criminal concealment of evidence)
and in order to perpetrate a fraud. Counsel for Mr. Bauer distilled the issue of  Mr. Freedman's
production of those communications by a subpoena dated August 4, 2023, to which Mr.
Freedman has objected on grounds that include the attorney-client privilege.  In Ms. Hill's
deposition on August 29, 2023, she declined to answer multiple questions about
communications with counsel (whether oral or written) about the May 16, 2021 video on the
ground of attorney-client privilege. Our position is that the crime fraud exception pierces the
privilege, and therefore Ms. Hill should be required to answer the questions posed to her
about those communications and Mr. Freedman should be compelled to produce documents
regarding those communications.  Evidence of a party's efforts to conceal evidence or

otherwise corrupt the judicial process is relevant and admissible, as the court ruled with respect to Ms. Hill's tampering with witnesses in this case.

I am available any time Thursday August 30, 2023, for a meet and confer. I suggest 10 am PDT / 1 pm EDT.  Please advise regarding your availability and any other proposal regarding a time.

-   Blair



**Blair G. Brown**
**Zuckerman Spaeder LLP**
bbrown@zuckerman.com

1800 M STREET NW, SUITE 1000 • WASHINGTON,  DC 20036-5807
202.778.1829 direct • 202.320.8369 mobile • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful.  If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

**From:** Eileen Spadoni <ESpadoni@WZLLP.COM>
**Sent:** Wednesday, August 30, 2023 1:57 PM
**To:** Brown, Blair G. <bbrown@zuckerman.com>; Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott <mprescott@WZLLP.COM>; Joshua A. Nuzzo <JNuzzo@wzllp.com>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels <KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano <iventresca@zuckerman.com>
**Subject:** RE: Bauer v. Hill Meet and Confer

**EXTERNAL**

Can you folks please include Josh Nuzzo on all future communications? Thank you.

Here is bridge line for your convenience:

866 528-2256
Access code 6461427#


Eileen Spadoni
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email espadoni@wzllp.com



Follow us on: f t in

Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

**From:** Brown, Blair G. <bbrown@zuckerman.com>
**Sent:** Wednesday, August 30, 2023 7:39 AM
**To:** Jesse Kaplan <jkaplan@ftllp.com>; Michelle R. Prescott <mprescott@WZLLP.COM>; Eileen Spadoni <ESpadoni@WZLLP.COM>
**Cc:** Fetterolf, Jon R. <JFetterolf@zuckerman.com>; Peyser, Nell Z <NPeyser@zuckerman.com>; Kate Mangels <KMangels@khiks.com>; Simmerson, Kelsey <ksimmerson@zuckerman.com>; Ventresca, Ivano <iventresca@zuckerman.com>
**Subject:** Bauer v. Hill Meet and Confer

**\*\*CAUTION: This email originated from outside of the organization.\*\***

Jesse, Michelle, and Eileen:

Please advise regarding your availability today for a meet and confer regarding (1) a motion for an IME of Lindsey and (2) motion to compel Lindsey's communications with counsel regarding 5/16 video under crime fraud exception (although in my opinion, we have satisfied any meet and confer obligation on that issue already). I propose 11 am PDT but have later availability.

-   Blair



**Blair G. Brown**
**Zuckerman Spaeder LLP**
**bbrown@zuckerman.com**

1800 M STREET NW, SUITE 1000 • WASHINGTON,  DC 20036-5807
202.778.1829 direct • 202.320.8369 mobile • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful.  If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

EXHIBIT K

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:     **[IN CHAMBERS] Order Regarding Motion for Sanctions [119]** <mark>Redacted</mark>

Before the Court are disturbing allegations of witness tampering and a request for one of the most drastic sanctions available: dismissal of claims.  Plaintiff and Counter-Defendant Trevor Bauer ("Bauer") moves for sanctions in the form of dismissal of Defendant and Counter-Claimant Lindsey Hill's ("Hill") counterclaims.  (Mot., Dkt. No. 119.)  Hill opposed the motion (Opp'n, Dkt. No. 142) and Bauer responded (Reply, Dkt. No. 154).  The Court heard oral argument on the matter on July 31, 2023.

For the following reasons, the Court **GRANTS in part** Bauer's motion for sanctions.  Hill is hereby **ORDERED** to refrain from any contact with any party or witness in this case without her attorney present in accordance with the directions outlined in this Order.  Any communication between Hill and a party or witness in this case must occur in the presence of Hill's counsel.  Hill may communicate with her father and Decker without her attorney present, but may not discuss the case with them.

## I. BACKGROUND

The circumstances leading to the present motion are lengthy but largely undisputed; the parties merely dispute the facts' context and implications.  Bauer asserts that Hill tampered with four witnesses or potential witnesses in this case: Frank Tortorigi ("Tortorigi"), Jane Roe ("Roe"), Derek Dawson ("Dawson"), and Jane Doe ("Doe").[1]  The Court will recite the relevant contentions for each witness.

---

[1] The Court will refer to two witnesses by Janes Roe and Doe rather than their actual names to preserve their privacy.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
|----------|-------------------------|------|----------------|

| Title | Trevor Bauer v. Lindsey C. Hill et al |
|-------|---------------------------------------|

A. *Frank Tortorigi*

Hill met Tortorigi while they were both working at Lululemon, and the two have been friends since. (Hill Decl. ¶ 26, Dkt. No. 144.) After learning that Bauer intended to subpoena Tortorigi, Hill contacted Tortorigi via direct message on Instagram. The Court has reproduced the message's text below:[2]

> So bauer (the guy I am in a legal battle w) plans on
> subpoenaing you for our text messages from when it happened,
> I'm dying laughing, if you get one just reply to it with "I have
> no access to these materials"
> 1.) they already have all of our messages idk why they are
> asking again
> 2.) who would have access to messages from 2 years ago [two
> laughing-crying emojis]
> But yeah just respond to it saying I have nothing related to this
> that I have in my possession
> So stupid moi I cant. Just know you don't have to do shit for it.
> Also gonna unsend and delete this once u see it [laughing-
> crying emoji]
> Call me if u get one and I'll tell u what to do

(Peyser Decl., Dkt. No. 119-1, Ex. A.)

Hill attests, and Tortorigi confirmed at his recent deposition, that prior to this communication, Hill had not discussed the present lawsuit with Tortorigi. (Hill Decl. ¶ 26; Tortorigi Depo. Tr., Kaplan Decl., Ex. 5, at 66:6–17.) Tortorigi also stated in his deposition that he was unsure of what was going, but that he and Hill did not speak after Tortorigi received a subpoena for documents from Bauer in this case. (Tortorigi Depo. Tr. 67:4–70:6.)

---

[2] Because the precise language used is important for resolution of this motion, the Court will reproduce the text exactly as written, including misspellings and idioms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

After receiving the subpoena, Tortorigi emailed Nell Peyser, counsel for Bauer, that he did not have any responsive documents. (Id. at 72:25–73:3.) Although he emailed Peyser after Hill sent him the above message, Tortorigi stated that Hill's direction did not have any influence on his response to Peyser. (Id. at 74:2–13.) Rather, he did not have any text messages on his phone from the time period he believed the subpoena covered, and went to the Apple Store to get his data recovered. (Id. at 74:13–20.) Tortorigi also set up a call with Peyser because he did not understand what the subpoena requested and needed guidance. (Id. at 75:12–76:7.) After speaking with Peyser on the phone, Tortorigi emailed her the following week stating he still did not have any responsive documents. (Id. at 76:8–12.) Tortorigi had not yet turned over the above Instagram message because, at the time, he did not believe it to be covered by the subpoena. (Id. at 83:3–9.) He interpreted the subpoena to seek only text messages, an impression which he believed was confirmed during his conversation. (Id. at 79:24–80:8.)

Tortorigi ultimately produced responsive message with Hill, including texts from April 2021 which had been recovered by the Apple store as well as Hill's Instagram message to Tortorigi regarding how to handle the subpoena. All messages Tortorigi produced, with the exception of the Instagram message from 2023, were previously produced to the Pasadena Police Department which were then provided to Bauer during the early stages of this case. (Kaplan Decl. ¶ 8, Dkt. No. 143.) Hill has not produced her Instagram messages with Tortorigi to Bauer.

B.   *Jane Roe*

Jane Roe owned and operated a sober living home in San Diego County in which Hill, a recovering alcoholic, resided in between January and August 2020. (Hill Decl. ¶ 16.) Hill planned on working as a resident life director at another sober living home owned and operated by Roe beginning in June 2021. (Id.) Following Bauer's alleged sexual assault on Hill, Hill's relationship with Roe deteriorated due to Roe's unwelcome insertion of herself into the situation. (Id.) According to Hill, Roe provided unsolicited advice to Hill, contacted Hill's father about the situation, and reached out to attorneys about potentially representing Hill and disclosed information about Hill to those attorneys without Hill's knowledge or consent. (Id.) Roe also gave an interview to the Pasadena Police Department in 2021 in which Roe disclosed information about Hill's sexual relationship with a professional baseball player other than Bauer. (Id. ¶ 20.) In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

2021, Hill tried to get Roe to remove herself from the situation and cease her attempts to help; however, Roe purportedly continued to involve herself against Hill's requests, straining Hill's and Roe's relationship. (Id. ¶¶ 18–19.)

In March 2023, Hill's father informed her that Roe had again tried to contact him; on April 10, 2023, Hill learned that Roe had tried to contact Hill's attorneys. (Id. ¶ 21.) In response, Hill sent Roe the following message on April 10, 2023, while intoxicated:

> I just want you to understand- you're fucking evil [Roe]. I despise you, my family despises you and you have zero place in this situation. You make up lies, steal residents advian and total your car, buy ambian in Mexico, and so much more. When I'm asked about you, I will burn you to the fucking ground and expose you just like you think you are doing to me. Everyone in my life and in this case will speak the truth about you

> Don't call my fucking dad anymore, we're on the right side of justice and want you nowhere near it. Evil bitch. I'll have every past resident testify against your character.

(Peyser Decl., Ex. B.)

The following day, Roe contacted Bauer's counsel and informed them that she had received an "over the top, threatening" message from Hill. (Id. ¶ 5.) Roe said she provided the message to Hill's counsel and was retaining her own counsel due to the message. (Id.)

A few days later, Roe received a message from Hill's friend, Olivia Finestead ("Finestead"). (Id., Ex. B.) Although half of the message in the record is obstructed, according to Bauer, the message reflects Finestead reaching out to Roe on behalf of Hill to ask Roe to speak with a reporter about Hill's prior relationship with another baseball player. (Id.; Mot. at 6.) According to Bauer, Finestead said in the obstructed portion of the message that Hill "can't be tied to Trevor with you" and that "we have just have to protect ourselves against Trevor's attorneys and play the game." (Id.)

*C.*     *Derek Dawson*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

Derek Dawson is in a romantic relationship with Hill's former close friend and mentor, Sophie De Silva; Hill also considered Dawson a friend. (Hill Decl. ¶¶ 8, 11.) At and around the time of the alleged sexual assault, Hill sent several texts to Dawson about her encounters with Bauer, including that she "already ha[s] [her] hooks in," that she "can get in [Bauer's] head," and that she would "find pine tar" at Bauer's house. (Peyer Decl., Ex. D.) In the summer of 2021, after Hill's encounters with Bauer, Dawson gave Bauer and an online tabloid publication information about Hill, including the texts she sent around the time of the alleged sexual assault and personal details about Hill's prior sexual history with another professional baseball player. (Hill Decl. ¶ 9.) Hill was upset that Dawson divulged her personal information and was also upset that De Silva continued to side with Dawson. (Id. ¶ 11.)

In early 2023, Hill watched a Pasadena Police Department interview with Dawson that had been produced in discovery in this case. (Id. ¶ 12.) In the interview, Dawson relayed similar information to the police that he had given to Bauer and the tabloid, namely personal information about Hill's sexual history. (Id.) Hill was intoxicated when she watched the video and continued drinking throughout the day until she posted two comments on one of De Silvia's Instagram posts, specifically a Father's Day post from nine months prior. (Peyser Decl., Ex. C.) The comments read:

> Sure would be a shame for me to hand over to you the police footage of his interview I just received where he is defending violent abuse against women. Telling them not to believe me. Go ahead, ask him the real truth. Pretty pathetic you want to raise children with somebody like that. He cant run from the truth of what he did to me and my family anymore.

> before it goes public with court and Bauers side uses it publicly in their defense, I highly advise you have Derek tell you the truth about what he did before you see the video.

(Id.)

Bauer produced this Instagram exchange to Hill's counsel and asked in a Request for Admission that Hill authenticate it. (Id., Ex. J.) Hill's counsel objected that such information was irrelevant and not proportional to the needs of the case. (Id.) Following

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

a meet and confer about the objection, Hill's counsel said they could provide a reply but have not yet done so. (<u>Id.</u> ¶ 8.) On April 14, 2023, Bauer subpoenaed Dawson for documents and a deposition, but Dawson has not responded. (<u>Id.</u> ¶ 7.)

      D.    *Jane Doe*

      Finally, Jane Doe is an acquaintance of Hill's. In 2021, Doe contacted Hill through Instagram and the two sent messages through the app and spoke by phone a few times about personal matters, including about Doe's sex life. (Hill Decl. ¶ 2.) On April 15, 2023, Doe sent a text message to Hill about Mike Clevinger, Finestead's ex-boyfriend and father of her child. (<u>Id.</u> ¶ 3.) Clevinger is a professional baseball player whom Finestead accused of domestic violence and child abuse. (<u>Id.</u>) Doe's text message was critical of Finestead and her allegations that Clevinger had serially cheated on one of his ex-girlfriends. (<u>Id.</u> ¶ 4.) Doe criticized Finestead for accusing Clevinger of this behavior, and Doe suggested that a court would grant Clevinger's request for a restraining order against Finestead. (<u>Id.</u>)

      In response to Doe's message, Hill sent the following text:

> Wait what is that [two laughing-crying emojis]
> Oh you're saying that to me?
> Hahahaha
> No clue why you would be such a blunt cunt with something
> that has nothing to do with you and you have no idea about but
> to each their own [Doe] glad to see you side with the side of the
> abuser
> Don't forget I have all the screenshots of you fucking married
> men
> Go to hell

(Peyser Decl., Ex. F.)

      Doe reported the above message to Bauer's counsel, saying she felt that Hill was trying to get Doe to make false statements. (<u>Id.</u> ¶ 4.) One month after sending the above message, Hill subpoenaed Doe, seeking documents about Bauer "choking or hitting" Doe and any "accusations by [Doe] of physical violence, abuse, sexual battery, sexual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
|---|---|---|---|

| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

abuse, battery, assault, and/or rape made against Trevor Bauer." (Dkt. No. 114–2.)

### E.   Other Witnesses

Bauer also alleges Hill may have influenced or threatened at least four other witnesses to not respond to subpoenas. (Mot. at 8.) Hill's cousin, Kyle Erickson, stated, "I am not in possession of any documents, information, or objects to present in response to the Document Subpoena at this time." (Peyser Decl., Ex. G.) Hill's friend, Justin Vaesau stated, "I don't have any documents associated with Lindsey Hill that date back to that time anymore. My phone settings is set to delete messages after a year because of how fast my storage fills. I know that during the time of the investigation, people from the MLB had a[c]quired what I had, as far as texts between me and Lindsey Hill." (Id., Ex. H, at 1.) Finestead first stated, on March 29, 2023, that "I have no documents relating to your subpoena to be produced." (Id., Ex. I.) After Bauer's counsel emailed Finestead that her deposition was postponed, Finestead replied, "I have nothing for you. I am not meeting with you wasting my time I have nothing at all for your rapist client." (Id.) Hill's AA sponsor, Lisa Decker, has ignored the subpoena, and is in violation of a Court order issued by Magistrate Judge Spaeth requiring her to have produced documents by June 7, 2023. Dkt. 106. At this point, any participation on Hill's part is speculation.

## II. LEGAL STANDARD

The Court may impose sanctions under its inherent authority for "willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)) (cleaned up). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id. at 994. "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that [a party's] conduct 'constituted or was tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (citation omitted).

## III. DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
|---|---|---|---|

| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

    *A.   Witness Tampering*

    Bauer contends that Hill's communications with Tortorigi, Dawson, Doe, and Roe amounted to witness tampering under the standard outlined in 18 U.S.C. § 1512(b). (Mot. at 12.)  Section 1512(b) defines witness tampering as one who "knowingly uses intimidation, threats, or corruptly persuades another person, or attempts to do so . . . with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to" withhold testimony or documents, evade legal proceedings, or be absent from an official proceeding.  18 U.S.C. § 1512(b). Although there is no private cause of action for an alleged violation of § 1512, see Rowland v. Prudential Fin., Inc., 362 Fed. App'x 596, 596–97 (9th Cir. 2010), conduct falling within the statute's ambit may nonetheless be sanctionable pursuant to the Court's inherent power.  See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 602 (9th Cir. 1991);  Equate Media, Inc. v. Suthar, No. 21-314, 2022 WL 2093851, at *2 n.1 (C.D. Cal. Apr. 29, 2022) (noting that witness tampering is sanctionable conduct).

    The Ninth Circuit has not directly addressed which standard should apply to terminating sanctions in civil cases based on witness tampering.  District courts are split on the issue, with some applying a preponderance standard, see OmniGen Research v. Yongqiang Wang, 321 F.R.D. 367, 372 (D. Or. 2017), while others apply a clear and convincing standard, see Hynix Semiconductor inc. v. Rambus Inc., 897 F. Supp. 2d 939, 978 (N.D. Cal. 2012).  The Court will apply a clear and convincing standard, in accordance with the evidentiary burden required in other civil sanctions contexts, such as civil contempt.  See Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth., 564 F.3d 1115, 1123 (9th Cir. 2009) (applying a clear and convincing standard to civil contempt motion); Onion Boy v. Mike's Bulk Dist., No. 11-1118 (JVS), 2021 U.S. Dist. LEXIS 252490, at *4–5 (C.D. Cal. Nov. 3, 2021) (same).

    To meet the clear and convincing standard, the moving party must "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable."  Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal quotation marks and citation omitted).  Sanctions "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the [non-moving party's] conduct." Taggart v. Lorenzen, 139 S. Ct. 1795, 1801–02 (2019) (cleaned up).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

Bauer argues that Hill's conduct constitutes witness tampering because she knowingly engaged in conduct she knew was wrong, something she herself admits. (Mot. at 13; Reply at 3–4.)  This contention combines two separate requirements in the statute, "knowingly" and "with intent to," both of which must be satisfied.  Bauer asserts that "[i]ntent under [§] 1512 is satisfied by 'consciousness of wrongdoing.'"  (Reply at 3.)  However, the case to which Bauer cites for this proposition, United States v. Doss, 630 F.3d 1181,1188 (9th Cir. 2011), discusses a different requirement for witness tampering: "knowingly."  In addition to the statute's mandate that the conduct be done "knowingly," or with "'conscious[ness] of wrongdoing,'" § 1512 also requires the individual engage in such conduct "with intent to" tamper with witnesses.  See 18 U.S.C. § 1512(b); Doss, 630 F.3d at 1188–89 (quoting Arthur Anderson LLP v. United States, 544 U.S. 696, 705–06 (2005)).  When used in a criminal statute, "intent," of course, requires purpose to bring about the desired result—in this case, purpose of preventing witnesses from testifying or turning over documents.  Put differently, "to say that a person acted 'intentionally' means that he or she acted with a conscious objective to cause a result or to engage in the conduct described." 21 Am. Jur. 2d Crim. Law § 126. With the exception of Roe, the evidence does not reflect that Hill possessed the requisite intent to rise to the level of witness tampering.  See Hernandez v. Franco Am. Baking Co., No. 20-628, 2021 WL 6064008, at *3 (D. Nev. Dec. 21, 2021).

Beginning with Doe, the parties appear to agree that Hill's messages to Doe pertained to an entirely different matter—a potential restraining order between Finestead (Hill's friend) and Clevinger (Finestead's ex-boyfriend). (Mot. at 7, 14; Opp'n at 4.) Accordingly, Hill almost certainly did not intend for her messages to persuade Doe to do, or not do, anything related to the present case.  Even still, Bauer argues that Hill's threats to Doe rose to the level of witness tampering because, "[a]t the time Hill made the threat, Hill knew Doe was a potential witness for Hill." (Mot. at 15.)  Indeed, Hill subpoenaed Doe one month later for documents that Bauer sexually assaulted Doe.  (Id.)  Bauer also asserts that Doe reported Hill's messages to Bauer's counsel, concerned that Hill was pressuring her to say things that were not true.  (Id.)  While these contentions certainly provide support for Bauer's position, they do not provide clear and convincing evidence of witness tampering.  While Hill knew Doe could be a potential witness in this case (see Peyser Decl., Ex. L), the testimony Doe had previously given to the Pasadena Police Department, which presumably would be the same testimony she would give before this Court, was helpful to Hill and hurtful to Bauer.  Specifically, Doe told police ████████

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:22-cv-00868-JVS (ADS)　　　　Date　August 4, 2023

Title　Trevor Bauer v. Lindsey C. Hill et al

██████████████████████████████████████████████████

████████████ Doe further told police that ███████████████

██████████████████████████████████████████████████

███████████████████████████████ This testimony would tend to confirm Hill's account of events, and thus Hill had no reason to convince Doe to not testify or change her testimony. Furthermore, the context Hill provides in her declaration sufficiently tips the scale such that "there is a fair ground of doubt as to the wrongfulness of [Hill's] conduct." Taggart, 139 S. Ct. at 1801–02. Accordingly, the Court concludes that Hill did not tamper with Doe.

Similarly, the Court finds that Bauer has not shown by clear and convincing evidence that Hill intended to prevent Dawson from testifying. First and foremost, Hill's message does not threaten to publicly release the Pasadena Police Department interview footage. Rather, Hill's message states "it would be a shame for me [Hill] to hand over to you [Da Silvia]" the police footage and that Bauer, not Hill, would make the video public by using it as evidence. (Peyser Decl., Ex. C.) Thus, there is no threat to reveal private information publicly. Second, Hill's Instagram comment does not appear to be directed at Dawson's testimony in this case. Rather, it pertained to Hill's disappointment with Da Silvia's continued support of Dawson. Dawson had disclosed personal information about Hill to a tabloid and Bauer's counsel, the former publishing it in an unflattering article about Hill. (Hill Decl. ¶ 9, Exs. 1–2.) Hill's strong feelings on this issue resurfaced when she reviewed footage of Dawson's interview with the Pasadena Police Department in which Dawson relayed the same personal information to the police. (Id. ¶ 12.) Finally, Bauer contends that because Dawson has not yet responded to Bauer's subpoena for documents, Hill's message must have frightened Dawson enough that he is ignoring the subpoena. However, that contention is speculative and not supported by evidence. As noted above, Hill did not intend for her message to cause Dawson to testify in a certain way, or not testify at all. See 18 U.S.C. § 1512(b) (requiring intent to interfere with a witness). Accordingly, the Court finds that Hill did not tamper with Dawson through Da Silvia.

Hill's communications with Roe and Tortorigi are more troubling. Regarding Tortorigi, Hill's message tells Tortorigi how to respond to Bauer's subpoena: by "saying I have nothing related to this that I have in my possession." (Peyser Decl., Ex. A; Tortorigi Depo. at 92:10–13.) Bauer contends this is a clear direction to withhold evidence because Hill knew Bauer had responsive documents and told Tortorigi to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
|---|---|---|---|

| Title | Trevor Bauer v. Lindsey C. Hill et al |
|---|---|

"falsely tell Bauer's counsel he did not have them." (Mot. at 12–13.) Hill responds that she did not intend for Tortorigi to withhold any documents; her message was intended to communicate her belief that Tortorigi had already turned over all responsive documents in his possession and that he did not have to do anything else to comply with the subpoena. (Hill Decl. ¶¶ 30–32.) Although Hill certainly should not have told Tortorigi how to respond to the subpoena, well-intentioned or otherwise, the evidence before the Court tends to support Hill's explanation. Tortorigi did, in fact, turn over all communications with Hill to the Pasadena Police Department during their initial investigation in 2021. (See Kaplan Decl. ¶ 8.)

Furthermore, Tortorigi testified that he attempted in good faith to comply with the subpoena, and did not withhold any documents at Hill's behest or otherwise. He even went as far as to have Apple technicians recover two-year-old text messages from his phone to which he no longer had access. (Tortorigi Depo Tr. 74:13–20.) Although Tortorigi initially informed Peyser he did not have any responsive documents, he testified that Hill's direction did not have any influence on his response to Peyser. (Id. at 74:2–13.) His belief that her statement bore no relevance to the request for documents tends to confirm her statement was not objectively received as an instruction, but rather a point of clarity. Tortorigi did not have any text messages on his phone from the time period he understood the subpoena to cover, and went to the Apple Store to get his data recovered. (Id. at 74:13–20.) Tortorigi also set up a call with Peyser because he did not understand what the subpoena requested and needed guidance. (Id. at 75:12–76:7.) After speaking with Peyser on the phone, Tortorigi emailed her the following week again stating he still did not have any responsive documents. (Id. at 76:8–12.) Tortorigi had not yet turned over the above Instagram message because, at the time, he did not believe it to be covered by the subpoena. (Id. at 83:3–9.) He interpreted the subpoena to seek only text messages, an impression which he believed his conversation with Peyser to confirm. (Id. at 79:24–80:8.)

The Court finds no reason to doubt the veracity of Tortorigi's or Hill's testimony. As such, his explanation shows that no documents were actually withheld. Furthermore, as noted above, Hill's direction can plausibly be read according to Hill's explanation—that she believed Tortorigi had already handed over all responsive documents and thus had no further obligations. (Hill Decl. ¶¶ 30–32.) Bauer contends that Tortorigi undisputedly possessed responsive documents and "Tortorigi testified that he was 'shocked' by Hill's instructions," which he understood as Hill telling him "to say

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
|---|---|---|---|

| Title | Trevor Bauer v. Lindsey C. Hill et al |
|---|---|

[he] didn't have anything." (Reply at 5 (quoting Tortorigi Depo. at 67:11–13;
92:10–13).) Therefore, Bauer argues, Hill's message cannot be read as anything other
than an explicit instruction to withhold responsive documents. (Id.) While Tortorigi
indeed testified that he was shocked by Hill's message, Bauer's contention misstates
Tortorigi's meaning by taking it out of context. When initially asked why he was
"shocked" when he received Hill's message, Tortorigi explained that he "didn't think
that [he] would be sitting here today doing this" because he had not had "any contact as
much about it with, you know, her side." (Tortorigi Depo. at 65:7–17.) Tortorigi further
explained this statement by saying he did not know what was "going on," he had "never
been subpoenaed in [his] life," and he believed he did not have any responsive
documents. (Id. at 68:11–13; 76:8–20.) He further stated he was "shocked" when he
received the subpoena, describing the experience as "embarrassing" because he was
served with it at work. (Id. at 70:8–9.) Therefore, Tortorigi's "shock" at Hill's message
is more accurately understood within his overall disbelief that he was again being
involved in the case and that he was receiving a subpoena at all. Finally, although Hill
stated she would delete the exchange, it appears she did not do so because Tortorigi was
still able to access it in order to hand it over to Bauer.[3] Taken together, Bauer has not
met his burden to show witness tampering by clear and convincing evidence.
Nevertheless, even without the intent to persuade Tortorigi to withhold documents, Hill's
communication with a witness regarding how to respond to a subpoena was undoubtedly
improper, which she herself admits. (Id. ¶ 31.) The Court will discuss the appropriate
sanction proportionate to this conduct below.

Finally, with regard to Roe, Hill's communications certainly cross lines of civility;
however, they do not rise to the level of witness tampering. Bauer contends that Hill's
text messages in essence threatened to "burn" Roe "to the fucking ground," including by
disclosing personal information about Roe's alleged drug abuse and recruiting others to
"testify against [Roe's] character. (Peyser Decl., Ex. B.) Bauer argues these messages
"can only be understood as Hill telling roe not to participate in this matter." (Mot. at 14.)
In response, Hill again asserts she did not intend to threaten Roe or dissuade her from

---

[3] At oral argument, Bauer suggested that Hill may have deleted the message from her own inbox
even though Tortorigi still had access to the Instagram message because Hill had not blocked Tortorigi
or removed him as a follower. However, it is well-known that when one Instagram user deletes a
message in a direct message thread, the message is deleted for all members of the conversation. Thus,
because Tortorigi still had access to the message indicates that Hill did not, in fact, delete the message.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

providing testimony. (Hill Decl. ¶¶ 22–23.) According to Hill, her message was an emotional and drunken response to Hill's perception that Roe was attempting to involve herself in Hill's personal life against Hill's wishes. (Id.) Hill attests that, when she sent the message, she only wanted to express her anger at Roe's uninvited involvement and was not thinking about testimony Roe may or may not provide in this lawsuit. (Id.)

Hill's messages were ill-advised and highly inappropriate, particularly in the context of ongoing litigation—litigation with which Roe is at least partially connected. Hill's comment that she will have "every past resident testify against [Roe's] character" and will "burn [Roe] to the fucking ground" can hardly be interpreted as anything other a threat to expose personal information and rally people to testify against Roe's character. Hill's explanations do not present a plausible alternative reading. She attests that her messages were "wrong and hurtful," although she "was not trying to influence Roe to provide certain testimony or information." However, it is difficult to interpret the statement that Hill didn't "want [Roe] anywhere near" this case, and if Roe continued to be involved in it, Hill would muster witnesses against Roe and "expose" sensitive and personal information about Roe as anything other than Hill's desire for Roe to cease any and all participation in the case. (Peyser Decl., Ex. B.) Although no evidence or testimony was lost because of Hill's message, the Court nonetheless concludes that Hill's messages to Roe constitutes sanctionable conduct. See InjuryLoans.com, LLC v. Buenrostro, No. 18-1926, 2020 WL 9160827, at *2 (D. Nev. Sept. 28, 2020) ("It is beyond doubt that witness intimidation satisfies the bad faith element of a motion for sanctions.") (citing 18 U.S.C. § 1512(b))).

> B.    *Appropriate Sanctions*

Even absent a finding that Hill intentionally engaged in witness tampering, the Court finds that Hill's communications, if permitted to continue unchecked, could interfere with the full and fair determination of this case. Although Bauer contends that terminating sanctions is the only appropriate remedy for Hill's misconduct, the Court will not exercise its inherent power to dismiss Hill's counterclaims based on the conduct presented.

Terminating sanctions is a "harsh penalty" and "should only be imposed in extreme circumstances." Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992) (citing Hamilton Copper & Steel Corp. v. Primary Steel, Inc., 898 F.2d 1428, 1429 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

1990); Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)). It is appropriate only when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings ... and engaged in conduct utterly inconsistent with the orderly administration of justice." Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (quotation omitted). Due process concerns also mandate a connection between a party's "misconduct and the matters in controversy such that the transgression 'threatens to interfere with the rightful decision of the case.'" Anheuser-Busch, Inc. v. Nat. Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (internal citation and quotation marks omitted).

When contemplating whether to impose terminating sanctions, the Court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). "[T]he first and second factors ordinarily will support the sanction while the fourth factor ordinarily will not. The third and fifth factors are generally determinative." Johnson v. Goldsmith, 542 F. App'x 607, 608 (9th Cir. 2013). "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" Conn. Gen. Life Ins. Co., 482 F.3d at 1097.

Regarding the third factor, the Court finds that Bauer has suffered little, if any, prejudice due to Hill's communications. As discussed above, there is no objective indication that any of Hill's communications actually resulted in evidence or testimony being withheld. Bauer points to some instances of witness either not responding to subpoenas (Dawson and Decker) or responding that they do not have any responsive documents (Erickson, Vaesau, and Finestead). Regarding Dawson, the Court concludes Hill's message to De Silvia, while uncouth and inappropriate, did not rise to the level of sanctionable conduct. Hill's message did not threaten Dawson directly, nor did it threaten to publicly release the Pasadena Police Department interview footage. Dawson's failure to respond to Bauer's subpoena cannot therefore be reasonably attributed to Hill's contact with Dawson's partner. As to Decker, Erickson, Vaesau, and Feinstein, Bauer does not present any evidence that Hill contacted them at all, much less that the contents of such communications constituted threats or intimidation. Accordingly, they cannot serve as the basis of a sanctions motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |

| | |
|---|---|
| Title | Trevor Bauer v. Lindsey C. Hill et al |

Additionally, there is a multitude of less drastic sanctions available. Because this is the first time the Hill's improper communications with witnesses has been brought before this Court, the Court is unwilling to exercise its inherent authority to issue case-terminating sanctions at this point. Instead, the Court will tailor the remedy to the problem: Hill's improper communications with witnesses. Bauer contends that dismissing Hill's counterclaims is the only sanction that can remedy the situation, directing the Court to <u>Torres v. Wells Fargo Bank</u>, No. 17-9305, 2019 WL 8012686 (C.D. Cal. Dec. 17, 2019). There, the court granted terminating sanctions where the plaintiff threatened to take steps to have a witness fired from his job, apparently in retaliation for the witness's failure to provide favorable testimony or sign a declaration that the witness believed contained factual inaccuracies. <u>Id.</u> at *3–4. While the court in that case no doubt properly exercised its discretion in handing down such severe sanctions, and there are similarities between the statements in both cases, the Court declines to exercise its authority to dismiss Hill's counterclaims. As noted above, this is the first instance the issue as arisen before this Court and the Court will provide Hill an opportunity to correct her conduct.

Accordingly, the Court hereby **ORDERS** Hill to refrain from communicating in any manner with any witness in this case outside the presence of her attorney. This order applies to all witnesses, including those with whom Hill is friends and those who she does not know personally. Excluded from this prohibition are Hill's father and Hill's roommate, Lisa Decker—Hill may speak to her father and Decker, but is prohibited from speaking with them about this case outside the presence of her counsel. The Court admonishes Hill to take great care with her words in the future. Should this issue arise, the Court will consider more severe sanctions against Hill, including terminating sanctions. The Court will additionally permit Bauer at trial to inquire into Hill's conduct with respect to Dawson, Tortorigi, Doe, and Roe. It evidences potential bias and potential admission of wrongdoing on Hill's part. Provided such examination is limited in time and scope, it is more probative than prejudicial. <u>See</u> Fed. R. Evid. 403.

**IV. CONCLUSION**

For the forgoing reasons, the Court **GRANTS in part** Bauer's motion for sanctions. Hill is hereby **ORDERED** to refrain from any contact with any party or witness in this case without her attorney present in accordance with the directions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00868-JVS (ADS) | Date | August 4, 2023 |
| Title | Trevor Bauer v. Lindsey C. Hill et al | | |

outlined in this Order.  Any communication between Hill and a party or witness in this case must occur in the presence of Hill's counsel.  Hill may communicate with her father and Decker without her attorney present, but may not discuss the case with them.

**IT IS SO ORDERED.**