Bryan J. Freedman, Esq. (SBN: 151990)
bfreedman@ftllp.com
Jesse A. Kaplan, Esq. (SBN: 255059)
jkaplan@ftllp.com
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Defendant and Counterclaimant
Lindsey C. Hill and Non-Party Bryan Freedman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

TREVOR BAUER,

Plaintiff,

vs.

LINDSEY C. HILL AND NIRANJAN FRED THIAGARAJAH,

Defendant.

LINDSEY C. HILL,

Counterclaimant,

vs.

TREVOR BAUER,

Counter-defendant.

Case No. 8:22-cv-00868 JVS (ADSx)

[Assigned to Hon. James V. Selna Referred to Magistrate Judge Autumn D. Spaeth]

**DISCOVERY MATTER: DECLARATION OF JESSE KAPLAN IN OPPOSITION TO BAUER'S MOTION TO COMPEL THIRD-PARTY PRODUCTION AND HILL TO ANSWER QUESTIONS**

[Joint Stipulation Regarding Bauer's Motion to Compel filed concurrently]

Hearing Date: October 11, 2023
Time: 10:00 a.m.
Courtroom: 6B

Action Filed: April 25, 2022
Discovery Deadline: September 1, 2023
Pretrial Conference: January 22, 2024
Trial Date: February 13, 2024

# DECLARATION OF JESSE KAPLAN

I, Jesse A. Kaplan, declare as follows:

1. I am an attorney at law, licensed to practice in the State of California. I am a partner of Freedman + Taitelman, LLP ("F+T"). I have personal knowledge of the facts stated herein and, if called upon to testify, could and would testify competently thereto.

2. I have obtained certain documents that were filed in a certain legal proceeding in Los Angeles Superior Court whereby Lindsey Hill sought a Domestic Violence Restraining Order against Trevor Bauer (the "DVRO Proceeding"). Specifically, I have obtained the following document from the DVRO Proceeding:

a) Bauer's *Ex Parte* Motion to Compel Production of Documents dated August 6, 2021, a true and correct copy of which is attached hereto as **Exhibit 1**;

b) Hill's Opposition to Bauer's *Ex Parte* Motion to Compel Production of Documents, a true and correct copy of which is attached hereto as **Exhibit 2**;

c) Bauer's Motion to Compel Production of Documents dated August 13, 2021, a true and correct copy of which is attached hereto as **Exhibit 3**; and

d) Hill's Opposition to Bauer's Motion to Compel Production of Documents, a true and correct copy of which is attached hereto as **Exhibit 4**.

3. Pursuant to an earlier subpoena in this litigation, Bryan Freedman previously produced to Bauer the portion of the July 5th text message whereby Hill transmitted the Snapchat Video to Freedman. I produced that portion of text message on behalf of Freedman. The July 5th text message that attached the Snapchat Video did not contain any written content.

4. On August 29, 2023, Hill appeared for her deposition. Portions of Hill's deposition transcript is attached hereto as **Exhibit 5**.

5. Bauer's counsel provided Hill's counsel with Bauer's portion of the Joint Stipulation related to this Motion to Compel the evening of Friday September 1, 2023.

6. On August 30, 2023, Bauer's counsel, Blair Brown, requested a meet and confer call to discuss a potential motion to compel Hill's communications with counsel and a motion to compel an IME. He requested that the meet and confer call be at 11:00 am which would be around the time that another hearing in this case that I was attended would be concluding. I was not prepared or available for that call. Additionally, my co-counsel Michelle Prescott was not available for the call. Someone from my co-counsel's office, however, sent a dial-in number for the call even though we were not available. At 11:00 am, I briefly spoke with Mr. Brown from my car and told him that: (a) Bauer's request for a meet and confer did not contain adequate information as required by L.R. 37-1; and (b) that we were not available at that time, and would need to schedule the call once we received more information about the contemplated motions.

7. On September 5, 2023, I attempted to meet and confer by telephone with Bauer's counsel, Blair Brown, about the Motions to Compel. In particular, I discussed why the motions were moot. Following that I call, I sent Brown an e-mail memorializing that portion of the call and summarizing why the motions were moot. On September 7, 2023, Brown responded to my e-mail and stated that Bauer did not intend to withdraw his motion(s). A true and correct copy of that e-mail is attached hereto as **Exhibit 6**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 8th day of September, 2023, at Los Angeles, California.

Jesse A. Kaplan

# EXHIBIT 1

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
SHAWN HOLLEY (SBN 136811)
sholley@kwikhlaw.com
KATE MANGELS (SBN 301811)
kmangels@kwikhlaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 566-9800
Facsimile: (310)566-9850

ZUCKERMAN SPAEDER LLP
JON R. FETTEROLF (admitted *pro hac vice*)
jfetterolf@zuckerman.com
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

Attorneys for Respondent TREVOR BAUER

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| LINDSEY HILL,<br><br>Petitioner,<br><br>vs.<br><br>TREVOR BAUER,<br><br>RESPONDENT. | CASE NO. 21STRO03198<br><br>**RESPONDENT TREVOR BAUER'S *EX PARTE* NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date: August 9, 2021<br>Time: 8:30 a.m.<br>Dept.: 35<br><br>Action Filed: June 29, 2021<br>Hearing Date: August 16, 2021 |

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 9, 2021, Respondent Trevor Bauer will move *ex parte* to compel the production of certain medical records, photographs, and communications.

This motion is made pursuant to California Code of Civil Procedure § 2017.010, California Law, all other applicable provisions of statutory and common law, and the inherent powers of this Court. This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jon Fetterolf, all of the pleadings and records on file in this action, and on such other and further oral and documentary evidence as may be presented at or before the hearing of this matter.

DATED: August 6, 2021

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP

By: ______________________

Shawn Holley
Kate Mangels
Attorneys for Respondent
TREVOR BAUER

DATED: August 6, 2021

ZUCKERMAN SPAEDER LLP

By: ______________________

Jon R. Fetterolf
Attorneys for Respondent
TREVOR BAUER

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Respondent Trevor Bauer ("Respondent") hereby requests a Court order compelling Petitioner Lindsey Hill ("Petitioner") to produce outstanding medical records, native and digital images of photographs, communications with intended witnesses and persons with information about the alleged incident, and Instagram video messages sent to Respondent by no later than August 12, 2021.

## II. PROCEDURAL BACKGROUND

On June 29, 2021, Petitioner filed a request for a domestic violence restraining order (the "Request"). Petitioner was granted an *ex parte* Temporary Restraining Order on that same date and a hearing request was set for July 23, 2021 (the "July Hearing"). The evening before the July Hearing, Petitioner circulated her Exhibit and Witness Lists, which indicated that Petitioner intended to call a total of nine witness and to introduce a host of medical records. Because Petitioner had not provided complete records in advance of the July 23 Hearing, the Hearing was continued to August 2, 2021. On July 27, 2021, having still not received complete medical as well as other records, Respondent moved for a continuance of the Hearing so it could receive those records sufficiently in advance of the hearing date. Accordingly, the Court continued the hearing until August 16, 2021 (the "August Hearing"). Since the hearing date, Petitioner has since provided the complete copies of what were the incomplete medical records she initially attached to her DVRO petition, but has not provided all medical records in her possession related to the alleged incident.

On August 3, 2021, Respondent sent a request to Petitioner for documentation including: (1) complete medical records, to include the results of any follow-up tests and examinations stemming from the alleged incident; (2) communications between Petitioner and two individuals she intends to call as witnesses at the August Hearing, as well as one individual with whom Petitioner spoke the day after the alleged incident; and (3) two videos sent by Petitioner to

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Respondent via Instagram direct message. *See* Fetterolf Decl., Ex. A. Respondent sent a second request on August 4, 2021, seeking native and digital images of the photographs included in Petitioner's Request. *Id.*, Ex. B. Petitioner has failed to respond to either request. With just ten days until the hearing, Respondent continues to be hamstrung by Petitioner's refusal to provide documents essential to his defense. Accordingly, the Court should compel Petitioner to produce the requested documents.

## III. THE RECORDS ARE RELEVANT TO RESPONDENT'S DEFENSE

California Code of Civil Procedure § 2017.010 provides that Respondent is entitled to "discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." As set forth below, the documents requested are relevant to the instant dispute.

First, Respondent has requested pertinent medical records that have yet to be provided. Following the July Hearing, Petitioner provided the complete copies of the incomplete medical records initially included as exhibits to her Request; however, those records indicate that physicians at both Scripps Clinic Carmel Valley and Alvarado Medical Center ordered multiple follow-up tests and examinations.[1] Respondent must be permitted to examine all medical records, including any follow-up examinations and testing, resulting from the alleged incident to

---

[1] Petitioner's medical records state that physicians ordered at least the following:

- MRI Brain Without Contrast – referenced in 6/3/21 Scripps Progress Notes
- MRI Face Without Contrast - referenced in 6/3/21 Scripps Progress Notes
- CBC With Differential Order - referenced in 6/3/21 Scripps Progress Notes
- Comprehensive Metabolic Panel - referenced in 6/3/21 Scripps Progress Notes
- Herpes simplex virus antibody – referenced in 6/3/21 Scripps Progress Notes
- Urinalysis with Microscopic Culture – referenced at AH 53
- Results of STD Screening - referenced in 6/3/21 Scripps Progress Notes
- Face and Brain MRIs referenced in text communications between Petitioner and Mely Maya on 6-21
- Psychological testing referenced and recommended in 6/3/21 Scripps Progress Notes

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

adequately prepare his defense, not just those that Petitioner's counsel deem relevant by attaching to the DVRO petition.[2] Regardless of whether witnesses from these entities testify at the Hearing, to the extent *any* medical professionals provide testimony, medical records relating to the incident are relevant to their examination.

Second, central to this case are several photographs that Petitioner attached to her Request. Those images were in PDF format. Respondent has requested the native and digital images of those photos—and any photographs that Petitioner or her lawyers provided to the media—to examine the time, place, and manner of the images compared to her statements in her affidavit. Additionally, in an era when modification of photographs can be completed in an instant with just a few swipes, such discovery is particularly important to preparing Respondent's defense, as when compared to the photograph images that the parties received along with the SART report, the images Petitioner submitted with her Request appear to be modified, altered or filtered, and a forensic analysis of the native and digital images will allow Respondent to make this determination.

Third, Petitioner's Witness List contains a total of nine witnesses, including her friend, Ciramely Maya, and her father, Richard Hill.[3] *See* Fetterolf Decl., Ex. C. According to the witness list, Ms. Maya and Mr. Hill intend to testify as to their "opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent." *Id.* Respondent requested Petitioner's communications with each of these witnesses from the period April 18, 2021 to the

---

[2] Respondent served business records subpoenas on Scripps Clinic Carmel Valley, Alvarado Medical Center, and Palomar Health, with a return date of August 2, 2021. To date, Respondent has not received records from those entities, although he continues to seek responsive documents.

[3] Petitioner's Witness List also included a proposed expert, Dr. Ellen Stein. On August 3, 2021, Respondent filed a motion in limine to exclude the testimony of Dr. Stein, on the grounds that her testimony is outside the scope of the instant hearing and constitutes inappropriate expert testimony. As set forth in that motion, to the extent the Court does not grant the Motion to Strike, Petitioner must, at minimum, provide Respondent with information regarding the proposed testimony, the expert's qualifications as well as other documents traditionally provided as part of expert discovery.

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

present.[4] In addition to communications with Mr. Hill and Ms. Maya, Respondent requested communications between Petitioner and Lisa Jackson from April 18, 2021 to the present. Petitioner's Request states that she spoke with Ms. Jackson the day following her May 16, 2021 interaction with Respondent. Respondent has been trying to serve a document subpoena on Ms. Jackson since July 14, 2021, but to-date, she has evaded service. Petitioner's communications with each of these individuals, with whom she shared intimate details about her interactions with Respondent are particularly important in light of messages Petitioner sent to other friends and family members detailing the nature of interactions with Respondent, including messages where she stated that the interactions between her and Respondent were consensual.

Finally, Respondent has requested that Petitioner provide two videos that she sent to him via Instagram direct message where she laughingly points to bruises on her body that she claims resulted from her first sexual encounter with Mr. Bauer. Because these two individuals no longer follow one another on Instagram, Mr. Bauer no longer has access to these relevant videos. Specifically, Respondent has requested the following two videos:

- The video Petitioner sent Respondent on 4/29/21 at 9:38 a.m. She later refers to that is on the video as "I have no idea probably your thumb lol Just a bruise in the shape of fingerprint.)"

- The video Petitioner sent Respondent on 4/29/21 at 11:24 a.m. She later writes "Right by my prized possession."

The text accompanying the two videos suggests that they may contain information relevant to Petitioner's claims regarding her first encounter with Respondent and as such, he is entitled to production of those videos.

---

[4] Respondent issued a document subpoena to Ms. Maya; however, in her response, Ms. Maya notified Respondent that her mobile settings cause her messages to automatically delete after a period of 30 days. Accordingly, Respondent has access to Ms. Maya's communications with Petitioner for only a fraction of the relevant period.

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## IV. CONCLUSION

Based on the foregoing, Respondent requests that the Court grant Respondent's motion to compel production of documents by no later than August 12, 2021.

DATED: August 6, 2021

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP

By: ______________________
Shawn Holley
Attorney for Respondent
TREVOR BAUER

DATED: August 6, 2021

ZUCKERMAN SPAEDER LLP

By: ______________________
Jon R. Fetterolf (admitted *pro hac vice*)
Attorney for Respondent
TREVOR BAUER

30744-00002/749203.1

7883330.1

6

RESPONDENT TREVOR BAUER'S *EX PARTE* MOTION TO COMPEL PRODUCTION OF DOCUMENTS

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**DECLARATION OF JON R. FETTEROLF**

I, Jon R. Fetterolf, declare as follows:

1. I am an attorney at law admitted *pro hac vice* in this matter. I am a partner with the law firm of Zuckerman Spaeder, counsel for Trevor Bauer. Unless stated otherwise, I have personal, first-hand knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to those facts under oath.

2. Attached as Exhibit A is a true and correct copy of a letter dated August 3, 2021, from Jon Fetterolf to Marc Garelick.

3. Attached as Exhibit B is a true and correct copy of a letter dated August 4, 2021, from Jon Fetterolf to Marc Garelick.

4. Attached as Exhibit C is a true and correct copy of Petitioner's Witness List.

5. On August 6, 2021, at 9:30 am., counsel for Respondent notified counsel for Petitioner of Respondent's intention to appear *ex parte* on Monday August 9, 2021. As of the time of the filing, Petitioner had not expressed their opinion on this motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed August 6, 2021, at Washington, D.C.

DATED: August 6, 2021

ZUCKERMAN SPAEDER LLP

By:

Jon R. Fetterolf (admitted *pro hac vice*)
Attorney for Respondent
TREVOR BAUER

# EXHIBIT A



Jon R. Fetterolf
PARTNER
Zuckerman Spaeder LLP
jfetterolf@zuckerman.com
(202) 778-1880

August 3, 2021

**VIA E-MAIL**

Marc H. Garelick, Esq.
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, CA 90067
mg@molfamlaw.com

Re: **Petitioner's Exhibits and Witness List**

Dear Marc:

I write to follow up on some remaining and additional discovery issues.

First, on your Witness List you included Ciramely Maya as an individual who may provide testimony. As you are aware, we have subpoenaed Ms. Maya and we have now received some materials from Ms. Maya last week that we have provided you. Ms. Maya, however, noted that due to her iCloud settings, her phone only keeps materials for 30 days. Because Ms. Maya is listed as a witness for Ms. Hill, and Ms. Hill has these same communications on her phone, please provide all communications between Ms. Hill and Ms. Maya for the missing period, which is April 18, 2021 through June 18, 2021.

Second, because Ms. Hill and Mr. Bauer are no longer connected on Instagram, Mr. Bauer cannot access the videos and photos that Ms. Hill sent him during these communications. As such, can you please provide us the following:

- The video she sent Mr. Bauer on 4/29/21 at 9:38 a.m. She later refers to that video as "I have no idea probably your thumb lol Just a bruise in the shape of fingerprint.)"

- The video she sent Mr. Bauer on 4/29/21 at 11:24 a.m. She later writes "Right by my prized possession."

Third, you have listed Petitioner's Father, Richard Hill, as a potential witness at the hearing.  Please provide all communications between Mr. Hill and Petitioner from April 18, 2021 to the present

Fourth, you are aware that Respondent has been trying to serve a document subpoena on Lisa Jackson since July 14.  To date, even though we have located Ms. Jackson, she has successfully evaded service.  While we are continuing our efforts to serve Ms. Jackson, since Ms. Jackson (Lisa M) is referenced in Petitioner's DVRO affidavit as a person she spoke with on May 17, 2021, Ms. Hill's communications regarding Respondent and her encounters with him are relevant to the upcoming hearing.  As such, please provide us the communications between Ms. Hill and Lisa Jackson from April 18, 2021 to the present.

Lastly, while it appears with your production last week that we have the complete copies of the partial medical records that you included as Exhibits to the DVRO petition, we still do not have a number of other medical records that are referenced within these records.  Listed below are the medical records referenced in the records provided.  Please provide these medical records, along with any other medical records in your possession relating to Ms. Hill's visits to Scripps, Alvarado Hospital, her SANE or SART examination, her primary care physician Dr. Valerie Pitis, or to any other medical provider from May 16, 2021 to the present.

- MRI Brain Without Contrast – referenced in 6/3/21 Scripps Progress Notes
- MRI Face Without Contrast - referenced in 6/3/21 Scripps Progress Notes
- CBC With Differential Order - referenced in 6/3/21 Scripps Progress Notes
- Comprehensive Metabolic Panel - referenced in 6/3/21 Scripps Progress Notes
- Herpes simplex virus antibody – referenced in 6/3/21 Scripps Progress Notes
- Urinalysis with Microscopic Culture – referenced at AH 53
- Results of STD Screening - referenced in 6/3/21 Scripps Progress Notes
- Face and Brain MRIs referenced in text communications between Petitioner and Mely May on 6-21 (appear to have been done that day)
- Psychological testing referenced and recommended in 6/3/21 Scripps Progress Notes

While we have subpoenaed the following entities for some of this information--including Alvarado Hospital, Palomar Health, and Scripps--we are still awaiting responses.  We will of course provide copies of any of the materials we receive from these entities in responding to our subpoenas.

Because the documents referenced above should be in Ms. Hill's custody and control, please provide them no later than August 5, by 12 p.m. so we can timely assess the production and raise any deficiencies with the Court.

MR. MARC GARELICK
AUGUST 3, 2021
PAGE 3

Please let me know if you have any questions.

Sincerely,

Jon R. Fetterolf

cc:     Shawn Holley (sholley@kwikhlaw.com)

# EXHIBIT B



Z
ZUCKERMAN
SPAEDER

Jon R. Fetterolf
PARTNER
Zuckerman Spaeder LLP
jfetterolf@zuckerman.com
(202) 778-1880

August 4, 2021

**VIA E-MAIL**

Marc H. Garelick, Esq.
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, CA 90067
mg@molfamlaw.com

Re: **Petitioner's Exhibits and Witness List**

Dear Marc:

I write to follow up on an additional discovery issue. For all the photos attached as exhibits to Ms. Hill's DVRO affidavit, please include the native and digital images of the photos contained in Exhibit 4, Exhibit 5 (multiple photos) and Exhibit 7. The digital and native images of these photos are needed to examine the time, place, and manner of these images. In addition, to the extent any additional photos of Ms. Hill were provided by Ms. Hill or her lawyers to the media beyond those referenced in the affidavit, please provide the native and digital images of these photos.

We look forward to receiving these photos promptly.

Sincerely

Jon R. Fetterolf

cc: Shawn Holley (sholley@kwikhlaw.com)

# EXHIBIT C

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, California 90067
Tel: (310) 277-9747
Fax: (310) 277-4847

Lisa Helfend Meyer, Esq., State Bar No. 106105
Marc H. Garelick, Esq., State Bar No. 258278
Doreen Marie Olson, Esq., State Bar No. 165293

RIGHT CHOICE LAW
5015 Birch Street, Suite 107
Newport Beach, CA 92660
Tel: (949) 570-5232

Fred Thiagarajah, Esq., State Bar No. 205772

FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Bryan J. Freedman, Esq., State Bar No. 151990

Attorneys for Petitioner,
LINDSEY HILL

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 • Los Angeles, California 90067

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| In re the Matter of<br><br>Petitioner: LINDSEY HILL<br><br>And<br><br>Respondent: TREVOR BAUER | Case No.: 21STR003198<br><br>**PETITIONER'S WITNESS LIST**<br><br>Date: July 23, 2021<br>Time; 10:30 a.m.<br>Dept.: 25 |
|---|---|

Petitioner, LINDSEY HILL ("Petitioner"), hereby submits her Witness List of all non-impeachment witnesses she anticipates will be called in support of her case-in-chief at the hearing on her Request for Domestic Violence Restraining Order ("Trial") set for June 23, 2021 at 10:30 a.m. Petitioner expressly reserves the right to supplement the within

Witness List and/or call additional witnesses for the purposes of impeachment and/or rebuttal. The following identifies the anticipated witnesses and provides a summary of the testimony anticipated to be elicited:

1. **Petitioner, Lindsey Hill**: Pursuant to *Evidence Code*, Section 776, Petitioner will be examined regarding her DVRO application, all facts set forth in her declarations submitted in connection with her DVRO application, all facts and information pertaining to the requested relief, all matters relevant to her allegations of abuse by Respondent and request for restraining orders. [Time Estimate: 2 hours].

2. **Respondent, Trevor Bauer**: Pursuant to *Evidence* Code, Section 776, Respondent will be examined on all issues before the Court, including but not limited to, all allegations raised in Petitioner's declarations submitted in connection with Petitioner's DVRO application, and all factors bearing on any issues raised by Respondent. [Time Estimate: 2 hours].

3. **Detective Michael Giddens**: Detective Giddens is a third-party witness who will be appearing pursuant to a Civil Subpoena Duces Tecum. Detective Giddens will testify as to Petitioner's injuries sustained as a result of abuse perpetrated against her by Respondent in May of 2021, including his observations, opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

4. **Detective Sargent Cesar J. Jimenez**: Detective Sargent Jimenez is a third-party witness who will be appearing pursuant to a Civil Subpoena Duces Tecum. Detective Sargent Jimenez will testify as to Petitioner's injuries sustained as a result of abuse perpetrated against her by Respondent in May of 2021, including his observations, opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

5. **Detective Kimberly Jones**: Detective Jones is a third-party witness who will be appearing pursuant to a Civil Subpoena Duces Tecum. Detective Jones is currently in

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

possession and control of the forensic examination records of Petitioner conducted by the Sexual Assault Response Team ("SART") at Palomar Health on May 18, 2021, which exam was ordered/requested by law enforcement. Detective Jones will testify as to her knowledge about Petitioner's injuries sustained as a result of abuse perpetrated against her by Respondent in May of 2021, her observations and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent, and produce the records from SART. [Time Estimate: 2 hours].

6. **Kelly Valencia, RN**: Nurse Valencia will be appearing pursuant to a Civil Subpoena Duces Tecum. Nurse Valencia will testify as to her examination of Petitioner, the SART report, and all photos and information concerning same. [Time Estimate: 1 hour].

7. **Ellen Stein, Ph.D.**: Petitioner reserves the right to call Dr. Stein as a general expert on domestic violence, including but not limited to consensual versus non-consensual sex, and any other matters as raised in Petitioner's DVRO application. [Time Estimate: 1 hour].

8. **Ciramely Maya**: Ms. Maya is Petitioner's best friend and is a third party witness who will testify as to her opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

9. **Richard Hill**: Mr. Hill is the Petitioner's father and a third party witness who will testify as to his opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

Dated: July 22, 2021

MEYER, OLSON, LOWY & MEYERS, LLP

By: ______________________
LISA HELFEND MEYER, ESQ.
MARC H. GARELICK, ESQ.
DOREEN MARIE OLSON, ESQ.
Attorneys for Petitioner,
LINDSEY HILL

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

**PROOF OF SERVICE**
**In Re Matter of Hill/Bauer**
**Case No. 21STRO03198**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 10100 Santa Monica Blvd., Suite 1425, Los Angeles, California 90067. On July 22, 2021, I served the document(s) described **PETITIONER'S WITNESS LIST** to be served on the interested parties in this action as follows:

☒ By serving ☐ the original ☒ a true copy thereof electronically by e-mail, as indicated below, addressed as follows:

Jon R. Fetterolf, Esq.
Zuckerman Spaeder LLP
485 Madison Avenue
10th Floor
New York, NY 10022-5871
E: jfetterolf@zuckerman.com

Attorneys for Respondent
Telephone: (212) 704-9600
Fax: (212) 704-4256

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella Weitzamn Iser Kump Holley LLP
808 Wilshire Blvd,, Third Floor
Santa Monica, CA 90401
E: sholley@kwikhlaw.com
kmangels@kwikhlaw.com

Attorneys for Respondent
Telephone: (310) 566-9800
Fax: (310) 566-9850

☐ **BY MAIL**: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after service of deposit for mailing in affidavit.

☒ **BY ELECTRONIC TRANSMISSION – EMAIL:** By transmitting a true copy of the above-described document(s) via email, using imaged files in .pdf format to the email address(es) for the above-interested party(ies) as indicated. The document(s) was served electronically and the transmission was reported as complete and without error. If the document(s) contained attachments or exhibits that could not be rendered in imaged files in .pdf format, then a complete hard copy was also served via regular United States mail.

☒ [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 22, 2021, at Los Angeles, California.

Jackie Kaminski

Signature

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 808 Wilshire Boulevard, 3rd Floor, Santa Monica, CA 90401.

On August 6, 2021, I served true copies of the following document(s) described as **RESPONDENT TREVOR BAUER'S *EX PARTE* NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS** on the interested parties in this action as follows:

Marc H. Garelick, Esq.
Doreen M. Olsen, Esq.
Lisa H. Meyer, Esq.
Meyer, Olson, Lowy & Meyers, LLP
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, CA 90067
Email: mg@molfamlaw.com
Email: dmo@molfamlaw.com
Email: lhm@molfamlaw.com

Bryan Freedman, Esq.
Freedman + Taitelman, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Email: bfreedman@ftllp.com

Fred Thiagarajah, Esq.
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Email: fred@rightchoicelaw.com

Attorneys for Petitioner

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address kmangels@kwikhlaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on August 6, 2021, at Santa Monica, California.

Jentry Collins

# EXHIBIT 2

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, California 90067
Tel: (310) 277-9747
Fax: (310) 277-4847

Lisa Helfend Meyer, Esq., State Bar No. 106105
Doreen Marie Olson, Esq., State Bar No. 165293
Marc H. Garelick, Esq., State Bar No. 258278

RIGHT CHOICE LAW
5015 Birch Street, Suite 107
Newport Beach, CA 92660
Tel: (949) 570-5232

Fred Thiagarajah, Esq., State Bar No. 205772

FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Bryan J. Freedman, Esq., State Bar No. 151990

Attorneys for Petitioner,
LINDSEY HILL

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| In re the Marriage of<br><br>Petitioner: LINDSEY HILL<br><br>And<br><br>Respondent: TREVOR BAUER | Case No.: 21STR003198<br>[Dept. 35]<br><br>**PETITIONER'S OPPOSITION TO RESPONDENT'S *EX PARTE* APPLICATION NOTICED FOR AUGUST 9, 2021,TO COMPEL THE PRODUCTION OF DOCUMENTS; DECLARATION OF DOREEN MARIE OLSON, ESQ.**<br><br>Date: August 9, 2021<br>Time: 8:30 a.m.<br>Dept. 35 |

///



MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

# DECLARATION OF DOREEN MARIE OLSON, ESQ.

**ATTACHMENT 10:**

**DECLARATION OF DOREEN MARIE OLSON, ESQ.**

I, DOREEN MARIE OLSON, ESQ., declare as follows:

1.     I am an attorney at law, duly licensed to practice law in the State of California and before this Court. I am a Partner at Meyer, Olson, Lowy & Meyers, LLP ("M|O|L|M"), attorneys of record for Petitioner, LINDSEY HILL ("Lindsey" or "Petitioner"). I have personal knowledge of each of the matters set forth herein and if called upon as a witness, I could and would competently testify thereto.

2.     Declarant submits this Declaration in Opposition to Respondent, TREVOR BAUER's ("Trevor" or "Respondent") *Ex Parte* Application for "a Court order compelling Petitioner to produce outstanding medical records, native and digital images of photographs, communications with intended witnesses and persons with information about the alleged incident, and Instagram video messages sent to Respondent by no later than August 12, 2021." A copy of the *ex parte* notice is attached as **Exhibit "1."**

3.     Respondent was notified (via phone and text) of Petitioner's *Ex Parte* Application and Request for Orders Pursuant to the DVPA on June 28, 2021. As a courtesy, Respondent's agent, Rachel Luba, was also provided with the ex parte notice.  Declarant's Partner, Marc Garelick received a phone call from and had a discussion with Jon Fetterolf (Respondent's agent and current counsel of record) on the evening of June 28, 2021. Declarant appeared personally in Court to submit the ex parte application on June 29, 2021. There was no individual present on Respondent's behalf at the Department noticed for the *ex parte*. Mr. Fetterolf was served with Petitioner's *Ex Parte* Application and DVRO Orders on June 29, 2021 via email.  A copy the Notice and Acknowledgement sent to Mr. Fetterolf on June 29, 2021 and signed by him on June 20, 2021 is attached as **Exhibit "2."**

4.     By Monday, August 9, 2021, *it will have been nearly 40 days* that Mr. Fetterolf has had in his possession Petitioner's DVPA filing. Petitioner's counsel has provided to counsel for Respondent the medical files that were had been produced pursuant to a subpoena and the limited documents that Petitioner had available.  **No discovery**

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

**<u>whatsoever was served by Respondent's counsel on Petitioner.</u>** Because of the truncated process involved in DVRO hearings, discovery generally is not assured, particularly if the discovery interferes with the date set for hearing.

5. Ms. Holley, at the time of Respondent's *ex parte* application for a second continuance on July 28, 2021, stated, "we were provided with complete set of medical records and reports from Petitioner. However, there were references made to other records and reports, which were not included, which we believe may be included as responsive to our SDTs. So, I believe we have everything from Petitioner, but I'm not sure that we have everything responsive to our SDTs concerning the same material." [*See*, Page 1, lines 19 – 28 of the Reporter's Transcript of Proceedings, July 28, 2021 attached hereto as **Exhibit "3."**]

6. Based on the information and agreement between counsel to notify one another of all SDTs/Civil Subpoenas issued, it is Declarant's understanding that Respondent's counsel issued the following Subpoenas:

a. <u>Deposition Subpoena to Palomar Medical Center</u>

i. TO: COR

ii. DUE: 8/2/21

iii. FOR: Lindsey's SART forensic examination records. Statements or communications made by Lindsey, her counsel, or SDPD to any and all medical personnel concerning the records or medical services.

b. <u>Deposition Subpoena to Alvarado Hospital Medical Center</u>

i. TO: COR

ii. DUE: 8/2/21

iii. FOR: Lindsey's medical records. Statements or communications made by Lindsey, her counsel, or SDPD to any and all medical personnel concerning Lindsey's records or medical services.

c. <u>Scripps Health</u>

i. TO: COR

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

2

IN RE MATTER OF HILL / BAUER DECLARATION OF DOREEN MARIE OLSON, ESQ.
I:\WPDATA\HILL, LINDSEY\PLEADINGS\P.08062021.DEC.DMO.EXPARTE.MOTION TO COMPEL.DOCX

ii. DUE:8/2/21

iii. FOR: Lindsey's medical records. Statements or communications made by Lindsey, her counsel, or SDPD to any and all medical personnel concerning Lindsey's records or medical services.

d. Deposition Subpoena to San Diego Police Department

i. TO: COR

ii. DUE: August 2, 2021

iii. FOR: Lindsay's medical records from Palomar Health – SART forensic records. All records, communications, notes and documents pertaining to the investigation of Lindsey's claims.

e. Civil Subpoena Duces Tecum for Production, No Appearance to Kyle Erickson.

f. Civil Subpoena Duces Tecum for Production, No Appearance to Ciramely "Mely" Maya.

g. Civil Subpoena Duces Tecum for Production, No Appearance to Tayler Hall.

h. Civil Subpoena Duces Tecum for Appearance to Kyle Erickson.

7. Declarant is aware of the following information concerning the Subpoenas issued by Respondent's counsel:

a. Palomar Health. Palomar did not have documents to produce as all Records were transferred to Pasadena Police Department. The Pasadena City Attorneys office did produce the SART file to both counsel pursuant to the terms of the Stipulation for Protective Order.

b. Alvarado Hospital Medical Center. Alvarado produced records pursuant to Petitioner's Subpoena and all documents were provided to Mr. Fetterolf, Ms. Holley and Ms. Mangels on July 27, 2021. Ms. Holley confirmed receipt of same.

c. Scripps Health. Declarant is not aware of documents produced by Scripps Health, but the documents that Petitioner had available, were produced. Ms. Holley

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

confirmed receipt of same.

d. San Diego Police Department. The SDPD documents/reports were likewise subpoenaed by Declarant's office. All Declarant received was an Objection. A copy of the Objection to the Production of Documents which Declarant received from SDPD, is attached as **Exhibit "4."** Two detectives from SDPD were subpoenaed to the trial and will be appearing.

**8.** Concerning documents that Respondent's counsel subpoenaed from third parties, Declarant has no control over those documents or witnesses. Declarant addressed Respondent's August 3, 2021 correspondence (attached as **Exhibit "5"**) for documents, by way of responsive correspondence dated August 6, 2021, a copy of which is attached as **Exhibit "6."** In sum and substance as set forth in said responsive letter:

"Concerning Ciramely Maya, Ms. Hill does not have messages from Ms. Maya from 4-months ago.

Concerning your request for Instagram documents, Ms. Hill deleted everything she had on Instagram DM after the assault, as she didn't want to have to see Mr. Bauer's name on her phone.

Concerning Rich Hill, we will not provide communications between him and his daughter based on privacy concerns. [Protected right to privacy under Article I, Section 1 of the California Constitution.]

Concerning Lisa Jackson, we are not aware that you are or have been trying to serve a Subpoena on Ms. Jackson. We will not provide communications between Ms. Hill and Ms. Jackson (who we are informed is Ms. Hill's AA sponsor), based on privacy concerns. [Protected right to privacy under Article I, Section 1 of the California Constitution.]

With reference to your request for our office to produce further records for you, although we have no obligation to do so, and although not relevant, enclosed are the June 3, 2021 results from the Chlamydia Trachomatis / Neisseria gonorrhoeae, DNA Probe, Urinalysis Culture (w/Refx) and Urinanlysis Micsop

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

<u>w/Refx to Cult</u>. We ask that you not copy or otherwise disseminate the records with any of Ms. Hill's personal identifying information, e.g., address, phone number, social security number, medical insurance identification, etc. for Ms. Hill's privacy, safety and security.

<u>Ms. Hill will not be releasing psychological testing information</u>. It appears that you will obtain any other documents from the entities which you have subpoenaed. Frankly, the additional documents you have requested for 6/3/2021 and subsequent thereto, have no relevance as same pertain to a time after the assault and injuries occurred and Ms. Hill's initial medical treatment." [*See* Exhibit "6."] [Emphasis added.]

9. Concerning Respondent's request made on August 4, 2021 that Declarant's office provide Respondent's counsel with all "native and digital images of the photographs contained in our Exhibit 4, Exhibit 5 and Exhibit 7, in addition to any other photographs that were provided by Ms. Hill to the media," Declarant's office responded to said correspondence on August 6, 2021, by producing time-stamped photographs. A copy of said correspondence and enclosures is attached as **Exhibit "7."** Specifically, Declarant's office addressed that:

"Ms. Hill has not produced any images to the media, thus there is no need to respond that specific request. Regarding your request to produce the native and digital images of Exhibits 4, 5 and 7, attached hereto, please find time stamped photographs that have been provided by Ms. Hill and are not edited. Your request that our office provide native and digital images of the photographs taken of Ms. Hill is overbroad, oppressive and burdensome. We do not have the burden to hire a forensic or any other specialized person to obtain the requested information. We have attempted to comply with your request by producing what Ms. Hill has in her possession, custody, or control".

10. At this point Respondent's continued demand for documents from Petitioner, is nothing more than a means to annoy, oppress, harass and intimidate Petitioner. The

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 • Los Angeles, California 90067

continued demands for Petitioner to produce documents such a her urinanalysis results, after care visits, etc., all subsequent to the date of the assault and the date on which Petitioner was initially examined by the Sexual Assault Rape Team at Palomar, are not relevant to the issues in the proceeding before the Court, nor are same reasonably calculated to lead to the discovery of admissible evidence.

Concerning Dr. Stein, she was included as a witness on Petitioner's Witness List that was served on July 22, 2021. A copy of Petitioner's Witness List is attached as **Exhibit "8."** Dr. Stein will testify as a general expert on Domestic Violence, including but not limited to, consensual v. non-consensual sex, and any other matters as raised in Petitioner's DVRO Application. The "consensual v. non-consensual sex" is being addressed, directly as a result of Mr. Fetterolf comment as follows, to the media: consider retracting, considerably, the following statement you made to the press:

> **"Mr. Bauer had a brief and wholly consensual sexual relationship initiated by [the woman] beginning in April 2021. We have messages that show [the woman] repeatedly asking for "rough" sexual encounters involving requests to be "choked out" and slapped in the face." - Jon Fetterolf, June 29, 2021**

11. Counsel's inquiries concerning Dr. Stein were addressed vis correspondence dated July 27, 2021, a copy of which is attached as **Exhibit " 9."**

12. Respondent's counsel's ex parte (the third), is nothing more than an attempt to obtain yet another continuance of this case, that they called "ready" for on July 23, 2021.[1]

12. It is respectfully requested that the Court grant to Petitioner an award of attorneys' fees and costs for having to oppose this improper ex parte application, which is the third *ex parte* in three weeks, as same is without basis, legally or otherwise.

/ / /

/ / /

/ / /

[1] *See* Exhibit "2" to Declarant's Responsive Pleadings filed August 2, 2021 for a copy of the Reporter's Transcript of July 23, 2021.]

6

IN RE MATTER OF HILL / BAUER DECLARATION OF DOREEN MARIE OLSON, ESQ.

I:\WPDATA\HILL, LINDSEY\PLEADINGS\P.08062021.DEC.DMO.EXPARTE.MOTION TO COMPEL.DOCX

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

13. This Declaration is not intended to be, nor shall it be construed as being, a waiver of attorney-client privilege or attorney-client work product doctrine. Declarant has no client authority to waive the attorney work-product doctrine, and does not intend to do so by anything set forth herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 3, 2021, ~~at Los~~ Angeles, California.

DOREEN MARIE OLSON

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

7

IN RE MATTER OF HILL / BAUER DECLARATION OF DOREEN MARIE OLSON, ESQ.
I:\WPDATA\HILL, LINDSEY\PLEADINGS\P.08062021.DEC.DMO.EXPARTE.MOTION TO COMPEL.DOCX

**EXHIBIT 1**

**Doreen M. Olson**

**From:** Kate Mangels <KMangels@kwikhlaw.com>
**Sent:** Friday, August 6, 2021 9:35 AM
**To:** Lisa Helfend Meyer; Doreen M. Olson; Marc Garelick; Stephannie U. Obioha; Fred Thiagarajah; Bryan Freedman; Meredith Gonzalez; Jacqueline Baker; Jackie Kaminski
**Cc:** Shawn Holley; Jon Fetterolf; Ventresca, Ivano; Simmerson, Kelsey; Jentry Collins; Cohen, Jay
**Subject:** Notice of Ex Parte Application

Counsel,

This email serves as notice that Respondent Trevor Bauer will appear *ex parte* on Monday, August 9, 2021 at 8:30 a.m. in Department 35 of the Los Angeles County Superior Court, Central District, 111 N. Hill St., Los Angeles, California 90012.

Respondent's *ex parte* application will request a Court order compelling Petitioner to produce outstanding medical records, native and digital images of photographs, communications with intended witnesses and persons with information about the alleged incident, and Instagram video messages sent to Respondent by no later than August 12, 2021.

Please let us know your position on the *ex parte* application.

Kate Mangels | Kinsella Weitzman Iser Kump Holley LLP
808 Wilshire Boulevard, Third Floor | Santa Monica, California 90401
Direct Dial: 310.566.9853 | Email: kmangels@kwikhlaw.com

**EXHIBIT 2**

FL-117

PARTY WITHOUT ATTORNEY or ATTORNEY STATE BAR NO 258278
NAME Marc H. Garelick, Esq. SBN 258278
FIRM NAME Meyer, Olson, Lowy & Meyers, LLP
STREET ADDRESS 3161 Michelson Drive, Suite 1160
CITY Irvine STATE CA ZIP CODE 92612
TELEPHONE NO (949) 397-3977 FAX NO (949) 800-1309
E-MAIL ADDRESS mg@molfamlaw.com
ATTORNEY FOR (name): Petitioner, LINDSEY HILL

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 30 2021

Sherri R. Carter, Executive Officer/Clerk
By: Ratisha Washington, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS 111 N. Hill Street
MAILING ADDRESS 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

PETITIONER: LINDSEY HILL
RESPONDENT: TREVOR BAUER

NOTICE AND ACKNOWLEDGMENT OF RECEIPT

CASE NUMBER 21STRO03198

*(Sender completes items 1 through 4 and signs before mailing. Recipient completes items 5 and 6, signs, then returns)*

1. To *(name of individual being served)*: Trevor Bauer

**NOTICE**

The documents identified below are being served on you by mail with this acknowledgment form. You must personally sign, or a person authorized by you must sign, this form to acknowledge receipt of the documents.

If the documents described below include a summons and you fail to complete and return this acknowledgment form to the sender within 20 days of the date of mailing, you will be liable for the reasonable expenses incurred after that date in serving you or attempting to serve you with these documents by any other methods permitted by law. If you return this form to the sender, service of a summons is deemed complete on the date you sign the acknowledgment of receipt below. This is **not** an answer to the action. If you do not agree with what is being requested, you must submit a completed *Response* form to the court within 30 calendar days.

2. Date of mailing *(specify)*: Via Email to jfetterolf@zuckerman.com on 6/29/21

3. Marc H. Garelick, Esq.
(TYPE OR PRINT SENDER'S NAME) (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE AND MUST BE 18 YEARS OR OLDER)

**ACKNOWLEDGMENT OF RECEIPT**

4. I agree I received the following:

a. ☐ Family Law: *Petition—Marriage/Domestic Partnership* (form FL-100), *Summons* (form FL-110), and blank *Response—Marriage/Domestic Partnership* (form FL-120)

b. ☐ Uniform Parentage: *Petition to Determine Parental Relationship* (form FL-200), *Summons* (form FL-210), and blank *Response to Petition to Determine Parental Relationship* (form FL-220)

c. ☐ Custody and Support: *Petition for Custody and Support of Minor Children* (form FL-260), *Summons* (form FL-210), and blank *Response to Petition for Custody and Support of Minor Children* (form FL-270)

d. ☒ (1) ☐ Completed and blank *Declaration Under Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)* (form FL-105)

(2) ☐ Completed and blank *Declaration of Disclosure* (form FL-140)

(3) ☐ Completed and blank *Schedule of Assets and Debts* (form FL-142)

(4) ☐ Completed and blank *Income and Expense Declaration* (form FL-150)

(5) ☐ Completed and blank *Financial Statement (Simplified)* (form FL-155)

(6) ☐ Completed and blank *Property Declaration* (form FL-160)

(7) ☐ *Request for Order* (form FL-300), and blank *Responsive Declaration to Request for Order* (form *FL-320*)

(8) ☒ Other *(specify)*: Petitioner's filed Request for Domestic Violence Restraining Order, Notice of Hearing, Temporary Restraining Order & Declaration re Notice of Ex Parte

5. Recipient signed this acknowledgment on *(specify date)*: 06/30/2021

6. Trevor Bauer (Signed by Jon Fetterolf, Esq.) ►
(TYPE OR PRINT NAME OF PERSON ACKNOWLEDGING RECEIPT) (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
FL-117 [Rev January 1, 2021]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT
(Family Law)

Code of Civil Procedure, § 415.30, 417.10
www.courts.ca.gov

American LegalNet, Inc.
www.FormsWorkFlow.com

**EXHIBIT 3**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

HON. DIANNA GOULD-SALTMAN, JUDGE DEPARTMENT 35

LINDSEY HILL,

PETITIONER,

VS.

TREVOR BAUER,

RESPONDENT.

NO. 21STRO03198

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JULY 28, 2021

APPEARANCES:

FOR THE PETITIONER: MEYER, OLSON, LOWY & MEYERS, LLP
BY: DOREEN MARIE OLSON, ESQ.
10100 SANTA MONICA BOULEVARD
SUITE 1425
LOS ANGELES, CA 90067

FOR THE RESPONDENT: KINSELLA WEITZMAN ISER KUMP HOLLEY
BY: SHAWN HOLLEY, ESQ.
808 WILSHIRE BOULEVARD
3RD FLOOR
SANTA MONICA, CA 90401

JACQUELINE M. CAIRE, CSR #9599, RPR
OFFICIAL REPORTER

CASE NUMBER: 21STRO03198

CASE NAME: LINDSEY HILL VS. TREVOR BAUER

LOS ANGELES, CALIFORNIA WEDNESDAY, JULY 28, 2021

DEPARTMENT 35 HON. DIANNA GOULD-SALTMAN, JUDGE

APPEARANCES: (AS HERETOFORE NOTED.)

REPORTER: JACQUELINE CAIRE, CSR NO. 9599, RPR

TIME: 8:52 A.M.

THE COURT: ALL RIGHT. ON HILL AND BAUER, COME ON UP. I HAVE READ THE MOVING AND NOW THE RESPONSIVE PAPERS. I DO THINK THERE IS GOOD CAUSE. I ALSO HAVE EARLIER DATES NOW AVAILABLE BECAUSE A SEVEN DAY CASE SETTLED MONDAY.

MS. OLSON: FABULOUS.

THE COURT: MY FIRST QUESTION IS WHETHER EVERYBODY NOW HAS COMPLETE COPIES OF ALL OF THE DOCUMENTS THAT THEY WERE EXPECTING?

MS. OLSON: YES.

MS. HOLLEY: YES AND NO. WE WERE PROVIDED THE COMPLETE SET OF MEDICAL RECORDS AND REPORTS FROM PETITIONER. HOWEVER, THERE WERE REFERENCES MADE TO OTHER RECORDS AND REPORTS, WHICH WERE NOT INCLUDED, WHICH WE BELIEVE MAY BE INCLUDED AS RESPONSIVE TO OUR SDT'S. SO I BELIEVE WE HAVE EVERYTHING FROM PETITIONER, BUT I'M NOT SURE THAT WE HAVE EVERYTHING RESPONSIVE TO OUR SDT CONCERNING THE SAME MATERIALS.

THE COURT: OKAY. AND THE SDT MATERIALS THAT YOU'RE EXPECTING THAT MAY BE RESPONSIVE, THOSE WERE SUBPOENAED TO THE COURT FOR NEXT MONDAY?

MS. HOLLEY: THAT'S MY UNDERSTANDING. THAT WAS TAKEN CARE OF BY MR. FETTEROLF'S OFFICE. THAT'S MY UNDERSTANDING.

THE COURT: I THOUGHT YOU WERE SHAKING YOUR HEAD NO.

MS. OLSON: MR. FETTEROLF WAS BASICALLY ACCUSING OUR OFFICE OF FAILING TO PRODUCE DOCUMENTS FROM RECORDS THAT HE SUBPOENAED DIRECTLY FROM WITNESSES. I HAD NOTHING TO DO WITH THAT. HE ISSUED SUBPOENAS. IF THEY MADE IT TO THE COURT, THEY MADE IT TO THE COURT. IF THEY DIDN'T, I DON'T KNOW ABOUT IT.

THE COURT: IN FACT, WE HAVE RECEIVED SOME DOCUMENTS. I WANTED TO PROVIDE THOSE TO YOU OR AT LEAST ADDRESS THOSE WITH YOU NOW SO YOU CAN TAKE A LOOK. SO I NOW HAVE OPEN AUGUST 9 THROUGH THE 18TH. AND YOU'VE ALREADY GOT THE 19TH.

MS. HOLLEY: WELL, YOU SAID -- I'M SORRY. WHAT DATES DID YOU SAY?

THE COURT: THE 9TH. IF YOUR DOCUMENTS ARE EITHER ALL RECEIVED OR RECEIVED BY THE 2ND, THAT WOULD GIVE YOU AN ENTIRE WEEK.

MS. HOLLEY: I AM -- IT IS BITTERSWEET FOR ME TO REPORT THAT MY ONLY CHILD IS GOING TO COLLEGE --

THE COURT: MAZEL TOV.

MS. HOLLEY: -- IN WASHINGTON, D.C. WE ARE LEAVING ON THE 8TH TO RETURN ON THE 13TH.

THE COURT: OKAY. SO THE 16TH WOULD BE YOUR FIRST AVAILABLE. IS THAT --

MS. HOLLEY: THE 16TH WILL BE MY FIRST AVAILABLE. IT WOULD BE MY PREFERENCE THAT IF IT IS THE 16TH, THAT THAT BE A

DATE THAT WE -- SORT OF LIKE A STATUS CONFERENCE DATE TO MAKE SURE THAT WE HAVE EVERYTHING. WE'RE NOT TRYING TO --

MS. OLSON: NO.

MS. HOLLEY: -- DELAY THIS AT ALL, AS I INDICATED. AND IT IS TRUE THAT I ANNOUNCED READY, BUT WITH A CAVEAT. OBVIOUSLY WE CAN ONLY BE READY IF WE HAVE ALL OF THE MATERIALS.

THE COURT: RIGHT. YOU OR ONE OF THE MANY ATTORNEYS ON YOUR SIDE OF THIS LITIGATION CAN KNOW, WHETHER YOU ARE PHYSICALLY PRESENT OR NOT, WHETHER THE DOCUMENTS HAVE BEEN RECEIVED AND ARE COMPLETE.

MS. HOLLEY: YES.

THE COURT: THAT CAN OCCUR DURING THE WEEK THAT YOU WON'T BE PRESENT.

MS. HOLLEY: YES.

THE COURT: SO THEN THE 16TH COULD BE THE FIRST DATE TO START.

MS. HOLLEY: THE 16TH COULD BE THE FIRST DAY TO START. IT COULD BE. YOU KNOW, I'M BEING VERY CAREFUL, BECAUSE I DON'T WANT TO MAKE ABSOLUTE PRONOUNCEMENTS WHEN OTHERS RELY UPON THEM. SO I COULD BE READY ON THE 16TH, YES.

MS. OLSON: WE'RE READY ON THE 2ND, YOUR HONOR. WE CALLED READY. WE ARE READY.

THE COURT: OKAY.

MS. OLSON: AND WE -- JUST TO REPORT TO THE COURT, WE DID RECEIVE THE SART FILE.

THE COURT: AS I UNDERSTAND IT, BOTH SIDES RECEIVED THAT ON THE 27TH. SO YOU GOT THAT?

MS. HOLLEY: YESTERDAY, YES.

MS. OLSON: JUST TO DISCUSS WITH THE COURT HOW WE'RE GOING TO -- I PERSONALLY AM NOT COMFORTABLE DISSEMINATING, EVEN TO THE COURT UNDER SEAL, THOSE GRAPHIC PHOTOS. SO I DON'T KNOW IF THE COURT IS WILLING TO LOOK AT THEM IN CHAMBERS OR HOW WE DO THAT. BUT THEY ARE VERY GRAPHIC. SO I JUST -- I HAVEN'T DEALT WITH PICTURES OF THAT SORT BEFORE. SO I'D LIKE TO JUST GET SOME DIRECTION FROM THE COURT HOW WE DEAL WITH THAT.

THE COURT: HAVE YOU DISCUSSED IT WITH MS. HOLEY?

MS. OLSON: I SENT A LETTER YESTERDAY SAYING THAT WE NEED TO DISCUSS IT, AS WELL AS WITH THE COURT.

THE COURT: RIGHT. SO I DON'T KNOW WHAT YOU'RE -- I DON'T KNOW WHAT YOU'LL BE INTRODUCING. I DON'T KNOW WHAT THE PURPOSE OF THE INTRODUCTION IS AND THE EXTENT TO WHICH IT WOULD EXPLAIN OR BE CUMULATIVE OF TESTIMONY.

MS. OLSON: OKAY.

THE COURT: SO DEPENDING ON THE ANSWERS TO ALL THOSE QUESTIONS, THAT MIGHT BE A STARTING POINT FOR YOUR CONVERSATION WITH THE OTHER SIDE. I HAVE NO INTENTION OR DESIRE TO HAVE THE PRESS ACCESS ANY MORE DOCUMENTS THAN THEY ALREADY HAVE, WHICH MY UNDERSTANDING IS THE ENTIRETY OF THE INITIAL MOVING PETITION.

MS. HOLLEY: AND I AM SENSITIVE TO COUNSEL'S CONCERNS. SO I'M SURE WE'LL BE ABLE TO WORK SOMETHING OUT.

MS. OLSON: GREAT.

THE COURT: OKAY. SO THEN WHY DON'T WE PLAN ON -- WHY DON'T WE PLAN ON HAVING THE 16TH THROUGH THE 19TH. THAT

GIVES YOU ONE ADDITIONAL DAY MORE THAN YOU NEEDED BASED ON YOUR REPRESENTATION. BUT BASED ON THE WITNESS LIST, I DON'T THINK IT'S EXTRAORDINARY IF YOU USE FOUR DAYS.

MS. OLSON: AGREED. BUT MY ONLY RESPONSE TO WHAT MS. HOLLEY SAID IS THAT SHE WANTS TO USE THE 16TH AS SOME TYPE OF TRIAL SETTING.

THE COURT: I SHUT THAT DOWN.

MS. HOLLEY: IS THAT A JUDICIAL TERM?

THE COURT: A LEGAL TERM.

MS. HOLLEY: A JUDICIAL TERM, "SHUT IT DOWN."

MS. OLSON: I LIKE IT.

THE COURT: I UNDERSTAND HER DESIRE TO DO SO.

MS. OLSON: I LIKE IT WHEN IT BENEFITS ME. LET'S QUALIFY THAT.

THE COURT: I THINK THERE ARE PLENTY OF COMPETENT ATTORNEYS REPRESENTING MR. BAUER WHO SOMETIME DURING THE WEEK OF THE 9TH WILL KNOW WHETHER OR NOT THERE IS A NEED FOR ANOTHER EXTENSION BECAUSE INSUFFICIENT DOCUMENTS HAVE BEEN RECEIVED, ALTHOUGH APPROPRIATELY SUBPOENAED.

MS. HOLLEY: FAIR ENOUGH. THANK YOU.

THE COURT: OKAY. SO WE'LL PLAN TO START AT 8:30 ON THE 16TH.

MS. OLSON: AND, YOUR HONOR, COULD I JUST GET AN ORDER THAT I CAN DISSEMINATE TO MY WITNESSES THE REQUIREMENT THAT WHATEVER THE ORDERS WERE MADE FOR THEM TO APPEAR ON THE 2ND TRANSLATE TO THE 16TH? I HAVE TWO DETECTIVES.

THE COURT: YES. THE ONES THAT WE HAD ORDERED BACK ON THE 2ND CAN NOW APPEAR ON THE 16TH.

MS. OLSON: OKAY. I WILL LET THEM KNOW THAT. AND JUST FOR PURPOSES OF PREPARING OUR RESPECTIVE CASES, NURSE VALENCIA'S COUNSEL CONTACTED ME TO LET ME KNOW THAT SHE ABSOLUTELY COULDN'T CALL IN OR WOULDN'T BE ABLE TO CALL IN FROM THE ROAD ON THE 2ND OR 3RD. SO SHE WOULD HAVE TO APPEAR THE 19TH. SO I CAN CHECK HER CALENDAR TO SEE IF SHE IS NOW AVAILABLE ON THE 16TH JUST SO YOU KNOW THAT.

THE COURT: THAT SOUNDS GREAT.

MS. OLSON: OKAY. THANK YOU.

THE COURT: LET ME PROVIDE TO YOU THAT WHICH WAS RECEIVED BY THE COURT YESTERDAY. AND I THINK THEY ARE RELATED TO EACH OTHER. ONE IS A SUBPOENA TO CIRAMELY MAYA. AND IT CAME WITH A SUBPOENA. AND IT LOOKS LIKE PHOTOGRAPHS OF SCREENSHOTS OF TEXTS. AND THEN SEPARATELY WITH A RETURN ADDRESS INDICATING MS. MAYA -- A DOCUMENT SAYING SHE CANNOT PRODUCE ALL THE CONTENT BEING REQUESTED BECAUSE HER APPLE ICLOUD SETTINGS ARE AUTOMATICALLY SET TO DELETE TEXT MESSAGES AFTER 30 DAYS. SHE HAS PRODUCED SOME AND CAN'T PRODUCE OTHERS.

MS. HOLLEY: OKAY. THANK YOU.

THE COURT: DO YOU WISH TO REVIEW THESE HERE WHILE YOU'RE HERE?

MS. HOLLEY: YES. WILL THERE BE COPIES MADE?

THE COURT: NO. UNLESS YOU SUBPOENAED COPIES TO YOUR OFFICE. SO THESE ARE THE ONLY ONES THERE WILL BE. AND I DON'T MIND YOU TAKING SCREENSHOTS OF THEM OR DOING WHATEVER YOU NEED TO DO.

MS. OLSON: WHATEVER -- THEY'RE YOUR RECORDS. WHATEVER

YOU WANT TO DO. IF YOU TAKE SCREENSHOTS, IF YOU'LL JUST SHARE THEM WITH ME.

THE COURT: DO YOU WANT TO DO THAT?

MS. HOLLEY: YES, PLEASE. THANK YOU.

THE COURT: WE'RE TRYING TO MAKE IT EASY FOR BOTH OF YOU TO PUT ON THE BEST CASE YOU CAN.

MS. HOLLEY: APPRECIATE THAT.

MS. OLSON: THANK YOU.

MS. HOLLEY: THANK YOU.

THE COURT: ALL RIGHT. ANYTHING ELSE WE CAN DO FOR YOU OTHER THAN GIVING YOU A COPY OF THE ORDER OF CONTINUANCE?

MS. HOLLEY: I DON'T THINK SO. THANK YOU.

MS. OLSON: AND, YOUR HONOR, JUST -- I'M ASSUMING BECAUSE I HAVE ABOUT FIVE PEOPLE NOW I HAVE TO CLEAR THOSE DATES WITH, THOSE ARE JUST PUTTING IT -- CAN I CONTACT MY OFFICE JUST TO ENSURE LISA IS GOING TO -- I DON'T HAVE HER CALENDAR IN FRONT OF ME. I WANT TO DOUBLE, TRIPLE CHECK.

THE COURT: BEFORE WE NAIL THIS DOWN, BOTH SIDES SHOULD MAKE ANY CALLS YOU NEED TO MAKE. BOTH SIDES SHOULD DO THAT.

MS. OLSON: THANK YOU. YOUR HONOR, DO WE HAVE TO REISSUE THE D.V.R.O. ORDER OR DID THAT GO THROUGH THE 19TH?

THE COURT: I THINK IT SHOULD HAVE GONE THROUGH THE 19TH.

THE CLERK: I WILL CHECK AND MAKE SURE.

THE COURT: WE'LL DOUBLE CHECK.

MS. OLSON: THANK YOU.

(THE PROCEEDINGS WERE CONCLUDED.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

HON. DIANNA GOULD-SALTMAN, JUDGE DEPARTMENT 35

LINDSEY HILL,

PETITIONER,

VS.

TREVOR BAUER,

RESPONDENT,

SUPERIOR COURT NO. 21STRO03198

REPORTER'S CERTIFICATE

I, JACQUELINE M. CAIRE, OFFICIAL COURT REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA; FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES, 1 THROUGH 7, COMPRISE A FULL, TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER JULY 28, 2021.

DATED THIS 6TH DAY OF AUGUST, 2021.

Jacqueline M. Caire

JACQUELINE M. CAIRE, CSR #9599, RPR
OFFICIAL REPORTER

**EXHIBIT 4**

SUBP-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*):
Doreen Marie Olson, Esq. 165293 | Marc H. Garelick, Esq. 258278
Meyer, Olson, Lowy & Meyers, LLP
10100 Santa Monica Blvd., Suite 1425
Los Angeles, CA 90067
TELEPHONE NO.: (310) 277-9747 FAX NO.: (310) 277-4847
E-MAIL ADDRESS: dmo@molfamlaw.com | mg@molfamlaw.com
ATTORNEY FOR (*Name*): Petitioner, LINDSEY HILL

FOR COURT USE ONLY

2021 JUL -8 AM 9:05

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill St.
MAILING ADDRESS: 111 North Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90067
BRANCH NAME: Central District

PLAINTIFF/PETITIONER: LINDSEY HILL

DEFENDANT/RESPONDENT: TREVOR BAUER

**DEPOSITION SUBPOENA**
**FOR PRODUCTION OF BUSINESS RECORDS**

CASE NUMBER:
21STRO03198

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** ***(name, address, and telephone number of deponent, if known):***
Custodian of Records, C/O Subpoena Clerk, San Diego Police Department, 1401 Broadway, MS 715, San Diego, CA 92101, (619) 531-2816

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:**

To *(name of deposition officer)*: Summitt Reprographics
On *(date)*: July 22, 2021 At *(time)*: 10:00 a.m.
Location *(address)*: 2020 Century Park East, Suite 4420, Los Angeles, CA 90067

**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. ☒ by delivering a true, legible, and durable copy of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☐ by delivering a true, legible, and durable copy of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☐ by making the original business records described in item 3 available for inspection at your business address by the attorney's representative and permitting copying at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. The records to be produced are described as follows *(if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified)*:

☒ Continued on Attachment 3.

4. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: July 7, 2021

Doreen Marie Olson, Esq.
(TYPE OR PRINT NAME)

▶ Doreen Marie Olson
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Petitioner, LINDSEY HILL
(TITLE)

(Proof of service on reverse)



Police Department
Crime Laboratory

# CERTIFICATION

# OF

# NO RECORD

I, the undersigned, am a duly authorized Custodian of Records in the employ of the San Diego Police Department Crime Laboratory. I certify that a thorough search of laboratory files, carried out under my direction and control, revealed no documents called for by the subpoena in the case of:

**IN THE MATTER OF Lindsey Hill**

**VS**

**Trevor Bauer**

Case Number: 21023224

I hereby declare under penalty of perjury under the laws of the State of California that the above is true and correct.

DANIEL MEYER
Lt. D. Meyer 4160TZ
Custodian of Records

7-5-21
Date

1401 Broadway, MS725
San Diego, CA 92101
jmmiller@pd.sandiego.gov

T (619) 531-2568
sandiego.gov



Records Division

## OBJECTION

I, the undersigned, am a duly authorized Custodian of Records employed by the San Diego Police Department. The Department objects to the release of the requested documentation, because notice has not been served on the consumer pursuant to California Code of Civil Procedure sections 1985.3(b) and 1985.4. Failure to serve notice upon the consumer is a sufficient basis for non-production of the personal records requested. Cal. Civ. Proc. Code § 1985.3(k). Information has been withheld in the Matter of:

**LINDSEY HILL**
**Vs**
**TREVOR BAUER**

**CASE NO.: 21STRO03198**

I hereby declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[signature]
Custodian of Records

July 20, 2021
Date

Police Legal 01/30/09

1401 Broadway Ave., MS 726
San Diego, CA 92101

T (619) 531 2846
sandiego.gov

**EXHIBIT 5**



Z
ZUCKERMAN
SPAEDER

Jon R. Fetterolf
PARTNER
Zuckerman Spaeder LLP
jfetterolf@zuckerman.com
(202) 778-1880

August 3, 2021

**VIA E-MAIL**

Marc H. Garelick, Esq.
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, CA 90067
mg@molfamlaw.com

Re: **Petitioner's Exhibits and Witness List**

Dear Marc:

I write to follow up on some remaining and additional discovery issues.

First, on your Witness List you included Ciramely Maya as an individual who may provide testimony. As you are aware, we have subpoenaed Ms. Maya and we have now received some materials from Ms. Maya last week that we have provided you. Ms. Maya, however, noted that due to her iCloud settings, her phone only keeps materials for 30 days. Because Ms. Maya is listed as a witness for Ms. Hill, and Ms. Hill has these same communications on her phone, please provide all communications between Ms. Hill and Ms. Maya for the missing period, which is April 18, 2021 through June 18, 2021.

Second, because Ms. Hill and Mr. Bauer are no longer connected on Instagram, Mr. Bauer cannot access the videos and photos that Ms. Hill sent him during these communications. As such, can you please provide us the following:

- The video she sent Mr. Bauer on 4/29/21 at 9:38 a.m. She later refers to that video as "I have no idea probably your thumb lol Just a bruise in the shape of fingerprint.)
- The video she sent Mr. Bauer on 4/29/21 at 11:24 a.m. She later writes "Right by my prized possession."

Third, you have listed Petitioner's Father, Richard Hill, as a potential witness at the hearing. Please provide all communications between Mr. Hill and Petitioner from April 18, 2021 to the present

Fourth, you are aware that Respondent has been trying to serve a document subpoena on Lisa Jackson since July 14. To date, even though we have located Ms. Jackson, she has successfully evaded service. While we are continuing our efforts to serve Ms. Jackson, since Ms. Jackson (Lisa M) is referenced in Petitioner's DVRO affidavit as a person she spoke with on May 17, 2021, Ms. Hill's communications regarding Respondent and her encounters with him are relevant to the upcoming hearing. As such, please provide us the communications between Ms. Hill and Lisa Jackson from April 18, 2021 to the present.

Lastly, while it appears with your production last week that we have the complete copies of the partial medical records that you included as Exhibits to the DVRO petition, we still do not have a number of other medical records that are referenced within these records. Listed below are the medical records referenced in the records provided. Please provide these medical records, along with any other medical records in your possession relating to Ms. Hill's visits to Scripps, Alvarado Hospital, her SANE or SART examination, her primary care physician Dr. Valerie Pitis, or to any other medical provider from May 16, 2021 to the present.

- MRI Brain Without Contrast – referenced in 6/3/21 Scripps Progress Notes
- MRI Face Without Contrast - referenced in 6/3/21 Scripps Progress Notes
- CBC With Differential Order - referenced in 6/3/21 Scripps Progress Notes
- Comprehensive Metabolic Panel - referenced in 6/3/21 Scripps Progress Notes
- Herpes simplex virus antibody – referenced in 6/3/21 Scripps Progress Notes
- Urinalysis with Microscopic Culture – referenced at AH 53
- Results of STD Screening - referenced in 6/3/21 Scripps Progress Notes
- Face and Brain MRIs referenced in text communications between Petitioner and Mely May on 6-21 (appear to have been done that day)
- Psychological testing referenced and recommended in 6/3/21 Scripps Progress Notes

While we have subpoenaed the following entities for some of this information--including Alvarado Hospital, Palomar Health, and Scripps--we are still awaiting responses. We will of course provide copies of any of the materials we receive from these entities in responding to our subpoenas.

Because the documents referenced above should be in Ms. Hill's custody and control, please provide them no later than August 5, by 12 p.m. so we can timely assess the production and raise any deficiencies with the Court.

MR. MARC GARELICK
AUGUST 3, 2021
PAGE 3


Please let me know if you have any questions.

Sincerely,

Jon R. Fetterolf

cc:    Shawn Holley (sholley@kwikhlaw.com)

**EXHIBIT 6**



MEYER, OLSON, LOWY & MEYERS, LLP
FAMILY LAW

DOREEN MARIE OLSON*

E-MAIL: DMO@MOLFAMLAW.COM

August 6, 2021

**VIA EMAIL**
*JFETTEROLF@ZUCKERMAN.COM*

Jon Fetterolf, Esq.
Zuckerman Spaeder LLP
1899 M Street NW, Ste 1000
Washington, D.C. 20036

sholley@kwikhlaw.com
KMangels@kwikhlaw.com

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella Weitzman Iser Kump Holley, LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401

Re: **In re Matter of Hill/Bauer**

Dear Counsel:

The following is in response to Mr. Fetterolf's letter dated August 3, 2021. Apologies for the delay in responding to same, as each of us has been in trial the majority of the week and are only now coming up for air. We address the issues raised as follows:

Concerning Ciramely Maya, Ms. Hill does not have messages from Ms. Maya from 4-months ago.

Concerning your request for Instagram documents, Ms. Hill deleted everything she had on Instagram DM after the assault, as she didn't want to have to see Mr. Bauer's name on her phone.

LISA HELFEND MEYER* · DOREEN MARIE OLSON* · DANA LOWY · FELICIA R. MEYERS
ANNE N. SLUSSER · BENJAMIN VALENCIA II* · CRAIG S. PEDERSEN · MARY H. REDFIELD · PHILIP J. MONAHAN
ERIC W. MEYER · SEHBA SAULEHA ARIF · MARC H. GARELICK · ALYSSA D. DICKERSON · MARIE A. LAMOLINARA
NATALIE A. XIFO · BRITTANY SWANSON · HEATHER A. OGDEN · MICHAEL A. WOLKOWITZ · SANA F. MASHEDY · RYAN D. WEDEKING
HEATHER M. PATRICK · JESSEE W. MATANA · AMY S. KAPNER · TAYLOR B. WALLIN* · ALISON J. BROWN · ERICA A. KUBO · STEPHANNIE U. OBIOHA
*CERTIFIED FAMILY LAW SPECIALIST THE STATE BAR OF CALIFORNIA BOARD OF LEGAL SPECIALIZATION

10100 SANTA MONICA BLVD., SUITE 1425 | LOS ANGELES, CA 90067 | TEL 310-277-9747 | FAX 310-277-4847
3161 MICHELSON DRIVE, SUITE 1160 | IRVINE, CA 92612 | TEL 949-397-3977 | FAX 949-800-1309

Concerning Rich Hill, we will not provide communications between him and his daughter based on privacy concerns. [Protected right to privacy under Article I, Section 1 of the *California Constitution*.]

Concerning Lisa Jackson, we are not aware that you are or have been trying to serve a Subpoena on Ms. Jackson. We will not provide communications between Ms. Hill and Ms. Jackson (who we are informed is Ms. Hill's AA sponsor), based on privacy concerns. [Protected right to privacy under Article I, Section 1 of the *California Constitution*.]

With reference to your request for our office to produce further records for you, although we have no obligation to do so, and although not relevant, enclosed are the June 3, 2021 results from the Chlamydia Trachomatis / Neisseria gonorrhoeae, DNA Probe, Urinalysis Culture (w/Refx) and Urinanlysis Micsop w/Refx to Cult. We ask that you *not copy or otherwise disseminate* the records with any of Ms. Hill's personal identifying information, e.g., address, phone number, social security number, medical insurance identification, etc. for Ms. Hill's privacy, safety and security.

Ms. Hill will not be releasing psychological testing information. It appears that you will obtain any other documents from the entities which you have subpoenaed. Frankly, the additional documents you have requested for 6/3/2021 and subsequent thereto, have no relevance as same pertain to a time after the assault and injuries occurred and Ms. Hill's initial medical treatment.

There is no outstanding discovery, and thus, no outstanding deficiency with any "production." You have had the DVRO Application and Orders in your possession since June 29, 2021. On July 23, 2021 you emphatically advised the Court that you were ready to proceed to trial. You then (after the lunch hour) asked the Court for a continuance which was granted. On July 28, 2021, you sought a second continuance again, despite your earlier claims of being ready to proceed to trial. This continuance was too granted and Ms. Holley advised Judge Gould-Saltman at that time, that she had everything from Petitioner's counsel, and was only waiting on subpoenaed documents. On August 2nd, you asked for a third continuance, which was denied.

We received via email today, *ex parte* notice for Monday August 9, 2021 for an order compelling the production of documents. This third *ex parte* application is wholly improper for *numerous* reasons, all of which we will include in our opposition and request for sanctions. Mr. Bauer clearly has all the money in the world to continue filing frivolous *ex parte* applications. *Ms. Hill does not* have the financial ability to continue having to respond.

We trust this letter has responded to your requests.

We will see you on Monday.

Very truly yours,

DOREEN MARIE OLSON
For the Firm

DMO/
Enclosures
Cc: Ms. Lindsey Hill (w/encls.)
Lisa Helfend Meyer, Esq.
Marc Garelick, Esq.
Bryan Freedman, Esq.

I:\WPDATA\Hill, Ms. Hill\Letters\L062921.to.Fetterolf.docx

**EXHIBIT 7**



MEYER, OLSON, LOWY & MEYERS, LLP
FAMILY LAW

MARC H. GARELICK

E-MAIL: MG@MOLFAMLAW.COM

August 6, 2021

**VIA EMAIL**
*JFETTEROLF@ZUCKERMAN.COM*

Jon Fetterolf, Esq.
Zuckerman Spaeder LLP
1899 M Street NW, Ste 1000
Washington, D.C. 20036

sholley@kwikhlaw.com
KMangels@kwikhlaw.com

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella Weitzman Iser Kump Holley, LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401

Re: **In re Matter of Hill/Bauer**

Dear Counsel:

This letter is in response to your letter dated August 4, 2021 wherein you requested that our office provide you with all native and digital images of the photographs contained in our Exhibit 4, Exhibit 5 and Exhibit 7, in addition to any other photographs that were provided by Ms. Hill to the media.

Please note that Ms. Hill has not produced any images to the media, thus there is no need to respond that specific request.

Regarding your request to produce the native and digital images of Exhibits 4, 5 and 7, attached hereto, please find time stamped photographs that have been provided by Ms. Hill and are not edited. Your request that our office provide native and digital images of the photographs taken of Ms. Hill is overbroad, oppressive and burdensome. We do not have the burden to hire a forensic or any other specialized person to obtain

LISA HELFEND MEYER* · DOREEN MARIE OLSON* · DANA LOWY · FELICIA R. MEYERS
ANNE N. SLUSSER · BENJAMIN VALENCIA II* · CRAIG S. PEDERSEN · MARY H. REDFIELD · PHILIP J. MONAHAN
ERIC W. MEYER · SEHBA SAULEHA ARIF · MARC H. GARELICK · ALYSSA D. DICKERSON · MARIE A. LAMOLINARA
NATALIE A. XIFO · BRITTANY SWANSON · HEATHER A. OGDEN · MICHAEL A. WOLKOWITZ · SANA F. MASHEDY · RYAN D. WEDEKING
JESSEE W. MATANA · AMY S. KAPNER · TAYLOR B. WALLIN* · ALISON J. BROWN · ERICA A. KUBO · STEPHANNIE U. OBIOHA · BRITTNEY A. RODRIGUEZ
*CERTIFIED FAMILY LAW SPECIALIST THE STATE BAR OF CALIFORNIA BOARD OF LEGAL SPECIALIZATION

10100 SANTA MONICA BLVD., SUITE 1425 | LOS ANGELES, CA 90067 | TEL 310-277-9747 | FAX 310-277-4847
3161 MICHELSON DRIVE, SUITE 1160| IRVINE, CA 92612 | TEL 949-397-3977 | FAX 949-800-1309

Jon Fetterolf, Esq.
Shawn Holley, Esq.
Kate Mangels, Esq.
August 6, 2021
Page 2

the requested information. We have attempted to comply with your request by producing what Ms. Hill has in her possession, custody, or control.

If you wish to discuss further, please do not hesitate to contact our office.

Very truly yours,

Marc H. Garelick

MARC GARELICK
For the Firm

MHG;BAR
Enclosures
Cc: Ms. Lindsey Hill (w/encls.)

D:\Users\brodriguez\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\GH9QVZW3\L080621.J.Fetterolf.Ltr.Photographs.docx

**EXHIBIT 8**

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, California 90067
Tel: (310) 277-9747
Fax: (310) 277-4847

Lisa Helfend Meyer, Esq., State Bar No. 106105
Marc H. Garelick, Esq., State Bar No. 258278
Doreen Marie Olson, Esq., State Bar No. 165293

RIGHT CHOICE LAW
5015 Birch Street, Suite 107
Newport Beach, CA 92660
Tel: (949) 570-5232

Fred Thiagarajah, Esq., State Bar No. 205772

FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Bryan J. Freedman, Esq., State Bar No. 151990

Attorneys for Petitioner,
LINDSEY HILL

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

In re the Matter of

Petitioner: LINDSEY HILL

And

Respondent: TREVOR BAUER

Case No.: 21STR003198

**PETITIONER'S WITNESS LIST**

Date: July 23, 2021
Time; 10:30 a.m.
Dept.: 25

Petitioner, LINDSEY HILL ("Petitioner"), hereby submits her Witness List of all non-impeachment witnesses she anticipates will be called in support of her case-in-chief at the hearing on her Request for Domestic Violence Restraining Order ("Trial") set for June 23, 2021 at 10:30 a.m. Petitioner expressly reserves the right to supplement the within

Witness List and/or call additional witnesses for the purposes of impeachment and/or rebuttal. The following identifies the anticipated witnesses and provides a summary of the testimony anticipated to be elicited:

1. **Petitioner, Lindsey Hill**: Pursuant to *Evidence Code*, Section 776, Petitioner will be examined regarding her DVRO application, all facts set forth in her declarations submitted in connection with her DVRO application, all facts and information pertaining to the requested relief, all matters relevant to her allegations of abuse by Respondent and request for restraining orders. [Time Estimate: 2 hours].

2. **Respondent, Trevor Bauer**: Pursuant to *Evidence* Code, Section 776, Respondent will be examined on all issues before the Court, including but not limited to, all allegations raised in Petitioner's declarations submitted in connection with Petitioner's DVRO application, and all factors bearing on any issues raised by Respondent. [Time Estimate: 2 hours].

3. **Detective Michael Giddens**: Detective Giddens is a third-party witness who will be appearing pursuant to a Civil Subpoena Duces Tecum. Detective Giddens will testify as to Petitioner's injuries sustained as a result of abuse perpetrated against her by Respondent in May of 2021, including his observations, opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

4. **Detective Sargent Cesar J. Jimenez**: Detective Sargent Jimenez is a third-party witness who will be appearing pursuant to a Civil Subpoena Duces Tecum. Detective Sargent Jimenez will testify as to Petitioner's injuries sustained as a result of abuse perpetrated against her by Respondent in May of 2021, including his observations, opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

5. **Detective Kimberly Jones**: Detective Jones is a third-party witness who will be appearing pursuant to a Civil Subpoena Duces Tecum. Detective Jones is currently in

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 • Los Angeles, California 90067

possession and control of the forensic examination records of Petitioner conducted by the Sexual Assault Response Team ("SART") at Palomar Health on May 18, 2021, which exam was ordered/requested by law enforcement. Detective Jones will testify as to her knowledge about Petitioner's injuries sustained as a result of abuse perpetrated against her by Respondent in May of 2021, her observations and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent, and produce the records from SART. [Time Estimate: 2 hours].

6. **Kelly Valencia, RN**: Nurse Valencia will be appearing pursuant to a Civil Subpoena Duces Tecum. Nurse Valencia will testify as to her examination of Petitioner, the SART report, and all photos and information concerning same. [Time Estimate: 1 hour].

7. **Ellen Stein, Ph.D.**: Petitioner reserves the right to call Dr. Stein as a general expert on domestic violence, including but not limited to consensual versus non-consensual sex, and any other matters as raised in Petitioner's DVRO application. [Time Estimate: 1 hour].

8. **Ciramely Maya**: Ms. Maya is Petitioner's best friend and is a third party witness who will testify as to her opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

9. **Richard Hill**: Mr. Hill is the Petitioner's father and a third party witness who will testify as to his opinions and knowledge of all matters relevant to Petitioner's allegations of abuse by Respondent. [Time Estimate: 30 minutes].

Dated: July 22, 2021

MEYER, OLSON, LOWY & MEYERS, LLP

By:____________________________
LISA HELFEND MEYER, ESQ.
MARC H. GARELICK, ESQ.
DOREEN MARIE OLSON, ESQ.
Attorneys for Petitioner,
LINDSEY HILL

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

**PROOF OF SERVICE**
**In Re Matter of Hill/Bauer**
**Case No. 21STRO03198**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 10100 Santa Monica Blvd., Suite 1425, Los Angeles, California 90067. On July 22, 2021, I served the document(s) described **PETITIONER'S WITNESS LIST** to be served on the interested parties in this action as follows:

☒ By serving ☐ the original ☒ a true copy thereof electronically by e-mail, as indicated below, addressed as follows:

Jon R. Fetterolf, Esq.
Zuckerman Spaeder LLP
485 Madison Avenue
10th Floor
New York, NY 10022-5871
E: jfetterolf@zuckerman.com

Attorneys for Respondent
Telephone: (212) 704-9600
Fax: (212) 704-4256

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella Weitzamn Iser Kump Holley LLP
808 Wilshire Blvd,, Third Floor
Santa Monica, CA 90401
E: sholley@kwikhlaw.com
kmangels@kwikhlaw.com

Attorneys for Respondent
Telephone: (310) 566-9800
Fax: (310) 566-9850

☐ **BY MAIL**: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after service of deposit for mailing in affidavit.

☒ **BY ELECTRONIC TRANSMISSION – EMAIL:** By transmitting a true copy of the above-described document(s) via email, using imaged files in .pdf format to the email address(es) for the above-interested party(ies) as indicated. The document(s) was served electronically and the transmission was reported as complete and without error. If the document(s) contained attachments or exhibits that could not be rendered in imaged files in .pdf format, then a complete hard copy was also served via regular United States mail.

☒ [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 22, 2021, at Los Angeles, California.

Jackie Kaminski

Signature

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

**EXHIBIT 9**

M|O|L|M

· MEYER, OLSON, LOWY & MEYERS, LLP
FAMILY LAW

MARC H. GARELICK

E-MAIL: MG@MOLFAMLAW.COM

July 27, 2021

**VIA EMAIL**
*JFETTEROLF@ZUCKERMAN.COM*

Jon Fetterolf, Esq.
Zuckerman Spaeder LLP
1899 M Street NW, Ste 1000
Washington, D.C. 20036

sholley@kwikhlaw.com
KMangels@kwikhlaw.com

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella Weitzman Iser Kump Holley, LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401

Re: **In re Matter of Hill/Bauer**

Dear Counsel:

The following is in response to Mr. Fetterolf's letter dated July 26, 2021 received at 6:09 p.m.

As we advised Ms. Holley in open court, we received a copy of the Alvarado Medical Center Records, late in the evening on Thursday, July 22, 2021, and indeed, we stated to Ms. Holley that we would provide a copy of same, which are enclosed herewith. To be clear, our representation pertained *to only* the records received from Alvarado Medical Center. We have Bates Stamped these documents for ease of reference [AH 001 – 086]. We ask that you *not copy or otherwise disseminate* the records with any of Ms. Hill's personal identifying information, e.g., address, phone number, social security number, medical insurance identification, etc. for Ms. Hill's

LISA HELFEND MEYER* · DOREEN MARIE OLSON* · DANA LOWY · FELICIA R. MEYERS
ANNE N. SLUSSER · BENJAMIN VALENCIA II* · CRAIG S. PEDERSEN · MARY H. REDFIELD · PHILIP J. MONAHAN
ERIC W. MEYER · SEHBA SAULEHA ARIF · MARC H. GARELICK · ALYSSA D. DICKERSON · MARIE A. LAMOLINARA
NATALIE A. XIFO · BRITTANY SWANSON · HEATHER A. OGDEN · MICHAEL A. WOLKOWITZ · SANA F. MASHEDY · RYAN D. WEDEKING
HEATHER M. PATRICK · JESSEE W. MATANA · AMY S. KAPNER · TAYLOR B. WALLIN* · ALISON J. BROWN · ERICA A. KUBO · STEPHANNIE U. OBIOHA
*CERTIFIED FAMILY LAW SPECIALIST THE STATE BAR OF CALIFORNIA BOARD OF LEGAL SPECIALIZATION

10100 SANTA MONICA BLVD., SUITE 1425 | LOS ANGELES, CA 90067 | TEL 310-277-9747 | FAX 310-277-4847
3161 MICHELSON DRIVE, SUITE 1160| IRVINE, CA 92612 | TEL 949-397-3977 | FAX 949-800-1309

privacy, safety and security. We have reserved Exhibit 25 for subpoenaed records and will request that these be so identified as such.

As to your erroneous claim of "deficiencies," we respond as follows:

Concerning Exhibit 14, that was submitted as part of Ms. Hill's DVRO Application as Exhibit "6", the first page of the "After Care Summary" is the only page that is relevant to Ms. Hill's requested relief for protection. We enclose the document for you. The subsequent pages 2-5, only contain information pertaining to a Urinalysis, Pregnancy Test and Medication list, no information of which should be made public or used to harass or embarrass Ms. Hill. We intend to ask that this document, excluding and/or otherwise redacting the private non-relevant information be referred to as Exhibit 14. Thus, it will be essentially what you have had since June 29, 2021, which is hardly a lack of disclosure as you have attempted to argue.

Regarding the balance of Exhibit 6 to Ms. Hill's DVRO, we enclose pages 1-3 which were attached in full to the DVRO – which were only redacted to delete Ms. Hill's personal identifying information (i.e., her medical id). With respect to page 1 of 7, entitled "Results" commencing with page 3 in the DVRO, we enclose for your reference only, pages 1 and 2, which contain *only* the blood test results, which are private and are *not* relevant to Ms. Hill's requested relief for protection. We enclose unredacted pages 3-4, which pages were included in Exhibit 6, but redacted to protect Ms. Hill's personal information, as well as the medications that she is taking. Said information should not be made public or used to harass or embarrass Ms. Hill, as said information is clearly not relevant. We enclose page 5 of the document, which was not included as part of Exhibit 6, as this page contains only the Urinalysis results, and other test results, which are not relevant, and should not be made public or used to harass or embarrass Ms. Hill. Finally, enclosed are pages 6 – 7, unredacted. The redacted pages were included in Exhibit 6. We intend to request that this document, excluding and/or otherwise redacting the private, non-relevant information be referred to as Exhibit 14. Accordingly, it will be essentially what you have had in your possession since June 29, 2021, less the urinalysis report and other test results. Further, your statement that, "there are several redactions in this document that go beyond the redaction of certain private identifying information," is patently false. To the contrary, the only redactions were Ms. Hill's medical id number and the medications which she is taking.

With respect to Exhibit 12 to Ms. Hill's DVRO, page 1 of the Exhibit is the SART Aftercare Instructions, which is what was provided to Ms. Hill. The redacted portions of the document are the cell phone numbers of the two San Diego Police Department detectives that were dispatched by the hospital based on Ms. Hill's physical condition. We attach an unredacted portion of this document, which obviously *should not be* disseminated or made public, for the privacy of the police officers. The balance of the documents which were provided to Ms. Hill from the SART team appear to be form documents, which we did not attach, and are informational, but are enclosed herewith for full transparency.

Concerning the balance of Exhibit 12 as contained in Ms. Hill's DVRO Application, following the "SART After-Care Instruction," and entitled, "Scripps", pages 1 -2 were attached. Pages 3 – 4 are merely a referral list of psychologists, etc., copies of which we enclose herewith. Page 5 was included as part of Exhibit 12. Page 6 was not included, as the entirety of the page contains Ms. Hill's past medical history, family history and medications, which information is not relevant to Ms. Hill's requested relief for protection and said information should not be made public or used to harass or embarrass Ms. Hill. Pages 7 – 8 were included as part of Exhibit 12 and are enclosed herewith. There appear to be remaining pages, which look like duplicates of Exhibit 6, which we addressed above.

Contrary to your baseless and frivolous assertion that the pages were intentionally not included for "strategic purposes" you have all the records complete as we have them, and as you will see, there is nothing relevant which has been withheld or redacted. If you now are only asking for the unredacted information, private medical history, medication lists, or personal identifying information, for the sole purpose of shaming, harassing, damaging, disseminating to the media, or otherwise causing embarrassment to Ms. Hill, we will not hesitate to bring this to the attention of the Court and seek that all documents, of any sort or nature be made confidential and subject to a Protective Order.

The bottom line is that you have all relevant information contained in the records requested. Please define the "host" of medical records which you are referencing. Your own statement confirming that we produced the CT Scan, which you believe is relevant, belies your own assertions. Ms. Hill is not clear how long she was unconscious, she believes it may have been 30 minutes, but how would she know for sure, she was

unconscious? Is this really a point that you want to make? Clearly, your client would be in a far better position to provide this information, and he will no doubt be asked.

As you are aware, we could not produce the medical records from Palomar SART Unit, until the Protective Order was in place. Your assumption that we would be receiving the file on Friday, when the Protective Order had not even been drafted, once again, is improperly misplaced. Now that the Order has been entered by the Court, we trust you have received directly from the Pasadena City Attorneys Office, the SART file and pictures, *as received concurrently with you who were copied at 1:57 p.m.* We believe you will find the information contained therein, significant and compelling to substantiate the abuse perpetrated by Mr. Bauer against Ms. Hill. We find it remarkable that you can argue, *in any context whatsoever*, that the injuries sustained by Ms. Hill were asked for or consented to, *particularly when she was unconscious*. We will need guidance from the Court as to how the SART documents will be presented at the time of hearing, without causing Ms. Hill further emotional and psychological harm. You may consider retracting, considerably, the following statement you made to the press:

> **"Mr. Bauer had a brief and wholly consensual sexual relationship initiated by [the woman] beginning in April 2021. We have messages that show [the woman] repeatedly asking for "rough" sexual encounters involving requests to be "choked out" and slapped in the face." - Jon Fetterolf, June 29, 2021**

We never represented that we received documents from Palomar Heath. We represented that we received a file of emailed documents late Thursday, July 22nd, from Alvarado Medical Center, which we have addressed above.

Your recitation as to what we can and cannot present about our expert, Dr. Ellen Stein, clearly contradicts your very own press release. You have placed at issue, on your client's behalf, consensual vs. non-consensual sex. We do not intend on producing the information you requested.

Finally, concerning Ms. Maya you are correct she is listed on our Witness List. You had Ms. Maya served with a Civil Subpoena Duces Tecum to mail the documents to the Court. We respectfully suggest that you check with the LASC mailroom to locate the records, as we believe she dutifully complied with the obligation imposed upon by

Jon Fetterolf, Esq.
Shawn Holley, Esq.
Kate Mangels, Esq.
July 27, 2021
Page 5


per the terms of the Subpoena.  You are correct, we do not represent Ms. Maya, so
whatever threats you are making, are unfortunately being directed to the wrong person.

     We trust this letter has fully and completely responded to your fallacious
contentions and assertions.

Very truly yours,

DOREEN MARIE OLSON
For the Firm


DMO/
Enclosures
Cc:  Ms. Lindsey Hill (w/encls.)

I:\WPDATA\Hill, Ms. Hill\Letters\L062921.to.Fetterolf.docx

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 - Los Angeles, California 90067

**PROOF OF SERVICE**
**In Re Matter of Hill/Bauer**
**Case No. 21STRO03198**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 10100 Santa Monica Blvd., Suite 1425, Los Angeles, California 90067. On August 9, 2021, I served the document(s) described **PETITIONER'S OPPOSITION TO RESPONDENT'S *EX PARTE* APPLICATION NOTICED FOR AUGUST 9, 2021,TO COMPEL THE PRODUCTION OF DOCUMENTS; DECLARATION OF DOREEN MARIE OLSON, ESQ.** to be served on the interested parties in this action as follows:

☒ By serving ☐ the original ☒ a true copy thereof electronically by e-mail, as indicated below, addressed as follows:

| | |
|---|---|
| Jon R. Fetterolf, Esq.<br>Zuckerman Spaeder LLP<br>485 Madison Avenue<br>10th Floor<br>New York, NY 10022-5871<br>E: jfetterolf@zuckerman.com | Attorneys for Respondent<br>Telephone: (212) 704-9600<br>Fax: (212) 704-4256 |
| Shawn Holley, Esq.<br>Kate Mangels, Esq.<br>Kinsella Weitzamn Iser Kump Holley LLP<br>808 Wilshire Blvd,, Third Floor<br>Santa Monica, CA 90401<br>E: sholley@kwikhlaw.com<br>kmangels@kwikhlaw.com | Attorneys for Respondent<br>Telephone: (310) 566-9800<br>Fax: (310) 566-9850 |

☐ **BY MAIL**: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after service of deposit for mailing in affidavit.

☒ **BY ELECTRONIC TRANSMISSION – EMAIL:** By transmitting a true copy of the above-described document(s) via email, using imaged files in .pdf format to the email address(es) for the above-interested party(ies) as indicated. The document(s) was served electronically and the transmission was reported as complete and without error. If the document(s) contained attachments or exhibits that could not be rendered in imaged files in .pdf format, then a complete hard copy was also served via regular United States mail.

☒ [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 9, 2021, at Los Angeles, California.

Jackie Kaminski — Signature

# EXHIBIT 3

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
SHAWN HOLLEY (SBN 136811)
sholley@kwikhlaw.com
KATE MANGELS (SBN 301811)
kmangels@kwikhlaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 566-9800
Facsimile: (310)566-9850

ZUCKERMAN SPAEDER LLP
JON R. FETTEROLF (admitted *pro hac vice*)
jfetterolf@zuckerman.com
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

Attorneys for Respondent TREVOR BAUER

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

LINDSEY HILL,

Petitioner,

vs.

TREVOR BAUER,

RESPONDENT.

CASE NO. 21STRO03198

**RESPONDENT TREVOR BAUER'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Date: August 16, 2021
Time: 10:30 a.m.
Dept.: 35

Action Filed: June 29, 2021
Hearing Date: August 16, 2021

7889145.1

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 16, 2021, Respondent Trevor Bauer will move to compel the production of certain outstanding medical records.

This motion is made pursuant to California Code of Civil Procedure § 2017.010, California Law, all other applicable provisions of statutory and common law, and the inherent powers of this Court. This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jon Fetterolf, all of the pleadings and records on file in this action, and on such other and further oral and documentary evidence as may be presented at or before the hearing of this matter.

DATED: August 13, 2021

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP

By: ______________________
Shawn Holley
Kate Mangels
Attorneys for Respondent
TREVOR BAUER

DATED: August 13, 2021

ZUCKERMAN SPAEDER LLP

By: ______________________
Jon R. Fetterolf
Attorney for Respondent
TREVOR BAUER

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Respondent Trevor Bauer ("Respondent") hereby requests a Court order compelling Petitioner Lindsey Hill ("Petitioner") to produce outstanding medical records, communications, and photographs to Respondent by no later than August 16, 2021.

## II. PROCEDURAL BACKGROUND

On June 29, 2021, Petitioner filed a request for a domestic violence restraining order (the "Request"). Petitioner was granted an ex parte Temporary Restraining Order that same date and a hearing request was set for July 23, 2021 (the "July Hearing"). The evening before the July Hearing, Petitioner circulated her Exhibit and Witness Lists, which indicated that Petitioner intended to call a total of nine witness and to introduce a host of medical records. Because Petitioner had not provided complete records in advance of the July 23 Hearing, the Hearing was continued to August 2, 2021. On July 27, 2021, having still not received complete medical as well as other records, Respondent moved for a continuance of the Hearing so it could receive those records sufficiently in advance of the hearing date. Accordingly, the Court continued the hearing until August 16, 2021 (the "August Hearing"). On August 3 & 4, 2021, Respondent sent a request to Petitioner for documents including: (1) complete medical records, to include the results of any follow-up tests and examinations stemming from the alleged incident; (2) communications between Petitioner and two individuals she intends to call as witnesses at the August Hearing, as well as one individual with whom Petitioner spoke the day after the alleged incident; and (3) two videos sent by Petitioner to Respondent via Instagram direct message; and (4) native and digital images of the photographs in Petitioner's request. After Petitioner failed to fully respond, Respondent filed a Motion to Compel Production of Documents on August 6, 2021, and the Court held a hearing on August 9, 2021.

At the August 9, 2021 hearing, the Court ordered Petitioner to produce communications Petitioner had with Ms. Lisa Jackson and Ms. Ciramely Maya, native images of photographs, and

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

medical records.[1] On August 10, 2021, Petitioner produced *some*, but not all, of the responsive materials, including certain medical records, text message communications, and photographs. *See* Fetterolf Decl., Ex. A. On August 12, Respondent's counsel informed Petitioner's counsel that the production failed to include all the medical records Respondent specifically requested, including the results of a June 3, 2021 MRI and records related to Petitioner's psychological examinations. In addition, Respondent's counsel explained that there are significant gaps in text message communications Petitioner provided with her two friends, Ms. Jackson and Ms. Maya. *See* Fetterolf Decl., Ex. B. Furthermore, while Petitioner appeared to have provided the native and digital files of the photographs she recently provided Respondent, they have been produced in a way that seems to prevent Respondent from accessing the live photo feature that was present on many of these photos. *See id.* Additionally, the production of photos further revealed what appears to be about 60 additional photos she took during the 42-hour period after she left Respondent's home that should also be produced. *See id.* Respondent submits this Motion to request these outstanding records by no later than August 16, 2021. *Id.*

## III. THE RECORDS ARE RELEVANT TO RESPONDENT'S DEFENSE

California Code of Civil Procedure § 2017.010 provides that Respondent is entitled to "discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." As set forth below, the documents requested are relevant to the instant dispute.

Respondent is still missing pertinent medical records that he specifically requested and that the Court instructed Petitioner to provide. In his August 6, 2021 Motion to Compel, Respondent requested the results of two MRI examinations referenced in Petitioner's Scripps Medical Center records that were ordered on June 3, 2021. Petitioner provided the results of her June 21, 2021

[1] The Court also instructed Petitioner to provide the date and time on which she deleted Instagram messages with Respondent. That information has not been provided.

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

MRIs; however, the Scripps Medical Center record clearly states that MRIs were ordered to take place on June 3, 2021. Given the close proximity of these June 3, 2021 MRIs to the alleged incident, Respondent must be permitted to review the results of those MRIs. Respondent continues to seek medical records directly from providers, including Scripps, Alvarado, and Palomar, and while counsel is still working with these entities to try to receive these records (and expects that records will eventually be provided by two of these entities), those records remain outstanding at the time of the filing of this motion. At 9:51 a.m. on August 13, 2021, Respondent received over 600 pages of medical records from Scripps, which is being reviewed. Alvarado has not responded to the request for records, and Respondent expects records from Palomar once a protective order is finalized.

Although Petitioner claims that she did not undergo "psychological testing," *see* Fetterolf Decl., Ex. A, Petitioner's counsel stated at the August 9, 2021, hearing that Petitioner met with a therapist three times in connection with the alleged incident. Although Respondent has subpoenaed medical records related to those therapy appointments directly from the provider, those records will not be available until after the hearing. Petitioner's affidavit states that she was "diagnosed with PTSD and severe trauma," Pet. Decl. ¶ 30, thereby placing this diagnosis at issue in this hearing. As a result, records from her therapist are directly relevant and must be provided to allow Respondent to adequately prepare for the hearing.

Petitioner also failed to provide all communications with Ms. Maya and Ms. Jackson, despite the Court's order that she do so. First, there are significant gaps missing in the text messages with Ms. Maya and Ms. Jackson. Petitioner failed to provide her communications with Ms. Jackson between May 19, 2021 and May 27, 2021, and her communications with Ms. Maya between May 18, 2021 and May 28, 2021. Based on her near-daily communications with these individuals and multiple communications about Respondent, text messages during the period

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

immediately following the alleged incident are certainly relevant to his defense.[2] Second, Respondent is seeking *all* communications between Petitioner and Ms. Jackson and Ms. Maya. That request is not limited to text message communications and includes communications with those individuals between April 18, 2021 to the present that occurred over email or via social media platforms including Instagram, Facebook, Snapchat, WhatsApp, or any other platforms.

Lastly, in response to the Court's order, Petitioner produced a Cellebrite extraction report that includes approximately 20 photographs and the metadata for those photographs. Based on the report and the photographs provided, we have determined that Petitioner took 83 photographs in an approximately 42-hour period immediately after her second interaction with Respondent. Specifically, Petitioner took a photograph on May 16, 2021 at 3:17 a.m. at Respondent's house (as detailed in her affidavit), which, according to the photograph's metadata, is numerically labeled IMG_3967. On May 17, 2021, at 9:58 p.m., Petitioner took a photograph labeled IMG_4050. IPhone photographs are labeled numerically, indicating that Petitioner took a total of 83 additional photographs, many of which were not provided to Respondent. Based on text message communications with Respondent and others, Petitioner took multiple photographs during this period to document her alleged injuries. Respondent is entitled to those photographs, not just a limited subset of photographs pre-selected by Petitioner's counsel. Additionally, in producing the Cellebrite report, Petitioner appears to have turned off the "live photo" feature evidence in screenshots of those photographs; Respondent requests that the photographs be produced with the "live photo" feature included to allow for complete examination of each photograph by Respondent's forensic experts. Finally, Respondent requests that Petitioner provide GPS information readily available in a Cellebrite extraction report, as such information will document the exact location where these photos were taken.

---

[2] Respondent has also filed a Motion *In Limine* For Sanctions For Spoliation Of Evidence Or, In The Alternative, For An Evidentiary Hearing On Petitioner's Intentional Destruction Of Evidence to address the apparent deletion of these messages by Petitioner, among other concerns related to Petitioner's destruction of evidence.

## IV. CONCLUSION

Based on the foregoing, Respondent requests that the Court grant Respondent's motion to compel production of documents by no later than August 16, 2021.

DATED: August 13, 2021

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP

By: ______________________________
Shawn Holley
Kate Mangels
Attorneys for Respondent
TREVOR BAUER

ZUCKERMAN SPAEDER LLP

By: ______________________________
Jon R. Fetterolf (admitted *pro hac vice*)
Attorney for Respondent
TREVOR BAUER

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**DECLARATION OF JON R. FETTEROLF**

I, Jon R. Fetterolf, declare as follows:

1. I am an attorney at law admitted *pro hac vice* in this matter. I am a partner with the law firm of Zuckerman Spaeder, counsel for Trevor Bauer. Unless stated otherwise, I have personal, first-hand knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to those facts under oath.

2. Attached as Exhibit A is a true and correct copy of a letter dated August 10, 2021 from Doreen Olson to Jon Fetterolf.

3. Attached as Exhibit B is a true and correct copy of a letter dated August 12, 2021 from Jon Fetterolf to Doreen Olson.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

ZUCKERMAN SPAEDER LLP

By: ______________________________
Jon R. Fetterolf (admitted *pro hac vice*)
Attorney for Respondent
TREVOR BAUER

# EXHIBIT A



MEYER, OLSON, LOWY & MEYERS, LLP
FAMILY LAW

DOREEN MARIE OLSON*

E-MAIL: DMO@MOLFAMLAW.COM

August 10, 2021

**VIA EMAIL AND MESSENGER**
*JFETTEROLF@ZUCKERMAN.COM*
*SHOLLEY@KWIKALAW.COM*

Jon Fetterolf, Esq.
Zuckerman Spaeder LLP

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella, Weitzman, Iser and Kump

Re: **In re Matter of Hill/Bauer**

Dear Counsel:

As represented to the Court at yesterday's hearing that we would voluntarily produce the information you have requested, enclosed please find the following:

1. As you have requested, we are providing the metadata and native images from pictures taken by Ms. Hill, which have been downloaded onto the enclosed flash drive **[delivered via messenger to Ms. Mangels' office].** As you will find, the images have not been doctored, modified or changed in anyway, contrary to your claims to the Court. If you have any questions about the flash drive, the imaging that occurred or the process of obtaining the metadata, please contact Mr. Garelick for assistance.

2. As also requested, we enclose as a pdf the text messages between Ms. Maya and Ms. Hill for the period April 18th to June 20th**.** You have all the Ms. Maya texts for the period commencing June 19, 2021 that were provided to you based on your subpoena request.

3. The two videos that Ms. Hill sent to Mr. Bauer via Instagram Direct Messages on April 29, 2021 at 9:38 a.m. and 11:24 a.m. were not recovered. Ms. Hill has made further efforts to diligently search and reasonably inquire as to the viability of accessing the two videos. However, the videos no longer exist. To be clear, we are not disputing whether or not Ms. Hill, in fact, sent the two videos to Mr. Bauer on April 29, 2021. We simply are unable to retrieve and produce the two videos pursuant to Mr. Fetterolf's request.

LISA HELFEND MEYER* · DOREEN MARIE OLSON* · DANA LOWY · FELICIA R. MEYERS
ANNE N. SLUSSER · BENJAMIN VALENCIA II* · CRAIG S. PEDERSEN · MARY H. REDFIELD · PHILIP J. MONAHAN
ERIC W. MEYER · SEHBA SAULEHA ARIF · MARC H. GARELICK · ALYSSA D. DICKERSON · MARIE A. LAMOLINARA
NATALIE A. XIFO · BRITTANY SWANSON · HEATHER A. OGDEN · MICHAEL A. WOLKOWITZ · SANA F. MASHEDY · RYAN D. WEDEKING
JESSEE W. MATANA · AMY S. KAPNER · TAYLOR B. WALLIN* · ALISON J. BROWN · ERICA A. KUBO · STEPHANNIE U. OBIOHA · BRITTNEY A. RODRIGUEZ
*CERTIFIED FAMILY LAW SPECIALIST THE STATE BAR OF CALIFORNIA BOARD OF LEGAL SPECIALIZATION

10100 SANTA MONICA BLVD., SUITE 1425 | LOS ANGELES, CA 90067 | TEL 310-277-9747 | FAX 310-277-4847
3161 MICHELSON DRIVE, SUITE 1160 | IRVINE, CA 92612 | TEL 949-397-3977 | FAX 949-800-1309

As I represented to the court yesterday, and as represented in my August 6, 2021 letter in response to Mr. Fetterolf's August 3, 2021 letter, Ms. Hill deleted her Instagram messages with Mr. Bauer. However, contrary to representations made by Mr. Fetterolf to the Court yesterday, the deletion of Ms. Hill's Instagram messages with Mr. Bauer did not occur after she met with the police, hired counsel, and contemplated her own claims. The deletion occurred on or before April 29, 2021. We enclose a screenshot from Ms. Hill, time-stamped April 29, 2021 at 9:26 p.m., where you will see that the two videos Mr. Fetterolf seeks are no longer visible within the Instagram messages chain between Ms. Hill and Mr. Bauer. This means they no longer existed as of that date.

Furthermore, even if Ms. Hill had not deleted her Instagram chain with Mr. Bauer, the nature of the two Instagram videos that she sent to him on April 29, 2021 does not permit her the ability to re-access them. Pursuant to Instagram's Help Center, these kinds of videos are labeled "disappearing videos." This is because once it has been sent by Ms. Hill, received, opened, and seen by Mr. Bauer, the videos are automatically deleted from both Ms. Hill and Mr. Bauer's Instagram. We enclose the relevant Instagram FAQs sheet explaining the nature of "disappearing videos."

In short, the sending party cannot view disappearing photos or videos after they've been sent, but can only see if they were delivered, opened, replayed or if someone took a screenshot. It is our understanding that unless Ms. Hill saved the videos onto her iPhone device prior to sending to Mr. Bauer, which she did not, there is no way for Ms. Hill to retroactively retrieve the two videos Mr. Fetterolf seeks.

As I represented to the Court yesterday, Ms. Hill previously contacted Instagram through Facebook, on July 15, 2021, to see what she could recover in respect to her Instagram messages with Mr. Bauer. We enclose the three-page document of messages Instagram was able to restore pursuant to Ms. Hill's inquiry. Beyond the enclosed Instagram messages, the Instagram messages attached to Ms. Hill's original DVRO request, and the Instagram messages in Mr. Bauer's possession, custody, and control, there are no additional Instagram messages (including videos and pictures) within Ms. Hill's possession, custody, and control.

4. We are trying to obtain the native file of the limited text messages between Ms. Hill and Mr. Bauer that were downloaded from Ms. Hill's phone on June 28, 2021. As soon as we receive same, we will provide you with the documents.

5. Further, you have requested additional medical records, we attach the following pdf documents in response to your request:

a. Urinalysis dated (list specifics)

b. Urinalysis dated

c. MRI Face without contrast

d. MRI Brain without contrast

e. DNA probe

Said documents represent all medical testing results that Ms. Hill obtained from Scripps. Ms. Hill confirmed (as I represented in Court yesterday), that she did not undergo any psychological testing, thus, there are no results. Please ensure that any identifying information for Ms. Hill is redacted and not placed into the public record for both her privacy and security.

6. See attached pdf of the text messages from Lisa Decker and Ms. Hill.

If there are additional documents that you believe exist or are requesting, please meet and confer with our office directly. We have been more than transparent throughout this process.

Jon Fetterolf, Esq.
Shawn Holley, Esq.
Kate Mangels, Esq.
August 10, 2021
Page 4

We ask that you produce all documents that you have received from Kyle Erickson, Derek Dawson, and any medical providers, as well as all text messages that you have been able to recover between Mr. Bauer and Ms. Hill.

Very truly yours,

Doreen Marie Olson

DOREEN MARIE OLSON
For the Firm

DMO
Enclosures
Cc: Ms. Lindsey Hill
Lisa Helfend Meyer, Esq.
Marc Garelick, Esq.
Bryan Freedman, Esq.
N. Fred Thiagarajah, Esq.

J:\Hill, Lindsey\Letters\L08102021.to Opposing Counsel. Docs per Court 0809 Order.2.docx

# EXHIBIT B



Jon R. Fetterolf
PARTNER
Zuckerman Spaeder LLP
jfetterolf@zuckerman.com
(202) 778-1880

August 12, 2021

**VIA E-MAIL**

Doreen Olson, Esq.
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, CA 90067
dmo@molfamlaw.com

Re: **Petitioner's Exhibits and Witness List**

Dear Doreen:

Thank you for your letter of August 10 and for providing the enclosed information. I want to follow up on several unresolved or unaddressed issues, as well as some new issues your production has raised.

First, there are significant gaps missing in the text messages you provided for Petitioner's communications with Ciramely Maya and Lisa Jackson. We are missing communications between 5-18 and 5-27 for Ms. Jackson, and between 5-17 and 5-29 for Ms. Maya. Considering the number and frequency of Petitioner's daily communications with these two individuals, it is odd that both are missing messages from this similar gap in time. Please provide those communications by COB today. I am also assuming per your production that there are no other communications between Ms. Hill and these individuals during the relevant period (April 18 to the present) on some other form of communication device (Instagram, Snapchat, etc.). To the extent there are, these are similarly responsive to our request.

Second, as to the deleted videos in the Instagram messages, you referenced in your prior correspondence as well as during the hearing with the Court on Monday, August 9, 2021 that Ms. Hill deleted all her Instagram messages with Mr. Bauer. The Court asked you to provide the time and date when Ms. Hill deleted these messages, and this information was not provided in your letter. Please provide that information by COB today. As to your claim that these videos no longer existed after April 29, as you have suggested in your letter, that is not consistent with the purported support you provided, which is a screenshot from many hours after the videos were sent, and which does not contain the relevant portion of the Instagram chain in which the videos were sent. However, we will address your assertions separately in a filing before the Court.

Third, even with your production of certain medical records from Scripps, we are still missing certain medical records that we have requested

- **MRIs -** It appears that you have provided MRIs we requested that were taken on 6-21, but those referenced in the Scripps medical record from her visit on 6/3 (MRI brain, MRI face – expected date 6/3/21 have still not been provided).  Please provide these by COB today.

- **Therapy Records -** during the 8/9 hearing you represented that Ms. Hill was "referred and has met with a therapist three times concerning the PTSD, depression symptoms," and that therapy was "in connection with this incident."  You later identified the therapist as Erika Moses from the San Diego Center for Trauma Recovery.  Since this person was identified, we have since subpoenaed records from this individual, but they will not be available until after the hearing commences.  Rather than produce these records, you noted because Ms. Hill did not undergo any psychological testing, these records would not be produced.  But Petitioner's own affidavit, paragraph 30, notes that she has been "diagnosed with PTSD and severe trauma," thereby introducing her psychological condition into this hearing.  As such, the records from these therapy sessions which you confirmed at the hearing relating to this incident must be produced.  Accordingly, please provide these by COB today so they can be reviewed and used at the hearing.

Fifth, as you are aware, we have subpoenaed the following entities—Scripps, Alvarado, and Palomar medical centers—but we have still not received documents.  While we are still working with both Scripps and Alvarado to facilitate a subpoena response, we again request that you provide any medical records from these entities, as well as any others in your possession relating to her interactions with Respondent by COB today.  As to Palomar, it appears they are withholding production based on the need for a written consent to be provided by Petitioner as well as a Protective Order signed by the parties per correspondence sent to both of us yesterday.  Please provide the requested consent from Petitioner to Scripps to allow us both to receive these documents.  We are happy to treat the medical records we receive from Palomar as Confidential based on the terms and conditions of the same Protective Order we entered pertaining to the SART examination, or if there is a need for the entry of a similar Protective Order to protect these disclosures, that is fine also.

Lastly, we received certain picture images as well as the Cellebrite extraction report from the imaging that was done of Petitioner's phone.  From this report and the photos provided, we've been able to determine that at 3:17 am on May 16 Petitioner took a photo presumably at Respondent's house (according to Petitioner's affidavit) and that photo is numerically labeled IMG_3967.  From that time until May 17, 2021 at 9:58 p.m.—approximately 42 hours—Petitioner took an additional 83 photos, which we can determine as iPhone photos are labeled numerically and the photo taken at 9:58 p.m. is labeled IMG_4050.  Considering this is the time

period during which she appears to take photos of herself for the purpose of documenting her alleged injuries, these photos are relevant and need to be provided for review.  Please send these photos by COB today.  Also, it appears that before you provided the photos you turned off the live photo function which we know was evident in a number of these photos from your prior screen shots.  Accordingly, please send all of these photos (IMG_3967-4050) with the live photo function turned back on.  Lastly, because Petitioner's cellphone was imaged using a Cellebrite extraction, you are also able to provide GPS information noting where these photos were taken.  Please provide that with your updated production of these photos.  Because these will need to be provided and reviewed by our expert, please provide these materials by COB today.

As to the additional records you've requested, the Instagram and text communications between Petitioner and Respondent were provided in their entirety to you at the July 23 hearing.  The text messages were separately provided to Mr. Garelick along with my June 29, 2021 letter to him in response to him notifying Respondent about the impending ex parte filing.  We have provided you the texts messages we received from Mr. Erickson and Derek Dawson previously.  We did receive two photos from Mr. Erickson by email that Kate Mangels will provide under a separate cover.  If you don't believe you have any of these materials just let us know and we can resend.  To the extent we receive any additional documents responsive to our subpoenas we will provide you those materials promptly.

Sincerely

Jon R. Fetterolf

cc:     Shawn Holley (sholley@kwikhlaw.com)

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 808 Wilshire Boulevard, 3rd Floor, Santa Monica, CA 90401.

On August 13, 2021, I served true copies of the following document(s) described **RESPONDENT TREVOR BAUER'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** on the interested parties in this action as follows:

Marc H. Garelick, Esq.
Doreen M. Olsen, Esq.
Lisa H. Meyer, Esq.
**Meyer, Olson, Lowy & Meyers, LLP**
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, CA 90067
Email: mg@molfamlaw.com
Email: dmo@molfamlaw.com
Email: lhm@molfamlaw.com

Bryan Freedman, Esq.
**Freedman + Taitelman, LLP**
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Email: bfreedman@ftllp.com

Fred Thiagarajah, Esq.
**Right Choice Law**
5015 Birch St., Suite 107
Newport Beach, CA 92660
Email: fred@rightchoicelaw.com

Attorneys for Petitioner

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address jcollins@kwikhlaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on August 13, 2021, at Santa Monica, California.

Jentry Collins
Jentry Collins

# EXHIBIT 4

MEYER, OLSON, LOWY & MEYERS, LLP
3161 Michelson Drive, Suite 1160
Irvine, California 90067
Tel: (949) 397-3977
Fax: (949) 800-1309

Lisa Helfend Meyer, State Bar No. 106105
Doreen Marie Olson, Esq., State Bar No. 165293
Marc H. Garelick, Esq., State Bar No. 258278

Attorneys for Petitioner,
LINDSEY HILL

CONFORMED COPY
ORIGINAL FILED
Superior Court of Califr
County of Los Angeles

AUG 16 2021

Sherri R. Carter, Executive Officer/Clerk of Court

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

In re the Matter of

Petitioner: LINDSEY HILL

And

Respondent: TREVOR BAUER

Case No.: 21STRO03198
[Dept 35]

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO COMPEL AND MOTION FOR SANCTIONS FOR SPOILATION OF EVIDENCE**

**Trial Dates: 8/16-8/19/2021**
**Time: 8:30 a.m.**
**Dept. 35**

Petitioner, LINDSEY HILL ("Ms. Hill"), submits the within Opposition to Respondent's, Trevor Bauer ("Mr. Bauer"), latest filing of Motions at the eleventh hour in another attempt to delay this proceeding or attempt to exclude Ms. Hill from putting on her case. For purposes of efficient and Judicial Resources, Ms. Hill responds to both Respondent's Motion to Compel and Motion for Sanctions for Spoilation of Evidence in one pleading. We request that both motions be denied in their entirety.

**I.**

**INTRODUCTION**

The theme of Mr. Bauer's litigation has been to attack, attack and attack. Respondent has gone on a bullying rampage to attempt to find any impropriety as an excuse for his physical and sexual assault of Ms. Hill. The latest attack is Mr. Bauer's

MEYER, OLSON, LOWY & MEYERS, LLP
3161 Michelson DRIVE, Suite 1160 · Irvine, California 92612

request for Ms. Hill to prove a negative, namely that Ms. Hill produce records that do not exist (and somehow prove they do not exist) and to punish Ms. Hill for "deletion" of videos by a third party social media company (Instagram) and communications with other third parties that she does not normally keep. Despite no formal discovery, Ms. Hill has cooperated with a fishing expedition of her entire life. Her intimate and very personal medical records have been released. Her therapy notes have been released. She has cooperated and signed protective orders so that her hospital records would be released as well as the SART exam held by the Pasadena Police Department. To the extent information was on her phone or could be obtained by a third party it was produced, including texts with thirds parties, texts with Respondent and social media messages. There is simply nothing in Ms. Hill's possession and control that is relevant to the within request for Domestic Violence Restraining Order that exists and has yet to be produced. There is no reason why this case cannot go forward and no reason why it should be delayed any further because Respondent *believes* additional documents *may* exist. Unless he can affirmatively prove that the records do exist, he cannot speculate and create an endless loop of additional document requests, continuances and then further requests.

As to a request for sanctions due to spoilation of evidence, Respondent's contentions are completely speculative. He speculates that after the assault, Petitioner was immediately in litigation mode and ready to run to Court. That is simply not the facts of this case. Petitioner is a domestic violence victim. She was embarrassed, injured and in pain after the second physical and sexual assault. So much so that she had to go to the hospital and undergo intrusive and comprehensive medical exams for her injuries. She needed time to recover from the shock of what happened. She sought the protection of the Pasadena Police Department who should thought would protect her. She followed their requests, had multiple interviews with them, cooperated with a cold call to Respondent and allowed them to take a full copy of her phone. She did not file a civil lawsuit. She did not retain an attorney. It was not until weeks later when the Pasadena

MEYER, OLSON, LOWY & MEYERS, LLP
3161 Michelson DRIVE, Suite 1160 · Irvine, California 92612

Police Department continued to make promises of an arrest and pressing charges that never came to fruition that Petitioner was forced to take action on her own. Upon retaining counsel, she had her phone again imaged for specific documents, she stopped her custom and practice of deleting records to keep room on her phone or because she was embarrassed to what had occurred. She did everything she could to maintain the record at that point.

There is simply no nefarious ploy to destroy records. There is no bad faith or bad acts by Petitioner. There is only cooperation, voluntary production of records and an effort to move forward with this hearing as expeditiously as possible so that she can seek the protection that she needs and move on with her life. Accordingly, Respondent's last second motions should be denied in their entirety.

## II.

## MOTION TO COMPEL ADDITIONAL RECORDS

Ms. Hill has been overly cooperative throughout the process of this matter. As the Court recalls, no specific requests of discovery were made to Ms. Hill prior to the first setting of this Request for a Domestic Violence Restraining Order. Mr. Bauer is requesting four categories of documents, as follows: 1) additional medical records; 2) gaps in text messages; 3) access to live photo features; and 4) production of additional photos. As will be discussed in Ms. Olson's declaration all of these requests have been completely complied with to the extent that documents are in the possession, custody or control of Ms. Hill or for Ms. Hill to make diligent and reasonable efforts to obtain. There are no additional medical records to produce. There are gaps in text messages because Ms. Hill and the third party did not communicate with each other over text message during that time period. We have provided all of the metadata and native images for the requested photos. We have provided the additional photos on her phone during that time period. In good faith, we have complied with every single request made by Respondent's counsel. As such, this Motion to Compel should be denied in its entirety.

/ / /

MEYER, OLSON, LOWY & MEYERS, LLP
3161 Michelson DRIVE, Suite 1160 · Irvine, California 92612

MEYER, OLSON, LOWY & MEYERS, LLP
3161 Michelson DRIVE, Suite 1160 • Irvine, California 92612

III.

**THE MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE SHOULD BE DENIED**

Mr. Bauer wants Ms. Hill sanctioned for deleting information that he believes is relevant to his case. However, it will be shown at the time of trial that Ms. Hill deleted information regularly from her phone for two reasons: 1) storage capacity on her phone; and 2) embarrassment that she was still in contact with Mr. Bauer after her friends told her not to see him again. Ms. Hill never deleted anything in contemplation of litigation. She never deleted things purposefully that would hurt her case or selectively kept things that helped her case. In fact, when she decided to go seek protection and meet with counsel, she back up her phone with a forensic expert and changed her custom and practice of regularly deleting items. Since that date, Ms. Hill stopped with the practice and has not removed anything from her phone. See attached declaration of Rory Montez.

Further, Mr. Bauer purports that Ms. Hill deleted texted between the Parties on both text messages and Instagram. However, Mr. Bauer was a participant in those exchanges and should have those records himself. In fact, Mr. Bauer's counsel first sent Ms. Hill's team the text messages between the Parties after ex parte notice was given for the request for a Domestic Violence Temporary Restraining Orders.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MEYER, OLSON, LOWY & MEYERS, LLP
3161 Michelson DRIVE, Suite 1160 · Irvine, California 92612

## IV.

## CONCLUSION

For the reasons set forth herein, Ms. Hill respectfully requests that the Court deny Respondent's Motion to Compel as all documents in Ms. Hill's custody, possession and control have been produced. Further, Ms. Hill requests that the Motion for Sanctions for spoilation of evidence should be denied in its entirety as the documents that were deleted were done before Ms. Hill contemplated litigation in her normal course and practice.

Dated: August 15, 2021

MEYER, OLSON, LOWY & MEYERS, LLP

By:________________________________
LISA HELEND MEYER, ESQ.
DOREEN MARIE OLSON, ESQ.
MARC H. GARELICK, ESQ.
Attorneys for Petitioner
LINDSEY HILL

Dec of Doreen Olson

**ATTACHMENT 10:**

**DECLARATION OF DOREEN MARIE OLSON, ESQ.**

I, DOREEN MARIE OLSON, ESQ., declare as follows:

1. I am an attorney at law, duly licensed to practice law in the State of California and before this Court. I am a Partner at Meyer, Olson, Lowy & Meyers, LLP ("M|O|L|M"), attorneys of record for Petitioner, LINDSEY HILL ("Lindsey" or "Petitioner"). I have personal knowledge of each of the matters set forth herein and if called upon as a witness, I could and would competently testify thereto.

2. Declarant submits this Declaration in Opposition to Respondent, TREVOR BAUER's ("Trevor" or "Respondent") Motion to Compel further documents and Motion for Sanctions for spoilation of records. Declarant request that the Court deny both motions.

3. On August 9, 2021, the Court held a hearing on Respondent's Ex Parte Application to compel records prior to the hearing. The Court ordered Petitioner, through counsel, to produce additional medical records to the extent they existed, therapist notes, and native images, which would be as exhibits with the accompanying metadata for same. Attached hereto as **Exhibit "1"** is a true and correct copy of the transcript of same.

4. On August 10, 2021, Declarant sent a letter to Mr. Bauer's counsel producing multiple records pursuant to the Court's order and responding to the various requests. Declarant produced the following:

a. Metadata and native images from pictures taken by Ms. Hill, which were downloaded and delivered by messenger on a flash drive. Declarant informed counsel that the images have not been doctored, modified or changed in anyway, contrary to his claims to the Court.

b. The text messages between Ms. Maya and Ms. Hill for the period April 18th to June 20th. Respondent's counsel already had all the Ms. Maya texts for the period commencing June 19, 2021 that were provided based on his subpoena request.

c. The two videos that Ms. Hill sent to Mr. Bauer via Instagram Direct Messages on April 29, 2021 at 9:38 a.m. and 11:24 a.m. were not recovered and

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

Declarant was unable to produce same. Ms. Hill has made further efforts to diligently search and reasonably inquire as to the viability of accessing the two videos. However, the videos no longer exist.

i. Declarant stated that Ms. Hill deleted her Instagram messages with Mr. Bauer. The deletion of Ms. Hill's Instagram messages with Mr. Bauer did not occur after she met with the police, hired counsel, and contemplated her own claims. The deletion occurred on or before April 29, 2021, *way before litigation was contemplated.* Declarant also enclosed a screenshot from Ms. Hill, time-stamped April 29, 2021 at 9:26 p.m., where you will see that the two videos Mr. Fetterolf seeks are no longer visible within the Instagram messages chain between Ms. Hill and Mr. Bauer. This means they no longer existed as of that date.

ii. Declarant further stated that even if Ms. Hill had not deleted her Instagram chain with Mr. Bauer, the nature of the two Instagram videos that she sent to him on April 29, 2021 does not permit her the ability to re-access them. Pursuant to Instagram's Help Center, these kinds of videos are labeled "disappearing videos." This is because once it has been sent by Ms. Hill, received, opened, and seen by Mr. Bauer, the videos are automatically deleted from both Ms. Hill and Mr. Bauer's Instagram.

d. The three-page document of messages Instagram was able to restore pursuant to Ms. Hill's inquiry. Beyond the enclosed Instagram messages, the Instagram messages attached to Ms. Hill's original DVRO request, and the Instagram messages in Mr. Bauer's possession, custody, and control, there are no additional Instagram messages (including videos and pictures) within Ms. Hill's possession, custody, and control.

e. Additional medical records, as follows: 1) two urinalysis test results; 2) MRI Face without contrast; 3) MRI Brain without contrast; and 4) DNA Probe. Said documents represent all medical testing results that Ms. Hill obtained from Scripps. Ms. Hill did not undergo any psychological testing, thus, there are no results.

f. Text messages from Lisa Decker and Ms. Hill. Attached hereto as

**Exhibit "2"** is a true and correct copy of the August 10th correspondence.

5. On August 12, 2021, Counsel for Respondent sent a responsive letter regarding, what he believes to be, outstanding issues for discovery. Respondent's counsel assumed that because there are gaps in some of the text exchanges that Petitioner withheld them or deleted them. He also demanded a date certain as to when the Instagram and text messages were deleted. Respondent's counsel finally insisted that more medical records existed and our office needed to produce them as well as the therapists records. Finally, he requested cooperation in a signing a protective order with the Hospital to retrieve the subpoenaed records and more photos on Ms. Hill's phone for a time period between two pictures being used as exhibits. Attached hereto as **Exhibit "3"** is a true and correct copy of said correspondence.

6. On August 13, 2021, Declarant responded to Mr. Bauer's counsel's letter, as follows:

a. There were no more text messages between Ms. Hill and her friends to produce. Ms. Hill performed a back-up of her phone dating back to April 14th, and Declarant's office produced the pdf of the entire text conversation; nothing was altered and nothing was deleted. Declarant further stated that Respondent's counsel did not initially, or in his last *ex parte* request before the Court, ask for Instagram or Snapchat conversations between Ms. Hill and her friends. Regardless, Declarant still produced those records.

b. Declarant cannot specifically indicate when Ms. Hill deleted her Instagram and text messages, as she frequently deletes information, having nothing to do with this case, but rather more of a function of storage capacity on her phone. Declarant previously enclosed for you the Instagram messages between the parties. Ms. Hill had deleted messages at some point prior to April 29, 2021, and again at some point prior to May 4, 2021. This is consistent with how Ms. Hill operates her cell phone functions by frequently deleting information.

c. Declarant further stated that with regard to Respondent's claim that

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

Ms. Hill turned off the live mode function on her cell phone is unfounded. When a screenshot is taken on a cellphone it indicates that the photograph taken was is in fact a live photo. Declarant's office has sent the native images and metadata for said photographs. When an image is emailed you cannot physically touch the screen and see the photograph "move" as you can when you physically hold down the picture on an Apple Iphone. Again, this information was not requested at the last *ex parte* before the Court and Declarant is unable to email "live" photographs.

d. Declarant has no additional medical records to produce that are in Ms. Hill's possession, custody and control. Ms. Hill reviewed the medical portal and everything that was sent to her, was produced. Ms. Hill has only undergone one set of MRIs on June 21, 2021, which was ordered on June 3, 2021. No MRI scans were taken on June 3, 2021.

e. With regard to Ms. Hill's therapist, Dr. Moses, Declarant produced a copy of the records attached to this correspondence.

f. Concerning the photos, although some are not relevant, Declarant enclosed time stamped photographs in Ms Hill's album for the time frame which Respondent's counsel requested specified. Attached hereto as **Exhibit "4"** is a true and correct copy of said correspondence.

7. Declarant has received no further correspondence from Respondent's counsel on this issue. Respondent's counsel did not call or email and further requests or responses. Instead, Respondent's counsel served the Motion via email on our office on Friday, August 13, 2021 at 4:54 p.m. Attached hereto as **Exhibit "5"** is a true and correct copy of said email notice.

/ / /

/ / /

/ / /

/ / /

/ / /

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

8. This Declaration is not intended to be, nor shall it be construed as being, a waiver of attorney-client privilege or attorney-client work product doctrine. Declarant has no client authority to waive the attorney work-product doctrine, and does not intend to do so by anything set forth herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 16, 2021, at Los Angeles, California.

Doreen Marie Olson

DOREEN MARIE OLSON

MEYER, OLSON, LOWY & MEYERS, LLP
10100 Santa Monica Boulevard, Suite 1425 · Los Angeles, California 90067

5

IN RE MATTER OF HILL / BAUER DECLARATION OF DOREEN MARIE OLSON, ESQ.
J:\HILL, LINDSEY\PLEADINGS\P.081521.DEC.DMO.EXPARTE.MOTION TO COMPEL.DOCX

Dec of Rory Montez

I, RORY J. MONTEZ, declare as follows:

The facts stated herein are true and correct of my own personal knowledge and if called upon as a witness to testify in this proceeding, I could and would competently do so, except as to those matters asserted upon the basis of information and belief. As to those matters, I believe them to be true.

I am a Certified Digital Forensic Examiner. My experience and background are as follows. I have received the following certifications: GIAC Certified Forensic Examiner (GCFE); Cellebrite Certified Operator (CCO), Cellebrite Certified Physical Analyst (CCPA). My services have been used by computer forensic companies across the United States, eDiscovery firms, public businesses, private individuals, and the Office of the District Attorney of San Bernardino County for extracting data, analysis, and documentation used in criminal cases, civil actions, and internal business processes. I am licensed to collect evidence in the State of California.

I currently contract out my services to Blueline Forensics as well as other forensic companies. In this capacity, I perform detailed digital forensic examinations, including the collection and analysis of data from Mobile Devices, Servers, Desktop and Laptop Computer Systems, external hard drives, digital cameras, flash drives, and other digital data repository devices.

In June 2021, I was engaged to examine and perform a forensic examination and subsequent forensic analysis of a cellular phone iPhone 11 Pro Max S/N FK1ZC5VLN70F IMEI 35 3897100596412 owned by Lindsey Hill (hereafter the "Custodian"). I then conducted my examination.

Using Cellebrite I created a logical image of the Custodian's phone.

I then analyzed the data, searching the cellular phone for data related to "Trever Bauer" and "Baueroutage."

No text message threads between the Custodian and Trever Bauer were found; the Custodian stated she deleted the messages from the phone.

One voicemail was identified which was left on 5/17/2021 11:18:37 PM and lists a saved contact Trever Bauer +16619932905 as the caller leaving the message.

In August 2021, I was asked to provide native photos and EXIF data for approximately 13 photos provided to me in a .PDF named "Photographs".

I loaded the data collected from the Custodian's phone and identified the images, tagged them, and exported them via Cellebrite.

It was noted that multiple versions exist of some of the tagged photos that show the same time stamp.

Starting with iOS 11 in 2017, Apple has used High Efficiency Image Container (.HEIC) as the default file format for images captured on iPhones. Prior to that the Joint Photographic Experts Group (.JPEG) format was the default format for images captured on iPhones.

.HEIC and .JPG format photos captured on the Custodian's phone were tagged and provided to the Custodian's attorney.

In addition, screenshots (Portable Network Graphics, or .PNG) were among the photos tagged as well as Thumbnail (.THM files). Files with the .THM extension are icon-sized images to represent a bigger image. They are generally created automatically by photo/video editing software or applications.

I then loaded each photo into EXIF Tool to read the EXIF data metadata embedded in each photo. I then provided reports of the EXIF data for each requested photo to the Custodian's attorney.

In August 2021, I was asked to identify native messages between the Custodian and "Trever Bauer" and "Baueroutage" saved in the image of the Custodian's phone. No message threads between "Trever Bauer" / "Baueroutage" and the Custodian were identified.

I subsequently reported these findings and provided copies of relevant reports produced from the search.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 14, 2021 in the City of Baldwin Park, State of California.

RORY J. MONTEZ, GCFE, CCO, CCPA
Digital Forensic Examiner
Declarant

#1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

HON. DIANNA GOULD-SALTMAN, JUDGE DEPARTMENT 35

| | |
|---|---|
| LINDSEY HILL, PETITIONER, VS. TREVOR BAUER, RESPONDENT. | NO. 21STRO03198 |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

AUGUST 9, 2021

APPEARANCES:

FOR THE PETITIONER: MEYER, OLSON, LOWY & MEYERS, LLP
BY: DOREEN MARIE OLSON, ESQ.
10100 SANTA MONICA BOULEVARD
SUITE 1425
LOS ANGELES, CA 90067
NEWPORT BEACH, CA 92660

FOR THE RESPONDENT: KINSELLA WEITZMAN ISER KUMP HOLLEY
BY: KATE MANGELS, ESQ.
808 WILSHIRE BOULEVARD
3RD FLOOR
SANTA MONICA, CA 90401
(VIA LACOURTCONNECT VIDEO)

ZUCKERMAN SPAEDER LLP
BY: JON R. FETTEROLF, ESQ.
1800 M STREET NW
SUITE 1000
WASHINGTON, DC 20036
(VIA LACOURTCONNECT VIDEO)

JACQUELINE M. CAIRE, CSR #9599, RPR
OFFICIAL REPORTER

CASE NUMBER: 21STRO03198

CASE NAME: LINDSEY HILL VS. TREVOR BAUER

LOS ANGELES, CALIFORNIA MONDAY, AUGUST 9, 2021

DEPARTMENT 35 HON. DIANNA GOULD-SALTMAN, JUDGE

APPEARANCES: (AS HERETOFORE NOTED.)

REPORTER: JACQUELINE CAIRE, CSR NO. 9599, RPR

TIME: 8:35 A.M.

THE COURT: GOOD MORNING. THIS IS JUDGE GOULD-SALTMAN. I HAVE MS. OLSON IN FRONT OF ME. IT APPEARS I HAVE MR. FETTEROLF AND MS. MANGELS ONLINE. AND, MS. MANGELS, YOU ARE MUTED.

MS. OLSON: GOOD MORNING, YOUR HONOR.

THE COURT: GOOD MORNING.

MR. FETTEROLF: GOOD MORNING, YOUR HONOR.

THE COURT: ALL RIGHT. I JUST RECEIVED THE OPPOSITION TO THE MOTION. HAVE YOU SEEN THAT, MR. FETTEROLF?

MR. FETTEROLF: NO. LET ME LOOK AT MY EMAIL HERE.

MS. OLSON: IT WAS EMAILED THIS MORNING.

MR. FETTEROLF: I DON'T SEE IT IN MY EMAIL. LET ME CHECK.

THE COURT: SURE.

MR. FETTEROLF: NO. NO. UNLESS -- KATE, I DON'T KNOW WHETHER YOU RECEIVED IT.

MS. MANGELS: I HAVE NOT RECEIVED IT EITHER.

MR. FETTEROLF: OKAY.

MS. OLSON: IT WAS SENT AT 8:32 THIS MORNING.

THE COURT: IT'S ONLY 8:36 NOW.

MR. FETTEROLF: YEAH. I DON'T SEE IT IN MY EMAIL, YOUR HONOR.

THE COURT: IF YOU'VE GOT A COPY, DO YOU WANT TO FORWARD THEM A COPY?

MS. OLSON: I COULD RESEND WHAT WAS SENT THIS MORNING. I DON'T KNOW IF THAT --

THE COURT: IT WAS ONLY SENT A FEW MINUTES AGO.

MS. OLSON: I CAN RESEND IT, UNLESS YOU WANT TO WAIT ONE MINUTE FOR IT TO TRY TO GET THROUGH. IT WAS THIS THICK (INDICATING).

MR. FETTEROLF: WE HAD RECEIVED MS. OLSON AND MR. GARELICK'S LETTERS IN RESPONSE TO -- BEFORE WE FILED THE MOTION, WE FILED LETTERS REQUESTING THIS INFORMATION. WE HAVE THOSE. SO IF THE ARGUMENTS ARE SIMILAR TO WHAT WAS MADE IN THE LETTERS, I AM PREPARED TO ADDRESS THEM. BUT I DON'T KNOW WHAT'S IN THE MOTION AT THE PRESENT TIME.

THE COURT: I WANT TO MAKE SURE -- WHY DON'T YOU RESEND. CAN YOU CHECK YOUR JUNK EMAIL BOX AND SEE IF PERHAPS IT ENDED UP THERE?

MR. FETTEROLF: I DON'T SEE IT. BUT WE HAVE GOT EMAILS FROM THEM IN THE PAST. BOTH MS. OLSON AND MR. GARELICK.

MS. OLSON: IT WAS SENT FROM MY ASSISTANT JACKIE KAMINSKI AT 8:33.

MR. FETTEROLF: WE HAVE GOTTEN EMAILS FROM MS. KAMINSKI BEFORE. I GUESS I WOULD BE SURPRISED IF IT'S IN THE JUNK FOLDER, BUT I DON'T SEE IT IN THE JUNK FOLDER.

MS. MANGELS: I AM NOT SEEING IT IN ANY OF MY FOLDERS

EITHER.

MS. OLSON: IT WAS ADDRESSED TO MS. MANGELS WITH A COPY TO MS. HOLLEY, MR. FETTEROLF, IVAN VENTRESCA AT ZUCKERMAN, JAY COHEN. AND THEN MY PEOPLE.

THE COURT: WHY DON'T YOU RESEND IT JUST IN CASE.

MS. OLSON: OKAY. MY RECEPTION IS NOT GREAT. IT KEEPS TELLING ME IT CAN'T FORWARD THE ATTACHMENT. I'LL TRY AGAIN. MY OFFICE IS SENDING IT AGAIN.

THE COURT: GIVE US A HEADS UP WHEN YOU HAVE RECEIVED IT.

MS. OLSON: YOU MIGHT HIT REFRESH.

MR. FETTEROLF: I AM. I HAVEN'T SEEN IT YET. I ABSOLUTELY WILL.

(PAUSE IN THE PROCEEDINGS.)

MR. FETTEROLF: STILL NOTHING ON MY END. YOU MAY WANT TO CHECK THE OUTBOX TO SEE WHETHER IT GOT CAUGHT UP IN YOUR -- IN SENDING IT OUT.

THE COURT: I THINK IT WAS HER STAFF WHO WAS GOING TO SEND IT OUT.

MS. OLSON: YEAH. MS. KAMINSKI IS RESENDING.

THE COURT: YOU WANT TO CONFIRM, MS. OLSON, WHETHER SHE SENT --

MS. OLSON: SHE SAID SHE RESENT IT AGAIN.

THE COURT: WHAT TIME DID SHE RESEND?

MS. OLSON: LOOKS LIKE 8:43.

THE COURT: OKAY. SO 8:43 SHOULD BE THE TIME SIGNATURE

WHEN IT WAS SENT.

MS. OLSON: ORIGINAL WAS SENT AT 8:00 --

THE COURT: 32.

MS. OLSON: YEAH. 8:33.

MR. FETTEROLF: IT MAY BE THE SIZE OF -- IF THERE'S ATTACHMENTS, THAT'S ALL I CAN THINK OF GETTING CAUGHT UP IN THE OUTBOX.

THE COURT: YOU MIGHT HAVE MS. KAMINSKI CONFIRM IT'S NOT IN HER OUTBOX WAITING TO BE SENT.

MR. FETTEROLF: ALTHOUGH I.T. ADVICE FROM ME IS VERY DUBIOUS. PLEASE TAKE THAT WITH A GRAIN OF SALT. I'VE SEEN THAT ON MY OWN COMPUTER BEFORE.

MS. OLSON: I'VE SENT YOU BIGGER DOCUMENTS THAN THIS. I'M CONFUSED WHY YOU HAVEN'T RECEIVED IT.

MR. FETTEROLF: ESPECIALLY SINCE NEITHER KATE NOR I RECEIVED IT, I'M SURMISING THAT IT'S SOMETHING ON YOUR END WHERE IT'S GETTING CAUGHT UP. BECAUSE I'D BE SURPRISED NEITHER OF US GOT IT. LIKE I SAID, IF THE ARGUMENTS ARE SIMILAR TO WHAT WAS PUT IN THE LETTERS, I'M PREPARED TO ADDRESS THEM. BUT I DON'T KNOW WHAT ELSE WAS WRITTEN IN THE MOTION -- OR IN THE OPPOSITION.

THE COURT: MS. OLSON, IS IT?

MS. OLSON: IT'S ESSENTIALLY THE SAME. I ADDRESSED FURTHER THE ARGUMENTS THAT MS. HOLLEY MADE EARLIER IN OTHER PROCEEDINGS, THAT THEY WERE ONLY WAITING ON DOCUMENTS FROM SPECIFIC SUBPOENAED DUCES TECUM THAT THEY HAD ASKED FOR DOCUMENTS TO BE SENT TO THE COURT. I OUTLINED FOR THE COURT THE SPECIFIC SUBPOENAS THAT WE WERE AWARE OF.

SPECIFICALLY THEY HAD SENT SUBPOENAS OUT TO PALOMAR, ALVARADO MEDICAL CENTER, SCRIPPS, AND THE SAN DIEGO POLICE DEPARTMENT. AS TO THOSE RECORDS, PALOMAR, WE ALL RECEIVED VIA THE CITY ATTORNEY'S OFFICE FROM PASADENA. ALVARADO, I PROVIDED OPPOSING COUNSEL WITH THE DOCUMENTS THAT I RECEIVED PURSUANT TO MY SUBPOENA.

I HAVE NOTHING MORE. NOTHING LESS. SCRIPPS, I DIDN'T SUBPOENA. SO I DON'T KNOW WHAT THEY HAVE. I DID PROVIDE THEM WITH ADDITIONAL RESULTS OF, LIKE, URINALYSIS THEY HAD ASKED FOR. AND THE SAN DIEGO POLICE DEPARTMENT, ALL I RECEIVED WAS AN OBJECTION. I DON'T HAVE RECORDS. THEY'RE NOT PRODUCING ME RECORDS. I DO HAVE TWO OF THE POLICE DETECTIVES TESTIFYING.

THEY ALSO ISSUED FOUR CIVIL SUBPOENAS. MOST OF WHICH WERE JUST FOR PRODUCTION OF DOCUMENTS AT THE HEARING, NOT PERSONAL APPEARANCES --

THE COURT: RIGHT.

MS. OLSON: -- TO A KYLE, A MELY, AND A TAYLOR. I'M AWARE THEY HAVE TEXT MESSAGES FROM KYLE. MELY PRODUCED LAST TIME WE WERE HERE IN COURT. MS. HOLLEY TOOK PICTURES. I DON'T KNOW ANYTHING ABOUT A TAYLOR. AND THEN THEY'RE ASKING THAT MS. HILL PRODUCE HER TEXT MESSAGES WITH MELY FROM FOUR MONTHS AGO. I RESPONDED IN MY CORRESPONDENCE SHE DOESN'T HAVE THEM.

THEY WANT TEXT MESSAGES FROM BETWEEN HER AND HER FATHER. I'M NOT PRODUCING THOSE. THEY'RE PRIVATE. AND TEXT MESSAGES WITH HER AND A MS. JACKSON. THAT'S HER A.A. SPONSOR. I'M NOT PRODUCING THOSE.

AND, ALSO, THERE'S NO DISCOVERY. THERE'S NO FORMAL DISCOVERY. I JUST KEEP GETTING LETTERS TELLING ME TO PRODUCE OR DEMANDING THAT I PRODUCE ALL THESE RECORDS. I MEAN, I'M DOING WHAT I CAN TO BE COOPERATIVE. BUT AT SOME POINT, I HAVE NO OBLIGATION TO.

MR. FETTEROLF: IT LOOKS LIKE THE RESPONSE JUST CAME THROUGH. I DON'T KNOW IF YOU GOT IT, KATE.

MS. MANGELS: I JUST GOT IT AS WELL A MOMENT AGO.

THE COURT: DO YOU WANT TO TAKE A --

MR. FETTEROLF: SURE. I SEE A DECLARATION AND THEN SOME EXHIBITS. THEY SEEM CONSISTENT WITH THE ARGUMENTS I WAS PREPARED TO ADDRESS.

THE COURT: OKAY.

MR. FETTEROLF: I DIDN'T SEE AN OPPOSITION. BUT MAYBE IT WAS JUST THE DECLARATION IN RESPONSE.

MS. OLSON: WELL, THE FACE SHEET SAYS "PETITIONER'S OPPOSITION."

MR. FETTEROLF: OKAY. I JUST DIDN'T SEE, LIKE, A LEGAL BRIEF OR SOMETHING. JUST A DECLARATION. I JUST WANTED TO MAKE SURE WE GOT, DOREEN, WHAT YOU HAD WANTED SENT.

MS. OLSON: UNDERSTOOD. IT SOUNDS LIKE YOU HAVE IT ALL.

THE COURT: IT DOES.

MR. FETTEROLF: OKAY.

THE COURT: I WAS LOOKING AT THE LETTER TO MR. GARELICK OF AUGUST 3RD. ON THE SECOND PAGE OF WHICH SEEMS TO BE A LIST OF THINGS THAT WERE NOT YET RECEIVED AS OF AUGUST 3RD. AND --

MR. FETTEROLF: CORRECT.

THE COURT: -- IS THAT AN EXCLUSIVE LIST OF WHAT IS NOT YET RECEIVED THAT'S BEEN REQUESTED?

MR. FETTEROLF: YES, YOUR HONOR. IF I CAN, I CAN ADDRESS THAT. SO WE HAD -- I DON'T KNOW IF YOU WANT THE HISTORY HERE, BUT I THINK THE HISTORY IS RELEVANT. YOU KNOW, WHEN WE CAME TO THE HEARING, ATTACHED TO THE D.V.R.O. PETITION AND AFFIDAVIT WERE CERTAIN MEDICAL RECORDS. THEY WERE INCOMPLETE. MEANING A COUPLE OF PAGES, NOT THE FULL PAGES. WE, AT THE HEARING, SAID WE HAVE INCOMPLETE RECORDS.

WE UNDERSTOOD -- MAYBE WE MISUNDERSTOOD -- THAT WHAT THEY HAD HANDED US WERE THE COMPLETE RECORDS. THEY WEREN'T. WE RAISED IT IN A MOTION FOR EXTENSION. WE WERE PROVIDED THE COMPLETE RECORDS OF WHAT WERE ATTACHED AS WELL AS SOME ADDITIONAL INFORMATION. BUT IN OUR LETTER, WE SAID, LOOK, THERE'S A HOST OF OTHER RECORDS THAT ARE REFERENCED HERE WITHIN THE RECORDS. AND THEN WHEN WE GOT THE ADDITIONAL RECORDS, THERE WERE MORE.

LET ME JUST KIND OF WALK THROUGH WHAT SOME OF THOSE ARE. WE HAVE RECORDS OF MRI'S THAT ARE REFERENCED IN THE AFFIDAVIT HERSELF. WE DON'T HAVE THOSE. WE HAVE RECORDS OF MRI'S THAT WERE TAKEN THAT WERE REFERENCED IN TEXT MESSAGES ON JUNE 21ST WITH HER FRIEND MELY THAT WE DON'T HAVE. WE HAVE RECORDS OF PSYCHOLOGICAL TESTING THAT WE DON'T HAVE.

WE DID SUBPOENA SCRIPPS, ALVARADO, AND PALOMAR HEALTH. TO DATE, WE HAVE NOT RECEIVED INFORMATION. ALTHOUGH -- AND KATE WILL CORRECT ME IF I'M WRONG HERE -- SCRIPPS AND PALOMAR FIRST OBJECTED. AND THEN THEY REACHED

BACK OUT. AND WE BELIEVE WE WILL BE GETTING SOME RECORDS FROM THEM. BUT AT THE MOMENT WE DON'T HAVE THEM, AND WE DON'T KNOW WHAT THEY ARE.

ALVARADO HAS NOT RESPONDED. WE ARE GOING TO TRY TO REACH OUT AGAIN AND GET A CONTACT AND SEE WHERE THAT STANDS. PERHAPS WE'LL HAVE TO FILE A MOTION TO COMPEL. BUT I THINK WHAT'S IMPORTANT HERE IS THAT, YOU KNOW, THESE CURRENT RECORDS SHOW A NUMBER OF OTHER TESTS AND VISITS. AND SINCE ONE OF THE ISSUES HERE IS CAN PETITIONER SHOW, QUOTE, PAST ACTS OF ABUSE, I THINK IT'S IMPERATIVE WE HAVE ALL RECORDS RELATED TO THIS.

AS I SAID BEFORE -- YOU KNOW, AND JUST TO GIVE YOU A SENSE OF THIS. IN HER AFFIDAVIT IN PARAGRAPH 21, SHE WROTE THAT SHE SUFFERED SIGNIFICANT HEAD AND FACIAL TRAUMA. AND THAT THERE WERE SIGNS OF A SKULL FRACTURE. WHEN WE GOT THIS UPDATED PRODUCTION, WE SAW THERE WERE THREE C.T. SCANS OF HER HEAD, FACE, AND NECK THAT WERE NEGATIVE, SHOWED NO FRACTURE, AND SHOWED NO SWELLING.

IN PARAGRAPH 28, SHE REFERENCES MRI'S THAT WERE ORDERED AT A JUNE 3RD DOCTOR'S APPOINTMENT. THAT'S REFERENCED IN THE SCRIPPS MATERIAL. I DON'T KNOW WHETHER THAT WAS THE SCRIPPS FACILITY OR SOME OTHER FACILITY. BUT NONE OF THOSE MRI'S OR RESULTS HAVE BEEN PROVIDED. I MENTIONED SHE ALSO SAID IN TEXT MESSAGES WITH HER FRIEND MELY, THAT WE RECEIVED VIA SUBPOENA, THAT ON JUNE 21ST SHE HAD ANOTHER FACE AND BRAIN MRI.

AND THEN, ALSO, THERE'S REFERENCE TO PSYCHOLOGICAL TESTING. AGAIN, THIS ISN'T PRIOR TO THE INCIDENT ON THE --

ON MAY 15TH. THIS IS AFTER THE INCIDENT. AND SO ULTIMATELY WE'VE REQUESTED ALL THESE AT VARIOUS TIMES. YES, WE HOPED TO GET SOME VIA SUBPOENA, BUT WE HAVEN'T. BUT THESE ARE ALL RELEVANT RECORDS THAT ARE REFERENCED, YOU KNOW, NOT ONLY IN HER AFFIDAVIT, BUT IN HER TEXT MESSAGES.

SO WE THINK THEY'RE RELEVANT. WE THINK THEY'RE IMPORTANT. AND, YOU KNOW, ULTIMATELY THEY PUT INTO ISSUE HER INJURIES IN THIS CASE. SO I THINK IT'S IMPORTANT THAT WE HAVE ALL MEDICAL RECORDS RELATING TO IT.

AS TO THE PSYCHOLOGICAL TESTING, SOME OF THE ADDITIONAL RECORDS WE RECEIVED SHOW THAT SHE HAS A HISTORY OF INTENTIONAL SELF-HARM. SO THAT'S AN ISSUE PERTAINING ARE THESE INJURIES CAUSED BY MR. BAUER OR COULD SHE HAVE CAUSED SOME OF THEM HERSELF? NOW, THAT'S AN ISSUE THAT WAS PUT -- THAT'S PUT INTO ISSUE BASED ON THE RECORDS THAT WE SAW.

LASTLY, WE HAVE -- THESE RECORDS HAVE TO BE REVIEWED BY OUR OWN EXPERT. AND DEPENDING ON WHAT INFORMATION THEY SAY, WE MAY HAVE TO HAVE PEOPLE DESCRIBE THEM FOR THEMSELVES. BUT I GUESS AT THE MOMENT WE DON'T KNOW WHAT ELSE IS OUT THERE. WE HAVE SUBPOENAED THE ENTITIES WE'RE AWARE OF. WE HAVEN'T GOTTEN STUFF YET. ALTHOUGH WE MIGHT GET SOME STUFF THIS WEEK. BUT THAT'S WHERE WE STAND.

THEY ARE HER RECORDS. WE UNDERSTAND THAT THE SART EXAM IS A LITTLE BIT DIFFERENT, BECAUSE THAT'S CONSIDERED NOT NECESSARILY A MEDICAL RECORD. THAT'S CONSIDERED ESSENTIALLY A RECORD THAT'S PREPARED FOR PROSECUTION. WE HAD TO JUMP THROUGH SOME HOOPS TO GET THAT, WHICH WE ALL SORT OF DID TOGETHER. BUT AT THIS MOMENT, WE'RE SIMPLY WITHOUT THOSE

RECORDS.

THE COURT: ALL RIGHT. SO THEN GETTING BACK TO THE AUGUST 3RD LETTER AS KIND OF A LAUNDRY LIST OF THE THINGS THAT YOU HAD BEEN REQUESTING, YOU'VE JUST REFERENCED -- AND CORRECT ME IF I'M MISUNDERSTANDING -- SOME OF THOSE THINGS THAT YOU HAVEN'T RECEIVED YOU'RE EXPECTING YOU WILL LIKELY RECEIVE BECAUSE YOU THINK THEY'RE COMING. IT SEEMS THE LAST TWO ITEMS, THE FACE AND BRAIN MRI'S THAT WERE REFERENCED AND THE PSYCHOLOGICAL TESTING, ARE THE TWO THINGS THAT WOULDN'T BE SOMETHING YOU WOULD EXPECT COMING FROM THE SUBPOENAS YOU'VE GOT OUTSTANDING.

MR. FETTEROLF: I THINK THAT'S RIGHT. I MEAN, THE REFERENCE IN THE SCRIPPS PROGRESS NOTES, I'M ASSUMING THE ENTITY THAT UNDERTOOK THEM WAS SCRIPPS. NOW, IF THEY GOT SENT OUT, YOU KNOW, THE WAY MEDICAL RECORDS WORK, THERE'S A HOST OF ENTITIES. IF IT TURNS OUT THAT WE SUBPOENAED THE WRONG ENTITY BECAUSE ALL -- THE ONLY ENTITY WE'RE AWARE OF IS THIS ONE, MAYBE WE WON'T GET THEM. BUT WE SORT OF REFERENCE WHERE THEY CAME FROM.

I DON'T HAVE ANY REFERENCE TO THE FACE AND BRAIN MRI'S BECAUSE WE JUST SAW THAT IN THE TEXT MESSAGES. AND I THINK THE URINALYSIS, MS. OLSON CORRECTLY NOTED THAT THEY HAVE PROVIDED US, SO WE HAVE THAT. THEN THE PSYCHOLOGICAL TESTING, I DON'T KNOW -- I DON'T KNOW WHERE THE ENTITY IS. WE'RE HAPPY TO SUBPOENA THAT ENTITY IF WE KNOW WHAT THE ENTITY IS. BUT TO DATE, IT'S NOT REFLECTED IN THE MEDICAL RECORDS. AND, YOU KNOW, THAT'S WHY WE SIMULTANEOUSLY ASKED PETITIONER'S COUNSEL FOR THIS ALL ALONG.

THE COURT: AND, MS. OLSON, DO YOU HAVE THE PSYCHOLOGICAL TESTING?

MS. OLSON: NO.

THE COURT: DO YOU KNOW WHO HAS THE PSYCHOLOGICAL TESTING?

MS. OLSON: NO. AND I DON'T EVEN KNOW IF IT TOOK PLACE.

THE COURT: WELL, IT'S APPARENTLY REFERENCED IN THE JUNE 3RD SCRIPPS PROGRESS NOTES, WHICH YOU HAVE.

MS. OLSON: RIGHT.

THE COURT: CORRECT.

MS. OLSON: CORRECT. I DON'T HAVE THAT IN FRONT OF ME. I DON'T KNOW IF IT WAS REFERENCED AS BEING RECOMMENDED OR HAVING BEEN UNDERTAKEN WHEN SHE WAS AT THE HOSPITAL THAT NIGHT.

THE COURT: AND IN YOUR LETTER TO MR. GARELICK, MR. FETTEROLF, YOU SEEM TO INDICATE "REFERENCED" AND "RECOMMENDED," WHICH DOESN'T TELL ME WHETHER IT EVER OCCURRED. DO YOU HAVE SOME REASON TO BELIEVE THAT IT DID?

MR. FETTEROLF: WELL, AGAIN, I MEAN THAT'S WHY WE ASKED BECAUSE IF THE RECORDS -- I MEAN, IT DOESN'T SOUND LIKE I'M GETTING A REPRESENTATION THAT THEY DID OR DID NOT OCCUR. SO THE ANSWER IS THEY REFERRED HER TO TESTING. I THOUGHT THE ANSWER, AT LEAST IN THE LETTER THAT WE RECEIVED FROM MS. OLSON, SHE SAID WE'RE NOT ENTITLED TO IT. SO THAT SUGGESTED TO ME THAT IT DID OCCUR. AND SHE IS ARGUING WE'RE NOT ENTITLED TO IT.

THE COURT: THAT WAS MY UNDERSTANDING, THAT YOU ARE GOING TO RELY ON PRIVACY. BUT THEN YOU JUST TOLD ME YOU

DON'T EVEN KNOW THAT IT EXISTS.

MS. OLSON: TO THE EXTENT IT EXISTS, I WOULD RELY ON PRIVACY GROUNDS OR THE PSYCHOTHERAPIST-PATIENT PRIVILEGE. BUT AS MY REPRESENTATION TO THE COURT, MY CLIENT DOES NOT BELIEVE THAT SHE UNDERWENT ANY PSYCHOLOGICAL TESTING WHEN SHE WAS EXAMINED THAT EVENING. LATER TESTS SHE DOESN'T BELIEVE THAT SHE WENT UNDERWENT. SHE IS NOT REAL CLEAR IF SHE DID OR SHE DIDN'T. BUT SHE DOESN'T BELIEVE THAT SHE UNDERWENT ANY PSYCHOLOGICAL TESTING.

MR. FETTEROLF: I DON'T EVEN -- I'M NOT REALLY SURE I UNDERSTAND WHAT THAT -- I MEAN, SHE EITHER HAD TESTING OR NOT. SHE EITHER WENT TO SOMEONE OR NOT.

MS. OLSON: SHE DOESN'T KNOW WHAT EXACTLY THE TESTING ENTAILS. SO SHE IS NOT REALLY CLEAR WHETHER SHE DID OR SHE DIDN'T. BUT I'M HAPPY TO PROVIDE YOU AND THE COURT WITH A DECLARATION UNDER PENALTY OF PERJURY BY MY CLIENT THAT SHE DOES NOT -- DID NOT UNDERGO PSYCHOLOGICAL TESTING, WHICHEVER WAY THAT LANDS.

THE COURT: SO IT MAY -- WOULD IT BE CORRECT TO SAY THAT IT'S A MATTER OF HER INTERPRETATION WHETHER THERE WAS PSYCHOLOGICAL TESTING? SO, BY WAY OF EXAMPLE, WHEN ONE IS IN AN EMERGENCY ROOM AND ONE HAS ALLEGED ONE HAS HAD SOME FACIAL OR HEAD INJURIES, THEY MIGHT ASCERTAIN THAT YOU KNOW WHERE YOU ARE, AND WHO YOU ARE, AND WHO THE PRESIDENT IS, OR SOMETHING LIKE THAT. IS SHE INTERPRETING THAT AS A PSYCHOLOGICAL TEST?

MS. OLSON: SHE DOESN'T KNOW IF THAT WAS WHAT THEY INFERRED OR IF THEY ASKED HER QUESTIONS AND THAT WAS A

PSYCHOLOGICAL TEST AT ANY OF THE FOLLOW-UPS.

THE COURT: SHE DOESN'T REMEMBER GOING TO A PSYCHOLOGIST OR PSYCHIATRIST FOR THE PURPOSE OF BEING TESTED?

MS. OLSON: NO. NO.

MR. FETTEROLF: WELL, I GUESS, I'M STILL A LITTLE CONFUSED. SO IF SHE -- I MEAN, THE WAY WE'RE WRITING THE REQUEST IS SIMPLY THERE'S AN INCIDENT THAT OCCURRED ON THE 15TH OR -- 15TH/16TH. THAT'S AN ISSUE IN THIS HEARING. IF THERE ARE MEDICAL RECORDS ASSOCIATED WITH THAT, THEN I THINK WE'RE ENTITLED TO THEM. I DON'T THINK I EVER HEARD -- I MEAN, IF SHE HAS A DOCTOR'S APPOINTMENT BECAUSE SHE SPRAINED HER ANKLE LAST WEEKEND, I DON'T THINK THAT'S RELEVANT. BUT IF IT'S RELATED TO THIS INCIDENT, I MEAN, SHE MADE REFERENCE TO HAVING PTSD AND OTHER THINGS.

SO SHE WENT TO SEE A PSYCHOLOGIST OR WENT OUT AND SAW A DOCTOR THAT RELATES TO THIS, I MEAN, I THINK WE'RE ENTITLED TO LOOK AT IT AND EXAMINE IT.

THE COURT: RIGHT. MY UNDERSTANDING FROM MS. OLSON IS THE REPRESENTATION IS SHE HAS NOT; IS THAT CORRECT?

MS. OLSON: CORRECT. AS TO PSYCHOLOGICAL TESTING, SHE DID NOT UNDERGO PSYCHOLOGICAL TESTING. SHE DIDN'T TAKE AN M.M.P.I. SHE DIDN'T TAKE A RORSCHACH. NO.

MR. FETTEROLF: DID SHE SEE A PSYCHOLOGIST BASED ON -- PERTAINING TO THIS ENCOUNTER?

MS. OLSON: YOU KNOW, I CAN'T MAKE THAT REPRESENTATION AS I STAND HERE RIGHT NOW. AND TO THE EXTENT THAT SHE DID, I BELIEVE IT'S PRIVILEGED.

THE COURT: I THINK SHE HAS WAIVED THE ISSUE, IF SHE

HAS. BUT THAT WASN'T WHAT WAS REQUESTED. IT APPEARS WHAT WAS REQUESTED WAS TESTING.

MS. OLSON: CORRECT.

MR. FETTEROLF: WELL, I THINK, YOUR HONOR, I MEAN, IF WE GO BACK AND PULL UP THE LETTERS, I THINK WE ASKED FOR -- BECAUSE WE DON'T KNOW WHAT EXISTS THAT'S NOT THERE. WE REQUESTED ALL THE MEDICAL RECORDS RELATING TO THE INCIDENT. WE HAVEN'T REQUESTED ANYTHING PRIOR TO THAT. AND SO IF SHE SAW A PSYCHOLOGIST THAT RELATED -- THAT STEMS OUT OF THIS INCIDENT, BECAUSE SHE REFERENCES IN HER OWN AFFIDAVIT PTSD. SHE REFERENCES PSYCHOLOGICAL TESTING AND THE LIKE. WHETHER IT'S TESTING, OR A MEETING, OR SOMETHING TO DO WITH THIS INCIDENT, I THINK WE'RE ENTITLED TO IT.

SO I'M STILL A LITTLE CONFUSED, BECAUSE IT SOUNDS LIKE WHAT I'M HEARING IS THERE WASN'T SOME FORMAL TESTING, BUT THERE WERE VISITS TO MEDICAL PROFESSIONALS PERTAINING TO PSYCHOLOGICAL ISSUES AND THE LIKE. BUT I'M -- I AM NOT IN POSSESSION OF THAT INFORMATION. SO I CAN'T REALLY ANSWER THE QUESTION.

THE COURT: RIGHT. THE PROBLEM IS THIS IS AN EXPEDITED PROCEDURE. SO TO THE EXTENT THAT YOU'VE ASKED FOR SOMETHING THAT IS REASONABLE TO PRODUCE, I'M NOT SURE WHAT YOU HAVEN'T YET GOTTEN THAT YOU'RE -- THAT YOU SHOULD HAVE IN ORDER TO BE ADEQUATELY PREPARED TO DEFEND.

MR. FETTEROLF: WELL, I GUESS, I'M POINTING OUT FOR -- WE DON'T HAVE THE MRI'S YET -- TWO SETS OF MRI'S. I GUESS I'M NOT AWARE OF -- AND I DON'T THINK WE SHOULD BE PENALIZED FOR NOT BEING AWARE OF MEDICAL FACILITIES THAT SHE VISITED

RELATED TO HER INJURIES. SO THAT'S WHY WE ASKED THE PETITIONER IF THERE ARE MEDICAL RECORDS, PROVIDE THEM. AND SO THAT'S SORT OF WHERE WE ARE.

WE'VE IN GOOD FAITH GONE OUT AND SUBPOENAED THE ENTITIES WE'RE AWARE OF. AND WE -- WE SIMULTANEOUSLY ASKED FOR THEM FROM PETITIONER. AND YET -- YES, WE MIGHT GET SOME THIS WEEK FROM AT LEAST TWO OF THE ENTITIES. OBVIOUSLY ONCE WE GET THEM, WE'LL SHARE THEM WITH EVERYONE ELSE. BUT, YOU KNOW, THAT'S THE ISSUE. THE RETURN DATE ON THE SUBPOENAS WAS THE 2ND. WE'VE BEEN FOLLOWING UP AND WORKING WITH THESE PEOPLE. WE STILL DON'T HAVE THEM.

I DON'T KNOW WHAT WE'RE GOING TO GET AND HOW IT COMPARES TO THE INFORMATION THAT THEY'VE REFERENCED IN THE AFFIDAVIT AND THEN IS REFERENCED IN THE MEDICAL RECORDS. SO THAT'S WHY WE'VE COME TO THE COURT, BECAUSE WE DON'T WANT TO SIT THERE AND WAIT UNTIL THE HEARING AND SAY WE'RE MISSING ALL THIS STUFF. WE'RE TRYING TO RAISE IT. BUT, YOU KNOW, IF THEY'RE GOING TO PUT UP A SANE NURSE WHO'S GOING TO TALK ABOUT INJURIES, LIKE, WE HAVE THE RIGHT TO LOOK AT THE OTHER INFORMATION, TO ASK THE SANE NURSE ABOUT THIS INFORMATION. AS WELL AS HAVE OUR OWN PEOPLE EVALUATE THE INFORMATION. IF THERE'S A NEED, HAVE THEM TESTIFY ABOUT THESE RECORDS.

THE COURT: AND WITH REGARD TO MS. JACKSON, I SAW THAT.

MS. OLSON: MS. JACKSON IS --

THE COURT: IS HER SPONSOR.

MS. OLSON: YES.

THE COURT: BUT SHE'S RAISED THE ISSUE.

MS. OLSON: RAISED THE ISSUE OF HER ALCOHOLISM?

THE COURT: OF HER ALCOHOLISM. OF HER PTSD. SHE INDICATED THAT MS. JACKSON WAS SOMEBODY WITH WHOM SHE COMMUNICATED AROUND THE TIME OF THE INCIDENTS. IT IS RELEVANT. ABSOLUTELY RELEVANT.

MS. OLSON: I'D BE HAPPY -- FIRST OF ALL, THERE WAS NO SUBPOENA SERVED ON MS. JACKSON THAT I'M AWARE OF. I HAVE NOT BEEN TOLD THAT SHE IS -- I WOULDN'T -- I MEAN, I'M NOT WAIVING ANY PRIVILEGE. I HAVE NO INFORMATION THAT SHE IS EVADING SERVICE. SO THERE'S NO OUTSTANDING SUBPOENA TO MS. JACKSON.

THE COURT: WAS MS. JACKSON THE ONE YOU WERE TRYING TO SERVE?

MR. FETTEROLF: YES. WE TRIED TO SERVE MS. JACKSON AT HER HOME. SHE LIVES IN A GATED COMMUNITY. WE'RE TRYING IN OTHER LOCATIONS. BUT MS. JACKSON IS SPECIFICALLY REFERENCED IN THE AFFIDAVIT. I MEAN, IT'S NOT LIKE WE SENT OUT SUBPOENAS TO EVERY PERSON UNDER THE SUN. SHE'S REFERENCED IN THE AFFIDAVIT. AND I THINK BECAUSE OF THAT, SHE -- THEY HAVE PUT HER INTO EVIDENCE, SO TO SPEAK. AND, THEREFORE, WAIVED ANY ISSUE PERTAINING TO THE FACT THAT SHE IS AN A.A. SPONSOR.

SO IN LIGHT OF THAT, WE CAME TO MS. HILL AND SAID, YOU KNOW, WE'RE STILL TRYING TO SERVE MS. JACKSON. BUT SINCE YOU HAVE THE MESSAGES, YOU CAN PROVIDE THEM. AND I THINK HER FATHER, MR. HILL, IS IN THE SAME CIRCUMSTANCE. HE IS NOT REFERENCED IN THE AFFIDAVIT, BUT HE IS CALLING HER AS A WITNESS -- I'M SORRY. SHE IS CALLING HIM AS A WITNESS.

SO, AGAIN, IF HE IS NOT GOING TO APPEAR AS A

WITNESS, THEN WE DON'T NEED THE INFORMATION. IF HE IS GOING TO APPEAR AS A WITNESS, I DON'T THINK THERE'S ANY PROTECTION THAT EXISTS IF SHE HAS SORT OF PUT HIM OUT THERE FOR THAT PURPOSE.

MS. OLSON: AS TO MS. JACKSON, I DON'T BELIEVE THERE WAS ANY -- IN HER AFFIDAVIT, THERE WAS ANY REFERENCED CONVERSATIONS. TO THE EXTENT THERE WERE, I'D BE HAPPY TO PROVIDE ANY TEXT MESSAGES THAT MY CLIENT HAS. I HAVE NO POWER OR AUTHORITY OVER -- TO MAKE ANY REPRESENTATIONS AS TO MS. JACKSON. SO I CAN ONLY PRODUCE WHAT MY CLIENT HAS WITH MS. JACKSON.

AS TO MR. HILL, I THINK IT'S PRIVACY. WE DIDN'T MENTION HIM IN THE AFFIDAVIT, YOUR HONOR.

THE COURT: ALL RIGHT. SO --

MR. FETTEROLF: YOU'RE CALLING HIM AS A WITNESS.

THE COURT: IF YOU'RE CALLING HIM AS A WITNESS, THEN I WOULD HAVE YOU BRING TO COURT ON THE DAY OF HIS TESTIMONY ANY COMMUNICATIONS, TEXTS, OR EMAIL COMMUNICATIONS BETWEEN YOUR CLIENT AND MR. HILL.

MS. OLSON: WILL DO.

MR. FETTEROLF: AND MS. JACKSON IS REFERENCED IN THE AFFIDAVIT. SHE IS REFERENCED AS LISA M. THAT'S WHY WE SUBPOENAED HER.

MS. OLSON: OKAY. I'LL TRY TO GET THOSE TO YOU, AGAIN, TO THE EXTENT THEY EXIST AND MY CLIENT HAS THEM. AGAIN, I HAVE NO POWER OVER LISA M. JUST AS TO MY CLIENT. SO I'D BE HAPPY TO PROVIDE WHATEVER MY CLIENT HAS IN TERMS OF TEXT MESSAGES BETWEEN HER AND HER SPONSOR.

THE COURT: ALL RIGHT. AND CAN YOU GET THOSE TO COUNSEL BY WEDNESDAY?

MS. OLSON: TODAY.

THE COURT: TODAY. THERE YOU GO.

MS. OLSON: AS SOON AS I GET BACK TO THE OFFICE. AS YOU CAN SEE, I WAS A LITTLE PARANOID ABOUT APPEARING ONLINE AGAIN.

THE COURT: I UNDERSTAND.

MS. OLSON: I HAD ANOTHER ISSUE.

THE COURT: MS. MANGELS NOW APPRECIATES IT'S A DISCONCERTING THING WHEN YOU CAN'T GET THROUGH.

MS. MANGELS: YES. THANKS FOR ACCOMMODATING AND ALLOWING ME TO DIAL IN ON A DIFFERENT NUMBER.

THE COURT: NO PROBLEM. ANYTHING ELSE?

MR. FETTEROLF: JUST -- YOUR HONOR, JUST SO I CAN UNDERSTAND. SO THE LISA JACKSON MESSAGES WE'LL GET TODAY. AND THE FATHER MESSAGES, IF HE IS GOING TO TESTIFY, THEY'LL BE GIVEN TO US PRIOR -- AT SOME POINT PRIOR TO HIS TESTIMONY SO WE CAN REVIEW THEM AND USE THEM AS WE SEE FIT; IS THAT WHAT I UNDERSTAND?

THE COURT: THAT IS CORRECT.

MS. OLSON: AND JUST FOR FULL DISCLOSURE, I JUST ASKED MY CLIENT TO THE EXTENT SHE WAS REFERRED OR HAS THERAPY IN CONNECTION WITH THIS INCIDENT, SHE WAS REFERRED AND HAS MET WITH A THERAPIST THREE TIMES CONCERNING THE PTSD, DEPRESSION SYMPTOMS.

THE COURT: WHO IS THAT?

MS. OLSON: I DIDN'T GET A NAME. NAME. WHAT DID WE DO

BEFORE TEXT MESSAGES AND EMAILS?

THE COURT: WE DID THINGS A LOT SLOWER. HORSES AND BUGGIES WERE INVOLVED.

MS. OLSON: PIGEONS.

MR. FETTEROLF: YOUR HONOR, WHILE WE'RE, I GUESS, WAITING TO FIND OUT THE NAME OF THE PSYCHOLOGIST THAT MS. HILL MET WITH, DO WE WANT TO GO ON TO ANOTHER ISSUE WHILE WE WAIT THAT WE RAISED? THAT'S UP TO YOU.

THE COURT: SURE. GO RIGHT AHEAD.

MR. FETTEROLF: I GUESS THE OTHER ISSUE WE RAISED WAS WE REQUESTED THAT MS. HILL PROVIDE TWO VIDEOS THAT SHE SENT TO HIM VIA INSTAGRAM DIRECT MESSAGES WHERE SHE POINTS TO -- AND THESE WERE, I BELIEVE, I SAID APRIL 29TH. SO BETWEEN THE FIRST ENCOUNTER AND THE SECOND -- WHERE SHE SORT OF REFERS TO BRUISES ON HER BODY AND CLAIMS THEY RESULTED FROM HER FIRST SEXUAL ENCOUNTER WITH MR. BAUER. NOW, BECAUSE THESE INDIVIDUALS NO LONGER FOLLOW EACH OTHER ON INSTAGRAM, MR. BAUER NO LONGER HAS ACCESS TO THE INSTAGRAM MESSAGES. NOW, WE WERE ABLE TO, AT SOME POINT WHEN WE GOT NOTICE OF THIS, YOU KNOW, PRINT THEM OUT. BUT THE VIDEOS, WE COULDN'T ACCESS.

AND SO THERE'S TWO VIDEOS AT ISSUE. ONE, 4/29 AT 9:38 A.M. SHE REFERS TO THE VIDEO WHEN MR. BAUER ASKED, "I HAVE NO IDEA. PROBABLY YOUR THUMB. LOL. JUST A BRUISE IN THE SHAPE OF A FINGERPRINT." AND THEN WHEN HE ASKED WHERE, SHE WRITES, YOU KNOW, "RIGHT BY MY PRIZED POSSESSION." AND AFTER APOLOGIZING FOR -- I THINK IT SAID, "IF THAT WAS ME, I APOLOGIZE." AND SHE SAID, "THAT'S OKAY." YOU KNOW, "I'M

INTO IT."

AND SO I THINK THEY'RE HIGHLY RELEVANT FOR A NUMBER OF REASONS. FIRST, IN THE SART EXAMINATION, THERE IS SOME BRUISING ON THE BUTTOCKS AND VAGINAL AREA. SO IN THESE VIDEOS PERTAINING TO THE FIRST ENCOUNTER, SHE IS SENDING PICTURES THAT LOOK LIKE BRUISES IN A JOKING MANNER. THEY LOOK SIMILAR TO THE SECOND ENCOUNTER. I THINK THAT'S RELEVANT AND HELPFUL TO THE DEFENSE.

SECOND, IN PROVIDING PATIENT HISTORY TO THE SANE NURSE, WHERE SHE MAKES NO CLAIMS OF ASSAULT IN THE FIRST INCIDENT. AND WHILE SHE ADMITS TO HAVING ROUGH SEX IN THE FIRST INCIDENT, SHE NOTES THERE WERE NO BRUISES ON HER BODY AT ALL. THIS SEEMS TO CONTRADICT WHAT SHE TOLD TO THE SANE NURSE, AND, THEREFORE, ARE RELEVANT. BECAUSE I UNDERSTAND THE RESPONSE FROM MS. OLSON WAS SHE DELETED THE ENTIRE INSTAGRAM CHAIN BECAUSE SHE DIDN'T WANT TO LOOK AT MESSAGES FROM MR. BAUER ANY LONGER.

I DON'T THINK, YOU KNOW, THAT'S A REASON TO DELETE RELEVANT INFORMATION -- THE CLAIMS THAT ARE RELEVANT TO CLAIMS AND DEFENSES. PLUS WE KNOW THAT DELETION DID NOT OCCUR UNTIL WELL AFTER SHE MET WITH THE POLICE, HIRED COUNSEL, AND CONTEMPLATED HER OWN CLAIMS.

WE KNOW FROM HER AFFIDAVIT THAT SHE MET WITH THE POLICE ON MAY 18TH. AND WE KNOW SHE CLAIMS SHE LATER MET WITH THEM AGAIN ON MAY 21ST. WE KNOW FROM TEXTS WITH KYLE ERICSON ON MAY 18TH THAT SHE SAID HER FATHER IS GETTING HER AN ATTORNEY. WE ALSO KNOW THAT AFTER THE CRIMINAL INVESTIGATION WAS INITIATED, BUT BEFORE THE D.V.R.O. WAS

FILED, SHE QUOTE -- SHE SAID TO HER FRIEND MELY, QUOTE, "DRIVING TO IRVINE TO GIVE MY LAWYER MY PHONE TO DOWNLOAD TREVOR'S TEXTS." THAT MESSAGE IS DATED JUNE 28TH.

IT APPEARS THEY IMAGED HER PHONE. WE KNOW AT THE TIME SHE STILL HAD MESSAGES RELATING TO MR. BAUER ON HER PHONE. WE ALSO KNOW THAT THE PETITION ITSELF INCLUDED SCREENSHOTS OF HER MESSAGES WITH MR. BAUER, WHICH SHE SAID SHE HAD ACCESS TO THOSE IMAGES AT LEAST AT THE TIME OF THE FILING ON JUNE 29TH.

SO IT APPEARS WHILE BASED ON WHAT MS. OLSON WROTE, IT'S UNDISPUTED THAT AFTER THERE WERE CONSIDERATION OF POTENTIAL CLAIMS, HAD COUNSEL, THAT RELEVANT INFORMATION WAS DELETED. AND I THINK THAT PRESENTS A SIGNIFICANT ISSUE.

THE COURT: WELL, IT MAY PRESENT A SIGNIFICANT ISSUE, BUT FOR PURPOSES OF YOUR DISCOVERY REQUEST, HOW DOES IT MAKE IT APPEAR?

MR. FETTEROLF: I LOST THAT.

THE COURT: YES.

MR. FETTEROLF: MAYBE I DIDN'T UNDERSTAND THE QUESTION.

THE COURT: I DON'T DISAGREE. ASSUMING EVERYTHING YOU'RE SAYING IS TRUE, IT CREATES AN ISSUE FOR ME, AMONG OTHERS. BUT IT DOESN'T CREATE SOMETHING THAT NO LONGER EXISTS. DO YOU HAVE A METHOD BY WHICH IT CAN BE RECAPTURED SO THAT IT CAN BE PRODUCED TO YOU?

MR. FETTEROLF: ARE YOU ASKING ME THAT, YOUR HONOR?

THE COURT: I AM. IF YOU THINK IT'S SOMEWHERE -- IF YOU THINK IT WAS COPIED, I DON'T HAVE A PROBLEM MAKING AN ORDER

THAT IT BE PRODUCED. BUT IF SHE SHOULDN'T HAVE, BUT DID DELETE IT PERMANENTLY, I WOULD NEED TO KNOW WHAT ORDER YOU'RE ASKING ME TO MAKE TO MAKE IT BE PRODUCED TO YOU, NOTWITHSTANDING ITS HAVING BEEN DELETED PERMANENTLY.

MR. FETTEROLF: SO AS TO THE FIRST QUESTION, YOUR HONOR, I'M JUST GOING BY MS. OLSON'S REPRESENTATION THAT HER CLIENT DELETED IT. SO IF THAT IS INACCURATE, THEN, I MEAN, IT APPEARS LIKE THEY IMAGED HER PHONE, WHICH AS LAWYERS, WHEN THERE ARE NOTICE OF CLAIMS, THAT'S ONE OF THE THINGS WE DO. SO, I GUESS, THE FIRST THING WOULD BE CHECKING THE PHONE TO SEE IF IT'S STILL THERE. BUT I DIDN'T REALLY ADDRESS THAT, BECAUSE THE MESSAGE I GOT WAS SHE DELETED IT. SHE DOESN'T HAVE IT.

THE COURT: MS. OLSON, WAS THE PHONE IMAGED AT ANY POINT FROM THE DATE OF THE INCIDENT -- THE FIRST INCIDENT UNTIL NOW?

MS. OLSON: AND I'M SORRY. I'M NOT TECHNICALLY SAVVY. CAN YOU EXPLAIN, YOUR HONOR, WHAT YOU MEAN BY "IMAGED"?

THE COURT: YES. DID SOMEONE GO INTO THE PHONE AND MAKE A DUPLICATE COPY OF THAT WHICH WAS ON THE PHONE OR SOME PORTION OF THAT? SPECIFICALLY THE PORTION THAT CONTAINED THE TWO VIDEOS BEING REFERENCED.

MS. OLSON: THAT, MY CLIENT GAVE HER PHONE TO THE PASADENA POLICE DEPARTMENT. THEY REPRESENTED TO HER THAT THEY WERE ONLY TAKING THE MESSAGES BETWEEN HER AND TREVOR. SO THAT'S ALL WE KNOW IN TERMS OF IMAGING. IF THERE WAS ANY IMAGING DONE, IT MUST HAVE BEEN DONE BY PASADENA POLICE DEPARTMENT. ALL I'M SAYING, AND AS AN OFFER OF PROOF, IS

THAT MY CLIENT DELETED THE INSTAGRAM VIDEOS, I GUESS, THEY'RE CALLED. SHE DOESN'T HAVE THEM.

WE CONTACTED INSTAGRAM THROUGH FACEBOOK TO SEE WHAT WAS RECOVERABLE. WE COULD NOT GET ANYTHING. AND THEY SHOULD BE RECOVERABLE BY TREVOR AS WELL SINCE HE WAS A RECIPIENT. I DON'T HAVE ANY GREATER ABILITY TO OBTAIN THEM THAN THEY WOULD HAVE.

THE COURT: WELL, I DON'T THINK THEY RESIDE ON HIS -- WHATEVER DEVICE HE RECEIVED THEM ON. THAT'S THEIR PROBLEM. IF THEY HAD THAT, THEY WOULDN'T BE ASKING FOR IT. THE PROBLEM IS IT ONLY IS BECAUSE IT WAS ON HER INSTAGRAM PAGE THAT IT WAS VIEWABLE.

MS. OLSON: WELL, SHE SENT IT TO HIM.

THE COURT: SHE SHOWED IT TO HIM.

MS. OLSON: I THINK SHE SENT IT TO HIM VIA INSTAGRAM DM --

MR. FETTEROLF: YOUR HONOR --

MS. OLSON: -- IS WHAT THE CLAIM IS.

MR. FETTEROLF: YOUR HONOR, WE CAN'T ACCESS IT NOW. NOW HE CAN'T ACCESS HER INSTAGRAM MESSAGE. WE HAVE THEM PRINTED OUT VIA THE P.D.F., BECAUSE CERTAINLY WHEN WE BECAME AWARE OF THIS, THEY WERE STILL FOLLOWING EACH OTHER. SO HER BLOCKING HIM VIA INSTAGRAM CAME SOMETIME AFTER THE INVESTIGATION. BUT THE VIDEOS RESIDE WITH HER.

AND AS TO IMAGING, I POINT MS. OLSON OUT TO WHAT SHE WROTE TO HER FRIEND MELY, THAT SHE WAS "DRIVING TO IRVINE TO GIVE MY LAWYER MY PHONE TO DOWNLOAD TREVOR'S TEXTS." I DON'T KNOW WHETHER THAT IS JUST DOWNLOADING THE MESSAGES. I

DON'T KNOW WHETHER THAT'S IMAGING.

BUT I GO BACK TO THE ISSUE. THIS IS HIGHLY RELEVANT AND HELPFUL INFORMATION TO THE DEFENSE THAT IT APPEARS HAS BEEN, BASED ON MS. OLSON'S REPRESENTATION, DELETED AFTER SHE HAD KNOWLEDGE OF POTENTIAL CLAIMS. SO --

MS. OLSON: AND I --

MR. FETTEROLF: -- WE MADE THE REQUEST JUST TO GET THE -- TO GET THE VIDEOS. BUT IF THE ANSWER IS THE VIDEOS ARE GONE, I GUESS, WE CAN GO TO THE NEXT QUESTION. THE FIRST THING WE'D LIKE ARE THE VIDEOS, IF THEY'RE OUT THERE.

MS. OLSON: WE DON'T HAVE VIDEOS. AND WHAT WE WERE ABLE TO DOWNLOAD WAS VERY LITTLE. BECAUSE, A, I DON'T KNOW IF SHE GOT A NEW PHONE. IF SHE -- I DON'T KNOW THAT SPECIFICALLY. SO I KNOW THAT WE DON'T HAVE VIDEOS. I KNOW WE NEVER DOWNLOADED VIDEOS. I KNOW THAT THE LIMITED TEXTS WE HAVE -- WE ACTUALLY GOT MORE TEXTS FROM MR. FETTEROLF BETWEEN THE PARTIES THAN MY CLIENT.

THE COURT: MS. OLSON, ARE YOU MAKING A REPRESENTATION ON BEHALF OF RIGHT CHOICE LAW, WHICH WOULD BE THE PLACE THAT SHE REFERENCED IN HER TEXT OR EMAIL THAT SHE WAS GOING TO HER LAWYER IN IRVINE -- IT APPEARS RIGHT CHOICE LAW IS ON THE BORDER OF NEWPORT BEACH AND IRVINE.

MS. OLSON: WE ACTUALLY HAVE AN OFFICE IN IRVINE. I THINK THAT REFERENCE MIGHT HAVE BEEN -- DEPENDING ON THE DATE, MIGHT HAVE BEEN EITHER FOR MR. THIAGARAJAH OR MY OFFICE. WE DON'T HAVE ANYTHING THAT WAS DOWNLOADED. WE HAVE VERY LITTLE TEXTS AND NO VIDEOS. WE ACTUALLY -- LIKE, I'M SAYING, WE GOT MORE TEXTS FROM MR. FETTEROLF THAN WE WERE

ABLE TO GET FROM OUR OWN CLIENT. AND ANY TEXTS THAT WERE ATTACHED WERE PHOTO -- LIKE SHE TOOK A SNAPSHOT OF THE TEXT. SHE DOESN'T HAVE THE LIVE FILE, I GUESS, YOU WOULD SAY. SO WE DON'T HAVE IT. SHE DOESN'T HAVE IT.

MAYBE THE POLICE DEPARTMENT HAS IT. I DON'T KNOW. SINCE THEY WERE THE ONLY ENTITY RIGHT AFTER THE INCIDENT TO HAVE HER PHONE. THEY TOOK IT AND HAD IT. AGAIN, WHAT THEY DID WITH IT -- BECAUSE I KNOW THAT THEY DOWNLOADED MORE THAN JUST TEXTS BETWEEN HER AND TREVOR -- I DON'T KNOW.

THE COURT: SO IT SOUNDS LIKE PASADENA POLICE IS THE ENTITY MOST LIKELY TO HAVE A VIDEO IF IT WAS RESIDING ON HER PHONE OR THROUGH HER INSTAGRAM ACCOUNT.

MS. OLSON: THAT WOULD BE MY BEST ESTIMATE, YOUR HONOR, AS TO WHO, IF ANYONE, HAS IT.

MR. FETTEROLF: I GUESS, YOUR HONOR -- I MEAN, WE WERE ABLE TO DOWNLOAD A FULL SET OF THE IMAGES. OKAY. WE CAN'T ACCESS THE VIDEO. SO WE KNOW THAT WAS AFTER THE FACT OF THIS INCIDENT, WHETHER HER REPORT TO THE POLICE AND THE LIKE. SO I THINK IT GOES BACK TO, SHE HAD THIS INFORMATION. AND WHAT WE'RE HEARING IS AFTER SHE MADE A REPORT TO THE POLICE, AFTER SHE HIRED A LAWYER, SHE DELETED IT.

THE COURT: YES, THAT'S WHAT YOU'RE HEARING. EXACTLY. WHAT CAN I DO FOR YOU WITH REGARD TO THAT? I CAN'T GO BACK AND MAKE HER NOT HAVE DONE SO.

MR. FETTEROLF: WELL, I GUESS, I MEAN, ULTIMATELY I THINK IT'S SPOLIATION ISSUE. I GUESS WE CAN FILE --

THE COURT: I AGREE. IT IS A SPOLIATION ISSUE. YOU HAVE THE STILLS FROM SOMETHING YOU KNOW TO HAVE BEEN A VIDEO.

MR. FETTEROLF: SO, I MEAN, I CAN -- I MEAN, GOING BACK TO WHAT OTHER COURTS HAVE DONE IN THESE CIRCUMSTANCES, YOU TAKE AN ADVERSE INFERENCE THAT THIS WAS INFORMATION HELPFUL TO THE DEFENSE THAT WAS DELETED. THERE ARE LIMITING -- I MEAN, THERE'S A RANGE OF OUTCOMES FROM, YOU KNOW, DISMISSAL OF THE ENTIRE CASE, TO A STIPULATION THAT, YOU KNOW, LIMITING CERTAIN EVIDENCE.

SO THIS IS INFORMATION THAT APPEARS TO SHOW BRUISING AROUND HER BUTTOCKS OR VAGINA AREA. SO THAT PART IS OUT OF THE CASE BECAUSE WE CAN'T USE THIS TO DEFEND THIS GOING FORWARD. WE ARE HAPPY TO PROVIDE BRIEFING ON THAT TO YOU, IF YOU LIKE, AND CITE THE CASE LAW AND MAKE SOME SUGGESTIONS. BUT I DON'T KNOW HOW YOU WOULD LIKE TO HANDLE IT.

THE COURT: YOU HAVE GOT THE STILLS OF THE VIDEO; CORRECT?

MR. FETTEROLF: IT JUST SAYS "VIDEO."

THE COURT: I'M SORRY.

MR. FETTEROLF: WE HAVE WHAT SHE DESCRIBED. IT SAYS "VIDEO." WE KNOW THERE'S A VIDEO. WE CAN'T ACCESS IT. AND WE KNOW HOW SHE DESCRIBES IT. YOU KNOW, SHE DESCRIBES IT AS A THUMBPRINT ON HER BUTT. AND THEN SAID "NEAR HER PRIZED POSSESSION." SO THAT'S WHY I'M INFERRING THAT SHE IS REFERENCING BRUISES ON HER BUTTOCKS AND NEAR HER VAGINAL AREA.

THE COURT: BUT DO YOU HAVE STILL PHOTOS? WAS THAT NOT WHAT YOU ATTACHED TO YOUR MOTION?

MR. FETTEROLF: NO. WE DON'T HAVE -- IT JUST SAYS

"VIDEO." AND WE HAVE HER DESCRIPTION. SO I'M GOING BY, YOU KNOW, WHEN SHE SAYS -- SHE SENDS IT. MR. BAUER SAYS, "WHAT IS THAT?" AND SHE SAYS, YOU KNOW, "YOUR THUMBPRINT ON MY" -- IT LOOKS -- SOUNDS LIKE HER BUTTOCKS. AND THEN THERE'S ANOTHER VIDEO -- ANOTHER REFERENCE TO A VIDEO ON THERE AND SAYS "NEAR MY PRIZED POSSESSION." WE DON'T HAVE THE STILL. WE JUST HAVE A REFERENCE TO A VIDEO BEING THERE, BUT THAT'S NOW SINCE DELETED.

THE COURT: YOU CAN DETERMINE WHEN IT WAS DELETED, CORRECT, MS. OLSON?

MS. OLSON: I MEAN, I'M SURE I CAN HAVE AN I.T. PERSON DETERMINE THAT. I PERSONALLY CAN'T.

THE COURT: NO, YOU PERSONALLY CAN'T.

MS. OLSON: RIGHT.

THE COURT: LET'S FIND OUT.

MS. OLSON: BY INQUIRY TO MY CLIENT, AS WELL AS TO, PERHAPS, AN I.T. PERSON, I CAN FIGURE OUT WHEN IT WAS DELETED.

THE COURT: I MEAN, IT WOULD BE -- IT WOULD CERTAINLY BE RELEVANT TO KNOW WHEN IT WAS DELETED. I'M SURE THEY CAN GIVE US DOWN TO THE MINUTE WHEN IT WAS DELETED.

MS. OLSON: AS AN OFFER OF PROOF, SHE BELIEVES THEY WERE GONE ON MAY 17TH WHEN SHE WAS IN THE HOSPITAL. AND, ALSO, THAT WHEN YOU SEND A VIDEO ON INSTAGRAM, YOU CAN'T RECOVER IT. IT'S ONE OF THOSE. I THINK THEY'RE STORIES AND THEY DELETE AFTER A CERTAIN PERIOD OF TIME.

THE COURT: THAT'S NOT MY UNDERSTANDING. IT MAY BE HER UNDERSTANDING.

MS. OLSON: WELL, THERE'S POSTINGS AND STORIES.

THE COURT: RIGHT.

MS. OLSON: THE STORIES DON'T. THE POSTINGS DO. I KNOW THEY DELETE AFTER A PERIOD OF TIME. NOT STORIES. THAT'S MY UNDERSTANDING.

MR. FETTEROLF: I MEAN, YOUR HONOR, WE KNOW THAT THEY'RE REFERENCED IN THE INSTAGRAM MESSAGES THAT WE DOWNLOADED WELL AFTER THE 17TH. SO WE KNOW THEY'RE CONNECTED TO INSTAGRAM WELL AFTER THAT DATE. I MEAN, IF THAT'S HER STATEMENT THAT SHE DELETED THEM ON THE 17TH, YOU KNOW, WE CAN SHOW INFORMATION TO SHOW THAT IS JUST INCORRECT. BECAUSE, OTHERWISE, HOW WOULD WE BE ABLE TO PRINT THEM OUT AND SEE THEM? BECAUSE THEY WOULD BE GONE FROM MR. BAUER.

AND, ALSO, I MEAN, YOU KNOW, THE ARGUMENT THAT SHE DELETED THEM BECAUSE SHE COULDN'T STAND TO SEE MR. BAUER ON HER PHONE AND THE LIKE, SHE IS GOING ON THE 29TH TO DOWNLOAD TEXT MESSAGES FROM HIM. SO I DON'T KNOW WHETHER THEY'RE INSTAGRAM OR TEXT MESSAGES, BUT I GUESS I'M A LITTLE SKEPTICAL OF THE RESPONSE.

THE COURT: WELL, THESE WILL BE YOUR ARGUMENTS AT THE HEARING. ANY OTHER ITEMS?

MR. FETTEROLF: YES, YOUR HONOR. THE LAST ISSUE -- LET ME MAKE SURE I HAVEN'T MISSED ONE. ON THE ISSUE WITH HER FRIEND MELY, WHO IS ALSO REFERENCED IN THERE, WE DID RECEIVE SOME MESSAGES FROM MELY. MELY TOLD US THAT SHE HAD A FUNCTION ON HER PHONE THAT AUTOMATICALLY DELETED MESSAGES. SO IN LIGHT OF THAT, AND IN LIGHT OF THE FACT THAT SHE IS A WITNESS AND REFERENCED, WE'VE ASKED MS. HILL TO PROVIDE THE

MESSAGES THAT RELATE TO MR. BAUER -- NOT EVERY SINGLE MESSAGE BETWEEN THEM -- JUST THE ONES RELATED TO MR. BAUER TO US. AND I THINK THE RESPONSE WE GOT, SHE DOESN'T HAVE MESSAGES THAT ARE FOUR MONTHS OLD. BUT, AGAIN, I GO BACK TO THE SAME ISSUE. IF IT RELATES TO MR. BAUER, I THINK THEY'RE RELEVANT MESSAGES. AND I GUESS SHE EITHER DELETED THEM OR HAS THEM TO PRODUCE.

THE COURT: SO WHAT DOES SHE GOT?

MS. OLSON: SHE DOESN'T HAVE MESSAGES FROM FOUR MONTHS AGO. I CAN GIVE YOU WHAT SHE HAS, BUT THEY'RE NOT FROM FOUR MONTHS AGO. I THINK THEY'RE DUPLICATIVE OF WHAT MS. -- I FORGOT HER LAST NAME -- MELY. WHAT MELY PROVIDED. I LOOKED AT WHAT MS. HOLLEY SENT ME. I DIDN'T HAVE THEM. MS. HOLLEY SENT ME THE PHOTOGRAPHS SHE TOOK.

SO I DON'T THINK I HAVE ANYTHING OUTSIDE OF WHAT YOU HAVE. TO THE EXTENT THAT I DO, I'LL PROVIDE YOU WITH WHAT I HAVE. BUT I KNOW SHE DOESN'T HAVE THINGS GOING BACK FOUR MONTHS.

MR. FETTEROLF: WELL, I GUESS, THAT PRESENTS THE SAME -- I MEAN, A SIMILAR ISSUE TO WHAT WE JUST DISCUSSED. IF THERE'S RELEVANT COMMUNICATIONS WITH HER, YOU KNOW, WHY WERE THEY -- REGARDING MR. BAUER -- WHY WERE THEY DELETED AFTER, IN THIS CASE, WOULD BE AFTER THE ONSET OF CONTEMPLATION OF LITIGATION.

THE COURT: RIGHT. WELL, WE DON'T KNOW --

MR. FETTEROLF: I GUESS WE'LL SEE.

THE COURT: WE DON'T KNOW, A, WHEN THEY WERE DELETED. B, IF THEY WERE DELETED. AND, THREE, WHETHER SHE HAD

ANYTHING TO DO WITH THEIR DELETION. AS MELY HAD INDICATED, IT'S SIMPLY A MATTER OF THE SETTINGS WHEN THINGS KIND OF FALL OFF ON THE BACK-END TO MAKE ROOM FOR NEW STUFF.

MR. FETTEROLF: BUT, I GUESS, YOUR HONOR -- AND THAT MAY BE TRUE. MAYBE THE THING WOULD BE IS JUST TO GET THE INFORMATION. BUT I'M NOT AWARE, FROM AT LEAST IN THE LETTERS THAT WERE PROVIDED, THAT THERE IS -- THAT MS. HILL HAS THAT SETTING ON HER PHONE. AND ULTIMATELY IT WOULD SEEM TO MAKE SENSE IF THERE'S AN IMAGE OF THE PHONE, THE EASIEST THING TO GO TO DO -- BECAUSE THAT IS IN THE POSSESSION, CUSTODY, AND CONTROL OF MS. HILL -- IS TO GO TO THE IMAGE -- BECAUSE THAT'S THE LATEST DATE OF PRESERVATION. THAT'S WHY WE IMAGE PHONES -- AND PULL THEM FROM THE IMAGE, NOT NECESSARILY HER PHONE.

THE COURT: IF YOU HAD SOMEBODY IMAGE HER PHONE IN IRVINE WHEN SHE MADE REFERENCE TO GOING THERE FOR THAT PURPOSE, EVEN IF IT WAS ONLY GOING BACK TWO MONTHS, IT WOULD BE TWO MONTHS FROM THAT DATE.

MS. OLSON: I KNOW THE ONLY THING THAT WE COPIED WERE THE TEXTS BETWEEN HER AND TREVOR.

THE COURT: DID YOU HAVE SOMEBODY IMAGE HER PHONE?

MS. OLSON: NO. RECOVER AND PRINT OUT THE TEXTS BETWEEN HER AND TREVOR.

MR. FETTEROLF: WELL, THAT'S THE REPRESENTATION THAT'S MADE, THEN I GUESS WE'LL PREPARE A MOTION TO DEAL WITH THESE ISSUES.

MS. OLSON: BUT, AGAIN, MY OFFER IS TO THE EXTENT I HAVE TEXT MESSAGES FROM THE INCIDENT TO THE TIME THAT YOUR FIRST

TEXT MESSAGE FROM MELY APPEARS, I WILL PROVIDE THAT TO YOU. YOU HAVE MY REPRESENTATION ON THAT. WITH THE PROVISO, THAT RELATE TO TREVOR.

THE COURT: THEY'RE TALKING ABOUT OTHER THINGS.

MS. OLSON: RIGHT.

MR. FETTEROLF: OKAY. AND, DOREEN, WE'LL GET THAT AT THE SAME TIMING AS THE LISA M. MESSAGES.

MS. OLSON: WELL, LET ME BACK IT UP. LET ME SAY TOMORROW BY THE CLOSE OF BUSINESS SINCE YOU JUST ADDED TO MY WORKLOAD.

MR. FETTEROLF: THAT'S FINE. THAT'S FINE.

THE COURT: ALL RIGHT.

MS. OLSON: WE WERE ASKING, YOUR HONOR --

MR. FETTEROLF: THE LAST THING --

MS. OLSON: I'M SORRY. CAN I JUST INTERRUPT FOR ONE SECOND. YOU HAD ASKED ABOUT THE THERAPIST THAT SHE SAW AFTER. SHE WAS REFERRED TO ERIKA MOSES FROM THE SAN DIEGO CENTER FOR TRAUMA RECOVERY. AND IT'S E-R-I-K-A, I BELIEVE.

THE COURT: ALL RIGHT. AND THEN, MR. FETTEROLF, YOU HAD ONE OTHER ISSUE?

MR. FETTEROLF: YES. THE LAST ISSUE -- SORRY. MY WORK SPACE IS A LITTLE COMPROMISED HERE. OH. THE LAST THING WE HAVE WAS THE PHOTOGRAPHS. SO NOW THAT WE HAVE PHOTOGRAPHS FROM THE SANE NURSE, THEY ARE QUITE DIFFERENT FROM THE PHOTOGRAPHS THAT WERE INCLUDED AS, YOU KNOW, EXHIBITS TO THE D.V.R.O. REQUEST.

THE EXHIBITS INCLUDED APPEAR TO BE TAKEN WITH, YOU KNOW, POTENTIALLY FILTERS OR EDITED VIA THIRD PARTY DOCUMENT

APPS -- AND POTENTIALLY, AGAIN, I AM -- THIS IS OUR SUGGESTION, BUT WE NEED TO CONFIRM IT -- IN ORDER TO ACCENTUATE HER INJURIES. WE ASKED FOR NATIVE DIGITAL IMAGES OF THOSE PHOTOS, AS WELL AS ANY OTHERS PROVIDED TO THE MEDIA, FOR PURPOSES OF EXAMINING THE METADATA TO DETERMINE THE TIME, PLACE, AND MANNER OF THE PHOTOGRAPH. AS WELL AS WHETHER THE PICTURES WERE EDITED IN ANY WAY.

WHAT I MEAN BY THIS, WHILE IF I TAKE A PICTURE OF MYSELF AS A SELFIE AND SEND IT TO YOU, WE HAVE THE NATIVE IMAGES. SOMEONE CAN DETERMINE WAS THERE ANYTHING DONE WITH THAT PHOTO. WHAT FORMAT IT'S IN, THE TIMING, AND THE LIKE. FORENSICS CAN TELL US WHETHER A FILTER IS APPLIED.

THE ONLY NATIVE IMAGES WE HAVE ARE THE ONES THAT WERE SENT TO TREVOR, BECAUSE WE DID IMAGE HIS PHONE. AND WE WERE ABLE TO PULL THOSE IMAGES OUT. AND WE CAN ALREADY TELL ONE IS NOT A TRADITIONAL SELFIE AND THAT IT HAS BEEN EDITED OR TAKEN WITH A DIFFERENT CAMERA OR SOMETHING.

IN RESPONSE, WHAT MS. OLSON SAID WAS, FIRST, THAT MS. HILL HAS PROVIDED NO PHOTOS TO THE MEDIA. BUT WE KNOW FROM THE TMZ ARTICLE FROM LAST WEEK -- AND I'LL QUOTE -- IT SAYS, "THE ATTORNEY FOR BAUER'S ALLEGED VICTIM, BRYAN FREEDMAN, ASKED TMZ SPORTS TO PUBLISH AN UNREDACTED PHOTOGRAPH SHOWING HIS CLIENT'S INJURIES." THE ARTICLE FURTHER NOTES, "THE ALLEGED VICTIM AND HER FAMILY REQUESTED THAT THIS PHOTO BE RELEASED THROUGH FREEDMAN." I'M NOT REALLY SURE WHAT THAT RESPONSE REFERRED TO. BUT THAT'S DIRECTLY WHAT IS IN THERE.

AND WHILE NOT PROVIDED DIRECTLY TO THE MEDIA AS

PART OF HER D.V.R.O. FILING, SHE INCLUDED A NUMBER OF IMAGES IN THE FILING. AND AS THEIR OWN COMMUNICATIONS WITH HER FRIEND MELY SHOW, MS. HILL MADE DEMANDS TO HER LAWYERS. SHE INCLUDES QUOTES. BASICALLY SENDS TO MELY WHAT SHE TOLD HER LAWYERS, THAT HER TEAM MAKES SURE THIS INFORMATION IS PUT OUT. THE MEDIA DOES NOT RUN IT FROM HER FILING.

THE PHOTOS WE GOT FROM MS. OLSON VIA EMAIL, FRANKLY, RAISE MORE QUESTIONS. SOME OF THESE PHOTOS ARE DYNAMIC PHOTOS, WHICH MEANS THAT -- YOU KNOW, THAT'S THE DEFAULT SETTING ON THE IPHONE SUCH IF YOU TOUCH IT, IT SHOWS SORT OF A SECOND BEFORE AND A SECOND AFTERWARDS. THERE ARE OTHERS WHERE THE FUNCTION IS TURNED OFF. OTHERS APPEAR TO BE SORT OF A SCREENSHOT OF A SCREENSHOT.

I MEAN, THE PHOTO WAS, YOUR KNOW, TAKEN THROUGH THE USE OF A THIRD PARTY APP OR TAKEN BY SOMEONE ELSE. AND WE CAN ALSO SEE CHANGES IN EYE AND SKIN COLOR FROM THOSE IN THE SAME REPORT. BECAUSE THESE AREN'T NATIVE IMAGES, WE CAN'T, YOU KNOW, DO -- EXAMINE THE METADATA IN THIS WAY. SO, AGAIN, MY UNDERSTANDING -- OR AT LEAST THOUGHT WAS THEY WOULD HAVE IMAGED HER PHONE AT SOME POINT IN THIS LITIGATION.

SO, I GUESS, RELEVANT EVIDENCE WOULD BE THERE. I GO BACK TO THE SAME QUESTION, WHICH IS -- YOU KNOW, I DON'T THINK THIS IS A BURDENSOME OR DIFFICULT REQUEST. THESE SHOULD BE THINGS THAT COULD BE PROVIDED TO US IN NATIVE FORMAT VIA SECURE SHARE. AND WE CAN HAVE OUR PEOPLE EXAMINE THEM. AND IF THERE'S A NEED BASED ON WHAT THEY FIND TO TESTIFY, WE'LL LET EVERYONE KNOW.

MS. OLSON: I PROVIDED THE SAME PICTURES THAT WE HAVE IN

OUR D.V.R.O. AND THOSE ARE THE PICTURES THAT WE HAD.

THE COURT: ELECTRONICALLY?

MS. OLSON: YES. AND I PROVIDED THE ONES WITH THE DATE STAMP.

THE COURT: DID YOU PROVIDE THE PHOTOS, INCLUDING THE METADATA, SO THAT IT CAN BE EXAMINED FOR EXACTLY THE THINGS MR. FETTEROLF IS TALKING ABOUT?

MS. OLSON: AGAIN, ABSENT RETAINING A I.T. INDIVIDUAL, I DON'T HAVE A MEANS OF SENDING METADATA. I GUESS I COULD FIND SOMEONE TO GET THE METADATA.

THE COURT: THAT SEEMS REASONABLE.

MS. OLSON: SO I WILL SEND HIM THE METADATA FOR THE PHOTOS THAT WE'VE ATTACHED TO THE D.V.R.O.

THE COURT: I THINK YOU NEED TO SEND THE NATIVE PHOTOS SO THAT THEY CAN LOOK AT THE METADATA. NOT TO SEND SEPARATELY THE METADATA.

MS. OLSON: AND, YOUR HONOR, AGAIN PLEADING IGNORANCE, I DON'T KNOW "NATIVE." I DON'T KNOW "METADATA." I WILL HAVE TO HAVE SOMEONE, AGAIN, RETAINED AT MR. BAUER'S COST TO PROVIDE THE METADATA AND THE NATIVE PHOTOS. AM I USING THE VERNACULAR CORRECTLY?

MR. FETTEROLF: YEAH. I MEAN, I DON'T THINK IT'S VERY DIFFICULT, I MEAN, FROM THE STANDPOINT OF THEIR PULLING THE IMAGES FROM YOUR PHONE AND SENDING THEM VIA SECURE SHARE, THE NATIVE AND DATA FORMATS. I CAN ASK OUR I.T. PEOPLE -- I THINK YOUR LAW FIRM SHOULD EASILY BE ABLE TO DO THAT. PULL THE INFORMATION FROM THE PHONE AND SEND IT.

MS. OLSON: IS THAT LIKE A JPEG?

THE COURT: IT IS NOT A JPEG.

MS. OLSON: I'LL HAVE TO INQUIRE WITH SOMEONE.

MR. FETTEROLF: I GUESS MY QUESTION IS WHEN CAN WE EXPECT TO RECEIVE THAT? BECAUSE WE'RE GOING TO HAVE TO TAKE THAT, HAVE FORENSIC CONSULTANTS REVIEW IT FOR PURPOSES OF POTENTIALLY TESTIFYING, I GUESS, ON MONDAY.

MS. OLSON: SURE. WHY DON'T I GIVE MYSELF THE SAME -- TOMORROW, TUESDAY, BY THE CLOSE OF BUSINESS.

MR. FETTEROLF: OKAY.

MS. OLSON: JUST TO BE CLEAR, NATIVE AND METADATA.

THE COURT: THE NATIVE VERSIONS OF THOSE PHOTOS SHOULD -- ELECTRONIC VERSIONS OF THOSE PHOTOS SHOULD CONTAIN THE METADATA.

MS. OLSON: OKAY. GOT IT.

MR. FETTEROLF: AND SO -- KATE, DID YOU GET THE NAME OF THE PSYCHOLOGIST THAT WAS REFERENCED?

MS. MANGELS: YEAH, I HAVE THAT WRITTEN DOWN.

MR. FETTEROLF: AND, I GUESS, YOUR HONOR, WE'LL -- SINCE IT SOUNDS LIKE THOSE MATERIALS AREN'T GOING TO BE PROVIDED BY PETITIONER, THAT WE WILL NOW SEND OUT A SUBPOENA TO THAT ENTITY. KATE WILL BE MORE OF THE EXPERT ON THIS FOR CALIFORNIA LAW, BUT I ASSUME WE HAVE TO GIVE THE SAME FIVE DAYS NOTICE AND THE LIKE. MAKING THEM RETURNABLE 26 DAYS FROM TODAY? KATE, IS THAT ACCURATE?

MS. MANGELS: DEPENDING ON THE WAY SERVICE IS DONE, I WOULD ASSUME IT WILL BE CONSUMER -- REQUIRING FIVE DAYS NOTICE TO -- PRIOR TO SERVING ON THE ENTITY.

MR. FETTEROLF: AND DO I UNDERSTAND CORRECTLY THAT WE

AREN'T GOING TO GET MEDICAL RECORDS DIRECTLY FROM PETITIONER?

MS. OLSON: AGAIN, I PROVIDED YOU COMPLETE COPIES OF WHAT I HAVE. I HAVE GIVEN YOU COPIES OF WHAT I SUBPOENAED. I HAVE GIVEN YOU THE URINALYSIS.

THE COURT: IS "NO" THE ANSWER?

MS. OLSON: TO THE EXTENT I HAVE ANYTHING, I WILL SHARE IT WITH OPPOSING COUNSEL. I HAVE ASKED MY CLIENT ABOUT ALL THE REFERENCED -- LIKE THE MRI. SHE DIDN'T RECEIVE ANYTHING AT THE DAY SHE WAS EXAMINED.

THE COURT: SHE WOULD NOT HAVE.

MS. OLSON: NO. SO SHE DOESN'T HAVE THOSE. IF THERE'S A WAY SHE CAN ACCESS THEM, I WILL ASK HER. AND, AGAIN, I -- YOU HAVE MY REPRESENTATION IF I OBTAIN IT, YOU'LL OBTAIN IT.

MR. FETTEROLF: AND THEN THE LAST QUESTION I HAVE IS BESIDES THIS PSYCHOLOGIST THAT WAS REFERENCED, IS THERE ANY OTHER ENTITY THAT WE NEED TO SUBPOENA FOR RECORDS THAT WERE NOT -- THAT SHE SAW THAT WE'RE NOT OTHERWISE AWARE OF? MEANING IF THE MRI IS TAKEN AT A RADIOLOGY INSTITUTE, THAT IF WE SEND THEM TO SCRIPPS, SCRIPPS IS GOING TO SAY WE DON'T HAVE THEM. THE RADIOLOGY INSTITUTE HAS THEM.

MS. OLSON: I HAVE NO IDEA, BECAUSE I HAVEN'T SEEN M.R.I. RESULTS. I CAN'T TELL YOU.

THE COURT: YOUR CLIENT WOULD KNOW WHETHER IT WAS DONE AT SCRIPPS OR WHETHER IT WAS DONE AT SOME FACILITY THAT THEY REFERRED HER TO.

MS. OLSON: CORRECT. AND IF I AM ABLE TO ASCERTAIN THAT INFORMATION AND GET IT FOR YOU AND GET YOU THOSE RESULTS, OF COURSE, I WILL. LIKE I JUST REPRESENTED TO YOU AND THE

COURT, IF I CAN OBTAIN THOSE RECORDS -- AND I CAN INQUIRE OF MY CLIENT -- I WILL GET YOU THAT INFORMATION. WE'RE NOT TRYING TO HIDE ANYTHING. WE REALLY AREN'T.

THE COURT: AND IN TERMS OF IMAGING -- MEDICAL IMAGING, IT WOULDN'T NECESSARILY BE THE CASE THAT EVEN IF IT WAS DONE AT SCRIPPS THAT IT WAS DONE BY SCRIPPS. BUT IT WOULD BE PART OF THE MEDICAL RECORDS FROM SCRIPPS.

MS. OLSON: AND I DIDN'T SUBPOENA SCRIPPS. SO ALL I HAVE IS WHAT MY CLIENT PROVIDED TO ME.

MR. FETTEROLF: RIGHT. WE'RE JUST TRYING TO GET THE MEDICAL RECORDS AT THE PLACES SHE VISITED. SO I GUESS WE'LL SEE WHAT WE GET ON WEDNESDAY. MAYBE WE'LL HAVE SOME MORE UPDATES FROM OUR SUBPOENA. AND THEN I GUESS WE'LL INFORM EVERYONE SORT OF WHERE WE ARE AND WHAT WE'VE GOTTEN.

THE COURT: ALL RIGHT. I THINK THAT SHOULD DO IT, YES, COUNSEL?

MR. FETTEROLF: THAT'S ALL WE HAVE.

THE COURT: ALL RIGHT. THANK YOU VERY MUCH.

MR. FETTEROLF: OKAY. THANK YOU.

THE COURT: SEE YOU ON MONDAY.

MS. OLSON: THANK YOU, YOUR HONOR.

MR. FETTEROLF: ALL RIGHT. BYE-BYE. THANK YOU, YOUR HONOR.

(THE PROCEEDINGS WERE CONCLUDED.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

HON. DIANNA GOULD-SALTMAN, JUDGE DEPARTMENT 35

| | |
|---|---|
| LINDSEY HILL,<br>PETITIONER,<br>VS.<br>TREVOR BAUER,<br>RESPONDENT. | SUPERIOR COURT NO. 21STRO03198<br>REPORTER'S CERTIFICATE |

I, JACQUELINE M. CAIRE, OFFICIAL COURT REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA; FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES, 1 THROUGH 37, COMPRISE A FULL, TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED CAUSE AUGUST 9, 2021.

DATED THIS 9TH DAY OF AUGUST, 2021.

Jacqueline M. Caire

JACQUELINE M. CAIRE, CSR #9599, RPR
OFFICIAL REPORTER

#2



MEYER, OLSON, LOWY & MEYERS, LLP
FAMILY LAW

DOREEN MARIE OLSON*

E-MAIL: DMO@MOLFAMLAW.COM

August 10, 2021

**VIA EMAIL AND MESSENGER**
*JFETTEROLF@ZUCKERMAN.COM*
*SHOLLEY@KWIKALAW.COM*

Jon Fetterolf, Esq.
Zuckerman Spaeder LLP

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella, Weitzman, Iser and Kump

Re: **In re Matter of Hill/Bauer**

Dear Counsel:

As represented to the Court at yesterday's hearing that we would voluntarily produce the information you have requested, enclosed please find the following:

1. As you have requested, we are providing the metadata and native images from pictures taken by Ms. Hill, which have been downloaded onto the enclosed flash drive **[delivered via messenger to Ms. Mangels' office].** As you will find, the images have not been doctored, modified or changed in anyway, contrary to your claims to the Court. If you have any questions about the flash drive, the imaging that occurred or the process of obtaining the metadata, please contact Mr. Garelick for assistance.

2. As also requested, we enclose as a pdf the text messages between Ms. Maya and Ms. Hill for the period April 18th to June 20th. You have all the Ms. Maya texts for the period commencing June 19, 2021 that were provided to you based on your subpoena request.

3. The two videos that Ms. Hill sent to Mr. Bauer via Instagram Direct Messages on April 29, 2021 at 9:38 a.m. and 11:24 a.m. were not recovered. Ms. Hill has made further efforts to diligently search and reasonably inquire as to the viability of accessing the two videos. However, the videos no longer exist. To be clear, we are not disputing whether or not Ms. Hill, in fact, sent the two videos to Mr. Bauer on April 29, 2021. We simply are unable to retrieve and produce the two videos pursuant to Mr. Fetterolf's request.

LISA HELFEND MEYER* · DOREEN MARIE OLSON* · DANA LOWY · FELICIA R. MEYERS
ANNE N. SLUSSER · BENJAMIN VALENCIA II* · CRAIG S. PEDERSEN · MARY H. REDFIELD · PHILIP J. MONAHAN
ERIC W. MEYER · SEHBA SAULEHA ARIF · MARC H. GARELICK · ALYSSA D. DICKERSON · MARIE A. LAMOLINARA
NATALIE A. XIFO · BRITTANY SWANSON · HEATHER A. OGDEN · MICHAEL A. WOLKOWITZ · SANA F. MASHEDY · RYAN D. WEDEKING
JESSEE W. MATANA · AMY S. KAPNER · TAYLOR B. WALLIN* · ALISON J. BROWN · ERICA A. KUBO · STEPHANNIE U. OBIOHA · BRITTNEY A. RODRIGUEZ
*CERTIFIED FAMILY LAW SPECIALIST THE STATE BAR OF CALIFORNIA BOARD OF LEGAL SPECIALIZATION

10100 SANTA MONICA BLVD., SUITE 1425 | LOS ANGELES, CA 90067 | TEL 310-277-9747 | FAX 310-277-4847
3161 MICHELSON DRIVE, SUITE 1160 | IRVINE, CA 92612 | TEL 949-397-3977 | FAX 949-800-1309

As I represented to the court yesterday, and as represented in my August 6, 2021 letter in response to Mr. Fetterolf's August 3, 2021 letter, Ms. Hill deleted her Instagram messages with Mr. Bauer. However, contrary to representations made by Mr. Fetterolf to the Court yesterday, the deletion of Ms. Hill's Instagram messages with Mr. Bauer did not occur after she met with the police, hired counsel, and contemplated her own claims. The deletion occurred on or before April 29, 2021. We enclose a screenshot from Ms. Hill, time-stamped April 29, 2021 at 9:26 p.m., where you will see that the two videos Mr. Fetterolf seeks are no longer visible within the Instagram messages chain between Ms. Hill and Mr. Bauer. This means they no longer existed as of that date.

Furthermore, even if Ms. Hill had not deleted her Instagram chain with Mr. Bauer, the nature of the two Instagram videos that she sent to him on April 29, 2021 does not permit her the ability to re-access them. Pursuant to Instagram's Help Center, these kinds of videos are labeled "disappearing videos." This is because once it has been sent by Ms. Hill, received, opened, and seen by Mr. Bauer, the videos are automatically deleted from both Ms. Hill and Mr. Bauer's Instagram. We enclose the relevant Instagram FAQs sheet explaining the nature of "disappearing videos."

In short, the sending party cannot view disappearing photos or videos after they've been sent, but can only see if they were delivered, opened, replayed or if someone took a screenshot. It is our understanding that unless Ms. Hill saved the videos onto her iPhone device prior to sending to Mr. Bauer, which she did not, there is no way for Ms. Hill to retroactively retrieve the two videos Mr. Fetterolf seeks.

As I represented to the Court yesterday, Ms. Hill previously contacted Instagram through Facebook, on July 15, 2021, to see what she could recover in respect to her Instagram messages with Mr. Bauer. We enclose the three-page document of messages Instagram was able to restore pursuant to Ms. Hill's inquiry. Beyond the enclosed Instagram messages, the Instagram messages attached to Ms. Hill's original DVRO request, and the Instagram messages in Mr. Bauer's possession, custody, and control, there are no additional Instagram messages (including videos and pictures) within Ms. Hill's possession, custody, and control.

4. We are trying to obtain the native file of the limited text messages between Ms. Hill and Mr. Bauer that were downloaded from Ms. Hill's phone on June 28, 2021. As soon as we receive same, we will provide you with the documents.

5. Further, you have requested additional medical records, we attach the following pdf documents in response to your request:

a. Urinalysis dated (list specifics)

b. Urinalysis dated

c. MRI Face without contrast

d. MRI Brain without contrast

e. DNA probe

Said documents represent all medical testing results that Ms. Hill obtained from Scripps. Ms. Hill confirmed (as I represented in Court yesterday), that she did not undergo any psychological testing, thus, there are no results. Please ensure that any identifying information for Ms. Hill is redacted and not placed into the public record for both her privacy and security.

6. See attached pdf of the text messages from Lisa Decker and Ms. Hill.

If there are additional documents that you believe exist or are requesting, please meet and confer with our office directly. We have been more than transparent throughout this process.

Jon Fetterolf, Esq.
Shawn Holley, Esq.
Kate Mangels, Esq.
August 10, 2021
Page 4


    We ask that you produce all documents that you have received from Kyle
Erickson, Derek Dawson, and any medical providers, as well as all text messages that
you have been able to recover between Mr. Bauer and Ms. Hill.

                    Very truly yours,

                    *Doreen Marie Olson*

                    DOREEN MARIE OLSON
                    For the Firm

DMO
Enclosures
Cc:  Ms. Lindsey Hill
        Lisa Helfend Meyer, Esq.
        Marc Garelick, Esq.
        Bryan Freedman, Esq.
        N. Fred Thiagarajah, Esq.
J:\Hill, Lindsey\Letters\L08102021.to Opposing Counsel. Docs per Court 0809 Order.2.docx

#3

ZUCKERMAN
SPAEDER

Jon R. Fetterolf
PARTNER
Zuckerman Spaeder LLP
jfetterolf@zuckerman.com
(202) 778-1880

August 12, 2021

**VIA E-MAIL**

Doreen Olson, Esq.
10100 Santa Monica Boulevard, Suite 1425
Los Angeles, CA 90067
dmo@molfamlaw.com

Re: **Petitioner's Exhibits and Witness List**

Dear Doreen:

Thank you for your letter of August 10 and for providing the enclosed information. I want to follow up on several unresolved or unaddressed issues, as well as some new issues your production has raised.

First, there are significant gaps missing in the text messages you provided for Petitioner's communications with Ciramely Maya and Lisa Jackson. We are missing communications between 5-18 and 5-27 for Ms. Jackson, and between 5-17 and 5-29 for Ms. Maya. Considering the number and frequency of Petitioner's daily communications with these two individuals, it is odd that both are missing messages from this similar gap in time. Please provide those communications by COB today. I am also assuming per your production that there are no other communications between Ms. Hill and these individuals during the relevant period (April 18 to the present) on some other form of communication device (Instagram, Snapchat, etc.). To the extent there are, these are similarly responsive to our request.

Second, as to the deleted videos in the Instagram messages, you referenced in your prior correspondence as well as during the hearing with the Court on Monday, August 9, 2021 that Ms. Hill deleted all her Instagram messages with Mr. Bauer. The Court asked you to provide the time and date when Ms. Hill deleted these messages, and this information was not provided in your letter. Please provide that information by COB today. As to your claim that these videos no longer existed after April 29, as you have suggested in your letter, that is not consistent with the purported support you provided, which is a screenshot from many hours after the videos were sent, and which does not contain the relevant portion of the Instagram chain in which the videos were sent. However, we will address your assertions separately in a filing before the Court.

Third, even with your production of certain medical records from Scripps, we are still missing certain medical records that we have requested

- **MRIs -** It appears that you have provided MRIs we requested that were taken on 6-21, but those referenced in the Scripps medical record from her visit on 6/3 (MRI brain, MRI face – expected date 6/3/21 have still not been provided). Please provide these by COB today.
- **Therapy Records -** during the 8/9 hearing you represented that Ms. Hill was "referred and has met with a therapist three times concerning the PTSD, depression symptoms," and that therapy was "in connection with this incident." You later identified the therapist as Erika Moses from the San Diego Center for Trauma Recovery. Since this person was identified, we have since subpoenaed records from this individual, but they will not be available until after the hearing commences. Rather than produce these records, you noted because Ms. Hill did not undergo any psychological testing, these records would not be produced. But Petitioner's own affidavit, paragraph 30, notes that she has been "diagnosed with PTSD and severe trauma," thereby introducing her psychological condition into this hearing. As such, the records from these therapy sessions which you confirmed at the hearing relating to this incident must be produced. Accordingly, please provide these by COB today so they can be reviewed and used at the hearing.

Fifth, as you are aware, we have subpoenaed the following entities—Scripps, Alvarado, and Palomar medical centers—but we have still not received documents. While we are still working with both Scripps and Alvarado to facilitate a subpoena response, we again request that you provide any medical records from these entities, as well as any others in your possession relating to her interactions with Respondent by COB today. As to Palomar, it appears they are withholding production based on the need for a written consent to be provided by Petitioner as well as a Protective Order signed by the parties per correspondence sent to both of us yesterday. Please provide the requested consent from Petitioner to Scripps to allow us both to receive these documents. We are happy to treat the medical records we receive from Palomar as Confidential based on the terms and conditions of the same Protective Order we entered pertaining to the SART examination, or if there is a need for the entry of a similar Protective Order to protect these disclosures, that is fine also.

Lastly, we received certain picture images as well as the Cellebrite extraction report from the imaging that was done of Petitioner's phone. From this report and the photos provided, we've been able to determine that at 3:17 am on May 16 Petitioner took a photo presumably at Respondent's house (according to Petitioner's affidavit) and that photo is numerically labeled IMG_3967. From that time until May 17, 2021 at 9:58 p.m.—approximately 42 hours—Petitioner took an additional 83 photos, which we can determine as iPhone photos are labeled numerically and the photo taken at 9:58 p.m. is labeled IMG_4050. Considering this is the time

period during which she appears to take photos of herself for the purpose of documenting her alleged injuries, these photos are relevant and need to be provided for review. Please send these photos by COB today. Also, it appears that before you provided the photos you turned off the live photo function which we know was evident in a number of these photos from your prior screen shots. Accordingly, please send all of these photos (IMG_3967-4050) with the live photo function turned back on. Lastly, because Petitioner's cellphone was imaged using a Cellebrite extraction, you are also able to provide GPS information noting where these photos were taken. Please provide that with your updated production of these photos. Because these will need to be provided and reviewed by our expert, please provide these materials by COB today.

As to the additional records you've requested, the Instagram and text communications between Petitioner and Respondent were provided in their entirety to you at the July 23 hearing. The text messages were separately provided to Mr. Garelick along with my June 29, 2021 letter to him in response to him notifying Respondent about the impending ex parte filing. We have provided you the texts messages we received from Mr. Erickson and Derek Dawson previously. We did receive two photos from Mr. Erickson by email that Kate Mangels will provide under a separate cover. If you don't believe you have any of these materials just let us know and we can resend. To the extent we receive any additional documents responsive to our subpoenas we will provide you those materials promptly.

Sincerely

Jon R. Fetterolf

cc: Shawn Holley (sholley@kwikhlaw.com)

#4

MEYER, OLSON, LOWY & MEYERS, LLP
FAMILY LAW

MARC H. GARELICK

E-MAIL: MG@MOLFAMLAW.COM

August 13, 2021

**VIA EMAIL**
*JFETTEROLF@ZUCKERMAN.COM*

Jon Fetterolf, Esq.
Zuckerman Spaeder LLP
1899 M Street NW, Ste 1000
Washington, D.C. 20036

sholley@kwikhlaw.com
KMangels@kwikhlaw.com

Shawn Holley, Esq.
Kate Mangels, Esq.
Kinsella Weitzman Iser Kump Holley, LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401

Re: **In re Matter of Hill/Bauer**

Dear Counsel:

This letter is in response to your letter dated August 12, 2021.

Paragraph 1, nothing to produce. Concerning Mely, on May 16th Lindsey was at Mely's home for a several hours. Lindsey went to the hospital on May 17th, and Mely was there as well. On May 21st, the Pasadena Police Department took Lindsey's phone, and she did not get it back until later the following day. If there are missing texts that Lindsey cannot retrieve, and they in fact exist, the Pasadena Police Department may have same. Lindsey performed a back-up of her phone dating back to April 14th, and we produced the pdf of the entire text conversation; nothing was altered and nothing was deleted. As to Lisa and Lindsey they saw each other from May 21st to the 23rd, so they would not have texted one another. Again, Lindsey did not have her phone on May 21st – May 22nd, and likewise, Lindsey performed a back-up of her phone dating back to April 14th, and we produced the pdf of the entire text conversation; nothing was altered

LISA HELFEND MEYER* · DOREEN MARIE OLSON* · DANA LOWY · FELICIA R. MEYERS
ANNE N. SLUSSER · BENJAMIN VALENCIA II* · CRAIG S. PEDERSEN · MARY H. REDFIELD · PHILIP J. MONAHAN
ERIC W. MEYER · SEHBA SAULEHA ARIF · MARC H. GARELICK · ALYSSA D. DICKERSON · MARIE A. LAMOLINARA
NATALIE A. XIFO · BRITTANY SWANSON · HEATHER A. OGDEN · MICHAEL A. WOLKOWITZ · SANA F. MASHEDY · RYAN D. WEDEKING
JESSEE W. MATANA · AMY S. KAPNER · TAYLOR B. WALLIN* · ALISON J. BROWN · ERICA A. KUBO · STEPHANNIE U. OBIOHA · BRITTNEY A. RODRIGUEZ
*CERTIFIED FAMILY LAW SPECIALIST THE STATE BAR OF CALIFORNIA BOARD OF LEGAL SPECIALIZATION

10100 SANTA MONICA BLVD., SUITE 1425 | LOS ANGELES, CA 90067 | TEL 310-277-9747 | FAX 310-277-4847
3161 MICHELSON DRIVE, SUITE 1160 | IRVINE, CA 92612 | TEL 949-397-3977 | FAX 949-800-1309

and nothing was deleted. We are also informed that Lisa personally reviewed her phone, and she did not have any texts from May 3rd - June 5th. You did not initially, or in your last *ex parte* request before the Court ask for Instagram or Snapchat conversations between Lindsey, Mely and/or Lisa, however, we have enclosed those for you.

We cannot indicate when Ms. Hill deleted her Instagram messages, as she frequently deletes information, having nothing to do with this case, but rather more of a function of storage capacity on her phone. We previously enclosed for you the Instagram messages between the parties. Attached hereto are screenshots of Ms. Hill's Instagram messages. You will notice that on April 29, 2021, and May 4, 2021, at the top of those Instagram messages, it provides the number of followers and posts that Mr. Bauer has, evidencing that these were new Instagram threads, as Ms. Hill had deleted their previous communications. She had deleted messages at some point prior to April 29, 2021, and again at some point prior to May 4, 2021. This is consistent with how Ms. Hill operates her cell phone functions by frequently deleting information.

Moreover, with regard to your claim that Ms. Hill turned off the live mode function on her cell phone, that is simply not true. When a screenshot is taken on a cellphone it indicates that the photograph taken was is in fact a live photo. We have sent you the native images and metadata for said photographs. When an image is emailed you cannot physically touch the screen and see the photograph move as you can when you physically hold down the picture on a cellphone. Again, this information was not requested at the last *ex parte* before the Court and we are unable to email live photographs.

We have no additional medical records to produce that have been provided to Lindsey. She reviewed the medical portal and everything that was sent to her, was produced for you. Ms. Hill has only undergone one set of MRIs on June 21, 2021, which was ordered on June 3, 2021. No MRI scans were taken on June 3, 2021.

With regard to Ms. Hill's therapist, Dr. Moses, we contacted Dr. Moses to obtain her treatment notes. She agreed to provide said notes, which we received today at approximately 4:00 p.m. A copy of the records are attached.

As we have now told you and Ms. Holley repeatedly, we provided you with all records which Lindsey obtained from Alvarado when she was being treated. You have

had the complete documents since at least July 27th. We also provided you on July 17th with the complete records that we obtained from Alvarado via the subpoena that we served. We have provided you with all records received. We provided everything we had from Scripps that was given to Ms. Hill. We did not subpoena any records from Scripps, so we have nothing that was produced.

Under separate cover, we provided you and Ms. Shauer with the signed Authorization, as well as the Stipulated Protective Order that you asked our office to prepare.

Concerning the photos, although some are not relevant, we have enclosed time stamped photographs in Lindsey's album for the time frame which you specified. We did not have an Extraction Report performed for the photos you are referencing as we are not using said photos for trial. Thus, with no extraction report for these photos we do not have the GPS information. You asked that we provide you with the Extraction Report for the photos we were using as exhibits. You have that report, which clearly indicates that Lindsey did not filter, alter, change or otherwise modify the photos of the injuries caused by Mr. Bauer's physical assault. And for the record, Lindsey's injuries are not alleged, they are real, actual injuries that were caused by your client.

Very truly yours,

DOREEN MARIE OLSON
For the Firm

DMO;dmo
Enclosures
Cc: Ms. Lindsey Hill (w/encls.)
Lisa Helfend Meyer, Esq.
Marc Garelick, Esq.
Bryan Freedman, Esq.
N. Fred Thiagarajah, Esq.

J:\Hill, Lindsey\Letters\L081321.J.Fetterolf.Ltr.More Photographs.docx

#5

**Marc Garelick**

---

**From:** Jentry Collins <JCollins@kwikhlaw.com>
**Sent:** Friday, August 13, 2021 4:54 PM
**To:** Lisa Helfend Meyer; Doreen M. Olson; Marc Garelick; Stephannie U. Obioha; Fred Thiagarajah; Bryan Freedman; Meredith Gonzalez; Jacqueline Baker; Jackie Kaminski
**Cc:** Shawn Holley; Jon Fetterolf; Ventresca, Ivano; Kate Mangels; Simmerson, Kelsey; Cohen, Jay; cvandergriff@zuckerman.com
**Subject:** Hill v Bauer
**Attachments:** BAUER- Supplemental Declaration re Motion to Dismiss.pdf; BAUER- Motion to Compel (Aug 13 2021).pdf

Counsel,

Please find attached Respondent's Supplemental Declaration ISO Motion to Dismiss and Respondent's Motion to Compel.

Thank you,

Jentry Collins | Assistant to Shawn Holley, Esq.

Kinsella Weitzman Iser Kump Holley LLP
808 Wilshire Boulevard, Suite 300/3rd Floor
Santa Monica, CA 90401
(310) 566-9822/29

# EXHIBIT 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

TREVOR BAUER,
Plaintiff,
vs.
LINDSEY C. HILL and NIRANJAN FRED THIAGARAJAH,
Defendants.

No. 8:22-cv-00868-JVS-ADS

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
VIDEOTAPED DEPOSITION OF LINDSEY C. HILL
Los Angeles, California
Tuesday, August 29, 2023
Volume I

Stenographically Reported By:
Melissa M. Villagran, RPR
CSR No. 12543

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

_____________________________
)
TREVOR BAUER, )
)
Plaintiff, )
)
vs. )No. 8:22-cv-00868-JVS-ADS
)
LINDSEY C. HILL and NIRANJAN )
FRED THIAGARAJAH, )
)
Defendants. )
_____________________________)

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Videotaped deposition of LINDSEY C. HILL, Volume I, taken on behalf of Plaintiff at 11766 Wilshire Boulevard, Los Angeles, California, beginning at 9:39 a.m. and ending at 7:30 p.m. on Tuesday, August 29, 2023, before Melissa M. Villagran, RPR, Certified Shorthand Reporter No. 12543.

APPEARANCES:

For Plaintiff:
ZUCKERMAN SPAEDER LLP
BY: BLAIR BROWN (Remote Appearance)
KELSEY SIMMERSON (Remote Appearance)
Attorneys at Law
1800 M St NW STE 1000
Washington, DC 20036
202.778.1800
Bbrown@zuckerman.com

KINSELLA HOLLEY ISER KUMP STEINSAPIR
BY: KATE MANGELS
Attorney at Law
11766 Wilshire Boulevard, 6th Floor
Los Angeles, California 90025
310.566.9853
Kmangels@khiks.com

APPEARANCES:

For Defendant Lindsey Hill:
WESIERSKI & ZUREK LLP
BY: MICHELLE PRESCOTT
JOSHUA NUZZO (Remote Appearance)
Attorneys at Law
29 Orchard Road
Lake Forest, California 92630
949.975.1000
Mprescott@wzllp.com
JNuzzo@wzllp.com

For Cross-Complainant Lindsey Hill:
FREEDMAN & TAITELMAN
BY: JESSE KAPLAN
BRYAN FREEDMAN
Attorneys at Law
1801 Century Park West, Suite 500
Los Angeles, California 90067
310.201.0005
Bfreedman@ftllp.com
(Remote Appearance)

APPEARANCES (continued):

Videographer:
Steven Togami

MR. KAPLAN: Okay. We are done.
BY MR. BROWN:
Q Is that the video that you took of you and Mr. Bauer on the morning of May 16th when you were both in bed? 02:24:27
A Yes.
Q And you would agree with me, would you not, that you were smiling at one point in the video?
A Smirking is probably a better word. I'm not sure if it was a smile. 02:24:39
Q And why were you smirking?
A So that was because my cousin Kyle had sent me a Snapchat asking how it went, and I was just in that moment trying to pretend like everything was fine, to send a reply back like nothing bad had even 02:24:53 happened.
Q You would agree with me that there's no visible bruising on your face in that video, correct?
A I don't agree with you on that. 02:25:10
Q Okay.
Where is the bruising that is depicted in that video on your face, where on your face?
A If you zoom in you can see light scratch marks. I think that this was taken in a room with 02:25:21

no lights on, and also the difference between a regular camera video and on a Snapchat, it would be impossible to tell that there was bruising there. But what is -- where it does show up is in the photos I take 20 minutes later in my car. 02:25:36
Q And where were the scratches that you say you saw in the video, where on your face?
A On my cheeks. I mean, you can't see them when it's just a front view like this, but there are points where you can zoom in and see that they are 02:25:51 there.
Q Have you done that?
A Yes.
Q You sent the video to your cousin Kyle, correct? 02:25:56
MR. KAPLAN: Objection.
Go ahead.
Lacks foundation. Misstates prior testimony.
You can answer.
THE DEPONENT: I don't think I ever went 02:26:18 through with sending it to him. I took it, like I was going to pretend like everything was fine and then instead of sending it I just saved it, just in case I needed, you know, to prove that I was there or something. I didn't know what was going to 02:26:26

happen.
BY MR. BROWN:
Q Why would you need to prove you were there?
A Because I knew that I had just gotten beat.
Q And where did you go when you left 02:26:39 Mr. Bauer's house?
A I stopped at some convenience store with a Starbucks inside of it. I got coffee and then I drove back to San Diego.
Q And did you -- where did you go in San Diego? 02:27:07
A I went to where I was staying at the time, in -- near college area in San Diego. I went to where I was staying, and then I went to my friend Mely's house later that night.
Q And between the time you left the convenience 02:27:26 store and the time you went to where you were staying, did you stop anywhere?
A I don't believe so.
Q Are you uncertain?
A I just vaguely remember there being text 02:27:49 messages about going to another coffee shop, Better Buzz, while I was waiting for Mely, but I don't think I ever ended up going there. That was just the only other place I could have gone while I was waiting for Mely to get home. 02:28:05

Q On your -- on your drive back, who did you communicate with?
A I believe it would have been Mely, Kyle Erickson, and Lisa Decker.
Q Now, since we're on the subject of the video, 02:28:15 I have a few additional questions about it.
What -- so the video was on your phone on May 16th, correct?
A Uh-huh. On my Snapchat application.
Q And who did you share the video with? 02:28:38
A I don't think I shared that specific video with anybody until I gave it to Pasadena police.
Q And did you give it -- okay.
After you gave it to the Pasadena police, who did you share it with? 02:28:59
A I provided it to my lawyer Bryan Freedman.
Q And was that on July 5th?
A I don't recall the exact date. I'm unaware of when that was.
Q All right. 02:29:16
Let's go to Tab 7B. This is going to be Exhibit 17.
(Exhibit 17 was marked for identification and is attached hereto.) 02:29:53

BY MR. BROWN:
Q This is a text message dated July 5, 2021, from you sending the video?
A Correct.
Q Can you tell from this that it was sent -- 02:30:12 whether it was sent to Mr. Freedman on July 5th?
A I mean, I can't tell that this is from Bryan. I'm not sure how I would be able to tell, but I did send him the video.
Q And did you -- did you ever delete it from -- 02:30:30 delete the video from your phone?
A Never.
Q Did you ever -- was it on your computer as well? Was it stored on your computer as well?
A I think it -- yeah, it should have been. If 02:30:52 it was with my iCloud, yes.
Q Did there come a time when it was ever deleted from your cell phone?
A No. It's still on my phone to this day, on my Snapchat app. 02:31:17
Q And is it accessible through your computer?
A I am not sure about my computer.
Q Did you provide the video to anyone at the Meyer Olson firm?
A No. I sent it to Bryan and had just assumed 02:31:41

it would be circulated throughout the team.
Q Did you provide it to Fred, your Marsy's Law attorney?
A No.
Q The video was not used at the DVRO 02:31:54 proceeding, correct?
A Correct.
Q Were you surprised by that?
MR. KAPLAN: Objection; vague.
THE DEPONENT: No, I just did exactly what 02:32:07 was I told was to hand over everything I had, and I gave everything I had to my lawyer. So I did exactly as I was told.
BY MR. BROWN:
Q Well, that wasn't my question. My question 02:32:17 was whether you were surprised it was not used in your DVRO proceeding.
A I honestly wasn't even thinking about that video at the DVRO hearing. There was a lot else going on, so that wasn't on my radar. 02:32:34
Q You would agree with me, would you not, that that video was not helpful to your case in the DVRO proceeding, correct?
MS. PRESCOTT: Calls for speculation, legal opinion. 02:32:44

THE DEPONENT: I actually disagree with you, because it was the first thing I handed over to Pasadena police. So I have a different view on it.
BY MR. BROWN:
Q Well, that wasn't my question. 02:32:53
My question is whether you -- what your understanding is about whether it was helpful or not to your case in the DVRO proceeding.
MS. PRESCOTT: Asked and answered, calls for legal opinion, and speculation. 02:33:12
And I think she did answer the question.
Go ahead.
THE DEPONENT: I think there's a perfectly reasonable explanation for the video, and I would have been perfectly happy to explain that at the 02:33:21 DVRO hearing. So...
BY MR. BROWN:
Q And you were aware that that video was not produced to Mr. Bauer's counsel before the end of the DVRO proceeding, correct? 02:33:36
MR. KAPLAN: Objection; calls for speculation, lacks foundation.
BY MR. BROWN:
Q I'm asking whether she was aware of that.
A I was not aware of that. 02:33:43

MR. BROWN: Mr. Kaplan, get ready.
BY MR. BROWN:
Q What communications about the video did you have with your lawyers before the conclusion of the DVRO proceedings? 02:34:00
MS. PRESCOTT: Hold on.
This is calling for attorney-client privilege, and I'm going to instruct you not to answer.
BY MR. BROWN: 02:34:12
Q What communications about the video did you have with your lawyers before the conclusion of the DVRO proceedings about producing the video or not producing the video to Mr. Bauer's counsel?
MS. PRESCOTT: Calls for attorney-client 02:34:25 privileged communications. I'm instructing you not to answer.
MR. KAPLAN: Let's voir dire on that. Let's go off the record so I can voir dire the witness.
MR. BROWN: Jesse, I know you've used that 02:34:36 expression before in this context, and I don't understand what you mean by voir diring in this context. I know a lot about the term voir dire, but what you are talking about exactly?
MR. KAPLAN: To explore the extent of the 02:34:48

privilege and whether or not there's communications. To explore whether or not there's privileged communications.

MR. BROWN: That's fine. That's fine. We can go off. 02:34:57

THE VIDEOGRAPHER: Going off the record at 2:35 p.m.

(Recess.)

THE VIDEOGRAPHER: Going back on the record at 2:40 p.m. 02:40:17

MR. KAPLAN: So, Blair, what I'll allow you to ask and allow the witness to answer, perhaps more importantly, is a more foundational question -- and maybe this is what you were getting at anyway. It's not entirely clear to me. But if there were any 02:40:34 communications about this video with Ms. Hill's attorneys prior to the conclusion of the DVRO proceeding about producing or not producing the video to Bauer's counsel.

MR. BROWN: Okay. I will ask that question 02:40:54 and see where we go.

BY MR. BROWN:

Q Did you have communications with any of your lawyers before the conclusion of the DVRO proceedings about producing the video or not 02:41:14

producing the video to Mr. Bauer's counsel?

A No. No communications.

Q And when I use the term "lawyers," I am referring to Bryan Freedman -- let me do it differently. 02:41:33

I'm going to ask you questions specifically about each of the lawyers and law firms involved in the DVRO proceedings -- lawyers or law firms, I should say.

Did you have communications about the video 02:41:44 with Mr. Freedman before the conclusion of the DVRO proceeding?

MR. KAPLAN: I'm going to object.

MS. PRESCOTT: I'm going to object that that calls for the attorney-client communication. In 02:42:01 terms of the foundational questions, I think we're okay to -- for you asking whether or not she did -- how do we want to do this. Whether or not those communications happened.

MR. KAPLAN: Well -- 02:42:16

MR. BROWN: Two different -- just to be clear, there's two different types of questions. One is about the video, period.

The other is about producing or not producing the video to Mr. Bauer's counsel. And I want to go 02:42:29

through both of those. So that question was what communications about the video did you have with Mr. Freedman before the conclusion of the DVRO proceedings?

MS. PRESCOTT: I'm going to object that 02:42:47 that's attorney-client privilege and instruct her not to answer.

BY MR. BROWN:

Q What communications about the video did you have with anyone at Mr. Freedman's law firm about 02:42:54 the video before the conclusion of the DVRO proceedings?

MS. PRESCOTT: I'm going to object that's attorney-client privilege and instruct her not to answer. 02:43:07

BY MR. BROWN:

Q What communications about the video did you have with Mark Grillick (phonetic) before the conclusion of the DVRO proceeding?

MS. PRESCOTT: I'm going to object that's 02:43:17 attorney-client privilege. And also lacks foundation, and instruct her not to answer.

BY MR. BROWN:

Q What communications about the video did you have with Doreen Olson before the conclusion of the 02:43:25

DVRO proceeding?

MS. PRESCOTT: Same objections.

BY MR. BROWN:

Q What communications about the video did you have with anyone at the Meyer Olson law firm before 02:43:36 the conclusion of the DVRO proceeding?

MS. PRESCOTT: Same objections, and instruct her not to answer.

BY MR. BROWN:

Q What communications did you have with Fred, 02:43:47 your Marsy's Law attorney, about the video before the conclusion of the DVRO proceeding?

MS. PRESCOTT: Same objections, and instruct the witness not to answer.

BY MR. BROWN: 02:44:03

Q And what communications about the video did you have with anyone at Fred's law firm before the conclusion of the DVRO proceeding?

MS. PRESCOTT: Same objections, and instruct the witness not to answer. 02:44:15

BY MR. BROWN:

Q And I'll go back to the question that we were talking about before.

Did you have any communication with any of your lawyers before the conclusion of the DVRO 02:44:25

proceeding about producing the video or not producing the video to Mr. Bauer's counsel?

MR. KAPLAN: Asked and answered.

Wasn't that the same question that you asked before? I'm trying -- 02:44:38

MR. BROWN: Well, I was trying to -- I thought that's where we went out on.

MR. KAPLAN: Sorry, Blair, I didn't hear the last thing you just said.

MR. BROWN: I said that was -- that question 02:44:57 was the one I posed right before we went out on the recess so you could consult with Ms. Hill.

MR. KAPLAN: Right. But then we came back and we had a discussion and you asked a question, and Ms. Hill testified that there weren't any 02:45:14 question -- I'm sorry -- that there weren't any such communications.

MR. BROWN: I think I changed course at that point. I started down that road. Why don't I just go ahead and ask the question again, if I asked it 02:45:28 before. I don't think I did.

MS. PRESCOTT: Okay.

MR. BROWN: Other than right before you took a recess.

MS. PRESCOTT: Hold on. 02:45:37

BY MR. BROWN:

Q Excuse me.

Did you have communications with your lawyers before the conclusion of the DVRO proceeding about producing the video or not producing the video to 02:45:45 Mr. Bauer's counsel?

MS. PRESCOTT: Asked and answered.

MR. KAPLAN: I'm looking at the realtime and this is precisely the same question that you asked Ms. Hill right before. But you can restate your 02:45:56 answer for Blair.

BY MR. BROWN:

Q Could you -- can I get an answer to my question, to this question?

A No. No communication. 02:46:05

Q Turning back to your time with Mr. Bauer that evening. You said, if I understood you correctly, the video depicted scratches on your face. Is that what you said?

A Yes, you can faintly see them. 02:46:37

Q And how did -- do you know how those scratches got onto your face?

A I have no idea.

Q Now, after your -- after you left Mr. Bauer's house, you took some pictures of your face, correct? 02:46:57

A Correct.

Q Did you -- did you feel your face?

MS. PRESCOTT: Vague, ambiguous.

BY MR. BROWN:

Q Did you put your hands on your face? I guess 02:47:08 I'm doing the motions here. Did you put your hand or hands on your face to -- for any purpose?

MR. KAPLAN: Objection; vague.

THE DEPONENT: I don't believe so. No.

BY MR. BROWN: 02:47:21

Q You didn't press onto your cheek or your cheekbone before you got home?

A No.

Q Do you have a history of acne?

A Yes. 02:47:39

Q And did you have acne on May 16th?

A I'm sure a little bit, yeah.

Q Okay.

Now, you were interviewed twice by the Pasadena Police Department at your parents' home 02:48:04 regarding interactions with Mr. Bauer; is that correct?

A Yes.

Q And each of those interviews was recorded on a detective's body cam, correct? 02:48:13

A Yes.

Q And it provided an audio and video recording, correct?

A Yes.

Q At some point you requested a copy of those 02:48:25 recordings, correct?

A Yes.

Q And the Pasadena Police Department gave you copies of those recordings, correct?

A Either to me or my attorney, yeah. I can't 02:48:42 remember.

Q You had access to them following your request to the Pasadena Police Department; is that right?

A Yes.

Q And you have viewed and listened to those 02:48:55 recordings before, correct?

A Correct.

Q I'm going to go to Tab A, which is the May 18th interview of Ms. Hill, which is going to be Exhibit 18. 02:49:15

(Exhibit 18 was marked for identification and is attached hereto.)

MR. BROWN: And there's been a lot of discussion about how we're going to do this. So I 02:49:21

# EXHIBIT 6

**Shauntece Laurant**

**From:** Brown, Blair G. <bbrown@zuckerman.com>
**Sent:** Thursday, September 7, 2023 5:16 AM
**To:** Jesse Kaplan
**Subject:** RE: Bauer v. Hill

Jesse:
We have discussed this among defense counsel, and we do not intend to withdraw the motion.
- Blair

**Blair G. Brown**
**Zuckerman Spaeder LLP**
**bbrown@zuckerman.com**

1800 M STREET NW, SUITE 1000 • WASHINGTON, DC 20036-5807
202.778.1829 direct • 202.320.8369 mobile • 202.822.8106 fax

► **Download vCard | zuckerman.com**

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful. If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

---

**From:** Jesse Kaplan <jkaplan@ftllp.com>
**Sent:** Tuesday, September 5, 2023 5:30 PM
**To:** Brown, Blair G. <bbrown@zuckerman.com>
**Subject:** Bauer v. Hill

**EXTERNAL**

Blair,

I wanted to briefly memorialize my request that Bauer withdraw the Motion(s) against Hill and Freedman to compel the attorney-client communications based on the purported crime-fraud exception. While we disagree that the crime-fraud exception would apply, the Motion is moot as there are no communications to compel.

First, other than the July 5 text message (which has already been produced), Freedman and my firm do not have any responsive documents (communications concerning the May 16th video) that pre-date this lawsuit.  Because Request 1 in the Freedman subpoena is not limited in time, there are responsive communications to that request that post-date when this lawsuit was filed.  As discussed, I am willing to provide you with an amended response to the Freedman subpoena stating that there are no responsive documents that pre-date this lawsuit.

Second, Hill testified at her deposition that there were no communications (of any kind) with any of her attorneys before the conclusion of the DVRO proceeding about producing the video or not producing the video. (Hill Depo., pp. 162-163, 167).  Based on that, there could be no communications that would conceivably invoke the crime-fraud exception.

Please get back to me as soon as possible about whether Bauer will withdraw the Motion(s).

Thank you.

Jesse Kaplan, Esq.
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
310-201-0005
310-201-0045 facsimile
www.ftllp.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received

this communication in error, please notify us immediately by e-mail, and delete the original message.